# EXHIBIT A

1  Eric J. Farber, SBN 169472
   Ann McFarland Draper, SBN 065669
2  FARBER & COMPANY ATTORNEYS, LLP
   847 Sansome Street, Ste. LL
3  San Francisco, California 94111
   Telephone 415.434.5320
4  Facsimile 415.434.5380

5  Attorneys for Plaintiff

6

7

8              SUPERIOR COURT OF THE STA[

9              IN AND FOR THE COUNTY
               UNLIMITED JURISD.
10

11  SANTA FE POINTE, LP, an Oklahoma limited    | Case No.: RG 07-345170
    partnership; SANTA FE MANAGEMENT, LLC,      |
12  an Oklahoma limited liability company; RANT,| FIRST AMENDED AND
    LLC, a Delaware limited liability company; and | SUPPLEMENTAL COMPLAINT
13  THEOTIS F. OLIPHANT, an individual,         | FOR DAMAGES AND
                                                | DECLARATORY RELIEF
14              Plaintiffs,                      |
         vs.                                     |
15                                              |
    GREYSTONE SERVICING CORPORATION,            | JURY TRIAL DEMANDED
16  INC., a Georgia corporation; GREYSTONE CDE, |
    LLC, a Delaware limited liability company; and |
17  DOES 1 through 100, inclusive,              |
                                                |
18              Defendants.                      |

19

20      Plaintiffs SANTA FE POINTE, LP, an Oklahoma limited partnership ("SFP"), THEOTIS F.

21  OLIPHANT ("Oliphant"), an individual, and RANT, LLC, a Delaware limited liability company

22  ("Rant"), allege as follows:

23                          **DEMAND FOR JURY TRIAL**

24      Plaintiffs here demand a jury trial to the fullest extent available under the law, the United

25  States Constitution, and Section 16 of Article I of the California Constitution.

26                          **INTRODUCTORY ALLEGATIONS**

27      1.   This is an action for damages, declaratory relief and accounting arising out of the

28  conduct of defendants with respect to plaintiffs' efforts to acquire and rehabilitate a 224-unit

---

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                              -1
First Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, LLP

1  apartment building in Oklahoma City (the "Project") as a tax-credit developer of a Low Income

2  Housing Tax Credit project offered through the FHA's Office of Housing and Urban Development

3  ("HUD"). The Federal Government subsidizes tax credit projects to encourage private developers to

4  acquire, construct, renovate, and maintain housing stock that will be income restricted for tenants,

5  and maintained by the private developer. The tax-credit developer gets paid a fee equal to 14% of the

6  total allowable project costs, and the project financing is non-recourse.

7                                         **PARTIES**

8      2.      Plaintiff SANTA FE POINTE, LP ("SFP"), is an Oklahoma limited partnership

9  formed for the purpose of acquiring the Project, and having its principal place of business in

10  Edmond, Oklahoma.

11      3.      Plaintiff SANTA FE MANAGEMENT, LLC, is an Oklahoma limited liability

12  company formed for the purpose of managing the Project, and having its principal place of business

13  in Edmond, Oklahoma.

14      4.      Plaintiff RANT, LLC ("Rant") is a Delaware limited liability company having its

15  principal place of business in the County of Alameda, State of California. Plaintiff Rant is now, and at

16  all times material hereto was, qualified to do business as a foreign corporation in the State of

17  California.

18      5.      Plaintiff THEOTIS F. OLIPHANT is an individual who does now, and at all times

19  material hereto did, maintain his principal residence in the State of California, Contra Costa County.

20  OLIPHANT is now, and at all times material hereto was, the managing member of Santa Fe

21  Management, LLC (the general partner of Plaintiff SFP) and the managing member of Plaintiff

22  RANT.

23      6.      Defendant GREYSTONE SERVICING CORPORATION, INC. ("Greystone

24  Servicing") is a Georgia corporation having its principal place of business in New York, New York.

25  Defendant Greystone Servicing is now, and at all times material hereto was, qualified to do business

26  as a foreign corporation in the State of California. Plaintiffs are informed and believe and on that

27  basis allege that Defendant Greystone Servicing in fact does business in the State of California.

28  Defendant Greystone Servicing has failed to designate any principal place of business in the State of

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                    - 2
First Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, LLP

1  California; the only California address identified by Defendant Greystone Servicing on its California

2  filings is the address of its agent for service of process, which is 818 West Seventh St., Los Angeles,

3  CA 90017. Venue for Defendant Greystone Servicing is therefore proper in the County of Alameda

4  and in any other county in the State of California.

5      7.     GREYSTONE CDE, LLC ("Greystone CDE") is a Delaware corporation having its

6  principal place of business in New York, New York.   Plaintiffs are informed and believe and on that

7  basis allege that at all times material hereto, defendant Greystone CDE was not qualified to do

8  business as a foreign corporation in the State of California but in fact did business in said state.

9  Defendant Greystone CDE has failed to designate any principal place of business in the State of

10  California. Venue for Defendant Greystone CDE is therefore proper in any county in the State of

11  California.

12      8.     Defendants Greystone Servicing and Greystone CDE are hereinafter collectively

13  referred to as the "Greystone Defendants." Plaintiffs are informed and believe and on that basis

14  allege that the Greystone Defendants are owned and operated in such a way that each benefited

15  financially from the conduct of the others alleged hereinbelow.

