**Akerman Senterfitt** LLP
ATTORNEYS AT LAW

Fort Lauderdale
Jacksonville
Los Angeles
Madison
Miami
New York
Orlando
Tallahassee
Tampa
Tysons Corner
Washington, DC
West Palm Beach

335 Madison Avenue
Suite 2600
New York, NY 10017
www.akerman.com
212 880 3800 *tel*   212 880 8965 *fax*

Donald N. David
Shareholder
212 880 3856 *direct tel*
212 905 6410 *direct fax*
donald.david@akerman.com

November 14, 2007

Honorable Judge Robert P. Patterson, U.S.D.J.
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   Greystone CDE, LLC v. Sante Fe Pointe, L.P., *et al.*
       Index Number 07 Civ. 8377 (RPP)

Honorable Judge Patterson:

This firm represents Defendants Sante Fe Pointe, L.P., Sante Fe Pointe Management L.L.P., Rant, L.L.C., and Theotis F. Oliphant (collectively, "Defendants") for the express and limited purpose of opposing Plaintiff's motion for default judgment and contesting the purported service of process. Pursuant to the Court's direction at the November 9, 2007 hearing and oral argument (the "Hearing"), Defendants respectfully submit this letter brief in further support of their opposition to Plaintiff's motion for entry of default judgment and in further support of Defendants' cross-motion to vacate the purported service of the summons, complaint and amended complaint.

1.   **Service Of Process Was Improper**

One issue presently before this Court is whether transmission by Federal Express constitutes service under a contractual provision which provides that,

> "[s]ervice of process may be effected by *mailing* a copy thereof by *registered or certified mail* (or any substantially similar form of *mail*), postage prepaid, to pledgor's address referred to on page 1 of the agreement" (emphasis added).

{NY021783;1}

Honorable Judge Patterson, U.S.D.J.
November 14, 2007
Page 2

---

Defendants[1] assert that it does not.

First, to state the obvious, the referenced "service provision" makes no specific mention of the propriety of either Federal Express or any other private courier (such as UPS or DHL). In contrast, the "notice provision" of the same document (the Partner Guaranty, Pledge and Security Agreement dated December 20, 2006) (the "Agreement"), appearing just three pages before the referenced "service provision," provides that,

> "All notices, demands and other communications hereunder shall be in writing and sent by United States certified or registered mail, postage prepaid, return receipt requested, or by telecopier *or private delivery service*, addressed to the parties at the address specified on page 1 of this Agreement" (emphasis added).

See Attachment "A" at Section 13, pages 13 and 16 of the Agreement.

Both the "notice provision" and the "service provision" were drafted by Plaintiff, which indicates that Plaintiff was not only aware of the distinction between "mail" and "private delivery service," but also that Plaintiff affirmatively chose to not include private delivery service as a valid method of service. While the *notice* provision allowed for the sending of communications by private delivery service, the *service* provision limited service to forms of "mail." That Plaintiff – who drafted both provisions and against whom the contract must be strictly interpreted – omitted "private delivery service" from the contractual "service provision" is dispositive of this issue.

As the Court has been made aware in Defendant's Opposition to Plaintiff's Motion to Dismiss, filed on November 9, 2007 (the "Opposition"), the statutory construction of "mail" is clear - - it does not include private delivery service; "mail" universally refers only to the delivery service provided by the United States Postal Service. Since "generally, the rules applicable to the construction of constitutional provisions, statutes and contracts are the same" (BA Mortg. Co., Inc. v. Unisal Development, Inc., 469 F.Supp. 1258, 1263 (D.C. Colo. 1979), consideration of the statutory interpretation of the word "mail" is illustrative here.

In Continental Sports Corp. v. Dep't of Labor and Industries, 128 Wash. 2d 594, 599-600 (Wash. 1996), a court considering the meaning of the word "mail" stated, "[w]e are not satisfied that sending postal matter by private delivery service is sending it 'by mail.'. . . we are not willing to hold that mail is anything other than postal matter carried by the United States Postal Service." (See Opposition at 7). In W.A. Foote Memorial Hosp. v. City of Jackson, 262 Mich. App. 333, 339 (Mich. Ct. App., 2004), a Michigan court interpreting the word "mail" under a Michigan

---

[1] As counsel for Defendants stated on the record at the Hearing, Defendants also dispute the enforceability of this provision, but the Court has requested briefing only on the question of whether delivery via Federal Express comes within this provision.

