# Exhibit A

## Part 1 of  8

1  Mark D. Kemple (State Bar No. 145219)
   Erik K. Swanholt (State Bar No. 198042)
2  JONES DAY
   555 South Flower Street
3  Fiftieth Floor
   Los Angeles, CA  90071-2300
4  Telephone:   (213) 489-3939
   Facsimile:    (213) 243-2539
5  Email:     mkemple@jonesday.com
   Email:     ekswanholt@jonesday.com
6
7  Attorneys for Defendants
   Greystone Servicing Corporation, Inc., and
8  Greystone CDE, LLC

9           UNITED STATES DISTRICT COURT

10          NORTHERN DISTRICT OF CALIFORNIA

11                (OAKLAND DIVISION)

12

13  SANTA FE POINTE, LP, an              CASE NO. C07-05454 JCS
    Oklahoma limited partnership; SANTA
14  FE MANAGEMENT, LLC, an              NOTICE OF REMOVAL OF
    Oklahoma limited liability company;  ACTION UNDER 28 U.S.C.
15  RANT, LLC, a Delaware limited        §1441(A)
    liability company; and THEOTIS F.
16  OLIPHANT, an individual,            (DIVERSITY)

17              Plaintiffs,

18        v.

19  GREYSTONE SERVICING
    CORPORATION, INC., a Georgia
20  corporation; GREYSTONE CDE,
    LLC, a Delaware limited liability
21  company, and DOES 1 through 100,
    inclusive,
22
23              Defendants.

24

25

26

27

28

LAI-2909459

1  **TO THE CLERK AND HONORABLE JUDGES OF THE UNITED**

2  **STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF**

3  **CALIFORNIA:**

4         **PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. §§ 1332 and 1441(a),

5  Defendants Greystone Servicing Corporation, Inc. and Greystone CDE, LLC

6  (collectively, "Defendants" or "Greystone") hereby remove the above-entitled

7  action from the Superior Court of California for the County of Alameda to the

8  United States District Court for the Northern District of California.  The grounds

9  for removal are as follows:

10                               **INTRODUCTION**

11         1.     On September 7, 2007, an action was commenced against Defendants

12  in the Superior Court of California for the County of Alameda, Case Number RG

13  07-345170, entitled *Santa Fe Pointe, LP, et al. v. Greystone Servicing Corporation,*

14  *Inc., et al.*.  On September 25, 2007, Plaintiffs filed and served a First Amended

15  and Supplemental Complaint for Damages and Declaratory Relief ("FAC").  Copies

16  of the summonses and complaints in that action are attached hereto as Exhibits

17  "A1" and "A2."

18         2.     Defendants first received a copy of the FAC on September 25, 2005,

19  when their designated service agents were personally served.  Defendants filed their

20  Answer to Plaintiffs' FAC in the Superior Court of California for the County of

21  Alameda on October 25, 2007.  No other proceedings have occurred in the state

22  court action.

23                       **DIVERSITY JURISDICTION EXISTS**

24         3.     This action is a civil action of which this Court has original

25  jurisdiction under 28 U.S.C. § 1332, and is one that may be removed to this Court

26  by Defendants under 28 U.S.C. § 1441(a).  This is an action between citizens of

27  different states, and the amount in controversy as to each of the Plaintiffs exceeds

28  the sum of $75,000, exclusive of interest and costs.

**A.**    **The Amount In Controversy Requirement Is Satisfied.**

4.    Plaintiffs' FAC alleges seven separate causes of action including claims for monetary recovery under theories of tort and contract. The substance of these claims is that Plaintiffs failed to realize the financial incentives that they had hoped to attain through the development of a multi-million dollar Low Income Housing Tax Credit project in conjunction with a mortgage loan insured by the Federal Housing Authority's ("FHA") Office of Housing and Urban Development ("HUD"), and incurred additional expenses in their pursuit of the project. *See* Ex. A2 (FAC) ¶¶ 1, 15, 17, 28, 33, 65, 81, 94. Specifically, Plaintiffs allege that "[t]he tax credit developer [for such projects] gets paid a fee equal to 14% of the total allowable project costs," and have further alleged that this particular project was to be financed through the issuance of "$7,095,000 of tax exempt bonds." *Id.* ¶¶ 1, 17. Plaintiffs further allege the incurrence of approximately $215,000 in costs related to the issuance of those bonds. *Id.* ¶ 28. Based on these allegations, Plaintiffs seek general damages, compensatory damages, punitive damages, exemplary damages, and attorneys' fees. *Id.* at p. 22.[1] Therefore, it is "facially apparent from the complaint that the jurisdictional amount [in excess of $75,000] is in controversy." *See Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373 (9th Cir. 1997) (internal quotations and citation omitted). The amount in controversy as to each of the Plaintiffs exceeds $75,000. Accordingly, this action meets the jurisdictional amount in controversy requirement of this Court.

