# Exhibit A

## Part 2 of  8

1  to sue. On August 30, 2007, Greystone's counsel delivered an "assignment agreement and covenant

2  not to sue" to this effect and demanded that Oliphant provide written confirmation of acceptance by

3  August 31.

4

5                                **FIRST CAUSE OF ACTION**
                        (For Breach of Fiduciary Duty / Constructive Fraud)

6       43.    Plaintiffs refer to and hereby incorporate herein the foregoing Paragraphs 1 through

7  42, inclusive, as though the same were fully set forth at this place.

8       44.    Each of the Greystone Defendants owned Plaintiffs and each of them a fiduciary duty

9  by virtue of the trust and confidence Plaintiffs and each of them reposed in said defendants by virtue

10  of the agreement and business relationship.

11      45.    The Greystone and each of them were negligent in the performance of the duties

12  insofar as the Project and HUD financing was concerned. The Greystone Defendants further

13  breached their respective fiduciary duties to Plaintiffs and each of them by changing the terms of the

14  bridge financing, by withdrawing the HUD application without prior notice to or consent by Plaintiffs

15  or any of them, by demanding priority for the bridge loan to which they were not entitled, and by

16  negotiating directly with David Henry under terms that cut out Oliphant and Plaintiffs from the deal.

17      46.    The Greystone Defendants and each of them have gained an advantage over Plaintiffs

18  by virtue of the foregoing breaches.

19      47.    Plaintiffs and each of them were prejudiced by the foregoing breaches of duty in that

20  they advanced funds and expended time and energy and incurred obligations in connection with the

21  Project.

22      48.    Plaintiffs' reliance, as set forth above, was reasonable under the circumstances.

23  Plaintiffs could not, in the exercise of reasonable diligence, have anticipated or discovered the

24  misconduct of the Greystone Defendants in the circumstances in a way that Plaintiffs could have

25  protected themselves or their financial interests.

26      49.    As a direct and legal result of the conduct of the Greystone Defendants as alleged

27  hereinabove, Plaintiffs, and each of them, have been damaged and injured in an amount to be proven

28  at trial.

---

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*
Complaint for Damages                                                      - 11
Farber & Company Attorneys, LLP

                            Exhibit A-1, Page 19

1    50.    As a direct and legal result of the conduct of the Greystone Defendants, Plaintiffs, and
2    each of them, have been forced to retain attorneys, accountants, investigators, agents and other
3    consultants, and to expend time and money, to discover and remedy the fraud, all according to proof.
4    Plaintiffs reserve the right to amend this complaint at such time as the amounts of damage become
5    known.

6    51.    Plaintiffs should recover punitive damages, in addition to their actual damages, to
7    make an example of and to punish Defendants and each of them.

8    52.    The conduct of the Greystone Defendants, and each of them, as described
9    hereinabove was fraudulent, malicious and oppressive, and done for the specific purpose of getting
10   control over Plaintiff's monies for Defendants' own use and benefit. The Greystone Defendants, and
11   each of them, also displayed reckless indifference to Plaintiffs and each of them with regard to the
12   conduct alleged in this complaint. Plaintiffs should recover punitive damages, in addition to their
13   actual damages, to make an example of and to punish Defendants and each of them.

14   53.    The conduct of the Greystone Defendants was, in and of itself, fraudulent, malicious
15   and oppressive in that said Defendants were guilty of reckless indifference towards Plaintiffs, acted
16   willfully and knowingly in the manner in which they torpedoed the Project and Plaintiffs' HUD
17   application and the tax-exempt bond issue, and undertook separate negotiations with David Henry to
18   cut out Oliphant and Plaintiffs.

19   WHEREFORE, Plaintiffs pray for judgment as set forth below.

20

21   ## SECOND CAUSE OF ACTION
     ### (Intentional Interference with Prospective Economic Advantage)

22   54.    Plaintiffs refer to and hereby incorporate herein the foregoing Paragraphs 1 through
23   53, inclusive, as though the same were fully set forth at this place.

24   55.    Plaintiffs had an existing business relationship with the seller of the Project and with
25   the HUD office in Oklahoma City.

26   56.    Plaintiffs had a probability of future economic benefit from successful completion of
27   the financing, rehabilitation and development of the Project.

28

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*
Complaint for Damages                                                              - 12
Farber & Company Attorneys, LLP

Exhibit A-1, Page 20

1    57.    The Greystone Defendants interfered with Plaintiffs' prospective economic advantage,

2    as set forth above.

3    58.    The conduct of the Greystone Defendants in interfering with Plaintiffs' opportunity to

4    complete the Project was wrongful in that said defendants, and each of them, made false statements,

5    changed terms of the deal at the last minute, and breached their fiduciary duties to Plaintiffs and each

6    of them.

7    59.    The Greystone Defendants knew of Plaintiffs' business relationship and prospective

8    business advantage.

9    60.    The Greystone Defendants intended to interfere with Plaintiffs' business relationship

10   and prospective injurious interference and profits from the Project.

