# Exhibit A

## Part 3 of 8

1  that Plaintiffs could not close the deal and that it would take another 10-12 months if the HUD

2  process were started over.

3      43.    By email dated August 21, 2007, Greystone representatives requested additional

4  documentation from Plaintiffs for submission to the loan committee, thus indicating that Greystone

5  intended to go forward with the deal. On the same date, however, Greystone CDE was apparently

6  preparing a letter declaring the bridge loan in default.

7      44.    On or about August 22, 2007, Thom Ruffin of Greystone telephoned Oliphant and

8  asked if he had received "the letter." When Oliphant responded in the negative, Ruffin informed

9  Oliphant that Plaintiffs were going to receive a letter that had gone out by FedEx declaring the bridge

10  loan in default. Ruffin then proceeded to tell Oliphant that Greystone had been talking to David

11  Henry regarding terms upon which Henry would take over Plaintiffs' deal and assume some of the

12  liability of the Greystone bridge loan.

13      45.    After the telephone call, Oliphant received the letter dated August 21, 2007 wherein

14  Greystone CDE declared the bridge loan in default and threatened legal enforcement. The August 21

15  default letter was transmitted by FedEx to Oliphant at his address in California. The first alleged

16  default specified in the August 21 default letter was "expiration of the contract for purchase and sale

17  of the Project without the same having been extended." The August 21 default letter also specified

18  other alleged defaults that were inaccurate, not defaults, and/or had been waived.

19      46.    Over the next several days, the Greystone Defendants continued to pressure Oliphant

20  and Plaintiffs to allow David Henry to take over the entire Project (keeping all the profits). As a part

21  of this proposal, Henry would assume $275,000 of the bridge loan but Greystone required that

22  Oliphant accept responsibility for paying $215,000, release Greystone of all liability, and agree not to

23  sue. By letter dated August 27, 2007, transmitted by email and FedEx, Greystone notified Oliphant

24  that it would pursue all collection remedies unless Plaintiff's agreed to the proposed transaction

25  wherein David Henry would take over the deal. On August 30, 2007, Greystone's counsel delivered

26  an "assignment agreement and covenant not to sue" to this effect and demanded that Oliphant

27  provide written confirmation of acceptance by August 31.

28

_Santa Fe Pointe, LP., et al v. Greystone Servicing Corporation, Inc., et al._
First Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, LLP

- 11

Exhibit A-2, Page 39

47.    The terms of the proposed "assignment agreement and covenant not to sue" were financially unacceptable to Plaintiffs and Oliphant did not sign the documents by the requested deadline. Instead, after the Labor Day weekend, Oliphant and Ruffin traded phone calls for several days.

48.    By email transmitted on September 11, 2007, Oliphant notified the Greystone Defendants that Plaintiffs had successfully documented extension of the time to close the deal with the Seller and provided copies of the fully executed Addendum effecting the extension. This cured the first-listed alleged default specified in Greystone's August 21 default letter ("expiration of the contract for purchase and sale of the Project without having been extended"). Thus, in this same email, Oliphant also demanded that Greystone rescind its Notice of Default issued August 21, 2007.

49.    The Greystone Defendants ignored Oliphant's email of September 11 and did not rescind the August 21 notice of default nor otherwise respond in writing. On September 13, 2007, Oliphant sent a further email to the Greystone Defendants asking for a written response to the September 11 email.

50.    In response to Oliphant's September 13 email, Thom Ruffin telephoned Oliphant on September 14, 2007, and set up a telephone conference call for later that day. During that conference call, Oliphant again requested that the Greystone Defendants rescind the August 21 notice of default but the Greystone Defendants refused to do so. The Greystone Defendants claimed that the bridge loan was still in default because there was (they claimed) no tax credit syndicator. The Greystone Defendants further stated that Greystone was "out" unless Plaintiffs could prove that the Project was a viable deal.

51.    In fact, the bridge loan was not in default for the claimed lack of a tax credit syndicator. First of all, the Greystone Defendants waived this condition in April 2007 when the initial tax credit syndicator withdrew from the deal. Moreover, Plaintiffs had obtained a commitment from a successor tax credit syndicator in June 2007 which, at the time of the September 14 telephone conference, was still in effect and had not been withdrawn.

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                                    - 12
First Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, LLP         Exhibit A-2, Page 40

1    52.    By letter dated September 21, 2007, Greystone CDE notified Plaintiffs that it was

2    accelerating the bridge loan and declaring all amounts due under the bridge loan note immediately due

3    and payable.

4                                    **FIRST CAUSE OF ACTION**

5                        **(For Negligence, Including Professional Negligence)**

6    53.    Plaintiffs refer to and hereby incorporate herein the foregoing Paragraphs 1 through

7    52, inclusive, and other material allegations set forth above, as though the same were fully set forth at

8    this place.

