# Exhibit A

## Part 5 of  8

Borrower. Upon receipt by Borrower of each Disbursement, Borrower shall promptly apply such portion of the proceeds thereof which were drawn for previously incurred expenses to the payment thereof. Any proceeds drawn by Borrower in anticipation of a Future Project Expense shall be held by Borrower in trust and applied to the payment of such expenses. Evidence of the application of Disbursement proceeds to the payment of approved expenses shall be sent to Lender along with the next Disbursement Request Form, or otherwise as may reasonably be requested by Lender.

**Section 6.3    Disbursements to Pay Interest.**

(a)    Unless and until the Loan Amount shall have been fully disbursed in accordance with the terms hereof, on each interest payment date and without submission by Borrower of any Disbursement Request Form or any further authorization by Borrower, Lender shall make a disbursement to itself in an amount equal to the difference between (i) the amount of interest due hereunder and under the Note and (ii) an amount equal to investment earnings received by or credited to the account of Lender, if any, since the preceding interest payment date on an amount equal to the undisbursed portion of the Loan Amount at such interest rate as may be determined from time to time by Lender upon notice to Borrower. Borrower acknowledges and agrees that Lender may determine the interest rate in its sole and absolute discretion.

(b)    Notwithstanding any provisions of this Article VI to the contrary, and without further notice to or authorization by Borrower, Lender may, at its option, make a Disbursement to pay such other sums as may be owing from time to time by Borrower in connection with the Loan, upon the failure by Borrower to pay such other sums when and as due, whether or not the proceeds of the Loan were contemplated as the source of payment of interest or such other sums.

(c)    To the extent any interest or other sum due to Lender is not fully paid by a disbursement of the remaining undisbursed Loan Amount under this Article VI, Borrower shall immediately pay to Lender the balance then due and owing.

(d)    Any Disbursement pursuant to this Section 6.3 shall be made by Lender to itself, shall be evidenced by the Note and shall be secured by the Collateral as fully as if made to or at the request of Borrower.

**Section 6.4    General Conditions Governing All Disbursements.**

(a)    No Disbursement shall be made after the end of the Origination Period.

(b)    No Disbursement shall be made pursuant to Section 6.2 hereof which would cause the total of all Disbursements made pursuant to Section 6.2 to exceed the Loan Amount.

(c)    No Disbursement shall be made during the continuance of an Event of Default, during the continuance of any event which, with the giving of notice or the passage of time or both, would constitute an Event of Default, or during the continuance of any default

11

under any other financing now or in the future provided by Lender to Borrower or any other Obligor.

(d)     All representations and warranties made by Borrower in this Agreement and in the other Loan Documents, shall be true and correct in all material respects on the date of the Disbursement with the same effect as though such representations and warranties had been made on and as of such date.

(e)     Lender reserves the right to withhold any Disbursement if, in Lender's reasonable judgment, (i) a material adverse change has occurred in the financial condition, operations or prospects of Borrower or (ii) a material adverse change has occurred in the feasibility or development progress of the Project (including, without limitation, the events described in Section 7.5(d)) and/or the fair market value of the Collateral securing the Loan.

Section 6.5     No Waiver. In the event Lender fails to require, or Borrower fails to fulfill, any condition to a Disbursement, such failure shall not constitute a waiver of such condition by Lender, nor shall such failure preclude Lender from requiring fulfillment of such condition by Borrower in order for Borrower to receive a future Disbursement.

Section 6.6     Continuing Representations and Warranties. Each request for a Disbursement shall constitute, without the necessity of a written statement to such effect, a confirmation by Borrower to Lender that all representations and warranties made by Borrower in this Agreement and the other Loan Documents are true and correct in all material respects as of the date of such request.

### ARTICLE VII
### AFFIRMATIVE COVENANTS

As long as any portion of the Loan is outstanding or any amounts under the Note remain unpaid, Borrower covenants and agrees that, unless Lender otherwise consents in writing:

Section 7.1     Reports. Borrower shall furnish or cause to be furnished to Lender the following financial information and other reports:

(a)     Within one hundred (120) days after the end of each fiscal year of Borrower, Borrower shall furnish to Lender annual financial statements of Borrower certified by an independent certified public accountant as fairly presenting Borrower's financial position at the end of the fiscal year and the results of Borrower's operations for the fiscal year, and as being prepared in accordance with generally accepted accounting principles, consistently applied.

