# Exhibit C

## Part 1 of 3

1   Mark D. Kemple (State Bar No. 145219)
    Erik K. Swanholt (State Bar No. 198042)
2   JONES DAY
    555 South Flower Street
3   Fiftieth Floor
    Los Angeles, CA 90071-2300
4   Telephone: (213) 489-3939
    Facsimile: (213) 243-2539
5   Email: mkemple@jonesday.com
    Email: ekswanholt@jonesday.com
6

7   Attorneys for Defendants
    Greystone Servicing Corporation, Inc., and
    Greystone CDE, LLC

8

9           **UNITED STATES DISTRICT COURT**

10         **NORTHERN DISTRICT OF CALIFORNIA**

11           **(SAN FRANCISCO DIVISION)**

12

| | |
|---|---|
| 13  SANTA FE POINTE, LP, an Oklahoma limited partnership; SANTA FE | **CASE NO. C 07-05454 JCS** |
| 14  MANAGEMENT, LLC, an Oklahoma limited liability company; RANT, LLC, a | Assigned for all purposes to the Honorable Joseph C. Spero |
| 15  Delaware limited liability company; and THEOTIS F. OLIPHANT, an individual, | |
| 16 | **NOTICE OF MOTION AND** |
|           Plaintiffs, | **MOTION TO TRANSFER VENUE;** |
| 17 | **MEMORANDUM OF POINTS** |
|     v. | **AND AUTHORITIES IN** |
| 18 | **SUPPORT THEREOF;** |
|   GREYSTONE SERVICING | **STATEMENT IN SUPPORT OF** |
| 19  CORPORATION, INC., a Georgia | **NOTICE OF PENDENCY OF** |
|   corporation; GREYSTONE CDE, LLC, a | **OTHER ACTION OR** |
| 20  Delaware limited liability company, and | **PROCEEDING (CIVIL L.R. 3-13);** |
|   DOES 1 through 100, inclusive, | **AND DECLARATIONS OF** |
| 21 | **MATTHEW JAMES AND ERIK K.** |
|           Defendants. | **SWANHOLT** |
| 22 | |
| 23 | [[Proposed] Order filed concurrently herewith] |
| 24 | |
| 25 | Date:     December 14, 2007 |
| 26 | Time:    9:30 a.m. |
| | Ctrm:    A (15th Floor) |
| 27 | |
| 28 | |

## NOTICE OF MOTION AND MOTION

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendants Greystone Servicing Corporation, Inc. and Greystone CDE, LLC (collectively, "Defendants" or "Greystone") will, and hereby do, move the Court for an order transferring venue of this case to the United States District Court for the Southern District of New York, Foley Square Division. The motion will come before the Court on December 14, 2007 at 9:30 a.m., or on a date and at a time to be designated by the Court as its calendar requires, or as soon thereafter as the parties may be heard in Courtroom A (15th Floor) of the above-entitled Court located at 450 Golden Gate Avenue, San Francisco, California 94102.

The motion is made pursuant to 28 U.S.C. § 1404(a) on the grounds that the interests of justice, judicial economy, and the convenience of the parties and witnesses will be promoted by a transfer. The motion is based upon: this Notice; the attached Memorandum of Points and Authorities, which shall also serve as Defendants' Statement in Support of the Notice of Pendency of Other Action or Proceeding filed pursuant to Civil L.R. 3-13; the attached First Amended Complaint from a related action pending before the Southern District of New York; the declarations of Matthew James and Erik K. Swanholt; such matters which the Court may consider by way of judicial notice; the pleadings and the records on file herein; and such further written and oral evidence and argument as may be presented at the time of the hearing.

DATED: November 7, 2007

JONES DAY

By: _____
Mark D. Kemple
Erik K. Swanholt

Attorneys for Defendants Greystone Servicing Corporation, Inc. and Greystone CDE, LLC

# TABLE OF CONTENTS

Page

I.    STATEMENT OF THE ISSUE.................................................................1

II.   INTRODUCTION ..............................................................................1

III.  BACKGROUND FACTS......................................................................2

IV.   ARGUMENT ....................................................................................4

      A.   Venue Is Proper In The Southern District Of New York......................4

      B.   Transfer Will Serve The Convenience Of The Parties And
           Witnesses, And Will Promote The Interests Of Justice ......................5

           1.   New York is a Proper Forum Pursuant to the Forum
                Selection Clause in the Parties' Agreements ...............................6

           2.   New York Courts Are Most Familiar With New York
                Law.................................................................................7

           3.   Transfer and Consolidation of This Action With
                Greystone's New York Action Will Promote Judicial
                Efficiency and Reduce the Costs of Litigation for the
                Parties.............................................................................8

           4.   Most Party and Third-Party Witnesses Reside in New
                York or Are Nearer to New York Than California....................9

           5.   Sources of Proof are Located in or Near New York............... 11

           6.   Plaintiff's Choice of Forum Should Receive Minimal
                Consideration, Because California is not the Locus of the
                Operative Facts and has No Interest in the Subject Matter...... 12

      C.   Under The Doctrine Of Federal Comity, Judicial Efficiency
           Would Be Best Served By Declining Jurisdiction Over
           Plaintiffs' Anticipatory Suit ............................................... 13

