# Exhibit C

## Part 2 of 3

Professional Indexes & Files 800-422-9191 www.proindexes.com

James Decl.

1  Mark D. Kemple (State Bar No. 145219)
   Erik K. Swanholt (State Bar No. 198042)
2  JONES DAY
   555 South Flower Street
3  Fiftieth Floor
   Los Angeles, CA 90071-2300
4  Telephone:  (213) 489-3939
   Facsimile:  (213) 243-2539
5  Email: mkemple@jonesday.com
   Email: ekswanholt@jonesday.com
6
   Attorneys for Defendants
7  Greystone Servicing Corporation, Inc., and
   Greystone CDE, LLC
8

9              UNITED STATES DISTRICT COURT

10             NORTHERN DISTRICT OF CALIFORNIA

11                  (SAN FRANCISCO DIVISION)

12

13 | SANTA FE POINTE, LP, and Oklahoma        | CASE NO. C 07-05454 JCS
   | limited partnership; SANTA FE
14 | MANAGEMENT, LLC, an Oklahoma             | **DECLARATION OF MATTHEW**
   | limited liability company; RANT, LLC, a  | **JAMES**
15 | Delaware limited liability company; and
   | THEOTIS F. OLIPHANT, an individual,
16 |
   |              Plaintiffs,
17 |
   |       v.
18 |
   | GREYSTONE SERVICING
19 | CORPORATION., a Georgia corporation;
   | GREYSTONE CDE, LLC, a Delaware
20 | limited liability company; and DOES 1
   | through 100 inclusive,
21 |
   |              Defendants.
22

23

24

25

26

27

28

                                                                    /6
LAI-2912276v1                             Declaration of Matthew James

## DECLARATION OF MATTHEW JAMES

I, Matthew James, declare and state as follows:

1. I am the Director of Greystone CDE, LLC ("Company"). The following is based on my personal knowledge, or upon my review of Company records maintained in the ordinary course of business, or upon information and belief where noted, and, if called upon to do so, I could and would testify competently thereto:

2. I am currently employed as Director of Greystone CDE, LLC's New York, New York office, a position I have held since 2005. I am a citizen and resident of the State of New Jersey.

3. In July of 2006, I was contacted by Andre Blakely of National Equity Fund on behalf of Plaintiff Theotis F. Oliphant ("Oliphant") regarding Oliphant's interest in developing a Low Income Housing Tax Credit project (the "Santa Fe project") located in Oklahoma City. Mr. Blakely is located in Chicago, Illinois.

4. Since that time, I have been closely involved in every aspect of the Santa Fe project on behalf of Greystone.

5. I am informed and believe that Oliphant created Plaintiffs Santa Fe Pointe, LP, Santa Fe Management, LLC, and RANT, LLC for the sole purpose of pursuing the Santa Fe project. My informed belief as to these facts is based on the certifications provided by Oliphant on behalf of his Santa Fe entities in connection with his application to Greystone for bridge financing for the Santa Fe project.

6. Jeff Englund and Marilyn Willems are Greystone underwriters who evaluated Oliphant's lack of qualifications for Fannie Mae financing for the Santa Fe project. They are located in Tampa, Florida and Bethesda, Maryland respectively. My informed belief as to these facts is based upon my review of Company records maintained in the ordinary course of business, as well as on my personal contact with these individuals in regard to their underwriting of Oliphant's qualifications for Fannie Mae financing.

7. Betsy Vartanian, Executive Vice President of Greystone Servicing Corporation, Inc., was Greystone's most senior liaison to HUD on behalf of the Santa Fe project. Ms. Vartanian is located in Warrenton, Virginia. My informed belief as to these facts is based upon my review of Company records maintained in the ordinary course of business, as well as on my having contacted Ms. Vartanian after HUD's rejection of Oliphant's application to persuade her to intervene on Oliphant's behalf and convince HUD to rescind its rejection.

