# Exhibit D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
GREYSTONE CDE, LLC,

                Plaintiff,

                               07 CV. 8377 (RPP)

   - against -

                               OPINION AND ORDER

SANTE FE POINTE L.P.,
SANTE FE POINTE MANAGEMENT, LLC,
RANT LLC, and
THEOTIS F. OLIPHANT,

                Defendants.
------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

      On October 24, 2007, Plaintiff Greystone CDE, LLC, applied for a clerk's certificate of default by Defendants Sante Fe Pointe L.P., Sante Fe Pointe Management, LLC, Rant LLC, and Theotis F. Oliphant ("Defendants"), pursuant to Rule 55(a) of the Federal Rules of Civil Procedure and Local Civil Rule 55.1. Upon issuance of the clerk's certificate of default on October 25, 2007, Plaintiff applied to the Court for entry of judgment by default against Defendants pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure and Local Civil Rule 55.2(b). The Court denied the application and directed Plaintiff to proceed by moving for entry of default judgment with notice to Defendants. Plaintiff so moved on November 5, 2007. On November 8, 2007, counsel for Defendants made a special appearance for the limited purpose of filing an opposition to Plaintiff's motion and a cross motion to vacate Plaintiff's service of the complaint and amended complaint, to strike the affidavit of service filed by Plaintiff, and to strike the clerk's certificate issued at Plaintiff's request. For the following reasons, Plaintiff's

motion for entry of default judgment (Doc. No. 6) is denied, and Defendants cross motion seeking to vacate service of the complaint and amended complaint and to strike the clerk's certificate of default and affidavit of service (Doc. No. 8) is granted.

## BACKGROUND

This case involves a race to the courthouse in a breach of contract action by a lender against a borrower, guarantors, and pledgors in which Plaintiff and Defendants seek forums on opposite coasts of the country. Following Plaintiff's sending Defendants notice of default of their Bridge Loan Agreement and guaranty agreements on August 21, 2007, Defendants were the first to commence an action on September 7, 2007, in the Superior Court of California, County of Alameda (the "California action"). (Decl. Donald N. David Opp'n to Pl.'s Mot. Default J., Ex. A.) That pending action, in which Defendants are the plaintiffs, claims that Plaintiff caused Defendants to be unable to perform the contracts in question.[1] The parties in the California action are the same as the parties in the action before this Court. Plaintiff (the defendant in the California action) removed the California action to the United States District Court for the Northern District of California based on diversity jurisdiction. (Defs.' Opp'n to Pl.'s Mot. Entry Default J. & Cross Mot. Vacate Service Compl. and Amended Compl. at 2-3.) On September 26, 2007, Plaintiff commenced its own action against Defendants in this Court for breach of the Bridge Loan Agreement and guaranty agreements. On September 27,

---

[1] In their first amended and supplemental complaint for damages and declaratory relief, Defendants claim that Plaintiff (the defendant in the California action) committed a number of bad acts, including professional negligence, breach of fiduciary duty, constructive fraud, intentional interference with prospective economic advantage, anticipatory breach, and breach of the implied covenant of good faith and fair dealing. (Defs.' Opp'n Pl.'s Mot. Entry Default J. & Cross Mot. Vacate Service Compl. and Amended Compl., Ex. A.)

2007, Plaintiff made service upon Defendants by delivering copies of the summons and complaint by Federal Express. (Pl.'s Mem. Law Supp. Mot. Entry Default J. at 2.)

Having concluded that Defendants failed to file a timely answer or otherwise defend, Plaintiff filed an affidavit of service with an application for a clerk's certificate of Defendants' default on October 24, 2007. (Pl.'s Notice Mot. Entry Default at 4 & Ex. D.) The certificate was issued, and Plaintiff applied to the Court for entry of a default judgment the following day. The Court denied the application, directing Plaintiff to proceed by moving for entry of a default with notice to Defendants. Plaintiff did as advised and filed the instant motion for entry of default judgment on November 5, 2007.[2]

