**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GREYSTONE CDE, LLC,<br><br>        *Plaintiff,*<br><br>- against -<br><br>SANTE FE POINTE, *et al.*,<br><br>        *Defendants.* | Civil Case No:  07CV.8377 (RPP)<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANTS' MEMORANDUM OF LAW IN**
**SUPPORT OF THEIR MOTION TO STAY THE SOUTHERN DISTRICT ACTION**

**AKERMAN SENTERFITT LLP**
335 Madison Avenue, Suite 2600
New York, New York 10017
Telephone:  212.880.3800
Facsimile:  212.880.8965

*Attorneys for Defendants*

## Table of Contents

**PROCEDURAL BACKGROUND** ............................................................................................ **2**

    **The California Action** ............................................................................................ **2**

    **The New York Action** ............................................................................................ **3**

**BACKGROUND FACTS** .................................................................................................... **4**

**THE CALIFORNIA CHANGE OF VENUE MOTION** ............................................................ **7**

**ARGUMENT** ........................................................................................................................ **9**

    <u>Point I -</u> **The Court should Stay Proceedings Here Pending Resolution of Greystone CDE's Change Of Venue Motion** ............................................................ **9**

    <u>Point II -</u> **Alternatively, the Court Should Stay Proceedings Here Pending Full Resolution of the California Action** ............................................................ **10**

        a. The Oliphant Parties Are Entitled to the "First-to-File Rule" ........................ 10

        b. Greystone CDE Cannot Establish that Special Circumstances Dictate that this Matter Should Be Litigated in the Second-Filed Forum ........................ 10

            (1)   Convenience of parties ........................................................................ 11

            (2)   Convenience of witnesses.................................................................... 11

            (3)   Non-parties subject to subpoena power.............................................. 12

            (4)   Availability of documentary evidence................................................ 13

            (5)   Expenses to the parties ........................................................................ 13

            (6)   Degree of interruption......................................................................... 13

            (7)   Other factors ........................................................................................ 14

    <u>Point III -</u> **This Motion Tolls the Time for the Oliphant Parties To Respond to the Complaint** ............................................................................................ **15**

**CONCLUSION** ............................................................................................................ **17**

# Table of Authorities

## Cases

*800 - Flowers, Inc. v. Intercontinental Florist, Inc.,*
  860 F. Supp. 128, 131-132 (S.D.N.Y. 1994)................................................................................10

*Berisford Capital Corp. v. Cent. States, Southeast and Southwest Areas Pesnion Fund,*
  677 F. Supp. 220, 223-236 (S.D.N.Y. 1988)..............................................................................10

*The Bremen v. Zapata Off-Shore Co.,*
  407 U.S. 1, 15 (1972) ...............................................................................................................14

*First City Nat'l Bank and Trust Co. v. Simmons,*
  878 F.2d 76 (2d Cir. 1989) ....................................................................................................9, 10

*In re: Barneys,*
  206 B.R. 336 (Bankr. S.D.N.Y. 1997) ......................................................................................15

*Intravascular Research Ltd. v. Endosonics Corp.,*
  994 F. Supp. 564 (D. Del. 1998) ...............................................................................................15

*John Botari & Sons, Wines & Spirits, S.A. v. Attiki Imps. & Distribs., Inc.,*
  22 F.3d 51, 52-53 (2d Cir. 1994)...............................................................................................15

*Motion Picture Lab. Technicians Loc. 780 v. McGregor & Werner, Inc.,*
  804 F.2d 784, 790 (2d Cir. 1986) ..............................................................................................10

*Nat'l Patent Dev. Corp. v. Am. Hosp. Supply Corp.,*
  616 F. Supp. 114, 118-119 (S.D.N.Y. 1984)..............................................................................11

*Parker v. Transcontinental & Western Air, Inc.,*
  4 F.R.D. 325, 326 (W.D. Mo. 1944) ..........................................................................................16

*Phillips v. Audio Active, Ltd.,*
  494 F.3d 378, 384 (2d Cir. 2007) ..............................................................................................14

*Schneider v. Sears,*
  265 F. Supp. 257, 263 (S.D.N.Y. 1967) .....................................................................................11

*Stewart Org., Inc. v. Ricoh Corp.,*
  487 U.S. 22, 29 (1988) ...............................................................................................................11

*Van Dusen v. Barrack,*
  376 U.S. 612, 616 (1964) .............................................................................................................9

## Unreported Case

*Questech Capital Corp. v. Flight Dynamics, Inc.*,
1984 WL 327 (S.D.N.Y. 1984) ................................................................................................ 15

## Statutes

28 U.S.C. § 1404(a) ....................................................................................... 2, 3, 7, 9, 11, 15

28 U.S.C. § 84(a) ........................................................................................................................ 4

F.R.C.P. Rule 6(d) ...................................................................................................................... 4

F.R.C.P. Rule 7 ........................................................................................................................... 1

F.R.C.P. Rule 83 ......................................................................................................................... 1

## Other Authorities

2A J. Moore & J. Lucas, Moore's Federal Practice ¶12.05 at 2240 n.1 (2d ed. 1948 & Supp.
1983)........................................................................................................................................... 16

5 C. Wright & A. Miller, Federal Practice & Procedure, § 1360 at 633-34 (1969 & Supp.
1984)......................................................................................................................................... 9, 16

Donald N. David (DD 5222)
Brian A. Bloom  (BB 5722)
Jeremy A. Shure (JS 0490)
**AKERMAN SENTERFITT LLP**
335 Madison Avenue, Suite 2600
New York, New York 10017
Telephone:  212.880.3800
Facsimile:    212.880.8965

*Attorneys for Defendants[1]*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GREYSTONE CDE, LLC, | Civil Case No:  07 CV.8377 (RPP) |
| *Plaintiff,* | |
| - against - | **ORAL ARGUMENT REQUESTED** |
| SANTA FE POINTE, *et al.,* | |
| *Defendants.* | |

**DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO STAY THE SOUTHERN DISTRICT ACTION**

Defendants Santa Fe Pointe, L.P., Santa Fe Pointe Management, LLC, Rant LLC, and Theotis F. Oliphant (collectively the "Oliphant Parties") respectfully submit this memorandum of law pursuant to the requirements of Rule 7 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), Fed. R. Civ. P. Rule 83, and the inherent power of this Court, in support of their motion to stay all proceedings in this case pending a ruling on a venue transfer motion presently

---

[1]    Respectfully, Defendants reserve their right to object to and to challenge the Court's personal jurisdiction over Defendants at the time Defendants answer or otherwise respond to the Plaintiff's complaint in this action.  Submission of this Motion to Stay shall not be deemed a waiver of Defendants' right to challenge personal jurisdiction; the ability to do so is affirmatively reserved without waiver.

pending in the United States District Court, Northern District of California ("the California Ac-
tion") on a case whose issues include those to be litigated here.

