Harnik Wilker & Finkelstein LLP
Attorneys for Plaintiff
Greystone CDE, LLC
Olympic Tower
645 Fifth Avenue, 7th Floor
New York, NY 10022-5937
Tel. No. (212) 599-7575
Facsimile (212) 867-8120
Email: stephen@harnik.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

Greystone CDE, LLC,                          Docket No. 07 civ. 8377 (RPP)

                              Plaintiff,

             - against -
Sante Fe Pointe, L.P.,
Sante Fe Pointe Management, LLC,
Rant LLC, and
Theotis F. Oliphant,

                              Defendants.

---------------------------------------------------------------X

# PLAINTIFF'S MEMORANDUM OF LAW
# IN OPPOSITION TO DEFENDANTS'
# MOTION FOR A STAY; AND IN SUPPORT OF
# CROSS-MOTION FOR ENTRY OF DEFAULT JUDGMENT;
# IN THE ALTERNATIVE, TO STRIKE DEFENDANTS'
# PERSONAL JURISDICTION DEFENSE

January 22, 2008

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...........................................................................................i

INTRODUCTION.......................................................................................................1

COUNTERSTATEMENT OF PROCEDURAL FACTS.........................................2

ARGUMENT..............................................................................................................3

POINT I
THERE IS ABSOLUTELY NO BASIS FOR A STAY.............................................3

A.    Even if Greystone's California transfer motion is denied,
      there is no basis for transfer of this case to California................................4

      i) Defendants have given the court a misleading
         reading of the pertinent contractual  language.....................................4

      ii)Defendants misunderstand the "First-to-File Rule"...............................7

            1. Special Circumstances, Such as Defendants' Forum
      Shopping, Justify Giving Priority to This Action.......................................8

            a) One Day Separates the Two Actions.........................................8
            b) Defendants' Forum Shopping in California
               Should Not Be Rewarded........................................................9
            c) Both Cases Remain in the Pleading Stages...............................11

            2. The Balance of Conveniences also Favors Forum in the
      Southern District of New York...................................................................11

            a) Convenience of the Parties.....................................................13
            b) Convenience of the Witnesses................................................13
            c) Costs of Litigation.................................................................14
            d) Forum Selection Clauses........................................................14

B.    There is no basis to stay this action in an anticipation
      of the California transfer motion being granted........................................16

POINT II
DEFENDANTS HAVE WAIVED ANY OBJECTION TO
PERSONAL JURISDICTION...................................................................................18

POINT III
SINCE THE MOTION TO STAY IS ENTIRELY DEVOID OF MERIT, AND
BECAUSE THEY HAVE  DISOBEYED THE COURT'S DISCOVERY ORDER
WITHOUT EXCUSE, DEFENDANTS SHOULD BE HELD IN
DEFAULT.................................................................................................................19

CONCLUSION.........................................................................................................21

# TABLE OF AUTHORITIES

**Cases**          **Page**

*AGR Financial, L.L.C. v. Ready Staffing, Inc.* 99 F.Supp.2d 399 (S.D.N.Y.,2000)........... 6

*Altman v. Liberty Equities Corp.* 322 F.Supp. 377, 379 (S.D.N.Y. 1971) ............... ......19

*American Booksellers Ass'n v. Houghton Mifflin Co.*, No. 94 Civ. 8566(JFK), 1995 WL 72376, at *1 (S.D.N.Y. Feb. 22, 1995)…………………………………………..………20

*Anciero Concrete Co., Inc. v. NY City Cons. Authority*, 308 F. Supp. 2d 164, 198 fn24 (SDNY 2003) ............................................................................................ 5

*Anti-Monopoly, Inc. v. Hasbro, Inc.*, No. 94 Civ. 2120(LMM) (AJP), 1996 WL 101277, at *2 (S.D.N.Y. March 7, 1996)………………………………………………………..20

*Boardman Petroleum Inc. v. Federated Mut. Ins. Co.* 135 F. 3d 750, 752 (11 Cir. 1998)………………………….…………....…………............................................15

*Berisford Capital Corp. v. S.E. & S.W. Areas Pension Fund*, 677 F. Supp. 220, 223 (S.D.N.Y. 1988)…………………….…………….……………...…………………11, 13

*Capitol Records, Inc. v. Optical Recording Corp.*, 810 F. Supp. 1350, 1355 (S.D.N.Y. 1992)…………………….……………………………………………...…8, 10

*Citibank, N.A. v. Plapinger*, 66 N.Y.2d 90, 94-95, 495 N.Y.S.2d 309, 311-312, 485 N.E.2d 974 (1985)......................................................................................... 16

*Chrysler Capital Corp. v. Century Power Corp.*, 137 F.R.D. 209, 209-10 (S.D.N.Y.1991)……………………….………………………………………....……21

*Clanton v. Vagianelis*, 187 A.D.2d 45, 47 48, 592 N.Y.S.2d 139, 140 (3d Dep't 1993)...16

*Columbia Pictures Indus., Inc. v. Schneider* 435 F. Supp. 742 (S.D.N.Y. 1977) *aff'd* 573 F.2d 1288 (2d Cir. 1978)................................................ 9, 11, 16, 21

*Corson & Gruman Co. v. NLRB*, 899 F.2d 47, 50 (D.C. Cir. 1990)……………………11

*Dichiara v. Ample Faith Investments Ltd.* 2006 WL 3431197, (S.D.N.Y., 2006) .......... 17

*Direct Mail Prod. Serv. Ltd. v. MBNA Corp.*, No. 99 Civ. 10550(SHS), 2000 WL 1277597, at *6 (S.D.N.Y. Sept. 7, 2000) ..................................................... 17

*Flores v. Southern Peru Copper Corp.*, 00 Civ. 9812(CSH), 2001 WL 396422, at *2 (S.D.N.Y. Apr. 19, 2001)…………………………………...………………………20

*Gateway Companies, Inc. v. Vitech America, Inc.* 33 Fed.Appx. 578, 580 (2d Cir. 2002)................................................................ 6, 16, 21

*Hilti AG v. Milwaukee Elec. Tool Corp.* 2004 U.S. Dist. LEXIS 16373
at *6-7 (E.D.N.Y. July 22, 2004)..............................................................18

