**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GREYSTONE CDE, LLC,<br><br>*Plaintiff,*<br><br>- *against* -<br><br>SANTE FE POINTE, *et al.,*<br><br>*Defendants.* | Civil Case No: 07CV.8377 (RPP)<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANTS' REPLY MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF THEIR**
**MOTION TO STAY THE SOUTHERN DISTRICT ACTION**

**AKERMAN SENTERFITT LLP**
*Attorneys for Defendants*
335 Madison Avenue, Suite 2600
New York, New York 10017
Telephone: 212.880.3800
Facsimile: 212.880.8965

*Of Counsel:*

Donald N. David (DD5222)
Brian A. Bloom (BB5722)
Jeremy Shure (JS0490)

{NY026088;4}

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES.................................................................... ii

PRELIMINARY STATEMENT............................................................... 1

COUNTERSTATEMENT OF FACTS......................................................... 1

ARGUMENT.................................................................................... 3

POINT I:  THE COURT SHOULD STAY PROCEEDINGS HERE PENDING
RESOLUTION OF GREYSTONE CDE'S CHANGE OF VENUE MOTION.............. 3

   a.   It is Within This Court's Discretion to Stay All Proceedings in Light of
       the Concurrently Pending California Action............................................. 3

   b.   A Balancing of the *LaSala* Factors Weigh In Favor of A Stay of All
       Proceedings in the Southern District Action........................................... 4

   c.   Plaintiff Cannot Show Any Prejudice That Would Result From A Stay............. 5

POINT II: *ALTERNATIVELY,* THE COURT SHOULD STAY PROCEEDINGS
HERE PENDING FULL RESOLUTION OF THE CALIFORNIA ACTION............... 6

   a.   A Balancing of the Convenience Factors Does Not Militate
       Against Application of the First to File Rule........................................... 7

   b.   In Light of the Fact that Greystone Fails to Allege Prejudice,
       Its Argument That A Stay is Unwarranted Must Fail................................. 8

POINT III:  THIS MOTION TOLLS THE TIME FOR
THE OLIPHANT PARTIES TO RESPOND TO THE COMPLAINT....................... 9

CONCLUSION................................................................................ 10

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                          **<u>Page</u>**

*American Shipping Line, Inc. v. Massan Shipping Indus.,*
885 F.Supp. 499 (S.D.N.Y. 1995)……………………………………………………..    3

*In re: Barneys,*
206 B.R. 336 (Bankr. S.D.N.Y. 1997)………………………………………………......    9

*Beauchamp v. United States of America,*
1998 WL 180628 (W.D.N.Y. Jan. 16, 1998)…………………………………………….    10

*Berisford Capital Corp. v. Cent. States, Southeast and Southwest Areas Pension Fund,*
677 F. Supp. 220 (S.D.N.Y. 1988)……………………………………………………….    7

*Elite Parfums, Ltd. v. Rivera,*
872 F.Supp. 1269 (S.D.N.Y.1995)……………………………………………………….    6

*Hisler v. Gallaudet Univ.,*
344 F.Supp.2d 29 (D.D.C. 2004)……………………......................................................    5

*Kappel v. Comfort,*
914 F.Supp. 1056 (S.D.N.Y. 1996)………………………....................................……….    5

*LaSala v. Needham & Co.,*
399 F.Supp.2d 421 (S.D.N.Y. 2005)……………………….........................................    4, 5

*Parker v. Transcontinental & Western Air, Inc.,*
4 F.R.D. 325 (W.D. Mo. 1944)…….........................................................................    9

*Questech Capital Corp. v. Flight Dynamics, Inc.,*
1984 WL 327 (S.D.N.Y. 1984)…………………………………………………………...    10

*Recoton Corp. v. Allsop, Inc.,*
999 F. Supp. 574 (S.D.N.Y. 1998)………………………............................................    7, 8

*RTC v. Ruggiero,*
994 F.2d 1221 (7th Cir. 1993)……………………………………………………….......    9, 10

*Russian Standard Vodka (USA), Inc. v. Allied Domecq Spirits & Wine USA, Inc.,*
2007 WL 4145277 (S.D.N.Y. Nov. 20, 2007)……………………………………………    4

*Sicoli v. Nabisco Biscuit Co.,* No. CIV. A. 96-6053,
1998 WL 614840, at *2 (E.D.Pa. Sept.10, 1998)……………………………………….    6

*Smith v. Pay-Fone Systems, Inc.,*
627 F.Supp. 121 (N.D. Ga. 1985)……………………………………………................    9

*SST Global Tech., LLC v. Chapman,*
270 F.Supp.2d 444, (S.D.N.Y. 2003)………………………………………………… 3-4

*Ontel Products, Inc. v. Project Strategies Corp.,*
899 F.Supp. 1144 (S.D.N.Y. 1995)……………………………………………........ 7

*Volmar Distributors v. New York Post Co.,*
152 F.R.D. 36 (S.D.N.Y. 1993)……………………………………………………….. 4

## Federal Rules and Statutes

Fed.R.Civ.P. Rule 7………………………………………………………………… 1

Fed.R.Civ.P. Rule 12……………………………………………………………….. 2, 9,10

Fed.R.Civ.P. Rule 26(a)……………………………………………………………… 2

Fed.R.Civ.P. Rule 33………………………………………………………………… 2

Fed.R.Civ.P. Rule 34……………………………………………………………….. 2

Fed.R.Civ.P. Rule 83……………………………………………………………….. 1

28 U.S.C. §1404(a)…………………………………………………………….......... 1

## Miscellaneous

2A J. Moore & J. Lucas, Moore's Federal Practice ¶12.05 at 2240 n.1 (2d ed. 1948 & Supp. 1983)………………………………………………………………………….................. 9

5C Charles Alan Wright, & Arthur R. Miller, FED. PRAC. & PROC. § 1360……………………. 3

Defendants Santa Fe Pointe, L.P., Santa Fe Pointe Management, LLC, Rant LLC, and Theotis F. Oliphant (collectively the "Oliphant Parties") respectfully submit this reply memorandum of law pursuant to the requirements of Rule 7 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), Fed. R. Civ. P. Rule 83, and the inherent power of this Court, in reply to Plaintiff's Opposition to Defendant's Motion for a Stay, dated January 22, 2008 (the "Opposition") in further support of their motion to stay all proceedings in this case pending a ruling on a venue transfer motion presently pending in the United States District Court, Northern District of California ("the California Action") or *in the alternative* until the California Action is concluded.

## PRELIMINARY STATEMENT

Greystone CDE, LLC (the Plaintiff here) has filed a motion in the California Action to transfer venue to this Court pursuant to 28 U.S.C. §1404(a), which is set to be heard in the California District Court on February 8, 2008 – next Friday (the "Transfer Motion"). In sum, proceeding with both actions now would create duplication and a waste of judicial (and the parties' and non-parties') resources and time. As such, and for the other reasons detailed herein and in the moving memorandum, the Oliphant Parties request that this Court temporarily stay the instant proceeding for a brief time pending resolution of that venue transfer motion or, *alternatively*, to stay all such proceedings *sin die*, until final resolution of the California Action.

## COUNTERSTATEMENT OF FACTS

The purpose of the Oliphant Parties' Motion to Stay is to preserve the Court's and the parties' resources, and not to submit an additional round of briefing on an issue that is not even before this Court (to wit, whether the Transfer Motion pending in the California Action should be granted). In light of the Transfer Motion, the outcome of which will substantially impact the New York Action, the Oliphant Parties seek a stay in order to allow the District Court in the Northern District of California to rule on an issue pending before it.

Nonetheless, rather than respond to the myriad of reasons set forth in the moving memorandum of law for the Motion to Stay, Greystone instead has used its Opposition to argue the merits of the Transfer Motion, a motion not even before this Court. Ironically, and critical to the analysis herein, Plaintiff falls on its own sword in arguing that "Greystone's motion to transfer in the California action will likely be granted" -- should that occur, it defies logic that Greystone could justify *any* prejudice that would result from staying this action. *See* Opposition at p.12. In the event Greystone is successful in transferring the California Action to the Southern District of New York, it is likely that a second amended complaint would be prepared and filed by Greystone – one that incorporates claims from <u>both</u> the California Complaint and the New York Complaint. In that instance, it would be a waste of the parties' (and non-parties') resources to require Defendants to answer or otherwise move under Fed. R. Civ. P. Rule 12 (or engage in protracted discovery) <u>prior</u> to the transfer, consolidation, and service of an amended complaint. In addition, discovery would take on a different form – Fed. R. Civ. P. Rule 26(a) disclosures would likely be different, as well as the issues to be targeted by Fed. R.Civ. P. Rule 33 and Fed. R. Civ. P. Rule 34 demands. In sum, a balance of the hardships and equities here dictates that a stay of proceedings in accordance with Defendants' notice of motion is warranted.

In the event this Court denies Defendants' Motion to Stay (before a decision on Greystone's presently-pending transfer motion in California), and the Defendants are required to answer or move with respect to the present version of the complaint, Defendants will likely move to dismiss the action under Fed.R.Civ. P. Rule 12,[1] which motion would justifiably include a request for a discovery stay during the pendency of the motion to dismiss. As such, it is respectfully submitted that

---

[1]  Defendants expressly raised their challenge to personal jurisdiction in their moving memorandum and have preserved their ability to move based on a lack of personal jurisdiction in their Rule 12 motion to dismiss if they so choose. *See* Defendants' moving memorandum of law, at fn. 1. Greystone acknowledges this argument on page 18 of the Opposition, stating "Defendants claim that '[t]here is no personal jurisdiction over the Oliphant Parties in New York."

a balance of the equities dictates that this Court should enter a stay of all proceedings herein, which includes discovery, until resolution of Greystone's Transfer Motion, or *in the alternative*, in the event Greystone's Transfer Motion is denied (and the California "first-filed" action continues), to stay the Southern District Action until the resolution of the California Action.

## ARGUMENT

## POINT I

## THE COURT SHOULD STAY PROCEEDINGS HERE
## PENDING RESOLUTION OF GREYSTONE CDE'S CHANGE OF VENUE MOTION

**a.    It is Within This Court's Discretion To Stay All Proceedings In Light Of The Concurrently Pending California Action.**

The motion to transfer the California Action to the Southern District of New York is set to be heard next Friday -- February 8, 2008.[2] Basic principles of judicial economy dictate that the prudent course would be to wait for the outcome of that motion before proceeding further in this case. The decision whether to issue a stay is "firmly within a district court's discretion." *American Shipping Line, Inc. v. Massan Shipping Indus.*, 885 F.Supp. 499, 502 (S.D.N.Y. 1995). Courts in this Circuit have held that there are several reasons why a stay of proceedings would be justified. For example, as is the case here -- a court may, in the interest of judicial economy, enter a stay pending the outcome of proceedings which bear upon the case, even if such proceedings are not necessarily controlling of the action that is to be stayed. *See* 5C Charles Alan Wright, & Arthur R. Miller, FED. PRAC. & PROC. § 1360 (noting that a district court may grant a stay "when a *similar* action is pending in another court.")(emphasis added). Moreover, the *LaSala* factors set forth below are applied, *inter alia*, "to stay a federal action in light of a concurrently pending federal action (because the claim arises from the same nucleus of facts)." *See SST Global Tech., LLC v. Chapman*, 270 F.Supp.2d

---

[2]  A decision on Greystone's Motion to Transfer is expected thereafter. The first branch of Defendants' Motion to Stay seeks a stay of all proceedings (and discovery) in the New York Action until some time after the California District Court issues its decision with respect to Greystone's application.

444, 455 (S.D.N.Y. 2003). It is indisputable that the California and New York Actions share a common nucleus of facts; accordingly, a stay of the New York Action is prudent and within this Court's purview.

      b.      **A Balancing of the *LaSala* Factors Weigh In Favor of A Stay of All Proceedings in the Southern District Action.**

When deciding whether to grant a motion to stay like the reasonable request herein, which courts routinely grant pursuant to their inherent power to regulate their dockets, courts consider five factors, which have been summarized by Judge Scheindlin in *LaSala v. Needham & Co.,* 399 F.Supp.2d 421, 427 (S.D.N.Y. 2005): (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interest of the courts; (4) the interests of persons not parties to the action; and (5) the public interest. *Id.* Balancing the factors is a case by case determination, with the basic goal being to avoid prejudice. *See Volmar Distributors v. New York Post Co.,* 152 F.R.D. 36, 39 (S.D.N.Y. 1993).

