Donald N. David (DD 5222)
Brian A. Bloom  (BB 5722)
Jeremy A. Shure (JS 0490)
**AKERMAN SENTERFITT LLP**
335 Madison Avenue, Suite 2600
New York, New York 10017
Telephone:  212.880.3800
Facsimile:  212.880.8965

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GREYSTONE CDE, LLC, <br><br> *Plaintiff,* <br><br> - *against* - <br><br> SANTE FE POINTE, *et al.*, <br><br> *Defendants.* | Civil Case No:  07CV.8377 (RPP) |

**DEFENDANTS' OPPOSITION TO**
**PLAINTIFF'S CROSS-MOTION FOR ENTRY OF**
**DEFAULT JUDGMENT AND, *IN THE ALTERNATIVE*, TO**
**STRIKE DEFENDANTS' PERSONAL JURISDICTION DEFENSE**

**AKERMAN SENTERFITT LLP**
*Attorneys for Defendants*
335 Madison Avenue, Suite 2600
New York, New York 10017
Telephone:  212.880.3800
Facsimile:  212.880.8965

*Of Counsel:*

Donald N. David (DD 5222)
Brian A. Bloom (BB 5722)
Jeremy Shure (JS 0490)

{NY026470;3}

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT…………………………………………….......  1

COUNTERSTATEMENT OF FACTS……………………………………….  1
    The California Action…………………………………………………..  1
    The New York Action…………………………………………………..  3

ARGUMENT…………………………………………………………………  4
    POINT I
    PLAINTIFF HAS FAILED TO SATISFY ITS BURDEN FOR SEEKING A
    DEFAULT JUDGMENT……………………………………………………
                                                    4

    POINT II
    THE ALLEGED DEFAULT CANNOT BE SAID TO BE
    WILLFUL, AS DEFENDANTS FILED A RESPONSIVE PLEADING
    PER THIS COURT'S ORDER………………………………………………  5

      a.  The Oliphant Parties Filed a Timely and Responsive Pleading
          Per This Court's Order…………………………………………………...  5

      b.  Greystone's Motion for Default is Demonstrative of Its
          Intention to Harass and Unnecessarily Increase the Costs of  7
          Litigation………………………………………………………………

    POINT III
    THE CALIFORNIA ACTION IS DEMONSTRATIVE OF
    DEFENDANTS' MERITORIOUS DEFENSES IN THIS ACTION……………..  7

    POINT IV
    PLAINTIFF HAS FAILED TO ALLEGE OR DEMONSTRATE
    ANY PREJUDICE IN THE CONTEXT OF A DEFAULT………………………  8

    POINT V
    DEFENDANTS HAVE NOT WAIVED ANY OBJECTION TO
    PERSONAL JURISDICTION……………………………………………….  9

CONCLUSION………………………………………………………………  10

## TABLE OF AUTHORITIES

**Cases**                                                                           **Page**

*Altman v. Liberty Equities Corp.*,                                                    10
322 F.Supp. 377 (S.D.N.Y. 1971)

*Arthur F. Williams, Inc. v. Helbig*,                                                   8
208 F.R.D. 41 (E.D.N.Y. 2002)

*Cody v. Mello*,                                                                        4
59 F.3d 13 (2d Cir.1995)

*Continental Casualty Co. v. Marsh*,                                                   10
No. 01 C 0160, 2002 WL 31870531 (N.D.Ill. Dec. 23, 2002)

*Credit Lyonnais Secs. (USA), Inc. v. Alcantara*,                                       5
183 F.3d 151 (2d Cir.1999)

*Davis v. Musler*,                                                                      8
713 F.2d 907 (2d Cir.1983)

*Enron Oil Corp. v. Diakuhara*,                                                         4
10 F.3d 90 (2d Cir. 1993)

*Greystone CDE, LLC v. Sante Fe Pointe L.P. et al.*,                                    3
No. 07 CV. 8377(RPP), 2007 WL 4230770 (S.D.N.Y. Nov. 30, 2007.)

*Holzsager v. Valley Hosp.*,                                                            9
646 F.2d 792 (2d Cir. 1981)

*In re: Barneys*,                                                                       6
206 B.R. 336 (Bankr. S.D.N.Y. 1997)

*In re Diloreto*,                                                                      10
No. 07-15413bf, 2008 WL 141922 at *5 (E.D.Pa. Jan. 11, 2008)

*Kulzer v. Pittsburgh-Corning Corp.*,                                                   9
942 F.2d 122 (2d Cir. 1991)

*Meehan v. Snow*,                                                                       4
652 F.2d 274 (2d Cir.1981)

*Parker v. Transcontinental & Western Air, Inc.*,                                       6
4 F.R.D. 325 (W.D. Mo. 1944)

*RTC v. Ruggiero,*                                                        6
994 F.2d 1221 (7th Cir. 1993)

*S.E.C. v. McNulty,*                                                      5, 8
137 F.3d 732 (2d Cir. 1998)

*Shah v. N.Y. State Dep't of Civil Service,*                             4
168 F.3d 610 (2d Cir. 1999)

*Silver v. Countrywide Realty, Inc.,*                                    10
39 F.R.D. 596 (S.D.N.Y. 1966)

*Smith v. Pay-Fone Systems, Inc.,*                                       6
627 F.Supp. 121 (N.D. Ga. 1985)

*Transaero, Inc. v. La Fuerza Aerea Boliviana,*                          9
162 F.3d 724 (2d Cir. 1998)

## Rules & Statutes

Rule 6(d)……………………………………………………………...……    3, 5

Rule 11……………………………………………………………………..    7

Rule 12(b)…………………………………………………………………    5, 6

28 U.S.C. §1404(a)………………………………………………………....    2

L.C.R. 6.1…………………………………………………………………..    3

## Miscellaneous

2A J. Moore & J. Lucas, Moore's Federal Practice ¶12.05 at 2240 n.1
(2d ed. 1948 & Supp. 983)……………………………………………………    6

This memorandum of law is submitted on behalf of Defendants Sante Fe Pointe, L.P., Sante Fe Pointe Management, LLC, Rant LLC, and Theotis F. Oliphant (collectively, "Defendants") in opposition to Plaintiff's Cross-Motion for Entry of Default Judgment, and in the Alternative, to Strike Defendants' Personal Jurisdiction Defense, dated January 22, 2008 (the "Cross-Motion for Default").

## PRELIMINARY STATEMENT

Greystone's Cross-Motion should fail because Greystone has failed to satisfy its burden for seeking a default judgment, let alone even present this Court with the applicable standard for granting a default judgment. Fatal to Greystone's argument, as set forth below, is that the Oliphant Parties filed a timely and responsive pleading pursuant to this Court's Order and the Federal Rules of Civil Procedure.[1] Greystone's Cross-Motion, which is devoid of any legal support to actually pass muster under the law, is simply gamesmanship to mask its otherwise weak opposition to the Oliphant Parties' Motion to Stay.[2] Accordingly, it must be denied.

## COUNTERSTATEMENT OF FACTS

### The California Action

It should be noted that, on February 4, 2008, United States Magistrate Judge Joseph Spero of the United States District Court (Northern District of California) issued an Order denying Greystone's Motion to Transfer Venue in the California Action to the Southern District of

---

[1]     On January 7, 2008, Defendants filed a motion in this case to stay all proceedings pending a ruling on a venue transfer motion made, *inter alia*, by Plaintiff in the proceeding presently pending in the United States District Court, Northern District of California, a case ("the California Action") whose issues include those to be litigated here or, *alternatively*, to stay all such proceedings indefinitely, until final resolution of the California Action (the "Motion to Stay"). (Docket Nos. 24-29).

[2]     Defendants respectfully reserve their right to move for Rule 11 sanctions against Plaintiff for making this frivolous application.

New York. *See* Exhibit A to the Declaration of Jeremy A. Shure ("Shure Decl.") attached here-
with.

On September 7, 2007, the Oliphant Parties sued Plaintiff Greystone CDE, LLC ("Grey-
stone CDE") and an affiliated entity, Greystone Servicing Corporation, Inc. ("Greystone Servic-
ing") in California state court. Their Complaint alleged torts and breaches of contract arising out
of Oliphant's project to acquire and rehabilitate an Oklahoma City apartment building as low in-
come housing special funding insured by the FHA's Office of Housing and Urban Development
("HUD"). The Complaint alleges that Greystone Servicing (a HUD-approved underwriter) was a
fiduciary that negligently, and perhaps intentionally, mishandled the Oliphant Parties' HUD ap-
plication, unilaterally and wrongfully withdrew it from HUD consideration, and sabotaged the
project. Moreover, that through a "bait and switch" operation, Greystone Servicing forced the
Oliphant Parties into accepting a bridge loan from Greystone CDE in an inadequate amount and
on vastly different (and inferior) terms than initially promised.

The Oliphant Parties amended the Complaint on September 25, 2007 to include allega-
tions of post-filing misconduct, and effected personal service on Greystone Servicing and on
Greystone CDE on September 25 and 26, 2007, respectively. Both Greystone entities answered
the Complaint on October 25, 2007, removed it to the Northern District of California[3] on the
same date, and recently filed a motion in that court to transfer venue to this Court under 28
U.S.C. §1404(a) (alleging convenience of the parties and witnesses). As set forth above, this
motion was denied on February 4, 2008. *See* Shure Decl., Ex. A.

---

[3]    Civil Case No. C07-05454 JCS.

**The New York Action**

On September 26, 2007 (the same day it was served with the Amended Complaint in the California Action), Greystone CDE filed the within action against the Oliphant Parties seeking, *inter alia,* to enforce the bridge loan. Greystone CDE amended its complaint on October 5, 2007.

Greystone CDE did not attempt to serve the summons or complaint in the usual manner, nor did it follow the Rule 6(d) waiver procedure, nor did it even seek to serve in accord with the service provisions of the bridge loan. Nonetheless, it filed an Affidavit of Service and moved to obtain an *ex parte* default judgment without notice to the Oliphant Parties. On November 30, 2007, this Court denied that motion, and granting the Oliphant Parties' cross-motion to strike the Clerk's Certificate (of default) and the Affidavit of Service. *Greystone CDE, LLC v. Sante Fe Pointe L.P. et al.*, No. 07 CV. 8377(RPP), 2007 WL 4230770 (S.D.N.Y. Nov. 30, 2007.)

On December 20, 2007, by endorsed letter, this Court granted Defendants' request to "re-spond to the complaint on or before January 7, 2008." (Docket No. 23). Subsequently, on January 7, 2008, Defendants filed a motion to stay all proceedings in this case pending the outcome of the transfer motion in the California Action or, in the alternative, pending the outcome of the California Action in its entirety. (Docket Nos. 24-27).

