# EXHIBIT A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SANTA FE POINTE, LP, ET AL.,

    Plaintiffs,

v.

GREYSTONE SERVICING CORP., INC., ET AL.,

    Defendants.

Case No. C-07-5454 JCS

**ORDER DENYING DEFENDANTS' MOTION TO TRANSFER VENUE [Docket No. 10]**

## I. INTRODUCTION

This action was initially filed in Alameda County Superior Court and subsequently removed by Defendants to this Court on the basis of diversity jurisdiction. Defendants now bring a Motion to Transfer Venue (the "Motion"), asking that the Court transfer the action pursuant to 28 U.S.C. § 1404(a) to the Southern District of New York, where a later-filed action involving related claims is pending. The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). The Court determines that the Motion is suitable for determination without oral argument, pursuant to Civil Local Rule 7-1(b). Accordingly, the hearing scheduled for **February 8, 2008 is VACATED.** For the reasons stated below, the Motion is DENIED.

## II. BACKGROUND

### A. The First Amended Complaint

Plaintiff Theotis Oliphant is an individual whose principal residence is in Alameda County, California. First Amended Complaint ("FAC") ¶ 4. Oliphant is general partner of Plaintiff Santa Fe Pointe, LP ("SFP"), which is an Oklahoma limited partnership with its principal place of business in Oklahoma City. FAC ¶¶ 2, 5. Oliphant is managing partner of Plaintiff Santa Fe Management LLC, which is an Oklahoma limited liability company with its principal place of business in

Oklahoma. FAC ¶¶ 3, 5. Oliphant is also managing partner of Plaintiff Rant, LLC, which is a Delaware limited liability company with its principal place of business in Alameda County, California. Complaint ¶¶ 4-5.

Defendant Greystone Servicing Corporation ("Greystone Servicing") is a Georgia Corporation with its principal place of business in New York City. FAC ¶ 6. Defendant Greystone CDE, LLC ("Greystone CDE") is a Delaware Corporation with its principal place of business in New York City. FAC ¶ 7.

Plaintiffs' claims are based on the alleged conduct of Defendants in connection with efforts by Plaintiffs to acquire and rehabilitate an apartment building in Oklahoma City (the "Project") as a tax-credit developer of a Low Income Housing Tax Credit project offered through the Federal Housing Administration's Office of Housing and Urban Development ("HUD"). FAC ¶ 1. Defendants are originators of Federal Housing Administration ("FHA") multifamily loans and are HUD-approved underwriters for the FHA's Multifamily Accelerated Processing Program. Complaint ¶¶ 1, 14. As such, Defendants serve as an intermediary between developer clients and FHA offices to facilitate HUD approval of applications and to obtain financing for their clients. FAC ¶ 14.

On September 7, 2006, Plaintiffs and Greystone Servicing entered into a written agreement (the "Engagement Agreement") whereby Plaintiffs appointed Greystone Servicing to serve as their exclusive agent to process the HUD application for financing the acquisition and rehabilitation on the Project. FAC ¶ 15. Under the Engagement Agreement, Plaintiffs and Greystone Servicing were to jointly prepare the application, while Defendants were to underwrite the financing for the Project and submit the application to HUD on Plaintiffs' behalf. FAC ¶ 16. Also in September 2006, Plaintiffs arranged for bond-financing of the Project whereby over $7 million in tax-exempt bonds were to be sold. FAC ¶ 17. Because the bond issue was to expire December 20, 2006, the bond financing had to close by that date. FAC ¶ 17. Therefore, Plaintiffs impressed on Defendants that the HUD application had to be filed by November 2006. FAC ¶ 17.