16      9.     The Defendants sued herein as DOES 1 through 100, inclusive, are either natural

17  persons or business entities, whose true names, capacities and (in the case of business entities) exact

18  form of entity, are currently unknown to Plaintiffs, who therefore sue said defendants by such

19  fictitious names.   Plaintiffs are informed and believe and on that basis allege:

20          A.     that each of these fictitiously-named defendants is (either alone or in

21          concert with named Defendants) responsible in some manner for the occurrences,

22          injuries and damages herein alleged, has participated or is participating in some

23          manner in the actionable conduct herein alleged, and is liable to Plaintiffs together

24          with Defendants named herein for damages and/or other relief prayed for herein;

25          B.     that Plaintiffs' injuries as herein alleged were legally caused by the acts

26          or omissions of said fictitiously-named defendants;

27          C.     that at all times mentioned herein, each of the named and fictitiously

28          named Defendants was the officer, director, employee, partner, joint venturer, servant,

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                        - 3
First Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, LLP

1   agent, subsidiary, division and/or alter ego of each of his, her or its co-Defendants,

2   was acting within the course and scope of said employment, partnership, joint venture,

3   joint enterprise, service or agency relationship, with the full knowledge and consent of

4   each of the other defendants and within the authority granted to said defendants, and

5   each of them, and/or that each of the acts of each of the Defendants was ratified by

6   each of the other said Defendants.

7   10.   Plaintiffs are informed and believe and on that basis allege:

8   A.   that at all times mentioned herein, each of the named and fictitiously

9   named Defendants was the co-conspirator of the others and was acting in concert of

10   action and within the course and scope of a conspiracy formed amongst them;

11   B.   that each defendant sued herein received money or property as a result

12   of the conduct described herein without consideration therefor and/or with

13   knowledge that the money or property was obtained as a result of the fraud, deception

14   or other wrongful conduct described herein;

15   C.   that each of the defendants knowingly and intentionally aided, abetted,

16   encouraged and cooperated with, or turned a blind eye to, the other defendants in the

17   wrongful conduct alleged herein and accordingly are liable as aiders and abettors

18   and/or co-conspirators of each other; and/or

19   D.   that each defendant sued herein aided and abetted the others with the

20   intent that each would be successful in their mutual endeavors.

21   11.   Pursuant to California Code of Civil Procedure §474, Plaintiffs will seek to amend this

22   Complaint to substitute the true names, capacities and (in the case of business entities) exact form of

23   entity, of each of the said fictitiously-named defendants, as well as the particulars of the conduct,

24   participation and basis for liability for each of said fictitiously-named defendants, as and when such

25   information is ascertained by Plaintiff.

26   **VENUE**

27   12.   This case is properly venued in the County of Alameda because each of defendants

28   GREYSTONE SERVICING CORPORATION, INC., a Georgia corporation ("Greystone

---

*Santa Fe Pointe, LP., et al v. Greystone Servicing Corporation, Inc., et al.*                                   - 4
First Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, LLP

1  Servicing"), and GREYSTONE CDE, LLC, a Delaware corporation ("Greystone CDE"), has failed

2  to designate any current California principal place of business and therefore may be properly sued in

3  any county of this state.

**COMMON ALLEGATIONS**

5        13.        Plaintiffs are informed and believe and on that basis allege: that the Greystone

6  Defendants are one of the nation's leading originators of Federal Housing Administration (FHA)

7  multifamily loans; that the FHA financing originated by the Greystone Defendants provides long-

8  term, fully amortizing, fixed rate, non-recourse loans for acquisition and rehabilitation of low-income

9  housing projects such as the Project; that the Greystone Defendants have regional origination offices

10  in California and throughout the United States; and that the Greystone Defendants provide loan

11  officers, underwriters, analysts and consultants to facilitate successful acquisition, rehabilitation and

12  financing of projects such as the Project.

13        14.        Plaintiffs are informed and believe and on that basis allege that the Greystone

14  Defendants are a HUD-approved underwriter for the FHA's Multifamily Accelerated Processing

15  (MAP) program. This program establishes national standards for approved lenders to prepare,

16  process and submit their own loan applications. In this process, the Greystone Defendants serve as

17  an intermediary between their developer-clients and FHA offices to facilitate approval of applications

18  and to obtain financing within required timeframes.

19        15.        On or about September 7, 2006, Plaintiffs and Greystone Servicing entered into a

20  written agreement wherein Plaintiffs appointed Greystone Servicing to serve as their exclusive agent

21  to process the HUD application for financing the acquisition and rehabilitation of the Project (the

22  "Engagement Agreement"). A copy of the Engagement Agreement is attached as Exhibit "A" hereto

23  and incorporated herein by this reference. On the same date, Plaintiffs paid $14,000 in fees to

24  Greystone Servicing as required by the Engagement Agreement.

25        16.        Under the agreement and FHA procedures, the HUD application materials were to be

26  completed by the tax-credit developer (Plaintiffs) and the underwriter (the Greystone Defendants).

27  However, as underwriter, the role of the Greystone Defendants was (A) to underwrite the financing

28  of the acquisition and rehabilitation of the Project; and (B) to submit the application on behalf of the

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                              - 5
First Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, LLP

1  tax credit developer to HUD.  In connection with this role, it was the responsibility of the Greystone
2  Defendants to commission third party reports and submit them as support for the underwriting
3  analysis along with the HUD application materials; Plaintiffs were neither authorized nor permitted to
4  communicate directly with HUD with respect to the HUD application.

5        17.     Also on or about September 7, 2006, Plaintiffs also engaged Seibert Branford Shank &
6  Company, LLC ("SBS") to serve as investment bank underwriter to sell the $7,095,000 of tax-exempt
7  bonds through which the Project was to be financed.  The bond financing was required to close by
8  December 20, 2006 or the bond issue would expire.  In order to accomplish timely sale of the tax-
9  exempt bonds, SBS had to coordinate the sale of the tax-exempt bonds with the filing of the HUD
10  application by the Greystone Defendants.  Toward this end, SBS impressed upon the Greystone
11  Defendants the importance of completing the HUD application by November 2006.