Honorable Judge Patterson, U.S.D.J.
November 14, 2007
Page 3

---

statute, found that "[t]he term 'mail' is defined [by Random House] as 'letters, packages, etc., sent or delivered by the postal service.' In turn, 'postal service' refers to the 'post office,' which is 'an office or station of a government postal system at which mail is received and sorted, from which it is dispatched and distributed . . . .[not Fedex, UPS, or DHL or other private delivery services]. Thus, 'certified mail'. . . encompasses only 'mail' sent by the United States Postal Service - not delivery by private carrier services." (See Opposition at 7).

In Kim v. U.S., 461 F. Supp. 2d 34, 40 (D.D.C. 2006), the court interpreting Fed.R.Civ.P. 4(i), held that service was improper because defendants were served by Federal Express which was not "mail" under the statute. (See Opposition at 7). In Northland Pioneer College v. Zarco, 179 Ariz. 44, 47 (Ariz. Ct. App. 1994), the court, interpreting the word "mail" in an Arizona statute, found that "[w]hile it is undisputed that there are many private companies engaged in the delivery of documents for a fee, the only entity authorized to deliver mail is the United States Postal Service." (See Opposition at 7).[2] Quite dispositive, in Pearson v. Board of Educ. of City of New York, 2004 WL 2297354 (S.D.N.Y. Oct. 12, 2004), the court held that, "[s]ending a copy of the summons and complaint via an overnight-mail courier such as Federal Express does not fulfill the second step of the 'leave and mail' provision" under Rule 4 of the Federal Rules of Civil Procedure.

Plaintiff points to two cases in his moving papers and at oral argument to support his dubious position that service by "mail" should be construed to include service by Federal Express. Both cases are easily distinguishable because they concern pre-litigation demands, not service of *process*. First Plaintiff's counsel cited to Vecchio v. U.S., 2005 WL 2978699 (S.D.N.Y. Nov. 3, 2005), in which the only mention of service by Federal Express was made in a parenthetical in regard to whether "presentment" under the Federal Tort Claims Act is complete upon mailing or receipt of notice. There is no discussion whatsoever of the interpretation of the word "mail" in the Vecchio opinion, and accordingly, this case is inapposite to the issues in the instant motion. Plaintiff also cites Secreto v. International Business Machines Corp., 755 N.Y.S.2d 566 (N.Y. Sup. Ct., 2003), which involved the sending of a notice of demand for failure to prosecute.[3] It is respectfully submitted that there is a marked difference between service of process, the mechanism by which litigation is commenced (and jurisdiction obtained) over a defendant, and a demand letter sent to a plaintiff for failure to prosecute. Moreover, the only case which has cited Secreto as supporting precedent, did so in the dissent. See New York Cent. Mut. Fire Ins. Co. v. Czumaj, 780 N.Y.S.2d 254 (4th Dept. 2004). On the contrary, the majority in New York Cent Mut. Fire Ins. Co., which dealt with service of a demand for arbitration, held that service of the demand by Federal Express was "jurisdictionally defective" because Federal Express was a not a prescribed means of service. Id. at 255.

---

[2]    It is respectfully submitted that speed of delivery or whether Federal Express is "better" than mail is not the relevant inquiry; it is whether Defendants contracted to limit the statutory service requirements (i.e. personal in-hand service) to include Federal Express. We respectfully submit they did not.

[3]    In Secreto, the court decided that where plaintiff's counsel had received the notice of demand sent by Federal Express, and had continued to neglect his claim, the action should be dismissed.