**B.**    **The Parties Have Complete Diversity of Citizenship.**

5.    Plaintiffs allege that Plaintiff Theotis F. Oliphant ("Oliphant") "maintain[s] his principal place of residence in the State of California." Ex. A2

---

[1] The amount in controversy includes: (i) claims for general and special damages excluding costs and interest; (ii) a reasonable projection of attorneys' fees through resolution of the controversy if fees are recoverable by statute or contract; and (iii) punitive damages if recoverable. *See Bell v. Preferred Life Assurance Soc'y*, 320 U.S. 238, 240 (1943); *Brady v. Mercedes-Benz USA, Inc.*, 243 F.Supp.2d 1004, 1010-11 (N.D. Cal. 2002).

1 (FAC) ¶ 5. Defendants are informed and believe that Oliphant was, at the time of

2 the filing of this action, and still is, residing and domiciled in, and therefore a

3 citizen of, the State of California.

4   6. Plaintiffs allege that Plaintiff Santa Fe Management, LLC is a limited

5 liability company organized under the laws of the State of Oklahoma. Ex. A2

6 (FAC) ¶ 3. Defendants are informed and believe that Santa Fe Management, LLC's

7 sole member, Oliphant, was, at the time of the filing of this action, and still is, a

8 citizen of the State of California.[2]

9   7. Plaintiffs allege that Plaintiff Santa Fe Pointe, LP is a limited

10 partnership organized under the laws of the State of Oklahoma. Ex. A2 (FAC) ¶ 2.

11 Defendants are informed and believe that Plaintiff Santa Fe Pointe, LP's sole

12 general partner, Santa Fe Management, LLC, and sole limited partner, Oliphant,

13 were, at the time of the filing of this action, and still are, citizens of the State of

14 California.[3]

15   8. Plaintiffs allege that Plaintiff Rant, LLC is a limited liability company

16 organized under the laws of the State of Delaware. Ex. A2 (FAC) ¶ 4. Defendants

17 are informed and believe that Rant, LLC consists of two members, Oliphant and

18 Robin van der Vegt, both of whom were, at the time of the filing of this action, and

19 still are, residing and domiciled in, and therefore citizens of, the State of California.

20   9. Plaintiffs erroneously allege that Defendant Greystone Servicing

21 Corporation, Inc. has "its principal place of business in New York, New York."

22 Ex. A2 (FAC) ¶ 6. Defendant Greystone Servicing Corporation, Inc. was, at the

23 time of the filing of this action, and still is, a corporation formed under the laws of

24

25  [2] Unlike a corporation, for purposes of diversity jurisdiction, an LLC is not a citizen of the state in which it is organized. Rather, like a partnership, "an LLC is a citizen of every state of which its owners/members are citizens." *Johnson v.*

26 *Columbia Props. Anchorage, Ltd. P'ship*, 437 F.3d 894, 899 (9th Cir. 2006).

27  [3] It has been long established by the Supreme Court that, for purposes of diversity jurisdiction, an artificial entity such as a limited partnership is treated as having the citizenship of all its members. *See Carden v. Arkoma Assocs.*, 494 U.S.

28 185, 195-96 (1990)).

1  the State of Georgia, with its principal place of business in the Commonwealth of

2  Virginia.

3       10.    Plaintiffs erroneously allege that Defendant Greystone CDE, LLC "is a

4  Delaware *corporation* having its principal place of business in New York,

5  New York," and that it "was not qualified to do business as a foreign corporation in

6  the State of California but in fact did business in said state." Ex. A2 (FAC) ¶ 7

7  (emphasis added). Defendant Greystone CDE, LLC is a *limited liability company*

8  organized under the laws of the State of Delaware, consisting of two members,

9  Greystone Development Corporation and Greystone Funding Corporation, both of

10  which were, at the time of the filing of this action, and still are, corporations formed

11  under the laws of the Commonwealth of Virginia, with their principal places of

12  business in the State of New York.

13       11.    For diversity purposes, "a corporation shall be deemed to be a citizen

14  of any State by which it has been incorporated and of the State where it has its

15  principal place of business[.]" 28 U.S.C. § 1332(c)(1).

16       12.    Unless it is shown that a corporation's "activities do not substantially

17  predominate in any one state," the Ninth Circuit applies a "place of operations"

18  analysis to determine the principal place of business of a corporation. *Tosco Corp.*

19  *v. Cmtys. for a Better Env't*, 236 F.3d 495, 500 (9th Cir. 2001); *see also Indus.*

20  *Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1094 (9th Cir. 1990). Under this

21  approach, the court may look to factors such as "the location of employees, tangible

22  property, production activities, sources of income, and where sales take place."

23  *Tosco Corp.*, 236 F.3d at 500. Thus, to establish a principal place of business in a

24  state, the amount of business activity in that state must be "significantly larger than

25  any other state in which the corporation does business." *Id.*; *see also United*

26  *Computer Sys., Inc. v. AT&T*, 298 F.3d 756, 763 (9th Cir. 2002); *Indus. Tectonics,*

27  *Inc.*, 912 F.2d at 1093-94.