11   61.    As a direct and legal result of the conduct of the Greystone Defendants as alleged

12   hereinabove, Plaintiffs, and each of them, have been damaged and injured in an amount to be proven

13   at trial.

14   62.    As a direct and legal result of the conduct of the Greystone Defendants, Plaintiffs, and

15   each of them, have been forced to retain attorneys, accountants, investigators, agents and other

16   consultants, and to expend time and money, to discover and remedy the fraud, all according to proof.

17   Plaintiffs reserve the right to amend this complaint at such time as the amounts of damage become

18   known.

19   63.    Plaintiffs should recover punitive damages, in addition to their actual damages, to

20   make an example of and to punish Defendants and each of them.

21   64.    The conduct of the Greystone Defendants, and each of them, as described

22   hereinabove was fraudulent, malicious and oppressive, and done for the specific purpose of getting

23   control over Plaintiff's monies for Defendants' own use and benefit. The Greystone Defendants, and

24   each of them, also displayed reckless indifference to Plaintiffs and each of them with regard to the

25   conduct alleged in this complaint. Plaintiffs should recover punitive damages, in addition to their

26   actual damages, to make an example of and to punish Defendants and each of them.

27   65.    The conduct of the Greystone Defendants was, in and of itself, fraudulent, malicious

28   and oppressive in that said Defendants were guilty of reckless indifference towards Plaintiffs, acted

---

*Santa Fe Pointe, L.P., et al v. Greystone Servicing Corporation, Inc., et al.*
Complaint for Damages                                                                 - 13
Farber & Company Attorneys, LLP

Exhibit A-1, Page 21

1  willfully and knowingly in the manner in which they torpedoed the Project and Plaintiffs' HUD

2  application and the tax-exempt bond issue, and undertook separate negotiations with David Henry to

3  cut out Oliphant and Plaintiffs.

4      WHEREFORE, Plaintiffs pray for judgment as set forth below.

5

6              **PRAYER FOR RELIEF**

7      WHEREFORE, Plaintiffs SANTA FE POINTE, LP, an Oklahoma limited partnership

8  ("SFP"), THEOTIS F. OLIPHANT ("Oliphant"), an individual, and RANT, LLC, a Delaware limited

9  liability company ("Rant"), pray for judgment against defendants and each of them as follows:

10         A.     For general damages, according to proof;

11         B.     For compensatory damages, according to proof;

12         C.     For punitive and exemplary damages;

13         D.     For any statutory damages or penalties available under statute;

14         E.     For reasonable attorney's fees;

15         F.     For costs of suit herein incurred; and

16         G.     For such other and further relief as the Court deems just or proper.

17

18  DATED:  September 7, 2006              FARBER & COMPANY ATTORNEYS, LLP
                                          Attorneys for Plaintiff
19

20

21      By _____
                                          Eric J. Farber, SBN 169472
22                                        Ann McFarland Draper, SBN 065669

23

24

25

26

27

28

---

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                         - 14
Complaint for Damages
Farber & Company Attorneys, LLP
                        Exhibit A-1, Page 22

# EXHIBIT A-2

FARBER & COMPANY
ATTORNEYS, LLP
Attn: Farber, Eric J.
847 Sansome Street
Suite LL
San Francisco, CA   94111

## Superior Court of California, County of Alameda

| | |
|---|---|
| Santa Fe Pointe | No. RG07345170 |
| VS. Plaintiff/Petitioner(s) | NOTICE OF CASE MANAGEMENT CONFERENCE AND ORDER |
| Greystone Servicing Corporation, Inc. | Unlimited Jurisdiction |
| Defendant/Respondent(s) (Abbreviated Title) | |

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD.

Notice is given that a Case Management Conference has been scheduled as follows:

| | | |
|---|---|---|
| Date: 01/22/2008<br>Time: 09:00 AM | Department: 301<br>Location: George E. McDonald Hall of Justice<br>First Floor<br>2233 Shoreline Drive, Alameda  CA  94501<br>Internet: http://www.alameda.courts.ca.gov | Judge: Ronni MacLaren<br>Clerk: Irene Crowell<br>Clerk telephone: (510) 263-4301<br>E-mail:<br>Dept.301@alameda.courts.ca.gov<br>Fax: (510) 267-5713 |

### ORDERS

1.  You must:
    a.  Serve all named defendants and file proofs of service on those defendants with the court within 60 days of the filing of the complaint (CRC 3.110(b));
    b.  Give notice of this conference to any party not included in this notice and file proof of service;
    c.  Meet and confer, in person or by telephone, to consider each of the issues identified in CRC 3.724 no later than 30 calendar days before the date set for the Case Management Conference;
    d.  File and serve a completed Case Management Conference Statement (use of Judicial Council Form CM 110 is mandatory) at least 15 days before the Case Management Conference (CRC 3.725)

2.  If you do not follow the orders above, you are hereby ordered to show cause why you should not be sanctioned under CRC 2.30. The hearing on the Order to Show Cause re: Sanctions will be at the same time as the Case Management Conference. Sanctions may include monetary sanctions and any other sanction permitted by law, including striking pleadings or dismissing the action.