9    54.    Each of the Greystone Defendants owed Plaintiffs and each of them a duty of due

10   care by virtue of the business relationship established through the Engagement Agreement wherein

11   Plaintiffs appointed Greystone Servicing to serve as their exclusive agent to process the HUD

12   application for financing the acquisition and rehabilitation of the Project and Greystone Servicing's

13   and undertakings pursuant thereto.

14   55.    Each of the Greystone Defendants owed Plaintiffs and each of them a duty of due

15   care by virtue of Greystone Servicing's position as a HUD-approved underwriter for the FHA's

16   Multifamily Accelerated Processing (MAP) program and the respective roles and involvements of

17   Plaintiff in the Project.

18   56.    Each of the Greystone Defendants owed Plaintiffs and each of them a duty to use

19   such skill, prudence and diligence as other HUD-approved underwriters for the FHA's Multifamily

20   Accelerated Processing (MAP) program commonly possess and exercise.

21   57.    The Greystone Defendants and each of them breached their respective duties of due

22   care owed to Plaintiffs and each of them with respect to the Project and the HUD financing. The

23   breaches of the Greystone Defendants include, but are not limited to, failing to expedite processing,

24   preparation and submission of the HUD application, causing delay in the processing, preparation and

25   submission of the HUD application, making unsolicited derogatory statements regarding Plaintiffs

26   and the Project to HUD representatives, and withdrawing the HUD application without prior notice

27   to or consent by Plaintiffs or any of them.

28

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*
First Amended and Supplemental Complaint for Damages and Declaratory Relief            - 13
Farber & Company Attorneys, LLP

1    58.    As a direct and legal result of the Greystone Defendants' respective breaches of the

2    respective duties of due care owed to Plaintiffs and each of them with respect to the Project and the

3    HUD financing, as alleged hereinabove, Plaintiffs, and each of them, have been damaged and injured

4    in an amount to be proven at trial.

5    59.    As a direct and legal result of the Greystone Defendants' respective breaches of the

6    respective duties of due care owed to Plaintiffs and each of them with respect to the Project and the

7    HUD financing, as alleged hereinabove, Plaintiffs, and each of them, have been forced to retain

8    attorneys, accountants, investigators, agents and other consultants, and to expend time and money, to

9    discover and remedy the fraud, all according to proof.  Plaintiffs reserve the right to amend this

10    complaint at such time as the amounts of damage become known.

11    WHEREFORE, Plaintiffs pray for judgment as set forth below.

12

13    ### SECOND CAUSE OF ACTION
(For Breach of Fiduciary Duty / Constructive Fraud)

14    60.    Plaintiffs refer to and hereby incorporate herein the foregoing Paragraphs 1 through

15    52, inclusive, and other material allegations set forth above, as though the same were fully set forth at

16    this place.

17    61.    Each of the Greystone Defendants stands in a confidential and fiduciary relationship

18    with Plaintiffs and each of them by virtue of the trust and confidence Plaintiffs and each of them

19    reposed in said defendants by virtue of the Engagement Agreement, the business relationship, and the

20    Greystone Defendants' position as a HUD-approved underwriter for the FHA's Multifamily

21    Accelerated Processing (MAP) program.

22    62.    Each of the Greystone Defendants owed Plaintiffs and each of them a fiduciary duty

23    by virtue of the trust and confidence Plaintiffs and each of them reposed in said defendants by virtue

24    of the Engagement Agreement, the business relationship, and the Greystone Defendants' position as

25    a HUD-approved underwriter for the FHA's Multifamily Accelerated Processing (MAP) program.

26    63.    The Greystone Defendants and each of them were negligent in the performance of

27    the duties owed to Plaintiffs and each of them with respect to the Project and the HUD financing, as

28    alleged hereinabove.  The Greystone Defendants and each of them further breached their respective

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*    - 14
First Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, LLP                Exhibit A-2, Page 42

1    fiduciary duties to Plaintiffs and each of them by failing to expedite processing, preparation and

2    submission of the HUD application, by causing delay in the processing, preparation and submission

3    of the HUD application, by making unsolicited derogatory statements regarding Plaintiffs and the

4    Project to HUD representatives, by changing the terms of the bridge financing, by withdrawing the

5    HUD application without prior notice to or consent by Plaintiffs or any of them, by demanding

6    priority for the bridge loan to which they were not entitled, by negotiating directly with David Henry

7    under terms that cut out Oliphant and Plaintiffs from the deal, and by attempting to force Plaintiffs to

8    transfer their prospective financial and non-economic gain in the Project to David Henry.

9        64.    The Greystone Defendants and each of them have gained an advantage over Plaintiffs

10   by virtue of the foregoing breaches.