(b)     On the forty-fifth (45th) day after the end of each calendar quarter, commencing March 1, 2007, Borrower shall furnish to Lender: (i) quarterly financial statements of Borrower fairly presenting Borrower's financial position at the end of the quarter and the results of Borrower's operations for the quarter, prepared internally, in accordance with generally accepted accounting principles, consistently applied.

(c)     As promptly and as reasonable practicable after request, Borrower shall furnish to Lender such additional information, reports, statements, and certificates with respect to

12

the Loan, and/or the operations, prospects or financial condition of Borrower, and/or the development of the Project, as Lender may from time to time reasonably request.

**Section 7.2    Existence.** Borrower shall maintain its existence and good standing under the laws of the State of Oklahoma, and shall comply with all applicable federal, state and local laws and regulations to the extent necessary and required for the continuation of its operations.

**Section 7.3    Taxes and Charges.** Borrower shall promptly pay and discharge all taxes, assessments, and governmental charges, on its income and properties (including, without limitation, the Collateral) prior to the date on which penalties attach thereto, except to the extent such taxes shall be contested in good faith and by appropriate proceedings and as to which adequate reserves in the judgment of Lender shall have been provided.

**Section 7.4    Records.** Borrower shall (i) maintain books and records adequate to enable independent certified public accountants to certify the financial statements referred to in Section 7.1, (ii) retain such books and records and copies of the reports and statements referred to in Section 7.1 for a period of at least four (4) years after payment in full of the Note, and (iii) make such books and records available for inspection by Lender and its agents and representatives at all reasonable times.

**Section 7.5    Notices to Lender.** Borrower shall promptly notify Lender of the following:

(a)    The commencement of any action, suit or proceeding before any court or governmental department, commission, board, bureau, agency or instrumentality, domestic or foreign, that seeks recovery from such party in an amount equal to or greater than ten percent (10%) of the Loan Amount;

(b)    Any change in the end of Borrower's fiscal year, which currently is December 31;

(c)    The occurrence of any material adverse change in the financial condition, operations or prospects of Borrower or any other Obligor from the date of the most recent financial statements of the Borrower delivered to Lender;

(d)    Any material adverse change in anticipated course of development of the Project (including, without limitation, the occurrence of any default under the contract for the purchase and sale of the Project, failure to receive any necessary HUD approval, the occurrence of a default under any of the Bond Documents, failure to satisfy any of the conditions to break of escrow under the Bond Documents within the time period specified therein, redemption of the Bonds, failure to satisfy the conditions to the equity investment in the Project or termination of the commitment to provide an equity investment in the Project); and

(e)    The occurrence of any Event of Default or event which, with the giving of notice or the passage of time or both, would constitute an Event of Default.

**Section 7.6    Insurance.** Borrower shall maintain property and general liability insurance in such amounts, on such terms, and covering such risks as is reasonably acceptable to

13

Lender, with Lender to be notified, by the terms thereof, prior to the cancellation or non-renewal of any such policy.

**Section 7.7    Anti-Discrimination Laws.** Borrower, in its use of proceeds of the Loan and in its conduct of the Project, shall comply fully with all applicable federal, state, local, and any other governmental anti-discrimination laws, executive orders, and rules and regulations.

**Section 7.8    Inspections.** Borrower shall allow Lender to inspect Borrower's books and records, and books, records, and contracts relating to the Project, and make copies and extracts therefrom, at all reasonable times. Borrower shall grant Lender and its agents and representatives full rights of entry and free access to the Project.

## ARTICLE VIII
## NEGATIVE COVENANTS

As long as any portion of the Loan is outstanding or any amounts under the Note remain unpaid, Borrower covenants and agrees that, unless Lender otherwise consents in writing:

**Section 8.1    Assignment.** Borrower shall not assign any rights or delegate performance of any duties or obligations of Borrower provided in this Agreement or the other Loan Documents.