V.    CONCLUSION.................................................................... 14

1

# TABLE OF AUTHORITIES

2

**Page**

3

**Cases**

4   *Angotti v. Rexam, Inc.,*
    2006 U.S. Dist. LEXIS 15488 at *12-13 (N.D. Cal. Feb. 14, 2006) ................. 7, 9

5   *Barapind v. Reno,*
6   225 F.3d 1100 (9th Cir. 2000) ........................................................................ 13

    *Church of Scientology v. United States Dep't of Army,*
7   611 F.2d 738 (9th Cir. 1979) ..................................................................... 13, 14

8   *Coxcom, Inc. v. Hybrid Patents, Inc.,*
    2007 U.S. Dist. LEXIS 67168 at *7 (N.D. Cal. Aug. 30, 2007) ........................... 11

9   *Decker Coal Co. v. Commonwealth Edison Co.,*
    805 F.2d 834 (9th Cir. 1986) ............................................................................. 5

10  *Fabus Corp. v. Asiana Express Corp.,*
11  2001 U.S. Dist. LEXIS 2568 at *6 (N.D. Cal. Mar. 5, 2001) .............................. 13

12  *Gates Learjet Corp. v. Jensen,*
    743 F.2d 1325 (9th Cir. 1984) ......................................................................... 10

13  *Gelber v. Leonard Wood Mem'l for the Eradication of Leprosy & the Am. Leprosy
       Found.,*
14  2007 U.S. Dist. LEXIS 47535 at *14-15 (N.D. Cal. June 21, 2007) ..................... 8

15  *Greenwell v. Belkin Corp.,*
    2006 U.S. Dist. LEXIS 76231 at *4 (N.D. Cal. Oct. 10, 2006) ............................. 4

16  *Gulf Oil Corp. v. Gilbert,*
    330 U.S. 501 (1947) ......................................................................................... 8

17  *Hoffman v. Blaski,*
18  363 U.S. 335 (1960) ......................................................................................... 4

    *Jacobson v. Hughes Aircraft Co.,*
19  105 F.3d 1288 (9th Cir. 1997) *rev'd*, 525 U.S. 432, 119 S.Ct. 755,142 L.Ed.2d
    881 (emphasis added) ...................................................................................... 12

20  *Jones v. GNC Franchising, Inc.,*
    211 F.3d 495 (9th Cir. 2000) ...................................................................... 4, 5, 6

21
    *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.,*
22  342 U.S. 180 (1950) .................................................................................. 13, 14

23  *Lou v. Belzberg,*
    834 F.2d 730 (9th Cir. 1987) ............................................................................. 8

24  *Lupiani v. Wal-Mart Stores, Inc.,*
    2003 U.S. Dist. LEXIS 18804 at *14 (N.D. Cal. Oct. 17, 2003) .................... 12, 13

25  *Manetti-Farrow, Inc. v. Gucci Am., Inc.,*
    858 F.2d 509 (9th Cir. 1988) .......................................................................... 6, 7

26  *Pacesetter Systems, Inc. v. Medtronic, Inc.,*
27  678 F.2d 93 (9th Cir 1982) ............................................................................. 13

    *Pall Corp. v. Bentley Labs, Inc.,*
28  523 F. Supp. 450 (D. Del. 1981) ....................................................................... 9

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3
*Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.,*
   741 F.2d 273 (9th Cir. 1984) ............................................................. 6

4
*Ricoh Co. Ltd. v. Honeywell, Inc.,*
5   817 F. Supp. 473 (D. N.J. 1993) ........................................................ 9

*Saleh v. Titan Corp.,*
6   361 F. Supp. 2d 1152 (S.D. Cal. 2005) ...................................... 5, 10, 11

7
*Spradlin v. Lear Siegler Mgmt. Servs. Co.,*
   926 F.2d 865 (9th Cir. 1991) ............................................................. 6

8
*Stewart Org., Inc. v. Ricoh Corp.,*
9   487 U.S. 22 (1988) ....................................................................... 4, 5

10
*The Bremen v. Zapata Off-Shore Co.,*
   407 U.S. 1 (1972) ............................................................................ 6

11
*Unisys Corp. v. Access Co., Ltd.,*
   2005 U.S. Dist. LEXIS 31897 at *13 (N.D. Cal. Nov. 23, 2005) ............ 7

12
*Van Dusen v. Barrack,*
   376 U.S. 612 (1964) ......................................................................... 4

13
*Zeta-Jones v. Spice House,*
   372 F. Supp. 2d 568 (C.D. Cal. 2005) ................................................ 12

14
**Statutes**

15
28 U.S.C. § 1332 ................................................................................ 5

16
28 U.S.C. § 1404(a) ..................................................................... passim

17
**Other Authorities**

18
Gibbs & Oliphant LLP,
   *Attorney Profile: Theo T. Oliphant, at*
19   http://www.gotolawfirm.com/theo_oliphant.php. ................................ 7

20

21

22

23

24

25

26

27

28

1    **I.    STATEMENT OF THE ISSUE**

2        Whether pursuant to the parties' agreements, for the convenience of parties and

3    witnesses, and/or in the interest of justice the matter should be transferred to the Southern

4    District of New York?

5    **II.    INTRODUCTION**

6        Each Plaintiff in this action "irrevocably and unconditionally" agreed that if a

7    dispute should arise between the parties pursuant to certain agreements the Plaintiffs would

8    (1) submit to personal jurisdiction in New York, (2) waive any objection to the laying of

9    venue there, and (3) have the agreements upon which this action is based governed by New

10    York law.  Each of the agreements at issue in this action has a provision that reads, in

11    substantial part:

12        (a) <u>Pledgors</u> hereby irrevocably and unconditionally:

13        (i) <u>Submit themselves</u> . . . in any legal action or proceeding
          relating to this agreement . . . <u>to the non-exclusive general</u>
14        <u>jurisdiction of the Courts of the State of New York, the Courts</u>
          <u>of the United States of America for the State of New York,</u>
15        and the appellate courts from any thereof[.]