8. Miriam Simon, Greystone's senior HUD underwriter for the Santa Fe project, is located in Wisconsin. My informed belief as to these facts is based upon my review of Company records maintained in the ordinary course of business, as well as on my personal contact with Ms. Simon in regard to the underwriting requirements for the Santa Fe project.

9. David Henry, a developer with whom Oliphant had claimed to have partnered on the Santa Fe project, is located in Arkansas. My informed belief as to these facts is based on my personal contact with both Mr. Oliphant and Mr. Henry regarding the Santa Fe project.

10. Documents and other physical evidence relating to Plaintiffs' claims are located in New York, New York; Warrenton, Virginia; Tampa, Florida; Bethesda, Maryland; Wisconsin; Oklahoma City, Oklahoma; and Arkansas. My informed belief as to these facts is based upon my review of Company records maintained in the ordinary course of business, as well as on my personal contact with the individuals involved in the review, negotiation, drafting, and execution of documents relating to the Santa Fe project.

11. In December of 2006, Oliphant borrowed $500,000 in bridge financing from Greystone (the "Bridge Loan") for the Santa Fe project.

12. Pharrah Jackson, the Greystone underwriter involved in approving Oliphant's application for the Bridge Loan, is located in Tampa, Florida. My informed belief as to these facts is based upon my review of Company records maintained in the

ordinary course of business, as well as on my personal contact with Ms. Jackson in regard to her underwriting of Oliphant's qualifications for bridge financing.

13. Thom Ruffin, a Senior Vice President of Greystone Servicing Corporation, Inc., became involved in mid-August of 2007 to oversee possibilities of a "workout" with Plaintiffs. Mr. Ruffin is located in Warrenton, Virginia. My informed belief as to these facts is based upon my review of Company records maintained in the ordinary course of business, my personal contact with Mr. Ruffin on this matter, and my participation in the "workout" negotiations.

14. On August 21, 2007, Greystone sent Oliphant a Notice of Default letter explaining the events of default that occurred under the Bridge Loan. A true and correct copy of this Notice is attached hereto as Exhibit 1.

15. On September 18, 2007, Greystone sent Oliphant a Notice of Acceleration letter advising Oliphant of its decision to bring the entire balance of the Bridge Loan due. A true and correct copy of this Notice is attached hereto as Exhibit 2.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that this declaration was executed in New York, New York on November 6, 2007.

_____
Matthew James

**EXHIBIT 1**



GREYSTONE SERVICING
CORPORATION, INC.
419 BELLE AIR LANE
WARRENTON, VA 20186
PHONE: 540.341.2100
FAX: 540.341.2121

August 21, 2007

**VIA FEDERAL EXPRESS**

Santa Fe Pointe, L.P. (the "Borrower")
Santa Fe Pointe Management, LLC (the "General Partner")
Theotis F. Oliphant (the "Limited Partner" and "Guarantor")
Rant, LLC (the "Developer")
16416 Oconee Drive
Edmond, Oklahoma 73013
Attention:     Theotis F. Oliphant

Theotis F. Oliphant (the "Limited Partner" and the "Guarantor")
113 Carmel Avenue
El Cerrito, California 94530

Gibbs & Oliphant LLP
300 Frank H. Ogawa Plaza, Third Floor
Oakland, California 94612

Re:   NOTICE OF DEFAULT:  Bridge Loan Agreement dated as of December 20, 2006 between Greystone CDE, LLC (the "Lender") and the Borrower

Ladies and Gentlemen:

The purpose of this letter is to notify you that you are in default in respect of the loan from Greystone CDE, LLC evidenced by the above-referenced agreement (the "Bridge Loan Agreement"). Capitalized terms used herein and not defined herein shall have the meanings ascribed thereto in the Bridge Loan Agreement.