In the period of time following Plaintiff's purported service of process, a dispute ensued between counsel for the parties over whether Plaintiff had effected proper service of process on Defendants. Plaintiff took the following position in an email dated October 8, 2007, and addressed to Ann McFarland Draper, Esq., an attorney in the firm representing Defendants in the California action: "Defendants agreed that service of process may be effected by registered or certified mail (or any substantially similar form of mail). We served the summons and complaint by Fedex. Copies of the confirmations of delivery are annexed. If you require additional time to answer, please let me know." (Id. at 4 & Ex. C.) In an email to Plaintiff's counsel dated October 26, 2007, Ms. Draper took the position that she had not appeared in this action, that Defendants had not been served, that her firm was not authorized to accept service of process for any Defendant in the New York action, that Plaintiff's Federal Express delivery "was taken as a courtesy,"

---

[2] Subsequent to moving for entry of default judgment in this Court, Plaintiff filed a motion in the California action to transfer venue to this Court pursuant to 28 U.S.C. § 1404(a). (Defs.' Opp'n to Pl.'s Mot. Entry Default J. & Cross Mot. Vacate Service Compl. and Amended Compl. at 3; Decl. Donald N. David Opp'n to Pl.'s Mot. for Default J., Ex. C.)

3

and that because of the out-of-state service, the summons must specify a thirty-day, rather than twenty-day, response time. (Id. at 5 & Ex. G.)

The dispute between Plaintiff and Defendants concerning service of process centers on a provision in their contractual documents. On December 20, 2006, Plaintiff entered into a Bridge Loan Agreement with Defendant Santa Fe Pointe L.P., by which Plaintiff agreed to lend up to $500,000 in principal to finance predevelopment expenses of an affordable housing development to be known as the Sante Fe Pointe Apartments in Oklahoma City. (Compl. § 9 & Ex. A.) On or about the same date, Plaintiff entered into three agreements to guarantee repayment of the loan (Compl. §§ 13-15): (1) a Guaranty and Suretyship Agreement with Defendant Theotis Oliphant by which Oliphant guaranteed and became a surety to Plaintiff for the due, punctual and full payment and performance of Sante Fe Pointe L.P.'s obligations under the Bridge Loan Agreement (Compl., Ex. C); (2) a Partner Guaranty, Pledge and Security Agreement ("Partner Agreement") with Defendants Santa Fe Pointe Management, LLC, and Oliphant, and by which Defendant Santa Fe Pointe L.P. consented to be bound (Compl., Ex. D); and (3) a Developer Limited Guaranty, Pledge and Security Agreement ("Developer Agreement") with Defendant Rant, LLC (Compl., Ex. E.).

The Partner Agreement and Developer Agreement each contain a section governing "Submission to Jurisdiction."[3] The "Submission to Jurisdiction" section of the Partner Agreement provides in relevant part:

(a) Pledgors hereby irrevocably and unconditionally:
    . . .

---

[3] The Bridge Loan Agreement itself does not contain a section governing submission to jurisdiction in New York; nor does the Guaranty and Suretyship Agreement with Defendant Oliphant. The parties do not appear to dispute that the service provisions in the Partner Agreement and Developer Agreement control and cover each of the named Defendants.

4

> (iii) agree that service of process in any [legal] action or proceeding [relating to this agreement] may be effected by mailing a copy thereof by registered or certified mail (or any substantially similar form of mail), postage prepaid, to Pledgors at the addresses referred to on page 1 of this agreement . . . .

(Compl., Ex. D, § 26(a)(iii), at 16.) The "Submission to Jurisdiction" section of the Developer Agreement contains identical language, but requires "return receipt requested" in addition to "postage prepaid." (Compl., Ex. E, § 26(a)(iii), at 14.) The meaning of these service provisions has become the controversy in this case.

Defendants retained New York counsel to specially appear in this action for the limited purpose of opposing Plaintiff's motion for entry of a default judgment. Defendants oppose this motion primarily on the ground that Plaintiff's service by Federal Express does not constitute valid service as agreed upon by the parties.[4]

## DISCUSSION

Rule 55(a) of the Federal Rules of Civil Procedure allows a plaintiff to request an entry of default by the clerk following a defendant's failure to plead or defend as required by the Rules. Fed. R. Civ. P. 55(a). Rule 55(b)(2) provides that after a default has been entered and upon the request of the plaintiff, the district court may enter a judgment by default. Fed. R. Civ. P. 55(b)(2). When the defendant against whom default has been entered opposes the motion for entry of a default judgment, the opposition to the motion is often viewed as a motion to set aside the default, whether or not a formal motion has been made pursuant to Rule 55(c). Meehan v. Snow, 652 F.2d 274, 276 (2d Cir. 1981);

---

[4] Defendants dispute the validity of service without admitting that the contract provisions governing service are valid and enforceable. In their California action, Defendants contend that the service provisions and the non-exclusive forum selection clause are unenforceable as unconscionable adhesion provisions. (Defs.' Opp'n to Pl.'s Mot. Entry Default J. & Cross Mot. Vacate Service Compl. and Amended Comp. at 5.)