Greystone CDE, LLC (the Plaintiff here) has filed a motion in the California Ac-
tion to transfer venue to this Court pursuant to 28 U.S.C. §1404(a), which is set to be heard on
February 8, 2008. The duplication would be a waste of judicial (and the parties') resources. As
such and for the other reasons detailed herein, the Oliphant Parties request that this Court stay
the instant proceeding pending resolution of that venue transfer motion or, alternatively, to stay
all such proceedings *sin die*,[2] until final resolution of the California Action.

## PROCEDURAL BACKGROUND

### The California Action

Four months ago (on September 7, 2007) the Oliphant Parties sued Plaintiff Grey-
stone CDE, LLC ("Greystone CDE") and an affiliated entity, Greystone Servicing Corporation,
Inc. ("Greystone Servicing") in California state court.  Their Complaint alleged torts and
breaches of contract arising out of Oliphant's project to acquire and rehabilitate an Oklahoma
City apartment building as low income housing special funding insured by the FHA's Office of
Housing and Urban Development ("HUD"). A copy of the Complaint in the California Action is
attached as Exhibit A-1 to the Notice of Removal, which is attached as Exhibit A to the Declara-
tion of Brian A. Bloom ("Bloom Decl.") submitted herewith. The Complaint alleges that Grey-
stone Servicing (a HUD-approved underwriter) was a fiduciary that negligently, and perhaps in-
tentionally, mishandled the Oliphant Parties' HUD application, unilaterally and wrongfully with-
drew it from HUD consideration, and sabotaged the project. Moreover, that through a "bait and
switch" operation, Greystone Servicing forced the Oliphant Parties into accepting a bridge loan

---

[2]    The Court may put the instant action on the "suspense docket" pending determination of
the California § 1404(a) motion.

from Greystone CDE in an inadequate amount and on vastly different (and inferior) terms than initially promised.

The Oliphant Parties amended the Complaint on September 25, 2007 to include allegations of post-filing misconduct,[3] and effected personal service on Greystone Servicing and on Greystone CDE on September 25 and 26, 2007, respectively. *See* Exhibit B to the Bloom Decl., annexing a true and accurate copy of the Declaration of Ann McFarland Draper submitted in the California Action in Opposition to Greystone's Motion to Transfer to the Southern District of New York ("Draper Decl.",[4] ¶3). Both Greystone entities answered the Complaint on October 25, 2007, removed it to the Northern District of California[5] on the same date, and recently filed a motion in that court to transfer venue to this Court under 28 U.S.C. §1404(a) (alleging convenience of the parties and witnesses), which motion is set for hearing on February 8, 2008 in the Northern District of California.[6]

### The New York Action

On September 26, 2007 (the same day it was served with the Amended Complaint in the California Action), Greystone CDE filed the within action against the Oliphant Parties seeking to collect on the bridge loan. Greystone Servicing (the primary defendant in the California Action) is not a party to this case. Greystone CDE amended its complaint in the within action on October 5, 2007.

---

[3]     A copy of the First Amended Complaint in the California Action is included in Exhibit A to the Bloom Decl. (*Notice of Removal*, Exhibit A-2, commencing at p.29).

[4]     References herein to the "Draper Decl." refer to the sworn declaration of Ann McFarland Draper dated November 30, 2007 submitted in the California Action.

[5]     Civil Case No. C07-05454 JCS.

[6]     *See* Exhibit "C" to the Bloom Decl. for a true and accurate copy of Greystone CDE's motion to transfer as filed in the California Action.

Greystone CDE did not attempt to serve the summons or complaint in the usual manner, nor did it follow the Rule 6(d) waiver procedure. It did, however, file an Affidavit of Service and move to obtain a default judgment <u>without notice</u> to the Oliphant Parties. On November 29, 2007, this Court issued an Order denying the motion, and granting the Oliphant Parties' cross-motion to strike the Clerk's Certificate (of default) and the Affidavit of Service. Bloom Decl., Exhibit D, annexing a true and accurate copy of this Court's order and decision on Greystone's motion for default judgment.

There has been no other activity in the Southern District of New York.

## **BACKGROUND FACTS**

Theotis F. Oliphant resides in Contra Costa County, California (See Declaration of Theotis F. Oliphant ("Oliphant Decl."), ¶ 2, annexed to the Bloom Decl. as Exhibit "E"), which is in the Northern District of California. 28 U.S.C. § 84(a). He is the managing agent of Rant, LLC, which operates out of Contra Costa County. *Id.*, ¶3.

In August 2006, Oliphant undertook to acquire and rehabilitate a 224-unit apartment building in Oklahoma City (the "Santa Fe Pointe Project") as a developer under HUD's Low Income Housing program. *Id.*, ¶ 4. The Federal Government encourages private developers, through federally-insured loan incentives, to renovate and maintain housing for low income tenants. This was to be such a project. Oliphant formed Santa Fe Pointe, LP, an Oklahoma limited partnership, as the entity that would acquire the apartment complex, rehabilitate it, and be the borrower on the HUD-insured loan.[7] *Id.*, ¶ 11.