*Hoffman v. Blaski* 363 U.S. 335, 344 (1960) .................................................. 18

*In re Chase Manhattan Corp. Sec. Litig.*, No. 90 Civ. 6092(LMM), 1991 WL 79432,
at *1 (S.D.N.Y. May 7, 1991)...................................................................21

*In re Currency Conversion Fee Antitrust Litigation*, No. MDL 1409, M21-95,
2002 WL 88278, at *1 (S.D.N.Y. Jan. 22, 2002).............................................20

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1950) ................ 7, 15

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509,
514 (9th Cir. 1988)............................................................................ 14

*Meehan v. Snow,* 652 F.2d 274, 277 (2d Cir.1981)..............................................2

*Muller v. Walt Disney Prods.*, 822 F. Supp. 1033, 1039 (S.D.N.Y. 1993)........................ 9

*Nat'l Patent Dev. Corp. v. Am. Hosp. Supply Corp.*, 616 F. Supp. 114
(S.D.N.Y. 1984) ............................................................................ 8, 11

*Phillips v. Audio Active, Ltd.*, 494 F.3d 378, 385 (2d Cir. 2007)............................14

*Ramada Franchise Systems, Inc. v. Cusack Development, Inc.* 1997 WL 304885,
(S.D.N.Y.,1997) ............................................................................... 6

*Recoton Corp. v. Allsop, Inc.*, 999 F. Supp. 574, 576 (S.D.N.Y. 1998) ........................ 8, 9

*Riviera Trading Corp. v. Oakley, Inc.*, 944 F. Supp. 1150,
1158 (S.D.N.Y. 1996) ....................................................................... 8, 9

*Roby v. Corp. of Lloyd's*. 996 F.2d 1353, 1359, 1361 (2d Cir. 1993).............................. 14

*RTC v. Ruggiero* 994 F. 2d 1221, 1227 (7th Cir. 1993)........................................20

*Silver v. Countrywide Realty, Inc.,* 39 F.R.D. 596, 599, (S.D.N.Y., 1966) ...................... 18

*Stone v. Schulz*, 231 A.D.2d 707, 707-08, 647 N.Y.S.2d 822,
823 (2d Dep't 1996) ........................................................................16

*Transunion Corp. v. Pepsico, Inc.*, 811 F.2d 127, 130 (2d Cir.1987)............................20

*U.S. v. Pacelli*, 491 F.2d 1108, 1119 (2d Cir. 1974)...........................................6

*William Gluckin & Co. v. Int'l Playtex Corp.*, 407 F.2d 177,
178 (2d Cir. 1969)..................................................................................................... 7

*Wolters Kluwer Financial Services Inc. v. Scivantage, Adnane Charchour,*
--- F.Supp.2d ----, 2007 WL 4233020 *1 (S.D.N.Y.,2007)...............................…....5

*Woodward & Dickerson, a Div. of ConAgra,* Inc**. v.** *Kahn*
767F. Supp. 530, 533 (S.D.N.Y.,1991)......................................................................... 16

## Other Authorities

28 USC §1404(a) ..................................................................................................... 18

Fed. R. Civ. P. 12.......................................................................................... 1, 19, 20

Fed. R. Civ.P. 26(f) Advisory Committee's Note……..…………………………...……19

Fed. R. Civ.P. 30(b)(6)……………………………………………………………………...19

Fed. R. Civ.P. 31(a)(4) ……………………………………………………………………..19

Fed. R. Civ.P. 35……………………………………………………………….……………...19

Fed. R. Civ.P., 37(a) …………….…………………………..……………………....19

Fed. R. Civ. P. 55(b)(2) .............................................................................................. 2

**INTRODUCTION**

This Memorandum of Law is submitted on behalf of plaintiff Greystone CDE LLC, (hereinafter "plaintiff" or "Greystone") in opposition to defendants' Sante Fe Pointe L.P., Sante Fe Pointe Management, LLC, Rant LLC, and Theotis F. Oliphant (hereinafter "defendants") motion for a stay;  and in support of the cross motion for a default; in the alternative for an order pursuant to Fed. R. Civ. P. 12(h) striking defendants' purported reservation of their "right to challenge personal jurisdiction;" and for such other and further relief as the Court deems just and proper under the circumstances.

In a nutshell, the motion should be denied and the cross-motion granted because the motion is devoid of any justification for failing to timely answer the complaint; alternatively, and, in any event, defendants have waived personal jurisdiction a) by explicit written agreement, and b) by moving for a stay without formally objecting to the court's jurisdiction over their person.

In stark contrast to the position taken by them only a month ago in the California action, wherein they argued that they were being severely  prejudiced by the delay caused by Greystone's motion to transfer venue of that action to New York[1], defendants seem to have a newfound respect for "[b]asic principles of judicial economy." *Compare* defendants' Reply (Harnik Decl., ex. "B" at 2, *with* Defendants' Memorandum of Law in Support of Motion (hereinafter "Mot." at p. 9).  Defendants' belated and Janus-faced appeals to judicial economy do little to conceal their intent to hinder Greystone at every

---

[1] They also complained that a brief continuance of the Initial Case Management Conference in the California action until Greystone's transfer motion was decided would prejudice them, and they moved for accelerated discovery.

step in its efforts to collect on the Bridge Loan. Defendants now seek the Court's imprimatur for their dilatory tactics. For these reasons too, as more fully addressed below, the Court should deny defendants' motion to stay.

## COUNTERSTATEMENT OF PROCEDURAL FACTS

Defendants allege that the California action was filed on September 7, 2007. In fact, as detailed below, Greystone did not receive any notice of it until September 25, 2007 when it was served with the first amended complaint -- only one day before Greystone's filing of the present action.

In the instant case, Greystone sent via Federal Express a detailed, three-page letter entitled "Notice of Default" on August 21, 2007, advising defendants at length of the numerous events of default that had occurred under the Bridge Loan Agreement. (First Amended Complaint dd. October 5, 2007, [hereinafter "the Complaint"] Harnik Decl. ex. "A" ¶20, ex. I). In addition, Defendant Oliphant has acknowledged receipt of another letter on August 27, 2007 expressing Greystone's intention to pursue *all collection remedies*. [Oliphant Decl. ¶ 31. Harnik ex. "C"]

Although not particularly relevant to the instant motion, in regard to the New York action, it is not true that plaintiff moved for default "without notice[2];" to the contrary, that motion was made on notice dated November 5, 2007.