An analysis of the facts herein leans heavily toward a determination that a stay should be issued. Given the procedural posture of the California Action, coupled with substantial prejudice to Defendants in the event a stay is not issued (as well as to potential non-party witnesses[3] who may need to be deposed twice if the complaint is amended or consolidated with the California Action), the stay should be issued. Furthermore, given the short stay requested by Defendants, Plaintiff cannot show any prejudice. *See Russian Standard Vodka (USA), Inc. v. Allied Domecq Spirits & Wine USA, Inc.,* 2007 WL 4145277, at *7 (S.D.N.Y. Nov. 20, 2007)(Brief stay granted due to lack of prejudice to Plaintiff). Even if the Court determines that a longer stay is warranted as pled in the

---

[3]    Factor 4 of the *LaSala* factors leans towards the issuance of the stay of proceedings.

alternative, Plaintiff cannot show prejudice as a result. Notably, Plaintiff's Opposition is devoid of any showing of prejudice in the event a stay is issued by this Court.

The Oliphant Parties would be prejudiced if they are forced to litigate a case based on a complaint that may very well be substantially revised to add parties and issues. *See Kappel v. Comfort,* 914 F.Supp. 1056, 1058-59 (S.D.N.Y. 1996). Assuming *arguendo* that Greystone's Transfer Motion is granted (and the California Action is transferred to the Southern District of New York) [and the Southern District Action was not stayed], the nature and face of the Southern District Action will be substantially changed. It would therefore be likely that Greystone would need to file a second amended complaint; discovery would be expanded and changed; and most importantly both parties would have wasted time and money litigating a case that is going to be expanded and changed substantially. A stay would eliminate this potential duplication.

### c.    Plaintiff Cannot Show Any Prejudice That Would Result From A Stay.

The Plaintiff cannot show any meaningful prejudice that would ensue as a result of a modest stay if this action – and in fact, rather than oppose the motion by demonstrating any prejudice [which Plaintiff has not even attempted to allege], Plaintiff instead regurgitates its transfer rational – an issue not presently before this Court. *See Opposition* p. 3-18. In light of the judicial economy and a balancing of the prejudices, it is submitted that the Court should grant a stay of all proceedings. Plaintiff cannot point to any prejudice that would result from a stay of these proceedings either until the Transfer Motion is decided in California or even until the California Action is concluded (after a denial of the Transfer Motion).

Plaintiff has not yet incurred significant cost or expended much effort in this action, as proceedings have barely begun. As a result of the procedural posture of this action, Plaintiff cannot claim prejudice from a stay. *See LaSala v. Needham & Co.,* 399 F.Supp.2d at 430; *Cf. Hisler v. Gallaudet Univ.,* 344 F.Supp.2d 29, 36 (D.D.C. 2004) ("[i]n balancing the equities, the court con-

cludes that a stay would be unfair to the [non-movant] who, after five years of litigation, is finally at the second round of dispositive motions"); *Sicoli v. Nabisco Biscuit Co.,* No. CIV. A. 96-6053, 1998 WL 614840, at *2 (E.D.Pa. Sept.10, 1998) (court finds prejudice to [non-movant] from [movant's] requested stay because, inter alia, "[non-movant] has [already] incurred all of the costs and expense of preparing for trial in this action"). The action is young and Plaintiff has not expended significant resources whereby it can argue it is now being prejudiced by a delay. As such, a stay of this proceeding is warranted and should issue forthwith.

## POINT II

### *ALTERNATIVELY,* THE COURT SHOULD STAY PROCEEDINGS HERE PENDING FULL RESOLUTION OF THE CALIFORNIA ACTION

In the alternative, this Court should extend the stay through final resolution of the California Action for two separate reasons. First, Plaintiff has shown absolutely no prejudice nor established "special circumstances" which would ensue as a direct result of a stay. Second, an analysis under the "first to file rule" weighs heavily towards the continuation of the California Action (and stay of the New York Action).[4]

Greystone has gone to great lengths to shift the burden to the Oliphant Parties to demonstrate compelling circumstances or special considerations to dictate a departure from the First-to-File Rule. *See Opposition* at page 8. To the contrary, the moving party bears the burden of establishing that there should be a change of forum. *Elite Parfums, Ltd. v. Rivera,* 872 F.Supp. 1269, 1271 (S.D.N.Y.1995). In light of this rule, Defendants (who filed first as Plaintiffs in California) are entitled to stay the New York Action (second-filed by Greystone) until the complete resolution of the California Action. Plaintiff has not met its burden in its attempt to defeat Defendants' motion

---

[4]    Contrary to Plaintiff's allegation that the Defendants have given the Court a misleading reading of the pertinent contract language (*See Opposition* p. 4-7), Defendants' motion to stay is <u>not</u> an attempt to transfer the New York Action to California, although Plaintiff attempts to argue that it is one.

for a stay. As such, this Court need only review the basic first-to-file rule in light of Defendants' motion to stay.

Courts have considered the relative convenience of the selected forum to the proposed forum when deciding whether to apply the First to File Rule. *See Ontel Products, Inc. v. Project Strategies Corp.*, 899 F.Supp. 1144, 1153 (S.D.N.Y. 1995) (various factors include convenience of the parties, ease of access to the sources of proof, choice of forum, etc...). Applying these factors to the instant case, as set forth in the Motion to Stay, suggests that the First to File Rule should apply in favor of the California Action -- the first filed action. *See* Motion to Stay, pages 10-15.[5]

a.    **A Balancing of the Convenience Factors Does Not Militate Against Application of the First to File Rule**

Rather than offer special circumstances to overcome the First to File Rule, Greystone instead attacks the Oliphant Parties' analysis of the "First to File Rule" because defendants' argument allegedly "relies on a case that dealt primarily with a section 1404(a) transfer request." *Opposition* at 8. Ironically, Greystone refers the Court to *Recoton Corp. v. Allsop, Inc.*, 999 F. Supp. 574 (S.D.N.Y. 1998), a decision that is entirely focused on a review of a 1404(a) transfer request. *Id.* *Recoton*, like the Oliphant Parties' Motion to Stay, undertakes a review of the factors to consider in deciding whether to transfer venue pursuant to section 1404(a) from New York to the Western District of Washington. *See* Motion to Stay at pages 10-16; *compare Recoton* at 577-578. *Recoton* is also distinguishable because, in that case, the majority (if not all) of moving parties' officers, employees and inventors who can be called as witnesses were located in Washington, as were all of the

---

[5]   The Oliphant Parties not only filed their action first (in California) but served their complaint on both Greystone entities before Greystone CDE even made it to the Courthouse steps. Both Greystone entities answered the complaint in the California Action more than two months ago. Therefore, absent a showing by Greystone CDE of special circumstances, the Court is authorized under the First-to-File Rule to stay the New York Action *sin die* to allow for the orderly conduct of the prior-filed California Action to proceed until its conclusion. *See Berisford Capital Corp. v. Cent. States, Southeast and Southwest Areas Pension Fund*, 677 F. Supp. 220, 223-236 (S.D.N.Y. 1988) (ordering indefinite stay of proceedings of second-filed action where no showing of special circumstances).

business records. *Id.* at 577. Further, of the four patents in question in the case, three of them were prosecuted in Washington state. *Id.*

As set forth in the Motion to Stay the instant matter, Greystone identified nine potential trial witnesses (in their California change venue motion), and claimed, in a conclusory fashion, that they have "personal knowledge of material events relating to the execution, and Plaintiffs' default, of the Bridge Loan documents. . . ." *See* Defendants' MPA[6] 10:28-11:1. Regardless of that, eight of the nine witnesses identified by Defendants are <u>not</u> located in New York; they are spread throughout the Midwest, the south and the east coast: Virginia, Wisconsin, Florida, Maryland, Arkansas and Illinois. *See* Declaration of Matthew James[7] ("James Decl."); Defendants' MPA 10:3-11:7. Only *one* witness identified by Defendants (Matt James) works in New York (but does not live there). Further, the contracts at issue were neither negotiated nor executed in New York, most of the relevant documents are not located in New York, New York is a significantly more expensive venue in which to litigate than San Francisco, an Oliphant and his companies are located in California. *See* Motion to Stay, 11-15.

    **b.**    **In Light of the Fact that Greystone Failed to Allege Prejudice, Its Argument That A Stay is Unwarranted Must Fail.**

Separate and apart from the argument that Defendants should be granted a <u>limited</u> stay, a more substantial and lengthy stay is warranted under the circumstances of this case. As set forth, the first-to-file rule analysis warrants a stay of the New York Action until the complete resolution of the California Action. Nonetheless, it is important to note that Greystone fails to mention any prejudice that would result as a direction cause of a stay (however long it may be in place).

---

    [6]  References to the "Defendants' MPA" refer to Greystone's Memorandum of Points and Authorities submitted in connection with their motion to transfer venue in the California Action.

    [7]  References to the James Decl. refer to the Declaration of Matthew James dated November 6, 2007 which was submitted in connection with Greystone's motion to change venue and is respectfully annexed to the Declaration of Brian A. Bloom in Support of Defendant's Motion to Stay ("Bloom Decl.") as a portion of Exhibit "C".

## POINT III

### THIS MOTION TOLLS THE TIME FOR
### THE OLIPHANT PARTIES TO RESPOND TO THE COMPLAINT

Greystone has not, because it cannot, refuted that the Motion to Stay tolls the time for responding to the Complaint, because the Motion to Stay is a pre-answer motion within the scope of Rule 12(b). *See* Motion to Stay, pages 15-16; *see also In re: Barneys*, 206 B.R. 336 (Bankr. S.D.N.Y. 1997) (finding that a motion to stay litigation is a pre-answer motion within the scope of Rule 12(b)); *Parker v. Transcontinental & Western Air, Inc.*, 4 F.R.D. 325, 326 (W.D. Mo. 1944) (denying plaintiff's motion for default judgment, expressly stating that it was only after decision on the defendant's motion to stay proceedings that 'it then became the duty of the defendant to file motions or other proceedings in the case'); 2A J. Moore & J. Lucas, Moore's Federal Practice ¶12.05 at 2240 n.1 (2d ed. 1948 & Supp. 1983). Somehow ignoring all relevant case law on this issue, the Opposition is devoid of a *single* case that contradicts that a motion to stay a litigation is a pre-answer motion under the Federal Rules of Civil Procedure. *See Smith v. Pay-Fone Systems, Inc.*, 627 F.Supp. 121 (N.D. Ga. 1985) (denying motion for default for failure to answer where party filed timely motion ).

Instead, to support its argument that a "frivolous motion buys the movant no time" to file a responsive pleading, Greystone relies on *RTC v. Ruggiero*, a Seventh Circuit decision that is wholly inapposite to the instant motion. 994 F.2d 1221 (7th Cir. 1993); *see also* Opposition at  19-20. *Ruggerio* is a *post-judgment proceeding* to enforce a judgment. In *Ruggerio*, the defendant filed an opposition to a petition for bankruptcy – the response in question was masked as a Rule 12 pleading. Judge Posner, acknowledging that the Federal Rules of Civil Procedure are not strictly applicable to supplementary proceedings, deemed the pleading frivolous because the response was not proper under Rule 12 of the Federal Rules of Civil Procedure. *Id.* at 1227. Here, contrary to *Rug-*

*gerio*, Greystone has not asserted that the Motion to Stay is improper under Rule 12 – because they cannot in good faith do so.