On January 22, 2008, Greystone filed its Opposition to the Oliphant Parties' Motion to Stay, and, in an attempt to muddy the waters, concurrently filed its Cross-Motion for Default. Greystone filed a single memorandum of law in opposition to the Oliphant Parties' Motion to Stay *and* in support of its own Cross-Motion for Default. Notably, the approximately twenty-one (21) page memorandum of law dedicates only two (2) pages setting forth Greystone's argument regarding the instant motion for a default judgment. *See* Cross-Motion at 19-21. Pursuant to

L.C.R 6.1, any opposing affidavits and answering memoranda shall be served within ten (10) business days thereof and replies shall be served within five (5) day business days thereof.    As such, recognizing that the Local Rules of this District required the Oliphant Parties file separate documents to reply and oppose, on January 29, 2008, the Oliphant Parties filed their reply to Greystone's Opposition to the Motion to Stay. (Docket No. 35).

**ARGUMENT**

**POINT I**

**PLAINTIFF HAS FAILED TO SATISFY ITS BURDEN FOR SEEKING A DEFAULT JUDGMENT**

As evidence of the frivolity of Greystone's Cross-Motion for Default, Greystone does not even present the Court with the applicable standard for granting a default judgment.  That standard establishes a preference for district courts "to reach judgments on the merits and not by way of default judgments." *Shah v. N.Y. State Dep't of Civil Service*, 168 F.3d 610, 615 (2d Cir. 1999) (citations omitted); *Cody v. Mello*, 59 F.3d 13, 15 (2d Cir.1995).  Accordingly, the Second Circuit has warned the District Courts, that "[w]hile courts are entitled to enforce compliance with the time limits of the [Federal Rules of Civil Procedure] by various means, the extreme sanction of a default judgment must remain a weapon of last, rather than first resort." *Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir.1981).  For this reason, any doubt as to whether a default judgment should be entered must be resolved in favor of the opposing party.  *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993).

Where, as here, defendants oppose a motion for a default judgment, the Court should consider three factors: (1) whether and to what extent the default was willful; (2) whether defendants have a meritorious defense; <u>and</u> (3) whether the adversary would suffer prejudice if the de-

fault were set aside. *Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 154 (2d Cir.1999); *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998).

The Oliphant Parties respectfully argue that: (1) the alleged default was <u>not</u> willful, and in fact, the Oliphant Parties have filed a responsive pleading pursuant to this Court's Order and the Federal Rules of Civil Procedure;[4] (2) the California Action is demonstrative of Defendants' meritorious defenses in this action; and (3) the Plaintiff has not alleged it would suffer even an iota of prejudice if this Court denied the Motion for Default Judgment for the simple reason that there can be no prejudice. For these reasons, Plaintiff's Cross-Motion for Default should be denied.

## POINT II

### THE ALLEGED DEFAULT CANNOT BE SAID TO BE WILLFUL,
### AS DEFENDANTS FILED A RESPONSIVE PLEADING PER THIS COURT'S ORDER

a. <u>The Oliphant Parties Filed a Timely and Responsive Pleading Per This Court's Order</u>

By endorsed letter, dated December 20, 2007, this Court granted Defendants' request to "respond to the complaint on or before January 7, 2008." (Docket No. 23). Subsequently, on January 7, 2008, Defendants filed a motion to stay all proceedings in this case pending a ruling on a Plaintiff's venue transfer motion then pending in the California Action. The California Action placed before that court a series of issues, including but not limited to those to be litigated here. Alternatively, Defendants sought to stay all proceedings herein until final resolution of the California Action. (Docket Nos. 24-29). In the intervening period, on February 4, 2008, United States Magistrate Judge Spero of the United States District Court (Northern District of Califor-

---

[4]     In addition, any purported discovery default by the parties (failing to appear at the discovery conference held before the defendants had or were required to even appear in this action) was without actual notice to the <u>parties</u>.

nia) issued an Order denying Greystone's Motion to Transfer Venue to the Southern District of New York, thus leaving all of the current issues, plus several others, pending before the California court.. *See* Exhibit A to the Shure Decl.

That Motion to Stay is a pre-answer motion within the scope of Rule 12(b) and is a responsive pleading as required by this Court. *See* Motion to Stay, pages 15-16; *see also In re: Barneys*, 206 B.R. 336 (Bankr. S.D.N.Y. 1997) (finding that a motion to stay litigation is a pre-answer motion within the scope of Rule 12(b)); *Parker v. Transcontinental & Western Air, Inc.*, 4 F.R.D. 325, 326 (W.D. Mo. 1944) (denying plaintiff's motion for default judgment, expressly stating that it was only after decision on the defendant's motion to stay proceedings that 'it then became the duty of the defendant to file motions or other proceedings in the case'); 2A J. Moore & J. Lucas, Moore's Federal Practice ¶12.05 at 2240 n.1 (2d ed. 1948 & Supp. 1983).

Disregarding all relevant case law on this issue, the Cross-Motion for Default is devoid of a *single* case supporting the proposition that a motion to stay a litigation is *not* a pre-answer motion under the Federal Rules of Civil Procedure. *See Smith v. Pay-Fone Systems, Inc.*, 627 F.Supp. 121 (N.D. Ga. 1985) (denying motion for default for failure to answer where party filed timely motion ). Instead, to support its argument that a "frivolous motion buys the movant no time" to file a responsive pleading, Greystone relies on *RTC v. Ruggiero*, a Seventh Circuit decision that is wholly inapposite to the instant motion. 994 F.2d 1221 (7th Cir. 1993); *see also* Opposition at 19-20. *Ruggerio* is different in that it is a *post-judgment proceeding* to enforce a judgment. In *Ruggerio*, the defendant filed an opposition to a petition for bankruptcy – the response in question was masked as a Rule 12 pleading. Judge Posner, acknowledging that the Federal Rules of Civil Procedure are not strictly applicable to supplementary proceedings, deemed the pleading frivolous because the response was not proper under Rule 12 of the Federal

Rules of Civil Procedure. *Id.* at 1227. Here, contrary to *Ruggerio*, Greystone has <u>not</u> asserted that the Motion to Stay is improper under Rule 12 – because they cannot in good faith do so.

      b.  <u>Greystone's Motion for a Default is Demonstrative of Its Intention to Harass and Unnecessarily Increase the Costs of Litigation</u>

Instead of simply opposing Defendants' motion to stay all proceedings, Greystone has chosen to cross-move for default. Greystone's – arguably frivolous – cross motion is simply another attempt by Plaintiff to threaten Defendants with default and an attempt to increase the cost of the instant litigation. Greystone, instead of simply agreeing to wait until its own transfer motion was heard in California, cross-moved for default out of meritless desperation.

Further evidence that the Oliphant Parties' Motion to Stay was made in good faith and that Greystone's Cross-Motion for Default is frivolous can be found in the fact that Magistrate Judge Spero (in the California Action) <u>denied</u> Greystone's Motion to Transfer Venue to the Southern District of New York. Recognizing that this was a likely possibility, the Oliphant Parties made every attempt to preserve the judicial and the parties' resources – the same cannot be said of Greystone. *See* Ex. A to the Shure Decl.

## POINT III

## THE CALIFORNIA ACTION REFLECTS DEFENDANTS' MERITORIOUS DEFENSES IN THIS ACTION

To make a showing of a meritorious defense, Defendant "need not establish his defense conclusively, but must present evidence of facts that if proven at trial, would constitute a complete defense." *McNulty*, 137 F.3d at 740 (internal quotation marks and citations omitted).

As set forth above, the parties to this action are substantively the same parties as in the

California action,[5] though they are aligned differently; *i.e.*, the Plaintiffs in this action are Defendants in the California action, and *vice versa*. The issues and parties in the California Action and in this New York action are related. However, the New York Action is but a piece of the California Action, viz. the California Action will resolve the New York Action, but not *vice versa*.

Accordingly, this Court is respectfully referred to the California Amended Complaint (filed by the Defendant in the California Action against this Plaintiff), which sets forth seven (7) causes of action against this Plaintiff. (Docket No. 9, Ex. A). There can be no doubt that these Defendants have offered sufficient facts to demonstrate that there is a meritorious defense to Plaintiff's claims.

**POINT IV**

**PLAINTIFF HAS FAILED TO ALLEGE OR DEMONSTRATE
ANY PREJUDICE IN THE CONTEXT OF A DEFAULT**

To establish prejudice in the context of a default, there must be a showing that "the delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir.1983); *see also Arthur F. Williams, Inc. v. Helbig*, 208 F.R.D. 41 (E.D.N.Y. 2002), (*citing Davis v. Musler*, 713 F. 2d 907, 916 (2d Cir.1983)). In this case, Plaintiff does not even allege that it will be prejudiced in any of these ways nor does the record support such a finding.

Greystone has failed to meet its burden of establishing any prejudice that would ensue as a result of a modest stay of this action – and in fact, rather than oppose the motion by demonstrating any prejudice [which Plaintiff has not even attempted to allege], Greystone instead re-

---

[5]    To be completely accurate, the California Action has an additional Defendant, Greystone Servicing Corporation, Inc.

gurgitates its transfer rational – an issue not presently before this Court – and then seeks a default

without any rational basis or legal support. *See* Cross-Motion for Default, p. 3-18.

### POINT V

### DEFENDANTS HAVE NOT WAIVED ANY
### OBJECTION TO PERSONAL JURISDICTION

Without regard to the law of this Circuit, Plaintiff erroneously argues that Defendants

have waived any objection to personal jurisdiction by their motion to stay. *See* Cross-Motion at

18-19. In the Oliphant Parties' Motion to Stay, <u>Defendants</u> specifically state that "[t]here is

likely no personal jurisdiction over the Oliphant Parties in New York." *See* Motion to Stay at 8.

This statement is sufficient to preserve Defendants' personal jurisdiction defense, as well as any

other defenses deemed waived by Fed.R.Civ.P. 12(h)(1), even if it only appeared as a footnote in

Defendants' prior motion papers. *See Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d

724, 730 (2d Cir. 1998). "Under the liberal pleading rules of Rule 8, a party need only state

these defenses in its first responsive filing and is not required to 'articulate them with any rigor-

ous degree of specificity.'" *Id.* (citing *Kulzer v. Pittsburgh-Corning Corp.*, 942 F.2d 122, 125

(2d Cir. 1991); *Holzsager v. Valley Hosp.*, 646 F.2d 792, 795-96 (2d Cir. 1981)).

Furthermore, Defendants were not required to join a motion to dismiss for lack of per-

sonal jurisdiction along with their motion for a stay of all proceedings. *See* Cross-Motion at 19.

The filing of a motion to stay does <u>not</u> preclude a subsequent motion to dismiss for lack of per-

sonal jurisdiction. *See In re Diloreto*, No. 07-15413bf, 2008 WL 141922 at *5 (E.D.Pa. Jan. 11,

2008) ("When a defendant initially files a motion that is not based upon these Rule 12(b) de-

fenses, it is not barred from filing a later motion under Rule 12(b)."); *see also Continental Casu-

alty Co. v. Marsh*, No. 01 C 0160, 2002 WL 31870531 at *3 (N.D.Ill. Dec. 23, 2002) ("a motion

for abstention, however labeled, is not a Rule 12 motion for purposes of the Rule's waiver provisions").