In late October 2006, Greystone Servicing informed Plaintiffs that it was behind schedule, and in November 2006, Greystone Servicing informed Plaintiffs that the HUD application would not

be filed in 2006. FAC ¶¶ 23, 25. To address Plaintiffs' concerns regarding the bond financing, Defendants promised to fund a non-recourse bridge-loan to cover the purchase of the Project and the cost of the issuing the tax-exempt bonds. FAC ¶ 25. On November 16, 2006, Defendant Greystone CDE sent Plaintiff Oliphant a bridge loan term sheet that provided for a non-recourse bridge loan to Oliphant in the amount of $4,348,400, the full amount of the purchase price of the Project. FAC ¶ 26. However, when Oliphant received the final bridge loan documents, on December 17, 2006, the amount of the loan was only $500,000, which would cover the cost of the bond issuance but not acquisition of the Project. FAC ¶ 29. In addition, the loan was not non-recourse, as promised, but instead included a personal guaranty by Oliphant and a spousal guaranty. FAC ¶ 29. At this point, however, the bonds had already been sold – on December 13 and 14 – and the cost of their issuance had already been incurred, in the amount of $251,000. FAC ¶ 28. Because Plaintiffs would lose the bond funding if the acquisition of the Project was not closed by December 20, 2006, Oliphant signed the bridge-loan documents as presented. FAC ¶ 30.

Greystone Servicing submitted the final HUD application on March 14, 2007. FAC ¶ 31. On April 17, 2007, the tax credit purchaser/syndicator that had been lined up for the Project backed out. FAC ¶ 32. In June 2007, Plaintiffs found a new syndicator and co-developer, David Henry, who agreed to serve as general contractor, property manager and co-developer. On July 5, 2007, Oliphant met with HUD personnel in Oklahoma City and was told that the HUD application had been rejected. FAC ¶ 34. The HUD representative told Oliphant that Greystone's representative had gone out of her way to make disparaging remarks about the Project to the HUD Oklahoma City representative. FAC ¶ 34.

Subsequently, Greystone's Betsy Vartanian contacted HUD personnel in Oklahoma City, who agreed to reconsider the application without starting over from the beginning if Greystone would provide additional materials addressing HUD's concerns. FAC ¶ 36. In the meantime, Plaintiffs continued to work with David Henry and the seller of the Project to proceed with the closing of the acquisition of the project. FAC ¶ 37. Plaintiffs and Henry were unable to reach an agreement that addressed Henry's concerns about the deal and in August 2007, Greystone and Henry began negotiating on ways to get the deal done without Oliphant and Plaintiffs. FAC ¶¶ 38-40.

3

On August 9, 2007, Graystone unilaterally withdrew the HUD loan application without prior notice or warning to Plaintiffs. FAC ¶ 42. On August 21, 2007, Greystone CDE declared the bridge loan in default and threatened legal enforcement. FAC ¶ 45. On August 22 and in the weeks followed, Greystone pressured Plaintiffs to allow David Henry to take over the Project, telling Plaintiffs that they would initiate a collection action against Plaintiffs if they did not agree to the deal. FAC ¶ 46. In a telephone conference between Greystone and Oliphant on September 14, 2007, Greystone told Opliphant that it was "out" of the deal if Oliphant could not prove that the Project was not a viable deal. FAC ¶ 50.

On September 21, 2007, Greystone CDE notified Plaintiffs that it was accelerating the bridge loan and declaring all amounts under the bridge loan immediately due and payable. FAC ¶ 52.

Based on these allegations, Plaintiffs asserted the following claims against Defendants:

Claim One: Professional Negligence, based on the allegation that the Greystone Defendants "breached their respective duties of due care owed to Plaintiffs . . . with respect to the Project and the HUD financing."

Claim Two: Breach of Fiduciary Duty/ Constructive Fraud based on the alleged breach of the "trust and confidence Plaintiffs . . . reposed in . . . defendants by virtue of the Engagement Agreement, the business relationship, and the Greystone Defendants' position as a HUD-approved underwriter for the FHA's Multifamily Accelerated Processing . . . Program."

Claim Three: Intentional Interference with Prospective Economic Advantage based on Defendants' alleged interference with Plaintiffs' "existing business relationship with the Seller of the Project and with the HUD office in Oklahoma City."