12        18.     On or about September 22, 2006, SBS distributed a financing timetable and
13  responsible parties list for the Project.  The timetable provided that the Greystone Defendants were
14  to submit the HUD application on November 6, 2006.   Miriam Simon ("Simon"), who was
15  Greystone's senior underwriter for the Project, received the SBS document and participated in Project
16  meetings and telephone conferences on behalf of the Greystone Defendants.  Plaintiffs informed
17  Simon that they were willing to pay incremental costs to accelerate the filing of the HUD application.

18        19.     On or about October 5, 2006, Oliphant, Simon, SBS representatives and others met
19  with HUD officials in Oklahoma City regarding the Project.  At that meeting HUD officials
20  emphasized that the HUD application needed to be submitted by the first week of December 2006 or
21  HUD's review of the application would be delayed.

22        20.     One of the supporting documents required for the HUD application is architectural
23  review by a firm designated by the HUD-approved lender.  Shortly after the October 5 meeting,
24  Plaintiffs agreed to and did pay additional fees to Greystone's HUD architect review firm to expedite
25  its review process so that the architectural review component would not delay filing of the HUD
26  application.

27        21.     At the time of this meeting, the Greystone Defendants were aware that Plaintiffs
28  wanted to complete the purchase of the property by December 20, 2006.  The Greystone Defendants

---

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*        - 6
First Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, LLP

1   were also aware that Plaintiffs would lose the $7,095,000 of tax-exempt bond financing if the bond

2   financing was not closed by December 20, 2006.

3       22.     On or about October 16, 2006, Oliphant filed the paperwork and expended the funds

4   to form Plaintiff SFP (Santa Fe Pointe, LP) as an Oklahoma limited partnership and Santa Fe

5   Management, LLC as an Oklahoma limited liability company.  Plaintiff SFP was the official, single

6   purpose entity formed to execute the acquisition and rehabilitation of the Project and be the borrower

7   on the HUD non-recourse loan.  Plaintiff Santa Fe Management, LLC was the official, single purpose

8   entity formed to be the general partner of Plaintiff SFP and manage the Project.

9       23.     On or about October 27, 2006, Simon sent an email stating that the HUD application

10   process was behind schedule.  In light of the December 20, 2006 deadlines, Plaintiffs were troubled by

11   this email, and Oliphant communicated his concerns to Matt James (the business development person

12   at Greystone who initially sold Oliphant on using Greystone's services).   To address Oliphant's

13   concerns, James told Oliphant that Greystone would provide a non-recourse bridge loan to fund the

14   purchase of the Project and the cost of issuance for the bonds to be sold by SBS.

15       24.     On or about November 13, 2006, Plaintiffs caused the final set of architectural plans

16   and specifications to be delivered to Greystone's architectural review firm.  On or about November

17   14, 2006, Plaintiffs delivered by FedEx a complete set of financial certifications and list of business

18   entities for all participants in the Project.  These items, which were the final items required from

19   Plaintiffs and the development team, were delivered a full two weeks before Greystone's scheduled

20   delivery of the HUD application.  All other aspects of the HUD application were within Greystone's

21   ability to perform and execute timely.

22       25.     On November 14, 2006, after Plaintiffs had transmitted all items required to be

23   provided by them, Greystone for the first time informed Plaintiffs that the HUD application would

24   not be submitted in 2006.  To address the concerns of Plaintiff and the development team and

25   reassure them that the Project would ultimately be a success, James again stated that Greystone was

26   committed to funding the acquisition of the Project and issuance of the tax-exempt bonds, and stated

27   that Greystone would issue a non-recourse bridge loan to fund the acquisition of the Project and the

28   cost of issuing the bonds.

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                                - 7
First Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, LLP

26.     On November 16, 2006, bond counsel for SBS sent an email to confirm that Greystone would fund a bridge loan for the purchase of the Project and the cost of issuing the tax-exempt bonds. That same day, Defendant Greystone Servicing provided a bridge loan term sheet on behalf of Defendant Greystone CDE which provided for a non-recourse bridge loan to Oliphant in the amount of $4,348,400. The November 16 Term Sheet stated that the bridge loan would be for the full purchase price of the Project and that it would be non-recourse.

27.     On November 21, 2006, SBS representatives provided the final financing timetable, again confirming that Greystone had agreed to fund all costs of selling the tax-exempt bonds through bridge financing. Thereafter, the parties proceeded to complete arrangements for issuance of the tax-exempt bonds and acquisition of the Project, and Oliphant made arrangements to travel to Oklahoma City on December 18 through 20 for the closing of the Project acquisition.

28.     The tax-exempt bonds were priced on December 13 and 14, and were sold by SBS to institutional investors. As a result, Plaintiffs incurred approximately $251,000 in bond issuance costs.

29.     On December 17, 2006, the literal eve of Oliphant's departure to Oklahoma City, the Greystone Defendants' counsel delivered the first drafts of the bridge loan documents. The provided loan documents did not provide the financing promised by Greystone. Instead, these documents provided for a bridge loan of only $500,000 rather than the promised $4,348,400. This reduced amount would cover the cost of the bond issuance but not acquisition of the Project. In addition, instead of the promised non-recourse financing, the provided loan documents included a personal guaranty by Oliphant and a spousal guaranty, neither of which had been mentioned previously.

30.     When Oliphant received the bridge loan documents on December 17, 2006, the $251,000 bond issuance costs had already been incurred because the tax-exempt bonds had been sold. Moreover, if the Project acquisition was not closed by December 20, 2006, Plaintiffs faced losing the tax-exempt bond funding because the bonds would expire. Oliphant signed the voluminous bridge loan documents as presented. Copies of the following are attached as Exhibits "B," "C," "D," "E," and "F," respectively, hereto and incorporated herein by this reference: Bridge Loan Agreement; the Bridge Loan Promissory Note; the Partner Guaranty, Pledge and Security Agreement; the Developer Limited Guaranty, Pledge and Security Agreement; and the Guaranty and Suretyship Agreement.