{NY021783;1}

Honorable Judge Patterson, U.S.D.J.
November 14, 2007
Page 4

---

Similarly, in the instant case, Federal Express was <u>not</u> a specifically prescribed method of service as set forth in a contract drafted by this Plaintiff. Defendants never agreed to service by Federal Express or any other private delivery service. Nonetheless, Plaintiff attempts to argue that "the Federal Express service was better than both [certified and registered mail]." <u>See</u> November 9, 2007 Hearing Transcript ("Transcript") at 8. However, as was addressed at the Hearing, the issue is not whether service by Federal Express is "better" than service by mail; the question is whether service by Federal Express *is* service by a "substantially similar form of mail" (i.e., whether private delivery service was an agreed-to alternative to certified or registered mail). <u>See</u> Transcript at 15.

To that end, at the Hearing, this Court inquired of Defendants' counsel: "What form of mail is substantially similar to certified or registered mail? What other form of mail is there available in the post office that's the substantial equivalent of those methods?" <u>See</u> Transcript at 14. In response, Defendants note that the United States Postal Service offers multiple services which we believe would qualify as the substantial equivalent of registered or certified mail. For example, the United States Postal Service ("USPS") offers Express Mail,[4] which gives buyers the option of next-day or second-day delivery guaranteed. Express Mail provides proof of delivery and signature confirmation. Further, a sender of Express Mail can even request a return receipt upon delivery. <u>See</u> http://www.usps.com/shipping/expressmail.htm. The USPS also offers Priority Mail, which includes a delivery confirmation,[5] and guarantees delivery within two-to-three days. The sender of Priority Mail can also purchase a range of additional services, including, signature confirmation,[6] delivery confirmation,[7] and return receipt requested.[8] <u>See</u> http://www.usps.com/shipping/prioritymail.htm.

Moreover, a further distinction between mail service offered by the USPS and Federal Express exists where the recipient's signature is required. A number of the types of mail offered by the USPS require a signature from the recipient at the time of delivery. These types of mail include items sent by Express Mail, Certified Mail, Cash-On-Delivery ("COD"), Insured Mail, Registered Mail, Return Receipt, and Signature Confirmation.[9] While Federal Express allows a

---

[4]     <u>See</u> Attachment "B" (Express Mail Envelope and Label).

[5]     <u>See</u> Attachment "C" (Priority Mail Envelope and Form).

[6]     <u>See</u> Attachment "D" (Signature Confirmation Form).

[7]     <u>See</u> Attachment "E" (Delivery Confirmation Form).

[8]     <u>See</u> Attachment "F" (Return Receipt Requested Form).

[9]     <u>See</u> www.usps.com > help > frequently asked questions > glossary > accountable mail. In the instant case, all forms of acceptable *mail* service require a signature confirmation. Certified mail, registered mail and [we submit] USPS express mail are all acceptable forms of *mail* as provided for under the agreement.

{NY021783;1}

Honorable Judge Patterson, U.S.D.J.
November 14, 2007
Page 5

---

**recipient** to file a "signature on file waiver", that option is not available for any of these types of *mail*. The USPS does not offer a way for the recipient to wave the signature requirement in advance;[10] rather, in the case of mail, only the ***sender*** can waive the signature requirement, never the recipient. Id.

Clearly, Federal Express is not a contractually appropriate substitute for the requirement of delivery of mail through the USPS.

**2.      What Is The Definition of Postage?**

The "service provision" in the referenced Agreement specifically requires "Postage Prepaid" for valid service by mail under that provision. However, it is respectfully submitted that Federal Express packages cannot by definition be sent "Postage Prepaid." The USPS defines the word postage to mean, "[p]ayment for delivery service that is affixed or imprinted to a mailpiece, usually in the form of a postage stamp, permit imprint, or meter impression."[11] In Norman G. Jensen, Inc. v. U.S., the United States Custom's Court considered the definition of postage stamp, and stated that:

> Reference to dictionary and lexicographic definitions of the term "postage stamp" offered in evidence as well as independently consulted by this court indicates the presence of two prerequisites in order to be included within the definition: (1) its issuance or specific authorization by a government, and (2) its issuance as a prepayment of a postal charge" (emphasis added). Given this definition of "postage", Federal Express cannot sell postage or otherwise arrange for "postage prepaid." As such, Federal Express or other means of private delivery service cannot satisfy the service provision requiring "mail" that is sent "Postage Prepaid.