28

13.    Alternatively, "when no state contains a substantial predominance of the corporation's business activities," courts may apply the "nerve center" test. Under this approach, a corporation's principal place of business is located "in the state where the majority of its executive and administrative functions are performed." *Tosco Corp.*, 236 F.3d at 500. Thus, even in the face of significant California operations, courts have declined to hold that California is a corporation's principal place of business, where those operations do not clearly dominate operations in other states. For example, in *Ho v. Ikon Office Solutions, Inc.*, 143 F. Supp. 2d 1163, 1165-67 (N.D. Cal. 2001), a court in this district concluded that the defendant's principal place of business was not California— even though it had the greatest number of employees in California— because no single state had more than 10% of its workforce, no single state generated more than 10% of its annual revenue, and its administrative and executive functions took place elsewhere.

14.    Defendant Greystone Servicing Corporation, Inc.'s executive functions are located outside the State of California. Its business operations in California do not substantially predominate or outweigh its business operations in other states. Rather, the substantial predominance of Greystone Servicing Corporation, Inc.'s business activities takes place in the Commonwealth of Virginia, as most of its employees, and significant operational and administrative functions are located in Warrenton, Virginia.

15.    The executive functions of Greystone Development Corporation, which is one of two members of Defendant Greystone CDE, LLC, are located outside the State of California. Its business operations in California do not substantially predominate or outweigh its business operations in other states. Rather, the substantial predominance of Greystone Development Corporation's business activities takes place in the State of New York, as most of its employees, and significant operational and administrative functions are located in New York, New York.

16.    The executive functions of Greystone Funding Corporation, which is one of two members of Defendant Greystone CDE, LLC, are located outside the State of California. Its business operations in California do not substantially predominate or outweigh its business operations in other states. Rather, the substantial predominance of Greystone Funding Corporation's business activities takes place in the State of New York, as most of its significant operational and administrative functions are located in New York, New York.

17.    Applying the above facts to the place of operations test, California is not the principal place of business for either Greystone Servicing Corporation, Inc. or Greystone CDE, LLC. The facts demonstrate that the substantial predominance of Defendants' business activities does not take place in the State of California. Rather, the substantial predominance of Defendants' business activities takes place in the Commonwealth of Virginia for Greystone Servicing Corporation, Inc., and in the State of New York for the constituent members of Defendant Greystone CDE, LLC.

18.    This action is therefore brought between citizens of different states under the definition of 28 U.S.C. § 1332.

## COMPLIANCE WITH STATUTORY REQUIREMENTS

**A.    This Notice of Removal Is Timely.**

19.    This Notice of Removal is being filed within thirty (30) days after Defendants were served with the Summons and FAC in this action. Therefore, this Notice of Removal is timely filed under 28 U.S.C. § 1446(b).

20.    The removal statute also provides that a case may not be removed on the basis of diversity jurisdiction more than one year after commencement of such action. 28 U.S.C. § 1446(b). This action was commenced less than one year ago.

**B.**    **All Properly Joined and Served Defendants Join In this Notice.**

21.    This Notice of Removal is being filed jointly by Defendants Greystone Servicing Corporation, Inc. and Greystone CDE, LLC, which are the only named defendants that have been served in the state court action.

**C.**    **Copies of All Specified Documents Served Upon Defendants Have Been Filed With This Court.**

22.    Pursuant to 28 U.S.C. § 1446(a), Defendants hereby attach collectively as Exhibits "A1" and "A2" a copy of "all process, pleadings, and orders" served upon Defendants in the state court action. Defendants will provide the complete state court file upon request by the district court pursuant to 28 U.S.C. § 1447(b).

**D.**    **Defendants Will Promptly Give Notice.**

23.    As required by 28 U.S.C. § 1446(d), Counsel for Defendants will promptly file a copy of this Notice of Removal with the Clerk of the Superior Court of California for the County of Alameda, and will give notice of such filing to counsel for Plaintiffs.

* * *

WHEREFORE, Defendants respectfully remove the above-entitled action from the Superior Court of California for the County of Alameda to this Court pursuant to 28 U.S.C. §§ 1332 and 1441(a).


Dated:        October 25, 2007        JONES DAY


By: _____
Mark D. Kemple
Erik K. Swanholt

Attorneys for Defendants Greystone Servicing Corporation, Inc. and Greystone CDE, LLC

# EXHIBIT A-1

CM-010

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State bar number, and address):*<br>Eric J. Farber, SBN 169472 / Ann McFarland Draper, SBN 065669<br>Farber & Company Attorneys, LLP<br>847 Sansome Street, Suite LL / San Francisco, CA 94111<br><br>TELEPHONE NO.: 415-434-5320    FAX NO.: 415-434-5380<br>ATTORNEY FOR *(Name):* Plaintiffs | *FOR COURT USE ONLY*<br><br>ENDORSED<br>FILED<br>ALAMEDA COUNTY<br><br>SEP 0 7 2007<br><br>CLERK OF THE SUPERIOR COURT<br>By KMEL DRILLON, Deputy |

| |
|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF Alameda<br>STREET ADDRESS: 1225 Fallon Street<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: Oakland, CA 94612<br>BRANCH NAME: Northern Division |
| CASE NAME:<br>Santa Fe Point, LP, et al. v. Greystone Servicing Corporation, Inc., et al. |