3.  You are further ordered to appear in person* (or through your attorney of record) at the Case Management Conference noticed above. You must be thoroughly familiar with the case and fully authorized to proceed.

4.  The Direct Calendar Judge will issue orders at the conclusion of the conference that include:
    a.  Referring to ADR and setting an ADR completion date
    b.  Dismissing or severing claims or parties
    c.  Setting a trial date.

*Telephonic appearances at Case Management Conferences may be available by contacting CourtCall, an independent vendor, at least 3 business days prior to the scheduled conference. Parties may make arrangements by calling 1-888-882-6878, or faxing a service request to 1-888-882-2946. This service is subject to charges by the vendor.

### CLERK'S CERTIFICATE OF MAILING

I certify that the following is true and correct: I am the clerk of the above-named court and not a party to this cause. I served this Notice of Hearing by placing copies in envelopes addressed as shown herein and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Alameda County, California, following standard court practices.

Executed on 09/12/2007,

By _____

Deputy Clerk

Exhibit A-2, Page 23

## Superior Court of California, County of Alameda



### Notice of Judicial Assignment for All Purposes

Case Number: RG07345170
Case Title:    Santa Fe Pointe VS Greystone Servicing Corporation, Inc.
Date of Filing: 09/07/2007

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

This case is hereby assigned for all purposes to:

| | |
|---|---|
| Judge: | Ronni MacLaren |
| Department: | 301 |
| Address: | George E. McDonald Hall of Justice |
| | 2233 Shoreline Drive |
| | Alameda CA 94501 |
| Phone Number: | (510) 263-4301 |
| Fax Number: | (510) 267-5713 |
| Email Address: | Dept.301@alameda.courts.ca.gov |

Under direct calendaring, this case is assigned to a single judge for all purposes including trial.

Please note: In this case, any challenge pursuant to Code of Civil Procedure §170.6 must be exercised within the time period provided by law. (See Govt. Code 68616(i); Motion Picture and Television Fund Hosp. v. Superior Court (2001) 88 Cal.App.4th 488, 494; and Code Civ. Proc. §1013.)

IT IS THE DUTY OF EACH PLAINTIFF AND CROSS COMPLAINANT TO SERVE A COPY OF THIS NOTICE IN ACCORDANCE WITH LOCAL RULES.

### General Procedures

All pleadings and other documents must be filed in the clerk's office at any court location except when the Court permits the lodging of material directly in the assigned department. All documents, with the exception of the original summons and the original civil complaint, shall have clearly typed on the face page of each document, under the case number, the following:

ASSIGNED FOR ALL PURPOSES TO
JUDGE Ronni MacLaren
DEPARTMENT 301

Counsel are expected to know and comply with the Local Rules of this Court, which are available on the Court's website at:
http://www.alameda.courts.ca.gov/courts/rules/index.shtml and with the California Rules of Court, which are available at www.courtinfo.ca.gov.

The parties are always encouraged to consider using various alternatives to litigation, including mediation and arbitration, prior to the Initial Case Management Conference. The Court may refer parties to alternative dispute resolution resources.

Self-represented litigants must also comply with the rules cited above. All references to "counsel" in this Order apply equally to self-represented litigants. The Court maintains a Self-Help Center at the Wiley W. Manuel Courthouse, 2nd Floor, 661 Washington St., Oakland.

Please submit a courtesy copy of all filed documents directly to Dept. 301.

### Schedule for Department 301

The following scheduling information is subject to change at any time, without notice. Please contact the department at the phone number or email address noted above if you have questions.

- Trials generally are held: Mondays and Wednesdays 9:30 a.m. to 4:30 p.m.; Tuesdays and Thursdays at 10:30 a.m. to 4:30 p.m. Trial readiness: Fridays at 9:00 a.m. A pretrial conference may be set two to three weeks before the trial.

- Case Management Conferences are held: Mondays through Thursdays at 9:00 a.m. Timely filed and complete case management statements may eliminate the need for an in-person conference by allowing the Court to issue a Tentative Case Management Order.

- Law and Motion matters are heard: Tuesdays and Thursdays at 9:00 a.m.

- Settlement Conferences are heard: Fridays at 1:30 p.m. and such other times as may be available.

- Ex Parte matters are heard: Tuesdays and Thursdays at 9:00 a.m. Counsel must comply with Local Rule 4.14

- (1) Counsel should consider and recommend creative, efficient approaches to valuing and resolving their case (CRC §3.724). (2) Potential discovery and other problems should be anticipated and discussed. (3) No discovery motion shall be filed without prior serious efforts to resolve it. If those efforts are unsuccessful, moving party may then email the Court attaching a letter (maximun of 3 pages) outlining the dispute. Opposing party may email a brief response within 24 hours. The Court will advise the parties how the issue will be resolved or whether further proceedings are necessary.

### Law and Motion Procedures

To obtain a hearing date for a Law and Motion or ex parte matter, parties must contact the department as follows:

- Motion Reservations
    Email:        Dept.301@alameda.courts.ca.gov

Phone:      (510) 263-4301

The Court prefers that reservations for the Law and Motion calendar be made by email. Limited hearings are available for summary judgments, preliminary injunction and other time intensive motions.