11       65.    Plaintiffs and each of them were prejudiced by the foregoing breaches of duty in that

12   they advanced funds and expended time and energy and incurred obligations in connection with the

13   Project. Plaintiffs and each of them were further prejudiced by the foregoing breaches of duty in that

14   they now risk losing their prospective financial and non-economic gain from the Project.

15       66.    Plaintiffs' reliance, as set forth above, was reasonable under the circumstances.

16   Plaintiffs could not, in the exercise of reasonable diligence, have anticipated or discovered the

17   misconduct of the Greystone Defendants in the circumstances in a way that Plaintiffs could have

18   protected themselves or their financial interests.

19       67.    As a direct and legal result of the conduct of the Greystone Defendants as alleged

20   hereinabove, Plaintiffs, and each of them, have been damaged and injured in an amount to be proven

21   at trial.

22       68.    As a direct and legal result of the conduct of the Greystone Defendants, Plaintiffs, and

23   each of them, have been forced to retain attorneys, accountants, investigators, agents and other

24   consultants, and to expend time and money, to discover and remedy the fraud, all according to proof.

25   Plaintiffs reserve the right to amend this complaint at such time as the amounts of damage become

26   known.

27       69.    Plaintiffs should recover punitive damages, in addition to their actual damages, to

28   make an example of and to punish Defendants and each of them.

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*
First Amended and Supplemental Complaint for Damages and Declaratory Relief                    - 15 -
Farber & Company Attorneys, LLP            Exhibit A-2, Page 43

70.     The conduct of the Greystone Defendants, and each of them, as described hereinabove was fraudulent, malicious and oppressive, and done for the specific purpose of getting control over Plaintiff's monies for Defendants' own use and benefit. The Greystone Defendants, and each of them, also displayed reckless indifference to Plaintiffs and each of them with regard to the conduct alleged in this complaint. Plaintiffs should recover punitive damages, in addition to their actual damages, to make an example of and to punish Defendants and each of them.

71.     The conduct of the Greystone Defendants was, in and of itself, fraudulent, malicious and oppressive in that said Defendants were guilty of reckless indifference towards Plaintiffs, acted willfully and knowingly in the manner in which they torpedoed the Project and Plaintiffs' HUD application and the tax-exempt bond issue, and undertook separate negotiations with David Henry to cut out Oliphant and Plaintiffs.

WHEREFORE, Plaintiffs pray for judgment as set forth below.

### THIRD CAUSE OF ACTION
(Intentional Interference with Prospective Economic Advantage)

72.     Plaintiffs refer to and hereby incorporate herein the foregoing Paragraphs 1 through 52, inclusive, and other material allegations set forth above, as though the same were fully set forth at this place.

73.     At all times material hereto, Plaintiffs had an existing business relationship with the seller of the Project and with the HUD office in Oklahoma City.

74.     At all times material hereto, Plaintiffs had a probability of future economic benefit from successful completion of the financing, rehabilitation and development of the Project.

75.     The Greystone Defendants disrupted, delayed and interfered with Plaintiffs' prospective economic advantage, as alleged hereinabove.

76.     The conduct of the Greystone Defendants in disrupting, delaying and interfering with Plaintiffs' opportunity to complete the Project was wrongful in that said defendants, and each of them, delayed and failed to expedite the HUD application, changed terms of the deal at the last minute, and breached their fiduciary duties to Plaintiffs and each of them.

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*
First Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, LLP                    Exhibit A-2, Page 44

- 16

77.    The conduct of the Greystone Defendants in disrupting, delaying and interfering with Plaintiffs' opportunity to complete the Project was substantially certain to result in interference with Plaintiffs' prospective economic advantage in the Project. The Greystone Defendants knew of Plaintiffs' business relationship and prospective economic advantage.

78.    The Greystone Defendants intended to disrupt and interfere with Plaintiffs' business relationship and prospective economic advantage and profits from the Project.

79.    As a direct and legal result of the conduct of the Greystone Defendants as alleged hereinabove, Plaintiffs, and each of them, have been damaged and injured in an amount to be proven at trial.

80.    But for the disruption, delay and interference of the Greystone Defendants, it is reasonably probably that Plaintiffs would have realized the anticipated prospective economic advantage from the Project.

81.    Compelling public policy favors facilitating Low Income Housing Tax Credit projects (such as the Project) offered through the FHA's Office of Housing and Urban Development ("HUD"). This compelling public policy includes providing and facilitating the financial rewards available to tax-credit developers (such as Plaintiffs) so that the developers are incentivized to do such Low Income Housing Tax Credit projects (such as the Project).

82.    As a direct and legal result of the foregoing conduct of the Greystone Defendants, Plaintiffs, and each of them, have been forced to retain attorneys, accountants, investigators, agents and other consultants, and to expend time and money, to discover and remedy the fraud, all according to proof. Plaintiffs reserve the right to amend this complaint at such time as the amounts of damage become known.