**Section 8.2    Material Changes.** Borrower shall not:

(a)    Permit or make any material change in or to the Project; or

(b)    Dissolve, liquidate, consolidate with, merge into, or form a partnership or joint venture with, any corporation or other organization, or otherwise acquire all or substantially all of the assets, capital stock, or properties of any corporation or other organization.

**Section 8.3    Disposal of Assets.** Borrower shall not sell, lease, transfer or otherwise dispose of its properties, assets, rights, licenses to any person or entity, except (i) in the ordinary course of its operations and (ii) in the case of the Collateral, with the prior written approval of Lender.

**Section 8.4    Liens.** Except as otherwise provided in this Agreement, Borrower shall not create, incur, assume or suffer to exist any pledge, lien, charge or other encumbrance of any nature on the Collateral or any portion thereof.

**Section 8.5    Guaranties.** Borrower shall not and shall not permit any Borrower Affiliate to guaranty, become surety for, endorse or otherwise in any way be or become responsible for the liabilities or obligations of any person or entity other than any guaranties in favor of the Lender and the guaranties related to the acquisition or construction of affordable housing developments in which Borrower or any Borrower Affiliate is participating.

**Section 8.6    Indebtedness.** Borrower shall not incur, create, assume or suffer to exist on the part of Borrower, any indebtedness for borrowed money other than (i) the Loan, (ii) the

14

Exhibit A-2, Page 76

existing debt due and owing to the Senior Secured Lender and (iii) indebtedness incurred by a Borrower to finance affordable housing projects in which the Borrower is participating.

Section 8.7    Conduct of Business. Borrower shall not cease to engage in its business as currently conducted and shall not engage in any other business.

## ARTICLE IX
## EVENTS OF DEFAULT

Section 9.1    Events of Default. The occurrence of any or more of the following events shall constitute an "Event of Default" under this Agreement:

(a)    Borrower or any other Obligor fails to make any payment of principal of or interest when due hereunder and under the Note; or

(b)    Borrower fails to observe or perform any other term, covenant, undertaking or agreement contained in this Agreement or any other Loan Document, and such failure continues unremedied for a period of thirty (30) days after written notice has been given to Borrower by Lender, or, if such failure is not reasonably capable of being remedied within such period of thirty (30) days, Borrower or another Obligor has not commenced remedial action within such thirty-day period and is not proceeding with diligent efforts to remedy such failure; provided, however, that no notice or remedial period shall apply to any event specifically described elsewhere in this Section 9.1, or to a default under Section 8.3 or Section 8.4;

(c)    Any representation or warranty made by Borrower or any other Obligor in this Agreement or the other Loan Documents, or any statement or representation made in any certificate, report or opinion delivered pursuant to this Agreement or the other Loan Documents, proves to have been false, misleading or incorrect when made or deemed made; or

(d)    Any Obligor becomes insolvent, or fails or ceases to pay its debts as they mature or makes an assignment for the benefit of creditors or files a petition in bankruptcy or is adjudicated insolvent or bankrupt or petitions or applies to any tribunal for the appointment of any receiver or any trustee, or commences any proceeding under any reorganization, arrangement, readjustment of debt, dissolution or liquidation law or statute of any jurisdiction, whether now or hereafter in effect, or any such proceeding is commenced against any Obligor that is not dismissed within a period of sixty (60) days, or any Obligor, by any act indicates its consent to, approval of, or acquiescence in any such proceeding or the appointment of any receiver or of any trustee for it or any substantial part of its property, or suffers any such receivership or trusteeship to continue undischarged for a period of sixty (60) days; or

(e)    One or more judgments or decrees are entered against any Obligor involving in the aggregate a liability of an Obligor (not paid or fully covered by insurance) which in the judgment of Lender is determined to materially and adversely affect the financial condition of such Obligor, and all such judgments or decrees are not vacated, discharged, stayed or bonded pending appeal within sixty (60) days after receiving notice from Lender of its determination under this Section 9.1(e); or

(f)     The organizational documents of Borrower are amended without the prior written consent of Lender; or