16        (ii) consent that any such action . . . may be brought in such
          courts, and waive[] any objection . . . to the venue of any such
17        action or proceeding in any such court . . . .

18    (Emphasis added.)

19        A dispute has arisen under those agreements.  Pursuant to those agreements,

20    Greystone (defendant in this action) brought suit against the same Santa Fe entities who are

21    plaintiffs in this action, as well as Mr. Oliphant, in the Southern District of New York.[1]

22    Despite the agreements and the forum selection and waiver clauses they contain, the Santa

23    Fe entities and Mr. Oliphant brought their nearly identical action against Greystone in

24    Alameda Superior Court.  Defendants removed that action to this Court and now seek an

25    order transferring this action to its proper venue in New York where it can be heard with

26    the New York Action.

27        [1] Declaration of Erik K. Swanholt ("Swanholt Decl."), ¶ 2, Ex. 3 (Greystone CDE, LLC, v.
      Santa Fe Pointe, L.P., Santa Fe Pointe Management, LLC, RANT, LLC and Theotis F. Oliphant,
28    U.S.D.C. S.D.N.Y. Case No. 07 Civ. 8377 (RPP)).

1    The New York Action will proceed regardless of whether this motion is granted or
2  not. Plaintiffs cannot successfully move to have that matter transferred here as they have
3  contractually agreed not to challenge jurisdiction and venue in New York. Thus, even
4  without resort to the elements of § 1404(a) regarding Greystone's motion to transfer, it is
5  axiomatic that this matter belongs in the Southern District of New York. All witnesses and
6  parties necessarily will need to travel to New York in all events. Further, New York is the
7  only venue in which these nearly identical and interrelated disputes can be resolved at once.
8    Any result other than a transfer of this action to the Southern District of New York
9  would require this Court to duplicate the efforts of the New York court in interpreting the
10  same agreements, applying the same applicable New York law and presiding over the
11  examination of the same witnesses. Further, both party and non-party witnesses expected
12  to be called in both actions, of which there are many, would be unduly burdened by the
13  duplicative demands on their time for travel and testimony should these matters proceed in
14  courts on opposite coasts.
15    Analysis and application of the standard 1404(a) elements applicable to this motion
16  also favors transfer to New York. First, the agreements at issue call for the application of
17  New York law to all disputes relating to those agreements. Second, as explained below, the
18  bulk of the material witnesses to this action are located in New York, or are much nearer to
19  New York than to California. By contrast, Plaintiffs filed their action in a forum that bears
20  no relation to the operative facts or governing law, and that is contrary to the parties'
21  agreement to pursue litigation relating to the agreements in New York. Accordingly,
22  pursuant to the parties' agreements, the interest of judicial efficiency, and for the
23  convenience of the witnesses and parties, Defendants respectfully seek an order transferring
24  this action to the Southern District of New York.
25  **III.   BACKGROUND FACTS**
26    This matter arises out of Plaintiff Theotis F. Oliphant's ("Oliphant") failed pursuit of
27  the development of a multi-million dollar Low Income Housing Tax Credit project (the
28  "Santa Fe project") located in Oklahoma City, for which Plaintiffs obtained $500,000 in

1    bridge financing from Greystone.

2         Greystone was engaged by Plaintiffs to assist in obtaining financing through various

3    government entities, including the U.S. Department of Housing and Urban Development

4    ("HUD"), for the Santa Fe project. [Declaration of Matthew James ("James Decl."), ¶¶ 3,

5    4.] On or about December 20, 2006, Plaintiffs borrowed $500,000 in bridge financing from

6    Greystone to pay for the issuance of the bonds required to finance the project (the "Bridge

7    Loan"). [James Decl., ¶ 11.] Plaintiffs and Greystone entered into certain Bridge Loan

8    agreements which were signed by Oliphant in his individual capacity as well as in his

9    representative capacity on behalf of his Santa Fe project-related entities (the "Bridge Loan

10   documents").[2] The Bridge Loan documents contain choice-of-law and forum selection

11   provisions selecting New York as the governing law and forum for actions relating to the

12   Bridge Loan documents. [Id.] Thus, in executing those agreements, every Plaintiff in this

13   action submitted to personal jurisdiction in New York and expressly waived any objection

14   to the laying of venue there. [See, e.g., Swanholt Decl., ¶ 6, Ex. 3D at 15-16 (Sec. 26).]

15        After closing the Bridge Loans, it soon became clear that Plaintiffs would not be

16   able to perform their obligations under their agreements with Greystone. On August 21,

17   2007, Greystone sent Plaintiffs a Notice of Default letter. [Swanholt Decl., ¶¶ 11, 12, Exs.

18   3I & 3J]; [James Decl., ¶¶ 14, 15, Exs. 1, 2.]