You are hereby notified of the following Events of Default under the Loan Documents:

(a)   pursuant to Section 9.1(g) of the Bridge Loan Agreement, the expiration of the contract for purchase and sale of the Project without the same having been extended;

(b)   pursuant to Section 9.1(j) of the Bridge Loan Agreement, the termination or expiration of the commitment to provide the equity investment in the Project;

August 21, 2007
Page 2

(c)     pursuant to Section 9.1(k) of the Bridge Loan Agreement, the occurrence of changes in the operation, prospects and financial condition of the Borrower which, in our reasonable judgment materially adversely affect the ability of the Borrower to repay the Note and perform its other obligations under the Bridge Loan Documents, including, without limitation, the expiration without extension of the contract for purchase and sale of the Project, the failure to obtain and maintain a commitment to provide the equity investment in the Project, the deterioration of the physical condition of the Project and the lack of progress in advancement of the application for HUD financing due to unavailability of information required to be provided by the Borrower;

(d)     pursuant to Section 3.06(d) of the Guaranty, the occurrence of the foregoing events of default under the Bridge Loan Agreement;

(e)     pursuant to Section 3.06(c) of the Guaranty, the breach of Section 2.02(b) of the Guaranty requiring the Guarantor to provide the Lender with notice of the foregoing, which constitute material adverse changes in the business, operations, conditions (financial or otherwise) or prospects of the Guarantor; and

(f)     pursuant to Section 3.06(c) of the Guaranty, the breach of Section 2.02(a) of the Guaranty requiring the Guarantor to provide the Lender with (i) copies of the Guarantor audited annual financial statements on or before January 20, 2007 and (ii) a copy of the Guarantor's federal income tax return within ten (10) days of the filing thereof.

You are hereby further notified of the following breaches of covenants contained in the Bridge Loan Documents which, if not cured within thirty (30) days of the date of this notice, will constitute additional Events of Default pursuant to Section 9.1(b) of the Bridge Loan Agreement:

(1)     under Section 7.1(a) of the Bridge Loan Agreement, failure to provide annual financial statements of the Borrower for the year ended December 31, 2007, certified by an independent certified public accountant, on or before April 30, 2007;

(2)     under Section 7.1(b) of the Bridge Loan Agreement, failure to provide quarterly financial statements of the borrower for the quarter ended March 31, 2007, on or before May 15, 2007;

(3)     under Section 7.1(b) of the Bridge Loan Agreement, failure to provide quarterly financial statements of the Borrower for the quarter ended June 30, 2007, on or before August 15, 2007;

(4)     under Section 7.5(e) of the Bridge Loan Agreement, failure of the Borrower to notify the Lender of the Events of Default described herein and the other events described herein which, with the giving of notice or the passage of time or both, would constitute Events of Default;

August 21, 2007
Page 3

(5) under Section 8.2(a) of the Bridge Loan Agreement, failure of the Borrower not to permit material changes in or to the Project (by failing to cause the seller of the Project properly to maintain the Project);

(6) under Section 3(b) of the Assignment of Purchase Contract, failure of the Borrower to enforce the performance by the seller of the Project properly to maintain the Project;

(7) under Section 3(e) of the Assignment of Purchase Contract, failure of the Borrower to extend the Purchase Contract or close upon the purchase of the Project in accordance with the terms of the Purchase Contract, thereby failing to preserve for the Lender the full benefits of the Assignment of Purchase Contract;

(8) under Section 4(e) of the Assignment of Purchase Contract, the Borrower's allowing the Purchase Contract to expire without extension, thereby materially impairing the value of the rights of the Borrower and the Lender thereunder;

(9) under Section 3(b) of the Assignment of Project Documents, failure of the Borrower to perform and observe all of its covenants and agreements under the Bond Documents; and

(10) under Section 4(f) of the Assignment of Project Documents, the taking by the Borrower of the actions hereinabove described, thereby materially impairing the value of the rights and interests of the Borrower and the Lender under the Bond Documents.