10A Charles Alan Wright et al., Federal Practice and Procedure § 2692, at 85-86 (3d ed. 1998). Rule 55(c) allows the court to set aside an entry of default for good cause or to set aside a default judgment under Rule 60(b). Fed. R. Civ. P. 55(c).

In this case, Plaintiff's request for an entry of default under Rule 55(a) was granted when the clerk issued a certificate of default on October 25, 2007. Plaintiff now moves pursuant to Rule 55(b)(2) for a default judgment in its favor, and Defendants' opposition to this motion includes arguments that good cause exists to set aside the default.[5]

Before a default can be entered pursuant to Rule 55(a) in the first place, however, "the court must have jurisdiction over the party against whom the judgment is sought, which also means that the party must have been effectively served with process." 10A Wright et al., supra, § 2682, at 14 (footnote omitted). At this juncture, the question in this case is whether jurisdiction existed to enter the default against Defendants. If Defendants have not been effectively served according to the parties' contractual agreement as to service of process, then there was no jurisdiction, and the clerk's certificate of default must be stricken and service of the complaint and amended complaint vacated. Whether default should be set aside for good cause is not the appropriate inquiry here, notwithstanding the parties' arguments on that issue, because it assumes default by the defendant.

---

[5] Defendants oppose Plaintiff's motion for entry of default judgment in part on the grounds that the three principal factors under Rule 55(c) weigh in favor of Defendants. (Defs.' Opp'n Pl.'s Mot. Entry Default J. & Cross Mot. Vacate Service Compl. and Amended Compl. at 4.) They argue that the default was not willful, setting the default aside would not prejudice Plaintiff, and Defendants are able to present a meritorious defense. See Credit Lyonnais Secs., Inc. v. Alcantara, 183 F.3d 151, 154 (2d Cir. 1999) (stating the three factors); see also Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981). The Court will not consider these factors in deciding the instant motion because such an inquiry assumes valid entry of default and actual default by the defendant.

6

The question of jurisdiction turns on whether Plaintiff has validly served Defendants under the service provisions of the parties' Partner and Developer Agreements. The parties in this case agreed as to the methods by which service of process is valid and effective. Such agreements are permissible and upheld by courts in the event of litigation. See Nat'l Equipment Rental, Ltd. v. Szukhent, 375 U.S. 311, 315-16 (1964) ("[I]t is settled . . . that parties to a contract may agree in advance to submit to the jurisdiction of a given court, to permit notice to be served by the opposing party, or even to waive notice altogether"); Nat'l Equipment Rental, Ltd. v. Reagin, 338 F.2d 759, 761 (2d Cir. 1964) (applying the holding in Szukhent and noting that it "evidences a liberality, limited only by due process considerations, in the judicial treatment of contractual clauses which are inserted by one of the contracting parties for the purpose of obtaining personal jurisdiction over the other in the event that a dispute arises under the contract"). The parties' contractual language, and not the Federal Rules of Civil Procedure, governs what constitutes proper service in this case.[6]

In their Partner and Developer Agreements, Plaintiff and Defendants agreed that "service of process . . . may be effected by mailing a copy thereof by registered or certified mail (or any substantially similar form of mail), postage prepaid" to Defendants.[7] (Compl., Ex. D § 26(a)(iii), at 16; Compl., Ex. E § 26(a)(iii), at 14.) Plaintiff argues that Federal Express constitutes a "form of mail" that is "substantially similar" to registered or certified mail. Defendant, on the other hand, contends that Federal Express is neither "mail" nor the substantial equivalent of registered or certified mail.

---

[6] The parties agree that the methods of service of process are controlled by the parties' agreement and not by statute.

[7] The Developer Agreement signed by Defendant Rant LLC also specifies "return receipt requested."