HUD does not interact directly with the developer under the Low Income Housing program. Rather, it requires the developer to retain a HUD-approved underwriter, a financial entity that ultimately will fund the HUD-insured loan. The underwriter is the sole intermediary

---

[7]     Oliphant also formed Santa Fe Management, LLC, an Oklahoma limited liability company, to manage the project after renovations were complete. *Id.*, ¶ 11. Oliphant is the managing member of Santa Fe Management, LLC, which in turn is the general partner of Santa Fe Pointe, LP. *Id.*, ¶ 3.

between the developer and HUD; it prepares the HUD application materials, commissions any third party reports needed to support the underwriting analysis, and facilitates the timely approval of application and financing. Bloom Decl. Exh. "E"., ¶ 6. Only the HUD-approved underwriter can submit the HUD application and communicate with HUD about it. *Id.* In early September 2006, Oliphant retained Greystone Servicing, through a written agreement, to act in that capacity, as a fiduciary who would serve as Oliphant's exclusive agent in the HUD application process. *Id.*, ¶ 8 and Exhibit "F" to the Bloom Decl. (Engagement Letter).

Aside from the HUD-insured loan, financing for the Santa Fe Pointe project would come in part in the form of tax-exempt bonds issued by Oklahoma local or state agencies. At about the same time Oliphant engaged Greystone Servicing, he also engaged an investment bank underwriter to sell tax exempt bonds. Bloom Decl., Exh. E, ¶8. The bond financing was required to close by December 20, 2006 or the tax-exempt bond allocation awarded for the Santa Fe Pointe Project would expire, so the HUD application had to be completed by November 2006, a fact of which Greystone Servicing was well aware. *Id.*

By late October, however, it was apparent that Greystone Servicing was behind schedule and would be unable timely to complete the HUD application. *Id.* ¶¶ 10, 12. To protect the project, Greystone Servicing agreed—through a written term sheet—to extend a non-recourse bridge loan of more than $4 million to be used by Oliphant (a) to purchase the real estate at the Santa Fe Pointe Project and (b) to timely pay for issuance of the tax-exempt bonds. Oliphant Decl.[8] ¶¶ 12, 13, 14, and Exhibit "B" thereto. The loan would be placed through Greystone CDE. Bloom Decl., Exh. A, ¶10 (Notice of Removal).

The loan actually extended, however, was quite different. Shortly before the December 20 tax-exempt bond issue deadline, Greystone presented Oliphant with loan documents for only a $500,000 maximum bridge loan, which would allow Oliphant to cover the bond issuance fees but not allow him to purchase the Santa Fe Pointe Project property. Bloom Decl. Exh.

---

[8]    A true and accurate copy of the Oliphant Decl. is annexed as Exhibit "E" to the Bloom Decl. submitted herewith.

E, ¶¶ 17, 18 (Oliphant Decl.). Moreover, the loan documents also required Oliphant and his wife to personally guarantee the bridge loan, even though the term sheet said financing would be non-recourse. *Id*, ¶ 18.

Oliphant had no choice but to accept and sign the loan documents as presented on a "take it or leave it" basis. *Id.* When he was presented with the documents, more than $250,000 in bond issuance costs had already been incurred because the tax-exempt bonds had been sold. *Id.*, ¶¶ 15,16, 18. The initial loan term sheet did not contain a forum selection or choice of law clause. *Id.*, ¶ 19. But "New York" was inserted as a *permissible* forum in the final version of the personal guaranties (but not other bridge loan documents) presented for signature at the eleventh hour. *Id.*.

For reasons to be developed in discovery in the California Action, Greystone Servicing waited to submit Oliphant's application to HUD for yet another three (3) months to mid-March 2007. *Id.*, ¶ 20. Oliphant claims numerous acts of misconduct by Greystone Servicing that placed the HUD application in jeopardy that need not be detailed on this motion. *Id.*, ¶¶ 21-35.

One thing is clear, though. On August 9, 2007, Greystone Servicing unilaterally—without prior notice to or approval from Oliphant—withdrew the HUD loan application. *Id.*, ¶ 27. This placed at risk over $7 million in tax exempt bond proceeds, and caused the seller of the underlying property to terminate negotiations with Oliphant about extending the close date for purchasing that property. *Id.*, ¶ 27.

In late August 2007, Greystone told Oliphant it was declaring the bridge loan in default. It demanded that Oliphant allow a third party to take over the entire Project on unfavorable terms and that Oliphant sign a covenant not to sue. *Id.*, ¶¶ 29, 30. Oliphant declined and immediately filed the California action a week later, on September 7, 2007.

Among other things, the California Action alleges that Greystone Servicing breached its fiduciary obligations, failed to timely present and pursue the HUD application on

Oliphant's behalf, improperly saddled the Oliphant Parties with an inadequate loan, and undermined their ability to succeed with the Santa Fe Pointe Project.

## THE CALIFORNIA CHANGE OF VENUE MOTION

Greystone CDE's change venue motion presently pending in the Northern District of California was brought under the discretionary change venue provisions of 28 U.S.C. § 1404(a), which empowers a district court to transfer a civil action to any other district where the case may have been brought "[f]or the convenience of the parties and witnesses, in the interest of justice" As the Oliphant Parties pointed out in their opposition to that motion in California, Greystone CDE has fallen well short of showing that the balance of conveniences *strongly* favors transfer, which is the burden Greystone must sustain to move the California Action to this district.

First, the Oliphant Parties are presumptively entitled to have their claims heard in the jurisdiction of their choice -- California. Moreover, New York is an odd venue for resolution of the claims. None of the parties resides in New York or is a New York entity; the contracts at issue were neither negotiated nor executed in New York; the subject real estate is not located in New York; only one (1) of the nine (9) witnesses identified by Greystone CDE in its moving papers works in New York; most of the relevant documents are located outside New York; and the place for performance is Virginia, not New York.

The primary reason for New York venue (according to Greystone CDE) is that the parties "selected" that forum through a forum selection clause in the bridge loan guaranties—a clause which notably is not present in the bridge loan Term Sheet, the bridge loan agreement or the bridge loan promissory note, but only in the guaranties presented for signature at the last minute. The Oliphant Parties claim that the bridge loan documents were signed under economic duress and that the forum selection clauses are invalid and unenforceable. Even *assuming ar-*

*guendo* that they are valid, however, such clauses are permissive, not mandatory, and therefore have only a minute effect on the analysis of whether this case should be transferred "in the interests of justice." Moreover, the bridge loan is but one portion of the California Action, which challenges Greystone Servicing's eleven-month course of conduct in representing the Oliphant Parties in the HUD application process.