---

[2] At the outset of this action the issue was whether defendants' California counsel had "appeared" when on October 1, 2007, she demanded that the action be dismissed forthwith for lack of subject matter and personal jurisdiction. Apparently, this court believed that she had appeared, and therefore denied plaintiff's application for default (which did not need to be made on notice unless she had appeared – which appearance she had specifically denied) and, instead, caused plaintiff to move pursuant to Fed. R. Civ. P. 55(b)(2). *Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir.1981). ("[I]n order to insure defendant an opportunity to defend against plaintiff's application, a court usually will try to find that there has been an appearance by defendant, which has the effect of requiring that notice of the application for a default be given to him.")

It is also decidedly incorrect when defendants allege that other than what is set forth in their recitation of procedural facts, "[t]here has been no other activity in the Southern District." Defendants' counsel have omitted the following relevant procedural facts:

i)      On December 11, 2007 there was a Scheduling Conference -- of which they were indubitably aware – but which they elected not to attend;

ii)     By Order of said date, defendants were ordered to answer the Amended Complaint by 12/23/07;

iii)    On December 19, 2007. the court, by Endorsed Memo, permitted defendants until January 7, 2008 to respond to the complaint; a condition of that extension was that defendants agree to drop the pretense of their "special appearance," (a distinction which Rule 12 abolished) and that they agree not to contest the manner of service;

iv)     The Court's Scheduling Order of December 11, 2007, required Rule 26 compliance by 1/8/08; and

v)      Defendants' have defaulted with respect to their Rule 26 obligation.[3]

## ARGUMENT

### POINT I

### THERE IS ABSOLUTELY NO BASIS FOR A STAY.

Rather than answer Greystone's Complaint, defendants have filed a lengthy and non-responsive brief requesting a stay of this action. Although purporting not to waive personal jurisdiction, (which we address in Point II, below), defendants delve with unusual detail into the merits—not of this case, surprisingly, but in respect of a motion to

---

[3] *See* Point III. The Scheduling Order is annexed to the Harnik Decl. ex. "H".

transfer filed by Greystone in the California action[4] necessitating this comprehensive response. They do so because their motion to stay is based on nothing more than hopeful predictions as to (1) how California District Court Judge Spero will rule on Greystone's pending motion to transfer in the California action, and (2) how this Court *might* rule on a *hypothetical* motion to transfer that defendants suggest they *might* file *if* Greystone's motion is denied.

Summarized, defendants' motion posits: (i) that if the California transfer motion is denied, then the New York action becomes subject to transfer to California; alternatively, (ii) if Greystone's California transfer motion is granted, then the California action should be consolidated with the New York action. In either case, they contend that an answer in this action would be premature, and thus they have moved for a stay. However, both hypotheticals (i) and (ii) do not justify in any manner failing to timely answer the complaint, or for staying the New York action.

A.    Even if Greystone's California transfer motion is denied, there is no basis for transfer of this case to California.

    i)    Defendants have given the court a misleading reading of the pertinent contractual language.

---

[4] As they have done in their California action, defendants set forth several inaccurate, incomplete, and misleading factual statements in these papers. For example, they suggest that Greystone surprised them by presenting documents for a $500,000 full-recourse loan, as opposed to a $4 million non-recourse obligation, and that these documents were presented on a "take it or leave it" basis. *See* Mot.at pp.5-6. Defendants fail to mention that they specifically rejected Greystone's original proposal for up to $4 million in non-recourse financing because they were unwilling to contribute any of their own money toward the project. [Harnik Decl. ex. "D"]. Instead, on December 4, 2006— weeks before the execution of the final documents— Oliphant signed a proposal for a $500,000 full recourse obligation. [Harnik Decl. ex. "E"]. Defendants' brazen dissembling is even more disturbing in light of the fact that defendant Oliphant is an attorney— a former transactional partner with a large international law firm who holds himself out as possessing experience in a "sophisticated corporate and private equity practice." [Harnik Decl. ex. "F"]. Indeed, his own law firm has issued an opinion letter endorsing the enforceability of the Bridge Loan documents. [Harnik Decl. ex. "G"].

While Greystone will not address the balance of Defendants' inaccurate, incomplete, and misleading factual statements in these papers, because they are largely irrelevant, Greystone has set forth the complete factual background in the briefing of its pending motion to transfer in the California action.

Defendants' first argument is built upon their contention that the choice of forum provision set forth in the Loan Documents should not be enforced because it allegedly is "permissive." In support thereof, defendants state that "[t]he venue provision of the guaranties sued on by Greystone CDE states, 'Lender **may** bring suit, action or legal proceedings arising out of this guaranty in the courts of the United States located in New York.'" (Emphasis in original). That is disingenuous[5]; in fact, Section 3.08 of the "Guaranty and Suretyship Agreement" (Complaint, ex. "C") in its entirety provides the following:

> **Section 3.08 Jurisdiction; Etc.** *The Guarantor **irrevocably*** (a) agrees that the Lender may bring suit, action or legal proceedings arising out of this Guaranty in the courts of the United States located in New York; (b) ***consents*** <u>*to the jurisdiction of each such court in any such suit, action or proceeding;*</u> **(c)** ***waives*** <u>*any objection which the Guarantor may have to the laying of the venue of any such suit, action or proceeding in any of such courts;*</u> and (d) waives any right the Guarantor may have to a jury trial in connection with any such suit, action or proceeding. (Emphasis supplied).