It is important to note that, in the event a motion to stay is denied, Defendants have the ability to file a Rule 12(b) motion to dismiss. *See Beauchamp v. United States of America*, 1998 WL 180628 (W.D.N.Y. Jan. 16, 1998) (where the defendant's motion to stay is denied, the defendant is given 30 days from the date of the decision to file and serve a motion to dismiss). As discussed in Defendants' moving memorandum, Defendants filing of the within motion to stay effectively tolls the time for Defendants to respond to the allegations in the Complaint – either via an Answer or Motion. *See Questech Capital Corp. v. Flight Dynamics, Inc.*, 1984 WL 327 (S.D.N.Y. 1984). Plaintiff's half-hearted attempt to suggest otherwise is arguably frivolous in its own accord.[8]

## CONCLUSION

The Oliphant Parties' primary request here is quite modest and reasonable:  stay further proceedings here until the Northern District of California rules on Greystone's Transfer Motion. As shown above and in the Oliphant Parties' moving memorandum, however, strong grounds also exist to enter an order now staying this action until the California Action is fully resolved, which is the alternative relief sought in this motion.

Dated:  New York, New York
        January 29, 2008

AKERMAN SENTERFITT LLP
*Attorneys for Defendants*

By: _____
     Donald N. David (DD 5222)
     Brian A. Bloom  (BB 5722)
     Jeremy A. Shure (JS 0490)

---

[8]  Defendants reserve their right to file a Rule 11 motion for sanctions with respect to Plaintiff's cross-motion.

# APPENDIX A

## UNREPORTED DECISIONS
## CITED IN REPLY MEMORANDUM OF LAW

Westlaw.

Not Reported in F.Supp.2d                                                                                                    Page 1
Not Reported in F.Supp.2d, 1998 WL 614840 (E.D.Pa.), 13 NDLR P 243
**(Cite as: 1998 WL 614840 (E.D.Pa.))**

**H**United States District Court, E.D. Pennsylvania.
Alfred SICOLI, et al.,
v.
NABISCO BISCUIT COMPANY.
No. CIV. A. 96-6053.

Sept. 10, 1998.

*MEMORANDUM AND ORDER*

HUTTON, J.

**\*1** Presently before the Court is the Motion by Plaintiff, Alfred Sicoli, to Stay the Proceedings (Docket No. 41), and Defendant's response thereto (Docket No. 44). For the reasons stated below, the motion to stay the proceedings is GRANTED.

### I. BACKGROUND

On September 4, 1996, Plaintiff initiated the instant action alleging that Defendant's actions violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat.Ann. §§ 951, *et seq.* and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, *et seq.* In his action, Plaintiff charges Defendant Nabisco Biscuit Company ("Nabisco") with employment discrimination for failing to accommodate Plaintiff's physical disability. (Pl.'s Mem. at 1). Plaintiff allegedly suffers from "severe cervical neck pain and severe migraine headaches." (Pl.'s Compl. ¶ 27). Some of Defendant's discriminatory actions that Plaintiff alleges include the following: suspending Sicoli from work for taking off to care for his disability; refusing to qualify Sicoli for FMLA; and failing to appoint Sicoli to positions which would accommodate his disability. (*Id.* at ¶ 15-24).

On July 30, 1998, Plaintiff filed a new charge with the Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination and retaliation in violation of the ADA for failing to place Plaintiff in the position of Processor. In January 1998, Sicoli applied for the Processor position, which has still yet to be filled. (See Jul. 30, 1998, EEOC Charge). Sicoli claims that he applied for the position "seeking reasonable accommodation, since the position is within [his] medical restrictions." *Id.*

According to Sicoli, he is entitled to the position under his collective bargaining agreement. *Id.* On August 10, 1998, Plaintiff filed this motion, requesting that this Court stay the present action pending the EEOC's processing of the new charge. [FN1]/ The motion is granted for the following reasons.

> FN1. This Court suggested this course of action to "protect [a plaintiff's] claims from the bar of claim preclusion." *Churchill v. Star Enters.,* 3 F.Supp.2d 625, 630 (E.D.Pa.1998). "If the EEOC has not dismissed the charge or instituted a civil action within 180 days after receipt of the charge, the plaintiff may request and the EEOC must issue, a right to sue letter." *Id.* at 629 (citing *McNasby v. Crown Cork and Seal Co.,* 888 F.2d 270, 274 n. 3 (3d Cir.1989)), *cert. denied,*494 U.S. 1066, 110 S.Ct. 1783, 108 L.Ed.2d 784 (1990). "Once a plaintiff receives the right to sue letter, [he or she] may then petition the court to amend [his or her] complaint." *Id.* at 630.

### II. DISCUSSION

"The power to stay proceedings is incidental to the power inherent in every court to schedule disposition of the cases on its docket so as to promote fair and efficient adjudication." *Gold v. Johns-Manville Sales Corp.,* 723 F.2d 1068, 1077 (3d Cir.1983). "How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. North Am. Co.,* 299 U.S. 248, 255, 57 S.Ct. 163, 81 L.Ed. 153 (1936). "In maintaining that even balance, the Court must consider whether 'there is even a fair possibility that the stay would work damage on another party.' " *Dentsply Int'l, Inc. v. Kerr Mfg. Co.,* 734 F.Supp. 656, 658 (D.Del.1990) (quoting *Gold,* 723 F.2d at 1076;*Landis,* 299 U.S. at 255). If so, the plaintiff must "demonstrate 'a clear case of hardship or inequity' " before the stay may be issued. *Gold,* 723 F.2d at 1075-76 (quoting *Landis,* 299 U.S. at 255).

**\*2** In this case, Defendant would be prejudiced if this Court granted a stay, because of the resulting delay in the litigation. See *Dentsply Int'l Inc.,* 734 F.Supp. at 658 (finding plaintiff would suffer prejudice if trial

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1998 WL 614840 (E.D.Pa.), 13 NDLR P 243
(Cite as: 1998 WL 614840 (E.D.Pa.))

was delayed). Defendant has incurred all of the costs and expense of preparing for trial for this action. Moreover, as Defendant argues, forestalling the trial date would delay the disposition of claims by a current employee, for which Defendant is understandably eager to resolve. (Def.'s Mem. at 5). Thus, the issue before the Court is whether Plaintiff can demonstrate "a clear case of hardship or inequity" necessary to grant a stay. _Gold, 723 F.2d at 1075-76_ (quoting _Landis, 299 U.S. at 255)._ Plaintiff asserts that if the present case goes to trial, claim preclusion would prohibit Plaintiff from later bringing the new EEOC charge against Defendant, and this would severely prejudice Plaintiff. This Court must agree.

The doctrine of res judicata, or claim preclusion, gives a prior judgment dispositive effect, and bars subsequent litigation based on any claim that was, or could have been, raised in the prior proceeding. See _Board of Trustees ofTrucking Employers v. Centra, 983 F.2d 495, 504 (3d Cir.1992)._ To establish the affirmative defense of res judicata, the party must establish that: (1) the first suit resulted in a final judgment on the merits; (2) the second suit involves the same parties or their privies; and (3) the second suit is based on the same cause of action as the first. See _United States v. Athlone Indus., Inc., 746 F.2d 977, 983 (3d Cir.1984); Harding v. Duquesne light Co., No. CIV.A.95-589, 1995 WL 916926, at *2 (W.D.Pa. Aug.4, 1995)._ The first two elements need not be examined by this Court. Plaintiff claims that if the instant action results in a final judgment on the merits, Defendant will have an affirmative defense of claim preclusion on the EEOC charge. (Pl.'s Mem. at 3). Furthermore, Defendant concedes that this matter involves the same parties, (see Def.'s Mem. at 2), which leaves the Court only to decide whether the same cause of action is involved.

The Third Circuit has stated that "the term 'cause of action' cannot be precisely defined, nor can a simple test be cited for use in determining what constitutes a cause of action for res judicata purposes." _Protocomm Corp., Novell, Inc., No. CIV.A.94-7774, 1998 WL 351605, at *4 (E.D.Pa. Jun.30, 1998)_ (citing _Athlone, 746 F.2d at 983)._ When determining whether the same cause of action is involved for res judicata purposes, a court should consider "the similarity of the acts complained of, the similarity of the material facts alleged, and the similarity of the witnesses and documentation needed to prove the allegations." _Lubrizol Corp. v. Exxon Corp., 929 F.2d 960, 963 (3d Cir.1991)_ (citing _Athlone, 746 F.2d at_

_984)._ These factors reflect a trend in the law of claim preclusion toward " 'requiring that a plaintiff present in one suit all the claims for relief that he may have arising out of the same transaction or occurrence.' " _Athlone, 746 F.2d at 984_ (quoting 1BJ. Moore & J. Wicer, Moore's Federal Practice ¶ 0.410[1] at 359 (2d ed.1983)).

*3 Defendant fails to make any argument how the claims asserted in the instant action differ from those in the new EEOC charge. (See Def.'s Mem.). The new EEOC charge alleging disability discrimination and retaliation arises out of the same facts and circumstances as the claims in the instant action. The new EEOC charge and the claims asserted in the 1996 complaint arise out of Sicoli's employment with Nabisco and Nabisco's alleged failure to accommodate Sicoli's physical disability. The only difference between the facts in this action and the new EEOC charge is whether Sicoli is entitled to the Processor position under the collective bargaining agreement. Thus, the facts, witnesses, and evidence underlying the claims in the instant action and the new EEOC charge are essentially the same.

This Court acknowledges that Plaintiff must prove the additional issue of relation in the new EEOC charge, however, simply because Sicoli relies on a new legal theory in the pending EEOC charge, does not prevent claim preclusion. _Lubrizol, 929 F.2d at 963._ "If the acts in question, the material facts alleged, and the evidence required to prove the allegations are the same for both suits, then the fact that a party relies on a new legal theory does not prevent claim preclusion." _Simmons, III v. Anzon, inc., No.CIV.A.94-0467, 1994 WL 317853, at *2 (E.D.Pa. Jun.21, 1994)_ (citing _Lubrizol, 929 F.2d at 963)._ Thus, because of "the 'essential similarity of the underlying events giving rise to the various legal claims,' " the Court concludes that the new EEOC charge is the same as those asserted in the instant action. _Lubrizol, 929 F.2d at 963._ Thus, if the present case goes to trial and results in a final judgment on the merits, claim preclusion would prohibit Plaintiff from later bringing the new EEOC charge against Defendant. The Court acknowledges that Defendant will be prejudiced by postponing the litigation, however, Plaintiff has met his burden of showing a clear case of hardship in the absence of postponing the trial.

### III. CONCLUSION

For the foregoing reasons, Plaintiff successfully

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1998 WL 614840 (E.D.Pa.), 13 NDLR P 243
**(Cite as: 1998 WL 614840 (E.D.Pa.))**

Page 3

shows a clear case of hardship or inequity in the absence of the Court postponing the litigation. As such, this Court grants Plaintiff's motion to stay the proceedings.

An appropriate Order follows.

*ORDER*

AND NOW, this 9th day of September, 1998, upon consideration of Plaintiff's Motion to Stay the Proceedings (Docket No. 41), and Defendant's reply thereto (Docket No. 44), IT IS HEREBY ORDERED that Plaintiff's Motion to stay the proceedings is GRANTED.

Not Reported in F.Supp.2d, 1998 WL 614840 (E.D.Pa.), 13 NDLR P 243

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Westlaw.

2007 WL 4145277                                                                      Page 1
523 F.Supp.2d 376, 2007 WL 4145277 (S.D.N.Y.), 2007-2 Trade Cases P 75,982
**(Cite as: 2007 WL 4145277 (S.D.N.Y.))**

United States District Court,
S.D. New York.
RUSSIAN STANDARD VODKA (USA), INC., and
Roust Trading Limited, Plaintiffs,
v.
ALLIED DOMECQ SPIRITS & WINE USA, INC.,
Pernod Ricard USA, LLC, S.P.I. Spirits
(Syprus) Limited, Defendants.
**No. 06 Civ. 9915(RLC).**

Nov. 20, 2007.

**Background:** Vodka manufacturers brought action
seeking declaratory judgment that their statements
challenging "Russian" nature of competitors' vodka
products did not violate Lanham Act or state law and
asserting claims for false advertising, false
designation of origin, deceptive trade practices,
unfair competition, and unjust enrichment.
Competitors moved to dismiss complaint.