Regardless of the foregoing, Plaintiff clearly acknowledges that Defendants have not waived their personal jurisdiction defense by stating:

> *"DEFENDANTS CLAIM THAT "THERE IS NO PERSONAL JU-*
> *RISDICTION OVER THE OLIPHANT PARTIES IN NEW YORK."*

Plaintiff's Cross-Motion at 18 (emphasis added).

Moreover, the cases cited by Plaintiff are completely irrelevant to the issues before this Court on this cross-motion and are easily distinguishable. In *Silver v. Countrywide Realty, Inc.*, the defendants filed a motion to dismiss the action based upon a forum non conveniens defense. *See Silver v. Countrywide Realty, Inc.*, 39 F.R.D. 596 (S.D.N.Y. 1966). After the plaintiff opposed the motion, the defendants served their reply including, for the first time, an objection to personal jurisdiction. *See id.* at 598. Since the personal jurisdiction objection was not originally included in the defendants' notice of motion, such a later interposed objection was held as untimely. *See id.* at 599.

Plaintiff also cites to *Altman v. Liberty Equities Corp.*, 322 F.Supp. 377 (S.D.N.Y. 1971), for the proposition that a section 1404 motion for change of venue and a Rule 12(b) dismissal motion for improper venue must be litigated contemporaneously. *See* 322 F.Supp. at 379. However, there is no motion to dismiss based on forum non conveniens or to transfer venue before this Court, and *Altman* is inapplicable.

## CONCLUSION

For the foregoing reasons, the Oliphant Parties' respectfully request an Order: (i) denying Plaintiff's Cross-Motion for Default Judgment in its entirety; (ii) denying Plaintiff's Motion to

Strike Defendant's Personal Jurisdiction Defense; and (iii) for such other and further relief as this

Court deems just and proper under the circumstances.


Dated: New York, New York
       February 5, 2008

                              **AKERMAN SENTERFITT LLP**
                              *Attorneys for Defendants*

                              By:_____
                                    Donald N. David (DD 5222)
                                    Brian A. Bloom  (BB 5722)
                                    Jeremy A. Shure (JS 0490)

# APPENDIX A

UNREPORTED DECISIONS CITED IN PLAINTIFF'S CROSS-MOTION FOR ENTRY OF DEFAULT JUDGMENT AND, *IN THE ALTERNATIVE*, TO STRIKE DEFENDANTS' PERSONAL JURISDICTION DEFENSE

Westlaw.

Not Reported in F.Supp.2d                                                                                  Page 1
Not Reported in F.Supp.2d, 2002 WL 31870531 (N.D.Ill.)
(Cite as: 2002 WL 31870531 (N.D.Ill.))

**H**
Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois, Eastern Division.
CONTINENTAL CASUALTY CO., Plaintiff,
v.
Darren MARSH, Wycon Corp., and Britamco Un-
derwriters, Inc., Defendants.
**No. 01 C 0160.**

Dec. 23, 2002.

*MEMORANDUM OPINION AND ORDER*
NOLAN, Magistrate J.

**\*1** Plaintiff Continental Casualty Co.
("Continental") filed suit against defendants Brit-
amco . Underwriters, Inc. ("Britamco"), Wycon
Corp. [FN1] and Darren Marsh alleging that they
owe Continental more than $3.6 million in financed
premiums that were misappropriated by North
American Trucking Association, Inc. ("NATA").
The parties have consented to the jurisdiction of the
United States Magistrate Judge pursuant to 28
U.S.C. § 636(c). This matter is now before the
Court on Continental's motion to compel the depos-
ition of defendant Marsh and motion for sanctions,
and defendants' motion to dismiss Marsh from the
case due to lack of personal jurisdiction. For the
reasons set forth below, defendants' motion is gran-
ted and Continental's motions are both denied.

FN1. Wycon Corp. has been dissolved.

BACKGROUND
Continental is the assignee of all claims formerly
held by its insured, Transamerica Insurance Finance
Corporation ("TIFCO"). Cmplt. ¶ 7. In or about
January 1996, NATA approached TIFCO and pro-
posed that TIFCO finance insurance premiums for a
master insurance policy issued by Britamco cover-
ing physical damage to property owned or leased by
truckers who were members of NATA. *Id.* ¶ 8. On
January 15, 1996, Marsh, Britamco's vice president,
signed an Authorization Agreement from TIFCO

indicating that NATA was authorized to collect
premiums on behalf of Britamco. Two days later,
TIFCO accepted the Premium Finance Agreement
offered by NATA and, based on the representations
in the Authorization Agreement, sent NATA certain
premium funds. *Id.* ¶¶ 9-10, 34. NATA is alleged to
have misappropriated more than $3.6 million of
those premium funds rather than forwarding them
to Britamco, which prompted TIFCO-- under power
of attorney from NATA--to cancel the master insur-
ance policy. *Id.* ¶¶ 13-14. Continental claims that
Britamco, its exchange broker Wycon, and its now
former vice president Marsh are liable for repaying
those funds.

Continental initially filed suit against Britamco
only in the Circuit Court of Cook County. Approx-
imately three years later on January 9, 2001, Con-
tinental filed a second lawsuit in federal court seek-
ing to recover its premium funds from Wycon and
Marsh in addition to Britamco. Defendants moved
to dismiss or stay the action pursuant to the federal
abstention doctrine set forth in *Colorado River Wa-
ter Conservation District v. United States,* 424 U.S.
800 (1976), because a parallel action was already
pending in state court. The district court denied the
motion to dismiss but entered a stay that remained
in effect until February 1, 2002. Shortly thereafter,
Continental voluntarily dismissed its state court ac-
tion.

On February 28, 2002, defendants answered the
complaint and asserted several affirmative defenses
including lack of personal jurisdiction. On May 21,
2002, Continental moved to strike defendants' af-
firmative defenses and sought judgment on the
pleadings as to certain of those defenses. On June
13, 2002, Continental also filed motions to compel
the deposition of Marsh and for sanctions. One
week later, defendants moved to dismiss Marsh un-
der Fed.R.Civ.P. 12(b)(2) for lack of personal juris-
diction. On July 25, 2002, this Court directed Con-
tinental to depose Marsh on issues of personal juris-
diction and instructed the parties to submit supple-
mental briefs addressing whether jurisdiction was

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31870531 (N.D.Ill.)
(Cite as: 2002 WL 31870531 (N.D.Ill.))

Page 2

proper under the Illinois long-arm statute, federal due process factors and the fiduciary shield doctrine. Shortly thereafter on August 1, 2002, the Court denied Continental's motion to strike as premature and also denied its motion for judgment on the pleadings. The only issues remaining before the Court are defendants' motion to dismiss and Continental's motions to compel and for sanctions.

### DISCUSSION

**\*2** Fed.R.Civ.P. 12(b)(2) provides that an action should be dismissed against a party over whom the court lacks jurisdiction. The plaintiff bears the burden of providing sufficient evidence to establish that personal jurisdiction exists. *RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1276 (7th Cir.1997). In ruling on a motion to dismiss for lack of personal jurisdiction, the court resolves factual disputes in the pleadings and affidavits in favor of the plaintiff, but takes as true any unrefuted facts contained in defendants' affidavits. *Id.* at 1275.

### A. Waiver

Continental first argues that defendants have waived the defense of lack of personal jurisdiction because they failed to raise it in their motion to dismiss or to stay the proceedings back in February 2001. Fed.R.Civ.P. 12(h)(1) provides that the defense of lack of personal jurisdiction is waived "(A) if omitted from a motion in the circumstances described in subdivision (g), ..." Subdivision (g) provides that "[i]f a party makes a motion under [Rule 12] but omits therefrom any defense or objection then available to the party ... the party shall not thereafter make a motion based on the defense or objection so omitted." *See Berol Corp. v. BIC Corp.,* No. 02 C 0559, 2002 WL 1466829, at \*1 (N.D.Ill. July 8, 2002) (under Rule 12(g) "all Rule 12 defenses must be consolidated in one motion, and the failure to raise a defense available at the time the initial motion is raised acts as a waiver of the defense under Rule 12(h)(1)"). Continental claims that defendants waived the jurisdiction defense by failing to raise it in the Rule 12(b) motion to dismiss or to stay the proceedings. Pl. Mot., p. 3; Pl. Mem., pp. 1-2. Defendants argue that the motion

to stay was not a Rule 12 motion at all and, thus, they timely raised the defense in their answer to the complaint.

Whether a motion to dismiss or stay proceedings based on the abstention doctrine constitutes a Rule 12 motion triggering waiver of any omitted defenses appears to be an issue of first impression in this circuit. Motions seeking abstention are not specifically enumerated in Rule 12, but courts frequently allow abstention challenges to be raised in a Rule 12(b)(1) motion asserting lack of subject matter jurisdiction, a Rule 12(b)(6) m otion to dismiss for failure to state a claim, or both. *Carter v. Doyle,* 95 F.Supp.2d 851, 855 n. 8 (N.D.Ill.2000). Nevertheless, such motions do not "fit neatly into one of the two types of jurisdictional attacks generally raised under Rule 12(b)(1)--the challenge is neither the facial insufficiency of the complaint or the factual basis pleaded in the complaint." *Id.; Lowery v. Schnorf,* No. 97 C 6688, 1998 WL 341835, at \*3 (N.D. Ill. June 18, 1998). Nor do they technically seek dismissal for failure to state a claim under Rule 12(b)(6). *See DVI Business Credit Corp. v. Crowder,* 193 F.Supp.2d 1002, 1006 n. 3 (S.D.Tex.2002) (Rule 12(b)(6) "is not a vehicle for dismissal on abstention grounds").

**\*3** The purpose of Rule 12(g) is to "prevent litigants from interposing defenses in a piecemeal fashion and eliminate unnecessary delay at the pleading stage." *Donnelli v. Peters Securities Co.,* No. 02 C 0691, 2002 WL 2003217, at \*3 (N.D.Ill. Aug. 29, 2002). However, not every pre-answer motion falls under the ambit of Rule 12. *See, e.g., Carter v. Clark Material Handling Co.,* No. 97 C 4424, 1998 WL 89244, at \*2 (N.D.Ill. Feb. 17, 1998) (motion to transfer venue, unlike motion to dismiss for improper venue, is not a Rule 12 motion and "may be filed at any time"); *D'Amico v. Treat,* 379 F.Supp. 1004, 1007-08 (N.D.Ill.1974) (venue objection was not waived by filing an appearance and motion for enlargement of time to answer or otherwise plead).

The Court believes that a motion for abstention, however labeled, is not a Rule 12 motion for purposes of the Rule's waiver provisions. A motion for

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31870531 (N.D.Ill.)
(Cite as: 2002 WL 31870531 (N.D.Ill.))