Claim Four: Negligent Interference with Prospective Economic advantage.

Claim Five: Anticipatory Breach based on Greystone's repudiation of the written agreements to accomplish the financing for the acquisition of the Project.

**B.    Procedural Background of this Action**

Plaintiffs filed this action in Alameda County Superior Court on September 7, 2007. They filed a First Amended Complaint on September 25, 2007, which included additional alleged misconduct that occurred after the original complaint was filed. The First Amended Complaint was

4

served on Greystone Servicing on September 25, 2007 and on Greystone CDE on September 26, 2007. *See* Declaration of Ann McFarland Draper in Opposition to Defendants' Motion to Transfer Case to Southern District of New York ("Draper Decl."), Exs B & C (proof of service). On October 25, 2007, Defendants moved the action to this Court on the basis of diversity jurisdiction. On November 7, 2007, they filed the instant motion to transfer.

### C. Procedural Background of the New York Action

On September 26, 2007 Greystone CDE filed an action in the Federal District Court for the Southern District of New York (the "New York Action") seeking damages based on the alleged breach of the bridge loan agreement between Greystone CDE and the Plaintiffs in this action. Draper Decl., ¶ 4. Greystone CDE served the complaint on Plaintiffs by Federal Express on September 27, 2007. Draper Decl., Ex. D (December 2, 2007 Opinion and Order in New York Action) at 2-3. Plaintiffs did not respond and, upon the request of Greystone CDE, the clerk's office entered default. *Id.* at 3. Greystone CDE then sought entry of default judgment in the New York Action. *Id.* Plaintiffs opposed the motion, making a limited appearance in the New York Action to argue that service by FedEx was not proper. *Id.* at 5. The court in the New York Action concluded that service by Federal Express was not proper under the various contractual agreements between the parties and vacated the default in an order filed December 2, 2007. *Id.* at 9-10.

### D. The Motion

Defendants assert that this action should be transferred under 28 U.S.C. § 1404(a) to the Southern District of New York, where it can be heard with the action that is already pending there. In support of this contention, they point primarily to provisions contained in the bridge loan guaranties that state as follows:

> **Section 15. Governing Law. THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK WITHOUT GIVING EFFECT TO ITS CONFLICTS OF LAWS PRINCIPLES . . .**
>
> . . .
>
> **Section 26. Submission to Jurisdiction; Waivers.**

5

(a) PLEDGORS HEREBY IRREVOCABLY AND UNCONDITIONALLY:

(i) SUBMIT THEMSELVES AND THEIR RESPECTIVE PROPERTY IN ANY LEGAL ACTION OR PROCEEDING RELATING TO THIS AGREEMENT, OR ANY OTHER DOCUMENT EXECUTED IN CONNECTION WITH THE TRANSACTIONS CONTEMPLATED BY THE LOAN AGREEMENT, OR FOR RECOGNITION AND ENFORCEMENT OF ANY JUDGMENT IN RESPECT HEREOF OR THEREOF, TO THE NONEXCLUSIVE GENERAL JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK, THE COURTS OF THE UNITED STATES OF AMERICA FOR THE STATE OF NEW YORK AND THE APPELLATE COURTS FROM ANY THEREOF;

(ii) CONSENT THAT ANY SUCH ACTION OR PROCEEDING MAY BE BROUGHT IN SUCH COURTS, AND WAIVES ANY OBJECTION THAT IT MAY NOW OR HEREAFTER HAVE TO THE VENUE OF ANY SUCH ACTION OR PROCEEDING IN ANY SUCH COURT OR THAT SUCH ACTION OR PROCEEDING WAS BROUGHT IN AN INCONVENIENT COURT AND AGREE NOT TO PLEAD OR CLAIM THE SAME;

(iii) AGREE THAT SERVICE OF PROCESS IN ANY SUCH ACTION OR PROCEEDING MAY BE EFFECTED BY MAILING A COPY THEREOF BY REGISTERED OR CERTIFIED MAIL(OR ANY SUBSTANTIALLY SIMILAR FORM OF MAIL), POSTAGE PREPAID BY PLEDGORS AT THE ADDRESSES REFERRED TO ON PAGE 1 OF THIS AGREEMENT; AND

(iv) AGREE THAT NOTHING HEREIN SHALL AFFECT THE RIGHT TO EFFECT SERVICE OF PROCESS IN ANY OTHER MANNER PERMITTED BY LAW OR SHALL LIMIT PLEDGEE'S RIGHT TO SUE IN ANY OTHER JURISDICTION.