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                    - 8
First Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, LLP

1      31.    On or about March 14, 2007, Greystone submitted the final HUD application on

2 behalf of Oliphant and Plaintiffs.

3      32.    Part of the financial structure of the Project included sale of the tax credits to a

4 purchaser/syndicator. Under the original HUD application, the tax credit purchaser/syndicator was

5 the Richman Group. On or about April 17, 2007, the Richman Group backed out of the deal.

6 Thereafter, with the knowledge and consent of the Greystone Defendants, Plaintiffs pursued other

7 syndicators and co-developers to complete the financial aspects of the Project. On or about June 14,

8 2007, Plaintiffs were introduced to David Henry, an experienced Arkansas tax credit developer who

9 would serve as general contractor, property manager, and co-developer, and thereafter Plaintiffs and

10 David Henry worked out terms for their relationship.

11      33.    On or about June 29, 2007, the seller of the Project agreed to extend the closing date

12 to July 31, 2007 in order to accommodate additional bridge loan financing arranged by David Henry.

13 As a part of this agreement, Plaintiffs paid an additional $25,000 earnest money deposit to the seller,

14 which Oliphant funded through an additional $25,000 advance on the Greystone bridge loan.

15      34.    On or about July 5, 2007, Oliphant met with HUD personnel in Oklahoma City and

16 learned that the HUD application had been rejected by letter sent out earlier that day. At this

17 meeting, the HUD representative informed Oliphant that at a HUD conference in St. Louis on June

18 19, Greystone's representative had gone out of her way to make unsolicited disparaging remarks about

19 the Project to the HUD representative from Oklahoma City.

20      35.    On or about July 10, 2007, Matt James acknowledged to Oliphant that Greystone had

21 received the HUD rejection letter, and reassured Oliphant that Betsy Vartanian, who was "one of the

22 top HUD loan executives at Greystone," was going to step in.

23      36.    On or about July 11, 2007, Betsy Vartanian informed Oliphant that she had spoken

24 with HUD personnel in Oklahoma City and that HUD had agreed to reconsider the application

25 without starting over from the beginning, and that Greystone would submit written materials

26 responsive to HUD's concerns. On or about July 13, 2007, Greystone sent a letter to HUD

27 confirming that supplemental materials would follow to address HUD's concerns raised in the July 5

28 letter.

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*        - 9
First Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, LLP

1        37.     In the meantime, Oliphant and David Henry continued to proceed with the closing of

2 the acquisition of the Project. Oliphant and David Henry reached an agreement with the seller

3 whereby the seller would carry back a second mortage in the amount of $500,000. On July 25, 2007,

4 the attorneys for the first mortgage lender sent out drafts of the closing documents.  On July 27,

5 2007, Greystone threatened to disrupt the acquisition deal unless the seller agreed to subordinate his

6 carry-back loan to Greystone's pre-development bridge loan.  That same day, Oliphant and David

7 Henry made arrangements to meet in Oklahoma on July 30th and 31st to make plans for signing the

8 closing documents, taking control of the Project, and getting the keys.

9        38.     On July 29, 2007, the eve of travel, David Henry emailed that he was having second

10 thoughts about the deal and had concerns about the cost of the bond issuance in December 2006.

11 However, Henry was unavailable to discuss his concerns that entire day.

12        39.     On July 30, 2007, Oliphant and Henry arrived in Oklahoma City.  In a telephone

13 conference call, Greystone rescinded its demand that the seller subordinate his carry-back loan.

14 Instead, Greystone requested that Henry's bank allow Greystone to purchase its loan after closing, so

15 that Greystone could improve its collateral position.

16        40.     On July 31, 2007, Oliphant and Henry met for approximately six hours to discuss

17 Henry's concerns.  During this meeting, David Henry proposed taking over the entire Project in

18 exchange for assuming the Greystone loan.  The parties did not reach agreement for modifying their

19 prior arrangement, and David Henry left town without signing the escrow documents.  Oliphant,

20 however, signed the closing documents at the title company that day before leaving Oklahoma City.

21        41.     In early August 2007, Greystone began negotiating with David Henry on ways to get

22 the deal done without Oliphant and Plaintiffs, and also began threatening to declare the bridge loan in

23 default.

24        42.     On August 9, 2007, Greystone unilaterally withdrew the HUD loan application

25 without any prior notice or warning to Oliphant or Plaintiffs.  The withdrawal of the HUD

26 application placed at risk the $7,095,000 in tax exempt bond proceeds.  It also caused the seller to

27 terminate negotiations with Oliphant because the withdrawal of the HUD application made it appear

28

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                               - 10
First Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, LLP

1   that Plaintiffs could not close the deal and that it would take another 10-12 months if the HUD

2   process were started over.

3       43.    By email dated August 21, 2007, Greystone representatives requested additional

4   documentation from Plaintiffs for submission to the loan committee, thus indicating that Greystone

5   intended to go forward with the deal.  On the same date, however, Greystone CDE was apparently

6   preparing a letter declaring the bridge loan in default.

7       44.    On or about August 22, 2007, Thom Ruffin of Greystone telephoned Oliphant and

8   asked if he had received "the letter." When Oliphant responded in the negative, Ruffin informed

9   Oliphant that Plaintiffs were going to receive a letter that had gone out by FedEx declaring the bridge

10   loan in default. Ruffin then proceeded to tell Oliphant that Greystone had been talking to David

11   Henry regarding terms upon which Henry would take over Plaintiffs' deal and assume some of the

12   liability of the Greystone bridge loan.

13       45.    After the telephone call, Oliphant received the letter dated August 21, 2007 wherein

14   Greystone CDE declared the bridge loan in default and threatened legal enforcement.  The August 21

15   default letter was transmitted by FedEx to Oliphant at his address in California.  The first alleged

16   default specified in the August 21 default letter was "expiration of the contract for purchase and sale

17   of the Project without the same having been extended."  The August 21 default letter also specified

18   other alleged defaults that were inaccurate, not defaults, and/or had been waived.