490 F.Supp. 497, 502 (Cust. Ct. 1980).

Moreover, Plaintiff has provided no evidence of any prepayment of the delivery fee, let alone "prepayment of postage." To the contrary, the Affidavit of Service filed by Plaintiff fails to state whether the Federal Express delivery fee (for the Summons and Complaint) was prepaid. Moreover, Plaintiff's own documents show that the delivery fee was not prepaid but was in fact billed to counsel for Plaintiff. Each of the four Shipment Details pages attached as Exhibit "1" to the Application for Default Judgment (lodged October 25, 2007) specifically state "Bill transportation to: 148437351", which is identified as "Shipper's account number".

---

[10]    See http://www.usps.com/send/waystosendmail/extraservices/signatureconfirmationservice.htm.

[11]    See www.usps.com > help > frequently asked questions > glossary of postal terms.

{NY021783;1}

### 3. Defendant Has Not Waived Service

Plaintiff argues in its Memorandum of Law in Support of Motion for Entry of Default ("Plaintiff's Motion Papers"), that Defendants have waived service in this matter. *See* Plaintiff's Motion Papers at 4-6 & Transcript at 6-7. This contention is without merit. Defendants have repeatedly requested that Plaintiff comply with the service provision. See Opposition at 4-11. Further, Plaintiff has attempted to distort the words of Ms. Draper for their own benefit -- Ms. Draper's October 1, 2007 letter may state that Ms. Draper is counsel to these Defendants, but it certainly does not state that she represents these Defendants in the NY Action. As this Court is aware, Ms. Draper is counsel to the NY Defendants in the CA action, a totally separate action which does not give Ms. Draper authority to accept service in this matter. Plaintiff's refusal and Defendants' repeated demands are illustrative of the fact the Defendants have not purposefully waived service – a jurisdictional prerequisite that they demand to this day.

Waiver is "[t]he voluntary relinquishment or abandonment – express or implied – of a legal right or advantage." Black's Law Dictionary (8th ed. 2004). Generally when a defendant's involvement in a case is merely procedural, rather than focusing on the underlying merits, courts have generally held the defendant has not waived jurisdictional defenses. In Broughton v. Chrysler Corporation, the court held that a defendant did not waive its objections to insufficient service of process by making a general appearance in the action, filing an answer, filing an amended answer, and taking part in a pretrial scheduling conference. 144 F.R.D. 23, 28-29 (W.D.N.Y. 1992). The court in Broughton distinguished its case from one in which defendants actively and extensively participated in litigation over a period of months without alerting its adversary to its objection to service of process. Id. In that instance, the court noted that the Broughton defendants had raised the issue of insufficiency of process in its answer and amended answer and had in no way "lulled Plaintiff into believing that no objection to service would be made." Id.

Similarly, in Elbex Video Kabushiki Kaisha v. Taiwan Regular Electronics, Co., 1994 WL 185896 (S.D.N.Y. May 10, 1994), the court held that defendant's request for an extension of time to file an answer coupled with its participation in a settlement negotiation was not enough to lull plaintiff into believing that no objection to service would be made, and therefore the court found no waiver.[12] Moreover, in Howard v. Klynveld Peat Marwick Goerdeler, 977 F.Supp. 654, 659 (S.D.N.Y. 1997), the Court found there was no waiver where defense counsel made an appearance, wrote a letter to the court regarding the motion to dismiss, requested an extension of time to answer, and requested sanctions against plaintiff.

---

[12] See also Grammenos v. Lemos, 457 F.2d 1067, 1070 (2d Cir .1972) (taking basic procedural steps, such as appearing, do not constitute a waiver of jurisdictional objections); Securities Training Corp. v. Securities Seminar, Inc., 633 F.Supp. 938, 939 (S.D.N.Y. 1986) (no waiver of jurisdictional defense where parties participated in settlement negotiations for ten months); Bernadin v. I.N.S., 2002 WL 1267992, *2 (E.D.N.Y. Apr 22, 2002) (repeated requests for extension of time to answer do not constitute waiver).