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: RG 07345170 |
|---|---|---|---|---|
| ☑ Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | ☐ Limited<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter    ☐ Joinder<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| ☐ Auto (22) | ☐ Breach of contract/warranty (06) | (Cal. Rules of Court, rules 3.400–3.403) |
| ☐ Uninsured motorist (46) | ☐ Rule 3.740 collections (09) | ☐ Antitrust/Trade regulation (03) |
| Other PI/PD/WD (Personal Injury/Property | ☐ Other collections (09) | ☐ Construction defect (10) |
| Damage/Wrongful Death) Tort | ☐ Insurance coverage (18) | ☐ Mass tort (40) |
| ☐ Asbestos (04) | ☐ Other contract (37) | ☐ Securities litigation (28) |
| ☐ Product liability (24) | Real Property | ☐ Environmental/Toxic tort (30) |
| ☐ Medical malpractice (45) | ☐ Eminent domain/inverse | ☐ Insurance coverage claims arising from the |
| ☐ Other PI/PD/WD (23) | condemnation (14) | above listed provisionally complex case |
| Non-PI/PD/WD (Other) Tort | ☐ Wrongful eviction (33) | types (41) |
| ☑ Business tort/unfair business practice (07) | ☐ Other real property (26) | Enforcement of Judgment |
| ☐ Civil rights (08) | Unlawful Detainer | ☐ Enforcement of judgment (20) |
| ☐ Defamation (13) | ☐ Commercial (31) | Miscellaneous Civil Complaint |
| ☐ Fraud (16) | ☐ Residential (32) | ☐ RICO (27) |
| ☐ Intellectual property (19) | ☐ Drugs (38) | ☐ Other complaint *(not specified above)* (42) |
| ☐ Professional negligence (25) | Judicial Review | Miscellaneous Civil Petition |
| ☐ Other non-PI/PD/WD tort (35) | ☐ Asset forfeiture (05) | ☐ Partnership and corporate governance (21) |
| Employment | ☐ Petition re: arbitration award (11) | ☐ Other petition *(not specified above)* (43) |
| ☐ Wrongful termination (36) | ☐ Writ of mandate (02) | |
| ☐ Other employment (15) | ☐ Other judicial review (39) | |

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties    d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel    e. ☐ Coordination with related actions pending in one or more courts
      issues that will be time-consuming to resolve        in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence    f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary  b. ☐ nonmonetary; declaratory or injunctive relief  c. ☐ punitive
4. Number of causes of action *(specify):* 2
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: September 7, 2007
Eric J. Farber
_____
(TYPE OR PRINT NAME)                    ► _____ (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov<br>American LegalNet, Inc. |

Exhibit A-1, Page 8



1   Eric J. Farber, SBN 169472
    Ann McFarland Draper, SBN 065669
2   FARBER & COMPANY ATTORNEYS, LLP
    847 Sansome Street, Ste. LL
3   San Francisco, California 94111
    Telephone 415.434.5320
4   Facsimile 415.434.5380

5   Attorneys for Plaintiff

**F I L E D**
ALAMEDA COUNTY
SEP 0 7 2007
CLERK OF THE SUPERIOR COURT
By_____
                        Deputy

6

7

8               **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                  **IN AND FOR THE COUNTY OF ALAMEDA**
                        **UNLIMITED JURISDICTION**

10

11  SANTA FE POINTE, LP, an Oklahoma limited        **Case No.:** RG 07345170
    partnership; RANT, LLC, a Delaware limited liability
12  company; and THEOTIS F. OLIPHANT, an             **COMPLAINT FOR DAMAGES**
    individual,
13                                                    **JURY TRIAL DEMANDED**
              Plaintiffs,
14        vs.

15  GREYSTONE SERVICING CORPORATION,
    INC., a Georgia corporation; GREYSTONE CDE,
16  LLC, a Delaware limited liability company; and
    DOES 1 through 100, inclusive,
17
              Defendants.
18

19

20       Plaintiffs SANTA FE POINTE, LP, an Oklahoma limited partnership ("SFP"), THEOTIS F.

21  OLIPHANT ("Oliphant"), an individual, and RANT, LLC, a Delaware limited liability company

22  ("Rant"), allege as follows:

23                        **DEMAND FOR JURY TRIAL**

24       Plaintiffs here demand a jury trial to the fullest extent available under the law, the United

25  States Constitution, and Section 16 of Article I of the California Constitution..

26                        **INTRODUCTORY ALLEGATIONS**

27       1.    This is an action for damages, declaratory relief and accounting arising out of the

28  conduct of defendants with respect to Plaintiffs' efforts to acquire and rehabilitate a 224-unit

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                    - 1
Complaint for Damages
Farber & Company Attorneys, LLP
                            Exhibit A-1, Page 9

1  apartment building in Oklahoma City (the "Project") as a tax-credit developer of a Low Income

2  Housing Tax Credit project offered through the FHA's Office of Housing and Urban Development

3  ("HUD"). The Federal Government subsidizes tax credit projects to encourage private developers to

4  acquire, construct, renovate, housing stock that will be income restricted for tenants, and maintained

5  by the private developer. The tax-credit developer gets paid a fee equal to 14% of the total allowable

6  project costs, and the project financing is non-recourse.