- Ex Parte Matters
  Email:      Dept.301@alameda.courts.ca.gov
  Phone:      (510) 263-4301

  The Court prefers that reservations for the Ex Parte calendar be made by email.

**Tentative Rulings**

The court will issue tentative rulings in accordance with the Local Rules. Tentative rulings will become the Court's order unless contested in accordance with the Local Rules. Tentative rulings will be available at:

- Website: www.alameda.courts.ca.gov/domainweb, Calendar Information for Dept. 301

- Phone: 1-866-223-2244

Dated: 09/11/2007                         Executive Officer / Clerk of the Superior Court

                                    By   _____

                                                        Deputy Clerk

---

### CLERK'S CERTIFICATE OF MAILING

I certify that the following is true and correct: I am the clerk of the above-named court and not a party to this cause. I served this Notice by placing copies in envelopes addressed as shown on the attached Notice of Initial Case Management Conference and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Alameda County, California, following standard court practices.

         Executed on 09/12/2007

                        By   _____

Deputy Clerk

**SUMMONS** ON FIRST AMENDED &
*(CITACION JUDICIAL)* SUPPLEMENTAL
COMPLAINT

```
*5876325*
```
-100

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

GREYSTONE SERVICING CORPORATION, INC., a Georgia
corporation; GREYSTONE CDE, LLC, a Delaware limited liability
company; and DOES 1 through 100, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
SANTA FE POINTE, LP, an Oklahoma limited partnership; SANTA FE
MANAGEMENT, LLC, an Oklahoma limited liability company; RANT,
LLC, a Delaware limited liability company; THEOTIS F. OLIPHANT,
an individual

ENDORSED
FILED
ALAMEDA COUNTY

SEP 2 5 2007

CLERK OF THE SUPERIOR COURT
By Tasha Perry, Deputy
Deputy

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.   A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.  If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.
Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Alameda County Superior Court
1225 Fallon Street
Oakland, CA 94612

CASE NUMBER:
*(Número del Caso):*
RG 07-345170

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Eric J. Farber / Farber & Company Attorneys, LLP
847 Sansome Street, Suite LL / San Francisco, CA 94111 / Tel: 415-434-5320

DATE:   SEP 2 5 2007    Pat S. Sweeten    Clerk, by   Tasha Perry    , Deputy
*(Fecha)*       *(Secretario)*       *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
         ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
         ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
         ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 (Rev. January 1, 2004)

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
American LegalNet, Inc.  www.USCourtForms.com

Exhibit A-2, Page 28

1  Eric J. Farber, SBN 169472
   Ann McFarland Draper, SBN 065669
2  FARBER & COMPANY ATTORNEYS, LLP
   847 Sansome Street, Ste. LL
3  San Francisco, California 94111
   Telephone 415.434.5320
4  Facsimile 415.434.5380

5  Attorneys for Plaintiff

6

7

                                        ENDORSED
                                          FILED
                                     ALAMEDA COUNTY

                                        SEP 2 0 2007

                                   CLERK OF THE SUPERIOR COURT
                                       By Tasha Perry, Deputy

8           SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              IN AND FOR THE COUNTY OF ALAMEDA
                     UNLIMITED JURISDICTION

10

11  SANTA FE POINTE, LP; an Oklahoma limited      Case No.: RG 07-345170
    partnership; SANTA FE MANAGEMENT, LLC,
12  an Oklahoma limited liability company; RANT,   FIRST AMENDED AND
    LLC, a Delaware limited liability company; and SUPPLEMENTAL COMPLAINT
13  THEOTIS F. OLIPHANT, an individual,            FOR DAMAGES AND
                                                   DECLARATORY RELIEF
14              Plaintiffs,
                                                   JURY TRIAL DEMANDED
15      vs.

16  GREYSTONE SERVICING CORPORATION,
    INC., a Georgia corporation; GREYSTONE CDE,
17  LLC, a Delaware limited liability company; and
    DOES 1 through 100, inclusive,
18
                Defendants.
19

20      Plaintiffs SANTA FE POINTE, LP, an Oklahoma limited partnership ("SFP"), THEOTIS F.

21  OLIPHANT ("Oliphant"), an individual, and RANT, LLC, a Delaware limited liability company

22  ("Rant"), allege as follows:

23                          DEMAND FOR JURY TRIAL

24      Plaintiffs here demand a jury trial to the fullest extent available under the law, the United

25  States Constitution, and Section 16 of Article I of the California Constitution:

26                          INTRODUCTORY ALLEGATIONS

27      1.      This is an action for damages, declaratory relief and accounting arising out of the

28  conduct of defendants with respect to Plaintiffs' efforts to acquire and rehabilitate a 224-unit

_____
*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                    - 1
First Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, LLP

1   apartment building in Oklahoma City (the "Project") as a tax-credit developer of a Low Income

2   Housing Tax Credit project offered through the FHA's Office of Housing and Urban Development

3   ("HUD"). The Federal Government subsidizes tax credit projects to encourage private developers to

4   acquire, construct, renovate, and maintain housing stock that will be income restricted for tenants,

5   and maintained by the private developer. The tax-credit developer gets paid a fee equal to 14% of the

6   total allowable project costs, and the project financing is non-recourse.