83.    Plaintiffs should recover punitive damages, in addition to their actual damages, to make an example of and to punish Defendants and each of them.

84.    The conduct of the Greystone Defendants, and each of them, as described hereinabove was fraudulent, malicious and oppressive, and done for the specific purpose of getting control over Plaintiff's monies for Defendants' own use and benefit. The Greystone Defendants, and each of them, also displayed reckless indifference to Plaintiffs and each of them with regard to the

_Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al._
First Amended and Supplemental Complaint for Damages and Declaratory Relief          - 17
Farber & Company Attorneys, LLP          Exhibit A-2, Page 45

1  conduct alleged in this complaint. Plaintiffs should recover punitive damages, in addition to their

2  actual damages, to make an example of and to punish Defendants and each of them.

3       85.   The conduct of the Greystone Defendants was, in and of itself, fraudulent, malicious

4  and oppressive in that said Defendants were guilty of reckless indifference towards Plaintiffs, acted

5  willfully and knowingly in the manner in which they torpedoed the Project and Plaintiffs' HUD

6  application and the tax-exempt bond issue, and undertook separate negotiations with David Henry to

7  cut out Oliphant and Plaintiffs.

8       WHEREFORE, Plaintiffs pray for judgment as set forth below.

9

10  

**FOURTH CAUSE OF ACTION**
**(Negligent Interference with Prospective Economic Advantage)**

11       86.   Plaintiffs refer to and hereby incorporate herein the foregoing Paragraphs 1 through

12  52, inclusive, and other material allegations set forth above, as though the same were fully set forth at

13  this place.

14       87.   At all times material hereto, Plaintiffs had an existing business relationship with the

15  seller of the Project and with the HUD office in Oklahoma City.

16       88.   At all times material hereto, the Greystone Defendants, and each of them, owed

17  Plaintiffs a duty of care as alleged hereinabove.

18       89.   At all times material hereto, Plaintiffs had a probability of future economic benefit

19  from successful completion of the financing, rehabilitation and development of the Project.

20       90.   The Greystone Defendants wrongfully disrupted, delayed and interfered with

21  Plaintiffs' prospective economic advantage, as alleged hereinabove, and in delaying and failing to

22  expedite the HUD application, changing terms of the deal at the last minute, and breaching their

23  fiduciary duties to Plaintiffs and each of them.

24       91.   The conduct of the Greystone Defendants in disrupting, delaying and interfering with

25  Plaintiffs' opportunity to complete the Project, as alleged hereinabove, foreseeably disrupted and

26  interfered with Plaintiffs' prospective economic advantage in the Project.

27

28

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*       - 18
First Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, LLP    Exhibit A-2, Page 46

1      92.    As a direct and legal result of the conduct of the Greystone Defendants as alleged

2  hereinabove, Plaintiffs, and each of them, have been damaged and injured in an amount to be proven

3  at trial.

4      93.    But for the disruption, delay and interference of the Greystone Defendants, it is

5  reasonably probably that Plaintiffs would have realized the anticipated prospective economic

6  advantage from the Project.

7      94.    Compelling public policy favors facilitating Low Income Housing Tax Credit projects

8  (such as the Project) offered through the FHA's Office of Housing and Urban Development

9  ("HUD"). This compelling public policy includes providing and facilitating the financial rewards

10  available to tax-credit developers (such as Plaintiffs) so that the developers are incentivized to do such

11  Low Income Housing Tax Credit projects (such as the Project).

12      WHEREFORE, Plaintiffs pray for judgment as set forth below.

13

14          **FIFTH CAUSE OF ACTION**
                (Anticipatory Breach)

15      95.    Plaintiffs refer to and hereby incorporate herein the foregoing Paragraphs 1 through

16  52, inclusive, and other material allegations set forth above, as though the same were fully set forth at

17  this place.

18      96.    Plaintiffs and Defendants entered into a series of written agreements to accomplish

19  the financing for the acquisition and rehabilitation of the Project.

20      97.    The Greystone Defendants, and each of them, have expressly and unequivocally

21  repudiated those contracts by stating that they will not further perform, by stating that they are "out"

22  of the deal unless Plaintiffs provide proofs and assurances to which the Greystone Defendants are not

23  entitled, by refusing to rescind the August 21 notice of default, and by sending the September 18

24  notice of acceleration.

25      98.    Plaintiffs are ready, willing and able to perform under the agreements but for the

26  Greystone Defendants' repudiation and anticipatory breach.

27

28

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*
First Amended and Supplemental Complaint for Damages and Declaratory Relief     - 19 -
Farber & Company Attorneys, LLP

Exhibit A-2, Page 47

1    99.    As a direct and legal result of the breaches of the Greystone Defendants, as alleged

2    hereinabove, Plaintiffs, and each of them, have been damaged and injured in an amount to be proven

3    at trial.