(g)     The contract for the purchase and sale of the Project expires without having been extended or a default occurs thereunder which extends beyond any applicable notice, grace or cure period;

(h)     There occurs and is continuing beyond any applicable notice, grace or cure period, an event of default under the Bond Documents or the Bonds are redeemed; or

(i)     There occurs and is continuing beyond any applicable notice, grace or cure period, an event of default in respect of the indebtedness secured by the Senior Pledge (as defined in the Certificate of Deposit); or

(j)     The commitment to provide the equity investment in the Project expires without having been extended or is terminated; or

(k)     Any change occurs in the operation, prospects or financial condition of Borrower which Lender in its reasonable judgment believes may materially adversely affect the ability of Borrower to repay the Note or the ability of Borrower or any Obligor to perform its respective obligations under this Agreement or the other Loan Documents; or

(l)     A default occurs under any other loans or financing now or in the future provided to Borrower or any Obligor by Lender or under the terms of any instrument or document evidencing or securing, or otherwise executed or delivered in connection with, any other loans or financing now or in the future provided by Lender to Borrower or any Obligor.

**Section 9.2     Remedies Upon Event of Default.** Upon the occurrence of any one or more Events of Default, Lender may exercise all or any of the following rights and remedies:

(a)     Lender may, by written notice to Borrower, declare the indebtedness evidenced by the Note, any and all other amounts payable hereunder and under the other Loan Documents and any and all other indebtedness of Borrower or any Obligor to Lender forthwith to be due and payable, whereupon the indebtedness evidenced by the Note and such other indebtedness shall become immediately due and payable, as to principal, interest and any other amounts payable to Lender.

(b)     Lender may exercise any and all rights and remedies provided in this Agreement and in the other Loan Documents and/or as available at law or in equity.

(c)     Lender may protect and enforce its rights and remedies by appropriate judicial proceedings, including, but not limited to, foreclosure of the Collateral, an award of specific performance, or other legal or equitable remedy in aid of the exercise of the powers granted in or pursuant to this Agreement or the other Loan Documents.

**Section 9.3     Automatic Acceleration.** Upon the occurrence of any Event of Default described in Section 9.1(d), all amounts due under the Note, this Agreement and the other Loan Documents shall immediately be due and payable without presentment, demand, protest or notice

of any kind, all of which are expressly waived by Borrower to the fullest extent permitted by law.

Section 9.4    Cumulative Rights. Each right, remedy and power granted to Lender under this Agreement and the other Loan Documents shall be cumulative and in addition to any other right, remedy or power not specifically granted in this Agreement or now or hereafter existing in equity, at law, by virtue of statute or otherwise, may be exercised by Lender from time to time concurrently or independently and as often and in such order as Lender may deem expedient.

## ARTICLE X
## MISCELLANEOUS

Section 10.1    Indemnification.

(a)    Borrower shall indemnify and hold Lender harmless against and in respect of:

(i)    Any and all losses, damages or deficiencies of Lender, its employees or its agents, resulting from any material misrepresentation or willful nonfulfillment or breach of any agreement on the part of Borrower under this Agreement or from any material misrepresentation or willful omission from any instrument, agreement or other document furnished or to be furnished to Lender under this Agreement, other than losses, damages or deficiencies in connection with the nonpayment of the Loan, the provisions for which are separately provided for in this Agreement; and

(ii)    Any and all actions, suits, proceedings, demands, assessments, judgments, costs and reasonable legal and other expenses incident to any of the provisions of Section 10.1(a)(i).

(b)    The obligations of this Section 10.1 shall survive the repayment of the Loan.

Section 10.2    Notices. All notices, requests, demands, consents, waivers and other communications given under any of the provisions of this Agreement shall be in writing (or by fax, e-mail, or similar electronic transmission confirmed in writing) and shall be deemed to have been duly given or made (i) when delivered by hand, or (ii) if given by mail, three (3) days after deposited in the mails by certified mail, return receipt requested, sufficient postage prepaid, or (iii) if given by fax, e-mail, or similar electronic transmission, when sent and receipt has been confirmed, addressed as stated below, or to such other address as the addressee may have specified in a notice duly given to the other addressees.