19        In response, and anticipation of litigation concerning their inability to perform the

20   Bridge Loan documents, on September 7, 2007 Plaintiffs filed an action in the Superior

21   Court of California for the County of Alameda in plain contravention of the forum selection

22   clause in each of the agreements. See Notice of Removal (doc. # 1), Ex. A1[3]. Plaintiff

23   served their First Amended Complaint (they never served their original complaint) on

24   Greystone's registered agent for service of process on September 25, 2007. See id., Ex. A2.

25        [2] Swanholt Decl., ¶¶ 3-9, Exs. 3A-3G. The FAC filed with the court in the New York
     Action had appended as exhibits all of the exhibits used in this motion (except for Exhibits 4-6).
26   Thus, for the convenience of the Court and for consistency of reference, the moving parties have
     retained the exhibit structure of the FAC. Thus, while Exhibit 3 is the FAC, Exhibit 3A is the same
27   as exhibit A to the FAC, 3B is exhibit B to the FAC, etc.

28        [3] Defendants hereby request the Court to take judicial notice of Defendants' Notice of
     Removal filed in this matter on October 25, 2007 and identified as item #1 on the Court's docket.

1  Greystone first learned of the existence of Plaintiffs' action on September 27, 2007.

2  [Swanholt Decl., ¶ 13, Ex. 4.]  On September 26, 2007, pursuant to the parties' agreements

3  and unaware of Plaintiffs' filing of this action, Greystone filed its action against Oliphant

4  and the Santa Fe entities relating to the Bridge Loan documents in the Southern District of

5  New York, where the matter is now pending before Judge Patterson.  [Swanholt Decl., ¶¶ 2,

6  14, Exs. 3, 5.]

7  **IV.    ARGUMENT**

8      "For the convenience of parties and witnesses, in the interest of justice, a district

9  court may transfer any civil action to any other district or division where it might have been

10  brought."  28 U.S.C. § 1404(a).  The purpose of § 1404(a) "is to prevent the waste of time,

11  energy and money 'and to protect litigants, witnesses and the public against unnecessary

12  inconvenience and expense . . . .'"  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).  A

13  motion for transfer lies within the broad discretion of the District Court and must be

14  determined on an individualized basis.  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498

15  (9th Cir. 2000) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

16      Transfer is appropriate where the moving party establishes that venue is proper in

17  the transferee District, and that the transfer will serve the convenience of the parties and

18  witnesses and will promote the interests of justice.  *See Greenwell v. Belkin Corp.*, 2006

19  U.S. Dist. LEXIS 76231 at *4 (N.D. Cal. Oct. 10, 2006) (citing *Hoffman v. Blaski*, 363 U.S.

20  335, 343-44 (1960)).

21      **A.    Venue Is Proper In The Southern District Of New York.**

22      To prevail on their motion to transfer pursuant to § 1404(a), Defendants must first

23  show that (1) the Southern District of New York has subject matter jurisdiction, (2) venue

24  is proper in the Southern District of New York, and (3) the Southern District of New York

25  can exercise personal jurisdiction over defendants.  28 U.S.C. § 1404(a).  All of these

26  prerequisite conditions are satisfied.

27      Here, the Southern District of New York is a proper venue and the District Court

28  would have both personal jurisdiction over the Plaintiffs because (1) Defendants maintain

1   offices and conduct business in New York; and (2) the same underlying contracts at issue in

2   this action and the New York Action contain valid forum selection clauses by which each

3   of the Plaintiffs submitted to personal jurisdiction in New York, and expressly waived any

4   objection to the laying of venue there.

5          Moreover, the Southern District of New York also has subject matter jurisdiction on

6   the same basis as this Court, because there is complete diversity between the parties and the

7   jurisdictional amount in controversy is met. *See* 28 U.S.C. § 1332; Notice of Removal.

8   (doc. # 1) ¶¶ 3-18. As such, this case could have been brought in the Southern District of

9   New York.

10         **B.      Transfer Will Serve The Convenience Of The Parties And Witnesses,**

11                 **And Will Promote The Interests Of Justice.**

12         A District Court has broad discretion to grant a motion for transfer of venue, and the

13  decision whether to transfer is to be made based on "'an individualized, case-by-case

14  consideration of convenience and fairness.'" *Jones*, 211 F.3d at 498 (quoting *Stewart Org.*,

15  *Inc.*, 487 U.S. at 29). In evaluating a § 1404(a) transfer motion, the District Court may

16  consider a multitude of factors.[4] *See Jones*, 211 F.3d at 498.

17         In this case, the pertinent factors are: (1) the existence of a valid forum selection

18  clause; (2) the transferee forum's familiarity with the governing law; (3) the promotion of

19  judicial efficiency and reduction in the costs of litigation; (4) the convenience of the

20  witnesses and parties; (5) the location of sources of proof; and (6) the lack of a connection

21  between Plaintiffs' causes of action and chosen forum.

22  _____

23      [4] A comprehensive list of potentially relevant factors considered to varying degrees in different cases includes: (1) the presence of a forum selection clause; (2) the state that is most familiar with the governing law; (3) the location where the relevant agreements were negotiated

24  and executed; (4) the extent to which there is a connection between the plaintiff's causes of action and the forum; (5) the convenience of the witnesses; (6) the availability of compulsory process to

25  compel attendance of unwilling non-party witnesses; (7) the existence of administrative difficulties resulting from court congestion; (8) the ease of access to sources of proof; (9) the differences in the

26  costs of litigation in the two forums; (10) whether there is a "local interest in having localized controversies decided at home"; (11) whether unnecessary problems in conflict of laws, or in the

27  application of foreign law, can be avoided; and (12) the plaintiff's choice of forum. *See, e.g.*, *Jones, Inc.*, 211 F.3d at 498-99; *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843

28  (9th Cir. 1986); *Saleh*, 361 F. Supp. 2d at 1156.