We call to your attention that the foregoing circumstances may also constitute events of default under the Bond Documents which, if not cured within any applicable notice, grace or cure period under the Bond Documents will constitute an additional Event of Default under Section 9.1(h) of the Bridge Loan Agreement.

References in this letter to specific defaults and Events of Default are not intended to be exclusive and do not in any way constitute a waiver of any other defaults or Events of Default that are not specified herein that have occurred or might occur in the future.

As a result of the foregoing, interest on the Note and all amounts payable under the Loan Documents shall accrue at the Default Rate from the date hereof until paid in full. In addition, as a result of the Events of Default described above, the Lender reserves the right to declare the amounts due under the Loan Documents immediately due and payable, to demand immediate payment thereof and to pursue all rights and remedies of the Lender under the Loan Documents (including, without limitation, the Guaranty), at law or in equity.

This letter is written without prejudice to the rights of the Lender to pursue any and all remedies available to the Lender under the Loan Documents, at law or in equity. Nothing in this letter nor any communications between you and the Lender shall constitute a waiver or modifications of any of the Lender's rights or remedies or any of the terms, conditions,

August 21, 2007
Page 4

representations, warranties, covenants or agreements contained in the Loan Documents; the Lender hereby reserves and preserves all of its rights and remedies under the Loan Documents and/or applicable law.

Very truly yours,

GREYSTONE CDE, LLC

By: _____
Debi Martin
Vice President

cc:  Dianne Coady Fisher, Greenberg Traurig, LLP
Matthew James, Greystone & Co., Inc.
Thom Ruffin, Greystone Servicing Corporation, Inc.

**EXHIBIT 2**

# GREYSTONE CDE, LLC

September 18, 2007

**VIA OVERNIGHT DELIVERY AND E-MAIL**

Santa Fe Pointe, L.P. (the "Borrower")
Santa Fe Pointe Management, LLC (the "General Partner")
Theotis F. Oliphant (the "Limited Partner" and "Guarantor")
Rant, LLC (the "Developer")
16416 Oconee Drive
Edmond, Oklahoma 73013
Attention:   Theotis F. Oliphant (via e-mail: theo.oliphant@gmail.com)

Theotis F. Oliphant (the "Limited Partner" and the "Guarantor")
113 Carmel Avenue
El Cerrito, California 94530

Gibbs & Oliphant LLP
300 Frank H. Ogawa Plaza, Third Floor
Oakland, California 94612

Re:   NOTICE OF ACCELERATION:  Bridge Loan Agreement dated as of December 20, 2006 between Greystone CDE, LLC (the "Lender") and the Borrower

Ladies and Gentlemen:

In our Notice of Default dated August 21, 2007 previously sent, a copy of which is annexed hereto, you were notified that the Note and all amounts payable under the Loan Documents shall accrue at the Default Rate from the date thereof (August 21, 2007) until paid in full. The Lender reserved the right to declare all amounts due under the Note immediately due and payable.

As a result of the Events of Default under the Bridge Loan Agreement identified in items (a) through (c) in our Notice of Default, the Lender hereby declares the indebtedness evidenced by the Note, any and all other amounts payable under the Bridge Loan Agreement and the other Loan Documents and all other indebtedness of the Borrower to the Lender to be immediately due and payable in accordance with Section 9.2(a) of the Bridge Loan Agreement.

September 18, 2007
Page 2

As of September 18, 2007, the following amounts are due and owing under the Loan Documents:

| | |
|---|---|
| Principal: | $500,000.00 |
| Accrued Interest: | 3594.51 |
| Exit Fee: | 10,000.00 |
| Lender's Costs and Expenses: | 21,000.00 |
| Total: | $534,594.51 |

Please note that the above figures are good only through September 18, 2007. The Lender reserves the right to demand immediate payment of any and all additional costs and expenses incurred by the Lender in connection with the enforcement of the Loan Documents, the collection of the foregoing, the preservation of the Collateral and any other amounts which may hereafter become due and payable under the Loan Documents.