7

Much of the case law addressing the similarity or dissimilarity of the U.S. Postal Service to a private delivery carrier, and on which both parties rely to support their arguments, pertains to service of process under the Federal Rules of Civil Procedure, not private agreements between parties. (See cases cited in Pl.'s Supplemental Mem. Law at 3-4, 7-8; Defs.' Opp'n Pl.'s Mot Entry Default J. & Cross Mot. Vacate Service Compl. and Amended Compl. at 6; Defs.' Supplemental Letter Br. at 2-3.) Those cases are therefore inapplicable to the contractual language at issue here. Regardless of how the cases interpret "mail" in the context of statutory service requirements, basic contract interpretation of the parties' agreements in this case leads the Court to conclude that, at the time of the agreements, it was reasonable for Defendants to have understood "substantially similar forms of mail" to refer to mail service provided by the U.S Postal Service ("USPS") and not to include delivery by Federal Express.

Plaintiff argues that the term "mail" cannot be limited to delivery service provided by USPS because, under such construction, Defendants are hard pressed to suggest delivery methods that comply with the service provisions. (Pl.'s Supplemental Mem. Law Supp. Mot. Entry of Default at 6.) Defendants, however, name two types of USPS mail that satisfy the requirements of the service provision—express mail and priority mail. (Defs.' Supplemental Letter Br. at 4.) Each of these alternatives is the substantial equivalent of registered or certified mail: express mail provides guaranteed next-day delivery, proof of delivery, signature confirmation, and the option for a sender to request a return receipt upon delivery; priority mail provides confirmation of delivery and guaranteed delivery within two to three days. (Id.) In view of these other options, Defendants' construction of the word "mail" is tenable.

8

While the USPS services of express mail and priority mail are substantially similar to registered and certified mail, Federal Express bears a substantial difference that is particularly relevant given the purpose of service of process. As Defendants point out, Federal Express allows its customers to file a "signature on file waiver," which waives in advance the signature requirement upon receipt of all incoming mail. USPS does not offer this option to recipients of mail; only senders of USPS mail may waive the signature requirement. Defendants in this case had "signature on file waivers" with Federal Express at the time Plaintiff delivered the summons and complaint. (See Pl.'s Notice Mot. Entry Default J., Ex. E, Ex. 1.) And Plaintiff offers no evidence that personal delivery on each of the Defendants was effectuated.

Finally, the service provision's omission of the option of delivery by private carrier is significant in construing the parties' agreement. The provision governing delivery of notices and communications within the same Partner and Developer Agreements explicitly includes the option of "private delivery service." (See Compl., Ex. D § 13, at 13; Compl., Ex. E § 14, at 12.) It can be assumed, therefore, that the parties had private delivery service in mind when the agreements were drafted. As Defendant argues, if the parties intended private delivery service to be included among the acceptable methods of service of process, that option should have been included in the service provision, as it was in the notice provision.

Based on its interpretation of the service provision in the Partner and Developer Agreements, the Court concludes that Plaintiff's delivery of the summons and complaint by Federal Express did not effect proper service of process as agreed by the parties.[8] The

---

[8] Having so concluded, the Court will not reach the question of whether Ms. Draper appeared in this action as the attorney for Defendants.

clerk's certificate of default and the affidavit of service are stricken, and service of the complaint and amended complaint is found insufficient to provide this Court with jurisdiction over Defendants. To cure the defect in service of process, Plaintiff may serve Defendants in accordance with the parties' agreement as interpreted in this opinion.

CONCLUSION

For the foregoing reasons, Plaintiff's motion (Doc. No. 6) for entry of a default judgment is denied, and Defendants' cross motion (Doc. No. 8) seeking to vacate service of the complaint (Doc. No. 1) and amended complaint (Doc. No. 3) and to strike the clerk's certificate of default and the affidavit of service (Doc. No. 4) is granted.

IT IS SO ORDERED.

Dated: New York, New York
November 29, 2007

Robert P. Patterson, Jr.
U.S.D.J.

Copies of this Opinion and Order sent to:

*Attorneys for Plaintiff*
Harnik Wilker & Finkelstein LLP
ATTN: Stephen M. Harnik
645 Fifth Avenue, 7th Floor
New York, NY 10022-5937
Tel: 212-599-7575
Fax: 212-867-8120

*Attorneys for Defendants*
Akerman Senterfitt LLP
ATTN: Donald N. David, Brian A. Bloom, Jeremy A. Shure
335 Madison Avenue, Suite 2600
New York, NY 10017
Tel: 212-880-3800
Fax: 212-880-8965