Other factors argue against Greystone CDE's California change venue motion as well. There is likely no personal jurisdiction over the Oliphant Parties in New York; the Oliphant Parties selected California as the forum state and were first to file; their claims arise under California law; Oliphant is a California resident; and the other factors relevant to a convenience or "interests" of justice analysis are either neutral or favor California as the forum. Of course, it is the California court which will ultimately determine *that* motion. However, it is critical to note that, if that motion were to be granted, both the substantive and procedural issues in the instant case would be markedly changed and expanded. As such, this case should be stayed – as is provided for by Fed. R. Civ. P. Rule 7, Fed. R. Civ. P. Rule 83, and the inherent power of the Court.

## ARGUMENT

## POINT I

### THE COURT SHOULD STAY PROCEEDINGS HERE
### PENDING RESOLUTION OF GREYSTONE CDE'S CHANGE OF VENUE MOTION

The California change of venue motion is set to be heard in one month, on February 8, 2008. Basic principles of judicial economy dictate that the prudent course would be to wait for the outcome of that motion before proceeding further in this case.

If the change of venue motion is denied, then the Oliphant Parties would move to have this Court dismiss this case without prejudice under the First-to-File Rule (*see First City Nat'l Bank and Trust Co. v. Simmons*, 878 F.2d 76 (2d Cir. 1989)) or transfer it to the Northern District of California under 28 U.S.C. §1404(a) so as to avoid duplicative litigation, effect judicial economy, and prevent wasted time and money. *See Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (the purpose of Section 1404(a) is "to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense'"). On the other hand, if Greystone CDE's motion is granted and venue is transferred to this district, then the Oliphant Parties' California claim should be consolidated with this case, necessitated a significantly expanded scope of discovery and process. Until that is done, however, it makes little sense to proceed piecemeal now. Duplication would be virtually guaranteed if discovery proceeds and then the California Action is transferred here and ultimately consolidated.

The Court has the inherent power to enter stay orders incident to its authority to regulate actions pending before it. *See* 5 C. Wright & A. Miller, Federal Practice & Procedure, § 1360 at 633-34 (1969 & Supp. 1984).

## POINT II

### ALTERNATIVELY, THE COURT SHOULD STAY PROCEEDINGS HERE PENDING FULL RESOLUTION OF THE CALIFORNIA ACTION

a.    **The Oliphant Parties Are Entitled to the "First-to-File Rule"**

The "well-settled principle" in the Second Circuit is that "where there are two competing lawsuits, the first should have priority, absent the showing of balance of convenience or special circumstances giving priority to the second." *First Nat'l Bank*, 878 F.2d at 79 (quoting *Motion Picture Lab. Technicians Loc. 780 v. McGregor & Werner, Inc.*, 804 F.2d 784, 790 (2d Cir. 1986)). The First-to-File Rule serves to promote judicial administration and conservation of resources (*First Nat'l Bank*, 878 F.2d at 79), and there is a "strong presumption in favor of the forum of the first-filed suit." *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 131-132 (S.D.N.Y. 1994). In truth, the rule is largely designed to avoid forum shopping, exactly what occurred in the instant case.

The Oliphant Parties not only filed their action first[9] but served their complaint on both Greystone entities before Greystone CDE filed this action. Both Greystone entities answered the complaint in the California Action more than two months ago. Therefore, absent a showing by Greystone CDE of special circumstances, the Court is authorized under the First-to-File Rule to stay this action indefinitely to allow for the orderly conduct of the prior-filed California Action. *See Berisford Capital Corp. v. Cent. States, Southeast and Southwest Areas Pension Fund*, 677 F. Supp. 220, 223-236 (S.D.N.Y. 1988) (ordering indefinite stay of proceedings of second-filed action where no showing of special circumstances).

b.    **Greystone CDE Cannot Establish that Special Circumstances Dictate that this Matter Should Be Litigated in the Second-Filed Forum**

The factors that are to be considered in ruling on whether special circumstances exist to allow the second-filed action to proceed are similar to the circumstances considered on a

---

[9]    Where, as happened in the California Action, a state court action is subsequently removed to federal court, the state court filing date is the relevant benchmark for purposes of the First-to-File Rule. *See 800-Flowers, Inc.*, 860 F. Supp. at 131.

discretionary motion to transfer under 28 U.S.C. Section 1404(a). *Nat'l Patent Dev. Corp. v. Am. Hosp. Supply Corp.*, 616 F. Supp. 114, 118-119 (S.D.N.Y. 1984).  Among them are (1) convenience of the parties; (2) convenience of their witnesses; (3) whether nonparty witnesses are subject to the subpoena power of the court; (4) availability of documentary evidence; (5) relative burdens of expenses on the parties; and (6) degree of interruption with executives' functions insofar as their trial testimony is required or desirable. *Id.* at 119.  These factors, however, are neither rigid nor exclusive, since section 1404(a) analyses also require examination into the "interests of justice," a term "broad enough to cover the particular circumstances of each case." *Schneider v. Sears*, 265 F. Supp. 257, 263 (S.D.N.Y. 1967).  *See also Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (Section 1404(a) determinations are made on an "individualized, case-by-case consideration of fairness and convenience").

As shown below, the factors certainly do not dictate that the Oliphant-Greystone dispute be litigated here in the second-filed forum.  They either favor a California forum or are neutral as between California and New York.

### (1)    Convenience of parties

Oliphant and his companies are located in California (or Oklahoma).  Oliphant has never lived or worked in New York. Oliphant Decl., ¶2. There is no evidence that he does business here on a regular or systematic basis.  Greystone CDE is a Delaware LLC whose the members are two Virginia corporations, but whose bridge loan underwriter is in Florida (*Notice of Removal,* ¶10).  This factor certainly does not favor litigating in the second-filed forum; it favors litigating it in the Northern District of California where Oliphant and co-Defendant Rant LLC are located.