Plaintiff in this action brought suit in the Southern District of New York in accordance with this provision. Whether or not it *may have* brought suit elsewhere does not alter the fact that <u>defendants irrevocably consented to the jurisdiction of this Court and waived any objections as to the venue.</u> *Ramada Franchise Systems, Inc. v. Cusack*

---

[5] Defendants should be aware that quoting out of context may constitute an ethical violation. *Anciero Concrete Co,, Inc. v. NY City Cons. Authority*, 308 F. Supp. 2d 164, 198 fn24 (SDNY 2003) ("When Aetna in its Main Post-Trial Brief at 36 purported to quote this testimony by Crevani, it reproduced only the first sentence of Crevani's answer, "It was at the time we settled," and omitted the detailed explanation which immediately followed. Aetna indicated by the use of an ellipsis that something had been left out, but this sort of selective and edited quotation sails a bit too close to ethical reefs."); *Wolters Kluwer Financial Services Inc. v. Scivantage, Adnane Charchour,*--- F.Supp.2d ----, 2007 WL 4233020 *1 (S.D.N.Y.,2007); *U.S . v. Pacelli*, 491 F.2d 1108, 1119 (2d Cir. 1974). ("Pacelli's contention that he was denied a fair trial by reason of disparaging remarks of the trial judge is not only frivolous but misleading, being based on remarks lifted out of context by his counsel on this appeal, a practice which departs from ethical standards expected of such counsel.")

*Development, Inc.* 1997 WL 304885, (S.D.N.Y.,1997) ("Although Ramada's choice of forum is not mandatory, once Ramada chooses New York as the forum to litigate a dispute, Cusack Development's consent is mandatory. The non-exclusivity of Ramada's choice of forum does not affect Cusack Development's unequivocal consent to jurisdiction and waiver of venue in New York."); *AGR Financial, L.L.C. v. Ready Staffing, Inc.* 99 F.Supp.2d 399 (S.D.N.Y.,2000)("In short, the fact that enforcement of the clause by AGR is discretionary does not detract from its mandatory nature and, hence, its enforceability.")

Thus, given a full -- rather than a patently misleading -- reading of the pertinent contractual language, there is no basis to transfer this case to California under any circumstances.

Defendants' motion is similarly objectionable when they mislead the court by implying that the "venue provision of the guaranties" are all the same. Defendants simply ignore the additional provisions agreed to in the Partner Guaranty, Pledge and Security Agreement (Complaint ex. "D") as well as the Developer Limited Guaranty Pledge and Security Agreement (ex. "E") wherein each Pledgor **irrevocably** and **unconditionally** agreed to

> (i)   SUBMIT ITSELF AND ITS PROPERY IN ANY LEGAL ACTION OR PROCEEDING RELATING TO THIS AGREEMENT <u>OR ANY OTHER DOCUMENT EXECUTED IN CONNECTION WITH THE TRANSACTION CONTEMPLATED BY THE LOAN AGREEMENT,</u> OR FOR RECOGNITION AND ENFORCEMENT OF ANY JUDGMENT IN RESPECT HEREOF OR THEREOF, TO THE NON-EXCLUSIVE GENERAL JURISIDICTION OF THE COURTS OF THE STATE OF NEW YORK, THE COURTS OF THE UNITED STATES OF AMERICA FOR THE STATE OF

NEW YORK, AND THE APPELLATE COURTS FROM
ANY THEREOF;

(ii) CONSENT THAT ANY SUCH ACTION OR
PROCEEDING MAY BE BROUGHT IN SUCH
COURTS, AND <u>WAIVES ANY OBJECTION THAT IT
MAY NOW OR HEREAFTER HAVE TO THE VENUE
OF ANY SUCH ACTION OR PROCEEDING IN ANY
SUCH COURT OR THAT SUCH ACTION OR
PROCEEDING WAS BROUGHT IN AN
INCONVENIENT COURT</u> AND AGREE NOT TO
PLEAD OR CLAIM THE SAME. (emphasis supplied)
[…]

ii)      <u>Defendants misunderstand the "First-to-File Rule"</u>

Defendants' further argue that if Greystone's change of venue motion is denied by

the California court, then the Oliphant parties "…would move to have this Court dismiss

this case without prejudice under the First to File Rule."  Defendants are mistaken in

believing that the first-to-file rule might entitle them to a stay.

When two actions involving substantially the same issues are pending in different

courts, the doctrine of federal comity, often referred to as the "first-to-file rule," generally

provides that "the first suit should have priority, absent the showing of *balance of

convenience* in favor of the second action, or unless there are *special circumstances*

which justify giving priority to the second." *William Gluckin & Co. v. Int'l Playtex

Corp.*, 407 F.2d 177, 178 (2d Cir. 1969) (emphasis added) (internal quotation and citation

omitted).  As the United States Supreme Court has observed of the problems inherent to

concurrent jurisdiction, "[w]ise judicial administration, giving regard to conservation of

judicial resources and comprehensive disposition of litigation, does not counsel rigid

mechanical solution of such problems." *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*,

342 U.S. 180, 183 (1950).  As explained below, the special circumstances of this case, as

well as the balance of conveniences favoring this forum, justify giving priority to this action by Greystone.

## 1.    Special Circumstances, Such as Defendants' Forum Shopping, Justify Giving Priority to This Action.

The first fallacy of defendants' argument is that they erroneously conflate the "balance of conveniences" analysis with the "special circumstances" exceptions to the first-to-file rule, relying on a case that dealt primarily with a section 1404(a) transfer request. *See* Mot. at 10-11 (citing *Nat'l Patent Dev. Corp. v. Am. Hosp. Supply Corp.*, 616 F. Supp. 114 (S.D.N.Y. 1984)). While the balance of conveniences presents one set of "special circumstances," other special circumstances which also support denial of defendants' motion, and which defendants fail to mention, "include judicial economy, the minimal difference in time between the filing of the two actions, and the lack of progress in either litigation," *Recoton Corp. v. Allsop, Inc.*, 999 F. Supp. 574, 576 (S.D.N.Y. 1998), as well as "[f]orum shopping by the plaintiff in the first-filed action." *Riviera Trading Corp. v. Oakley, Inc.*, 944 F. Supp. 1150, 1158 (S.D.N.Y. 1996). All of these special circumstances are applicable here, and favor the priority of Greystone's New York action over Defendants' California declaratory action.

a) **One Day Separates the Two Actions:** Although Defendants' action was filed first on September 7, 2007, Greystone did not receive any notice of it until September 25, 2007 when it was served with the first amended complaint -- only one day before Greystone's filing of the present action. In light of the relatively short time period between these filings, Plaintiffs' earlier filing date should be accorded little weight. *See Capitol Records, Inc. v. Optical Recording Corp.*, 810 F. Supp. 1350, 1355 (S.D.N.Y. 1992) (transferring first-filed action to district in which second-filed action was filed