**Holdings:** The District Court, Robert L. Carter, J.,
held that:
(1) there was actual controversy between parties;
(2) stay of proceedings was warranted; and
(3) competitors did not inequitably misappropriate
for themselves manufacturers' goodwill and product
recognition.
Motion granted in part and denied in part.

**[1] Federal Courts** ⊙═33

170Bk33Most Cited Cases

**[1] Federal Courts** ⊙═34
170Bk34Most Cited Cases
Plaintiff asserting subject matter jurisdiction has
burden of proving by preponderance of evidence that
subject matter jurisdiction exists. Fed.Rules
Civ.Proc.Rule 12(b)(1), 28 U.S.C.A.

**[2] Declaratory Judgment** ⊙═7
118Ak7Most Cited Cases

**[2] Declaratory Judgment** ⊙═8
118Ak8Most Cited Cases
When making its determination as to whether
declaratory judgment is proper, court must ask

following: (1) whether judgment serves useful
purpose in explaining or settling legal issues
involved; and (2) whether judgment would finalize
controversy and offer relief from uncertainty. 28
U.S.C.A. § 2201.

**[3] Declaratory Judgment** ⊙═237
118Ak237Most Cited Cases
Letter from vodka importer and distributor informing
competitor that its public statements concerning
authenticity of their vodka as "Russian" vodka could
violate federal trademark laws, and their
commencement of proceeding before National
Advertising Division of Council of Better Business
Bureaus (NAD), did not create actual controversy
sufficient to satisfy subject matter jurisdiction
requirement under Declaratory Judgment Act, despite
competitor's contentions that it had reasonable
apprehension of imminent suit, where importer and
distributor waived their right to sue because of
competitor's past statements. 28 U.S.C.A. § 2201.

**[4] Declaratory Judgment** ⊙═237
118Ak237Most Cited Cases
Russian vodka manufacturer's intent to continue to
make statements questioning competing vodka's
authenticity as "Russian" vodka was sufficient to
create actual controversy between manufacturer and
competing vodka's importer and distributor necessary
to establish subject matter jurisdiction in
manufacturer's action seeking declaratory judgment
that its statements did not violate federal trademark
laws, despite importer's and distributor's waivers of
their right to sue because of manufacturer's past
statements. 28 U.S.C.A. §
2201.

**[5] Action** ⊙═68
13k68Most Cited Cases
When determining whether to exercise its discretion
to grant motion to stay, court must look to following
factors: (1) plaintiffs' private interests in proceeding
expeditiously with civil litigation as balanced against
prejudice to plaintiffs if delayed; (2) defendants'
private interests; (3) courts' interests; (4) interests of
persons not parties to civil litigation; and (5) public
interest.

**[6] Action** ⊙═69(6)

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

2007 WL 4145277                                                                                                    Page 2
523 F.Supp.2d 376, 2007 WL 4145277 (S.D.N.Y.), 2007-2 Trade Cases P 75,982
(Cite as: 2007 WL 4145277 (S.D.N.Y.))

13k69(6)Most Cited Cases
Stay of proceedings was warranted in Russian vodka manufacturer's action seeking declaratory judgment that their statements challenging "Russian" nature of competitors' vodka products did not violate Lanham Act or state law, where competitors brought private, non-binding challenge before National Advertising Division of Council of Better Business Bureaus (NAD), parties were in final stages of NAD investigation, NAD stopped its investigation when lawsuit was initiated, allowing NAD to provide its expert view on vodka's authenticity would be extremely useful in resolving controversy, and stay would only last thirty days. Lanham Act, § 43, 15 U.S.C.A. § 1125.

**[7] Implied and Constructive Contracts** 🗝3
205Hk3Most Cited Cases
To state claim for unjust enrichment under New York law, plaintiff must allege that: (1) plaintiff conferred benefit upon defendants, (2) defendants will obtain conferred benefit without adequately compensating plaintiff, and (3) equity and good conscience require restitution.

**[8] Implied and Constructive Contracts** 🗝3
205Hk3Most Cited Cases
Under New York law, vodka importer and distributor did not inequitably misappropriate for themselves goodwill and product recognition that Russian vodka manufacturer built up through its marketing efforts, and thus were not unjustly enriched by their allegedly false advertising of their product's supposed Russian character, where importer and manufacturer had been selling their vodka for forty years, but manufacturer's product had been on market for only ten years.
Jones Day, Atlanta, GA (Anne M. Johnson, of Counsel), for Plaintiffs.

Debevoise & Plimpton LLP, New York, NY (David H. Berstein, of Counsel), for Defendant.

Covington & Burlig LLP, New York, NY (Bradley J. Nash, of Counsel), for Defendant.

### OPINION

ROBERT L. CARTER, District Judge.

*1 Defendants Pernod Ricard USA, LLC (hereinafter "Pernod Ricard"), and Allied Domecq Spirits & Wines USA, Inc., (hereinafter "Allied Domecq")

move to dismiss count one of the complaint, pursuant to Rule 12(b)(1), F.R. Civ. P, and to briefly stay the action pending a resolution of the relevant issues at the National Advertising Division of the Council of Better Business Bureaus (hereinafter "NAD"). Also, defendants S.P.I. Group SA and S.P.I. Spirits' (collectively "S.P.I. defendants") move to dismiss count one of the complaint pursuant to Rule 12(b)(1), F.R. Civ. P., and to dismiss count seven pursuant to Rule 12(b)(6), F.R. Civ. P. [FN1] Because of the overlapping facts and issues involved in the motions, the court has considered the motions together.

The motion to dismiss count one of the complaint is granted as to the S.P.I. groups and denied as to Pernod Ricard and Allied Domecq, and the motion to dismiss count seven of the complaint is granted as to both sets of defendants. The court also orders that the lawsuit be stayed until the completion of the pending investigation at the NAD or for thirty days, whichever is sooner.

### BACKGROUND
When a complaint is challenged pursuant to Rule 12(b)(1), F.R. Civ. P., for lack of subject matter jurisdiction, a court must accept the factual allegations made in the complaint as true, drawing reasonable inferences in favor of the plaintiff. See Lunney v. United States, 319 F.3d 550, 554 (2d Cir.2003). However, when adjudicating a motion for lack of subject matter jurisdiction, a district court may resolve disputed factual issues by reference to evidence outside the pleadings, including affidavits. See State Employees Bargaining Agent Coal. v. Rowland, 494 F.3d 71, 75 (2d Cir.2007). The Court has accepted the allegations in plaintiffs' complaint as true, and has also looked at the relevant affidavits for additional clarification where needed.

Plaintiffs, Russian Standard Vodka (USA), Inc., and Roust Trading Limited, filed an initial complaint on October 18, 2006. Thereafter, the complaint was amended on December 4, 2006. In their first amended complaint, plaintiffs seek declaratory judgment from the court that certain statements made, challenging the "Russian" nature of defendants' vodka products, do not violate the Lanham Act or state law (count one). Plaintiffs also assert claims against the defendants for false advertising (counts two and four), false designation of origin (count three), deceptive trade practices (count five), unfair competition (count six), and unjust enrichment (count seven). (See generally, Pls.

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

2007 WL 4145277                                                                                                                    Page 3
523 F.Supp.2d 376, 2007 WL 4145277 (S.D.N.Y.), 2007-2 Trade Cases P 75,982
(Cite as: 2007 WL 4145277 (S.D.N.Y.))

First Am. Compl.) The asserted basis for federal jurisdiction is federal question and supplemental jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338, 1367, and 15 U.S.C. § 1121. (*Id.* at ¶ 7.)

In September 2005, plaintiffs introduced a new vodka product, Imperia vodka, to the United States. (*Id.* at ¶ 11.) Plaintiffs marketed Imperia vodka by highlighting its Russian heritage, namely by emphasizing that Imperia is distilled in, filtered in, bottled in, labeled in, and sold in Russia, and imported directly from Russia to the United States. (*See id.* at ¶ 13; *see also* Pls. Mem. in Opp. to Defs. Pernod Ricard and Allied Domecq's Mot. to Dismiss at 10.) Plaintiffs declared that "Vodka is Russian," to highlight the significance of Imperia's Russian character during their advertising campaign. (*See* Pls. First Am. Compl. at ¶ 26.)

*2 Pernod Ricard is the marketer and distributor of Stolichnaya (hereinafter "Stoli") vodka products in the United States, and Allied Domecq is the importer of Stoli vodka into the United States. (*See* Pls. First Am. Compl. at ¶ 15.) S.P.I. defendants manufacture and label Stoli vodka. (*Id.* at ¶ 14.) Plaintiffs allege that defendants' vodka products "directly compete" with its Imperia vodka, and that a key component of defendants' current advertising and marketing of Stoli in the United States is Stoli's "alleged Russian character." (*Id.* at ¶ 20.) Plaintiffs allege that "essential processes" in the production of Stoli vodka occur in Riga, Latvia, not Russia, to contradict defendants' claim that Stoli vodka is "Russian." (*Id.* at ¶ 25.)

Specifically, plaintiffs allege that on September 7, 2005, they held a press conference during which plaintiffs stated that Imperia was "a truly authentic Russian vodka of the highest quality." (*Id.* at ¶ 27.) On October 6, 2005, Allied Domecq sent a letter to plaintiffs, stating that Imperia's publicity campaign implies that Imperia vodka is the only authentically Russian vodka available in the market. (*See id.* at ¶ 28.) In its letter, Allied Domecq further stated, "Making false statements about a competitor's product constitutes ... unfair competition and false advertising under ... the Federal Trademark Act...." (*See* Declar. of Besson, Exhibit C.) Nonetheless, after receiving Allied Domecq's letter, plaintiffs publicly claimed that Stoli vodka "is not truly Russian" and "[i]f Stolichnaya vodka comes from Latvia rather than Russia ... they should be proud of their Latvian heritage." (*See* Pls. First Am. Compl. at ¶ 29.) On

April 7, 2006, in response to plaintiffs' assertions, Pernod Ricard issued a press release stating that it would explore its legal remedies regarding plaintiffs' statements concerning the authenticity of Stoli vodka "in due course." (*See* Declar. of Besson, Exhibit F.) Pernod Ricard subsequently brought a private, non-binding challenge before the NAD, whose mission is to "review national advertising for truthfulness and accuracy and foster public confidence in the credibility of advertising." (*See* Def. Mem. in Supp. of Mot. to Dismiss at 5, 7; *see also* Pls. First Am. Compl. at ¶ 33.) The parties were in the final stages of the NAD investigation, as NAD and Pernod Ricard were awaiting the submission of plaintiffs' sur-reply, when plaintiffs initiated this lawsuit in federal court. (*See* Defs. Pernod Ricard & Allied Domecq Mem. in Supp. of Mot. to Dismiss at 8.) NAD stopped its investigation when this lawsuit was initiated but has represented that it would resume its investigation if this action is stayed.

Plaintiffs allege that the foregoing actions by Pernod Ricard and Allied Domecq, including the initiation of a proceeding with NAD, created an "actual controversy" as to Russian Standard's ability to challenge and comment upon the "Russian character" of defendants' vodka products. (*See* Pls. First Am. Compl. at ¶ 34.) They argue that defendants' Stoli vodka does not possess the attributes that defendants advertise to the public, and that defendants' actions have suppressed their ability to advertise this claim by creating a threat of legal action. (*See id.*)

*3 Plaintiffs seek the following relief: 1) a declaration of their rights pursuant to 28 U.S.C. § 2201 that the statements made by them do not violate provisions of the Lanham Act, 15 U.S.C. § 1125, or state law; [FN2] 2) damages pursuant to 15 U.S.C. § 1125 because defendants have allegedly engaged in false advertising by marketing Stoli as a Russian vodka; 3) damages pursuant to 15 U.S.C. § 1125 for false designation of origin, alleging that defendants misrepresented the origin of their goods; 4) damages for false advertising under New York General Business Law §§ 350 and 350(a); 5) damages for violation of the New York Deceptive Trade Practices Act, New York General Business Law §§ 349(a)-(b), for allegedly deceiving the public; 6) damages for engaging in unfair competition in violation of New York law; and 7) restitution for unjust enrichment because defendants have allegedly unjustly enriched themselves and injured the plaintiffs by marketing Stoli vodka as "Russian."