Page 3

abstention seeks to have the court refrain from exercising jurisdiction during the pendency of a similar state court action based on principles of comity and federalism. *See Beres v. Village of Huntley, Illinois,* 824 F.Supp. 763, 766 (N.D.Ill.1992). This is not a defense contemplated by Rule 12 and, thus, it does not give rise to a waiver under Rule 12(h). *See Aetna Life Insurance Co. v. Alla Medical Services, Inc.,* 855 F.2d 1470, 1475 (9th Cir.1988) (motion to dismiss or stay proceedings pending resolution of state court action "did not seek relief provided under Rule 12(b) and hence was not subject to that Rule's restrictions"); *AFN, Inc. v. Schlott, Inc.,* 798 F.Supp. 219, 222 n. 4 (D.N.J.1992) ("motion to stay or dismiss a federal action due to a pending state action is not a Rule 12 motion and, therefore, a second motion to dismiss is not barred by Rule 12(g)"); *Manna v. Greenburgh No. 11 School District,* 2 F.Supp.2d 461, 463 n. 1 (S.D.N.Y.1998) ( motion styled as Rule 12(b) motion to dismiss was actually motion for abstention, whether in the form of dismissal or a stay); 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §§ 1360 (2d ed.1990) (motion to stay or dismiss on abstention grounds not one of the defenses enumerated in Rule 12(b), but relying on their inherent power federal courts consider such motion to make most effective use of judicial resources and avoid deciding matters peculiarly suited to determination by state's tribunals).

Of course, parties may choose to raise Rule 12 defenses along with their abstention challenges and, as a result, may waive any unasserted defenses pursuant to Rule 12(g) and (h). *See, e.g., Ng v. Gate Pallet Systems, Inc.,* No. 94 C 1234, 1994 WL 329806, at * (N.D.Ill. July 8, 1994) (defendant waived venue objection to amended complaint by failing to raise it in its first motion to stay, compel arbitration or dismiss the original complaint; first motion included a Rule 12(b)(3) venue objection as to one count and additional venue objection could have been raised at that time); *Rauch v. Day & Night Manufacturing Corp.,* 576 F.2d 697 (6th Cir.1978) (defendants waived personal jurisdiction defense by filing a prior motion to stay pending the outcome of a parallel state court action which also

included a Rule 12(b)(6) statute of limitations defense). But such joinder is not required by Rule 12 and where, as here, the motion is strictly one for abstention, waiver does not apply.

*4 Having determined that defendants timely asserted a personal jurisdiction defense in their answer to the complaint, the Court next considers whether it has jurisdiction over defendant Marsh.

B. Personal Jurisdiction

In a case based on diversity of citizenship, a federal district court sitting in Illinois has personal jurisdiction over a nonresident defendant only if an Illinois court would have jurisdiction. *RAR,* 107 F.3d at 1275. In determining whether personal jurisdiction exists, the Court must examine (1) state statutory law; (2) state constitutional law; and (3) federal constitutional law. *Id.* at 1276.

1. Illinois Long-Arm Statute

The Illinois long-arm statute provides that an Illinois court "may ... exercise jurisdiction on any ... basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c). "Because the Illinois statute authorizes personal jurisdiction to the constitutional limits, the three inquiries mentioned above collapse into two constitutional inquiries--one state and one federal." *RAR,* 107 F.3d at 1276. If jurisdiction is improper under the Illinois or United States Constitutions, then the court cannot exercise jurisdiction over the defendant. *Jamik, Inc. v. Days Inn of Mount Laurel,* 74 F.Supp.2d 818, 821 (N.D.Ill.1999).

2. Illinois Constitution

The Illinois Supreme Court has provided little guidance as to how state due process differs from federal due process in the personal jurisdiction context. It has, however, explained that "jurisdiction is to be asserted only when it is fair, just, and reasonable to require a non-resident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which af-

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31870531 (N.D.Ill.)
(Cite as: 2002 WL 31870531 (N.D.Ill.))

fect interests located in Illinois." *Rollins v. Ellwood,* 141 Ill.2d 244, 275, 565 N.E.2d 1302, 1316 (1990). In addition, Illinois recognizes a fiduciary shield doctrine which prevents personal jurisdiction over an individual whose contacts with Illinois are solely the result of acts as a representative or fiduciary of a corporation. *Plastic Film Corp. of America, Inc. v. Unipac, Inc.,* 128 F.Supp.2d 1143, 1146 (N.D.Ill.2001). The Illinois Constitution's guarantees of due process are not necessarily the same as those provided by the federal Constitution, but with the exception of the fiduciary shield doctrine, the parties have not presented any evidence to suggest that the outcome would be different under Illinois as opposed to federal constitutional law. *See, e.g., Hyatt International Corp. v. Coco,* 302 F.3d 707, 715 (7th Cir.2002) ("there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction"); *Kohler Co. v. Kohler International, Ltd.,* 196 F.Supp.2d 690, 695-96 (N.D.Ill.2002). Thus, the Court will proceed with an analysis of federal constitutional limits on jurisdiction.

3. Federal Due Process

**\*5** The Due Process Clause of the Fourteenth Amendment limits when a state court may assert personal jurisdiction over a nonresident defendant. *RAR,* 107 F.3d at 1277. A defendant must have "certain minimum contacts with [the forum state]" such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice." ' *International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement,* 326 U.S. 310, 316 (1945). In this case, Continental claims that the Court has both specific and general jurisdiction over Marsh. Pl. Supp. Mem., p. 5. Specific jurisdiction refers to jurisdiction over a defendant in a suit "arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 8 (1984). In specific jurisdiction cases, the court must determine whether the defendant "purposefully established minimum contacts within the forum State" such that he "should reasonably anticipate being haled into court" in that state. *Bur-*

*ger King Corp. v. Rudzewicz,* 4 71 U.S. 462, 474, 476 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980)). The court considers whether minimum contacts exist and, if so, whether the exercise of personal jurisdiction is reasonable and fair under the circumstances. *Burger King,* 471 U.S. at 476-77; *Brandon Apparel Group, Inc. v. Quitman Manufacturing Co.,* 42 F.Supp.2d 821, 829 (N.D.Ill.1999). In making this determination, the court must consider five factors: (1) the burden on the defendant of litigating in the forum; (2) the interests of the forum; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interests of the states in furthering fundamental substantive policies. *Burger King,* 471 U.S. at 474-75.

General jurisdiction, on the other hand, "is for suits neither arising out of nor related to the defendant's contacts, and it is permitted only where the defendant has 'continuous and systematic general business contacts' with the forum." *RAR,* 107 F.3d at 1277 (quoting *Helicopteros,* 466 U.S. at 416). In these cases, the court must look to the defendant's additional contacts with the forum state beyond those related to the pending lawsuit. *Dehmlow v.. Austin Fireworks,* 9 63 F.2d 941, 947 n. 6 (7th Cir.19 92). Those additional contacts must be intentional, substantial, and continuous, rather than inadvertent, trivial, or sporadic. *Asset Allocation and Management Co. v. Western Employers Insurance Co.,* 892 F.2d 566, 570 (7th Cir.1989).

4. Analysis

Marsh is a Florida resident with no ties to Illinois other than the fact that he worked for Britamco, a Florida insurance company that issued policies through the Illinois Insurance Exchange. He has never had an office, bank account, mailing address or telephone number in Illinois, and he has only been to Illinois once on a matter wholly unrelated to this case. Marsh Aff. ¶ 5; Marsh Dep., p. 43. Continental nonetheless claims that it has alleged sufficient facts to establish both specific and general jurisdiction over Marsh in his capacity as a

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31870531 (N.D.Ill.)
(Cite as: 2002 WL 31870531 (N.D.Ill.))

Page 5

former officer of Britamco. The Court disagrees.

*6 With respect to specific jurisdiction, Marsh did issue a policy to NATA at a Chicago address and he signed documents relating to the policy that were captioned "Britamco Underwriters, Inc., Chicago, Illinois." However, Marsh conducted all negotiations and signed all documents in Florida. *Compare NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.,* 28 F.3d 572, 581 (7th Cir.1994) ("a defendant's participation in substantial preliminary negotiations conducted in the forum state leading to the contract in issue is a sufficient basis for personal jurisdiction"). Moreover, Continental is not disputing the terms of the insurance policy; rather, it is seeking to recover premium payments allegedly owed under TIFCO's Premium Finance Agreement with NATA. Specifically, Continental alleges that Marsh signed an Authorization Agreement that misrepresented NATA's authority to collect premiums on behalf of Britamco. Cmplt. ¶¶ 27, 34, 37. But TIFCO is a Maryland corporation, and there is no evidence that Marsh's activities with respect to that Authorization Agreement were directed to TIFCO in Illinois as opposed to Maryland. *Compare Calder v. Jones,* 465 U.S. 783, 789-90 (1984) (California court had jurisdiction over nonresident defendants who "intentionally directed [libelous statements] at a California resident"); *Hyatt International Corp.,* 302 F.3d at 710 (finding personal jurisdiction over resident of Italy where there were "[f]lurries of faxes and phone calls between [defendant in] Milan and Chicago ... and [defendant] even visited ... Chicago headquarters on one occasion in connection with the proposed deal"). In sum, there is nothing to suggest that Marsh would reasonably anticipate being haled into court in Illinois in regard to a financing agreement with a Maryland corporation.

Continental has also failed to establish that this Court has general jurisdiction over Marsh. Marsh is a former vice president of Britamco which was the largest syndicate on the Illinois Insurance Exchange, and a former director of Wycon, Britamco's exchange broker. Cmplt. ¶ 2. But this does not establish that Marsh, as opposed to Britamco, had any

personal ties to Illinois. The mere fact that Marsh was an underwriter authorized to sign line slips on the Illinois Insurance Exchange is not sufficient to demonstrate that he personally had continuous and systematic general business contacts with Illinois. Indeed, Marsh worked for two Florida corporations with their principal places of business in Coral Springs, Florida, and he conducted all of his business in Florida. Cmplt. ¶¶ 3-4; Amended Answer ¶¶ 3-4. Moreover, there is no evidence that Marsh issued any other policies to insureds in Illinois. *Compare Banwell v. Illinois College of Optometry,* 981 F.Supp. 1137, 1143 (N.D.Ill.1997) (asserting personal jurisdiction over nonresident officer of Illinois corporation); *Brujis v. Shaw,* 876 F.Supp. 975, 980 (N.D.Ill.1995) (defendant subject to personal jurisdiction due to his "position as director of an Illinois corporation").

*7 Nor is the Court persuaded by Continental's argument that jurisdiction exists because Marsh signed discovery responses in the state court proceedings stating that he was acting "under penalty of perjury under the laws of the state of Illinois." Pl. Supp. Mem., pp. 4-5; Pl. Supp. Reply, pp. 3-4. Marsh was not personally named in that lawsuit so his affidavit does not demonstrate his consent to this Court's jurisdiction. Similarly, Marsh's testimony that he has no preference as to where he is sued is not alone sufficient to justify haling him into court in Illinois in the absence of evidence that he has minimum contacts with the state.