. . .

Declaration of Erik K. Swanholt ("Swanholt Decl."), Exs. 3D & 3E (Santa Fe Management and Rant guaranties for bridge loan).[1]

Based on the provisions designating New York law as the governing law for the bridge loan guaranties, Defendants argue that this action should be heard by a New York court. Further, in light of the forum-selection clauses, Plaintiffs' choice of forum should not be afforded deference, Defendants assert. Rather, the Court should transfer the action to the Southern District of New York, as contemplated by the parties in the bridge loan documents. Defendants further assert that the action should be transferred because doing so will promote judicial efficiency, most parties and third-party witnesses live closer to New York than they do to this district, and California has little or no interest in resolving this controversy, which relates to an out-of-state development. Finally, Defendants argue that the doctrine of federal comity under which a district court may decline to exercise jurisdiction where a related action is already pending in another district court – the so-called first-to-file rule – should not apply here because Plaintiffs' action was filed in anticipation of Defendants' action and amounts to forum-shopping.

In their Opposition, Plaintiffs object to the transfer of this action to New York for several reasons. First, they argue that the threshold requirement for a § 1404(a) transfer – that the transferee court could exercise personal jurisdiction over Plaintiffs with respect to all relevant claims and that venue there would be proper – has not been met. In particular, Plaintiffs argue that New York cannot exercise personal jurisdiction over the Plaintiffs in this action because they do not have minimum contacts with New York and there is not forum selection clause in the Engagement Agreement with Greystone Servicing, the bridge loan agreement, the bridge loan promissory note or

---

[1] The Oliphant guaranty contains somewhat different language:

> **Section 3.08 Jurisdiction; Etc.** The Guarantor irrevocably (a) agrees that the Lender may bring suit, action or other legal proceedings arising out of this Guaranty in the courts of the State of New York or the courts of the United States located in New York; (b) consents to the jurisdiction of each such court in any such suit, action or prceeding; (c) waives any objection which the Guarantor may have to the laying of the venue of any such suit, action, or proceeding in any of such courts . . .

Swanholt Decl., Ex. 3C.

7

the assignments made to repay the note. The only documents that include forum selection clause are the guaranties and these provisions are limited to claims arising out of those agreements, Plaintiffs argue. Therefore, they assert, these provisions do not support a finding of personal jurisdiction as to Plaintiffs' claims in this action, which are not based on the guaranties with Greystone CDE. Plaintiffs argue further that the documents signed in support of the bridge loan, including the guaranties, are unconscionable and unenforceable in light of the circumstances under which they were signed. Therefore, they argue, the forum selection clauses in the guaranties are invalid and cannot give rise to personal jurisdiction

Second, Plaintiffs argue that even if New York could exercise personal jurisdiction over Plaintiffs, the factors that are considered in determining whether a convenience transfer is appropriate do not weigh strongly in favor of transfer, as Defendants are required to establish. In particular, Plaintiffs assert: 1) Plaintiffs' choice of forum is entitled to deference; 2) the contracts were not negotiated or executed in New York; 3) the choice of law provision in the guaranty agreements likely do not apply to Plaintiffs claims and California law, rather than New York law, may well apply to those claims; 4) Plaintiffs have little or no contact with New York, while Defendants do much of their business in California; 5) New York is no more convenient for parties and witnesses than California; and 6) it will be more expensive to litigate in New York than California.