19       46.    Over the next several days, the Greystone Defendants continued to pressure Oliphant

20   and Plaintiffs to allow David Henry to take over the entire Project (keeping all the profits).  As a part

21   of this proposal, Henry would assume $275,000 of the bridge loan but Greystone required that

22   Oliphant accept responsibility for paying $215,000, release Greystone of all liability, and agree not to

23   sue.  By letter dated August 27, 2007, transmitted by email and FedEx, Greystone notified Oliphant

24   that it would pursue all collection remedies unless Plaintiffs agreed to the proposed transaction

25   wherein David Henry would take over the deal.  On August 30, 2007, Greystone's counsel delivered

26   an "assignment agreement and covenant not to sue" to this effect and demanded that Oliphant

27   provide written confirmation of acceptance by August 31.

28

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*        - 11
First Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, LLP

47.     The terms of the proposed "assignment agreement and covenant not to sue" were financially unacceptable to Plaintiffs and Oliphant did not sign the documents by the requested deadline. Instead, after the Labor Day weekend, Oliphant and Ruffin traded phone calls for several days.

48.     By email transmitted on September 11, 2007, Oliphant notified the Greystone Defendants that Plaintiffs had successfully documented extension of the time to close the deal with the Seller and provided copies of the fully executed Addendum effecting the extension. This cured the first-listed alleged default specified in Greystone's August 21 default letter ("expiration of the contract for purchase and sale of the Project without having been extended"). Thus, in this same email, Oliphant also demanded that Greystone rescind its Notice of Default issued August 21, 2007.

49.     The Greystone Defendants ignored Oliphant's email of September 11 and did not rescind the August 21 notice of default nor otherwise respond in writing. On September 13, 2007, Oliphant sent a further email to the Greystone Defendants asking for a written response to the September 11 email.

50.     In response to Oliphant's September 13 email, Thom Ruffin telephoned Oliphant on September 14, 2007, and set up a telephone conference call for later that day. During that conference call, Oliphant again requested that the Greystone Defendants rescind the August 21 notice of default but the Greystone Defendants refused to do so. The Greystone Defendants claimed that the bridge loan was still in default because there was (they claimed) no tax credit syndicator. The Greystone Defendants further stated that Greystone was "out" unless Plaintiffs could prove that the Project was a viable deal.

51.     In fact, the bridge loan was not in default for the claimed lack of a tax credit syndicator. First of all, the Greystone Defendants waived this condition in April 2007 when the initial tax credit syndicator withdrew from the deal. Moreover, Plaintiffs had obtained a commitment from a successor tax credit syndicator in June 2007 which, at the time of the September 14 telephone conference, was still in effect and had not been withdrawn.

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                                    - 12
First Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, LLP

1    52.    By letter dated September 21, 2007, Greystone CDE notified Plaintiffs that it was

2    accelerating the bridge loan and declaring all amounts due under the bridge loan note immediately due

3    and payable.

4

5    **FIRST CAUSE OF ACTION**
     **(For Negligence, Including Professional Negligence)**

6    53.    Plaintiffs refer to and hereby incorporate herein the foregoing Paragraphs 1 through

7    52, inclusive, and other material allegations set forth above, as though the same were fully set forth at

8    this place.

9    54.    Each of the Greystone Defendants owed Plaintiffs and each of them a duty of due

10   care by virtue of the business relationship established through the Engagement Agreement wherein

11   Plaintiffs appointed Greystone Servicing to serve as their exclusive agent to process the HUD

12   application for financing the acquisition and rehabilitation of the Project and Greystone Servicing's

13   and undertakings pursuant thereto.

14   55.    Each of the Greystone Defendants owed Plaintiffs and each of them a duty of due

15   care by virtue of Greystone Servicing's position as a HUD-approved underwriter for the FHA's

16   Multifamily Accelerated Processing (MAP) program and the respective roles and involvements of

17   Plaintiff in the Project.

18   56.    Each of the Greystone Defendants owed Plaintiffs and each of them a duty to use

19   such skill, prudence and diligence as other HUD-approved underwriters for the FHA's Multifamily

20   Accelerated Processing (MAP) program commonly possess and exercise.

21   57.    The Greystone Defendants and each of them breached their respective duties of due

22   care owed to Plaintiffs and each of them with respect to the Project and the HUD financing.  The

23   breaches of the Greystone Defendants include, but are not limited to, failing to expedite processing,

24   preparation and submission of the HUD application, causing delay in the processing, preparation and

25   submission of the HUD application, making unsolicited derogatory statements regarding Plaintiffs

26   and the Project to HUD representatives, and withdrawing the HUD application without prior notice

27   to or consent by Plaintiffs or any of them.

28

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*    - 13
First Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, LLP

1    58.    As a direct and legal result of the Greystone Defendants' respective breaches of the

2    respective duties of due care owed to Plaintiffs and each of them with respect to the Project and the

3    HUD financing, as alleged hereinabove, Plaintiffs, and each of them, have been damaged and injured

4    in an amount to be proven at trial.

5    59.    As a direct and legal result of the Greystone Defendants' respective breaches of the

6    respective duties of due care owed to Plaintiffs and each of them with respect to the Project and the

7    HUD financing, as alleged hereinabove, Plaintiffs, and each of them, have been forced to retain

8    attorneys, accountants, investigators, agents and other consultants, and to expend time and money, to

9    discover and remedy the fraud, all according to proof. Plaintiffs reserve the right to amend this

10   complaint at such time as the amounts of damage become known.