{NY021783;1}

In the case at bar, however, Defendants alerted opposing counsel to the deficiency of service more than once, by letter as well as by e-mail. Defendants certainly have done nothing to "lull" Plaintiff into believing that Defendants had waived any service of process objection. In fact, Defendants indicated the contrary. Therefore, Defendants have not waived their right to challenge Plaintiff's improper service. With access to PACER being so widespread, the mere fact that an attorney in another jurisdiction was aware of the filing of a case, or inquired as to whether, when or how it had been served, or disputed service and demanded proper formal service (or Rule 4(d) waivers), cannot be construed as a knowing waiver of service.

### 4. Plaintiff Has Not Satisfied The Standard For Default Judgment

Assuming *arguendo* that "mail" does include service by Federal Express – which it does not – Plaintiff is still not entitled to the drastic remedy of a default judgment under Fed.R.Civ.P. Rule 55.[13] When there is doubt as to whether a default judgment should be entered, the determination must be resolved in favor of the opposing party. Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993). See Opposition at 4. When a party opposes default, the Court should respectfully consider the following three factors in making its determination: (1) whether and to what extent the default was willful; (2) whether defendants have a meritorious defense; and (3) whether the adversary would suffer prejudice if the default were set aside. Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 154 (2d Cir. 1999); S.E.C. v. McNulty, 137 F.3d 732, 738 (2d Cir. 1998). See Opposition at 4. Plaintiff has simply not met (nor even attempted to meet) this standard.

First, the alleged default was not willful in this case. To the contrary, Defendants requested proper service on several occasions, the most recent of which being in at the Hearing before this Court on November 9, 2007. See Opposition at 7-9. Secondly, Defendants have a meritorious defense to the underlying claims in this action, as evidenced by the first filed and ongoing existence of substantially similar litigation pending in California.[14] See Opposition at 11-12. Thirdly, and perhaps most importantly, Plaintiff has not alleged an iota of prejudice it would suffer if the alleged default were laid aside. The reason is quite obvious: there is in fact no prejudice to be suffered. As set forth in the Opposition, in order for a plaintiff to establish prejudice entitling it to a default, there must be a showing that "the delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." Davis v. Musler, 713 F.2d 907, 916 (2d Cir. 1983). See Opposition at 12. Plaintiff has not even attempted to make a showing that these criteria have been fulfilled. As such,

---

[13] For a thorough discussion of Plaintiff's failure in meeting the standard necessary to grant a default judgment, this Court is respectfully referred to the Opposition at p.4.

[14] As stated in the Opposition, the parties to this action are (with another Greystone entity) the same parties as in the California action (with additional parties in the California action), though they are aligned differently; *i.e.*, the Defendants in this action are Plaintiffs in the California action, and *vice versa*. The issues and parties in the California Action and in this New York action are related. However, the New York Action is but a piece of the California Action, viz. the California Action will resolve the New York Action, but not *vice versa*.

Honorable Judge Patterson, U.S.D.J.
November 14, 2007
Page 8

---

Plaintiff has failed to meet its burden of establishing any prejudice by allowing Defendants time to respond to the Complaint, once properly served.

### Conclusion

For the foregoing reasons, as well as those articulated in the Opposition and as articulated at the Hearing, we respectfully urge the Court to deny Plaintiff's motion for an entry of a default judgment and instead to determine that purported service upon Defendants was improper, to vacate the purported service of the summons, complaint and amended complaint, the affidavit of service filed by Plaintiff's counsel and the Clerk's Certificate of Default issued therefrom.

Respectfully submitted,

**AKERMAN SENTERFITT LLP**

By: _/s/ Donald N. David_
Donald N. David
Shareholder
For the Firm

cc:   Stephen Harnik, Esq.
       *Counsel for Plaintiff*
       *Via ECF and Facsimile*

{NY021783;1}