7                                    **PARTIES**

8           2.      Plaintiff SANTA FE POINTE, LP ("SFP"), is an Oklahoma limited partnership

9  formed for the purpose of acquiring the Project, and having its principal place of business in

10  Oklahoma City, Oklahoma.

11          3.      Plaintiff RANT, LLC ("Rant") is a Delaware limited liability company having its

12  principal place of business in the County of Alameda, State of California. Plaintiff Rant is now, and at

13  all times material hereto was, qualified to do business as a foreign corporation in the State of

14  California.

15          4.      Plaintiff THEOTIS F. OLIPHANT is an individual who does now, and at all times

16  material hereto did, maintain his principal residence in the State of California, County of Alameda.

17  OLIPHANT is now, and at all times material hereto was, the general partner of Plaintiff SFP and the

18  managing member of Plaintiff RANT.

19          5.      Defendant GREYSTONE SERVICING CORPORATION, INC. ("Greystone

20  Servicing") is a Georgia corporation having its principal place of business in New York City, New

21  York. Defendant Greystone Servicing is now, and at all times material hereto was, qualified to do

22  business as a foreign corporation in the State of California. Plaintiffs are informed and believe and on

23  that basis allege that Defendant Greystone Servicing in fact does business in said state. Defendant

24  Greystone Servicing has failed to designate any principal place of business in the State of California;

25  the only California address identified by Defendant Greystone Servicing on its California filings is the

26  address of its agent for service of process, which is 818 West Seventh St., Los Angeles, CA 90017.

27  Venue for Defendant Greystone Servicing is therefore proper in the County of Alameda and in any

28  other county in the State of California.

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                                    - 2
Complaint for Damages
Farber & Company Attorneys, LLP          Exhibit A-1, Page 10

6.     GREYSTONE CDE, LLC ("Greystone CDE") is a Delaware corporation having its principal place of business in New York City, New York.    Plaintiffs are informed and believe and on that basis allege that at all times material hereto, defendant Greystone CDE was not qualified to do business as a foreign corporation in the State of California but in fact did business in said state. Defendant Greystone CDE has failed to designate any principal place of business in the State of California.  Venue for Defendant Greystone CDE is therefore proper in any county in the State of California.

7.     Defendants Greystone Servicing and Greystone CDE are hereinafter collectively referred to as the "Greystone Defendants."  Plaintiffs are informed and believe and on that basis allege that the Greystone Defendants are owned and operated in such a way that each benefited financially from the conduct of the others alleged hereinbelow.

8.     The Defendants sued herein as DOES 1 through 100, inclusive, are either natural persons or business entities, whose true names, capacities and (in the case of business entities) exact form of entity, are currently unknown to Plaintiffs, who therefore sue said defendants by such fictitious names.   Plaintiffs are informed and believe and on that basis allege:

A.     that each of these fictitiously-named defendants is (either alone or in concert with named Defendants) responsible in some manner for the occurrences, injuries and damages herein alleged, has participated or is participating in some manner in the actionable conduct herein alleged, and is liable to Plaintiffs together with Defendants named herein for damages and/or other relief prayed for herein;

B.     that Plaintiffs' injuries as herein alleged were legally caused by the acts or omissions of said fictitiously-named defendants;

C.     that at all times mentioned herein, each of the named and fictitiously named Defendants was the officer, director, employee, partner, joint venturer, servant, agent, subsidiary, division and/or alter ego of each of his, her or its co-Defendants, was acting within the course and scope of said employment, partnership, joint venture, joint enterprise, service or agency relationship, with the full knowledge and consent of each of the other defendants and within the authority granted to said defendants, and

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*
Complaint for Damages                                                        - 3
Farber & Company Attorneys, LLP

Exhibit A-1, Page 11

1   each of them, and/or that each of the acts of each of the Defendants was ratified by

2   each of the other said Defendants.

3       9.    Plaintiffs are informed and believe and on that basis allege:

4           A.    that at all times mentioned herein, each of the named and fictitiously

5   named Defendants was the co-conspirator of the others and was acting in concert of

6   action and within the course and scope of a conspiracy formed amongst them;

7           B.    that each defendant sued herein received money or property as a result

8   of the conduct described herein without consideration therefor and/or with

9   knowledge that the money or property was obtained as a result of the fraud, deception

10  or other wrongful conduct described herein;

11          C.    that each of the defendants knowingly and intentionally aided, abetted,

12  encouraged and cooperated with, or turned a blind eye to, the other defendants in the

13  wrongful conduct alleged herein and accordingly are liable as aiders and abettors

14  and/or co-conspirators of each other; and/or

15          D.    that each defendant sued herein aided and abetted the others with the

16  intent that each would be successful in their mutual endeavors.