7                                              **PARTIES**

8       2.      Plaintiff SANTA FE POINTE, LP ("SFP"), is an Oklahoma limited partnership

9   formed for the purpose of acquiring the Project, and having its principal place of business in

10  Edmond, Oklahoma.

11      3.      Plaintiff SANTA FE MANAGEMENT, LLC, is an Oklahoma limited liability

12  company formed for the purpose of managing the Project, and having its principal place of business

13  in Edmond, Oklahoma.

14      4.      Plaintiff RANT, LLC ("Rant") is a Delaware limited liability company having its

15  principal place of business in the County of Alameda, State of California. Plaintiff Rant is now, and at

16  all times material hereto was, qualified to do business as a foreign corporation in the State of

17  California.

18      5.      Plaintiff THEOTIS F. OLIPHANT is an individual who does now, and at all times

19  material hereto did, maintain his principal residence in the State of California, Contra Costa County.

20  OLIPHANT is now, and at all times material hereto was, the managing member of Santa Fe

21  Management, LLC (the general partner of Plaintiff SFP) and the managing member of Plaintiff

22  RANT.

23      6.      Defendant GREYSTONE SERVICING CORPORATION, INC. ("Greystone

24  Servicing") is a Georgia corporation having its principal place of business in New York, New York.

25  Defendant Greystone Servicing is now, and at all times material hereto was, qualified to do business

26  as a foreign corporation in the State of California. Plaintiffs are informed and believe and on that

27  basis allege that Defendant Greystone Servicing in fact does business in the State of California.

28  Defendant Greystone Servicing has failed to designate any principal place of business in the State of

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                              - 2
First Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, LLP
                                        Exhibit A-2, Page 30

1   California; the only California address identified by Defendant Greystone Servicing on its California

2   filings is the address of its agent for service of process, which is 818 West Seventh St., Los Angeles,

3   CA 90017. Venue for Defendant Greystone Servicing is therefore proper in the County of Alameda

4   and in any other county in the State of California.

5          7.     GREYSTONE CDE, LLC ("Greystone CDE") is a Delaware corporation having its

6   principal place of business in New York, New York.   Plaintiffs are informed and believe and on that

7   basis allege that at all times material hereto, defendant Greystone CDE was not qualified to do

8   business as a foreign corporation in the State of California but in fact did business in said state.

9   Defendant Greystone CDE has failed to designate any principal place of business in the State of

10  California. Venue for Defendant Greystone CDE is therefore proper in any county in the State of

11  California.

12         8.     Defendants Greystone Servicing and Greystone CDE are hereinafter collectively

13  referred to as the "Greystone Defendants." Plaintiffs are informed and believe and on that basis

14  allege that the Greystone Defendants are owned and operated in such a way that each benefited

15  financially from the conduct of the others alleged hereinbelow.

16         9.     The Defendants sued herein as DOES 1 through 100, inclusive, are either natural

17  persons or business entities, whose true names, capacities and (in the case of business entities) exact

18  form of entity, are currently unknown to Plaintiffs, who therefore sue said defendants by such

19  fictitious names.   Plaintiffs are informed and believe and on that basis allege:

20            A.     that each of these fictitiously-named defendants is (either alone or in

21         concert with named Defendants) responsible in some manner for the occurrences,

22         injuries and damages herein alleged, has participated or is participating in some

23         manner in the actionable conduct herein alleged, and is liable to Plaintiffs together

24         with Defendants named herein for damages and/or other relief prayed for herein;

25            B.     that Plaintiffs' injuries as herein alleged were legally caused by the acts

26         or omissions of said fictitiously-named defendants;

27            C.     that at all times mentioned herein, each of the named and fictitiously

28         named Defendants was the officer, director, employee, partner, joint venturer, servant,

---

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                                      - 3
First Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, LLP

                                    Exhibit A-2, Page 31

1  agent, subsidiary, division and/or alter ego of each of his, her or its co-Defendants,

2  was acting within the course and scope of said employment, partnership, joint venture,

3  joint enterprise, service or agency relationship, with the full knowledge and consent of

4  each of the other defendants and within the authority granted to said defendants, and

5  each of them, and/or that each of the acts of each of the Defendants was ratified by

6  each of the other said Defendants.

7       10.    Plaintiffs are informed and believe and on that basis allege:

8            A.    that at all times mentioned herein, each of the named and fictitiously

9  named Defendants was the co-conspirator of the others and was acting in concert of

10  action and within the course and scope of a conspiracy formed amongst them;

11            B.    that each defendant sued herein received money or property as a result

12  of the conduct described herein without consideration therefor and/or with

13  knowledge that the money or property was obtained as a result of the fraud, deception

14  or other wrongful conduct described herein;

15            C.    that each of the defendants knowingly and intentionally aided, abetted,

16  encouraged and cooperated with, or turned a blind eye to, the other defendants in the

17  wrongful conduct alleged herein and accordingly are liable as aiders and abettors

18  and/or co-conspirators of each other; and/or

19            D.    that each defendant sued herein aided and abetted the others with the

20  intent that each would be successful in their mutual endeavors.