4        WHEREFORE, Plaintiffs pray for judgment as set forth below.

5

6                            **SIXTH CAUSE OF ACTION**
                **(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

7    100.    Plaintiffs refer to and hereby incorporate herein the foregoing Paragraphs 1 through

8    52, inclusive, and other material allegations set forth above, as though the same were fully set forth at

9    this place.

10    101.    Plaintiffs and Defendants entered into a series of written agreements (including but

11    not limited to the Engagement Agreement) to accomplish the financing for the acquisition and

12    rehabilitation of the Project.  Inherent in said agreements is an implied covenant of good faith and fair

13    dealing by each party not to do anything which will deprive the other parties of the benefits of the

14    contract.

15    102.    The Greystone Defendants, and each of them, breached the implied covenants of

16    good faith and fair dealing by interfering as alleged hereinabove and by failing to cooperate with

17    Plaintiffs in the performance of the agreements.

18    103.    As a direct and legal result of the breaches of the Greystone Defendants, as alleged

19    hereinabove, Plaintiffs, and each of them, have been damaged and injured in an amount to be proven

20    at trial.

21        WHEREFORE, Plaintiffs pray for judgment as set forth below.

22

23                            **SEVENTH CAUSE OF ACTION**
                                **(Declaratory Relief)**

24    104.    Plaintiffs refer to and hereby incorporate herein the foregoing Paragraphs 1 through

25    52, inclusive, and other material allegations set forth above, as though the same were fully set forth at

26    this place.

27    105.    Plaintiffs and Defendants entered into a series of written agreements (including but

28    not limited to the Engagement Agreement) to accomplish the financing for the acquisition and

---

*Santa Fe Pointe, L.P., et al v. Greystone Servicing Corporation, Inc., et al.*                    - 20
First Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, LLP
                                Exhibit A-2, Page 48

1   rehabilitation of the Project, as hereinabove alleged, including but not limited to the bridge loan for

2   the Project, personal guarantees thereof, and written agreements concerning bridge loan for the

3   Project.

4          106.    An actual controversy now exists between Plaintiffs and the Greystone Defendants

5   concerning their respective legal rights, duties and obligations under the bridge loan, the guarantees

6   and the other agreements relating thereto. The Greystone Defendants claim that the bridge loan is in

7   default and that they have accelerated maturity of the bridge loan. Plaintiffs dispute that the bridge

8   loan is in default or has been accelerated.

9          107.    Plaintiffs and each of them desire a judicial determination and declaration of the

10  parties' respective rights, duties and obligations with respect to (1) whether or not the bridge loan is in

11  default and (2) whether or not maturity of the bridge loan has been accelerated. In addition, Plaintiff

12  Oliphant desires a judicial determination and declaration as to whether or not any payment is

13  currently due and payable from Oliphant on the bridge loan, the guarantees and/or the related

14  agreements and, if so, the amount thereof.

15         108.    Plaintiffs and each of them claim an offset against any amounts due any of the

16  Greystone Defendants under the bridge loan, the guarantees and the related agreements by reason of

17  Plaintiffs' respective claims for damages. Accordingly, Plaintiffs and each of them desire a judicial

18  determination and declaration as to (1) whether or not Plaintiffs or any of them are entitled to offset

19  any damages against any amounts due any of the Greystone Defendants under the bridge loan, the

20  guarantees and the related agreements and, if so, the amount of offset, and (2) whether or not any

21  sum is currently due and payable by any of them on the bridge loan, the guarantees and/or the related

22  agreements and, if so, the amount thereof.

23         109.    Plaintiffs and each of them have standing to seek declaratory relief because Plaintiffs,

24  and each of them, face imminent injury if the controversy is not promptly resolved.

25         110.    Under the circumstances, a declaration regarding the respective legal rights and duties

26  of the parties is necessary so that the parties will know how to proceed with respect to the notices

27  given by the Greystone Defendants and their respective rights, duties and obligations under the bridge

28  loan, the guarantees and the related agreements.