To Lender:          Greystone CDE, LLC
                    419 Belle Air Lane
                    Warrenton, Virginia 20186
                    Attention:   Andrew J. Shedlock, III
                    Phone:       540-428-7208

17          Exhibit A-2, Page 79

Fax:    540-341-2192
Email:    AShedlock@GreystoneUSA.com

To Borrower:    Santa Fe Pointe, L.P.
c/o Santa Fe Pointe Management, LLC
16416 Oconee Creek Drive
Edmond, Oklahoma 73013
Attention:
Phone:
Fax:
Email:

**Section 10.3  Entire Agreement.** This Agreement and the other Loan Documents contain the entire agreement of the parties with respect to the transactions contemplated in this Agreement, and supersedes all prior proposals, negotiations, agreements, and understandings relating to such transactions. Borrower acknowledges that, in entering into this Agreement, it is not relying on any statement, representation, warranty, covenant, or undertaking of any kind made by Lender or any employee or agent of Lender, other than the agreements of Lender set forth in this Agreement.

**Section 10.4   Amendments.** No modification or waiver of any provision of this Agreement shall be valid unless in writing, and signed by Lender and Borrower.

**Section 10.5  No Waiver.** No delay or failure on the part of Lender in exercising any rights under this Agreement or the other Loan Documents and no partial or single exercise of any such rights, shall constitute a waiver of such rights or of any other rights under this Agreement or the other Loan Documents.

**Section 10.6   Liability of Lender.** Borrower agrees that Lender shall have no liability (in contract, in tort, or otherwise) for any lost profits or other consequential damages sustained by Borrower or any Borrower Affiliate as a result of any act or omission to act by Lender or any of its directors, officers, agents, or employees, in connection with the Loan or the Loan Documents, unless caused by the gross negligence or willful misconduct of Lender.

**Section 10.7  No Joint Venture.** Notwithstanding anything to the contrary in this Agreement or the other Loan Documents, Lender, by making the Loan or by any action pursuant to this Agreement or the other Loan Documents, is not and shall not be deemed to be a partner or joint venturer with Borrower.

**Section 10.8   Other Parties.** Nothing in this Agreement shall be construed as giving any person or entity, other than the parties to this Agreement, any right, remedy or claim under or in respect of this Agreement.

**Section 10.9   Applicable Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of _____ (without regard to the principles of conflicts of law).

**Section 10.10 Survival.** All representations, warranties and agreements in this Agreement shall survive the expiration or termination of this Agreement.

. **Section 10.11 Severability.** If any provision of this Agreement should, for any reason, be held to be illegal, invalid or unenforceable, such illegality, invalidity or unenforceability shall not affect any other provision of this Agreement, but this Agreement shall be construed as if such illegal, invalid or unenforceable provision had never been contained in this Agreement.

**Section 10.12 Successors and Assigns.** This Agreement shall be binding upon and operate for the benefit of the respective successors and assigns of the parties; provided, however, that Borrower shall not have the right to assign any of its rights or delegate the performance of any of its obligations under this Agreement without the prior written consent of Lender.

**Section 10.13 Duplicate Originals.** Two or more duplicate originals of this Agreement may be signed by the parties, each of which shall be an original but all of which together shall constitute one and the same instrument.

**Section 10.14 Titles and Captions.** The titles and captions in this Agreement are for convenience of reference only and shall not affect the construction or interpretation of this Agreement.

**Section 10.15 Records.** The outstanding principal balance of the Loan and the unpaid interest accrued thereon shall at all times be ascertained from the records of Lender, which shall be conclusive evidence thereof, absent manifest error.

**Section 10.16 Further Assurances.** At any time upon, and from time to time upon request by Lender, Borrower shall do any acts and execute and deliver any documents as may be reasonably requested by Lender to accomplish the purposes of this Agreement.

**Section 10.17 Assignment of Loan Documents.** The Lender may assign or otherwise transfer its rights under this Agreement at any time or times, in its sole and absolute discretion, without any notice to or approval or consent from Borrower; and any holder or holders of the Note or other Loan Documents shall be deemed an assignee of such rights.