1    **1.    New York is a Proper Forum Pursuant to the Forum Selection
Clause in the Parties' Agreements.**

2

3    The existence of a forum selection clause is a "significant factor in the court's §

4    1404(a) analysis." *Jones*, 211 F.3d at 498-99. The fact that Plaintiffs' "irrevocably and

5    unconditionally" agreed to venue in New York throughout the parties' contracts weighs

6    considerably in favor of transfer to the Southern District of New York. *See supra*, at 1 n.1.

7    In cases based on diversity jurisdiction, "federal law . . . applies to [the]

8    interpretation of forum selection clauses." *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858

9    F.2d 509, 513 (9th Cir. 1988). Forum selection clauses are presumptively valid and will

10   not be set aside absent a showing that "enforcement would be unreasonable and unjust, or

11   that the clause was invalid for such reasons as fraud or overreaching." *Manetti-Farrow,*

12   *Inc.*, 858 F.2d at 512 (citing *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)).[5]

13   Consequently, the party resisting enforcement of a forum selection clause has a "heavy

14   burden" to establish the unreasonableness of the clause. *Pelleport*, 741 F.2d at 281 (citing

15   *The Bremen*, 407 U.S. at 18). The opposing party must "show that trial in the contractual

16   forum would be so gravely difficult and inconvenient that he will for all practical purposes

17   be deprived of his day in court." *See The Bremen*, 407 U.S. at 18; *Pelleport*, 741 F.2d at

18   280 (9th Cir. 1984) ("Absent some evidence submitted by the party opposing enforcement

19   of the clause to establish fraud, undue influence, overweening bargaining power, or such

20   serious inconvenience in litigating in the selected forum so as to deprive that party of a

21   meaningful day in court, the provision should be respected as the expressed intent of the

22   parties.").

23   Plaintiffs are sophisticated parties who were assisted by the law firm of Gibbs &

24   Oliphant LLP in executing the Bridge Loan documents. Indeed, Plaintiff Oliphant, a

25   former partner with a large international law firm, holds himself out as possessing

26

27   ⁵ Although *The Bremen* involved an international forum selection clause in a commercial
contract, the Ninth Circuit has approved *The Bremen* framework for domestic forum selection

28   clauses. *See Spradlin v. Lear Siegler Mgmt. Servs. Co.*, 926 F.2d 865, 867-68 (9th Cir. 1991);
*Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273, 279 (9th Cir. 1984).

1  experience in a "sophisticated corporate and private equity practice." [Swanholt Decl.,

2  ¶ 15, Ex. 6. (*See* Gibbs & Oliphant LLP, *Attorney Profile: Theo T. Oliphant, at*

3  http://www.gotolawfirm.com/theo_oliphant.php.)] The bargaining power was equal.

4        The forum selection clauses clearly reflect that the parties contemplated adjudicating

5  matters relating to their agreements in a New York forum. Moreover, the forum selection

6  clauses at issue here cover all of Plaintiffs' claims, including those sounding in tort,

7  because all claims relate to the underlying agreements. *See Manetti-Farrow, Inc.*, 858 F.2d

8  at 514.[6]

9        Plaintiffs may argue that the forum selection clauses are permissive and thus should

10  receive less weight. As one Court in this District stated, however, Plaintiffs' likely

11  argument is not compelling:

12            [A]lthough the forum selection clause is permissive, the fact
              that the parties contemplated [the proposed forum for transfer]
13            as a possible forum is entitled to "substantial consideration" in
              this analysis. Further, "[w]hile courts normally defer to a
14            plaintiff's choice of forum, such deference is inappropriate
              where the plaintiff has already freely contractually chosen an
15            appropriate venue. . . . [Thus,] the plaintiffs bear the burden of
              demonstrating why they should not be bound by their
16            contractual choice of forum.

17  *Unisys Corp. v. Access Co., Ltd.*, 2005 U.S. Dist. LEXIS 31897 at *13 (N.D. Cal. Nov. 23,

18  2005) (internal citations omitted) (emphasis added); *see also Angotti v. Rexam, Inc.*, 2006

19  U.S. Dist. LEXIS 15488 at *12-13 (N.D. Cal. Feb. 14, 2006).

20            **2.    New York Courts Are Most Familiar With New York Law.**

21        Each of the Plaintiffs also agreed that the Bridge Loan documents "shall be

22  governed by and construed in accordance with the laws of the State of New York."[7]

23  Although this Court is certainly competent to apply the state laws of New York in this

24  matter, the Southern District of New York is more familiar with the relevant New York

25        [6] Indeed, Plaintiffs' tort claims relate to the contracts because, among other reasons, they
    are all subject to dismissal on account of the exculpatory clauses by which Plaintiffs released
26  Greystone from such liability. [*See, e.g.*, Swanholt Decl., ¶ 2, Ex. 3A at 18 (§ 10.6 of Bridge Loan
    Agreement).]