In addition, interest on the Note and all amounts payable under the Loan Documents shall accrue at the Default Rate from August 21, 2007 (the per diem at the default rate is $166.67) until paid in full and the Lender reserves the right to demand immediate payment thereof.

Demand for immediate payment of all amounts due and owing hereunder is hereby made upon the Borrower. In addition, demand for payment is hereby made upon the Guarantor pursuant to the Guaranty, upon the Partners pursuant to the Partner Pledge and upon the Developer pursuant to the Developer Fee Pledge.

Please take further notice, that should you fail to make payment as required, Lender shall be entitled to collect all reasonable costs of collection, including, but not limited to, reasonable attorneys' fees.

This letter is written without prejudice to the rights of the Lender to pursue any and all remedies available to the Lender under the Loan Documents, at law or in equity. Nothing in this letter nor any communications between you and the Lender shall constitute a waiver or modifications of any of the Lender's rights or remedies or any of the terms, conditions, representations, warranties, covenants or agreements contained in the Loan Documents; the Lender hereby reserves and preserves all of its rights and remedies under the Loan Documents and/or applicable law.

Very truly yours,

GREYSTONE CDE, LLC

By: _Debi Martin_
Name: Debi Martin
Title: Vice President

Exh. _2_, Page 25

September 18, 2007
Page 3

cc:   Dianne Coady Fisher, Esquire
      Stephen Harnik, Esquire
      Thom Ruffin



GREYSTONE SERVICING
CORPORATION, INC.
419 BELLE AIR LANE
WARRENTON, VA 20186
PHONE: 540.341.2100
FAX: 540.341.2121

August 21, 2007

**VIA FEDERAL EXPRESS**

Santa Fe Pointe, L.P. (the "Borrower")
Santa Fe Pointe Management, LLC (the "General Partner")
Theotis F. Oliphant (the "Limited Partner" and "Guarantor")
Rant, LLC (the "Developer")
16416 Oconee Drive
Edmond, Oklahoma 73013
Attention:   Theotis F. Oliphant

Theotis F. Oliphant (the "Limited Partner" and the "Guarantor")
113 Carmel Avenue
El Cerrito, California 94530

Gibbs & Oliphant LLP
300 Frank H. Ogawa Plaza, Third Floor
Oakland, California 94612

   Re:   NOTICE OF DEFAULT: Bridge Loan Agreement dated as of December
         20, 2006 between Greystone CDE, LLC (the "Lender") and the Borrower

Ladies and Gentlemen:

   The purpose of this letter is to notify you that you are in default in respect of the loan from Greystone CDE, LLC evidenced by the above-referenced agreement (the "Bridge Loan Agreement"). Capitalized terms used herein and not defined herein shall have the meanings ascribed thereto in the Bridge Loan Agreement.

   You are hereby notified of the following Events of Default under the Loan Documents:

   (a)   pursuant to Section 9.1(g) of the Bridge Loan Agreement, the expiration of the contract for purchase and sale of the Project without the same having been extended;

   (b)   pursuant to Section 9.1(j) of the Bridge Loan Agreement, the termination or expiration of the commitment to provide the equity investment in the Project;

Exh. 2, Page 27

August 21, 2007
Page 3

(5) under Section 8.2(a) of the Bridge Loan Agreement, failure of the Borrower not to permit material changes in or to the Project (by failing to cause the seller of the Project properly to maintain the Project);

(6) under Section 3(b) of the Assignment of Purchase Contract, failure of the Borrower to enforce the performance by the seller of the Project properly to maintain the Project;

(7) under Section 3(e) of the Assignment of Purchase Contract, failure of the Borrower to extend the Purchase Contract or close upon the purchase of the Project in accordance with the terms of the Purchase Contract, thereby failing to preserve for the Lender the full benefits of the Assignment of Purchase Contract;

(8) under Section 4(e) of the Assignment of Purchase Contract, the Borrower's allowing the Purchase Contract to expire without extension, thereby materially impairing the value of the rights of the Borrower and the Lender thereunder;

(9) under Section 3(b) of the Assignment of Project Documents, failure of the Borrower to perform and observe all of its covenants and agreements under the Bond Documents; and

(10) under Section 4(f) of the Assignment of Project Documents, the taking by the Borrower of the actions hereinabove described, thereby materially impairing the value of the rights and interests of the Borrower and the Lender under the Bond Documents.