### (2)    Convenience of witnesses

In their California change venue motion, Greystone identified nine potential trial witnesses and claimed, in a conclusory fashion, that they have "personal knowledge of material events relating to the execution, and Plaintiffs' default, of the Bridge Loan documents. . . ." *See*

Defendants' MPA[10] 10:28-11:1. This generalized statement is unhelpful in determining the importance of these witnesses and the materiality of their testimony. Regardless of that, eight of the nine witnesses identified by Defendants are not located in New York; they are spread throughout the Midwest, the south and the east coast: Virginia, Wisconsin, Florida, Maryland, Arkansas and Illinois. *See* Declaration of Matthew James[11] ("James Decl."); Defendants' MPA 10:3-11:7. Only *one* witness identified by Defendants (Matt James) works in New York (but does not live there).

The Oliphant Parties have identified a number of material witnesses, none of whom are located in New York, including HUD personnel (Oklahoma), banking and real estate personnel (Oklahoma), the seller of the 224-unit apartment building (Oklahoma), the investment bank's bond counsel (Washington, D.C.), Plaintiffs' co-developer David Henry and his COO (Arkansas), Greystone's architectural review firm (Missouri), and Greystone's outside counsel who participated in negotiations and transmitted the bridge loan documents (Pennsylvania). *See* Draper Decl. ¶10. These non-party out-of-state witnesses cannot be compelled to attend trial in either state; the parties likely will take their depositions in their respective home states, which they would have to do regardless of whether the forum is in California or New York.

### (3)    Non-parties subject to subpoena power

This factor is neutral. Neither California nor New York has the ability to serve process on out-of-state witnesses who are not party-affiliated. Discovery from such witnesses will likely require issuing deposition and document subpoenas from district courts in the various districts in which such witnesses are located (e.g., Oklahoma, Arkansas, etc.).

---

[10]    References to the "Defendants' MPA" refer to Greystone's Memorandum of Points and Authorities submitted in connection with their motion to transfer venue in the California Action.

[11]    References to the James Decl. refer to the Declaration of Matthew James dated November 6, 2007 which was submitted in connection with Greystone's motion to change venue and is respectfully annexed to the Bloom Decl. as a portion of Exhibit "C".

### (4)    Availability of documentary evidence

The contracts at issue were neither negotiated nor executed in New York. Ol-iphant's Engagement Agreement with Greystone Servicing was executed in California. The bridge loan documents were executed in Oklahoma. All of the agreements were negotiated cross-country by telephone and email—from various locations in California, Oklahoma, Florida, Vir-ginia, Wisconsin and Pennsylvania (as well as New York).

Proof in this case will be principally by witness testimony and documentary evi-dence. Most of the relevant documents are located in Oklahoma and Florida, but others are lo-cated in Washington, D.C and Springfield, Missouri. *See* Oliphant Decl. ¶¶ 5 (Oklahoma), 10 (Missouri), 14 (Washington, DC), 15 (Oklahoma), 17 (Pennsylvania), 20 (Arkansas), 21 (Okla-homa), 27 (Oklahoma), 30 (Arkansas), 31 (Pennsylvania), 35 (Oklahoma and Michigan), 36 (Florida, Virginia and Wisconsin); Draper Decl. ¶ 10. Even Greystone's own evidence indicates that the evidence relevant to this case in located in six states other than New York (*see* James Decl. ¶ 10), and Greystone has never identified what volume or portion of those documents are located in New York. Thus, considerable documents will have to be transported regardless of whether the case is litigated in California or in New York. This factor does not dictate allowing this matter to be litigated in New York.

### (5)    Expenses to the parties

New York is a significantly more expensive venue in which to litigate than San Francisco. Although hotels, restaurants and court reporters are more expensive in New York, the primary factor driving the cost disparity is the hourly billing rate of the attorneys. The rates charged by attorneys in New York are substantially higher than those charged by attorneys in San Francisco. *See* Bloom Decl. Exh. G (Declaration of Donald N. David in Opposition to De-fendants' Motion to Transfer Case to Southern District of New York, dated November 30, 2007). This factor strongly favors stay of this litigation pending resolution of the parties' disputes in the Northern District of California.

### (6)    Degree of interruption

In the context of this case, this factor is subsumed in the convenience of parties/convenience of witnesses discussions above.

### (7)    Other factors

The guaranties sued upon in the present action are only a small piece of the litigation between the Oliphant Parties and the Greystone entities.  The California Action involves the entire course of conduct of Greystone Servicing in the handling of the HUD application process and includes causes of action for negligence, breach of fiduciary duty, and interference with prospective business advantage—none of which would be directly litigated in this action.  (Indeed, Greystone Serving is not even a party here.)  While the guaranty issues Greystone CDE raises would be part of the California Action, the converse is not true—the Oliphant tort and breach of contract claims are not part of this case.

The Oliphant Parties anticipate Greystone CDE will argue that the forum selection clause in the guaranties mandates venue in this district.  Most certainly such a clause has no bearing on the bulk of the tort and breach of contract claims being made by the Oliphant Parties.  But Greystone CDE's argument is incorrect even as to its action on the guaranties.

Before determining the effect a forum selection clause will have on a transfer motion analysis, the court must first determine whether the particular clause is mandatory or permissive. *Phillips v. Audio Active, Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007).  As the Second Circuit has recognized, forum selection clauses serve two distinct purposes. *Id.* at 385.  A permissive forum clause only confers jurisdiction in the designated forum, assuring plaintiff at least one guaranteed forum. *Id.*  On the other hand, a mandatory forum clause establishes an obligatory forum where disputes must be litigated. *Id. Cf. The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972) (such clauses are presumptively valid unless a sufficiently strong showing that "enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching").

The venue provision of the guaranties sued on by Greystone CDE states, "Lender *may* bring suit, action or other legal proceedings arising out of this guaranty in the courts of the State of New York or the courts of the United States located in New York" (emphasis added). Thus, the clause relied on here is clearly a permissive one, and there is no preference for enforcement. *Cf. John Botari & Sons, Wines & Spirits, S.A. v. Attiki Imps. & Distribs., Inc.*, 22 F.3d 51, 52-53 (2d Cir. 1994) (clause reading "[a]ny dispute arising between the parties hereunder shall come within the jurisdiction of the competent Greek Courts" deemed permissive, not mandatory). Although a district court undertaking a section 1404(a) analysis may take into account a permissive forum selection clause, it should be no more important a factor than Greystone CDE's choice to sue in this district rather than sue in any other permissible forum.