8

*twenty days* later): *see also Colum. Pictures Indus. v. Schneider*, 435 F. Supp. 742, 747; *Riviera Trading Corp.*, 944 F. Supp. at 1159; *Recoton Corp.*, 999 F. Supp. at 577.

b) **Defendants' Forum Shopping in California Should Not Be Rewarded:** The facts demonstrate that defendants filed their declaratory action in their home district only when they were confronted with specific, concrete indications that a suit by Greystone was imminent, *i.e.*, circumstances of forum shopping that the courts of this district have routinely held to weigh against the mechanical application of the first-to-file rule. "Declaratory judgment actions filed in anticipation of a later-filed suit are frequently involved in races to the courthouse." *Muller v. Walt Disney Prods.*, 822 F. Supp. 1033, 1039 (S.D.N.Y. 1993) (internal quotation and citation omitted) (denying defendant's alternative motions to transfer or stay proceedings in second-filed New York action, because defendant's first-filed declaratory action in Pennsylvania suggested impermissible forum shopping, notwithstanding its inclusion of tort claims). As noted above, in the instant case, Greystone sent via Federal Express a detailed, three-page letter entitled "Notice of Default" on August 21, 2007, advising Defendants at length of the numerous events of default that had occurred under the Bridge Loan Agreement. (Complaint ¶20, Ex. ex. I ). In addition, Defendant Oliphant has acknowledged receipt of another letter on August 27, 2007 expressing Greystone's intention to pursue *all collection remedies*. (Oliphant Decl. ¶ 31. Harnik Decl. ex. "C") Defendants were well aware of the likelihood of litigation, and, having signed the numerous agreements which are attached to the Complaint all of which are governed by New York law and containing New York forum selection clauses, cannot deny that they anticipated that Greystone would commence action in New York. Aware from these specific and concrete

indications that suit was impending, defendants filed an anticipatory suit in their home district for declaratory relief.

"When a declaratory judgment action has been triggered by a notice letter, this equitable consideration may be a factor in the decision to allow the later filed action to proceed to judgment." *See Capital Records, Inc.*, 810 F. Supp. at 1354-55; *accord Riviera Trading Corp.*, 944 F. Supp. at 1158-59. This is precisely what occurred here. Once apprised of their default under the Bridge Loan by Greystone's notice letters, Plaintiffs scurried to the courthouse to file an action for declaratory relief in their home district to hinder Greystone's collection efforts. Amazingly, defendants did not notify Greystone of their action until serving their *first amended* complaint, concealing the pendency of their action during conversations in which they and their California counsel attempted to "negotiate" for forbearance by Greystone.[6]

c) **Both Cases Remain in the Pleading Stages:** Defendants make much of the fact that Greystone answered their complaint on October 25, 2007, before removing to the Northern District of California and moving to transfer that action to this district. *See* Mot. at p. 10. Unlike Defendants, Greystone is determined to take every action to see that these actions are resolved as quickly and efficiently as possible. If, by virtue of this, defendants mean to imply that there has been meaningful progress in the California action, they could not be more wrong. In that action, discovery has *not* commenced, the initial case management conference has *not* been held, and a scheduling order has *not* been entered. Indeed, based on the relatively short time between the filing of the two

---

[6] On September 18, 2007— still one week before Greystone was first notified of defendants' California action through service of their *first amended* complaint— Greystone sent via overnight delivery another detailed letter entitled "Notice of Acceleration," explaining its decision to accelerate and bring due the entire balance of the Bridge Loan. Complaint ex. "J".

actions, "no judicial inefficiency or duplication of efforts will result from requiring the parties to litigate their dispute" in this Court. *See Colum. Pictures Corp.*, 435 F. Supp. at 748 (issuing stay of first-filed declaratory action pending resolution of anti-trust plaintiff's second-filed action).

In sum, these special circumstances present the quintessential case for departure from the first-to-file rule.[7] Greystone respectfully asks that the Court give priority to this action, and deny defendants' motion for an "indefinite" stay.

### 2.    The Balance of Conveniences also Favors Forum in the Southern District of New York.

The special circumstances discussed above are sufficient on their own to warrant departure from the first-to-file rule. The balance of conveniences between alternative fora -- defendants' exclusive point of argument on their motion -- is applied when a motion to transfer raises questions of concurrent jurisdiction with another pending action, often in evaluating an alternative motion to stay the related case. In this context, courts have observed that the concomitant issues of the first-to-file rule and its exceptions based on special circumstances can be resolved largely on the same "balance of convenience" factors considered in deciding the motion to transfer. *See, e.g., Nat'l Patent Dev. Corp.*, 616 F. Supp. at 121.

---

[7] Defendants have been aware of Greystone's concerns about the anticipatory nature of defendants' declaratory action in California and its interplay with the first-to-file rule based on the parties' previous briefing of this precise issue in the California action, but have not disputed any of these points here. Evidently, their decision to avoid mention of the exception for forum shopping, which is clearly set forth in the cases cited in their motion, *see, e.g., Berisford Capital Corp. v. S.E. & S.W. Areas Pension Fund*, 677 F. Supp. 220, 223 (S.D.N.Y. 1988), was intended to "sandbag" Greystone on the instant motion. For that reason, any "reply" by defendants directed toward issues of forum-shopping or other "special circumstances" should be disregarded. *See Corson & Gruman Co. v. NLRB*, 899 F.2d 47, 50 (D.C. Cir. 1990) (requiring moving party to raise all arguments in its opening brief to prevent "sandbagging" of opposing party).