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

2007 WL 4145277                                                                                                                        Page 4
523 F.Supp.2d 376, 2007 WL 4145277 (S.D.N.Y.), 2007-2 Trade Cases P 75,982
(Cite as: 2007 WL 4145277 (S.D.N.Y.))

**A. PERNOD RICARD AND ALLIED DOMECQ'S JANUARY 16, 2007 MOTION TO DISMISS AND FOR A VERY BRIEF STAY**

Pernod Ricard and Allied Domecq moved on January 16, 2007, for partial dismissal due to lack of subject matter jurisdiction pursuant to Rule12(b)(1), F.R. Civ.P., and for a stay of approximately one month. Defendants argue that plaintiffs' cause of action for declaratory relief fails because there is no threat of litigation over plaintiffs' statements regarding the Russian heritage of Stoli vodka, and thus no actual controversy before this court as required by the Declaratory Judgment Act, 15 U.S.C. § 2201. (See Defs. Pernod Ricard & Allied Domecq's Mem. in Supp. of Mot. to Dismiss at 9.) Defendants further request that the court issue a brief stay of approximately one month to allow the NAD to complete its investigation regarding the authenticity of Stoli vodka. (Id. at 1.) Attached to their memorandum, defendants have submitted an affidavit in which they state that they will not pursue legal action against plaintiffs for their past statements regarding Stoli's authenticity. (See La Jolla Decl.)

Plaintiffs respond that the court should not dismiss count one of the complaint because there is an actual controversy between themselves and defendants, and that the court should not grant a stay because there is no legitimate reason for granting defendants' motion for a brief stay. (See Pls. Memo. in Opp. to Defs. Pernod Ricard & Allied Domecq's Mot. to Dismiss, at 10, 21.) Plaintiffs allege that Pernod Ricard's statements regarding exploring legal remedies and thereafter initiation of an investigation with the NAD created an actual controversy between plaintiffs and the defendants, satisfying the requirement of subject matter jurisdiction under Rule 12(b)(1), F.R.Civ. P. (See id. at 12.) Plaintiffs also point to Allied Domecq's "cease and desist" letter as evidence of an "actual controversy" within the meaning of the Declaratory Judgment Act. (Id.) Plaintiffs further argue that this court should deny defendants' request for a brief stay because plaintiffs' interests would be harmed by such delay, and the relevant factors weigh in favor of rejecting the stay. (Id. at 23.)

**B. S.P.I. DEFENDANTS' JANUARY 16, 2007 MOTION TO DISMISS**

*4 Also before this court is S.P.I. defendants' January 16, 2007 motion to dismiss count one of the complaint (plaintiffs' declaratory judgment claim) pursuant to Rule 12(b)(1), F.R. Civ. P., and to dismiss count seven of the complaint (plaintiffs' unjust enrichment claim) for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), F.R. Civ. P. [FN3] Defendants argue that the declaratory judgment claim must be dismissed because plaintiffs have failed to allege an "actual controversy" with the S.P.I. defendants as required by the Declaratory Judgment Act. (See Defs. S.P.I. Group and Spirits' Mem. in Supp. of Mot. to Dismiss at 4.) Defendants claim that plaintiffs have only pointed to the actions of Pernod Ricard and Allied Domecq, failing to prove any controversy with the S.P.I. defendants. (Id. at 6.) Defendants also assert that the unjust enrichment claim should be dismissed because plaintiffs have failed to plead any injury sufficient for an unjust enrichment claim. (Id. at 8.) Defendants argue that an equitable remedy is not suitable for the following reasons: 1) plaintiffs suffered no injury that would meet the requirements of an unjust enrichment claim; and 2) there are adequate remedies at law for plaintiffs' alleged injuries. (Id.)

Plaintiffs respond that this court should not dismiss counts one or seven because there is an "actual controversy" between themselves and the S.P.I. defendants, which provides subject matter jurisdiction, and because their complaint does state a claim for unjust enrichment upon which relief can be granted. First, plaintiffs argue that "the actual controversy created by the conduct of the Pernod Defendants clearly extends to [the S.P.I. defendants]." (See Pls. Mem. in Opp. to Defs. S.P.I. Group and Spirits' Mot. to Dismiss at 16.) Plaintiffs argue that this extension adequately satisfies the requirement for subject matter jurisdiction under the Declaratory Judgment Act. Plaintiffs further argue that defendants have been unjustly enriched by misrepresenting the nature of Stoli vodka and thus diverting goodwill that Imperia vodka should have received. (Id. at 19-20.) Plaintiffs allege that because defendants have wrongfully marketed Stoli vodka as a Russian vodka product, defendants have unjustly benefited at their expense.

**DISCUSSION**

[1] A case is properly dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), F.R. Civ. P., when the district court does not have statutory or constitutional authority to adjudicate the

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

matter. A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists. *See Makarova v. United States, 201 F.3d 110, 113 (2d Cir.2000).*

## A. MOTION FILED BY PERNOD RICARD AND ALLIED DOMECQ ON JANUARY 16, 2007

### 1. Motion for a Partial Dismissal

[2] The first issue is whether the plaintiffs have shown by a preponderance of the evidence that "an actual controversy" exists between themselves and defendants as to their past statements about Stoli's authenticity as a Russian vodka. The Declaratory Judgment Act states, in part, that "[i]n a case of actual controversy ... any court of the United States ... may declare the rights and other legal relations of any interested party." *28 U.S.C. § 2201.* The Act was intended to enable parties to adjudicate disputes before either of them suffered great harm. *See In re Combustion, 838 F.2d 35, 36 (2d Cir.1988).* When making its determination as to whether a declaratory judgment is proper, the court must ask the following: 1) whether the judgment serves a useful purpose in explaining or settling the legal issues involved; and 2) whether a judgment would finalize the controversy and offer relief from uncertainty. *See Duane Reade, Inc. v. St. Paul Fire & Marine Insurance Co., 411 F.3d 384, 389 (2d Cir.2005) (citing Broadview Chem. Corp. v. Loctite Corp., 417 F.2d 998, 1001 (2d Cir.1969)); see also Kidder, Peabody & Co. v. Maxus Energy Corp., 925 F.2d 556, 562 (2d Cir.1991).* This inquiry is necessarily one of degree and affords the district court great discretion in making a determination. *See Certain Underwriters at Lloyd's, London v. St. Joe Minerals Corp., 90 F.3d 671, 675 (2d Cir.1996).*

*5 These plaintiffs have not proven that an "actual controversy" exists between themselves and Pernod Ricard and Allied Domecq regarding their past statements about Stoli. Plaintiffs argue that under the "reasonable apprehension of imminent suit" test, articulated in *Starter Corp. v. Converse, Inc.,* [FN4] they have sufficiently demonstrated that an actual controversy exists. However, the United States Supreme Court revisited this test in a case cited in plaintiffs' brief and has suggested that a lower threshold is required to find a case or controversy under the Declaratory Judgment Act. In *MedImmune, Inc. v. Genentech, Inc.,* the United States Supreme

Court held that an actual controversy existed even where the plaintiffs complied with the demands of the private defendants and thus did not infringe upon the rights asserted by the defendants. --- U.S. ----, ---- , 127 S.Ct. 764, 771, 166 L.Ed.2d 604. The *MedImmune* standard is necessarily less rigorous than the "reasonable apprehension of imminent suit" test; the party claiming that there was an actual controversy could not be sued in *MedImmune,* let alone prove that there was a "reasonable apprehension of imminent suit." *See id.; see also Goldman v. West, 2007 WL 1989291 *3 (S.D.N.Y.2007)* (Swain, J.) ("Recent decisions of the Supreme Court and Federal Circuit have, however, changed the law with respect to the 'reasonable apprehension' test, in effect lowering the bar for a plaintiff to bring a declaratory judgment action...."). In spite of this, the Court still held that there was an "actual controversy" within the meaning of the Declaratory Judgment Act in that case. *See MedImmune,* 127 S.Ct. at 771.

[3] Despite the lower threshold in *MedImmune,* plaintiffs are unable to prove that an actual controversy exists as to their past statements concerning Stoli vodka. Defendants have waived their right to sue plaintiffs regarding past statements about Stoli's authenticity. Consequently, there is no "substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of declaratory judgment." *MedImmune, Inc.,* 127 S.Ct. at 771. Even though defendants' cease and desist letter and initiation of a proceeding in NAD comprise conduct that created an actual controversy under *MedImmune,* their subsequent waiver of the right to sue because of past statements eliminated any controversy regarding those statements.

Furthermore, after applying the standards set forth in *Duane Reade* and *Kidder, Peabody & Co.,* it is clear that declaratory judgment is not suitable for plaintiffs' past statements for the reasons set forth: 1) a judgment regarding plaintiffs past conduct would not serve a useful purpose in settling the legal issues because there would be no threat of suit; and 2) it would not offer relief from uncertainty because of the waiver to sue for plaintiffs past statements. *See Duane Reade, 411 F.3d at 389;Kidder, Peabody & Co., 925 F.2d 556 at 562.*

*6 In their opposition memorandum, plaintiffs attempt to cite cases that purportedly prove that if a

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

2007 WL 4145277
523 F.Supp.2d 376, 2007 WL 4145277 (S.D.N.Y.), 2007-2 Trade Cases P 75,982
(Cite as: 2007 WL 4145277 (S.D.N.Y.))

"reasonable apprehension future conduct" exists, there still an actual controversy as to the past statements. (*See* Pls. Mem. in Opp. to Defs. Pernod Ricard and Allied Domecq's Mot. to Dismiss at 17.) However, none of these cases involve declarations, relieving the infringer from potential liability, nor do they stand for the proposition that all that is required for an actual controversy is a possible threat of a lawsuit without any immediacy. *See e.g., 800-Flowers v. Intercontinental Florist,* 860 F.Supp. 128 (S.D.N.Y.1994) (Leisure, J.) (discussing "first filed rule" without reference to a defendant submitted declaration waiving rights to file suit); *Larami Corp. v. Amron,* Civ. A. No. 92 CIV 7323, 1994 WL 369251 (S.D.N.Y.1994) (Haight, J.) (unpublished) (finding a controversy where the defendants threatened future litigation, where there was no waiver involved). Accordingly, plaintiffs are unable to prove that an "actual controversy" exists as to their past statement because defendants have submitted a waiver.

The next question is whether the threat of legal action for plaintiffs' future conduct is sufficiently immediate to create an "actual controversy." The threat of harm because of future statements that plaintiffs may make regarding Stoli's vodka is of sufficient immediacy to comply with the requirements articulated in *MedImmune.* Plaintiffs allege that they will continue to make statements about Stoli's Russian heritage. As is clear from the *MedImmune* decision, future conduct may be sufficiently imminent to comprise an "actual controversy." In that case, the plaintiffs could only be sued for possible future conduct, yet the Court held that this future conduct was of sufficient immediacy to warrant declaratory relief. *See MedImmune, Inc.,* 127 S.Ct. at 771. Here, plaintiffs allege that they have an advertising campaign centered on highlighting the distinction between Imperia and Stoli vodka, and that they plan to question the authenticity of Stoli vodka. Defendants have engaged in conduct that indicates that there would be a controversy between the parties by sending a cease and desist letter to plaintiffs and initiating a proceeding at the NAD. Both parties' conduct indicate that "there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of declaratory judgment" regarding any future statements that plaintiffs will make regarding Stoli's authenticity. *See MedImmune, Inc.,* 127 S.Ct. at 771.

[4] Furthermore, the *Duane Reade* analysis provides additional support for holding that there is an actual controversy as to the future statements that plaintiffs may make: 1) a judgment regarding plaintiffs' ability to comment on the Russian character of Stoli vodka serves a useful purpose in settling the legal issues because a threat of future suit still exists concerning plaintiffs' future advertising campaigns; and 2) it would offer relief from uncertainty because the parties would be on notice of their rights regarding plaintiffs' ability to comment on Stoli's authenticity as a Russian vodka. *See Duane Reade,* 411 F.3d at 389;*Kidder, Peabody & Co.,* 925 F.2d 556 at 562.