Even if Marsh did have sufficient minimum contacts with Illinois as an officer of Britamco and director of Wycon to satisfy due process requirements, he would nonetheless be protected by the fiduciary shield doctrine. As noted, this doctrine recognizes that corporate officers, directors and shareholders are separate and distinct from the corporation and prevents personal jurisdiction over an individual whose only contacts with Illinois are in his capacity as a corporate fiduciary. *Rice v . Nova B iomedical Corp.,* 38 F.3d 909, 912 (7th Cir.1994) (doctrine "denies personal jurisdiction over an individual whose presence and activity in the state ... were solely on behalf of his employer or other princip-

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31870531 (N.D.Ill.)
**(Cite as: 2002 WL 31870531 (N.D.Ill.))**

Page 6

al"); *Kula v. J.K. Schofield & Co.,* 668 F.Supp. 1126, 1129 (N.D.Ill.1987). In this case, Marsh's only contacts with Illinois were in his role as a fiduciary of Britamco and Wycon. Continental argues that the doctrine does not apply because Marsh was a high-ranking company officer with "substantial discretionary authority." Pl. Resp., p. 7; *Jones. v. Sabis Educational Systems, Inc.,* 52 F.Supp.2d 868, 883 (N.D.Ill.1999) (shield is removed if individual was motivated by personal interests and acted with discretion). However, he was not a shareholder and had no financial stake in the company's health. *See Plastic Film Corp. of America,* 128 F.Supp.2d at 1147 ("[t]he determinative factor is the individual's status as a shareholder, not merely as an officer or director"). Nor is there any allegation that "the corporation was a mere shell utilized by [Marsh] for his own personal benefit." *YKK USA, Inc. v. Baron,* 976 F.Supp. 743, 747 (N.D.Ill.1997). On these facts, it would not be fair to require Marsh to personally defend this action in Illinois. *Clipp Designs, Inc. v. Tag Bags, Inc.,* 996 F.Supp. 766, 769 (N.D.Ill.1998) (no jurisdiction over individual corporate officer where plaintiff did not provide the court with "any equitable reasons for why this Court should disregard the corporate entity").

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss Marsh for lack of personal jurisdiction (Docket Entry # 42-1) is granted. Continental's motion to compel the deposition of Marsh (Docket Entry # 40-1) is denied, as is its motion for sanctions (Docket Entry # 40-2). However, Continental may depose Marsh upon proper subpoena.

Not Reported in F.Supp.2d, 2002 WL 31870531 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Westlaw.

Slip Copy                                                                              Page 1
Slip Copy, 2007 WL 4230770 (S.D.N.Y.)
**(Cite as: 2007 WL 4230770 (S.D.N.Y.))**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
GREYSTONE CDE, LLC, Plaintiff,
v.
SANTE FE POINTE L.P., Sante Fe Pointe Manage-
ment, LLC, Rant LLC, and Theotis F.
Oliphant, Defendants.
**No. 07 CV. 8377(RPP).**

Nov. 30, 2007.

Harnik Wilker & Finkelstein LLP, ATTN: Stephen
M. Harnik, New York, NY, for Plaintiff.

Akerman Senterfitt LLP, ATTN: Donald N. David,
Brian A. Bloom, Jeremy A. Shure, New York, NY,
for Defendants.

**OPINION AND ORDER**
ROBERT P. PATTERSON, JR., District Judge.

**\*1** On October 24, 2007, Plaintiff Grey stone CDE,
LLC, applied for a clerk's certificate of default by
Defendants Sante Fe Pointe L.P., Sante Fe Pointe
Management, LLC, Rant LLC, and Theotis F. Ol-
iphant ("Defendants"), pursuant to Rule 55(a) of the
Federal Rules of Civil Procedure and Local Civil
Rule 55.1. Upon issuance of the clerk's certificate
of default on October 25, 2007, Plaintiff applied to
the Court for entry of judgment by default against
Defendants pursuant to Rule 55(b)(2) of the Federal
Rules of Civil Procedure and Local Civil Rule
55.2(b). The Court denied the application and direc-
ted Plaintiff to proceed by moving for entry of de-
fault judgment with notice to Defendants. Plaintiff
so moved on November 5, 2007. On November 8,
2007, counsel for Defendants made a special ap-
pearance for the limited purpose of filing an oppos-
ition to Plaintiff's motion and a cross motion to va-
cate Plaintiff's service of the complaint and
amended complaint, to strike the affidavit of ser-
vice filed by Plaintiff, and to strike the clerk's certi-
ficate issued at Plaintiff's request. For the following
reasons, Plaintiff's motion for entry of default judg-
ment (Doc. No. 6) is denied, and Defendants cross

motion seeking to vacate service of the complaint
and amended complaint and to strike the clerk's cer-
tificate of default and affidavit of service (Doc. No.
8) is granted.

**BACKGROUND**

This case involves a race to the courthouse in a
breach of contract action by a lender against a bor-
rower, guarantors, and pledgors in which Plaintiff
and Defendants seek forums on opposite coasts of
the country. Following Plaintiff's sending Defend-
ants notice of default of their Bridge Loan Agree-
ment and guaranty agreements on August 21, 2007,
Defendants were the first to commence an action on
September 7, 2007, in the Superior Court of Cali-
fornia, County of Alameda (the "California ac-
tion"). (Decl. Donald N. David Opp'n to Pl.'s Mot.
Default J., Ex. A.) That pending action, in which
Defendants are the plaintiffs, claims that Plaintiff
caused Defendants to be unable to perform the con-
tracts in question. [FN1] The parties in the Califor-
nia action are the same as the parties in the action
before this Court. Plaintiff (the defendant in the
California action) removed the California action to
the United States District Court for the Northern
District of California based on diversity jurisdic-
tion, (Defs.' Opp'n to Pl.'s Mot. Entry Default J. &
Cross Mot. Vacate Service Compl. and Amended
Compl. at 2-3.) On September 26, 2007, Plaintiff
commenced its own action against Defendants in
this Court for breach of the Bridge Loan Agreement
and guaranty agreements. On September 27, 2007,
Plaintiff made service upon Defendants by deliver-
ing copies of the summons and complaint by Feder-
al Express. (Pl.'s Mem. Law Supp. Mot. Entry De-
fault J. at 2.)

> FN1. In their first amended and supple-
> mental complaint for damages and declar-
> atory relief, Defendants claim that Plaintiff
> (the defendant in the California action)
> committed a number of bad acts, including
> professional negligence, breach of fidu-
> ciary duty, constructive fraud, intentional

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

interference with prospective economic advantage, anticipatory breach, and breach of the implied covenant of good faith and fair dealing. (Defs.' Opp'n Pl.'s Mot. Entry Default J. & Cross Mot. Vacate Service Compl. and Amended Compl., Ex. A.)

Having concluded that Defendants failed to file a timely answer or otherwise defend, Plaintiff filed an affidavit of service with an application for a clerk's certificate of Defendants' default on October 24, 2007. (Pl.'s Notice Mot. Entry Default at 4 & Ex. D.) The certificate was issued, and Plaintiff applied to the Court for entry of a default judgment the following day. The Court denied the application, directing Plaintiff to proceed by moving for entry of a default with notice to Defendants. Plaintiff did as advised and filed the instant motion for entry of default judgment on November 5, 2007. [FN2]

> FN2. Subsequent to moving for entry of default judgment in this Court, Plaintiff filed a motion in the California action to transfer venue to this Court pursuant to 28 U.S.C. § 1404(a). (Defs.' Opp'n to Pl.'s Mot. Entry Default J. & Cross Mot. Vacate Service Compl. and Amended Compl. at 3; Decl. Donald N. David Opp'n to Pl.'s Mot. for Default J., Ex. C.)

*2 In the period of time following Plaintiff's purported service of process, a dispute ensued between counsel for the parties over whether Plaintiff had effected proper service of process on Defendants. Plaintiff took the following position in an email dated October 8, 2007, and addressed to Ann McFarland Draper, Esq., an attorney in New York representing Defendants in the California action: "Defendants agreed that service of process may be effected by registered or certified mail (or any substantially similar form of mail). We served the summons and complaint by Fedex. Copies of the confirmations of delivery are annexed. If you require additional time to answer, please let me know." (*Id.* at 4 & Ex. C.) In an email to Plaintiff's counsel dated October 26, 2007, Ms. Draper took the position that she had not

appeared in this action, that Defendants had not been served, that her firm was not authorized to accept service of process for any Defendant in the New York action, that Plaintiff's Federal Express delivery "was taken as a courtesy," and that because of the out-of-state service, the summons must specify a thirty-day, rather than twenty-day, response time. (*Id.* at 5 & Ex. G.)

The dispute between Plaintiff and Defendants concerning service of process centers on a provision in their contractual documents. On December 20, 2006, Plaintiff entered into a Bridge Loan Agreement with Defendant Santa Fe Pointe L.P., by which Plaintiff agreed to lend up to $500,000 in principal to finance predevelopment expenses of an affordable housing development to be known as the Sante Fe Pointe Apartments in Oklahoma City. (Compl. § 9 & Ex. A.) On or about the same date, Plaintiff entered into three agreements to guarantee repayment of the loan (Compl. §§ 13-15):(l)a Guaranty and Suretyship Agreement with Defendant Theotis Oliphant by which Oliphant guaranteed and became a surety to Plaintiff for the due, punctual and full payment and performance of Sante Fe Pointe L.P.'s obligations under the Bridge Loan Agreement (Compl., Ex. C); (2) a Partner Guaranty, Pledge and Security Agreement ("Partner Agreement") with Defendants Santa Fe Pointe Management, LLC, and Oliphant, and by which Defendant Santa Fe Pointe L.P. consented to be bound (Compl., Ex. D); and (3) a Developer Limited Guaranty, Pledge and Security Agreement ("Developer Agreement") with Defendant Rant, LLC (Compl., Ex. E.).

The Partner Agreement and Developer Agreement each contain a section governing "Submission to Jurisdiction." [FN3] The "Submission to Jurisdiction" section of the Partner Agreement provides in relevant part:

> FN3. The Bridge Loan Agreement itself does not contain a section governing submission to jurisdiction in New York; nor does the Guaranty and Suretyship Agreement with Defendant Oliphant. The parties

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

do not appear to dispute that the service provisions in the Partner Agreement and Developer Agreement control and cover each of the named Defendants.

(a) Pledgors hereby irrevocably and unconditionally:

...

(iii) agree that service of process in any [legal] action or proceeding [relating to this agreement] may be effected by mailing a copy thereof by registered or certified mail (or any substantially similar form of mail), postage prepaid, to Pledgors at the addresses referred to on page 1 of this agreement ....