Third, Plaintiffs argue that the significance of the forum selection clause has been overstated by Defendants. In particular, while Defendants have stated that a party opposing transfer bears a heavy burden where there is a forum selection clause, Plaintiffs argue that this rule does not apply where the forum selection clause is permissive, as this one is.

### IV. ANALYSIS

Pursuant to 28 U.S.C. § 1404(a), a case may be transferred "for the convenience of the parties of the parties and witnesses, in the interest of justice" to "any other district or division where the action might have been brought." A party seeking transfer must make "a strong showing . . . to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). In determining whether to transfer an action pursuant to

8

§ 1404(a), the court must balance a number of case-specific factors, including "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). In addition, the presence of a forum selection clause is a "significant factor" in the § 1404(a) analysis. *Id.* at 499.

The Ninth Circuit has held that the enforceability of a forum selection provision where jurisdiction is based on diversity is a question of federal law. *Manatti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 513 (9th Cir. 1988). Under federal law, a mandatory forum selection clause is presumed valid and must be specifically enforced. *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972). On the other hand, "[a] permissive forum selection clause . . . simply means that the parties consent to the jurisdiction of the designated forum." *Hsu v. OZ Optics Ltd.*, 211 F.R.D. 615, 618 (N.D. Cal. 2002) (holding that where forum selection clause was permissive, party seeking convenience transfer was required to overcome the deference that is normally afforded the plaintiff's choice of forum and denying request to transfer action).

Here, the language of the forum selection clauses in the guaranties is clearly permissive. The provisions do not purport to make New York the *exclusive* jurisdiction in which claims arising from the guaranties can be litigated. Further, the Court notes that the forum selection clauses are limited to claims that arise from the agreements in which they are contained. The claims that Plaintiffs assert in their First Amended Complaint do not arise from the duties and obligations contained in the guaranties that were signed in support of the bridge loan. Therefore, the forum selection clauses contained in the guaranties do not apply to this action and Plaintiffs are entitled to the deference that is generally afforded a plaintiff's choice of forum.

Defendants' reliance on *Unisys v. Access Co., Ltd.*, 2005 WL 3157457 (N.D. Cal. November 23, 2005) is misplaced. In that case, the court gave a permissive forum selection "substantial consideration" in its determination that a § 1404(a) transfer was warranted. *Id.* at *5. The court

9

noted that at oral argument, when asked why the court should not enforce the forum selection clause, the plaintiff could not offer a "salient reason" in response. *Id.* In that case, however, in contrast to the facts here, there was no dispute that the claims at issue arose out of the contract containing the forum selection clause. Nor was there any argument that the agreement containing the forum selection clause was itself unconscionable and unenforceable. Therefore, *Unisys* is not on point.

Looking to the remaining factors listed above, the Court concludes that Defendants have not made the strong showing that is necessary to overcome Plaintiff's choice of forum. First, the relevant agreements were negotiated in both California and New York, while the place of performance was in Oklahoma. Thus, this factor is neutral. Second, although New York law may govern some of the claims, it is far from clear that it will apply to all of the claims in this case. In any event, courts routinely apply the law of other states and, therefore, the fact that the Court may be required to apply New York law does not strongly support transfer. Third, the parties contacts with the relevant fora do not strongly support transfer: Plaintiffs have strong ties with California, while Defendants have strong ties with New York. Fourth, the cost of litigation is likely to be comparable in either California or New York and, therefore, does not support transfer. Fifth, either venue is likely to require witnesses to travel. Because the witnesses are not predominantly located in or near New York, this factor does not favor transfer.

The Court concludes that Defendants have not demonstrated that a transfer is warranted under 28 U.S.C. § 1404(a).[2]

## IV. CONCLUSION

For the reasons stated above, the Motion is DENIED.

IT IS SO ORDERED.

Dated: February 4, 2008

JOSEPH C. SPERO
United States Magistrate Judge

---

[2] Because the Court finds that Defendants are not entitled to a convenience transfer under § 1404(a), it does not reach the question of whether the first-to-file doctrine should be applied here.