11   WHEREFORE, Plaintiffs pray for judgment as set forth below.

12

13   **SECOND CAUSE OF ACTION**
**(For Breach of Fiduciary Duty / Constructive Fraud)**

14   60.    Plaintiffs refer to and hereby incorporate herein the foregoing Paragraphs 1 through

15   52, inclusive, and other material allegations set forth above, as though the same were fully set forth at

16   this place.

17   61.    Each of the Greystone Defendants stands in a confidential and fiduciary relationship

18   with Plaintiffs and each of them by virtue of the trust and confidence Plaintiffs and each of them

19   reposed in said defendants by virtue of the Engagement Agreement, the business relationship, and the

20   Greystone Defendants' position as a HUD-approved underwriter for the FHA's Multifamily

21   Accelerated Processing (MAP) program.

22   62.    Each of the Greystone Defendants owed Plaintiffs and each of them a fiduciary duty

23   by virtue of the trust and confidence Plaintiffs and each of them reposed in said defendants by virtue

24   of the Engagement Agreement, the business relationship, and the Greystone Defendants' position as

25   a HUD-approved underwriter for the FHA's Multifamily Accelerated Processing (MAP) program.

26   63.    The Greystone Defendants and each of them were negligent in the performance of

27   the duties owed to Plaintiffs and each of them with respect to the Project and the HUD financing, as

28   alleged hereinabove. The Greystone Defendants and each of them further breached their respective

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                        - 14
First Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, LLP

1  fiduciary duties to Plaintiffs and each of them by failing to expedite processing, preparation and

2  submission of the HUD application, by causing delay in the processing, preparation and submission

3  of the HUD application, by making unsolicited derogatory statements regarding Plaintiffs and the

4  Project to HUD representatives, by changing the terms of the bridge financing, by withdrawing the

5  HUD application without prior notice to or consent by Plaintiffs or any of them, by demanding

6  priority for the bridge loan to which they were not entitled, by negotiating directly with David Henry

7  under terms that cut out Oliphant and Plaintiffs from the deal, and by attempting to force Plaintiffs to

8  transfer their prospective financial and non-economic gain in the Project to David Henry.

9      64.    The Greystone Defendants and each of them have gained an advantage over Plaintiffs

10  by virtue of the foregoing breaches.

11      65.    Plaintiffs and each of them were prejudiced by the foregoing breaches of duty in that

12  they advanced funds and expended time and energy and incurred obligations in connection with the

13  Project. Plaintiffs and each of them were further prejudiced by the foregoing breaches of duty in that

14  they now risk losing their prospective financial and non-economic gain from the Project. '

15      66.    Plaintiffs' reliance, as set forth above, was reasonable under the circumstances.

16  Plaintiffs could not, in the exercise of reasonable diligence, have anticipated or discovered the

17  misconduct of the Greystone Defendants in the circumstances in a way that Plaintiffs could have

18  protected themselves or their financial interests.

19      67.    As a direct and legal result of the conduct of the Greystone Defendants as alleged

20  hereinabove, Plaintiffs, and each of them, have been damaged and injured in an amount to be proven

21  at trial.

22      68.    As a direct and legal result of the conduct of the Greystone Defendants, Plaintiffs, and

23  each of them, have been forced to retain attorneys, accountants, investigators, agents and other

24  consultants, and to expend time and money, to discover and remedy the fraud, all according to proof.

25  Plaintiffs reserve the right to amend this complaint at such time as the amounts of damage become

26  known. .

27      69.    Plaintiffs should recover punitive damages, in addition to their actual damages, to

28  make an example of and to punish Defendants and each of them.

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*      - 15
First Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, LLP

1    70.    The conduct of the Greystone Defendants, and each of them, as described

2    hereinabove was fraudulent, malicious and oppressive, and done for the specific purpose of getting

3    control over Plaintiff's monies for Defendants' own use and benefit. The Greystone Defendants, and

4    each of them, also displayed reckless indifference to Plaintiffs and each of them with regard to the

5    conduct alleged in this complaint. Plaintiffs should recover punitive damages, in addition to their

6    actual damages, to make an example of and to punish Defendants and each of them.

7    71.    The conduct of the Greystone Defendants was, in and of itself, fraudulent, malicious

8    and oppressive in that said Defendants were guilty of reckless indifference towards Plaintiffs, acted

9    willfully and knowingly in the manner in which they torpedoed the Project and Plaintiffs' HUD

10   application and the tax-exempt bond issue, and undertook separate negotiations with David Henry to

11   cut out Oliphant and Plaintiffs.

12   WHEREFORE, Plaintiffs pray for judgment as set forth below.

13

14   **THIRD CAUSE OF ACTION**
     **(Intentional Interference with Prospective Economic Advantage)**

15   72.    Plaintiffs refer to and hereby incorporate herein the foregoing Paragraphs 1 through

16   52, inclusive, and other material allegations set forth above, as though the same were fully set forth at

17   this place.

18   73.    At all times material hereto, Plaintiffs had an existing business relationship with the

19   seller of the Project and with the HUD office in Oklahoma City.

20   74.    At all times material hereto, Plaintiffs had a probability of future economic benefit

21   from successful completion of the financing, rehabilitation and development of the Project.

22   75.    The Greystone Defendants disrupted, delayed and interfered with Plaintiffs'

23   prospective economic advantage, as alleged hereinabove.

24   76.    The conduct of the Greystone Defendants in disrupting, delaying and interfering with

25   Plaintiffs' opportunity to complete the Project was wrongful in that said defendants, and each of

26   them, delayed and failed to expedite the HUD application, changed terms of the deal at the last

27   minute, and breached their fiduciary duties to Plaintiffs and each of them.