17      10.    Pursuant to California Code of Civil Procedure §474, Plaintiffs will seek to amend this

18  Complaint to substitute the true names, capacities and (in the case of business entities) exact form of

19  entity, of each of the said fictitiously-named defendants, as well as the particulars of the conduct,

20  participation and basis for liability for each of said fictitiously-named defendants, as and when such

21  information is ascertained by Plaintiff.

22  **VENUE**

23      11.    This case is properly venued in the County of Alameda because defendants

24  GREYSTONE SERVICING CORPORATION, INC., a Georgia corporation ("Greystone

25  Servicing"), and GREYSTONE CDE, LLC, a Delaware corporation ("Greystone CDE"), have failed

26  to designate any current California principal place of business and may therefore be properly sued in

27  any county of this state.

28

---

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*
Complaint for Damages                            - 4
Farber & Company Attorneys, LLP

## COMMON ALLEGATIONS

12.  Plaintiffs are informed and believe and on that basis allege: that the Greystone Defendants are one of the nation's leading originators of Federal Housing Administration (FHA) multifamily loans; that the FHA financing originated by the Greystone Defendants provides long-term, fully amortizing, fixed rate, non-recourse loans for acquisition and rehabilitation of low-income housing projects such as the Project; that the Greystone Defendants have regional origination offices in California and throughout the United States; and that the Greystone Defendants provide loan officers, underwriters, analysts and consultants to facilitate successful acquisition, rehabilitation and financing of projects such as the Project.

13.  Plaintiffs are informed and believe and on that basis allege that the Greystone Defendants are a HUD-approved underwriter for the FHA's Multifamily Accelerated Processing (MAP) program.  This program establishes national standards for approved lenders to prepare, process and submit their own loan applications.  In this process, the Greystone Defendants serve as an intermediary between their developer-clients and FHA offices to facilitate approval of applications and to obtain financing within required timeframes.

14.  On or about September 7, 2006, Plaintiffs and Greystone Servicing entered into a written agreement wherein Plaintiffs appointed Greystone Servicing to serve as their exclusive agent to process the HUD application for financing the acquisition and rehabilitation of the Project.  On the same date, Plaintiffs paid fees to Greystone Servicing as required by the agreement.

15.  Under the agreement and FHA procedures, the HUD application materials were to be completed by the tax-credit developer (Plaintiffs) and the underwriter (the Greystone Defendants). However, as underwriter, the role of the Greystone Defendants was (A) to underwrite the financing of the acquisition and rehabilitation of the Project; and (B) to submit the application on behalf of the tax credit developer to HUD.   In connection with this role, it was the responsibility of the Greystone Defendants to commission third party reports and submit them as support for the underwriting analysis along with the HUD application materials; Plaintiffs were neither authorized nor permitted to communicate directly with HUD with respect to the application.

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*
Complaint for Damages                                                          - 5 -
Farber & Company Attorneys, LLP

Exhibit A-1, Page 13

16.    Also on or about September 7, 2006, Plaintiffs also engaged Seibert Branford Shank & Company, LLC ("SBS") to serve as investment bank underwriter to sell the $7,095,000 of tax-exempt bonds through which the Project was to be financed. The bond financing was required to close by December 20, 2006 or the bond issue would expire. In order to accomplish timely sale of the tax-exempt bonds, SBS had to coordinate the sale of the tax-exempt bonds with the filing of the HUD application by the Greystone Defendants. Toward this end, SBS impressed upon the Greystone Defendants the importance of completing the HUD application by November 2006.

17.    On or about September 22, 2006, SBS distributed a financing timetable and responsible parties list for the Project. The timetable provided that the Greystone Defendants were to submit the HUD loan application on November 6, 2006. Miriam Simon ("Simon"), who was Greystone's senior underwriter for the Project, received the SBS document and participated in Project meetings and telephone conferences on behalf of the Greystone Defendants. Plaintiffs informed Simon that they were willing to pay incremental costs to accelerate the filing of the HUD application.

18.    On or about October 5, 2006, Oliphant, Simon, SBS representatives and others met with HUD officials in Oklahoma City regarding the Project. At that meeting HUD officials emphasized that the application needed to be in by the first week of December 2006. Shortly thereafter, Plaintiffs paid additional fees to Greystone's HUD architect review firm to expedite the review process so that the architectural review component would not delay filing of the HUD application.

19.    On or about October 5, 2006, Oliphant, Simon, SBS representatives and others met with HUD officials in Oklahoma City regarding the Project. At that meeting HUD officials emphasized that the application needed to be in by the first week of December 2006.