21       11.    Pursuant to California Code of Civil Procedure §474, Plaintiffs will seek to amend this

22  Complaint to substitute the true names, capacities and (in the case of business entities) exact form of

23  entity, of each of the said fictitiously-named defendants, as well as the particulars of the conduct,

24  participation and basis for liability for each of said fictitiously-named defendants, as and when such

25  information is ascertained by Plaintiff.

26                                     **VENUE**

27       12.    This case is properly venued in the County of Alameda because each of defendants

28  GREYSTONE SERVICING CORPORATION, INC., a Georgia corporation ("Greystone

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*         - 4
First Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, LLP
                            Exhibit A-2, Page 32

1   Servicing"), and GREYSTONE CDE, LLC, a Delaware corporation ("Greystone CDE"), has failed

2   to designate any current California principal place of business and therefore may be properly sued in

3   any county of this state.

4                                    COMMON ALLEGATIONS

5        13.    Plaintiffs are informed and believe and on that basis allege: that the Greystone

6   Defendants are one of the nation's leading originators of Federal Housing Administration (FHA)

7   multifamily loans; that the FHA financing originated by the Greystone Defendants provides long-

8   term, fully amortizing, fixed rate, non-recourse loans for acquisition and rehabilitation of low-income

9   housing projects such as the Project; that the Greystone Defendants have regional origination offices

10  in California and throughout the United States; and that the Greystone Defendants provide loan

11  officers, underwriters, analysts and consultants to facilitate successful acquisition, rehabilitation and

12  financing of projects such as the Project.

13       14.    Plaintiffs are informed and believe and on that basis allege that the Greystone

14  Defendants are a HUD-approved underwriter for the FHA's Multifamily Accelerated Processing

15  (MAP) program. This program establishes national standards for approved lenders to prepare,

16  process and submit their own loan applications. In this process, the Greystone Defendants serve as

17  an intermediary between their developer-clients and FHA offices to facilitate approval of applications

18  and to obtain financing within required timeframes.

19       15.    On or about September 7, 2006, Plaintiffs and Greystone Servicing entered into a

20  written agreement wherein Plaintiffs appointed Greystone Servicing to serve as their exclusive agent

21  to process the HUD application for financing the acquisition and rehabilitation of the Project (the

22  "Engagement Agreement"). A copy of the Engagement Agreement is attached as Exhibit "A" hereto

23  and incorporated herein by this reference. On the same date, Plaintiffs paid $14,000 in fees to

24  Greystone Servicing as required by the Engagement Agreement.

25       16.    Under the agreement and FHA procedures, the HUD application materials were to be

26  completed by the tax-credit developer (Plaintiffs) and the underwriter (the Greystone Defendants).

27  However, as underwriter, the role of the Greystone Defendants was (A) to underwrite the financing

28  of the acquisition and rehabilitation of the Project; and (B) to submit the application on behalf of the

---

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                              - 5
First Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, LLP

1   tax credit developer to HUD.  In connection with this role, it was the responsibility of the Greystone

2   Defendants to commission third party reports and submit them as support for the underwriting

3   analysis along with the HUD application materials; Plaintiffs were neither authorized nor permitted to

4   communicate directly with HUD with respect to the HUD application.

5        17.    Also on or about September 7, 2006, Plaintiffs also engaged Seibert Branford Shank &

6   Company, LLC ("SBS") to serve as investment bank underwriter to sell the $7,095,000 of tax-exempt

7   bonds through which the Project was to be financed.  The bond financing was required to close by

8   December 20, 2006 or the bond issue would expire.  In order to accomplish timely sale of the tax-

9   exempt bonds, SBS had to coordinate the sale of the tax-exempt bonds with the filing of the HUD

10  application by the Greystone Defendants.  Toward this end, SBS impressed upon the Greystone

11  Defendants the importance of completing the HUD application by November 2006.

12       18.    On or about September 22, 2006, SBS distributed a financing timetable and

13  responsible parties list for the Project.  The timetable provided that the Greystone Defendants were

14  to submit the HUD application on November 6, 2006.  Miriam Simon ("Simon"), who was

15  Greystone's senior underwriter for the Project, received the SBS document and participated in Project

16  meetings and telephone conferences on behalf of the Greystone Defendants.  Plaintiffs informed

17  Simon that they were willing to pay incremental costs to accelerate the filing of the HUD application.

18       19.    On or about October 5, 2006, Oliphant, Simon, SBS representatives and others met

19  with HUD officials in Oklahoma City regarding the Project.  At that meeting HUD officials

20  emphasized that the HUD application needed to be submitted by the first week of December 2006 or

21  HUD's review of the application would be delayed.

22       20.    One of the supporting documents required for the HUD application is architectural

23  review by a firm designated by the HUD-approved lender. Shortly after the October 5 meeting,

24  Plaintiffs agreed to and did pay additional fees to Greystone's HUD architect review firm to expedite

25  its review process so that the architectural review component would not delay filing of the HUD

26  application.