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*
First Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, LLP

- 21

Exhibit A-2, Page 49

1    WHEREFORE, Plaintiffs pray for judgment as set forth below.

2                            **PRAYER FOR RELIEF**

3        WHEREFORE, Plaintiffs SANTA FE POINTE, LP, an Oklahoma limited partnership

4    ("SFP"), THEOTIS F. OLIPHANT ("Oliphant"), an individual, and RANT, LLC, a Delaware limited

5    liability company ("Rant"), pray for judgment against defendants and each of them as follows:

6            A.    For general damages, according to proof;

7            B.    For compensatory damages, according to proof;

8            C.    For punitive and exemplary damages;

9            D.    For any statutory damages or penalties available under statute;

10           E.    For a judicial determination and declaration of the parties' respective rights,

11   duties and obligations with respect to (1) whether or not the bridge loan is in default, (2)

12   whether or not maturity of the bridge loan has been accelerated, (3) whether or not any

13   payment is currently due and payable from Oliphant on the bridge loan, the guarantees and/or

14   the related agreements and, if so, the amount thereof, (4) whether or not Plaintiffs or any of

15   them are entitled to offset any damages against any amounts due any of the Greystone

16   Defendants under the bridge loan, the guarantees and the related agreements and, if so, the

17   amount of offset, and (5) whether or not any sum is currently due and payable by any of them

18   on the bridge loan, the guarantees and/or the related agreements and, if so, the amount

19   thereof

20           F.    For reasonable attorney's fees;

21           G.    For costs of suit herein incurred; and

22           H.    For such other and further relief as the Court deems just or proper.

23

24   DATED: September 24, 2006                 FARBER & COMPANY ATTORNEYS, LLP
                                               Attorneys for Plaintiff
25

26

27                                      By _____
                                             Eric J. Farber, SBN 169472
28                                           Ann McFarland Draper, SBN 065669

---

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                - 22
First Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, LLP

# EXHIBIT A

Sep 07 2006 12:26PM  GIBBS & OLIPHANT LLP        5108348886              P.3

August 29, 2006

Mr. Theo Oliphant
113 Carmel Avenue
El Cerrito, CA  94530                                        GREYSTONE

RE:     *Santa Fe Pointe Apartments*
        *Oklahoma City, OK*
        *221(d)(4) Substantial Rehab*

Dear Mr. Oliphant:

Greystone Servicing Corporation, Inc. ("Greystone") is pleased to present this engagement letter to Theo Oliphant on behalf of an entity to be created ("Applicant"). This Engagement Letter will set forth the terms and conditions under which Greystone will process an application ("Application") for a mortgage loan ("Loan") on the above-referenced project ("Project") for submission to the Department of Housing and Urban Development ("HUD") under its Multifamily Accelerated Processing ("MAP") for approval of HUD mortgage insurance under Section 221(d)(4) of the National Housing Act, as amended.

Please carefully review each of the following exhibits attached hereto and incorporated herein by reference:

        Exhibit A – Proposed Loan Terms
        Exhibit B – Notice & Disclosure of Transaction Fees and Costs
        Exhibit C – Summary of the Process
        Exhibit D – Required Documentation (all forms will be provided under separate cover)
        Exhibit E – Conflicts Questionnaire

Upon your acceptance of this Engagement Letter along with your payment of the Third Party Fees and Greystone's Processing Fee, Greystone will become the exclusive lender to underwrite and process a HUD-insured loan for the Project. The Loan will be processed in accordance with HUD's MAP procedures, regulations and guidelines.

If acceptable, please execute the original of this Engagement Letter, initial all Exhibits, and return it and a check made payable to Greystone Servicing Corporation, Inc., in the amount of $14,000 for payment of the estimated Third Party Fees and the Greystone Processing Fee to: Sharon R. Pollock, Assistant Vice President, Greystone Servicing Corporation, Inc., 419 Belle Air Lane, Warrenton, VA 20186. We will then work together to obtain all the items on Exhibit D. The terms of this Engagement Letter are subject to change if it is not accepted and returned by September 5, 2006.

Exhibit A-2, Page 52

Theo Oliphant on behalf of an entity to be created
August 29, 2006
Page 2

Greystone is dedicated to helping guide you through the process. We will assist you in completing the forms and will be available to provide instruction each step of the way. We look forward to working with you on the successful completion of this transaction.
Very truly yours,

GREYSTONE SERVICING CORPORATION, INC.

By: *Sharon R Pollock*

Sharon R. Pollock
Assistant Vice President

## ACCEPTANCE:

The undersigned, as an authorized agent for the Applicant, hereby accepts the terms and conditions set forth in the foregoing Engagement Letter and agrees to perform or cause to be performed, in a timely manner, all of the obligations on the part of the Borrower contained herein; and to be bound by all of the terms, provisions and conditions thereof. You have the right for our account to order a title report and survey report.

## APPLICANT:

Theo Oliphant on behalf of an entity to be created

By: _____

Name: *Theotis Oliphant*

Title: *Managing Member*

Date: *9/6/2006*

Theo Oliphant
August 29, 2006
Page A-1

## EXHIBIT A

### Proposed Loan Terms

The proposed loan terms, as detailed below, are based on preliminary information and are subject to change by Greystone and HUD.