**Section 10.18 Waiver of Jury Trial.** BORROWER AND LENDER EACH (A) COVENANTS AND AGREES NOT TO ELECT A TRIAL BY JURY WITH RESPECT TO ANY ISSUE ARISING OUT OF THE LOAN OR OUT OF THIS AGREEMENT AND/OR THE OTHER LOAN DOCUMENTS THAT IS TRIABLE OF RIGHT BY JURY AND (B) WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY SUCH ISSUE TO THE EXTENT THAT ANY SUCH RIGHT EXISTS NOW OR IN THE FUTURE. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS SEPARATELY GIVEN BY EACH PARTY, INTENTIONALLY, KNOWINGLY, AND VOLUNTARILY.

**Section 10.19 Contingency.** The obligations of Lender under this Agreement are contingent upon the execution and delivery by Borrower, the General Partner, the Developer and the Guarantor of the respective Loan Documents to which each is a party and such other documents, instruments, certifications and opinions of counsel as Lender may require.

19

Exhibit A-2, Page 81

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized representatives as of the day and year first above written.

GREYSTONE CDE, LLC

By: _____
Name:
Title:


SANTA FE POINTE, L.P., an Oklahoma limited partnership

By:    SANTA FE POINTE MANAGEMENT, LLC, an Oklahoma limited liability company, its general partner

By: _____
Name:
Title:

## EXHIBIT A

### FORM OF DISBURSEMENT REQUEST FORM

BORROWER:    Santa Fe Pointe, L.P.

REQUISITION NO.: _____

IN THE AMOUNT OF $_____

TO:    Greystone CDE, LLC
       419 Belle Air Lane
       Warrenton, Virginia 20186

The borrower hereby requests payments in the following amounts, from the following sources and to be made to the following parties, all as set forth on the Invoices attached to this Requisition:

           Amount                         Payable to:

                                    [Borrower's account #] [third party payment/wire instructions must be attached]

**Requisition – Contents and Attachments**

☐     Borrower's Representations and Warranties

☐     Invoices for Payments

A-1            Exhibit A-2, Page 83

## Representations and Warranties

1.  Funding of this Disbursement shall be in accordance with the terms and provisions of the Bridge Loan Agreement, dated as of December __, 2006 (the "Loan Agreement"), and amounts for which disbursement is sought are for payments of predevelopment costs of Borrower described on the attachments hereto which have not been the subject of any previous Requisition.

2.  All moneys requisitioned by Borrower and disbursed by Lender under previously approved Disbursement Request Forms have been expended for the purpose for which they were requisitioned. Attached hereto are invoices (or other evidence, as applicable) of the incurrence of the expenses under previous Disbursement Request Forms, to the extent not previously provided to Lender.

3.  All of the information submitted to Lender in connection with this Disbursement Request Form is true and accurate as of the date of submission.

4.  The representations and warranties set forth in the Loan Agreement and the other Loan Documents are true and correct as of the date hereof with the same effect as if made on this date.

5.  The Borrower represents and warrants that this Disbursement Request Form is in the form of requisition required by Lender and the conditions to Disbursement set forth in Article VI of the Loan Agreement have been satisfied.

6.  The Borrower represents and warrants that (i) all invoices attached hereto and to be paid by this Disbursement have either already been paid by the Borrower or will be paid by the Borrower or directly by Lender on the date this Disbursement is funded and (ii) all anticipated expenses listed on the Schedule attached hereto and intended to be paid by this Disbursement are expected to be incurred in the next 30 (thirty) days and shall be paid as incurred by the Borrower and evidence of such payment shall be supplied by Borrower to Lender in connection with Borrower's next Disbursement Request Form after such payment is made (or otherwise as reasonably requested by Lender).

All capitalized terms used herein and not otherwise defined shall have the meanings ascribed thereto under the Loan Agreement.

Executed this __ day of _____, 200_.