27        [7] [Swanholt Decl., ¶¶ 3, 5-7 (Ex. 3A at 18 (agreed by Plaintiff Santa Fe Pointe, LP); Ex. 3C
    at 11 (agreed by Plaintiff Oliphant); Ex. 3D at 13 (agreed by Plaintiff Santa Fe Pointe
28  Management, LLC); Ex. 3E at 12 (agreed by Plaintiff RANT, LLC)).]

1   state laws governing these claims. *See Gelber v. Leonard Wood Mem'l for the Eradication*

2   *of Leprosy & the Am. Leprosy Found.*, 2007 U.S. Dist. LEXIS 47535 at \*14-15 (N.D. Cal.

3   June 21, 2007) (finding, in the case of a mixed complaint raising both state and federal

4   claims, familiarity of district court in South Carolina with South Carolina law, as selected

5   in the parties' contractual choice-of-law provision, weighed in favor of transfer to the

6   District of South Carolina). The familiarity of the Southern District of New York with the

7   governing law of this case also favors  the transfer of this matter to that District.

8        **3.     Transfer and Consolidation of This Action With Greystone's New**
                   **York Action Will Promote Judicial Efficiency and Reduce the**
9                   **Costs of Litigation for the Parties.**

10   In this case, the public and private interests strongly favor transfer to the Southern

11   District of New York because Plaintiffs are already required to appear as defendants in the

12   New York Action. Plaintiffs cannot challenge venue in the Southern District of New York,

13   having waived such defenses by agreeing to the forum selection and venue clauses

14   discussed above. Thus, the only way all claims between these parties relating to the Santa

15   Fe project can be litigated in one forum is if they are litigated in the Southern District of

16   New York. The parties' litigation costs will either stay the same, or, more likely, be

17   reduced by a transfer allowing consolidation of the related cases in the Southern District of

18   New York. *See Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) (affirming district

19   court's decision to transfer case to the Southern District of New York when the costs of

20   litigation would be reduced by having the case heard there).

21   Importantly, a transfer allowing these cases to be heard together by the Southern

22   District of New York will promote the public interest. Relevant factors of public interest

23   include the avoidance of the potential for inconsistent judgments and the promotion of

24   judicial economy. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). Greystone's

25   contract claims in the New York Action will require the court there to determine the

26   parties' rights and liabilities under the Bridge Loan documents. As discussed above, all of

27   Plaintiffs' tort and contract claims in this action also relate to the same agreements, and

28   must be resolved pursuant to New York law. Thus, the court in the New York Action has

1   before it all of the legal and factual issues raised by Plaintiffs' First Amended Complaint in

2   this case, and is familiar with the governing law of both actions.

3        Requiring this Court to duplicate the New York court's efforts would be an

4   unnecessary expenditure of judicial resources, and would create the risk of inconsistent

5   results—the very dangers § 1404(a) was designed to avoid. *See Angotti*, 2006 U.S. Dist.

6   LEXIS 15488 at *12-13 (finding that the transfer of claims "would avoid a risk of

7   inconsistent rulings, based on the law of two different circuits"). Where a related lawsuit

8   exists, "it is in the interest of justice to permit suits involving the same parties and issues to

9   proceed before one court and not simultaneously before two tribunals." *Pall Corp. v.*

10  *Bentley Labs, Inc.*, 523 F. Supp. 450, 453 (D. Del. 1981). As one District has explained:

11  
12          Transfer in such a circumstance has numerous benefits. Cases can be consolidated before one judge thereby promoting judicial efficiency; pretrial discovery can be conducted in a
13  more orderly manner; witnesses can be saved the time and expense of appearing at trial in more than one court; and
14  duplicative litigation involving the filing of records in both courts is avoided, thereby eliminating unnecessary expense
15  and the possibility of inconsistent results.

16  *Ricoh Co. Ltd. v. Honeywell, Inc.*, 817 F. Supp. 473, 487 (D. N.J. 1993) (citations omitted).

17       In this action, the Southern District of New York is the superior forum. The New

18  York Action involves the same agreements at issue here; those agreements are governed by

19  New York law; the parties have agreed to forum in New York; and Plaintiffs must appear

20  in the Southern District of New York to defend against Greystone's contract claims, having

21  waived all objections to jurisdiction and venue there. In sum, transfer of this action to the

22  Southern District of New York will result in considerable gains in judicial efficiency, and

23  will likely reduce the costs of litigation for the parties.

24          **4.**    **Most Party and Third-Party Witnesses Reside in New York or Are Nearer to New York Than California.**

25  

26       In deciding whether the relative convenience of the witnesses weighs in favor of

27  transfer, "the court must consider not simply how many witnesses each side has and the

28  location of each, but, rather, the court must consider the importance of the witnesses."

1   *Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1160-61 (S.D. Cal. 2005) (citing *Gates Learjet*

2   *Corp. v. Jensen*, 743 F.2d 1325, 1335-36 (9th Cir. 1984)).

3        Defendants' witness with the greatest knowledge of the Santa Fe project, Matthew

4   James, is located in New York and New Jersey, while most of the key party and third-party

5   witnesses are also located much nearer to New York than California. [James Decl., ¶ 2.]