We call to your attention that the foregoing circumstances may also constitute events of default under the Bond Documents which, if not cured within any applicable notice, grace or cure period under the Bond Documents will constitute an additional Event of Default under Section 9.1(h) of the Bridge Loan Agreement.

References in this letter to specific defaults and Events of Default are not intended to be exclusive and do not in any way constitute a waiver of any other defaults or Events of Default that are not specified herein that have occurred or might occur in the future.

As a result of the foregoing, interest on the Note and all amounts payable under the Loan Documents shall accrue at the Default Rate from the date hereof until paid in full. In addition, as a result of the Events of Default described above, the Lender reserves the right to declare the amounts due under the Loan Documents immediately due and payable, to demand immediate payment thereof and to pursue all rights and remedies of the Lender under the Loan Documents (including, without limitation, the Guaranty), at law or in equity.

This letter is written without prejudice to the rights of the Lender to pursue any and all remedies available to the Lender under the Loan Documents, at law or in equity. Nothing in this letter nor any communications between you and the Lender shall constitute a waiver or modifications of any of the Lender's rights or remedies or any of the terms, conditions,

Exh. 2, Page 28

August 21, 2007
Page 4

representations, warranties, covenants or agreements contained in the Loan Documents; the Lender hereby reserves and preserves all of its rights and remedies under the Loan Documents and/or applicable law.

Very truly yours,

GREYSTONE CDE, LLC

By: _____
Debi Martin
Vice President

cc:  Dianne Coady Fisher, Greenberg Traurig, LLP
     Matthew James, Greystone & Co., Inc.
     Thom Ruffin, Greystone Servicing Corporation, Inc.

Harnik Wilker & Finkelstein LLP
Attorneys for Plaintiff
Greystone CDE, LLC
Olympic Tower
645 Fifth Avenue, 7th floor
New York, NY 10022-5937
Tel. No. (212) 599-7575
Facsimile (212) 867-8120
Email: stephen@harnik.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
Greystone CDE, LLC,                              Docket No. 07 civ. 8377 (RPP)

                        Plaintiff,
            - against -
Sante Fe Pointe, L.P.,                           **AFFIDAVIT OF SERVICE**
Sante Fe Pointe Management, LLC,
Rant LLC, and
Theotis F. Oliphant
                        Defendants.
----------------------------------------------------------X

STATE OF NEW YORK        )
                         )ss.:
COUNTY OF NEW YORK )

   I, Sarah C. Claridad, being sworn, say:

   I am not a party to the action, am over 18 years of age and reside at 1515 Lexington Avenue, New York, N.Y. 10029.

   On the 5th day of October, 2007, I served the within First Amended Complaint As of Right by depositing a true copy thereof enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State, addressed to the person at the last known address set forth:

            Farber & Company Attorneys, LLP
            Attorneys for Defendants
            847 Sansome Street, Suite LL
            San Francisco, California 94111
            Att'n: Ann McFarland Draper, Esq.

                                                     _____
                                                     Sarah C. Claridad

Sworn to before me the
5th day of October, 2007.

_____
Notary Public
STEPHEN M. HARNIK
Notary Public State of New York
No. 02HA-4694243
Qualified in New York County
Commission Expires May 31, 2011

Exh. 2, Page 29



Professional Indexes & Files 800-422-9191 www.proindexes.com

**Swanholt Decl.**