In sum, Greystone CDE can point to no compelling circumstances or special considerations that would dictate a departure from the First-to-File Rule, and the Court should therefore stay this second-filed action until the California Action is fully resolved.

## POINT III

### THIS MOTION TOLLS THE TIME FOR
### THE OLIPHANT PARTIES TO RESPOND TO THE COMPLAINT

Historically, motions to stay have been recognized as tolling the time for responding to a complaint because pre-answer consideration of such motions maximize the effective utilization of judicial resources. *Intravascular Research Ltd. v. Endosonics Corp.*, 994 F. Supp. 564 (D. Del. 1998), *citing Questech Capital Corp. v. Flight Dynamics, Inc.*, 1984 WL 327 (S.D.N.Y. 1984); *In re: Barneys*, 206 B.R. 336 (Bankr. S.D.N.Y. 1997) (finding that a motion to stay litigation is a pre-answer motion within the scope of Rule 12(b)).

In *Questech Capital Corp.*, the defendant moved to transfer or, in the alternative, to stay the New York proceeding pending completion of a related action being litigated in Oregon district court. Plaintiff cross-moved for a default judgment under Federal Rule of Civil Pro-

cedure 55, citing the defendant's failure to answer or move with respect to the complaint. The Court flatly rejected the attempt to have default entered, stating "[i]t is clear, however, that [the defendant's] motion to stay all proceedings until final determination of the action pending between the parties in the Circuit Court for the State of Oregon, tolled its time to answer or otherwise move with respect to the complaint." *Id.* at *4, *citing Parker v. Transcontinental & Western Air, Inc.*, 4 F.R.D. 325, 326 (W.D. Mo. 1944) (denying plaintiff's motion for default judgment, expressly stating that it was only after decision on the defendant's motion to stay proceedings that 'it then became the duty of the defendant to file motions or other proceedings in the case'); 2A J. Moore & J. Lucas, Moore's Federal Practice ¶12.05 at 2240 n.1 (2d ed. 1948 & Supp. 1983). The court further stated that "[a] motion to stay proceedings has been characterized as a pre-answer motion which, because it involves matters of judicial administration, is within the inherent powers of the court incident to the court's authority to regulate actions pending before it." 5 C. Wright & A. Miller, Federal Practice & Procedure, § 1360 at 633-34 (1969 & Supp. 1984).

*(remainder of page intentionally blank)*

## CONCLUSION

The Oliphant Parties' primary request here is modest:  stay further proceedings here until the Northern District of California rules on Greystone's change venue motion, which most likely will occur one month from the date of these moving papers.  As shown above, however, strong grounds also exist to enter an order now staying this action until the California Action is fully resolved, which is the alternative relief sought in this motion.

Dated: New York, New York
      January 7, 2008

                    **AKERMAN SENTERFITT LLP**

                    By:_____

                          Donald N. David (DD 5222)
                          Brian A. Bloom  (BB 5722)
                          Jeremy A. Shure (JS 0490)

                    335 Madison Avenue, Suite 2600
                    New York, New York 10017
                    Telephone:  (212) 880-3800
                    Facsimile:  (212) 880-8965

                    *Attorneys for Defendants Sante Fe Pointe, et al.*

ADDENDUM CONTAINING UNREPORTED
DECISION CITED IN MEMORANDUM OF LAW

Westlaw.

Not Reported in F.Supp.                                                          Page 1

Not Reported in F.Supp., 1984 WL 327 (S.D.N.Y.)

(Cite as: 1984 WL 327 (S.D.N.Y.))

C
Only the Westlaw citation is currently available.

United States District Court; S.D. New York.
QUESTECH CAPITAL CORPORATION, Plaintiff,
v.
FLIGHT DYNAMICS, INC., Defendant.
No. 83 Civ. 6986 (GLG).

May 7, 1984.
SHEA & GOULD 330 Madison Avenue New
York, New York 10017, for plaintiff; By: Joseph
Ferraro, Esq. Kenneth S. Grossman, Esq. of counsel.

WINTHROP,    STIMSON,    PUTNAM    &
ROBERTS 40 Wall Street New York, New York
10005 By: William W. Karatz, Esq. Julie D. Fay,
Esq. of counsel.

ACKER,   UNDERWOOD   &   SMITH   1200
Orbanco Building 1001 SW Fifth Avenue Portland,
Oregon 97204, for defendant; By: Timothy N.
Brittle, Esq. of counsel.

OPINION

GOETTEL, District Judge:

*1 Defendant Flight Dynamics, Inc. ('Flight
Dynamics') moves to transfer this action to the
United States District Court for the District of
Oregon pursuant to 28 U.S.C. § 1404(a) (1982).
[FN1] Plaintiff Questech Capital Corporation
('Questech') opposes this motion on the ground that
the convenience of the parties and witnesses and the
interest of justice will not be furthered by the
transfer.

Questech is a Delaware corporation with its
principal place of business in New York. It is in the
business of, among other things, lending money to
worthy, start-up or development stage companies

that are unable to obtain funding from other
sources. Flight Dynamics is a small research and
development firm incorporated in Oregon with its
principal place of business in that state.

By an agreement dated April 8, 1981 (the 'Loan
Agreement'), Questech agreed to lend $500,000 to
Flight Dynamics. Flight Dynamics in turn issued a
promissory note (the 'Note') to Questech, whereby
Flight Dynamics agreed to repay the principal
within five years and to make quarterly interest
payments on the unpaid principal amount at the rate
of 15% per year. The Loan Agreement provided
that, in the event of default, the holder of the Note
could declare the entire unpaid principal and
accrued interest to be due. The Loan Agreement
further provided that the holder of the Note could
exercise the right to convert the principal amount of
the Note into common stock of Flight Dynamics.