Insofar as no party has filed a motion to transfer before this court, and special circumstances already warrant departure from the first-to-file rule, it is unfortunate that defendants -- without responding to Greystone's Complaint, and purporting not to waive personal jurisdiction -- offer nothing more than mere conjecture as to how they believe Judge Spero should resolve Greystone's pending motion to transfer in the California action (or how they believe this Court *might* resolve a similar motion that they *might* file *if* Greystone's motion in the California action is denied). Greystone responds to defendants' misguided arguments as follows.[8]

Greystone's motion to transfer in the California action will likely be granted based on the forum selection and choice-of-law provisions of the parties' contracts in which each of the defendants "irrevocably and unconditionally" agreed that if a dispute should arise between the parties pursuant to those agreements they would (1) submit to personal jurisdiction in New York, (2) waive any objection to the laying of venue there, and (3) have the agreements upon which this action is based governed by New York law. Even if considered, the remaining factors raised by defendants further demonstrate that New York is the superior forum for both actions.

a) **Convenience of the Parties:** Defendants maintain that the convenience of the parties will not be served by litigating in New York, and contend that the convenience of defendant Oliphant and co-defendant Rant, LLC favors a California forum. *See* Mot. at p. 11. This argument begs the question of defendants' forum shopping, and ignores the more important facts that, as discussed above, defendants irrevocably *agreed to venue in*

---

[8] If the Court will find it necessary or helpful, Greystone respectfully asks that it take judicial notice of the briefing of its motion to transfer as a matter of public record having a direct relation to the matters at issue in this case, Fed. R. Evid. 201, and incorporates all arguments raised therein for purposes of opposing defendants' motion to stay. *See Santa Fe Pointe, LP et al v. Greystone Servicing Corp. Inc. et al,* Case No. C 07-05454 JCS (2007)(dkt. ## 10, 22).

*New York* throughout the Bridge Loan documents, and that Greystone's primary witness, Matthew James, is employed by Greystone CDE, LLC in New York, New York. As seen from the above quote at p. 7, defendants also waived any objection to inconvenience.

b) **Convenience of the Witnesses:** Defendants also suggest that the convenience of the witnesses would not be served by a transfer of their declaratory action to this District. As defendants have – and must – acknowledge, Greystone's primary witness is located in New York. Defendants are located in California. The balance of the probable witnesses alluded to in defendants' motion are located in Washington, D.C., Virginia, Wisconsin, Florida, Maryland, Pennsylvania, Illinois, Missouri, Arkansas, and Oklahoma. *Id.* at 12. Defendants raise virtually identical argument with respect to the transportation of documentary evidence that they expect to find in the same respective locations. By the reasoning of a case cited in defendants' motion, "it is worth noting that this action's geographical center of gravity, to the extent it has such a center, would seem to rest somewhere [east] of the Mississippi River," favoring venue in New York. *See Berisford Capital Corp.*, 677 F. Supp. at 223. Accordingly, the Southern District of New York is the superior forum for both actions.

c) **Costs of Litigation:** As to the comparative costs of litigation in California and New York, Defendants complain that the attorneys they have hired in New York are more expensive than their San Francisco attorneys, and suggest that "[t]his factor strongly favors stay of this litigation." *Id.* at 14. Defendants' notion that the cost of retaining counsel in New York is prohibitively expensive is not well founded. To the extent that there may be some regional variance, this is not a factor that would "strongly" tip the balance of conveniences in either direction.

13

d) **Forum Selection Clauses:** Finally, Defendants suggest that this Court should stay this action because the forum selection clauses by which they agreed to venue in New York are permissive and not mandatory. *See Id.* at 14. This has been addressed above (*see* pp. 5-6) With regard to this court's decision to retain jurisdiction over this matter on its active docket, defendants' argument makes no sense. As even defendants acknowledge, a permissive forum selection clause "confers jurisdiction in the designated forum, *assuring plaintiff at least one guaranteed forum.*" *Id.* at 14 (emphasis added) (citing *Phillips v. Audio Active, Ltd.*, 494 F.3d 378, 385 (2d Cir. 2007)). New York is that forum. The best that defendants can muster to evade their agreements is to suggest that the tort and breach of contract claims appended to their California declaratory action fall beyond the reach of the forum selection clauses. This also is not true. Under the forum selection clauses at issue, defendants "irrevocably and unconditionally . . . [s]ubmit themselves . . . in any legal action or proceeding *relating to* this agreement . . . to the non-exclusive general jurisdiction of the Courts of the State of New York . . . ." *See, e.g.*, Complaint ex.'s "D" and "E" (emphasis added); *see,* also Guaranty and Suretyship Agreement ¶ 3.08 (quoted above at p. 5)("...*arising out* of this Guaranty") (Complaint, ex. "C"). Moreover, in resolving Greystone's motion to transfer, "[w]hether a forum selection clause applies to tort claims depends on whether resolution of the claims *relates to* interpretation of the contract." *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988) (emphasis added); *accord Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1359, 1361 (2d Cir. 1993) (a clause conferring on English courts "exclusive jurisdiction to settle any dispute . . . arising out of or *relating to*" plaintiffs' business with defendants is interpreted to cover far more than just "allegations of

contractual violations.") (emphasis added). In the present case, every claim for relief asserted by Defendants— including those sounding in tort— falls within the scope of the forum selection clauses, because they "relate to" interpretation of the agreements.[9] Accordingly, all claims should be litigated in New York.

In view of special circumstances indicative of the anticipatory nature of defendants' declaratory action in California, the forum selection clauses in the subject agreements, and the balance of conveniences favoring venue in the Southern District of New York, the Court should give priority to this action and deny Defendants' motion to stay. Allowing these issues to be resolved in this Court will best promote judicial efficiency, which is the underpinning of the broader doctrine of federal comity from which the first-to-file rule arises. *See Kerotest Mfg. Co.*, 342 U.S. at 183.

Insofar as the tort argument is concerned, it should be reiterated that the California action and Count III of the New York action are entirely independent of the California tort claims[10]. Moreover, even if all the claims were consolidated under Rule 42, the first to file rule would be unavailing. *Recoton Corp. v. Allsop, Inc.* 999 F.Supp. *supra.* at 576 ("The exceptions to the first to file doctrine include, judicial economy, the minimal difference in time between the filing of the two actions, and the lack of progress

---

[9] This is so because defendants' state law claims allege the existence of a duty arising from the parties' "business relationship," which includes the relationship created by the Bridge Loan documents, *see* California Amended Complaint annexed to the defendants' motion ¶¶ 54 and 61, and allege that this duty was breached, *inter alia*, because Greystone called the Bridge Loan in default and accelerated Defendants' obligations, *see id.* ¶¶ 76 and 90. Without doubt, resolution of each of defendants' tort claims -- to the extent that they are not dismissed as having been brought in the guise of a contract action -- relates to the Bridge Loan documents because the Court must determine (1) whether the business relationship established therein created any duty, and (2) whether the defendants were in default and subject to acceleration of their obligation under the Bridge Loan documents. Finally, defendants' tort claims may all be subject to dismissal on account of the exculpatory clauses by which they released Greystone from such liability in the Bridge Loan Agreement. *See* Complaint, Ex. "A" at 18 (section 10.6 of Bridge Loan Agreement).
[10] Under Rule 42, the court has broad discretion to allow consolidated actions to retain their separate identity. *Boardman Petroleum Inc. v. Federated Mut. Ins. Co.* 135 F. 3d 750, 752 (11 Cir. 1998). That would allow Count III to be prosecuted independently of Counts I and II of the New York action as well as those California Counts, if any, which survive a dismissal motion for failure to state a claim.

in either litigation" citing *Columbia Pictures Indus., Inc. v. Schneider* 435 F. Supp. 742

(S.D.N.Y. 1977) *aff'd* 573 F.2d 1288 (2d Cir. 1978).