*7 Accordingly, the threat of legal action for future conduct does satisfy the "actual controversy" requirement under the Declaratory Judgment Act, and the court denies Pernod Ricard and Allied Domecq's motion to dismiss count one of the complaint as it relates to future statements that will be made by plaintiffs.

**2. Motion to Briefly Stay the Case**

[5] When determining whether to exercise its discretion to grant a motion to stay, a court must look to the following factors: "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." *LaSala v. Needham & Co.,* 399 F.Supp.2d 421, 427 (S.D.N.Y.2005) (Scheindlin, J.).

[6] The first prong of the balancing test weighs in favor of granting the motion for a brief stay. Any harm to plaintiffs' interests would be nominal at best because defendants only request a stay of thirty days. In fact, the NAD's decision may be illuminating for further resolution in this case, and thus beneficial to plaintiffs. Plaintiffs have not identified any concrete harm that they would suffer if the motion for stay is granted. The second prong of the test also indicates that a motion for a brief stay should be granted. Defendants have already invested time and money in the NAD proceedings, and consequently, they would suffer harm if the case is not briefly stayed to allow NAD to complete the investigation. As to the fourth prong, defendants have indicated that the interests of non-parties would be negatively impacted, citing the S.P.I. defendants. However, the S.P.I. defendants are

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

2007 WL 4145277                                                                                                    Page 7
523 F.Supp.2d 376, 2007 WL 4145277 (S.D.N.Y.), 2007-2 Trade Cases P 75,982
(Cite as: 2007 WL 4145277 (S.D.N.Y.))

no longer non-parties to the lawsuit, and defendants' failure to indicate other non-parties suggests that this factor does not weigh in favor of granting the motion.

The two most significant prongs of the *LaSala* test in the instant matter are prongs three and five: convenience to the courts and the public interest. These factors weigh in favor of defendants' motion to stay the proceedings.

First, allowing the NAD, a highly reputable institution, to provide its expert view on Stoli's authenticity as a Russian vodka would be extremely useful in resolving remaining claims in the complaint. This decision would promote judicial economy and be informative to the court in its own decision regarding the remaining claims. Furthermore, NAD's decision would promote settlement between the parties. The federal courts have a well-established policy of encouraging settlement to promote judicial economy and limit the waste of judicial resources. *See United States v. Glens Falls Newspapers, Inc.,* 160 F.3d 853, 856 (2d Cir.1998) (acknowledging the "strong public policy which encourages the settlement of cases"). Courts have recognized that a NAD decision is helpful in resolving differences between parties. *See e.g., AMF, Inc. v. Brunswick Corp.,* 621 F.Supp. 456, 458 (S.D.N.Y.1985) (Weinstein, J.) ("Reportedly no advertiser who has participated in the complete process of a NAD investigation and NARB appeal has declined to abide by the decision."); *Home Life Ins. Co v. Kaufman,* 547 F.Supp. 833 (S.D.N.Y.1982) (Sprizzo, J). Although these cases involve parties who contracted to have the NAD resolve their disputes, they are still useful in understanding the NAD's effectiveness in resolving disputes. Plaintiffs have already invested considerable time and energy into the investigation at the NAD, and it would be inefficient to allow them to obviate that proceeding at the last minute by initiating this action. If this court followed plaintiffs' suggestion and denied the motion for stay, not only would this court not benefit from the expertise of the NAD's decision, both parties and NAD would have wasted unnecessary energy, time, and money into a resolution of the issue at the NAD.

*8 Next, the public interest strongly weighs in favor of granting the motion to stay. Allowing NAD to complete its decision regarding Stoli's authenticity as a Russian vodka would allow it to set advertising standards for the industry on an important issue. The public and industry would benefit greatly from hearing the NAD's opinion on the issue, especially after so many resources and time have already been poured into the investigation.

For the aforementioned reasons, the court grants defendants motion for a thirty day stay.

## B. MOTIONS FILED BY S.P.I. DEFENDANTS ON JANUARY 16, 2007

### 1. Motion to Dismiss the Declaratory Judgment Claim

Plaintiffs have failed to satisfy their burden of proving by a preponderance of the evidence that there is an actual controversy between themselves and the S.P.I. defendants. None of the conduct that is discussed in their complaint implicated the S.P.I. defendants.

In their complaint, plaintiffs detail the actions of Pernod and Allied Domecq without reference to how these actions involve S.P.I. defendants. Plaintiffs have provided the court with no indication of how and what S.P.I. defendants have done to create a controversy between themselves and plaintiffs. The conduct that plaintiffs allege created a controversy-- the cease and desist letter, the press release, and the proceeding before NAD--only involved Allied Domecq and Pernod Ricard. All plaintiffs have alleged is that this conduct somehow "extends" to S.P.I. defendants, which is clearly a conclusory allegation. Plaintiffs provide no explanation for this claim. Because plaintiffs have failed to indicate in their complaint conduct by these defendants that alleges an "actual controversy," the court cannot even reach the question of whether or not that conduct is of "sufficient immediacy and reality to warrant the issuance of declaratory judgment." *See MedImmune,* 127 S.Ct. at 771. As such, there is no "actual controversy" within the meaning of the Declaratory Judgment Act as to these defendants.

### 2. Motion to Dismiss the Unjust Enrichment Claim

[7] S.P.I. defendants argue that count seven of the complaint, alleging unjust enrichment, should be dismissed pursuant to Rule 12(b)(6), F.R. Civ. P. To withstand an attack under Rule 12(b)(6), the complaint does not need "detailed factual

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

2007 WL 4145277
523 F.Supp.2d 376, 2007 WL 4145277 (S.D.N.Y.), 2007-2 Trade Cases P 75,982
(Cite as: 2007 WL 4145277 (S.D.N.Y.))

Page 8

allegations," but it must state a "plausible" basis for recovery that is not based on "conclusory" or "speculative" allegations. *See Bell Atlantic v. Twombly,* --- U.S. ----, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007). To state a claim for unjust enrichment under New York law, a plaintiff must allege the following: (1) the plaintiff conferred a benefit upon defendants,(2) that the defendants will obtain the conferred benefit without adequately compensating plaintiff, and (3) "equity and good conscience" require restitution. *See Kaye v. Grossman,* 202 F.3d 611, 616 (2d Cir.2000).

[8] Plaintiffs' argument is as follows: "By falsely advertising Stoli's supposed Russian character, Defendants are inequitably misappropriating for themselves the goodwill and product recognition that Russian Standard has built up through its marketing efforts." (*See* Pls. Mem. in Opp. to S.P.I,'s Mot. to Dismiss at 20.) This argument is logically flawed. Stoli vodka has been sold in the United States since as early as the 1960s. Imperia vodka was released in 1995. The proposition that a vodka, which has existed for approximately forty years longer than Imperia vodka, has "misappropriated" the goodwill owed to Russian Standard is ludicrous. Certainly, Stoli has built up its own goodwill through its forty years of existence prior to Imperia vodka's introduction into the market.

*9 Even under the low threshold that plaintiffs must meet under Rule 12(b)(6), plaintiffs' unjust enrichment claim must be dismissed. [FN5] Plaintiffs' proposition is not logical, let alone plausible. Plaintiffs have failed to state a claim upon which relief can be granted; they have not alleged a benefit that they have conferred upon defendants, as required for an unjust enrichment claim under New York law.

## CONCLUSION
For the foregoing reasons, defendants' motion to dismiss count one of the complaint is granted as to the S.P.I. defendants, but not as to Pernod Ricard and Allied Domecq. The motion to dismiss count seven of the complaint is granted as to all defendants. The cause of action will be stayed until the completion of the NAD proceeding, but not longer than thirty days.

**IT IS SO ORDERED**

FN1. Defendants S.P.I. Group SA and S.P.I. Spirits ("SPI defendants") initially sought to

dismiss the remaining counts in the complaint, alleging lack of personal jurisdiction, (*see* Mem. in Supp. to Mot. to Dismiss of Defs. S.P.I. Group and S.P.I. Spirits at 9), but have since abandoned this argument, (*see* Reply Mem. in Supp. to Mot. to Dismiss of Defs. S.P.I. Groups and S.P.I. Spirits at 1).

FN2. The Declaratory Judgment Act, in relevant part, states the following:
"In a case of actual controversy within its jurisdiction ... any court of the United States, upon filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration...."
28 U.S.C. § 2201.

FN3. When evaluating the motion to dismiss count seven of the complaint, the court drew favorable inferences in favor of the plaintiffs, relying heavily on the complaint, as required under Rule 12(b)(6), without reliance on the affidavits. *See Faulkner v. Beer,* 463 F.3d 130, 134 (2d Cir.2006).

FN4. In *Starter Corp. v. Converse, Inc.,* the Second Circuit enunciated the "reasonable apprehension" test, which was to be used when evaluating the "actual controversy" requirement for declaratory judgment claims:
"In a declaratory judgment action ... the test for an 'actual case or controversy' has two prongs, both of which must be satisfied in order to establish declaratory judgment jurisdiction: (1) has the defendant's conduct created a real and reasonable apprehension of liability on the part of the plaintiff, and (2) has the plaintiff engaged in a course of conduct which has brought it into adversarial conflict with the defendant."
84 F.3d 592, 594 (2d Cir.1996).

FN5. Plaintiffs also present a theory that supports the unjust enrichment claim, which has been rejected by courts. Plaintiffs claim that defendants obtained a benefit from its false advertising at the expense of plaintiffs because they are competitors. *See Barr Labs., Inc. v. Quantum Pharmics, Inc.,* 827 F.Supp. 111, 116-17 (E.D.N.Y.1993).

2007 WL 4145277                                                                              Page 9
523 F.Supp.2d 376, 2007 WL 4145277 (S.D.N.Y.), 2007-2 Trade Cases P 75,982
**(Cite as: 2007 WL 4145277 (S.D.N.Y.))**


      However, like the plaintiffs in *Barr*, they are
      unable to allege how their injury is different
      than that suffered by every other
      manufacturer of vodka. *Id.*


 523 F.Supp.2d 376, 2007 WL 4145277 (S.D.N.Y.),
2007-2 Trade Cases P 75,982


END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.                                                                Page 1
Not Reported in F.Supp., 1984 WL 327 (S.D.N.Y.)
**(Cite as: 1984 WL 327 (S.D.N.Y.))**

**C**Only the Westlaw citation is currently available.

United States District Court; S.D. New York.
QUESTECH CAPITAL CORPORATION, Plaintiff,
v.
FLIGHT DYNAMICS, INC., Defendant.
**No. 83 Civ. 6986 (GLG).**

May 7, 1984.
SHEA & GOULD 330 Madison Avenue New York,
New York 10017, for plaintiff; By: Joseph Ferraro,
Esq. Kenneth S. Grossman, Esq. of counsel.

WINTHROP, STIMSON, PUTNAM & ROBERTS
40 Wall Street New York, New York 10005 By:
William W. Karatz, Esq. Julie D. Fay, Esq. of
counsel.

ACKER, UNDERWOOD & SMITH 1200 Orbanco
Building 1001 SW Fifth Avenue Portland, Oregon
97204, for defendant; By: Timothy N. Brittle, Esq. of
counsel.

OPINION

GOETTEL, District Judge:

**\*1** Defendant Flight Dynamics, Inc. ('Flight
Dynamics') moves to transfer this action to the
United States District Court for the District of
Oregon pursuant to 28 U.S.C. § 1404(a) (1982).
[FN1] Plaintiff Questech Capital Corporation
('Questech') opposes this motion on the ground that
the convenience of the parties and witnesses and the
interest of justice will not be furthered by the
transfer.

Questech is a Delaware corporation with its principal
place of business in New York. It is in the business
of, among other things, lending money to worthy,
start-up or development stage companies that are
unable to obtain funding from other sources. Flight
Dynamics is a small research and development firm
incorporated in Oregon with its principal place of
business in that state.