*3 (Compl., Ex. D, § 26(a)(iii), at 16.) The "Submission to Jurisdiction" section of the Developer Agreement contains identical language, but requires "return receipt requested" in addition to "postage prepaid." (Compl., Ex. E, § 26(a)(iii), at 14.) The meaning of these service provisions has become the controversy in this case.

Defendants retained New York counsel to specially appear in this action for the limited purpose of opposing Plaintiff's motion for entry of a default judgment. Defendants oppose this motion primarily on the ground that Plaintiff's service by Federal Express does not constitute valid service as agreed upon by the parties. [FN4]

> FN4. Defendants dispute the validity of service without admitting that the contract provisions governing service are valid and enforceable. In their California action, Defendants contend that the service provisions and the non-exclusive forum selection clause are unenforceable as unconscionable adhesion provisions. (Defs.' Opp'n to Pl.'s Mot. Entry Default J. & Cross Mot. Vacate Service Compl. and Amended Comp. at 5.)

## DISCUSSION

Rule 55(a) of the Federal Rules of Civil Procedure allows a plaintiff to request an entry of default by the clerk following a defendant's failure to plead or

defend as required by the Rules. Fed.R.Civ.P. 55(a). Rule 55(b)(2) provides that after a default has been entered and upon the request of the plaintiff, the district court may enter a judgment by default. Fed.R.Civ.P. 55(b)(2). When the defendant against whom default has been entered opposes the motion for entry of a default judgment, the opposition to the motion is often viewed 'as a motion to set aside the default, whether or not a formal motion has been made pursuant to Rule 55(c). *Meehan v. Snow,* 652 F.2d 274, 276 (2d Cir.1981); 10A Charles Alan Wright et al., Federal Practice and Procedure § 2692, at 85-86 (3d ed.1998). Rule 55(c) allows the court to set aside an entry of default for good cause or to set aside a default judgment under Rule 60(b). Fed.R.Civ.P. 55(c).

In this case, Plaintiff's request for an entry of default under Rule 55(a) was granted when the clerk issued a certificate of default on October 25, 2007. Plaintiff now moves pursuant to Rule 55(b)(2) for a default judgment in its favor, and Defendants' opposition to this motion includes arguments that good cause exists to set aside the default. [FN5]

> FN5. Defendants oppose Plaintiff's motion for entry of default judgment in part on the grounds that the three principal factors under Rule 55(c) weigh in favor of Defendants. (Defs.' Opp'n Pl.'s Mot. Entry Default J. & Cross Mot. Vacate Service Compl. and Amended Compl. at 4.) They argue that the default was not willful, setting the default aside would not prejudice Plaintiff, and Defendants are able to present a meritorious defense. *See Credit Lyonnais Secs., Inc. v. Alcantara,* 183 F.3d 151, 154 (2d Cir.1999) (stating the three factors); *see also Meehan v. Snow,* 652 F.2d 274, 277 (2d Cir.1981). The Court will not consider these factors in deciding the instant motion because such an inquiry assumes valid entry of default and actual default by the defendant.

Before a default can be entered pursuant to Rule 55(a) in the first place, however, "the court must

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Slip Copy
Slip Copy, 2007 WL 4230770 (S.D.N.Y.)
(Cite as: 2007 WL 4230770 (S.D.N.Y.))

have jurisdiction over the party against whom the judgment is sought, which also means that the party must have been effectively served with process." 10A Wright et al., *supra*, § 2682, at 14 (footnote omitted). At this juncture, the question in this case is whether jurisdiction existed to enter the default against Defendants. If Defendants have not been effectively served according to the parties' contractual agreement as to service of process, then there was no jurisdiction, and the clerk's certificate of default must be stricken and service of the complaint and amended complaint vacated. Whether default should be set aside for good cause is not the appropriate inquiry here, notwithstanding the parties' arguments on that issue, because it assumes default by the defendant.

The question of jurisdiction turns on whether Plaintiff has validly served Defendants under the service provisions of the parties' Partner and Developer Agreements. The parties in this case agreed as to the methods by which service of process is valid and effective. Such agreements are permissible and upheld by courts in the event of litigation. *See Nat'l Equipment R ental, Ltd. v . Szukhent*, 3 75 U.S. 311, 315-16 (1964) ("[I]t is settled ... that parties to a contract may agree in advance to submit to the jurisdiction of a given court, to permit notice to be served by the opposing party, or even to waive notice altogether"); *Nat'l Equipment Rental, Ltd. v. Reagin*, 338 F.2d 759, 761 (2d Cir.1964) (applying the holding in *Szukhent* and noting that it "evidences a liberality, limited only by due process considerations, in the judicial treatment of contractual clauses which are inserted by one of the contracting parties for the purpose of obtaining personal jurisdiction over the other in the event that a dispute arises under the contract"). The parties' contractual language, and not the Federal Rules of Civil Procedure, governs what constitutes proper service in this case. [FN6]

> FN6. The parties agree that the methods of service of process are controlled by the parties' agreement and not by statute.

\*4 In their Partner and Developer Agreements,

Plaintiff and Defendants agreed that "service of process ... may be effected by mailing a copy thereof by registered or certified mail (or any substantially similar form of mail), postage prepaid" to Defendants . [FN7] (Compl., Ex. D § 26(a)(iii), at 16; Compl., Ex. E § 26(a) (iii), at 14.) Plaintiff argues that Federal Express constitutes a "form of mail" that is "substantially similar" to registered or certified mail. Defendant, on the other hand, contends that Federal Express is neither "mail" nor the substantial equivalent of registered or certified mail.

> FN7. The Developer Agreement signed by Defendant Rant LLC also specifies "return receipt requested."

Much of the case law addressing the similarity or dissimilarity of the U.S. Postal Service to a private delivery carrier, and on which both parties rely to support their arguments, pertains to service of process under the Federal Rules of Civil Procedure, not private agreements between parties. (See cases cited in Pl.'s Supplemental Mem. Law at 3-4, 7-8; Defs.' Opp'n Pl.'s Mot Entry Default J. & Cross Mot. Vacate Service Compl. and Amended Compl. at 6; Defs.' Supplemental Letter Br. at 2-3.) Those cases are therefore inapplicable to the contractual language at issue here. Regardless of how the cases interpret "mail" in the context of statutory service requirements, basic contract interpretation of the parties' agreements in this case leads the Court to conclude that, at the time of the agreements, it was reasonable for Defendants to have understood "substantially similar forms of mail" to refer to mail service provided by the U.S Postal Service ("USPS") and not to include delivery by Federal Express.

Plaintiff argues that the term "mail" cannot be limited to delivery service provided by USPS because, under such construction, Defendants are hard pressed to suggest delivery methods that comply with the service provisions. (Pl.'s Supplemental Mem. Law Supp. Mot. Entry of Default at 6.) Defendants, however, name two types of USPS mail that satisfy the requirements of the service provision--express mail and priority mail. (Defs.' Supplemental Letter Br. at 4.) Each of these alternatives is

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Slip Copy
Slip Copy, 2007 WL 4230770 (S.D.N.Y.)
(Cite as: 2007 WL 4230770 (S.D.N.Y.))

the substantial equivalent of registered or certified mail: express mail provides guaranteed next-day delivery, proof of delivery, signature confirmation, and the option for a sender to request a return receipt upon delivery; priority mail provides confirmation of delivery and guaranteed delivery within two to three days. (*Id.*) In view of these other options, Defendants' construction of the word "mail" is tenable.

While the USPS services of express mail and priority mail are substantially similar to registered and certified mail, Federal Express bears a substantial difference that is particularly relevant given the purpose of service of process. As Defendants point out, Federal Express allows its customers to file a "signature on file waiver," which waives in advance the signature requirement upon receipt of all incoming mail. USPS does not offer this option to recipients of mail; only senders of USPS mail may waive the signature requirement. Defendants in this case had "signature on file waivers" with Federal Express at the time Plaintiff delivered the summons and complaint. (*See* Pl.'s Notice Mot. Entry Default J., Ex. E, Ex. 1.) And Plaintiff offers no evidence that personal delivery on each of the Defendants was effectuated.

*5 Finally, the service provision's omission of the option of delivery by private carrier is significant in construing the parties' agreement. The provision governing delivery of notices and communications within the same Partner and Developer Agreements explicitly includes the option of "private delivery service." (*See* Compl., Ex. D § 13, at 13; Compl., Ex. E § 14, at 12.) It can be assumed, therefore, that the parties had private delivery service in mind when the agreements were drafted. As Defendant argues, if the parties intended private delivery service to be included among the acceptable methods of service of process, that option should have been included in the service provision, as it was in the notice provision.

Based on its interpretation of the service provision in the Partner and Developer Agreements, the Court concludes that Plaintiff's delivery of the summons

and complaint by Federal Express did not effect proper service of process as agreed by the parties. [FN8] The clerk's certificate of default and the affidavit of service are stricken, and service of the complaint and amended complaint is found insufficient to provide this Court with jurisdiction over Defendants. To cure the defect in service of process, Plaintiff may serve Defendants in accordance with the parties' agreement as interpreted in this opinion.

> FN8. Having so concluded, the Court will not reach the question of whether Ms. Draper appeared in this action as the attorney for Defendants.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion (Doc. No. 6) for entry of a default judgment is denied, and Defendants' cross motion (Doc. No. 8) seeking to vacate service of the complaint (Doc. No. 1) and amended complaint (Doc. No. 3) and to strike the clerk's certificate of default and the affidavit of service (Doc. No. 4) is granted.

IT IS SO ORDERED.

Slip Copy, 2007 WL 4230770 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Westlaw.

Slip Copy                                                                                          Page 1
Slip Copy, 2008 WL 141922 (Bankr.E.D.Pa.)
(Cite as: 2008 WL 141922 (Bankr.E.D.Pa.))

Only the Westlaw citation is currently available.

United States Bankruptcy Court,
E.D. Pennsylvania.
In re Jeanne S. DILORETO, Debtor.
No. 07-15413bf.

Jan. 11, 2008.
Kenneth E. Aaron, Weir & Partners LLP, Philadelphia, PA, for Debtor.

Albert A. Ciardi, III, Thomas Daniel Bielli, Ciardi & Ciardi, P.C ., Philadelphia, PA, for Petitioning Creditor.

MEMORANDUM
BRUCE FOX, Bankruptcy Judge.

*1 Eric DiNallo, Superintendent of Insurance of the State of New York in his capacity as liquidator of Nassau Insurance Co., filed an involuntary bankruptcy petition. In response to this petition, the putative debtor, Mrs. Jeanne S. Diloreto, filed a motion to dismiss as well as a separate motion to transfer venue. The petitioning creditor filed answers in opposition thereto, and an evidentiary hearing was held. [FN1]

> FN1. At the parties' request, I delayed ruling on these motions to afford them an opportunity to resolve their differences via mediation. Apparently, they were unable to do so.