28

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                                    - 16
First Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, LLP

1    77.    The conduct of the Greystone Defendants in disrupting, delaying and interfering with

2    Plaintiffs' opportunity to complete the Project was substantially certain to result in interference with

3    Plaintiffs' prospective economic advantage in the Project. The Greystone Defendants knew of

4    Plaintiffs' business relationship and prospective economic advantage.

5    78.    The Greystone Defendants intended to disrupt and interfere with Plaintiffs' business

6    relationship and prospective economic advantage and profits from the Project.

7    79.    As a direct and legal result of the conduct of the Greystone Defendants as alleged

8    hereinabove, Plaintiffs, and each of them, have been damaged and injured in an amount to be proven

9    at trial.

10    80.    But for the disruption, delay and interference of the Greystone Defendants, it is

11    reasonably probably that Plaintiffs would have realized the anticipated prospective economic

12    advantage from the Project.

13    81.    Compelling public policy favors facilitating Low Income Housing Tax Credit projects

14    (such as the Project) offered through the FHA's Office of Housing and Urban Development

15    ("HUD"). This compelling public policy includes providing and facilitating the financial rewards

16    available to tax-credit developers (such as Plaintiffs) so that the developers are incentivized to do such

17    Low Income Housing Tax Credit projects (such as the Project).

18    82.    As a direct and legal result of the foregoing conduct of the Greystone Defendants,

19    Plaintiffs, and each of them, have been forced to retain attorneys, accountants, investigators, agents

20    and other consultants, and to expend time and money, to discover and remedy the fraud, all according

21    to proof. Plaintiffs reserve the right to amend this complaint at such time as the amounts of damage

22    become known.

23    83.    Plaintiffs should recover punitive damages, in addition to their actual damages, to

24    make an example of and to punish Defendants and each of them.

25    84.    The conduct of the Greystone Defendants, and each of them, as described

26    hereinabove was fraudulent, malicious and oppressive, and done for the specific purpose of getting

27    control over Plaintiff's monies for Defendants' own use and benefit. The Greystone Defendants, and

28    each of them, also displayed reckless indifference to Plaintiffs and each of them with regard to the

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                - 17
First Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, LLP

1  conduct alleged in this complaint.  Plaintiffs should recover punitive damages, in addition to their

2  actual damages, to make an example of and to punish Defendants and each of them.

3      85.    The conduct of the Greystone Defendants was, in and of itself, fraudulent, malicious

4  and oppressive in that said Defendants were guilty of reckless indifference towards Plaintiffs, acted

5  willfully and knowingly in the manner in which they torpedoed the Project and Plaintiffs' HUD

6  application and the tax-exempt bond issue, and undertook separate negotiations with David Henry to

7  cut out Oliphant and Plaintiffs.

8      WHEREFORE, Plaintiffs pray for judgment as set forth below.

9

10  **FOURTH CAUSE OF ACTION**
**(Negligent Interference with Prospective Economic Advantage)**

11      86.    Plaintiffs refer to and hereby incorporate herein the foregoing Paragraphs 1 through

12  52, inclusive, and other material allegations set forth above, as though the same were fully set forth at

13  this place.

14      87.    At all times material hereto, Plaintiffs had an existing business relationship with the

15  seller of the Project and with the HUD office in Oklahoma City.

16      88.    At all times material hereto, the Greystone Defendants, and each of them, owed

17  Plaintiffs a duty of care as alleged hereinabove.

18      89.    At all times material hereto, Plaintiffs had a probability of future economic benefit

19  from successful completion of the financing, rehabilitation and development of the Project.

20      90.    The Greystone Defendants wrongfully disrupted, delayed and interfered with

21  Plaintiffs' prospective economic advantage, as alleged hereinabove, and in delaying and failing to

22  expedite the HUD application, changing terms of the deal at the last minute, and breaching their

23  fiduciary duties to Plaintiffs and each of them.

24      91.    The conduct of the Greystone Defendants in disrupting, delaying and interfering with

25  Plaintiffs' opportunity to complete the Project, as alleged hereinabove, foreseeably disrupted and

26  interfered with Plaintiffs' prospective economic advantage in the Project.

27

28

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*   - 18
First Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, LLP

1    92.    As a direct and legal result of the conduct of the Greystone Defendants as alleged

2    hereinabove, Plaintiffs, and each of them, have been damaged and injured in an amount to be proven

3    at trial.

4    93.    But for the disruption, delay and interference of the Greystone Defendants, it is

5    reasonably probably that Plaintiffs would have realized the anticipated prospective economic

6    advantage from the Project.

7    94.    Compelling public policy favors facilitating Low Income Housing Tax Credit projects

8    (such as the Project) offered through the FHA's Office of Housing and Urban Development

9    ("HUD"). This compelling public policy includes providing and facilitating the financial rewards

10   available to tax-credit developers (such as Plaintiffs) so that the developers are incentivized to do such

11   Low Income Housing Tax Credit projects (such as the Project).

12   WHEREFORE, Plaintiffs pray for judgment as set forth below.

13

14   ## FIFTH CAUSE OF ACTION
### (Anticipatory Breach)

15   95.    Plaintiffs refer to and hereby incorporate herein the foregoing Paragraphs 1 through

16   52, inclusive, and other material allegations set forth above, as though the same were fully set forth at

17   this place.

18   96.    Plaintiffs and Defendants entered into a series of written agreements to accomplish

19   the financing for the acquisition and rehabilitation of the Project.

20   97.    The Greystone Defendants, and each of them, have expressly and unequivocally

21   repudiated those contracts by stating that they will not further perform, by stating that they are "out"

22   of the deal unless Plaintiffs provide proofs and assurances to which the Greystone Defendants are not

23   entitled, by refusing to rescind the August 21 notice of default, and by sending the September 18

24   notice of acceleration.

25   98.    Plaintiffs are ready, willing and able to perform under the agreements but for the

26   Greystone Defendants' repudiation and anticipatory breach.

27

28

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                                   - 19
First Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, LLP

1    99.    As a direct and legal result of the breaches of the Greystone Defendants, as alleged

2    hereinabove, Plaintiffs, and each of them, have been damaged and injured in an amount to be proven

3    at trial.