20.    At the time of this meeting, the Greystone Defendants were aware that Plaintiffs wanted to complete the purchase of the property by December 20, 2006. The Greystone Defendants were also aware that Plaintiffs would lose the $7,095,000 of tax-exempt bond financing if the bond financing was not closed by December 20, 2006.

21.    On or about October 16, 2006, Oliphant filed the paperwork and expended the funds to form Plaintiff Santa Fe Pointe, LP as an Oklahoma limited partnership and Santa Fe Management,

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*
Complaint for Damages                                                     - 6 -
Farber & Company Attorneys, LLP

Exhibit A-1, Page 14

1   LLC as an Oklahoma limited liability company. Santa Fe Pointe** was the official, single purpose

2   entity formed to execute the acquisition and rehabilitation of the Project and be the borrower on the

3   HUD non-recourse loan.

4        22.    On or about October 27, 2006, Simon sent an email stating that the HUD application

5   process was behind schedule. Plaintiffs were troubled by this email because of the December 20,

6   2006 deadlines, and Oliphant communicated his concerns to Matt James (the business development

7   person at Greystone who initially sold Oliphant on using Greystone's services). To address

8   Oliphant's concerns, James told Oliphant that Greystone would provide a non-recourse bridge loan

9   to fund the purchase of the Project and fund the cost of issuance for the bonds to be sold by SBS.

10       23.    On or about November 13, 2006, Plaintiffs caused the final set of architectural plans

11  and specifications to be delivered to Greystone's architectural review firm. On or about November

12  14, 2006, Plaintiffs delivered by FedEx a complete set of financial certifications and list of business

13  entities for all participants in the Project. These items, which were the final items required from

14  Plaintiffs and the development team, were delivered a full two weeks before Greystone's scheduled

15  delivery of the HUD application. All other aspects of the HUD application were within Greystone's

16  ability to perform and execute timely.

17       24.    On November 14, 2006, after Plaintiffs had transmitted all items required to be

18  provided by them, Greystone for the first time informed Plaintiffs that the HUD application would

19  not be submitted in 2006. Again, to address the concerns of Plaintiff and the development team and

20  reassure them that the Project would ultimately be a success, James again stated that Greystone was

21  committed to funding the acquisition of the Project and issuance of the tax-exempt bonds, and stated

22  that Greystone would issue a non-recourse bridge loan to fund the acquisition of the Project and the

23  cost of issuing the bonds.

24       25.    On November 16, 2006, bond counsel for SBS sent an email to confirm that

25  Greystone would fund a bridge loan for the purchase of the Project and the cost of issuing the tax-

26  exempt bonds. That same day, Greystone provided a bridge loan term sheet on behalf of Defendant

27  Greystone CDE which provided for a non-recourse bridge loan to Oliphant in the amount of

28

---

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*
Complaint for Damages                                                                    - 7
Farber & Company Attorneys, LLP

1   $4,348,400. The term sheet stated that the bridge loan would be for the full purchase price of the

2   Project and that it would be non-recourse.

3        26.    On November 21, 2006, SBS representatives provided the final financing timetable,

4   again confirming that Greystone had agreed to fund all costs of selling the tax-exempt bonds through

5   bridge financing. Thereafter, the parties proceeded to complete arrangements for issuance of the tax-

6   exempt bonds and acquisition of the Project, and Oliphant made arrangements to travel to Oklahoma

7   City on December 18 through 20 for the closing of the Project acquisition.

8        27.    The tax-exempt bonds were priced on December 13 and 14, and were sold by SBS to

9   institutional investors. As a result, Plaintiffs incurred approximately $251,000 in bond issuance costs.

10       28.    On December 17, 2006, the literal eve of Oliphant's departure to Oklahoma City, the

11  Greystone Defendants' counsel delivered the first drafts of the bridge loan documents. The provided

12  loan documents did not provide the financing promised by Greystone. Instead, these documents

13  provided for a bridge loan of only $500,000 rather than the promised $$4,348,400. This reduced

14  amount would cover the cost of the bond issuance but not acquisition of the Project. In addition,

15  instead of the promised non-recourse financing, the provided loan documents included a personal

16  guaranty by Oliphant and a spousal guaranty, neither of which had been mentioned previously.

17       29.    When Oliphant received the bridge loan documents on December 17, 2006, the

18  $251,000 bond issuance costs had already been incurred because the tax-exempt bonds had been sold.

19  Moreover, if the Project acquisition was not closed by December 20, 2006, Plaintiffs faced losing the

20  tax-exempt bond funding because the bonds would expire. Oliphant signed the voluminous

21  documents as presented.

22       30.    On or about March 14, 2007, Greystone submitted the final HUD application on

23  behalf of Oliphant and Plaintiffs.

24       31.    Part of the financial structure of the Project included sale of the tax credits to a

25  purchaser/syndicator. Under the original HUD application, the tax credit purchaser/syndicator was

26  the Richman Group. On or about April 15, 2007, the Richman Group backed out of the deal.