27       21.    At the time of this meeting, the Greystone Defendants were aware that Plaintiffs

28  wanted to complete the purchase of the property by December 20, 2006.  The Greystone Defendants

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*     - 6
First Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, LLP
     Exhibit A-2, Page 34

1  were also aware that Plaintiffs would lose the $7,095,000 of tax-exempt bond financing if the bond

2  financing was not closed by December 20, 2006.

3      22.    On or about October 16, 2006, Oliphant filed the paperwork and expended the funds

4  to form Plaintiff SFP (Santa Fe Pointe, LP) as an Oklahoma limited partnership and Santa Fe

5  Management, LLC as an Oklahoma limited liability company. Plaintiff SFP was the official, single

6  purpose entity formed to execute the acquisition and rehabilitation of the Project and be the borrower

7  on the HUD non-recourse loan. Plaintiff Santa Fe Management, LLC was the official, single purpose

8  entity formed to be the general partner of Plaintiff SFP and manage the Project.

9      23.    On or about October 27, 2006, Simon sent an email stating that the HUD application

10  process was behind schedule. In light of the December 20, 2006 deadlines, Plaintiffs were troubled by

11  this email, and Oliphant communicated his concerns to Matt James (the business development person

12  at Greystone who initially sold Oliphant on using Greystone's services). To address Oliphant's

13  concerns, James told Oliphant that Greystone would provide a non-recourse bridge loan to fund the

14  purchase of the Project and the cost of issuance for the bonds to be sold by SBS.

15      24.    On or about November 13, 2006, Plaintiffs caused the final set of architectural plans

16  and specifications to be delivered to Greystone's architectural review firm. On or about November

17  14, 2006, Plaintiffs delivered by FedEx a complete set of financial certifications and list of business

18  entities for all participants in the Project. These items, which were the final items required from

19  Plaintiffs and the development team, were delivered a full two weeks before Greystone's scheduled

20  delivery of the HUD application. All other aspects of the HUD application were within Greystone's

21  ability to perform and execute timely.

22      25.    On November 14, 2006, after Plaintiffs had transmitted all items required to be

23  provided by them, Greystone for the first time informed Plaintiffs that the HUD application would

24  not be submitted in 2006. To address the concerns of Plaintiff and the development team and

25  reassure them that the Project would ultimately be a success, James again stated that Greystone was

26  committed to funding the acquisition of the Project and issuance of the tax-exempt bonds, and stated

27  that Greystone would issue a non-recourse bridge loan to fund the acquisition of the Project and the

28  cost of issuing the bonds.

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*
First Amended and Supplemental Complaint for Damages and Declaratory Relief    - 7
Farber & Company Attorneys, LLP    Exhibit A-2, Page 35

1      26.     On November 16, 2006, bond counsel for SBS sent an email to confirm that

2  Greystone would fund a bridge loan for the purchase of the Project and the cost of issuing the tax-

3  exempt bonds. That same day, Defendant Greystone Servicing provided a bridge loan term sheet on

4  behalf of Defendant Greystone CDE which provided for a non-recourse bridge loan to Oliphant in

5  the amount of $4,348,400. The November 16 Term Sheet stated that the bridge loan would be for

6  the full purchase price of the Project and that it would be non-recourse.

7      27.     On November 21, 2006, SBS representatives provided the final financing timetable,

8  again confirming that Greystone had agreed to fund all costs of selling the tax-exempt bonds through

9  bridge financing. Thereafter, the parties proceeded to complete arrangements for issuance of the tax-

10  exempt bonds and acquisition of the Project, and Oliphant made arrangements to travel to Oklahoma

11  City on December 18 through 20 for the closing of the Project acquisition.

12      28.     The tax-exempt bonds were priced on December 13 and 14, and were sold by SBS to

13  institutional investors. As a result, Plaintiffs incurred approximately $251,000 in bond issuance costs.

14      29.     On December 17, 2006, the literal eve of Oliphant's departure to Oklahoma City, the

15  Greystone Defendants' counsel delivered the first drafts of the bridge loan documents. The provided

16  loan documents did not provide the financing promised by Greystone. Instead, these documents

17  provided for a bridge loan of only $500,000 rather than the promised $4,348,400. This reduced

18  amount would cover the cost of the bond issuance but not acquisition of the Project. In addition,

19  instead of the promised non-recourse financing, the provided loan documents included a personal

20  guaranty by Oliphant and a spousal guaranty, neither of which had been mentioned previously.

21      30.     When Oliphant received the bridge loan documents on December 17, 2006, the

22  $251,000 bond issuance costs had already been incurred because the tax-exempt bonds had been sold.