Proposed Transaction:    Substantial Rehab of Apartment Complex

Borrower:    TBD
c/o 113 Carmel Avenue
El Cerrito, CA 94530
(510) 222-5074
theo.oliphant@gmail.com

Contact Person:    Mr. Theo Oliphant

Project:    Santa Fe Pointe Apartments
125 SW 74th Street
Oklahoma City, OK 73139

Type of Project:    224-Unit Apartment Complex

Proposed Loan Amount:    $7,787,500 (subject to underwriting review and issuance of the HUD Commitment)

Loan Processing Interest Rate:    5.40%. *[Note: This rate shall be used for the purpose of processing the Application and may not reflect the actual interest rate of the Loan (Refer to Exhibit C of this Engagement Letter, Section III - Rate Lock)]*

Loan Term:    16-month construction loan term (Initial Endorsement to Final Endorsement) and 480-month permanent loan term (commencing from Final Endorsement to maturity)

Recourse:    Non-Recourse

Exhibit A-2, Page 54    Applicant's Initials ___

Sep 07 2006 12:26PM  GIBBS & OLIPHANT LLP        5108348886                p.6

Theo Oliphant
August 29, 2006
Page B-1

## EXHIBIT B

### Notice and Disclosure of Transaction Fees and Costs

The following describes the fees that will be incurred in this transaction. Unless otherwise defined herein, all capitalized terms used herein shall have the meaning set forth elsewhere in this Engagement Letter.

### The Following Fees Are Due and Payable at Execution of Engagement Letter:

Pre-Application Processing Fee:        $1,500 (Non-Refundable)

Pre-Application Third Party Fees:      $2,500 - Phase 1 Environmental Report estimate
                                       $5,000 - Limited Scope Appraisal estimate
                                       $5,000 - Market Study estimate
                                       Lead Based Paint and Asbestos Report Costs may
                                       apply for properties built before 1978. Costs will be
                                       determined for these at a later date.

                                       The above Pre-Application Third Party Fees are
                                       estimates only. Any additional costs are the
                                       responsibility of Applicant and will be due and
                                       payable upon receipt of an invoice from Greystone.
                                       Some or all of these fees may be reimbursable from
                                       Loan proceeds.

### The Following Fees Are Due and Payable Following HUD's Invitation to Submit a Firm Commitment:

Firm Application Processing Fee:       $3,500 (Non-Refundable)  *Refundable.* T̶T̶O̶

Firm Application Third Party Fees:     $4,500 - Cost Review estimate
                                       $4,500 - Architectural Review estimate
                                       $5,000 - Complete Appraisal estimate

                                       The above Firm Application Third Party Fees are
                                       estimates only. Any additional costs are the
                                       responsibility of Borrower and will be due and
                                       payable upon receipt of an invoice from Greystone.
                                       Some or all of these fees may be reimbursable from
                                       Loan proceeds.

### Payable Prior to Firm Application Submission:

HUD Application Fee:                   $23,363 (0.30% of Loan Amount)

Applicant's Initials TTO

Exhibit A-2, Page 55

Sep 07 2006 12:26PM  GIBBS & OLIPHANT LLP         5108348886              p.7

Theo Oliphant
August 29, 2006
Page B-2

### Payable Prior to Rate Lock:

Good Faith Deposit:

1.00% of the Loan Amount, collected prior to rate lock. The Deposit is required to assure closing occurs by the required closing date as determined at the time of rate lock and may be applied to Applicant's obligations at closing.

### Payable at Closing (generally payable from Loan proceeds):

HUD Inspection Fee:

0.50% of total improvements plus BSPRA, rounded up to the nearest $100. Fee is due and payable to HUD at closing.

Mortgage Insurance
Premium ("MIP"):

0.90% of the Loan Amount at closing. Thereafter, 0.45% will be due annually based on the then outstanding principal balance.

[1]Financing Fee:        *TFO*  1.25%
1.50% of Loan Amount; due and payable to Greystone at closing.

[1]Placement Fee:

0.00% of Loan Amount; due and payable to Greystone at closing.

Closing Costs:

Paid at closing, and include, but are not limited to, recording fees, title insurance expenses, survey costs, architect costs, Borrower's legal fees, Borrower's organizational expenses and Greystone's legal fees.

---

[1] Deemed earned upon Applicant's acceptance of the Greystone Commitment.

Exhibit A-2, Page 56                Applicant's Initials *TFO*

Sep 07 2006 12:26PM  GIBBS & OLIPHANT LLP          5108346886                    p.8

Theo Oliphant
August 29, 2006
Page C-1

## EXHIBIT C

### Summary of the Process

This summary is provided to assist you in tracking the status of the Loan throughout the process.

I. Pre-Application (NB: It is now possible to eliminate the pre-application and submit a firm application. In that case, the procedure described below would be modified. The cost of the initial appraisal would be increased by about $2,000 and the estimated cost of the architectural and cost review would be due on engagement. The cost of the final appraisal would be eliminated. The time frame for HUD to respond to the firm application would increase from 45 days to 60 days).