SANTA FE POINTE, L.P., an Oklahoma limited
partnership

By:    SANTA FE POINTE MANAGEMENT, LLC an
     Oklahoma limited liability company, its general
     partner

     By:    _____
     Name:
     Title:

<u>Borrower's Invoices for Prior Disbursement Requests</u>

[Attach Invoices]

<u>Borrower's Invoices for Current Disbursement Request</u>

<u>**Borrower's Schedule of Anticipated Expenses**</u>
<u>**to be paid from Current Disbursement Request**</u>

# EXHIBIT C

#155241v1
GT Draft 12/17/06

## BRIDGE PROMISSORY NOTE

$500,000.00                                                December ___, 2006

FOR VALUE RECEIVED, SANTA FE POINTE, L.P., a limited partnership duly organized, validly existing and in good standing under the laws of the State of Oklahoma (together with its successors and assigns, the "Borrower"), hereby promises to pay to the order of GREYSTONE CDE, LLC, a limited liability company organized and existing under the laws of the State of Delaware (together with its successors and assigns, the "Lender"), or its successors and assigns, at its principal office at 419 Belle Air Lane, Warrenton, Virginia 20186, or at such other address designated in writing by the Lender, the principal sum of Five Hundred Thousand and No/100 Dollars ($500,000.00) (the "Loan Amount"), or so much thereof as shall have been disbursed in accordance with and as shall be then outstanding under the Loan Agreement (as hereinafter defined), in lawful money of the United States of America, payable on the dates and in the amounts set forth in the Bridge Loan Agreement dated December ___, 2006 between the Borrower and the Lender (the same may be further amended, modified or supplemented from time to time, the "Loan Agreement"), and to pay interest on the full Loan Amount (whether or not disbursed) at such office in like money, as set forth below and in the Loan Agreement. Capitalized terms used herein shall have the respective meanings assigned to them in the Loan Agreement.

This Bridge Loan Promissory Note is the "Note" referred to in the Loan Agreement and evidences a Loan made by the Lender thereunder. This Note is subject to the terms of the Loan Agreement and is secured by the Loan Documents, as more fully set forth in the Loan Agreement, which terms are incorporated herein by reference and made a part hereof.

This Note shall bear interest on the Loan Amount (whether or not disbursed) at a variable rate equal to LIBOR plus two and three-quarters percent (2.75%) per annum, accruing on the full Loan Amount (whether or not disbursed) from the Closing Date; provided, however, if this Note is not paid in full on or prior to the end of the Loan Term or when due pursuant to the Loan Agreement or if an Event of Default shall occur hereunder or under any Loan Documents, this Note shall bear interest on the Loan Amount and all other amounts due and owing under the Loan Documents at an annual rate equal to the lesser of twelve percent (12%) per annum or the highest rate permitted by law from and after the date of the Event of Default, the date of mandatory prepayment or the end of the Loan Term, whichever is earlier, until this Note and all other amounts due and owing under the Loan Documents are paid in full or the Event of Default shall have been cured to the satisfaction of the Lender, if sooner. Accrued interest on this Note shall be due and payable on each March 1, June 1, September 1 and December 1, commencing March 1, 2007, until payment in full at the end of the Loan Term or the date of prepayment in full hereof prior to the end of the Loan Term. Interest hereon shall be calculated on the basis of a 360-day year for the actual number of days elapsed. The entire unpaid principal balance and accrued but unpaid interest and any other unpaid sums or fees due under this Note and/or the Loan Documents, if not sooner paid, shall be due and payable on July 1, 2007, unless extended in accordance with the terms of Section 2.4 of the Loan Agreement (the "Maturity Date").

The Loan Agreement provides for the mandatory repayment hereof in accordance with Section 2.6 thereof.

Except as expressly provided in the Loan Agreement or this Note, the undersigned hereby waives presentment, demand for payment, notice of dishonor, notice of protest, and protest, and all other notices or demands in connection with the delivery, acceptance, performance, default, endorsement or guaranty of this instrument.

The obligation to make payments hereunder to the Lender hereunder is absolute and unconditional and the rights of any subsequent holder of this Note shall not be subject to any defense, set-off, counterclaim or recoupment which the undersigned may have against the Lender or by reason of any indebtedness or liability at any time owing by the Lender to the undersigned.