6   Most of the services under the agreements were performed in or directed from New York,

7   Virginia, and Florida, and most of the persons who performed services under the

8   agreements, and who have personal knowledge of their negotiation and performance, are in

9   or near New York:

10       • Matthew James of Greystone & Co., Inc., Plaintiffs' primary contact at

11         Greystone for much of the transactions underlying this and the New York

12         Action, is located in New York, New York. [James Decl., ¶ 2.]

13       • Betsy Vartanian, Executive Vice President of Greystone Servicing Corporation,

14         Inc., was Greystone's most senior liaison to HUD on behalf of the Santa Fe

15         project. Ms. Vartanian is located in Warrenton, Virginia. [James Decl., ¶ 7.]

16       • Thom Ruffin, a Senior Vice President of Greystone Servicing Corporation, Inc.,

17         became involved in mid-August of 2007 to oversee possibilities of a "workout"

18         with Plaintiffs. Mr. Ruffin is located in Warrenton, Virginia. [James Decl.,

19         ¶ 13.]

20       • Miriam Simon, Greystone's senior underwriter for the Santa Fe project, is

21         located in Wisconsin. [James Decl., ¶ 8.]

22       • Pharrah Jackson, Greystone's underwriter for Plaintiffs' application for the

23         Bridge Loan, is located in Tampa, Florida. [James Decl., ¶ 12.]

24       • Jeff Englund and Marilyn Willems are Greystone underwriters who evaluated

25         Oliphant's lack of qualifications for Fannie Mae financing for the Santa Fe

26         project. They are located in Tampa, Florida and Bethesda, Maryland

27         respectively. [James Decl., ¶ 6.]

28      These witnesses have personal knowledge of material events relating to the

1  execution, and Plaintiffs default, of the Bridge Loan documents, and will testify thereto.

2  The convenience of these witnesses favors venue in the Southern District of New York.

3  The convenience of the non-party witnesses also favors transfer:

4    • David Henry, Plaintiffs' purported property developer, is located in Arkansas.

5       [James Decl., ¶ 9.]

6    • Andre Blakely, Plaintiffs' advisor from National Equity Fund, is located in

7       Chicago, Illinois.  [James Decl., ¶ 3.]

8       In sum, New York is a more convenient forum for the witnesses, since the majority

9  of witnesses, including the corporate executives responsible for Greystone's negotiations

10  and execution of the contracts, and the persons who performed services under the

11  agreements and possess personal knowledge of the agreements and the facts herein, reside

12  in or near New York.

13       Finally, it is anticipated that most if not all of the non-party witnesses expected to be

14  called in this action will also be called to testify in the New York Action.  Absent a transfer

15  of this action to the Southern District of New York, the party and non-party witnesses will

16  be unduly burdened by the duplicative demands on their time for travel and testimony

17  imposed by Plaintiffs' unreasonable efforts to maintain suit in their home forum.  *Coxcom,*

18  *Inc. v. Hybrid Patents, Inc.*, 2007 U.S. Dist. LEXIS 67168 at *7 (N.D. Cal. Aug. 30, 2007)

19  (finding that transfer of action to the Eastern District of Texas where a related matter was

20  pending would be more convenient for non-party witnesses located on California, because

21  it would eliminate the need to engage in duplicative litigation and travel).  Therefore, the

22  convenience of the party and non-party witnesses weighs in favor of transferring this action

23  to the Southern District of New York.

24       **5.    Sources of Proof are Located in or Near New York.**

25       "[T]he issue is the ease of access to the sources of proof, not whether the evidence

26  would be unavailable absent the transfer." *Saleh*, 361 F. Supp. 2d at 1166 (citation

27  omitted).  Documents and other physical evidence relating to Plaintiffs' claims are in New

28  York, Virginia, Florida and Oklahoma, where Greystone, HUD and OHFA officials

1   involved throughout the project can be found. [James Decl., ¶ 10.] Sources of proof of the

2   events giving rise to Plaintiffs' claims are much more likely to be located in those places

3   than in California. Furthermore, most sources of proof associated with the witnesses will

4   also be found where those witnesses are located. As explained above, most of the

5   witnesses can be found in New York, or nearer to New York than California.

6
7
     **6.**     **Plaintiff's Choice of Forum Should Receive Minimal
               Consideration, Because California is not the Locus of the
               Operative Facts and has No Interest in the Subject Matter.**

8       As the Ninth Circuit has made evident, plaintiff's choice is merely "*one of several*

9   *factors* a court must consider when ruling on a motion to transfer venue." *Jacobson v.*

10   *Hughes Aircraft Co.*, 105 F.3d 1288, 1302 (9th Cir. 1997) *rev'd*, 525 U.S. 432, 119 S.Ct.

11   755,142 L.Ed.2d 881 (emphasis added); *see also Zeta-Jones v. Spice House*, 372 F. Supp.

12   2d 568, 575 (C.D. Cal. 2005) (acknowledging that "deference should be accorded to

13   plaintiffs' choice of forum" but still transferring the action from the Central District of

14   California to the District of Nevada because "considerations of relative convenience to the

15   parties and likely witnesses, availability of compulsory process, and ease of access to

16   sources of proof" militated in favor of a transfer to Nevada); *Lupiani v. Wal-Mart Stores,*

17   *Inc.*, 2003 U.S. Dist. LEXIS 18804 at *14 (N.D. Cal. Oct. 17, 2003) (granting defendant's

18   motion to transfer venue because other than plaintiff's choice of forum, the other factors

19   weighed in favor of transfer).