Questech alleges that, in the early part of 1982, it
became aware that Flight Dynamics was in violation
of certain covenants of the Loan Agreement, which
constituted default. When brought to its attention,
Flight Dynamics denied the existence of the
violations, although the parties entered into
negotiations at that time in an attempt to effect a
waiver or compromise of the alleged violations.

On March 29, 1982, Questech advised Flight
Dynamics that a default occurred and was
continuing and, therefore, Questech was declaring
the principal and interest on the Note due and
payable. In April 1982, Flight Dynamics
commenced an action in the Oregon state court
seeking a declaratory judgment that there was no
default and that Questech was not entitled to
acceleration of the loan. Questech answered and
asserted a counterclaim for breach of the Loan
Agreement seeking judgment for the amount of the
Note and interest.

In early fall of 1982, the parties met in New York

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.                                                                    Page 2

Not Reported in F.Supp., 1984 WL 327 (S.D.N.Y.)

**(Cite as: 1984 WL 327 (S.D.N.Y.))**

to discuss the Oregon action and the parties' relationship. Shortly thereafter, on October 25, 1982, Flight Dynamics delivered to Questech a cashier's check in the amount of $516,208.3o representing the full payment of the principal and interest then due and owing under the Note.

Sometime later, Questech asserted a demand to exercise its right to convert the Note into common stock of Flight Dynamics. Flight Dynamics refused and subsequently amended its complaint in the Oregon action seeking a judgment declaring that Questech could not compel the issuance of the stock. Questech amended its counterclaim arguing that Flight Dynamics had engaged in a deliberate course of conduct designed to mislead Questech as to Flight Dynamics' financial status, and thus causing Questech to forbear from exercising its right to convert the Note into stock. In support of this claim, Questech alleged it was not informed, as it should have been, about certain negotiations between Flight Dynamics and Pacific Telecom, Inc. ('Pacific Telecom'), a majority shareholder in Flight Dynamics, and Arthur Young & Company ('Arthur Young'), the outside accountant of Flight Dynamics. Questech sought a judgment declaring that it was entitled to receive stock pursuant to the Loan Agreement, and ordering Flight Dynamics to convert the principal amount of the Note into stock at the conversion rate specified in the Loan Agreement.

*2 On November 4, 1983, ten days prior to commencement of trial on the Oregon action, Questech withdrew its counterclaims and decided not to go to trial on any issue. On January 27, 1984, the Oregon court entered a default judgment against Questech, and held that Flight Dynamics' tender of a check to Questech was a conditional payment of Flight Dynamics' debt under the Loan Agreement. The court further held that Flight Dynamics was under no affirmative duty to perform and additional acts unless its check was dishonored. Flight Dynamics, Inc. v. Questech Capital Corp., No. A 8204-02006, slip op. at 3 (Cir. Ct. St. of Or., Cty of Multnomah Jan. 27, 1984).

Questech commenced the present action in October

1983, after the Oregon action had been pending for eighteen months. Questech's first claim is for breach of the Loan Agreement and its second claim is for violations of section 10(b) of the Securities Exchange Act of 1934, Rule 10b-5 promulgated thereunder, and section 352-c of the New York General Business Law, as well as common law fraud. Facts that were at issue in the Oregon action are alleged as the basis for these claims. In particular, Questech alleges that Flight Dynamics made misrepresentations about its financial condition and prospects, and that Questech was not informed, as it should have been, about alleged discussions with Pacific Telecom and an alleged audit report prepared by Arthur Young.

Presently before the Court is Flight Dynamics' motion to transfer this action to the District Court of Oregon. Section 1404(a) of title 28 of the United States Code provides that, 'for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.' [FN2]

The disposition of a motion to transfer based on the above is committed to the sound discretion of the trial court. Leif Hoegh & Co. v. Alpha Motor Ways, Inc., 534 F. Supp. 624, 626 (S.D.N.Y. 1982). In exercising this discretion, courts have enumerated the approximately half dozen interrelated criteria that are considered. These criteria include:
> (1) the convenience to parties; (2) the convenience of witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems indicating where the case can be tried more expeditiously and inexpensively; and (7) the interests of justice, a term broad enough to cover the particular circumstances of each case, which in sum indicate that the administration of justice will be advanced by a transfer.

Schneider v. Sears, 265 F. Supp. 257, 263 (S.D.N.Y. 1967).

While the criteria afford some guidance, no

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.                                                                          Page 3

Not Reported in F.Supp., 1984 WL 327 (S.D.N.Y.)

**(Cite as: 1984 WL 327 (S.D.N.Y.))**

magical formula exists for deciding these motions. Instead, 'the court must consider all the circumstances surrounding the individual case to determine where the trial [should] proceed . . .' Contractors Supply Corp. v. Kelly Klosure, Inc., No. 80- 4327, slip op. at 8 (S.D.N.Y. Feb. 20, 1981). Upon balancing the convenience and equities of the two district courts--New York and Oregon--as between the parties, the Court has determined that the action should be transferred to the District Court of Oregon.

**\*3** The central issues in this case are whether Flight Dynamics breached the Loan Agreement and, subsequently, fraudulently induced Questech to forbear from exercising its right under the Loan Agreement to convert the principal amount of the Note into common stock of Flight Dynamics.

With the exception of three of Questech's officers in New York, it appears that all persons familiar with the subject matter of this action, who are potential witnesses, reside in Oregon. [FN3] Clearly, it would be more convenient for the four Flight Dynamics employees who dealt with Questech, and reside in Oregon, to have this action transferred. Of course, this factor taken alone would only balance the equities between the two district courts and thus be insufficient to support transferral. The importance of non-party witnesses in this action, however, strongly supports the conclusion that the action should be transferred to Oregon.

Questech's claims are for fraud and misrepresentation. The importance of live testimony in a case involving fraud is obvious. 'Since deposition testimony in a fraud case where credibility is crucial is not wholly satisfactory, transfer is warranted.' Helfant v. Louisiana & Southern Life Insurance Co., 82 F.R.D. 53, 58 (E.D.N.Y. 1979). The non-party witnesses whose testimony would be of critical importance and all of whom are residents of Oregon, are Mr. Schembs, former president of Flight Dynamics and the only Flight Dynamics representative specifically named by Questech as having made the allegedly false and misleading statements, and representatives of Pacific Telecom and the Portland, Oregon, office of

Arthur Young.