B.    There is no basis to stay this action in an anticipation of the California transfer motion being granted.

It is anticipated that Judge Spero will grant Greystone's motion to transfer the

California action to New York. Nevertheless, as stated above, Count III of the New York

action is for judgment on the Note and Guaranty while the California action purports to

state causes of action in tort.[11]    The obligations of defendants Oliphant, Sante Fe

Management and Rant as guarantors are absolute, unconditional and they have waived

any and all defenses.[12]  *Gateway Companies, Inc. v. Vitech America, Inc.*, 33 Fed.Appx.

578, 580, (2d Cir. 2002), ("Nor do we find merit in appellants' challenge to the district

court's decision on the merits. When guarantors have specifically disclaimed all defenses

to the enforcement of their guaranty, they are not allowed thereafter to raise a defense of

fraud in the inducement. *See, e.g., Citibank, N.A. v. Plapinger*, 66 N.Y.2d 90, 94-95, 495

N.Y.S.2d 309, 311-312, 485 N.E.2d 974 (1985); *see also Clanton v. Vagianelis*, 187

A.D.2d 45, 47 48, 592 N.Y.S.2d 139, 140 (3d Dep't 1993) (preclusion of fraud-in-the-

inducement defense "is not confined to cases involving specific disclaimers"); *Stone v.*

*Schulz*, 231 A.D.2d 707, 707-08, 647 N.Y.S.2d 822, 823 (2d Dep't 1996) (parol evidence

of alleged prior oral representations inadmissible to introduce a "meaningful" conflict

with written contract provision"): *Woodward & Dickerson, a Div. of ConAgra*, Inc. v.

*Kahn* 767 F. Supp. 530, 533 (S.D.N.Y..1991)(" the terms of the Guaranty could hardly be

---

[11] At the appropriate time Greystone will address whether defendants' "tort claims" are even viable given that an action grounded upon breach of contract cannot be characterized as an action in tort.

[12] It should be noted that defendants have not moved in this court for an order declaring that the Bridge Loan documents are invalid and unenforceable because they were purportedly signed under economic duress.

more explicit in rendering absolute defendants' obligations to plaintiff, regardless of any claims AGC might possess against Woodward.").

In addition, defendants' contention that the forum selection clause "...has no bearing on the bulk of the tort and breach of contract claims being made by the Oliphant parties," Mot. at 14, also is entirely baseless. On the one hand, as emphasized in the quoted language above, the forum selection clauses of the Partner Guaranty, Pledge and Security Agreement and the Developer Limited Guaranty Pledge and Security Agreement (Complaint ex.'s "D" and "E") incorporate by reference *all agreements* in connection with the transaction contemplated by the loan agreement. Hence, any contractual claim arising out of *any* of the executed documents is governed by the New York forum selection-clause. On the other hand, defendants misstate the law, because sufficiently broad forum selection clauses, such as the ones at hand, encompass potential tort claims[13] "arising out of" or "relating to" the contract. *See, e.g., Dichiara v. Ample Faith Investments Ltd.* 2006 WL 3431197, (S.D.N.Y., 2006):

> Here, the language of the jurisdiction-conferring clause is of the more expansive variety. It covers all actions that pertain to "any of the obligations arising under or relating to" the Stockholders Agreement. DiChiara's claim for breach of fiduciary duty implicates one such obligation. Indeed, each of DiChiara's claims "relat[es] to" the Stockholders Agreement, since those claims "depend on rights and duties that must be analyzed by reference to the contractual relationship." *Direct Mail Prod. Serv. Ltd. v. MBNA Corp.,* No. 99 Civ. 10550(SHS), 2000 WL 1277597, at *6 (S.D.N.Y. Sept. 7, 2000). One could not, after all, evaluate DiChiara's claims of conversion and unjust enrichment without examining his claimed joinder in the Stockholders Agreement, the method and timing of the issuance of shares in the company, and the actions of ECCA Holdings's board of directors. DiChiara has

---

[13] *See,* footnotes 9 and 11 above.

          therefore made legally sufficient allegations of personal
          jurisdiction over defendants pursuant to the Stockholders
          Agreement.

In any event, as noted above, defendants have waived all defenses in respect of

the Guaranty and Note.


## POINT II

## DEFENDANTS HAVE WAIVED ANY OBJECTION TO
## PERSONAL JURISDICTION


Defendants claim that "[t]here is no personal jurisdiction over the Oliphant Parties

in New York." However, that claim is patently without merit. The threshold inquiry in

considering a motion to transfer pursuant to 28 USC §1404(a) is whether the transferee

district is one "where it [the action] might have been brought." *Id. Hilti AG v. Milwaukee

Elec. Tool Corp.* 2004 U.S. Dist. LEXIS 16373 at *6-7 (E.D.N.Y. July 22, 2004)(citing

*Hoffman v. Blaski* 363 U.S. 335, 344 (1960)("The question is not whether plaintiffs could

be haled into the proposed transferee court as defendants, but whether plaintiffs could

have brought the same declaratory judgment action in the transferee court.") Obviously,

the Oliphant plaintiffs in the California action could have brought their action against

Greystone in New York.