By an agreement dated April 8, 1981 (the 'Loan
Agreement'), Questech agreed to lend $500,000 to

Flight Dynamics. Flight Dynamics in turn issued a
promissory note (the 'Note') to Questech, whereby
Flight Dynamics agreed to repay the principal within
five years and to make quarterly interest payments on
the unpaid principal amount at the rate of 15% per
year. The Loan Agreement provided that, in the event
of default, the holder of the Note could declare the
entire unpaid principal and accrued interest to be due.
The Loan Agreement further provided that the holder
of the Note could exercise the right to convert the
principal amount of the Note into common stock of
Flight Dynamics.

Questech alleges that, in the early part of 1982, it
became aware that Flight Dynamics was in violation
of certain covenants of the Loan Agreement, which
constituted default. When brought to its attention,
Flight Dynamics denied the existence of the
violations, although the parties entered into
negotiations at that time in an attempt to effect a
waiver or compromise of the alleged violations.

On March 29, 1982, Questech advised Flight
Dynamics that a default occurred and was continuing
and, therefore, Questech was declaring the principal
and interest on the Note due and payable. In April
1982, Flight Dynamics commenced an action in the
Oregon state court seeking a declaratory judgment
that there was no default and that Questech was not
entitled to acceleration of the loan. Questech
answered and asserted a counterclaim for breach of
the Loan Agreement seeking judgment for the
amount of the Note and interest.

In early fall of 1982, the parties met in New York to
discuss the Oregon action and the parties'
relationship. Shortly thereafter, on October 25, 1982,
Flight Dynamics delivered to Questech a cashier's
check in the amount of $516,208.3o representing the
full payment of the principal and interest then due
and owing under the Note.

Sometime later, Questech asserted a demand to
exercise its right to convert the Note into common
stock of Flight Dynamics. Flight Dynamics refused
and subsequently amended its complaint in the
Oregon action seeking a judgment declaring that
Questech could not compel the issuance of the stock.
Questech amended its counterclaim arguing that

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1984 WL 327 (S.D.N.Y.)
(Cite as: 1984 WL 327 (S.D.N.Y.))

Flight Dynamics had engaged in a deliberate course of conduct designed to mislead Questech as to Flight Dynamics' financial status, and thus causing Questech to forbear from exercising its right to convert the Note into stock. In support of this claim, Questech alleged it was not informed, as it should have been, about certain negotiations between Flight Dynamics and Pacific Telecom, Inc. ('Pacific Telecom'), a majority shareholder in Flight Dynamics, and Arthur Young & Company ('Arthur Young'), the outside accountant of Flight Dynamics. Questech sought a judgment declaring that it was entitled to receive stock pursuant to the Loan Agreement, and ordering Flight Dynamics to convert the principal amount of the Note into stock at the conversion rate specified in the Loan Agreement.

*2 On November 4, 1983, ten days prior to commencement of trial on the Oregon action, Questech withdrew its counterclaims and decided not to go to trial on any issue. On January 27, 1984, the Oregon court entered a default judgment against Questech, and held that Flight Dynamics' tender of a check to Questech was a conditional payment of Flight Dynamics' debt under the Loan Agreement. The court further held that Flight Dynamics was under no affirmative duty to perform and additional acts unless its check was dishonored. Flight Dynamics, Inc. v. Questech Capital Corp., No. A 8204-02006, slip op. at 3 (Cir. Ct. St. of Or., Cty of Multnomah Jan. 27, 1984).

Questech commenced the present action in October 1983, after the Oregon action had been pending for eighteen months. Questech's first claim is for breach of the Loan Agreement and its second claim is for violations of section 10(b) of the Securities Exchange Act of 1934, Rule 10b-5 promulgated thereunder, and section 352-c of the New York General Business Law, as well as common law fraud. Facts that were at issue in the Oregon action are alleged as the basis for these claims. In particular, Questech alleges that Flight Dynamics made misrepresentations about its financial condition and prospects, and that Questech was not informed, as it should have been, about alleged discussions with Pacific Telecom and an alleged audit report prepared by Arthur Young.

Presently before the Court is Flight Dynamics' motion to transfer this action to the District Court of Oregon. Section 1404(a) of title 28 of the United States Code provides that, 'for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.' [FN2]

The disposition of a motion to transfer based on the above is committed to the sound discretion of the trial court. Leif Hoegh & Co. v. Alpha Motor Ways, Inc., 534 F. Supp. 624, 626 (S.D.N.Y. 1982). In exercising this discretion, courts have enumerated the approximately half dozen interrelated criteria that are considered. These criteria include:
(1) the convenience to parties; (2) the convenience of witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems indicating where the case can be tried more expeditiously and inexpensively; and (7) the interests of justice, a term broad enough to cover the particular circumstances of each case, which in sum indicate that the administration of justice will be advanced by a transfer.
Schneider v. Sears, 265 F. Supp. 257, 263 (S.D.N.Y. 1967).

While the criteria afford some guidance, no magical formula exists for deciding these motions. Instead, 'the court must consider all the circumstances surrounding the individual case to determine where the trial [should] proceed . . .' Contractors Supply Corp. v. Kelly Klosure, Inc., No. 80- 4327, slip op. at 8 (S.D.N.Y. Feb. 20, 1981). Upon balancing the convenience and equities of the two district courts-- New York and Oregon--as between the parties, the Court has determined that the action should be transferred to the District Court of Oregon.

*3 The central issues in this case are whether Flight Dynamics breached the Loan Agreement and, subsequently, fraudulently induced Questech to forbear from exercising its right under the Loan Agreement to convert the principal amount of the Note into common stock of Flight Dynamics.

With the exception of three of Questech's officers in New York, it appears that all persons familiar with the subject matter of this action, who are potential witnesses, reside in Oregon. [FN3] Clearly, it would be more convenient for the four Flight Dynamics employees who dealt with Questech, and reside in Oregon, to have this action transferred. Of course, this factor taken alone would only balance the equities between the two district courts and thus be

Not Reported in F.Supp.
Not Reported in F.Supp., 1984 WL 327 (S.D.N.Y.)
(Cite as: 1984 WL 327 (S.D.N.Y.))

Page 3

insufficient to support transferral. The importance of non-party witnesses in this action, however, strongly supports the conclusion that the action should be transferred to Oregon.

Questech's claims are for fraud and misrepresentation. The importance of live testimony in a case involving fraud is obvious. 'Since deposition testimony in a fraud case where credibility is crucial is not wholly satisfactory, transfer is warranted.' Helfant v. Louisiana & Southern Life Insurance Co., 82 F.R.D. 53, 58 (E.D.N.Y. 1979). The non-party witnesses whose testimony would be of critical importance and all of whom are residents of Oregon, are Mr. Schembs, former president of Flight Dynamics and the only Flight Dynamics representative specifically named by Questech as having made the allegedly false and misleading statements, and representatives of Pacific Telecom and the Portland, Oregon, office of Arthur Young.

None of these non-party witnesses could be compelled to appear in New York, [FN4] but each of them could be compelled to appear by order of the Oregon District Court. Where the burden of testifying in New York, as opposed to Oregon, both as regards time and expense, would be so great for the non-party witnesses, transfer is warranted to ensure they can be compelled to appear. Commercial Solvents Corp. v. Liberty Mutual Insurance Co., 371 F. Supp. 247, 250 (S.D.N.Y. 1974) ('Courts generally transfer cases when important witnesses cannot be compelled to testify in the forum, but could be subpoenaed in the transferee court.').

An additional consideration is the fact that there has been a final determination in the Oregon action, arising out of the same events alleged here, that binds the parties on the causes of action and issues decided by the state court. The res judicata effect of the Oregon court's judgment will be determined by reference to Oregon law. [FN5] See 28 U.S.C. § 1738 (1982) ( 'The . . . judicial proceedings of any court of any such State . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State.'). Interpretation of a state's law is best left to the federal district court of that state, which is most familiar with it. Troyer v. Karcagi, 488 F. Supp. 1200, 1207 (S.D.N.Y. 1980); Kreisner v. Hilton Hotel Corp., 468 F. Supp. 176, 179 (E.D.N.Y. 1979).

*4 Another factor that weighs in favor of transfer is

that both parties have been represented in Oregon for nineteen months by counsel who were scheduled to commence trial on November 14, 1983. [FN6] Oregon counsels' familiarity with the events at issue would substantially reduce the expense of litigation. See Hall v. Kittay, 396 F. Supp. 261, 264 (D. Del. 1975).

In summary, to the extent that virtually all non-party witnesses reside in Oregon, and that a prior action involving essentially the same issues, at least with regard to the state claims, was decided in that state, the District Court of Oregon is the logical forum to preside over this action.

Under these circumstances, although the convenience of the parties is evenly balanced, the convenience of the witnesses and other interests of justice are overwhelmingly served by the transfer of this action. The action is, therefore, transferred to the United States District Court for the District of Oregon.

SO ORDERED.

> FN1 Flight Dynamics had made a motion to transfer or, in the alternative, to stay this proceeding pending completion of a related Oregon action, as discussed below. The Court, at the time, decided to reserve decision until the Oregon action was completed. Now that final judgment has been entered in that action, the Court will now rule on the motion to transfer.
> At the same time as Flight Dynamics' motion, Questech cross-moved for a default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure. Questech alleged as the basis for its motion the 'defendant's failure to answer or move with respect to the complaint.' It is clear, however, that Flight Dynamics' motion to stay all proceedings until final determination of the action pending between the parties in the Circuit Court for the State of Oregon, tolled its time to answer or otherwise move with respect to the complaint. Cf. Parker v. Transcontinental & Western Air, Inc., 4 F.R.D. 325, 326 (W.D. Mo. 1944) (the court denied the plaintiff's motion for default judgment, expressly stating that it was only after decision on the defendant's motion to stay the proceedings that 'it then became the

Not Reported in F.Supp.
Not Reported in F.Supp., 1984 WL 327 (S.D.N.Y.)
(Cite as: 1984 WL 327 (S.D.N.Y.))

duty of the defendant to file motions or other proceedings in the case'); 2A J. Moore & J. Lucas, Moore's Federal Practice ¶12.05 at 2240 n.1 (2d ed. 1948 & Supp. 1983). A motion to stay proceedings has been characterized as a pre-answer motion which, because it involves matters of judicial administration, is within the inherent powers of the court incident to the court's authority to regulate actions pending before it. 5 C. Wright & A. Miller, Federal Practice & Procedure, § 1360 at 633-34 (1969 & Supp. 1984).
As the Court withheld judgment on the stay of this action, Flight Dynamics was under no affirmative duty to file further motions or proceedings.

FN2 As a threshold matter, there can be no dispute that this action might have been brought in Oregon, where Flight Dynamics is incorporated and transacts business.

FN3 Questech can obviously make any of its officers available for testimony in Oregon if necessary, and, in this regard, it should be noted that only Mr. Brian, the president of Questech, is mentioned in Questech's complaint as a representative of Questech to whom misrepresentations were made.

FN4 Questech suggests, however, that Pacific Telecom and Arthur Young have an interest in testifying on Flight Dynamics' behalf, and that Schembs's live testimony would be unnecessary. This argument ignores that, in the first instance, the convenience of these witnesses would be best served in Oregon. Furthermore, Questech's argument that the testimony of Schembs may not be necessary is curious at best. Questech cannot seriously be suggesting that the testimony of others, or documentary evidence, would render unnecessary the testimony of the only individual alleged to have made misrepresentations.

FN5 The affidavit of Questech's president, Mr. Brian, briefly addresses the point, raised nowhere else in Questech's papers, that the Loan Agreement provided that New York state law would govern any dispute arising

under the Loan Agreement. Questech, however, does not contest transferral on this basis.