I initially consider Mrs. Diloreto's request for dismissal based upon her purported ineligibility for bankruptcy relief and due to a lack of personal jurisdiction. If dismissal is denied, and as Mrs. Diloreto concedes that venue in this district is proper under 28 U.S .C. § 1 408, I will then consider whether to transfer venue under 28 U .S.C. § 1412. *See generally Winston v. Martinair, Inc.,* 2007 WL 684113, at *5 (N.D.Ill.2007); *BAB Systems, Inc. v. Pilatus Inv. Group, Inc.,* 2007 WL 328877 (N.D.Ill.2007); *Southard v. D'Amelio,* 2006 WL 3453190 (W.D.N.C.2006).

I.
The first basis for which dismissal is sought concerns 11 U.S.C. § 109. Mrs. Diloreto maintains that she is not eligible to be an involuntary chapter 7 debtor because she has not met the requirements of section 109(h): *viz.,* she has not undergone prepetition credit counseling. *See* Ex. J-1 (Stipulation, ¶ 1). Although Mrs. Diloreto perhaps recognizes that her argument--contending that there is a prepetition credit counseling requirement even in an involuntary case involving an individual--is less than intuitive, she nevertheless asserts that Congress intended that no individual is eligible for chapter 7 relief who has not undergone the requisite counseling, even those who are the subject of an involuntary petition.

Mrs. Diloreto's contention was quickly rejected by one bankruptcy court as inconsistent with the purpose of the credit counseling requirement:

> Oberle argues that the mandatory credit counseling provisions of § 109(h) apply to him, and that since he did not take the required credit counseling prior to the petition being filed, he does not qualify as a debtor and the case should be dismissed. The court rejects Oberle's argument that § 109(h) applies to involuntary debtors. To hold otherwise would totally obliterate the provisions of the Bankruptcy Code providing for involuntary bankruptcy relief against individual debtors.

*In re Oberle,* 2006 WL 3949174, at *1 (Bankr.N.D.Cal.2006).

Moreover, the express language of section 109(h)(1) makes clear that the credit counseling requirement applies only to voluntary petitions. The subsection provides in relevant part:

> [A]n individual may not be a debtor under this title unless such individual has, during the 180-day period preceding the date of *filing of the petition by such individual,* received from an approved nonprofit budget and credit counseling agency described in section 111(a) an individual or group briefing....

(emphasis added); *accord In re Allen,* 2007 WL

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Slip Copy                                                                                      Page 2
Slip Copy, 2008 WL 141922 (Bankr.E.D.Pa.)
(Cite as: 2008 WL 141922 (Bankr.E.D.Pa.))

3355648, at *1 (Bankr.N.D.Tex.2007):
*2 Based on the plain meaning of section 109(h)(1), the court holds that the credit-counseling requirement pertains only to an individual who is the subject of a voluntary bankruptcy case. The statutory language of section 109(h)(1) requires that the credit counseling occur before "the filing of the petition *by such individual.*" § 109(h)(1) (emphasis added). As a result, the proper construction of the statute is that the credit-counseling requirement applies only when the debtor is the party filing the bankruptcy petition.
*See also* Deller & Meriwether, *Putting Order to The Madness: BAPCPA and the Contours of the New Prebankruptcy Credit Counseling Requirements,* 16 J. Bankr.L. & Prac. 1 Art. 5, n. 72 (Feb.2007).

Accordingly, Mrs. Diloreto's motion to dismiss this involuntary petition based upon section 109(h) is denied.

## II.

In addition to ineligibility, Mrs. Diloreto complains that the involuntary petition was not properly served upon her, thus depriving this court of personal jurisdiction over her.

The involuntary petition was filed on September 17, 2007, along with an emergency motion for the appointment of a trustee pursuant to 11 U.S.C. § 303(g). The clerk of court issued a summons in accordance with Fed. R. Bankr.P. 1010 on September 18, 2007. The parties agree that the petitioning creditor sent a copy of the involuntary petition and motion for appointment of a trustee to Mrs. Diloreto at her home in Malvern, Pennsylvania via Federal Express on September 18, 2007. He then sent a copy of the summons via first class and certified mail to the putative debtor in Malvern on September 19, 2007.

Bankruptcy Rule 1010 details the procedure for service of an involuntary petition:
The summons shall be served with a copy of the petition in the manner provided for service of a summons and complaint by Rule 7004(a) or (b). If service cannot be so made, the court may order that the summons and petition be served by mailing copies to the party's last known address, and by at least one publication in a manner and form directed by the court. The summons and petition may be served on the party anywhere. Rule 7004(e) and Rule 4(l) F.R. Civ. P. apply when service is made or attempted under this rule.
Fed. R. Bankr.P. 7004(a)(1) states:
(a) *Summons; service; proof of service*
(1) Except as provided in Rule 7004(a)(2), Rule 4(a), (b), (c)(1), (d)(1), (e)-(j), (l), and (m) F.R. Civ. P. applies in adversary proceedings. Personal service under Rule 4(e)-(j) F.R. Civ. P. may be made by any person at least 18 years of age who is not a party, and the summons may be delivered by the clerk to any such person.
Rule 7004(b) provides in relevant part:
(b) *Service by first class mail*
Except as provided in subdivision (h), in addition to the methods of service authorized by Rule 4(e)-(j) F.R. Civ. P., service may be made within the United States by first class mail postage prepaid as follows:
*3 (1) Upon an individual other than an infant or incompetent, by mailing a copy of the summons and complaint to the individual's dwelling house or usual place of abode or to the place where the individual regularly conducts a business or profession.

Mrs. Diloreto complains that the petitioning creditor's method of service was improper in three respects: "[T]he Liquidator transmitted to Jeanne, *separately,* the Summons and the Involuntary Petition; the Summons and Involuntary Petition were not personally served on Jeanne; and the Involuntary Petition was not transmitted to Jeanne via first class mail." Diloreto Memorandum, at 8.

There is no dispute that the involuntary bankruptcy petition was served upon Mrs. Diloreto by Federal Express sent on September 18, 2007 and that the summons was sent by first class mail and certified mail on September 19, 2007. Moreover, Mrs. Diloreto swore that neither the involuntary petition

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Slip Copy
Slip Copy, 2008 WL 141922 (Bankr.E.D.Pa.)
(Cite as: 2008 WL 141922 (Bankr.E.D.Pa.))

Page 3

nor summons was served upon her personally. Thus, the petitioning creditor concedes that personal service under Rule 7004(a) was not obtained. [FN2]

> FN2. There is no evidence that the delivery was made in person, that Mrs. Diloreto signed for the delivery, or that the petitioner attached a receipt to a certificate of service.

In asserting that service of the involuntary petition was defective, Mrs. Diloreto concedes that she received notice of the petition and of the summons. She does not argue that service via Federal Express is unconstitutional. [FN3] Nevertheless, she accurately observes:

> FN3. Due process requires notice reasonably calculated to inform. *See, e.g., Tulsa Professional Collection Services, Inc. v. Pope,* 485 U.S. 478, 490 (1988); *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314-15 (1950); *In re Vincze,* 230 F.3d 297, 299 (7th Cir.2000).

Although notice underpins Federal Rule of Civil Procedure 4 concerning service, notice cannot by itself validate an otherwise defective service. Proper service is still a prerequisite to personal jurisdiction. Inquiry into the propriety of service is separate from, and in addition to, the due process concerns present in an inquiry into the notice itself.
*Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.,* 988 F.2d 476, 492 (3d Cir.1993); *accord, e.g., Ayres v. Jacobs & Crumplar, P.A.,* 99 F.3d 565, 568 (3d Cir.1996); *Lin v. Pennsylvania Machine Works, Inc.,* 1998 WL 111788, at *3 (E.D.Pa.1998):
The rules of service are designed to insure that a defendant has proper notice of a lawsuit. The Court of Appeals has made it quite clear that "notice cannot by itself validate an otherwise defective service." *Ayres v. Jacobs & Crumplar, P.A.,* 99 F.3d 565, 568 (3d Cir.1996), quoting *Grand Entertainment Group Ltd. v. Star Media Sales,*

*Inc.,* 988 F.2d 476, 492 (3d Cir.1993). We are bound by the rules of service, no matter how technical they may seem. Without proper service, the court does not obtain personal jurisdiction over a defendant, and the case may not proceed to judgment.
Thus, I must consider whether the service requirements of Rule 7004(b) have been met.

The fact that the summons and involuntary petition were not served simultaneously is not a fatal defect under Rule 7004. Rule 7004(e) allows for service to be made by a replacement summons, thus implicitly approving a lack of simultaneous service. As noted by one bankruptcy court:
Although Rule 4(d) of the Federal Rules of Civil Procedure (applicable by Bankruptcy Rule 7004(a)) provides that the summons and complaint shall be served together, the failure to provide simultaneous service is not fatal in every instance. Rule 7004(f) [FN4] provides that if a summons is not timely delivered or mailed, another summons may be issued which suggests that lack of simultaneous service is not de facto fatal to jurisdiction. Nevertheless, plaintiffs are required to use diligence in making service of process, and courts will dismiss an action where there is substantial delay between the filing of the complaint and service of the summons.

> FN4. Current Rule 7004(e) was formerly Rule 7004(f).

*4 *In re Horob,* 54 B.R. 693, 696 (Bankr.D.N.D.1985); *see In re Betts,* 142 B.R. 819, 825 (Bankr.N.D.Ill.1992) (same). Serving the summons one day after service of the involuntary petition thus complies with Rule 7004.

More problematic, however, is the petitioning creditor's use of Federal Express to serve the involuntary petition, rather than first class mail. Service under Rule 7004(b) is to be made by "first class mail postage prepaid."

In *Audio Enterprises, Inc. v. B & W Loudspeakers of America,* 957 F.2d 406, 409 (7th Cir.1992), the Seventh Circuit Court of Appeals rejected, for pur-

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Slip Copy
Slip Copy, 2008 WL 141922 (Bankr.E.D.Pa.)
(Cite as: 2008 WL 141922 (Bankr.E.D.Pa.))

Page 4

poses of personal jurisdiction, that service by Federal Express constituted service by "first class mail, postage prepaid" under Fed.R.Civ.P. 4(c)(2)(C)(ii) (as the procedural rule then read). This decision was consistent with *Prince v. Poulos,* 876 F.2d 30, 32 n. 1 (5th Cir.1989), wherein the Fifth Circuit concluded that service using Federal Express did not comply with the mailing requirement of Fed. R.App. P. 25(a). The *Prince* decision explained that the term "mail" was intended to denote delivery by a "public authority" and Federal Express is a private entity. *Id.* Then, in *Magnuson v. Video Yesteryear,* 85 F.3d 1424, 1431 (9th Cir.1996), the Ninth Circuit reached a similar conclusion when applying the service requirements of Fed.R.Civ.P. 5(b).