4    WHEREFORE, Plaintiffs pray for judgment as set forth below.

5

6
## SIXTH CAUSE OF ACTION
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

7    100.    Plaintiffs refer to and hereby incorporate herein the foregoing Paragraphs 1 through

8    52, inclusive, and other material allegations set forth above, as though the same were fully set forth at

9    this place.

10    101.    Plaintiffs and Defendants entered into a series of written agreements (including but

11    not limited to the Engagement Agreement) to accomplish the financing for the acquisition and

12    rehabilitation of the Project.  Inherent in said agreements is an implied covenant of good faith and fair

13    dealing by each party not to do anything which will deprive the other parties of the benefits of the

14    contract.

15    102.    The Greystone Defendants, and each of them, breached the implied covenants of

16    good faith and fair dealing by interfering as alleged hereinabove and by failing to cooperate with

17    Plaintiffs in the performance of the agreements.

18    103.    As a direct and legal result of the breaches of the Greystone Defendants, as alleged

19    hereinabove, Plaintiffs, and each of them, have been damaged and injured in an amount to be proven

20    at trial.

21    WHEREFORE, Plaintiffs pray for judgment as set forth below.

22

23
## SEVENTH CAUSE OF ACTION
### (Declaratory Relief)

24    104.    Plaintiffs refer to and hereby incorporate herein the foregoing Paragraphs 1 through

25    52, inclusive, and other material allegations set forth above, as though the same were fully set forth at

26    this place.

27    105.    Plaintiffs and Defendants entered into a series of written agreements (including but

28    not limited to the Engagement Agreement) to accomplish the financing for the acquisition and

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                                        - 20
First Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, LLP

1  rehabilitation of the Project, as hereinabove alleged, including but not limited to the bridge loan for

2  the Project, personal guarantees thereof, and written agreements concerning bridge loan for the

3  Project.

4      106.    An actual controversy now exists between Plaintiffs and the Greystone Defendants

5  concerning their respective legal rights, duties and obligations under the bridge loan, the guarantees

6  and the other agreements relating thereto. The Greystone Defendants claim that the bridge loan is in

7  default and that they have accelerated maturity of the bridge loan. Plaintiffs dispute that the bridge

8  loan is in default or has been accelerated.

9      107.    Plaintiffs and each of them desire a judicial determination and declaration of the

10  parties' respective rights, duties and obligations with respect to (1) whether or not the bridge loan is in

11  default and (2) whether or not maturity of the bridge loan has been accelerated. In addition, Plaintiff

12  Oliphant desires a judicial determination and declaration as to whether or not any payment is

13  currently due and payable from Oliphant on the bridge loan, the guarantees and/or the related

14  agreements and, if so, the amount thereof.

15      108.    Plaintiffs and each of them claim an offset against any amounts due any of the

16  Greystone Defendants under the bridge loan, the guarantees and the related agreements by reason of

17  Plaintiffs' respective claims for damages. Accordingly, Plaintiffs and each of them desire a judicial

18  determination and declaration as to (1) whether or not Plaintiffs or any of them are entitled to offset

19  any damages against any amounts due any of the Greystone Defendants under the bridge loan, the

20  guarantees and the related agreements and, if so, the amount of offset, and (2) whether or not any

21  sum is currently due and payable by any of them on the bridge loan, the guarantees and/or the related

22  agreements and, if so, the amount thereof.

23      109.    Plaintiffs and each of them have standing to seek declaratory relief because Plaintiffs,

24  and each of them, face imminent injury if the controversy is not promptly resolved.

25      110.    Under the circumstances, a declaration regarding the respective legal rights and duties

26  of the parties is necessary so that the parties will know how to proceed with respect to the notices

27  given by the Greystone Defendants and their respective rights, duties and obligations under the bridge

28  loan, the guarantees and the related agreements.

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*    - 21
First Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, LLP

1     WHEREFORE, Plaintiffs pray for judgment as set forth below.

2                        **PRAYER FOR RELIEF**

3     WHEREFORE, Plaintiffs SANTA FE POINTE, LP, an Oklahoma limited partnership

4 ("SFP"), THEOTIS F. OLIPHANT ("Oliphant"), an individual, and RANT, LLC, a Delaware limited

5 liability company ("Rant"), pray for judgment against defendants and each of them as follows:

6           A.     For general damages, according to proof;

7           B.     For compensatory damages, according to proof;

8           C.     For punitive and exemplary damages;

9           D.     For any statutory damages or penalties available under statute;

10           E.     For a judicial determination and declaration of the parties' respective rights,

11 duties and obligations with respect to (1) whether or not the bridge loan is in default, (2)

12 whether or not maturity of the bridge loan has been accelerated, (3) whether or not any

13 payment is currently due and payable from Oliphant on the bridge loan, the guarantees and/or

14 the related agreements and, if so, the amount thereof, (4) whether or not Plaintiffs or any of

15 them are entitled to offset any damages against any amounts due any of the Greystone

16 Defendants under the bridge loan, the guarantees and the related agreements and, if so, the

17 amount of offset, and (5) whether or not any sum is currently due and payable by any of them

18 on the bridge loan, the guarantees and/or the related agreements and, if so, the amount

19 thereof

20           F.     For reasonable attorney's fees;

21           G.     For costs of suit herein incurred; and

22           H.     For such other and further relief as the Court deems just or proper.

23

24 DATED: September 24, 2006          FARBER & COMPANY ATTORNEYS, LLP
                                            Attorneys for Plaintiff

25

26                                             By

27                                             Eric J. Farber, SBN 169472
                                            Ann McFarland Draper, SBN 065669

28

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*          - 22
First Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, LLP