27  Thereafter, with the knowledge and consent of the Greystone Defendants, Plaintiffs pursued other

28  syndicators and co-developers to complete the financial aspects of the Project. On or about June 14,

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*
Complaint for Damages                                                                    - 8
Farber & Company Attorneys, LLP

Exhibit A-1, Page 16

1    2007, Plaintiffs were introduced to David Henry, an experienced Arkansas tax credit developer who

2    would serve as general contractor, property manager, and co-developer, and thereafter Plaintiffs and

3    David Henry worked out terms for their relationship.

4        32.    On or about June 29, 2007, the seller of the Project agreed to extend the closing date

5    to July 31, 2007 in order to accommodate additional bridge loan financing arranged by David Henry.

6    As a part of this agreement, Plaintiffs paid an additional $25,000 earnest money deposit to the seller,

7    which Oliphant funded through an additional $25,000 advance on the Greystone bridge loan.

8        33.    On or about July 5, 2007, Oliphant met with HUD personnel in Oklahoma City and

9    learned that the HUD application had been rejected by letter sent out earlier that day. At this

10   meeting, the HUD representative informed Oliphant that at a HUD conference in St. Louis on June

11   19, Greystone's representative had gone out of her way to make unsolicited disparaging remarks about

12   the Project to the HUD representative from Oklahoma City.

13       34.    On or about July 10, 2007, Matt James acknowledged to Oliphant that Greystone had

14   received the HUD rejection letter, and stated that Betsy Vartanian, who was "one of the top HUD

15   loan executives at Greystone," was going to step in.

16       35.    On or about July 11, 2007, Betsy Vartanian informed Oliphant that she had spoken

17   with HUD personnel in Oklahoma City and that HUD had agreed to reconsider the application

18   without starting over from the beginning, and that Greystone would submit written materials

19   responsive to HUD's concerns. On or about July 13, 2007, Greystone sent a letter to HUD

20   confirming that supplemental materials would follow to address HUD's concerns raised in the July 5

21   letter.

22       36.    In the meantime, Oliphant and David Henry continued to proceed with the closing of

23   the acquisition of the Project. Oliphant and David Henry reached an agreement with the seller

24   whereby the seller would carry back a second mortage in the amount of $500,000. On July 25, 2007,

25   the attorneys for the first mortgage lender sent out drafts of the closing documents.  On July 27,

26   2007, Greystone threatened to disrupt the acquisition deal unless the seller agreed to subordinate his

27   carry-back loan to Greystone's pre-development bridge loan. That same day, Oliphant and David

28

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*
Complaint for Damages
Farber & Company Attorneys, LLP

- 9

Exhibit A-1, Page 17

1    Henry made arrangements to meet in Oklahoma on July 30th and 31st to make plans for signing the

2    closing documents, taking control of the Project, and getting the keys.

3        37.    On July 29, 2007, the eve of travel, David Henry emailed that he was having second

4    thoughts about the deal and had concerns about the cost of the bond issuance in December 2006.

5    However, Henry was unavailable to discuss his concerns that entire day.

6        38.    On July 30, 2007, Oliphant and Henry arrived in Oklahoma City. In a telephone

7    conference call, Greystone rescinded its demand that the seller subordinate his carry-back loan.

8    Instead, Greystone requested that Henry's bank allow Greystone to purchase its loan after closing, so

9    that Greystone could improve its collateral position.

10        39.    On July 31, 2007, Oliphant and Henry met for approximately six hours to discuss

11   Henry's concerns. During this meeting, David Henry proposed taking over the entire Project in

12   exchange for assuming the Greystone loan. The parties did not reach agreement for modifying their

13   prior arrangement, and David Henry left town without signing the escrow documents. Oliphant,

14   however, signed the closing documents at the title company that day before leaving Oklahoma City.

15        40.    In early August 2007, Greystone began negotiating with David Henry on ways to get

16   the deal done without Oliphant and Plaintiffs, and also began threatening to declare the bridge loan in

17   default.

18        41.    On August 9, 2007, Greystone unilaterally withdrew the HUD loan application

19   without any prior notice or warning to Oliphant or Plaintiffs. The withdrawal of the HUD

20   application placed at risk the $7,095,000 in tax exempt bond proceeds. It also caused the seller to

21   terminate negotiations with Oliphant because the withdrawal of the HUD application made it appear

22   that Plaintiffs could not close the deal and that it would take another 10-12 months if the HUD

23   process were started over.

24        42.    On or about August 21, 2007, Greystone CDE declared the bridge loan in default and

25   threatened legal enforcement. At the same time, the Greystone Defendants began pressuring

26   Oliphant and Plaintiffs to allow David Henry to take over the entire Project (keeping all the profits).

27   As a part of this proposal, Henry would assume $275,000 of the bridge loan but Greystone required

28   that Oliphant accept responsibility for paying $215,000, release Greystone of all liability, and agree not

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*
Complaint for Damages                                                           - 10
Farber & Company Attorneys, LLP

Exhibit A-1, Page 18