23  Moreover, if the Project acquisition was not closed by December 20, 2006, Plaintiffs faced losing the

24  tax-exempt bond funding because the bonds would expire. Oliphant signed the voluminous bridge

25  loan documents as presented. Copies of the following are attached as Exhibits "B," "C," "D," "E,"

26  and "F," respectively, hereto and incorporated herein by this reference: Bridge Loan Agreement; the

27  Bridge Loan Promissory Note; the Partner Guaranty, Pledge and Security Agreement; the Developer

28  Limited Guaranty, Pledge and Security Agreement; and the Guaranty and Suretyship Agreement.

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*        - 8
First Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, LLP      Exhibit A-2, Page 36

1    31.   On or about March 14, 2007, Greystone submitted the final HUD application on

2    behalf of Oliphant and Plaintiffs.

3    32.   Part of the financial structure of the Project included sale of the tax credits to a

4    purchaser/syndicator. Under the original HUD application, the tax credit purchaser/syndicator was

5    the Richman Group. On or about April 17, 2007, the Richman Group backed out of the deal.

6    Thereafter, with the knowledge and consent of the Greystone Defendants, Plaintiffs pursued other

7    syndicators and co-developers to complete the financial aspects of the Project. On or about June 14,

8    2007, Plaintiffs were introduced to David Henry, an experienced Arkansas tax credit developer who

9    would serve as general contractor, property manager, and co-developer, and thereafter Plaintiffs and

10   David Henry worked out terms for their relationship.

11   33.   On or about June 29, 2007, the seller of the Project agreed to extend the closing date

12   to July 31, 2007 in order to accommodate additional bridge loan financing arranged by David Henry.

13   As a part of this agreement, Plaintiffs paid an additional $25,000 earnest money deposit to the seller,

14   which Oliphant funded through an additional $25,000 advance on the Greystone bridge loan.

15   34.   On or about July 5, 2007, Oliphant met with HUD personnel in Oklahoma City and

16   learned that the HUD application had been rejected by letter sent out earlier that day. At this

17   meeting, the HUD representative informed Oliphant that at a HUD conference in St. Louis on June

18   19, Greystone's representative had gone out of her way to make unsolicited disparaging remarks about

19   the Project to the HUD representative from Oklahoma City.

20   35.   On or about July 10, 2007, Matt James acknowledged to Oliphant that Greystone had

21   received the HUD rejection letter, and reassured Oliphant that Betsy Vartanian, who was "one of the

22   top HUD loan executives at Greystone," was going to step in.

23   36.   On or about July 11, 2007, Betsy Vartanian informed Oliphant that she had spoken

24   with HUD personnel in Oklahoma City and that HUD had agreed to reconsider the application

25   without starting over from the beginning, and that Greystone would submit written materials

26   responsive to HUD's concerns. On or about July 13, 2007, Greystone sent a letter to HUD

27   confirming that supplemental materials would follow to address HUD's concerns raised in the July 5

28   letter.

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                    - 9
First Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, LLP

Exhibit A-2, Page 37

1     37.    In the meantime, Oliphant and David Henry continued to proceed with the closing of

2 the acquisition of the Project. Oliphant and David Henry reached an agreement with the seller

3 whereby the seller would carry back a second mortage in the amount of $500,000. On July 25, 2007,

4 the attorneys for the first mortgage lender sent out drafts of the closing documents. On July 27,

5 2007, Greystone threatened to disrupt the acquisition deal unless the seller agreed to subordinate his

6 carry-back loan to Greystone's pre-development bridge loan. That same day, Oliphant and David

7 Henry made arrangements to meet in Oklahoma on July 30th and 31st to make plans for signing the

8 closing documents, taking control of the Project, and getting the keys.

9     38.    On July 29, 2007, the eve of travel, David Henry emailed that he was having second

10 thoughts about the deal and had concerns about the cost of the bond issuance in December 2006.

11 However, Henry was unavailable to discuss his concerns that entire day.

12     39.    On July 30, 2007, Oliphant and Henry arrived in Oklahoma City. In a telephone

13 conference call, Greystone rescinded its demand that the seller subordinate his carry-back loan.

14 Instead, Greystone requested that Henry's bank allow Greystone to purchase its loan after closing, so

15 that Greystone could improve its collateral position.

16     40.    On July 31, 2007, Oliphant and Henry met for approximately six hours to discuss

17 Henry's concerns. During this meeting, David Henry proposed taking over the entire Project in

18 exchange for assuming the Greystone loan. The parties did not reach agreement for modifying their

19 prior arrangement, and David Henry left town without signing the escrow documents. Oliphant,

20 however, signed the closing documents at the title company that day before leaving Oklahoma City.

21     41.    In early August 2007, Greystone began negotiating with David Henry on ways to get

22 the deal done without Oliphant and Plaintiffs, and also began threatening to declare the bridge loan in

23 default.

24     42.    On August 9, 2007, Greystone unilaterally withdrew the HUD loan application

25 without any prior notice or warning to Oliphant or Plaintiffs. The withdrawal of the HUD

26 application placed at risk the $7,095,000 in tax exempt bond proceeds. It also caused the seller to

27 terminate negotiations with Oliphant because the withdrawal of the HUD application made it appear

28

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*     - 10
First Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, LLP     Exhibit A-2, Page 38