Upon Greystone's receipt of a fully executed original of this Engagement Letter, the Pre-Application Processing Fee, and the Pre-Application Third Party Fees as set forth in Exhibit B, Greystone will order the necessary third party reports and work with the Borrower to obtain the required documentation as identified in Exhibit D.

A. Preparation of Pre-Application. Upon completion of processing and underwriting (estimated at 4-6 weeks, depending on timing of third party reports), Greystone will prepare and deliver the pre-application to HUD (the "Pre-Application"); provided there are no conflict of interest issues which would prohibit Greystone from processing and submitting the Pre-application to HUD per HUD rules and regulatory requirements.

B. HUD Review. HUD guidelines indicate an initial review period of five (5) business days to determine completeness of submission, and once the Pre-Application is deemed complete, HUD's guidelines indicate HUD's review period should not exceed forty-five (45) days. Greystone will further obtain or assist Borrower in providing any additional clarifying information subsequently requested by HUD. Should HUD and/or Greystone decline to issue an invitation to submit a Firm Application, Greystone will refund any unexpended portion of the Pre-Application Third Party Fees.

II. Firm Application Processing

A. Date Firm Application Due to HUD. From the date of HUD's invitation, the firm application submission (the "Firm Application") is due to HUD within one-hundred twenty (120) days.

B. Preparation of Firm Application Submission. Greystone will advise Borrower of any issues received from HUD relating to Project acceptability and/or proposed Project underwriting parameters ("HUD Comments"). Borrower shall have fifteen (15) calendar days to provide Greystone with written acknowledgement and acceptance of the HUD Comments along with a check representing the Firm Application Processing Fee and the Firm Application Third Party Fees. Upon receipt of Borrower's acceptance of the HUD Comments and required fees, Greystone will then advise HUD of its intent to submit a Firm Application. Greystone will then commence its processing of the Firm Application and Borrower shall provide such additional documentation and Greystone shall order such additional third party reports as Greystone and/or

Applicant's Initials 

Sep 07 2006 12:27PM  GIBBS & OLIPHANT LLP      5108348886          p.9

Theo Oliphant
August 29, 2006
Page C-2

HUD requires to process such Firm Application as set forth in Exhibit D to the Engagement Letter. In the event Borrower declines to accept the HUD Comments, or fails to timely respond in writing, Greystone shall have no further obligation to the Borrower hereunder, other than to refund any unexpended portion of the Pre-Application Third Party Fees.

C. HUD Review. Upon completion of processing, receipt of underwriting approval, and receipt of the HUD Application Fee, Greystone will submit the Firm Application to HUD for review. HUD will again review the Firm Application for completeness. Once the Firm Application submission is deemed complete, HUD's review period should not exceed forty-five (45) days for the issuance of either (i) a HUD Commitment; or (ii) HUD's election not to issue a HUD Commitment.

III. Issuance of HUD and Greystone Commitment

Greystone will forward the HUD Commitment, when issued, to the Borrower for acceptance. Following Borrower's and Greystone's acceptance of the HUD Commitment, Greystone will issue its commitment ("Greystone Commitment") to the Borrower.

IV. Rate Lock

Once the Borrower and Responsible Party have individual acceptable to Greystone has guaranteed the Borrower's liability to Greystone for the period from rate lock through Loan closing, the Borrower may lock the Loan's interest rate, prepayment terms, and the closing date in accordance with the procedures set forth in the Greystone Commitment. The Responsible Party is a creditworthy individual acceptable to Greystone who will guarantee Borrower's liability to Greystone (i) for the period from rate lock through closing of the Loan (which includes any possible late closing fees) and/or (ii) resulting from Borrower's failure to close the Loan, all as more specifically outlined in the Greystone Loan Commitment.

It is important to note that rate lock should only occur once the Borrower and its counsel are confident that the Borrower is prepared to close the Loan by the required closing date, since locking the interest rate commits Greystone, and therefore the Borrower, to liability for damages should the Loan fail to close by the closing date established at the time of rate lock. The Greystone Commitment will provide for monthly extension periods that will be available to the Borrower upon payment of an extension fee of 0.375% per period, should the need arise to extend the closing date, subject to Greystone and HUD approval. However, because of the liability incurred during the period from rate lock through closing, a creditworthy individual acceptable to Greystone is required to guarantee the Borrower's liability incurred at rate lock.

V. Closing/Funding

Greystone will prepare the loan documents following rate lock. Closing and funding will be scheduled at the appropriate HUD Office and is to be attended by the Borrower and Greystone. Borrower must provide counsel capable of reviewing the loan documents and issuing any necessary opinions. The closing process typically takes 30-45 days following Borrower's execution of the Greystone Commitment.

Exhibit A-2, Page 58                    Applicant's Initials ___