Nothing herein is intended to result in interest being charged which would exceed the maximum rate permitted by law.

Should this Note, or any part of the Loan or any other amounts due and owing under the Loan Documents be collected by law or through an attorney-at-law, the Lender shall be entitled to collect all reasonable costs of collection, including, but not limited to, reasonable attorneys' fees.

No delay or omission on the part of the Lender in exercising any remedy, right or option under this Note or the Loan Documents shall operate as a waiver of such remedy, right or option. In any event a waiver on any one occasion shall not be construed as a waiver or bar to any such remedy, right or option on a future occasion. The rights, remedies and options of the Lender under this Note and the Loan Documents are and shall be cumulative and are in addition to all of the rights, remedies and options of the Lender at law or in equity or under any other agreement.

This Note may not be changed orally. The acceptance by the Lender of any amount after the same is due shall not constitute a waiver of the right to require prompt payment, when due, of all other amounts due hereunder. The acceptance by the Lender of any sum in an amount less than the amount due shall be deemed an acceptance on account only and upon condition that such acceptance shall not constitute a waiver of the obligation of the Borrower to pay the entire sum then due, and the Borrower's failure to pay such amount then due shall be and continue to be a default notwithstanding such acceptance of such amount on account, as aforesaid. Consent by the Lender to any action of the Borrower which is subject to consent or approval of the Lender hereunder shall not be deemed a waiver of the right to require such consent or approval to future or successive actions.

All notices hereunder are to be given in the same manner set forth in the Loan Agreement.

Exhibit A-2, Page 91

This Note is governed by, and is to be construed in accordance with the laws of the State of
_____, without regard to _____'s choice of law rules. The Borrower
hereby submits to personal jurisdiction in the State of _____ for the enforcement of
the Borrower's obligations hereunder and under the Loan Documents, and waives any and all
personal rights under the law of any other state to object to jurisdiction within the State of
_____ for the purposes of litigation to enforce such obligations of the Borrower. In
the event such litigation is commenced, the Borrower agrees that service of process may be made
and personal jurisdiction over the Borrower obtained, by service of a copy of the summons,
complaint and other pleadings required by applicable law to commence such litigation upon the
Borrower's appointed Agent for Service of Process in the State of _____, which the
Borrower hereby designates to be:

_____

_____

_____

The Lender may accept additional or substitute security for this Note, or release any security or
any party liable for this Note, or extend or renew this Note, all without notice to the Borrower
and without affecting the liability of the Borrower.

This Note inures to and binds the heirs, legal representatives, successors and assigns of the
Borrower and the Lender; provided, however, that the Borrower may not assign this Note, or
assign or delegate any of its rights or obligations hereunder, without the prior written consent of
the Lender in each instance. The Lender in its sole discretion may transfer this Note, and may
sell or assign participations or other interests in all or part of the Loan, on the terms and subject
to the conditions of the Loan Documents, all without notice to or the consent of the Borrower.
Also, without notice to or the consent of the Borrower, the Lender may disclose to any actual or
prospective purchaser of any securities issued or to be issued by the Lender, and to any actual or
prospective purchaser or assignee of any participation or other interest in this Note, the Loan or
any other loans made by the Lender to the Borrower (whether evidenced by this Note or
otherwise), any financial or other information, data, or material in the Lender's possession
relating to the Borrower, any other Obligors, the Loan, and/or the Collateral; provided, however,
that the Lender shall use commercially reasonable efforts to obtain an undertaking of
confidentiality (on customary commercial lending terms) from any prospective purchaser or
assignee prior to disclosure of such information. If the Lender so requests, the Borrower will
sign and deliver a new note to be issued in exchange for this Note on the same terms and
conditions as this Note. Unless and until the Borrower receives written notice from the Lender
of the transfer or assignment of this Note, the Borrower may continue to make payments
hereunder to the Lender without any liability to the Lender's assignee or transferee.

If any payment made in connection with this Note is, in whole or in part, subsequently
invalidated, declared to be fraudulent or preferential, set aside, or required to be repaid or paid
over to a trustee, receiver, or any other entity, whether under any bankruptcy act or otherwise

3