20       Here, Plaintiffs have already contractually agreed to venue any action relating to the

21   Bridge Loan documents and Santa Fe project in New York. Further, to the extent any such

22   right is found to exist, Plaintiffs' choice of forum should be given little weight because the

23   aforementioned factors—including the forum selection clauses, the applicability of New

24   York law, the differences in the costs of litigation, the promotion of judicial efficiency, the

25   convenience of the witnesses and the ease of access to sources of proof—all compel

26   transfer to the Southern District of New York. Moreover, while it is relevant that Plaintiff

27   Oliphant resides in California, the mere fact that Plaintiffs' or their counsel is located there

28   should not factor into the analysis. "Courts have consistently held that the convenience of

1  plaintiff's counsel is not a factor to be considered in determining whether a particular locale

2  is a convenient forum." *Lupiani*, 2003 U.S. Dist. LEXIS 18804 at *10 (citing *Fabus Corp.*

3  *v. Asiana Express Corp.*, 2001 U.S. Dist. LEXIS 2568 at *6 (N.D. Cal. Mar. 5, 2001)).

4  Finally, California has no interest in the subject matter of this dispute because, as Plaintiffs

5  allege, this matter arises out of Oliphant's pursuit of a real estate development opportunity

6  in Oklahoma, and the Santa Fe entities were created for only that purpose. [James Decl.,

7  ¶ 5.]

8      **C.    Under The Doctrine Of Federal Comity, Judicial Efficiency Would Be**

9            **Best Served By Declining Jurisdiction Over Plaintiffs' Anticipatory Suit.**

10      "There is a generally recognized doctrine of federal comity which permits a district

11  court to decline jurisdiction over an action when a complaint involving the same parties and

12  issues has already been filed in another district." *Pacesetter Systems, Inc. v. Medtronic,*

13  *Inc.*, 678 F.2d 93, 94-5 (9th Cir 1982). It is a discretionary doctrine intended to promote

14  judicial efficiency, and, as such, decisions applying the doctrine are subject to review only

15  for abuse of discretion. *See Barapind v. Reno*, 225 F.3d 1100, 1109 (9th Cir. 2000).

16      The federal comity doctrine has sometimes been referred to by the courts and

17  practitioners as the "first-to-file" rule—a locution that describes the "classic formulation"

18  where deference is traditionally given to the court presiding over the first-filed action

19  unless there is a showing of bad faith, anticipatory suit, or a balance of conveniences

20  favoring the forum of the second-filed action. *See Church of Scientology v. United States*

21  *Dep't of Army*, 611 F.2d 738, 750 (9th Cir. 1979). The cases also demonstrate that not all

22  cases fit the mold of the "classic formulation." As the Supreme Court has observed of the

23  problems inherent to concurrent jurisdiction, "[w]ise judicial administration, giving regard

24  to conservation of judicial resources and comprehensive disposition of litigation, does not

25  counsel rigid mechanical solution of such problems." *Kerotest Mfg. Co. v. C-O-Two Fire*

26  *Equip. Co.*, 342 U.S. 180, 183 (1950). In sum, federal comity and the "first-to-file" rule

27  remain flexible doctrines subject to the broad discretion of the District Court.

28      In view of circumstances indicative of the anticipatory nature of this action, the

1  forum selection clauses in the subject agreements and the balance of conveniences favoring

2  venue in the Southern District of New York, as discussed above, the "first-to-file" rule does

3  not apply to this action. Further, allowing these issues to be resolved in the Southern

4  District of New York will best promote the policy of judicial efficiency, which is the

5  underpinning of the broader doctrine of federal comity from which the "first-to-file" rule

6  arises. *See Kerotest Mfg. Co.*, 342 U.S. at 183; *Church of Scientology*, 611 F.2d at 750

7  ("The [federal comity] doctrine is designed to avoid placing an unnecessary burden on the

8  federal judiciary, and to avoid the embarrassment of conflicting judgments.").

9  **V.    CONCLUSION**

10        Each Plaintiff in this action "irrevocably and unconditionally" agreed to (1) submit

11  to personal jurisdiction in New York, (2) waive any objection to the laying of venue there,

12  and (3) have the agreements upon which this action is based governed by New York law.

13  Plaintiffs have defaulted under their obligations under the Bridge Loan documents, and, as

14  contemplated by those agreements, must now answer for their conduct before the Southern

15  District of New York. The New York Action cannot be transferred or challenged on

16  grounds of venue or jurisdiction. Judicial efficiency and the convenience of the witnesses

17  and parties compel transfer to the Southern District of New York.

18        Under the discretionary analysis pursuant to 28 U.S.C. § 1404(a), none of the factors

19  weigh against transfer; instead, five strongly favor transfer: (1) the presence of forum

20  selection clauses selecting New York; (2) the familiarity of the Southern District of New

21  York with the state laws of New York; (3) the promotion of efficiency and avoidance of

22  conflicting judgments; (4) the convenience of the witnesses; and (5) ease of access to

23        //

24        //

25        //

26        //

27        //

28        //

1  sources of proof. Defendants respectfully request that this Court grant Defendants' motion

2  to transfer this action to the Southern District of New York.

3  Dated: November 7, 2007                    JONES DAY

4

5                                             By:

6                                                 Mark D. Kemple

7                                             Attorneys for Defendants Greystone Servicing
                                              Corporation, Inc. and Greystone CDE, LLC

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28