None of these non-party witnesses could be compelled to appear in New York, [FN4] but each of them could be compelled to appear by order of the Oregon District Court. Where the burden of testifying in New York, as opposed to Oregon, both as regards time and expense, would be so great for the non-party witnesses, transfer is warranted to ensure they can be compelled to appear. Commercial Solvents Corp. v. Liberty Mutual Insurance Co., 371 F. Supp. 247, 250 (S.D.N.Y. 1974) ('Courts generally transfer cases when important witnesses cannot be compelled to testify in the forum, but could be subpoenaed in the transferee court.').

An additional consideration is the fact that there has been a final determination in the Oregon action, arising out of the same events alleged here, that binds the parties on the causes of action and issues decided by the state court. The res judicata effect of the Oregon court's judgment will be determined by reference to Oregon law. [FN5] See 28 U.S.C. § 1738 (1982) ( 'The . . . judicial proceedings of any court of any such State . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State.'). Interpretation of a state's law is best left to the federal district court of that state, which is most familiar with it. Troyer v. Karcagi, 488 F. Supp. 1200, 1207 (S.D.N.Y. 1980); Kreisner v. Hilton Hotel Corp., 468 F. Supp. 176, 179 (E.D.N.Y. 1979).

**\*4** Another factor that weighs in favor of transfer is that both parties have been represented in Oregon for nineteen months by counsel who were scheduled to commence trial on November 14, 1983. [FN6] Oregon counsels' familiarity with the events at issue would substantially reduce the expense of litigation. See Hall v. Kittay, 396 F. Supp. 261, 264 (D. Del. 1975).

In summary, to the extent that virtually all non-party witnesses reside in Oregon, and that a prior action involving essentially the same issues, was decided in

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.                                                    Page 4

Not Reported in F.Supp., 1984 WL 327 (S.D.N.Y.)

**(Cite as: 1984 WL 327 (S.D.N.Y.))**

that state, the District Court of Oregon is the logical forum to preside over this action.

Under these circumstances, although the convenience of the parties is evenly balanced, the convenience of the witnesses and other interests of justice are overwhelmingly served by the transfer of this action. The action is, therefore, transferred to the United States District Court for the District of Oregon.

SO ORDERED.

> FN1 Flight Dynamics had made a motion to transfer or, in the alternative, to stay this proceeding pending completion of a related Oregon action, as discussed below. The Court, at the time, decided to reserve decision until the Oregon action was completed. Now that final judgment has been entered in that action, the Court will now rule on the motion to transfer.
> At the same time as Flight Dynamics' motion, Questech cross-moved for a default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure. Questech alleged as the basis for its motion the 'defendant's failure to answer or move with respect to the complaint.' It is clear, however, that Flight Dynamics' motion to stay all proceedings until final determination of the action pending between the parties in the Circuit Court for the State of Oregon, tolled its time to answer or otherwise move with respect to the complaint. Cf. Parker v. Transcontinental & Western Air, Inc., 4 F.R.D. 325, 326 (W.D. Mo. 1944) (the court denied the plaintiff's motion for default judgment, expressly stating that it was only after decision on the defendant's motion to stay the proceedings that 'it then became the duty of the defendant to file motions or other proceedings in the case'); 2A J. Moore & J. Lucas, Moore's Federal Practice ¶12.05 at 2240 n.1 (2d ed. 1948 & Supp. 1983). A motion to stay proceedings has been characterized as a

pre-answer motion which, because it involves matters of judicial administration, is within the inherent powers of the court incident to the court's authority to regulate actions pending before it. 5 C. Wright & A. Miller, Federal Practice & Procedure, § 1360 at 633-34 (1969 & Supp. 1984).
> As the Court withheld judgment on the stay of this action, Flight Dynamics was under no affirmative duty to file further motions or proceedings.

> FN2 As a threshold matter, there can be no dispute that this action might have been brought in Oregon, where Flight Dynamics is incorporated and transacts business.

> FN3 Questech can obviously make any of its officers available for testimony in Oregon if necessary, and, in this regard, it should be noted that only Mr. Brian, the president of Questech, is mentioned in Questech's complaint as a representative of Questech to whom misrepresentations were made.

> FN4 Questech suggests, however, that Pacific Telecom and Arthur Young have an interest in testifying on Flight Dynamics' behalf, and that Schembs's live testimony would be unnecessary. This argument ignores that, in the first instance, the convenience of these witnesses would be best served in Oregon. Furthermore, Questech's argument that the testimony of Schembs may not be necessary is curious at best. Questech cannot seriously be suggesting that the testimony of others, or documentary evidence, would render unnecessary the testimony of the only individual alleged to have made misrepresentations.

> FN5 The affidavit of Questech's president, Mr. Brian, briefly addresses the point, raised nowhere else in Questech's papers, that the Loan Agreement provided that New York state law would govern any

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.                                                                      Page 5

Not Reported in F.Supp., 1984 WL 327 (S.D.N.Y.)

**(Cite as: 1984 WL 327 (S.D.N.Y.))**

dispute arising under the Loan Agreement. Questech, however, does not contest transferral on this basis.

FN6 Questech withdrew its counterclaims and thus decided not to try the case only ten days before the Oregon trial was scheduled to commence. Judge Dooley stated:

You [Questech's counsel] are not the guy who decided to file a last-minute complaint in the Southern District of New York. You had this matter prepared, at least insofar as the pleadings and pretrial matters are concerned, you had it prepared to try right here. Someone in the main office on madison Avenue or Wall Street or somewhere apparently decided that they would either have a more favorable or perhaps more profitable-to-them forum on the east coast.

Defendant's Reply Memorandum in Support of the Motion to Transfer, Exhibit A, Transcript of the Proceedings in the Circuit Court of the State of Oregon for the County of Multnomah at 22.

Not Reported in F.Supp., 1984 WL 327 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.