Moreover, and in any event, by moving to stay without objecting to personal

jurisdiction, defendants have irrefutably waived that defense. *Silver v. Countrywide

Realty, Inc.,* 39 F.R.D. 596, 599, (S.D.N.Y., 1966) ("The assertion of this new ground is

not timely, and defendants by moving to dismiss on the ground of forum non conveniens

waived their right to challenge jurisdiction of the court over Canadianwide. Rule 12(g) of

18

the Federal Rules of Civil Procedure requires that certain defenses, including venue and jurisdiction over the person, if raised by motion, must be joined together in the motion; Rule 12(h) provides that such defenses as are not joined are waived."). *Altman v. Liberty Equities Corp.* 322 F.Supp. 377, 379 (S.D.N.Y. 1971) ("It is rather the logical inseparability of a section 1404 motion for change of venue and a Rule 12(b) dismissal motion for improper venue that mandates that they be litigated contemporaneously.")

## POINT III

### SINCE THE MOTION TO STAY IS ENTIRELY DEVOID OF MERIT, AND BECAUSE THEY HAVE DISOBEYED THE COURT'S DISCOVERY ORDER WITHOUT EXCUSE, DEFENDANTS SHOULD BE HELD IN DEFAULT

As has been amply demonstrated above, defendants' motion for a stay has no merit whatsoever. It is submitted that it was interposed merely to delay and harass and to increase the cost of litigation.[14] It has been held that a frivolous motion buys the movant

---

[14] As was noted above. in the court's Scheduling Order dated December 11, 2007, defendants were ordered to meet their Rule 26 initial discovery obligations on or before January 8, 2008, which they have not done. That, too, is an indication of dilatory strategy. *See* Fed.R.Civ.P. 26(f) Advisory Committee's Note. Rule 26(f) was created to counter discovery abuses and to allow for speedier processing of civil suits. *Id.* Fed R. Civ. P. 26 provides in pertinent part:

*(b) Failure to Comply with a Court Order.*

*(1) Sanctions in the District Where the Deposition Is Taken. If the court where the discovery is taken orders a deponent to be sworn or to answer a question and the deponent fails to obey, the failure may be treated as contempt of court.*

*(2) Sanctions in the District Where the Action Is Pending.*

*(A) For Not Obeying a Discovery Order. If a party or a party's officer, director, or managing agent--or a witness designated under Rule 30(b)(6) or 31(a)(4)--fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:*

*(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;*

*(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;*

*(iii) striking pleadings in whole or in part;*

*(iv) staying further proceedings until the order is obeyed;*

*(v) dismissing the action or proceeding in whole or in part;*

*(vi) rendering a default judgment against the disobedient party; or*

*(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.*

no additional time within which to serve a responsive pleading. *RTC v. Ruggiero* 994 F. 2d 1221, 1227 (7th Cir. 1993) ("The Ruggieros can get no mileage from having captioned their response to the RTC's petition a "Rule 12" motion, by which they presumably meant a motion to dismiss the petition for failure to state a claim (12(b)(6)). It is true that Fed.R.Civ.P. 12(a)(1) provides that if a motion under Rule 12 is denied, the movant shall have ten days to file a responsive pleading. But a frivolous motion buys the movant no time. (We can find no cases so holding, but it seems obvious that a litigant should not be permitted to gain an advantage from a sanctionable filing.)" ). *Ergo*, defendants are in default.

Moreover, as noted in footnote 14, above, the court may default a party for disobeying a court's discovery order, Fed. R. Civ. P. 26(b)(vi). In the case at bar, defendants did not seek a stay of discovery when they filed their stay motion, much less obtain one. Thus, they were not excused from complying with the court's order. As stated in *In re Currency Conversion Fee Antitrust Litigation*, No. MDL 1409, M21-95, 2002 WL 88278, at *1 (S.D.N.Y. Jan. 22, 2002):

> District courts have discretion to stay discovery for "good cause" pending resolution of a motion to dismiss. *See* Fed.R.Civ.P. 26(c); *Transunion Corp. v. Pepsico, Inc.*, 811 F.2d 127, 130 (2d Cir.1987); *Anti-Monopoly, Inc. v. Hasbro, Inc.*, No. 94 Civ. 2120(LMM) (AJP), 1996 WL 101277, at *2 (S.D.N.Y. March 7, 1996). Good cause "requires a showing of facts militating in favor of the stay." *American Booksellers Ass'n v. Houghton Mifflin Co.*, No. 94 Civ. 8566(JFK), 1995 WL 72376, at *1 (S.D.N.Y. Feb. 22, 1995). Courts in this District hold that a stay of discovery is appropriate pending resolution of a potentially dispositive motion where the motion "appear[s] to have substantial grounds" or, stated another way, "do[es] not appear to be without foundation in law." *Chrysler Capital Corp. v. Century Power Corp.*, 137 F.R.D. 209, 209-10 (S.D.N.Y.1991); *see also Flores v. Southern Peru Copper Corp.*, 00 Civ. 9812(CSH), 2001 WL 396422, at *2 (S.D.N.Y. Apr. 19, 2001) (power to stay initial disclosures "pending resolution of [a] motion to dismiss, if the defendant makes a strong showing that the plaintiff's claim is unmeritorious"); *Anti-Monopoly*, 1996 WL 101277, at *2 (good cause "may be shown where a party has filed (or sought

leave to file) a dispositive motion such as a motion to dismiss"). Still, imposition of a stay is not appropriate simply on the basis that a motion to dismiss has been filed, as the Federal Rules make no such provision. *See In re Chase Manhattan Corp. Sec. Litig.*, No. 90 Civ. 6092(LMM), 1991 WL 79432, at *1 (S.D.N.Y. May 7, 1991).

Here, as demonstrated in detail above, defendants have <u>no</u> grounds for a stay and their motion is concededly not dispositive. Accordingly, their tactic not to comply with the court's Scheduling Order can only be understood as a discovery abuse intended to delay. For that reason, and because their stay motion altogether has no merit, they should be held to have defaulted in respect of their answer to the Complaint.

## CONCLUSION

By reason of the foregoing, it is submitted that defendants' motion should be denied in all respects, and the cross-motion for default should be granted; alternatively, defendants' purported reservation of personal jurisdiction should be stricken.

Dated:  January 22, 2008
        New York, New York

                            HARNIK WILKER & FINKELSTEIN LLP

                            by: Stephen M. Harnik (SH 9889)

                            Attorneys for Greystone CDE LLC
                            645 Fifth Avenue, 7th Floor
                            New York, NY  10022-5937
                            (212) 599-7575