FN6 Questech withdrew its counterclaims and thus decided not to try the case only ten days before the Oregon trial was scheduled to commence. Judge Dooley stated:
You [Questech's counsel] are not the guy who decided to file a last-minute complaint in the Southern District of New York. You had this matter prepared, at least insofar as the pleadings and pretrial matters were concerned, you had it prepared to try right here. Someone in the main office on madison Avenue or Wall Street or somewhere apparently decided that they would either have a more favorable or perhaps more profitable-to-them forum on the east coast.
Defendant's Reply Memorandum in Support of the Motion to Transfer, Exhibit A, Transcript of the Proceedings in the Circuit Court of the State of Oregon for the County of Multnomah at 22.

Not Reported in F.Supp., 1984 WL 327 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.                                                                          Page 1
Not Reported in F.Supp., 1998 WL 180628 (W.D.N.Y.), 81 A.F.T.R.2d 98-654, 98-2 USTC P 50,203
(Cite as: 1998 WL 180628 (W.D.N.Y.))

**H**United States District Court, W.D. New York.
Kathleen BEAUCHAMP, Plaintiff,
v.
UNITED STATES OF AMERICA, Defendant.
**No. 97-CV-6372T.**

Jan. 16, 1998.

Arnold R. Petralia, Petralia, Webb & O'Connell,
Rochester, NY, for Kathleen Beauchamp, plaintiff.

Brian M. McCarthy, AUSA, United States Attorney,
Rochester, NY, George P. Eliopoulos, U.S.
Department of Justice, Ben Franklin Station,
Washington, DC, for USA, defendant.

**DECISION and ORDER**

TELESCA, J.

INTRODUCTION
*1 Plaintiff, Kathleen Beauchamp, brings this action
pursuant to IRS Code § 6672 seeking a refund for
taxes, penalties, and interest which she paid on
March 31, 1995 to the Internal Revenue Service
("IRS") to satisfy her tax liabilities and those of her
estranged husband, Claude Beauchamp. The
plaintiff alleges that she paid the IRS $48,325.35 in
order to recover her personal property after a levy
and seizure by the IRS. She claims that she only
owed $1,858.03 and, thus, seeks a refund of
$46,467.32.

Defendant, the United States, (hereinafter the "IRS")
has moved to stay this action pending the outcome of
a criminal proceeding against Claude Beauchamp
which has not proceeded beyond the issuance of a
target letter to him.

Plaintiff cross-moves for a default judgment arguing
that the IRS has failed to either answer or make a
motion permitted by Rule 12 of the Federal Rules of
Civil Procedure within the extended time granted by
this Court. Plaintiff also cross-moves for summary
judgment, seeking an Order of this Court declaring
that the plaintiff is not liable for certain tax liabilities
of her husband or his company and, thus, is entitled
to a refund.

For the reasons which follow, the defendant's motion
for a stay is denied and the defendant is ordered to
formalize its proposed motion to dismiss (disclosed
during oral argument) by filing and serving the
appropriate motion papers within 30 days of the date
of this Decision. The plaintiff's cross-motions for
default and summary judgment are deferred, pending
resolution of the defendant's motion to dismiss.

**BACKGROUND**
In March 1995, Kathleen Beauchamp paid the IRS
$48,325.35 under protest to recover her personal
property which the IRS had seized in collection of the
tax liabilities of the plaintiff and her estranged
husband.

Kathleen and Claude Beauchamp signed a
Separation Agreement in December of 1989 and had
allegedly been living separate and apart. However,
in February of 1995, they were living together at 350
Westminster Road, Rochester, New York.

Plaintiff alleges that on February 2, 1995, while
home alone, agents from the IRS Criminal
Investigation Division entered her apartment to
search for records of Claude Beauchamp and his
business, Chessman Security Systems, Inc.
("Chessman"). She claims that the agents had guns
and were extremely harassing to her. She also
claims that agents from the IRS Collection Office
arrived and seized all of the personal property in the
apartment (including furniture, paintings, jewelry, an
engagement ring, a motorcycle, etc .) without regard
to whether the items belonged to her or Claude.

Ms. Beauchamp alleges that the majority of the
items seized belonged to her pursuant to the 1989
Separation Agreement in which she relinquished all
of her ownership interest in Chessman in exchange
for the majority of the couple's personal property.
She asserts that, despite her attempts to explain the
situation to the IRS agents, she was forced to borrow
from a friend so that she could pay the IRS
$48,325.35 in order to recover her property.

*2 The income tax liabilities at issue involve the
Beauchamps' joint personal income tax liability for
1990, Claude Beauchamp's personal income tax
liabilities for the years 1991-1992, and a trust fund

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 180628 (W.D.N.Y.), 81 A.F.T.R.2d 98-654, 98-2 USTC P 50,203
(Cite as: 1998 WL 180628 (W.D.N.Y.))

recovery penalty (under 28 U.S.C. § 6672) assessed against Claude and Kathleen Beauchamp for employment tax withholding liabilities relating to Chessman.

Kathleen Beauchamp claims that she is not responsible for any of these taxes because (1) she never signed a joint return with Claude for the 1990 tax year; (2) she certainly is not liable for Claude's personal tax liabilities for the 1991-1992 tax years; and (3) she was not an owner of Chessman, nor was she a "responsible person" (i.e. did not write checks, no control of bills, etc.) and, thus, she is not liable for the employment tax liability.

Plaintiff alleges that she personally owed the IRS only $1,858.03 for the 1992 tax year and, thus, is entitled to a refund of $46,467.32. She claims that she filed the proper administrative claim for a refund with the IRS on January 8, 1997 and has had no response.

Plaintiff then filed this action on August 27, 1997. Upon application to this Court, the defendant's time to answer or otherwise plead was extended to November 28, 1997. The defendant failed to answer or move by that time. Instead, on December 1, 1997, defendant filed the instant motion seeking to stay the case pending resolution of the contemplated criminal action against Claude Beauchamp. However, at oral argument, counsel for the IRS informed the Court that Claude has not yet been indicted and has only received a "target letter" informing him that he is the subject of a criminal investigation. Furthermore, there is no allegation before this Court that the plaintiff in this civil action, Kathleen Beauchamp, is implicated in any way in the criminal case. She has not been indicted nor even received a "target letter." The first allegation of any potential criminal investigation of Ms. Beauchamp was defense counsel's statement during oral argument that she "has not yet received a clean bill of health from the Justice Department."

Plaintiff opposes the motion to stay and cross-moves for a default judgment and for summary judgment.

## DISCUSSION
*Motion to Stay the Action*

The IRS seeks to stay this civil action pending resolution of the criminal case against Claude

Beauchamp which it claims relates to the same tax liabilities which are at issue here. The IRS argues that a stay is appropriate under the circumstances principally because allowing the civil action to proceed would give the plaintiff (and presumptively plaintiff's estranged husband) more generous discovery under the Federal Rules of Civil Procedure than is available to the defendant in a criminal action under the Federal Rules of Criminal Procedure. The IRS implies that this civil action was commenced only after Claude Beauchamp received a "target letter" informing him of the criminal action and that it is being used as a ploy to get discovery that would otherwise be unavailable. The IRS also argues that grand jury secrecy laws may prevent the IRS from revealing relevant evidence in the civil matter. Finally, the IRS argues that resolution of the criminal case may obviate the need for the civil action.

*3 The plaintiff insists that the case should not be stayed because Claude Beauchamp, the only potential criminal defendant, is not a party to this civil action and Mrs. Beauchamp is not at all involved in the criminal investigation. Furthermore, the plaintiff points out that, even if a stay were appropriate, cases are almost never stayed **prior to service of an answer**, but only in the discovery stage. Plaintiff argues that any discovery requests which the IRS determines might jeopardize its criminal investigation should selectively be the subject of a motion for a stay (or protective order), but that the entire case should not be stayed--especially at this early stage.

I find that this case is not appropriate for a stay at this stage of the litigation. Staying a civil action pending the outcome of a parallel criminal action is appropriate "when the interests of justice seem ... to require such action." *Kashi v. Gratsos, 790 F.2d 1050, 1057 (2nd Cir.1986)*. However, "pre-indictment requests for a stay of civil proceedings are generally denied." *United States v. Private Sanitation Industry Assoc. of Nassau/Suffolk, Inc., 811 F.Supp. 802, 805 (E.D.N.Y.1992)* (collecting cases); *In re Par Pharmaceuticals, Inc. Securities Litigation, 133 F.R.D. 12, 13(S.D.N.Y.1990)* ["A total stay of civil discovery pending the outcome of related criminal proceedings ... is an extraordinary remedy ... [granted] ... when the criminal investigation has ripened into an indictment but [denied] where no indictment has issued."]. Furthermore, a stay is almost never appropriate where the criminal defendant is not a party to the civil action. See *United States v. One 1967 Ford*

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 180628 (W.D.N.Y.), 81 A.F.T.R.2d 98-654, 98-2 USTC P 50,203
(Cite as: 1998 WL 180628 (W.D.N.Y.))

_Galaxie,_ 49 F.R.D. 295 (S.D.N.Y.1970) [Court refused to stay wife's civil action pending disposition of her husband's criminal charges where wife was not a criminal defendant or potential defendant.].

It is particularly noteworthy that Claude Beauchamp, the target of the criminal case, is not a party to this civil action and, for that matter, has yet to even be indicted.    Furthermore, the IRS has provided absolutely nothing to this Court to indicate that Ms. Beauchamp is in any way a target of the criminal investigation, other than defense counsel's vague innuendo during oral argument.  The existence of the government's "target letter" to the plaintiff's husband is simply not a strong enough justification to further delay the administration of justice in this case.  The plaintiff should not be forced to await the lengthy outcome of her estranged husband's potential criminal prosecution in order to determine whether or not she is entitled to a refund of the substantial sum of money she paid to the IRS to recover her personal property.

Accordingly, the defendant's motion for a stay is denied.

*Plaintiff's Cross-Motion for Default Judgment*

Plaintiff cross-moves for default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure. The defendant obtained an extension of its time to answer or otherwise plead in this action to November 28, 1997.  It is undisputed that the defendant has taken no action except that, on December 1, 1997, the defendant filed the instant motion to stay the case. Plaintiff argues that a motion to stay does not satisfy the obligation to answer or extend the time to plead under Rule 12(4), since a motion to stay is not a motion listed under Rule 12 which will excuse the otherwise timely filing of an answer.  Thus, plaintiff argues that the time has run and the defendant is in default.   Plaintiff seeks this Court's permission to obtain entry of default, as required by Rule 55(e) in an action against the United States.

*4 At oral argument, counsel for the defendant argued that the motion to stay was sufficient to prevent a default.  However, the defendant also argued that it has grounds to make a motion to dismiss this case as a matter of law, arguing that the case is time-barred since plaintiff's exclusive remedy was a wrongful levy action, which has a nine-month

statute of limitations under 26 U.S.C. § 7426. _Williams v. United States,_ 947 F.2d 37 (2nd Cir.1991).   Plaintiff vehemently disputes the government's contention, arguing that the plaintiff is not limited to a wrongful levy action, but rather has the right to seek a refund, citing _United States v. Williams,_ 514 U.S. 527, 115 S.Ct.1611, 131 L.Ed.2d 608 (1995).

Although both counsel made compelling arguments on these issues in open court, there is no formal motion to dismiss currently pending before me.  The arguments were raised for the first time in the defendant's reply brief and during oral argument.  I decline to decide these potentially dispositive issues based on such an incomplete record.  Instead, the defendant is hereby directed to formalize its motion to dismiss by filing and serving its motion within thirty days of the date of this Decision and Order. Plaintiff's cross-motions for default and for summary judgment will be deferred pending resolution of the defendant's motion to dismiss.

### CONCLUSION

Defendant having moved for a stay of this action and plaintiff having cross-moved for default and for summary judgment, it is hereby

ORDERED that defendant's motion to stay is denied, and it is further

ORDERED that defendant is directed to formalize its motion to dismiss within thirty days of the date of this Decision and Order, and it is further

ORDERED that the plaintiff's cross-motions for default and for summary judgment are hereby deferred pending resolution of the defendant's motion to dismiss.

ALL OF THE ABOVE IS SO ORDERED.

Not Reported in F.Supp., 1998 WL 180628 (W.D.N.Y.), 81 A.F.T.R.2d 98-654, 98-2 USTC P 50,203

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.