The few non-appellate federal courts to consider this issue have also rejected Federal Express delivery as constituting service by mail. *See Kissel v. DiMartino,* 1993 WL 289430, at *10 n. 2 (E.D .N.Y.1993); *see also Kim v. United States,* 461 F.Supp.2d 34, 40 n. 5 (D.D.C.2006) (delivery by Federal Express is not the same as certified or registered mail under Rule 4(i)); *cf. Cachet Residential Builders, Inc. v. Gemini Insurance Co.,* 2007 WL 4357751 (D.Ariz.2007) (relying in part upon federal court decisions, holds that "[s]ince Federal Express is not an office or station of a governmental postal system, it cannot be utilized for service under [Arizona] Rule 4.2(c)."). Even *Matter of Reserves Development Corp.,* 78 B.R. 951, 959 (W.D.Mo.1986), which, in dicta, upheld the validity of plaintiff's service under Rule 7004(b) by Federal Express, noted that it was "technically defective." *Id.* [FN5]

> FN5. The defendants had first been served by first class mail postage prepaid, and the second attempt at service was by Federal Express delivery. The district court upheld the first service attempt and then considered the second "[e]ven if the first notice by first class mail was not effective."

The Ninth Circuit reasoned in *Magnuson* that when Fed.R.Civ.P. 5 was adopted in 1937, the modern

private overnight delivery services did not exist. Thus, the requirement of mailing, in the various federal procedural rules that use the term, was intended to refer to the governmental postal entity and should be so consistently construed. *Id.,* 85 F.3d at 1430-31. As the Federal Rules of Bankruptcy Procedure adopt the Federal Rules of Civil Procedure in many instances, the drafters of those bankruptcy rules probably intended the same meaning.

Given the various private delivery services now available, the numerous digital and non-digital methods of written communication commonly used, and the present electronic case filing system now used in federal courts, one may debate the wisdom of limiting valid service under Rule 7004 to first class mail. Rule 7004, however, was enacted pursuant to the Bankruptcy Rules Enabling Act, 28 U.S.C. § 2075, and thus promulgated by the Supreme Court and authorized by Congress. If change is warranted, it will have to come through modification to that national rule. [FN6]

> FN6. The Superintendent relies heavily upon *In re Paolino,* 49 B.R. 834 (Bankr.E.D.Pa.1985), which quoted *Rovinski v. Rowe,* 131 F.2d 687, 689 (6th Cir.1942) that "Civil Procedure Rule 4(d)(1) should be construed liberally, to effectuate service where actual notice of suit has been received by the defendant." The service issue in *Paolino* and *Rovinski,* however, was the location upon which the defendant was served and not the method. For example, in *Paolino,* the wife-debtor was served at a medical center operated by her husband. Rule 7004(b)(1) permitted service at a "dwelling house," "usual place of abode" or location where the individual "regularly conducts his business or profession." *In re Paolino,* 49 B.R. at 835. The bankruptcy court noted sufficient evidence of Mrs. Paolino's involvement with the medical center, *see id.,* that service at that location was upheld. *Id.,* at 836. This decision does not authorize non-personal ser-

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Slip Copy
Slip Copy, 2008 WL 141922 (Bankr.E.D.Pa.)
(Cite as: 2008 WL 141922 (Bankr.E.D.Pa.))

vice by a private delivery service.

**\*5** Accordingly, the petitioning creditor here did not comply with the service requirements of Rule 7004 when Federal Express delivered the involuntary petition to the putative debtor. *See generally Ayres v. Jacobs & Crumplar, P.A.,* 99 F.3d at 570:

> [W]e hold that a summons not issued and signed by the Clerk with the seal of the court affixed thereto fails to confer personal jurisdiction over a defendant even if properly served. We further hold that a summons when properly issued is not effective in conferring personal jurisdiction upon a partnership or individual if it is not served in accordance with Rule 4 of the Federal Rules of Civil Procedure unless service has been effectively waived.

### III.

The final issue is one of waiver. The Superintendent contends that Mrs. Diloreto waived any service defect by not raising this issue in the first two motions she filed. The first motion sought recusal under 28 U.S.C. § 455(a) and Fed. R. Bankr.P. 5004(a); the second requested abstention under 11 U.S.C. § 305. Fed. R. Bankr.P. 1011(b) permits a putative debtor to raises defenses and objections as provided by Fed.R.Civ.P. 12. Rule 12(g) and (h), at the time Mrs. Diloreto filed her motions to recuse and abstain, provided:

> (g) *Consolidation of Defenses in Motion.* A party who makes a motion under this rule may join with it any other motions herein provided for and then available to him. If a party makes a motion under this rule but omits therefrom any defense or objection then available to him which this rule permits to be raised by motion, he shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in subdivision (h)(2) hereof on any of the grounds there stated.
> (h) *Waiver or Preservation of Certain Defenses.*
> (1) A defense of lack of jurisdiction over the person, improper venue, insufficiency of process, or insufficiency of service of process is waived (A) if omitted from a motion in the circumstances described in subdivision (g), or (B) if it is neither

made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course. [FN7]

> FN7. Effective December 1, 2007, Rule 12(g) and (h) were amended to read as follows:
> (g) *Joining Motions.*
> (1) Right to Join. A motion under this rule may be joined with any other motion allowed by this rule.
> (2) Limitation on Further Motions. Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.
> (h) *Waiving and Preserving Certain Defenses.* (1) When Some Are Waived. A party waives any defense listed in Rule 12(b)(2)-(5) by:
> (A) omitting it from a motion in the circumstances described in Rule 12(g)(2); or
> (B) failing to either:
> (i) make it by motion under this rule; or
> (ii) include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course.
> The Committee comment to the 2007 amendment states that the "changes are intended to by stylistic only." 2007 Revised Edition, *Federal Rules of Civil Procedure,* at 106 (West, 2007).

In *Myers v. American Dental Association, V.I.,* 695 F.2d 716, 720 (3d Cir.1983), the Third Circuit Court of Appeals concluded that a defendant who filed a motion to dismiss due to improper venue waived a later assertion of lack of personal jurisdiction:

> The aim of Rule 12 "is to afford an easy method for the presentation of defenses but at the same time prevent their use for purposes of delay." 2A J. Lucas & J. Moore, *Moore's Federal Practice* ¶ 12.02, at 2225 (2d ed.1982). To effectuate that

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Slip Copy
Slip Copy, 2008 WL 141922 (Bankr.E.D.Pa.)
(Cite as: 2008 WL 141922 (Bankr.E.D.Pa.))

Page 6

goal, Rule 12(g) requires a party who raises a defense by motion prior to answer to raise all such possible defenses in a single motion. They cannot be raised in a second, pre-answer motion. Rule 12(h) imposes a higher sanction with respect to the failure to raise the specific defenses of lack of personal jurisdiction, improper venue, insufficiency of process, and insufficiency of service of process. If a party files a pre-answer motion but fails to raise one of the defenses enumerated above, the party waives the omitted defense and cannot subsequently raise it in his answer or otherwise. 2A J. Lucas & J. Moore, *supra*, ¶ 12.23.

*6 However, the waiver of certain defenses enumerated in Rule 12(h) and the requirement of consolidation under Rule 12(g) is limited to those defenses that could be raised under Rule 12(b):

> The meaning of subdivision (g) is clear. If a party seeks dismissal in a pretrial motion based on any of the defenses set out in Rule 12(b), he must include in such motion any other defense or objection then available which Rule 12 permits to be raised by motion. If the party omits such defense or objection, Rule 12(g) precludes him from making a further motion seeking dismissal based on the omitted defense or objection.

*Albany Ins. Co. v. Almacenadora Somex, S.A.,* 5 F.3d 907, 909 (5th Cir.1993); Coquillette, *et al.,* 2 *Moore's Federal Practice,* § 12.21, at 12-24 to 12-25 (3d ed.2007). [FN8]

> FN8. This treatise also states that consolidation under Rule 12(g) also includes motions under Rules 12(e) and (f). *Id,* § 12.21 at 12-25.

Rule 12(g) calls for consolidation only of those defenses that may be raised by motion pursuant to Rule 12(b)(2)-(b)(5): lack of jurisdiction over the person; improper venue; insufficiency of process; or insufficiency of service of process. When a defendant initially files a motion that is not based upon these Rule 12(b) defenses, it is not barred from filing a later motion under Rule 12(b). *See Aetna Life Ins. Co. v. Alla Medical Services, Inc.,* 855 F.2d 1470, 1475 (9th Cir.1988) (motion to stay

federal civil action due to pending state court litigation was not based upon Rule 12(b) and thus did not preclude a subsequent motion to dismiss under Rule 12(b)); *AFN, Inc. v. Schlott, Inc.,* 798 F.Supp. 219, 222 (D.N.J.1992) (same); *Catalano v. BRI, Inc.,* 724 F.Supp. 1580, 1583 (E.D.Mich.1989) (motion to transfer venue due to convenience of the parties is not within the scope of Rule 12(g)).

Accordingly, in *Continental Casualty Co. v. Marsh,* 2002 WL 31870531 (N.D.Ill.2002), the district court held that a motion to abstain under the *Colorado River* Doctrine did not bar a subsequent motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2):

> The Court believes that a motion for abstention, however labeled, is not a Rule 12 motion for purposes of the Rule's waiver provisions. A motion for abstention seeks to have the court refrain from exercising jurisdiction during the pendency of a similar state court action based on principles of comity and federalism.... This is not a defense contemplated by Rule 12 and, thus, it does not give rise to a waiver under Rule 12(h)....
> Of course, parties may choose to raise Rule 12 defenses along with their abstention challenges and, as a result, may waive any unasserted defenses pursuant to Rule 12(g) and (h).... But such joinder is not required by Rule 12 and where, as here, the motion is strictly one for abstention, waiver does not apply.

*Id,* at *3 (citations omitted).

Here, Mrs. Diloreto's abstention motion was based upon section 305 of the Bankruptcy Code. Her recusal motion was based upon 28 U.S.C. § 455(a). Neither motion was based upon Rule 12(b), and each motion was limited to one issue. Thus, the putative debtor did not waive her right to seek dismissal for lack of personal jurisdiction.

*7 An appropriate order dismissing this involuntary petition shall be entered. [FN9]

> FN9. The motion to transfer venue shall be dismissed as moot.

ORDER

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Slip Copy                                                                                      Page 7
Slip Copy, 2008 WL 141922 (Bankr.E.D.Pa.)
**(Cite as: 2008 WL 141922 (Bankr.E.D.Pa.))**


AND NOW, this 11th day of January 2008, for the
reasons stated in the accompanying memorandum,
it is hereby ordered that the putative debtor's mo-
tion to dismiss the involuntary petition for lack of
personal jurisdiction is granted. The putative debt-
or's motion to transfer venue is dismissed as moot.

Slip Copy, 2008 WL 141922 (Bankr.E.D.Pa.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.