Harnik Wilker & Finkelstein LLP
Attorneys for Plaintiff
Greystone CDE, LLC
Olympic Tower
645 Fifth Avenue, 7th Floor
New York, NY 10022-5937
Tel. No. (212) 599-7575
Facsimile (212) 867-8120
Email: stephen@harnik.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------X

Greystone CDE, LLC,                         Docket No. 07 civ. 8377 (RPP)

                          Plaintiff,

          - against -

Sante Fe Pointe, L.P.,
Sante Fe Pointe Management, LLC,
Rant LLC, and
Theotis F. Oliphant,

                          Defendants.

--------------------------------------------------------------X


# PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS CROSS-MOTION FOR ENTRY OF DEFAULT JUDGMENT; IN THE ALTERNATIVE, TO STRIKE DEFENDANTS' PURPORTED PERSONAL JURISDICTION DEFENSE


February 12, 2008

# TABLE OF CONTENTS

TABLE OF AUTHORITIES………………………………………...……i

INTRODUCTION…………………………………………………………...1

ARGUMENT……………………………………………………….........2

POINT I
AT THE DEFENDANTS' URGING, THE CALIFORNIA COURT HAS NOW
ISSUED AN ORDER THAT DEFEATS DEFENDANTS' PROFFERED BASIS
TO STAY THE NEW YORK ACTION......…………………………..…...…1

POINT II
DEFENDANTS WILLFULLY DEFAULTED…………………...…...........2

POINT III
DEFENDANTS HAVE NO MERITORIOUS DEFENSES…………....…..........4

POINT IV
DEFENDANTS HAVE WAIVED ANY OBJECTION TO PERSONAL
JURISDICTION……………………………………………...........7

CONCLUSION……………………………………..………................10

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page**

*Cafomi Master LDC v. College Partnership, Inc.* 452 F. Supp. 2d 462 (S.D.N.Y. 2006) . 4

*Chrysler Credit Corp. v. Marino*  63 F.3d 574, *578 (7th Cir.1995) .................................. 8

*CIT Group/Credit Finance Inc. v. Lott* not reported in F.Supp., 1993 WL 157617
   (N.D.Ill.1993)........................................................................................................ 6

*Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236,
   47 L.Ed.2d 483 (1976))....................................................................................... 8

*Continental Illinois Nat'l. Bank & Trust Co. v. Stanley,* 606 F.Supp. 558, 562 (1985) ..... 6

*Credit Francais Int'l, S.A. Sociedad Financiera de Comericio, C.A.* 128 Misc.2d 564,
   574, 490 N.Y.S.2d 670,679 (S.Ct. NY Co. 1985) ........................................... 3

*J.L.B. Equities, Inc. v. Mind Over Money, Ltd.,* 261 A.D.2d 510, 691 N.Y.S.2d 65,
   66 (2d Dep't 1999) ............................................................................................ 5

*Lewis v. Hermann,* 775 F.Supp. 1137, 1154 (N.D.Ill.1991).............................................. 6

*Marks v. Carrier,* No. 90 Civ. 6714(MBM), 1992 WL 245684, at *3 (S.D.N.Y. Sept.21,
   1992) .................................................................................................................. 5

*Newcourt Small Bus. Lending Corp. v. Grillers Casual Dining Group Inc.,* 284 A.D.2d
   681, 727 N.Y.S.2d 699, 701 (3d Dep't 2001) ................................................. 4

*Serlin v. Arthur Andersen & Co.,* 3 F.3d 221, 223 (7th Cir.1993)..................................... 9

*Transaero, Inc. v. La Fuerza Aerea Boliviana,* 162 F.3d 724 (2d Cir. 1998) ................... 7

*Trust & Inv. Advisers, Inc. v. Hogsett,* 43 F.3d 290, 294 (7th Cir.1994)............................ 8

*Von Hoffmann v. Prudential Ins. Co. of Am.,* 202 F.Supp.2d 252, 259 (S.D.N.Y.2002) ... 5

**Other Authorities**

Fed. R. Civ. P. 12.......................................................................................................... 2, 10

Fed. R. Civ. P. 55(c) ......................................................................................................... 3

*Internet Law Library,* 2005 WL 3370542, at *7.................................................................5

*Stumm,* 2002 WL 5589, at *7............................................................................................ 3

## INTRODUCTION

This Reply Memorandum of Law is submitted on behalf of plaintiff Greystone CDE LLC, (hereinafter "plaintiff" or "Greystone") in further support of its cross-motion for entry of default judgment; in the alternative, to strike defendants' purported personal jurisdiction defense.

## ARGUMENT

## POINT I

## AT THE DEFENDANTS' URGING, THE CALIFORNIA COURT HAS NOW ISSUED AN ORDER THAT DEFEATS DEFENDANTS' PROFFERED BASIS TO STAY THE NEW YORK ACTION

The defendants in this action have just successfully argued for, and obtained, an Order in the California action (where they are the plaintiffs) that the claims they assert in that California action do not arise from the bridge loan documents at issue in this New York action. (A copy of the Order is annexed to the Decl. of Jeremy A. Shure, Esq. dated Feb. 5, 2008. For the court's convenience, a copy is annexed hereto). Accordingly, they successfully argued that no basis exists to stay one action in favor of the other action, or consolidate the two actions into one. Specifically, in response to Greystone's motion to transfer the California action to New York, defendants argued, and the California Court agreed, that defendants' California claims do not fit within the following description found in the guarantees at issue in the New York action:

> any legal action or proceeding relating to this agreement [the guaranty], or any other document executed in connection with the transactions contemplated by the loan agreement, or for recognition or enforcement of any judgment in respect hereof or thereof....

California Order, at p. 6 lines 3-7 (quoting pertinent provision and description above); at p. 9, lines 20-23 (finding that the California claims do not fit within that description). As such,

the defendants cannot now be heard to argue that the two actions are the same or overlap, and therefore cannot argue that one action (the New York action) should be stayed in favor of the other action (the California action). Put simply, to defeat Greystone's motion to transfer one action to the other, defendants sought and obtained a ruling that the two actions are discrete and unrelated. They cannot now argue that the two are the same or overlap, and that one must be stayed in favor of the other. Accordingly, as per defendants' own allegations in opposition to Greystone's motion to transfer, no stay of the New York action is -- or ever was -- warranted.

In addition, the defendants argued for and obtained a ruling in the California action that the traditional factors evaluated on a motion to transfer (*e.g.*, convenience to the witnesses) are "neutral," and therefore do not favor California over New York or *vice versa*. California Order p. 10, lines 6-17, and plaintiff's moving memorandum Point I A at pp. 3-16. Once again, having argued for and obtained a ruling to that effect, the defendants cannot now argue that efficient administration of justice warrants a stay of one action in favor of the other. Accordingly, their request to stay the New York action in favor of the California action must be denied, and the motion for default should be granted.

## POINT II

### DEFENDANTS WILLFULLY DEFAULTED

Defendants make much of their allegation that their Motion to Stay was a responsive pleading within the scope of Fed. R. Civ. Proc. 12(b). *See* Defendants' opposition at 6 . As set forth in the Cross-Motion, Plaintiff submits that the Motion was entirely baseless and was only made to delay proceedings, harass plaintiff and to avoid filing an answer. Having given plaintiff their "irrevocable" commitment and waiver not to

object to suit against them in New York, they should be <u>estopped</u> at the outset even to have made their motion. *Credit Francais Int'l, S.A. Sociedad Financiera de Comericio, C.A.* 128 Misc.2d 564,574, 490 N.Y.S.2d 670,679 (S.Ct. NY Co. 1985)("The matter could hardly be clearer. Defendant, despite its "irrevocable" commitment and waiver not to object to suit against it in New York on grounds of forum non conveniens, is doing precisely just that...[I]t should be estopped at the outset even from making such a claim,…").

As shown in Plaintiff's cross-motion, this action must proceed regardless of the California action. Hence, defendants' argument that they "made every attempt to preserve judicial and parties' resources" is entirely unfounded. To the contrary, defendants evidently made their motion merely to delay this case and to run up legal fees unnecessarily.

Defendants are correct that there are three factors for the court to consider on a default motion: (1) whether it was willful; (2) whether the defaulting party has a meritorious defense, and (3) prejudice. *See*, Fed. R. Civ. P. 55(c). Addressing the first and third prongs, defendants' motion in lieu of answer was obviously willful because they knew, or reasonably should have known, that there was no basis for a stay regardless of what transpired in California. This has been briefed in plaintiff's moving memorandum and will not be repeated here. That plaintiff has not been prejudiced is belied by the costly motion practice which defendants have needlessly engendered. Moreover, absent default or a summary judgment (as previewed in Point III below) the motion, together with defendants' default on its Rule 26 discovery obligation, will have accomplished defendants' evident dilatory purpose in that plaintiff has incurred additional unnecessary

cost and expense in collecting on the defendants' guarantees, and the trial of this case, presently scheduled for May 12, 2008, will probably now need to be postponed. Turning to prong (2). it is clear that defendants have no meritorious defenses. This deserves its own separate Point.

<div align="center">

**POINT III**

**DEFENDANTS HAVE NO MERITORIOUS DEFENSES**

</div>

Defendants claim that the California action serves as their showing of a meritorious defense. Defendants cannot contest, however, that their obligations under the guaranties are absolute, unconditional and that they have waived any defenses. Hence they simply ignore these facts which hold true irrespective of any allegations in the California action. The court is respectfully referred to Point I B of plaintiff's memorandum of law in support of its cross-motion.

There are numerous cases on all fours with the facts in the instant case that mandate a finding of defendants' liability under their guarantees and the note. Indeed, these cases demonstrate that in the event the cross-motion is denied, this case is ripe for summary judgment. For example, in the recently decided case on remarkably similar facts, *Cafomi Master LDC v. College Partnership, Inc.* 452 F. Supp. 2d 462 (S.D.N.Y. 2006), the borrowers borrowed $500,000 pursuant to a bridge loan and gave the lender promissory notes. When they defaulted, they claimed that they had been fraudulently induced into signing the bridge loan and the notes. Judge Chin made shortshrift of defendants' arguments as follows:

> College Partnership's fraud defense also fails because it is not based on a misrepresentation of existing fact. College Partnership asserts that it was fraudulently induced into executing the Notes by oral and written

<div align="center">4</div>

representations (in the Banking Agreement) concerning future financing and other financial services Duncan would perform. *Cf. Newcourt Small Bus. Lending Corp. v. Grillers Casual Dining Group Inc.,* 284 A.D.2d 681, 727 N.Y.S.2d 699, 701 (3d Dep't 2001) (upholding grant of summary judgment on payment of promissory note and rejecting fraud defense based on conclusory allegations that note holder had falsely promised to secure future loans for defendant). But College Partnership has failed to present evidence from which a reasonable jury could find that at the time Duncan entered into the Banking Agreement, it bore no intention to honor the terms. *See id.; J.L.B. Equities, Inc. v. Mind Over Money, Ltd.,* 261 A.D.2d 510, 691 N.Y.S.2d 65, 66 (2d Dep't 1999). Indeed, Duncan's partial performance under the Banking Agreement by arranging for the $500,000 bridge financing undermines a finding that it had any "preconceived and undisclosed intention" not to perform. *Von Hoffmann v. Prudential Ins. Co. of Am.,* 202 F.Supp.2d 252, 259 (S.D.N.Y.2002).

Moreover, College Partnership's conduct with regard to the Notes also does not support a finding that it had been fraudulently induced to execute them. As of November 2004, College Partnership appeared to request a restructuring of its obligations under the Notes and Banking Agreement (Smith Decl. Ex. B), and as late as March 2005, College Partnership was still making payments on the CAMOFI Note (Jones Decl. Ex. K). Accordingly, College Partnership's allegations are merely conclusory, unsupported by clear and convincing evidence by which a reasonable jury could find fraud. *See Marks v. Carrier,* No. 90 Civ. 6714(MBM), 1992 WL 245684, at *3 (S.D.N.Y. Sept.21, 1992) (finding defendant failed to produce any evidence of being fraudulently induced to execute notes by plaintiff's representations that notes were for investments instead of loans).

In sum, College Partnership's fraudulent inducement defense amounts to nothing more than a breach of contract claim against Duncan for alleged failures to fully perform the Banking Agreement. It is well-established under New York law that "a fraud claim arising directly from the contractual relationship of the parties cannot be asserted simply by inclusion of the allegation that the defendant falsely promised to comply with its obligations *\*477* under the contract." *Stumm,* 2002 WL 5589, at *7 (internal citation and quotation marks omitted).

While College Partnership's fraud defense is invalid for the reasons described above, it is worth noting that it also fails because the plaintiff specifically waived his right to protest payment of the Notes. By the terms of the Notes, College Partnership pledged that "[e]ach payment of principal and of interest shall be paid ... without setoff or counterclaim." (Jones Decl. Exs. D § 1(d) & E § 1(d)). "Under New York law, such a waiver among sophisticated parties is effective to overcome virtually any defense to enforcement." *Internet Law Library,* 2005 WL 3370542, at *7 (examining nearly identical waiver).

> No jury could reasonably find that CAMOFI and Bridges fraudulently induced College Partnership to execute the Notes. Accordingly, their motions for summary judgment are granted.

Defendants' argument that the Loan Documents amount to contracts of adhesion holds even less water. They claim that Oliphant had "...no choice" but to sign the guarantees and note containing the forum selection clause. (Oliphant Decl, p. 5 attached to the Harnik Decl. ex. "C"). That excuse is not original. Thus, in *CIT Group/Credit Finance Inc. v. Lott* not reported in F.Supp., 1993 WL 157617 (N.D.Ill.1993) which was another garden - variety case where the borrower defaulted on a loan agreement, the court held:

> Defendants also maintain that we should set aside the forum-selection clause because it was "forced upon" them. The basis for this assertion is dubious. Having rejected Fidelcor's financing, defendants lost their alternative funding at the last minute, ostensibly leaving Fidelcor as their sole recourse. Defendants charge that Fidelcor "was well aware of the urgency which faced the Defendants and took advantage of them by presenting the forum selection clause for the first time on the day of closing." ...With no other choice, Lott and Burgess were forced to accept the terms.
>
> It is a commonplace that parties accept unfavorable terms in exchange for desireable outcomes. Defendants do not argue that Fidelcor manipulated the circumstances which resulted in this agreement, nor can they contend that the forum-selection clause itself is unreasonable or unjust. What we have here, is the unremarkable story of a borrower in a weak bargaining position agreeing to a common, albeit displeasing, term. Other than defendants' conclusory allegations, there is no evidence of duress, fraud, or even unfairness. *Lewis v. Hermann,* 775 F.Supp. 1137, 1154 (N.D.Ill.1991) ("Duress does not exist ... merely where consent is secured by hard bargaining positions, difficult financial circumstances, or threat of legal action."); *Continental Illinois Nat'l. Bank & Trust Co. v. Stanley,* 606 F.Supp. 558, 562 (1985) ("Duress does not exist merely where consent to an agreement is secured because of hard bargaining positions, or the pressure of financial circumstances," but is found where "the conduct of the party obtaining the advantage is tainted with some degree of fraud or wrongdoing.") We find no reason to disregard the forum-selection clauses, and therefore deny defendants' motion to dismiss. [footnote omitted].

Accordingly, it is abundantly clear that defendants have no defenses to Counts II and III of the First Amended Complaint which are brought to recover on the guarantees and the note, and a default should, therefore, be entered.

<center>**POINT IV**</center>

<center>**DEFENDANTS HAVE WAIVED ANY OBJECTION TO PERSONAL JURISDICTION**</center>

As explained in plaintiff's moving memorandum in support of the cross-motion, when defendants signed the guaranties and note, they waived their personal jurisdiction defense together with any other defenses they may have had to Counts II and III of the Complaint. Defendants' counter-argument that the guaranties and note are "unenforceable contracts of adhesion" is unavailing as shown above.

Defendants casually interspersed their motion to stay with an unsupported suggestion of lack of personal jurisdiction over the Oliphant parties in the context of the *California* transfer motion (Def. br. at 8). (As previously explained, the question of whether the New York court has personal jurisdiction over the Oliphant parties was a red herring in the California transfer motion, since they are *plaintiffs* in the California action and their claims in California obviously *could have been brought* in New York – *see* plaintiff's moving memorandum at p. 18). More importantly *in this action*, contrary to their assertion, defendants did not raise lack of personal jurisdiction. Nevertheless, defendants now seek to keep that defense alive, citing *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d 724 (2d Cir. 1998) for the notion that their cursory statement that "[t]here is likely no personal jurisdiction over the Oliphant Parties in New York" (Def. answering br. p. 9; motion brief p. 8) sufficed to preserve that defense. In any event, *Transaero*, of course, is wholly inapposite.

<center>7</center>

In *Transaero, supra.*, the defendant-appellant-cross-appellee in a New York action was barred from asserting lack of jurisdiction in its first responsive pleading because of a ruling of a Washington, D.C. court in a related matter that had *res judicata* effect on such defenses. Thus, the defendant noted as much in a footnote to its pleading and added that an appeal from the Washington, D.C. decision was pending but that, until overturned, it *could not* assert that defense. Therefore, the court in *Transaero* found that by "...raising the defenses in its first responsive pleading motion in the Eastern District of New York but not arguing them, the [defendant-appellant-cross-appellee] steered a middle course between the *res judicata* effect of the Washington, D.C. district court's decision and the dictates of Rule 12(h)(1)." *Id* at 730. By contrast, in the instant case, nothing prevented the Oliphant parties from asserting *and arguing* the defense of lack of personal jurisdiction; hence there was no need to "reserve" such defense. In evident recognition of this fact, defendants, after asserting that they "reserved" their personal jurisdiction defense, have now somewhat incongruously asserted in their answering papers that they were not required to answer, and are free to file yet another Rule 12 motion if and when the spirit moves them. (Def. br. p. 9). Defendants purport to support that contention with two cases that are likewise inapposite. Those cases discuss motions to stay pursuant to the abstention or *Colorado River* rule, (*Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)) whereby a federal court may abstain from exercising jurisdiction in light of a concurrent state action. However, that rule does not apply to concurrent federal actions. As stated in *Chrysler Credit Corp. v. Marino* 63 F.3d 574, *578 (7th Cir. 1995):

> The [defendants] first argue that this case should have been stayed under the doctrine established by *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). *Colorado River* and its progeny, however, address the stay of federal proceedings pending

the conclusion of parallel state actions and that is how we have applied it. *See, e.g., Trust & Inv. Advisers, Inc. v. Hogsett,* 43 F.3d 290, 294 (7th Cir.1994). Here, both the guaranty and replevin actions were filed in federal court in the Northern District of Illinois. Consequently, abstention from the guaranty action under *Colorado River* is inapplicable.

There is the possibility that the [defendants] are actually, but inartfully, arguing that this guaranty action should be stayed because it is duplicative of the replevin action. That would be a different story, but no more compelling. A federal suit may be dismissed for "reasons of wise judicial administration ... whenever it is duplicative of a parallel action already pending in another federal court." *Serlin v. Arthur Andersen & Co.,* 3 F.3d 221, 223 (7th Cir.1993) (citations omitted). A suit is only duplicative if it involves the "same claims, parties, and available relief." *Id.* This guaranty suit involves neither the same claims nor the same parties.

Moreover, defendants' motion to stay is predicated upon its ***contemplated*** motion to transfer or dismiss in favor of the California action. But, as explained in Point I above, defendants' opposition to and the denial of Greystone's California transfer motion has checkmated defendants in this regard. After persuading the California court to hold that defendants' tort claims asserted in the California action do not arise out of the guarantees and note -- which are the subject matter of this case -- they are judicially estopped from arguing the exact opposite in an attempt to convince this Court to either stay or dismiss this action in favor of the California action. Moreover, the defendants cannot honestly argue now that their motion for a stay is really a §1404 transfer motion because to do so they would necessarily run afoul of the Rule 12 waiver. (*See,* plaintiff's moving memorandum, Point II, p. 18-19). And, transfer of this action is not an option in any event, given the clear forum selection clauses in the guarantees and note and defendants' argument, as well as the California Order, that those clauses apply to the note and guarantees, and that the claims arising under them are not related to defendants' tort claims in California.

But what then is the purpose of the stay advocated by defendants?  Are defendants seriously suggesting that at the conclusion of the California action (which conceivably could be months or years away) they may then move to dismiss this action for lack of personal jurisdiction – even though the plain language of the documents establishes defendants' consent to New York's jurisdiction over them?  Moreover, if their motion for a stay was not, in effect, a motion to transfer this case to California, -- or, for that matter, to dismiss it -- then why did they argue at length the first-to-file rule[1] in their submissions to this Court? Defendants' strategy and gamesmanship here are exactly  that sort of misconduct and abuse that Fed. R. Civ. P. 12 seeks to eliminate: intentional piecemeal motion practice whose only purpose is to delay and increase litigation costs to the other side.   The Court should not permit this abuse and waste of precious  judicial resources.

## CONCLUSION

For the reasons above, Plaintiff's cross-motion for default should be granted; alternatively. defendants' purported reservation of personal jurisdiction should be stricken.

Dated:  February 12. 2008
        New York, New York

                            HARNIK WILKER & FINKELSTEIN LLP

                            by
                            Stephen M. Harnik (SH 9889)

                            Attorneys for Greystone CDE LLC
                            645 Fifth Avenue, 7th Floor
                            New York, NY  10022-5937
                            (212) 599-7575

---

[1]  The first-to-file rule is inapplicable for the reasons set forth in Point I above and because  in this case defendants filed the California action in a race to the court house, *after* plaintiff had provided them with notice of default under the bridge loan documents and during workout discussions with the plaintiff and its counsel. (*See* ex. I to the First Amended Complaint). *See* plaintiff's moving memorandum Point I A.

# NOT REPORTED CASES

Westlaw.

Not Reported in F.Supp.                                                                    Page 1
Not Reported in F.Supp., 1993 WL 157617 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

C
CIT Group/Credit Finance Inc. v. Lott
N.D.Ill.,1993.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern
Division.
The CIT GROUP/CREDIT, FINANCE INC.,
Plaintiff,
v.
John E. LOTT and Roger G. Burgess, Defendants.
No. 93 C 0548.

May 13, 1993.

MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

*1 The instant dispute arises out of loan guar-
anties signed by defendants John E. Lott ("Lott")
and Roger Burgess ("Burgess"). Presently before us
is defendants' motion to dismiss for lack of personal
jurisdiction and improper venue. For the following
reasons, we deny defendants' motion.

I. Factual Background

On May 11, 1990, Castle Multiforms, Inc.
("Castle") and Fidelcor Business Credit Corpora-
tion ("Fidelcor"), the predecessor in interest of The
CIT Group/Credit Finance, Inc. ("CIT"), entered in-
to a $2.5 million secured revolving and term loan
credit relationship. In addition to being secured by
Castle's personal property, both Lott and Burgess
signed separate guaranties for the loan. Contained
in each of the guaranties is the following forum-
selection clause:

Guarantor hereby irrevocably submits and con-
sents and to the non-exclusive jurisdiction of the
state and federal courts located in the state in which
the office of Lender [FN1] designated above is loc-
ated with respect to any action or proceeding
arising out of this Guaranty or any matter arising
herefrom or relating hereto. Any such action or pro-
ceeding commenced by Guarantor against Lender

will be litigated only in a federal court located in
the district, or a state court in the state and county,
in which the office of Lender set forth above is loc-
ated.

Guaranty at p. 5.

Although Castle has defaulted on the loan
agreement, neither Lott nor Burgess have made any
payments under their respective guaranties. Con-
sequently, CIT filed suit in this Court for relief.

II. Discussion

Lott and Burgess argue that CIT's suit should
be dismissed for lack of personal jurisdiction and
improper venue. CIT rejoins that under the forum
selection clause in both guaranties, both personal
jurisdiction and venue are proper here. We agree.

Courts routinely enforce forum-selection
clauses such as the one at issue here-that is, a
clause which include a waiver of jurisdiction chal-
lenges and a forum stipulation. *See, e.g., Carnival
Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 111 S.Ct.
1522, 113 L.Ed.2d 622 (1991); *Heller Financial,
Inc. v. Midwhey Powder Co., Inc.,* 883 F.2d 1286
(7th Cir.1989). Defendants make no headway by ar-
guing that they do not have the requisite minimum
contacts with Illinois to support personal jurisdic-
tion. As the Supreme Court and the Seventh Circuit
have plainly held, "[c]hallenges to personal juris-
diction may be waived by either express or implied
consent." *Heller,* 883 F.2d at 1290 (citing *Burger
King Corp. v. Rudzewicz,* 471 U.S. 462, 472 n. 14,
105 S.Ct. 2174, 2182 n. 14, 85 L.Ed.2d 528 (1985).
Like many others before them, the parties here
agreed in advance to litigate any disputes in a given
state-in this case, the lender's state. Because CIT is
the successor in interest of the original lender, Fi-
delcor, that state is Illinois. Unless there is a com-
pelling reason to ignore it, the forum-selection
clause should be enforced.

*2 Generally, forum-selection clauses should

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1993 WL 157617 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.)

be set aside only upon a showing of fraud, duress, or evidence that trial in the chosen forum would be so arduous that the moving party would be deprived of his day in court. *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 15, 92 S.Ct.1907, 1916-17, 32 L.Ed.2d 513 (1972); *Heller,* 883 F.2d at 1290-91. Despite defendants' claims to the contrary, none of these is the case here. Lott and Burgess claim that they have been "financially devastated" by Castle's bankruptcy and assert that while evidence eliminating much of CIT's claim can be found in Louisiana, defendants do not have the means to bring this evidence to light in Illinois. No affidavits support these contentions, however, giving us no reason to ignore the guaranties' negotiated terms.

Defendants also maintain that we should set aside the forum-selection cluase because it was "forced upon" them. The basis for this assertion is dubious. Having rejected Fidelcor's financing, defendants lost their alternative funding at the last minute, ostensibly leaving Fidelcor as their sole recourse. Defendants charge that Fidelcor "was well aware of the urgency which faced the Defendants and took advantage of them by presenting the forum selection clause for the first time on the day of closing." Defendants' Reply at p. 3. With no other choice, Lott and Burgess were forced to accept the terms.

It is a commonplace that parties accept unfavorable terms in exchange for desireable outcomes. Defendants do not argue that Fidelcor manipulated the circumstances which resulted in this agreement, nor can they contend that the forum-selection clause itself is unreasonable or unjust. What we have here, is the unremarkable story of a borrower in a weak bargaining position agreeing to a common, albeit displeasing, term. Other than defendants' conclusory allegations, there is no evidence of duress, fraud, or even unfairness. *Lewis v. Hermann,* 775 F.Supp. 1137, 1154 (N.D.Ill.1991) ("Duress does not exist ... merely where consent is secured by hard bargaining positions, difficult financial circumstances, or threat of legal action."); *Continental Illinois Nat'l. Bank & Trust Co. v. Stanley,* 606 F.Supp. 558, 562 (1985) ("Duress does

not exist merely where consent to an agreement is secured because of hard bargaining positions or the pressure of financial circumstances," but is found where "the conduct of the party obtaining the advantage is tainted with some degree of fraud or wrongdoing.") We find no reason to disregard the forum-selection clauses, and therefore deny defendants' motion to dismiss.[FN2]

### III. Conclusion

For the foregoing reasons, we deny defendants' motion to dismiss. It is so ordered.

> FN1. The Guaranty provides that "[a]ll references to Borrower and Lender herein shall include their respective heirs, legal representatives, and/or successors and assigns." Guaranty at p. 5.

> FN2. Because the forum-selection clause is perfectly valid and enforceable, we need not address defendants' venue arguments.

N.D.Ill.,1993.
CIT Group/Credit Finance Inc. v. Lott
Not Reported in F.Supp., 1993 WL 157617 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# CALIFORNIA DISTRICT COURT ORDER (SPERO, J.) DATED FEBRUARY 8, 2008

<div style="text-align:center">

1

2

3

4 UNITED STATES DISTRICT COURT

5 NORTHERN DISTRICT OF CALIFORNIA

6

</div>

7 SANTA FE POINTE, LP, ET AL.,          Case No. C-07-5454 JCS

8         Plaintiffs,

9    v.                     **ORDER DENYING DEFENDANTS'
MOTION TO TRANSFER VENUE [Docket**

10 GREYSTONE SERVICING CORP., INC.,   **No. 10]**
ET AL.,

11         Defendants.

12 _____/

13 **I.   INTRODUCTION**

14      This action was initially filed in Alameda County Superior Court and subsequently removed

15 by Defendants to this Court on the basis of diversity jurisdiction.  Defendants now bring a Motion to

16 Transfer Venue (the "Motion"), asking that the Court transfer the action pursuant to 28 U.S.C.

17 § 1404(a) to the Southern District of New York, where a later-filed action involving related claims is

18 pending.  The parties have consented to the jurisdiction of a United States Magistrate Judge

19 pursuant to 28 U.S.C. § 636(c).  The Court determines that the Motion is suitable for determination

20 without oral argument, pursuant to Civil Local Rule 7-1(b).  Accordingly, the hearing scheduled for

21 **February 8, 2008 is VACATED.**  For the reasons stated below, the Motion is  DENIED.

22 **II.   BACKGROUND**

23     **A.   The First Amended Complaint**

24      Plaintiff Theotis Oliphant is an individual whose principal residence is in Alameda County,

25 California.  First Amended Complaint ("FAC") ¶ 4.  Oliphant is general partner of Plaintiff Santa Fe

26 Pointe, LP ("SFP"), which is an Oklahoma limited partnership with its principal place of business in

27 Oklahoma City.  FAC ¶¶ 2, 5.  Oliphant is managing partner of Plaintiff Santa Fe Management

28 LLC, which is an Oklahoma limited liability company with its principal place of business in

<div style="writing-mode:vertical-rl; text-align:center">

**United States District Court**
For the Northern District of California

</div>

United States District Court
For the Northern District of California

1  Oklahoma. FAC ¶¶ 3, 5. Oliphant is also managing partner of Plaintiff Rant, LLC, which is a

2  Delaware limited liability company with its principal place of business in Alameda County,

3  California. Complaint ¶¶ 4-5.

4         Defendant Greystone Servicing Corporation ("Greystone Servicing") is a Georgia

5  Corporation with its principal place of business in New York City. FAC ¶ 6. Defendant Greystone

6  CDE, LLC ("Greystone CDE") is a Delaware Corporation with its principal place of business in

7  New York City. FAC ¶ 7.

8         Plaintiffs' claims are based on the alleged conduct of Defendants in connection with efforts

9  by Plaintiffs to acquire and rehabilitate an apartment building in Oklahoma City (the "Project") as a

10 tax-credit developer of a Low Income Housing Tax Credit project offered through the Federal

11 Housing Administration's Office of Housing and Urban Development ("HUD"). FAC ¶ 1.

12 Defendants are originators of Federal Housing Administration ("FHA") multifamily loans and are

13 HUD-approved underwriters for the FHA's Multifamily Accelerated Processing Program.

14 Complaint ¶¶ 1, 14. As such, Defendants serve as an intermediary between developer clients and

15 FHA offices to facilitate HUD approval of applications and to obtain financing for their clients.

16 FAC ¶ 14.

17        On September 7, 2006, Plaintiffs and Greystone Servicing entered into a written agreement

18 (the "Engagement Agreement") whereby Plaintiffs appointed Greystone Servicing to serve as their

19 exclusive agent to process the HUD application for financing the acquisition and rehabilitation on

20 the Project. FAC ¶ 15. Under the Engagement Agreement, Plaintiffs and Greystone Servicing were

21 to jointly prepare the application, while Defendants were to underwrite the financing for the Project

22 and submit the application to HUD on Plaintiffs' behalf. FAC ¶ 16. Also in September 2006,

23 Plaintiffs arranged for bond-financing of the Project whereby over $7 million in tax-exempt bonds

24 were to be sold. FAC ¶ 17. Because the bond issue was to expire December 20, 2006, the bond

25 financing had to close by that date. FAC ¶ 17. Therefore, Plaintiffs impressed on Defendants that

26 the HUD application had to be filed by November 2006. FAC ¶ 17.

27        In late October 2006, Greystone Servicing informed Plaintiffs that it was behind schedule,

28 and in November 2006, Greystone Servicing informed Plaintiffs that the HUD application would not

United States District Court
For the Northern District of California

1  be filed in 2006. FAC ¶¶ 23, 25. To address Plaintiffs' concerns regarding the bond financing,

2  Defendants promised to fund a non-recourse bridge-loan to cover the purchase of the Project and the

3  cost of the issuing the tax-exempt bonds. FAC ¶ 25. On November 16, 2006, Defendant Greystone

4  CDE sent Plaintiff Oliphant a bridge loan term sheet that provided for a non-recourse bridge loan to

5  Oliphant in the amount of $4,348,400, the full amount of the purchase price of the Project. FAC

6  ¶ 26. However, when Oliphant received the final bridge loan documents, on December 17, 2006, the

7  amount of the loan was only $500,000, which would cover the cost of the bond issuance but not

8  acquisition of the Project. FAC ¶ 29. In addition, the loan was not non-recourse, as promised, but

9  instead included a personal guaranty by Oliphant and a spousal guaranty. FAC ¶ 29. At this point,

10  however, the bonds had already been sold – on December 13 and 14 – and the cost of their issuance

11  had already been incurred, in the amount of $251,000. FAC ¶ 28. Because Plaintiffs would lose the

12  bond funding if the acquisition of the Project was not closed by December 20, 2006, Oliphant signed

13  the bridge-loan documents as presented. FAC ¶ 30.

14      Greystone Servicing submitted the final HUD application on March 14, 2007. FAC ¶ 31.

15  On April 17, 2007, the tax credit purchaser/syndicator that had been lined up for the Project backed

16  out. FAC ¶ 32. In June 2007, Plaintiffs found a new syndicator and co-developer, David Henry,

17  who agreed to serve as general contractor, property manager and co-developer. On July 5, 2007,

18  Oliphant met with HUD personnel in Oklahoma City and was told that the HUD application had

19  been rejected. FAC ¶ 34. The HUD representative told Oliphant that Greystone's representative

20  had gone out of her way to make disparaging remarks about the Project to the HUD Oklahoma City

21  representative. FAC ¶ 34.

22      Subsequently, Greystone's Betsy Vartanian contacted HUD personnel in Oklahoma City,

23  who agreed to reconsider the application without starting over from the beginning if Greystone

24  would provide additional materials addressing HUD's concerns. FAC ¶ 36. In the meantime,

25  Plaintiffs continued to work with David Henry and the seller of the Project to proceed with the

26  closing of the acquisition of the project. FAC ¶ 37. Plaintiffs and Henry were unable to reach an

27  agreement that addressed Henry's concerns about the deal and in August 2007, Greystone and Henry

28  began negotiating on ways to get the deal done without Oliphant and Plaintiffs. FAC ¶¶ 38-40.

3

United States District Court
For the Northern District of California

On August 9, 2007, Graystone unilaterally withdrew the HUD loan application without prior notice or warning to Plaintiffs. FAC ¶ 42. On August 21, 2007, Greystone CDE declared the bridge loan in default and threatened legal enforcement. FAC ¶ 45. On August 22 and in the weeks followed, Greystone pressured Plaintiffs to allow David Henry to take over the Project, telling Plaintiffs that they would initiate a collection action against Plaintiffs if they did not agree to the deal. FAC ¶ 46. In a telephone conference between Greystone and Oliphant on September 14, 2007, Greystone told Opliphant that it was "out" of the deal if Oliphant could not prove that the Project was not a viable deal. FAC ¶ 50.

On September 21, 2007, Greystone CDE notified Plaintiffs that it was accelerating the bridge loan and declaring all amounts under the bridge loan immediately due and payable. FAC ¶ 52.

Based on these allegations, Plaintiffs asserted the following claims against Defendants:

Claim One: Professional Negligence, based on the allegation that the Greystone Defendants "breached their respective duties of due care owed to Plaintiffs . . . with respect to the Project and the HUD financing."

Claim Two: Breach of Fiduciary Duty/ Constructive Fraud based on the alleged breach of the "trust and confidence Plaintiffs . . . reposed in . . . defendants by virtue of the Engagement Agreement, the business relationship, and the Greystone Defendants' position as a HUD-approved underwriter for the FHA's Multifamily Accelerated Processing . . . Program."

Claim Three: Intentional Interference with Prospective Economic Advantage based on Defendants' alleged interference with Plaintiffs' "existing business relationship with the Seller of the Project and with the HUD office in Oklahoma City."

Claim Four: Negligent Interference with Prospective Economic advantage.

Claim Five: Anticipatory Breach based on Greystone's repudiation of the written agreements to accomplish the financing for the acquisition of the Project.

**B.    Procedural Background of this Action**

Plaintiffs filed this action in Alameda County Superior Court on September 7, 2007. They filed a First Amended Complaint on September 25, 2007, which included additional alleged misconduct that occurred after the original complaint was filed. The First Amended Complaint was

4

**United States District Court**
For the Northern District of California

1    served on Greystone Servicing on September 25, 2007 and on Greystone CDE on September 26,

2    2007. *See* Declaration of Ann McFarland Draper in Opposition to Defendants' Motion to Transfer

3    Case to Southern District of New York ("Draper Decl."), Exs B & C (proof of service). On

4    October 25, 2007, Defendants moved the action to this Court on the basis of diversity jurisdiction.

5    On November 7, 2007, they filed the instant motion to transfer.

6        **C.      Procedural Background of the New York Action**

7        On September 26, 2007 Greystone CDE filed an action in the Federal District Court for the

8    Southern District of New York (the "New York Action") seeking damages based on the alleged

9    breach of the bridge loan agreement between Greystone CDE and the Plaintiffs in this action.

10    Draper Decl., ¶ 4. Greystone CDE served the complaint on Plaintiffs by Federal Express on

11    September 27, 2007. Draper Decl., Ex. D (December 2, 2007 Opinion and Order in New York

12    Action) at 2-3. Plaintiffs did not respond and, upon the request of Greystone CDE, the clerk's office

13    entered default. *Id.* at 3. Greystone CDE then sought entry of default judgment in the New York.

14    Action. *Id.* Plaintiffs opposed the motion, making a limited appearance in the New York Action to

15    argue that service by FedEx was not proper. *Id.* at 5. The court in the New York Action concluded

16    that service by Federal Express was not proper under the various contractual agreements between the

17    parties and vacated the default in an order filed December 2, 2007. *Id.* at 9-10.

18        **D.      The Motion**

19        Defendants assert that this action should be transferred under 28 U.S.C. § 1404(a) to the

20    Southern District of New York, where it can be heard with the action that is already pending there.

21    In support of this contention, they point primarily to provisions contained in the bridge loan

22    guaranties that state as follows:

23                 **Section 15. Governing Law. THIS AGREEMENT SHALL BE
                       GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH**
24                 **THE LAWS OF THE STATE OF NEW YORK WITHOUT
                       GIVING EFFECT TO ITS CONFLICTS OF LAWS**
25                 **PRINCIPLES . . .**

26            . . .

27                 **Section 26. Submission to Jurisdiction; Waivers.**

28

<div align="center">5</div>

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(a) PLEDGORS HEREBY IRREVOCABLY AND UNCONDITIONALLY:

(i) SUBMIT THEMSELVES AND THEIR RESPECTIVE PROPERTY IN ANY LEGAL ACTION OR PROCEEDING RELATING TO THIS AGREEMENT, OR ANY OTHER DOCUMENT EXECUTED IN CONNECTION WITH THE TRANSACTIONS CONTEMPLATED BY THE LOAN AGREEMENT, OR FOR RECOGNITION AND ENFORCEMENT OF ANY JUDGMENT IN RESPECT HEREOF OR THEREOF, TO THE NONEXCLUSIVE GENERAL JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK, THE COURTS OF THE UNITED STATES OF AMERICA FOR THE STATE OF NEW YORK AND THE APPELLATE COURTS FROM ANY THEREOF;

(ii) CONSENT THAT ANY SUCH ACTION OR PROCEEDING MAY BE BROUGHT IN SUCH COURTS, AND WAIVES ANY OBJECTION THAT IT MAY NOW OR HEREAFTER HAVE TO THE VENUE OF ANY SUCH ACTION OR PROCEEDING IN ANY SUCH COURT OR THAT SUCH ACTION OR PROCEEDING WAS BROUGHT IN AN INCONVENIENT COURT AND AGREE NOT TO PLEAD OR CLAIM THE SAME;

(iii) AGREE THAT SERVICE OF PROCESS IN ANY SUCH ACTION OR PROCEEDING MAY BE EFFECTED BY MAILING A COPY THEREOF BY REGISTERED OR CERTIFIED MAIL(OR ANY SUBSTANTIALLY SIMILAR FORM OF MAIL), POSTAGE PREPAID BY PLEDGORS AT THE ADDRESSES REFERRED TO ON PAGE 1 OF THIS AGREEMENT; AND

(iv) AGREE THAT NOTHING HEREIN SHALL AFFECT THE RIGHT TO EFFECT SERVICE OF PROCESS IN ANY OTHER MANNER PERMITTED BY LAW OR SHALL LIMIT PLEDGEE'S RIGHT TO SUE IN ANY OTHER JURISDICTION.

. . .

6

United States District Court
For the Northern District of California

1  Declaration of Erik K. Swanholt ("Swanholt Decl."), Exs. 3D & 3E (Santa Fe Management and Rant

2  guaranties for bridge loan).[1]

3          Based on the provisions designating New York law as the governing law for the bridge loan

4  guaranties, Defendants argue that this action should be heard by a New York court. Further, in light

5  of the forum-selection clauses, Plaintiffs' choice of forum should not be afforded deference,

6  Defendants assert. Rather, the Court should transfer the action to the Southern District of New

7  York, as contemplated by the parties in the bridge loan documents. Defendants further assert that

8  the action should be transferred because doing so will promote judicial efficiency, most parties and

9  third-party witnesses live closer to New York than they do to this district, and California has little or

10 no interest in resolving this controversy, which relates to an out-of-state development. Finally,

11 Defendants argue that the doctrine of federal comity under which a district court may decline to

12 exercise jurisdiction where a related action is already pending in another district court – the so-called

13 first-to-file rule – should not apply here because Plaintiffs' action was filed in anticipation of

14 Defendants' action and amounts to forum-shopping.

15         In their Opposition, Plaintiffs object to the transfer of this action to New York for several

16 reasons. First, they argue that the threshold requirement for a § 1404(a) transfer – that the transferee

17 court could exercise personal jurisdiction over Plaintiffs with respect to all relevant claims and that

18 venue there would be proper – has not been met. In particular, Plaintiffs argue that New York

19 cannot exercise personal jurisdiction over the Plaintiffs in this action because they do not have

20 minimum contacts with New York and there is not forum selection clause in the Engagement

21 Agreement with Greystone Servicing, the bridge loan agreement, the bridge loan promissory note or

22 _____

23         [1] The Oliphant guaranty contains somewhat different language:

24             **Section 3.08 Jurisdiction; Etc.** The Guarantor irrevocably (a) agrees
                that the Lender may bring suit, action or other legal proceedings arising
25             out of this Guaranty in the courts of the State of New York or the courts
                of the United States located in New York; (b) consents to the jurisdiction
26             of each such court in any such suit, action or proceeding; (c) waives any
                objection which the Guarantor may have to the laying of the venue of any
27             such suit, action, or proceeding in any of such courts . . .

28 Swanholt Decl., Ex. 3C.

7

United States District Court
For the Northern District of California

1    the assignments made to repay the note. The only documents that include forum selection clause

2    are the guaranties and these provisions are limited to claims arising out of those agreements,

3    Plaintiffs argue. Therefore, they assert, these provisions do not support a finding of personal

4    jurisdiction as to Plaintiffs' claims in this action, which are not based on the guaranties with

5    Greystone CDE. Plaintiffs argue further that the documents signed in support of the bridge loan,

6    including the guaranties, are unconscionable and unenforceable in light of the circumstances under

7    which they were signed. Therefore, they argue, the forum selection clauses in the guaranties are

8    invalid and cannot give rise to personal jurisdiction

9         Second, Plaintiffs argue that even if New York could exercise personal jurisdiction over

10   Plaintiffs, the factors that are considered in determining whether a convenience transfer is

11   appropriate do not weigh strongly in favor of transfer, as Defendants are required to establish. In

12   particular, Plaintiffs assert: 1) Plaintiffs' choice of forum is entitled to deference; 2) the contracts

13   were not negotiated or executed in New York; 3) the choice of law provision in the guaranty

14   agreements likely do not apply to Plaintiffs claims and California law, rather than New York law,

15   may well apply to those claims; 4) Plaintiffs have little or no contact with New York, while

16   Defendants do much of their business in California; 5) New York is no more convenient for parties

17   and witnesses than California; and 6) it will be more expensive to litigate in New York than

18   California.

19        Third, Plaintiffs argue that the significance of the forum selection clause has been overstated

20   by Defendants. In particular, while Defendants have stated that a party opposing transfer bears a

21   heavy burden where there is a forum selection clause, Plaintiffs argue that this rule does not apply

22   where the forum selection clause is permissive, as this one is.

23   IV.    ANALYSIS

24        Pursuant to 28 U.S.C. § 1404(a), a case may be transferred "for the convenience of the

25   parties of the parties and witnesses, in the interest of justice" to "any other district or division where

26   the action might have been brought." A party seeking transfer must make "a strong showing . . . to

27   warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*,

28   805 F.2d 834, 843 (9th Cir. 1986). In determining whether to transfer an action pursuant to

8

United States District Court
For the Northern District of California

1    § 1404(a), the court must balance a number of case-specific factors, including "(1) the location

2    where the relevant agreements were negotiated and executed, (2) the state that is most familiar with

3    the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the

4    forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the

5    differences in the costs of litigation in the two forums, (7) the availability of compulsory process to

6    compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof."

7    *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). In addition, the presence of a

8    forum selection clause is a "significant factor" in the § 1404(a) analysis. *Id.* at 499.

9         The Ninth Circuit has held that the enforceability of a forum selection provision where

10   jurisdiction is based on diversity is a question of federal law. *Manatti-Farrow, Inc. v. Gucci*

11   *America, Inc.*, 858 F.2d 509, 513 (9th Cir. 1988). Under federal law, a mandatory forum selection

12   clause is presumed valid and must be specifically enforced. *The Bremen v. Zapata Off-Shore Co.*,

13   407 U.S. 1, 15 (1972). On the other hand, "[a] permissive forum selection clause . . . simply means

14   that the parties consent to the jurisdiction of the designated forum." *Hsu v. OZ Optics Ltd.*, 211

15   F.R.D. 615, 618 (N.D. Cal. 2002) (holding that where forum selection clause was permissive, party

16   seeking convenience transfer was required to overcome the deference that is normally afforded the

17   plaintiff's choice of forum and denying request to transfer action).

18        Here, the language of the forum selection clauses in the guaranties is clearly permissive. The

19   provisions do not purport to make New York the *exclusive* jurisdiction in which claims arising from

20   the guaranties can be litigated. Further, the Court notes that the forum selection clauses are limited

21   to claims that arise from the agreements in which they are contained. The claims that Plaintiffs

22   assert in their First Amended Complaint do not arise from the duties and obligations contained in the

23   guaranties that were signed in support of the bridge loan. Therefore, the forum selection clauses

24   contained in the guaranties do not apply to this action and Plaintiffs are entitled to the deference that

25   is generally afforded a plaintiff's choice of forum.

26        Defendants' reliance on *Unisys v. Access Co., Ltd.*, 2005 WL 3157457 (N.D. Cal. November

27   23, 2005) is misplaced. In that case, the court gave a permissive forum selection "substantial

28   consideration" in its determination that a § 1404(a) transfer was warranted. *Id.* at *5. The court

1  noted that at oral argument, when asked why the court should not enforce the forum selection clause,

2  the plaintiff could not offer a "salient reason" in response. *Id.* In that case, however, in contrast to

3  the facts here, there was no dispute that the claims at issue arose out of the contract containing the

4  forum selection clause. Nor was there any argument that the agreement containing the forum

5  selection clause was itself unconscionable and unenforceable. Therefore, *Unisys* is not on point.

6      Looking to the remaining factors listed above, the Court concludes that Defendants have not

7  made the strong showing that is necessary to overcome Plaintiff's choice of forum. First, the

8  relevant agreements were negotiated in both California and New York, while the place of

9  performance was in Oklahoma. Thus, this factor is neutral. Second, although New York law may

10  govern some of the claims, it is far from clear that it will apply to all of the claims in this case. In

11  any event, courts routinely apply the law of other states and, therefore, the fact that the Court may be

12  required to apply New York law does not strongly support transfer. Third, the parties contacts with

13  the relevant fora do not strongly support transfer: Plaintiffs have strong ties with California, while

14  Defendants have strong ties with New York. Fourth, the cost of litigation is likely to be comparable

15  in either California or New York and, therefore, does not support transfer. Fifth, either venue is

16  likely to require witnesses to travel. Because the witnesses are not predominantly located in or near

17  New York, this factor does not favor transfer.

18      The Court concludes that Defendants have not demonstrated that a transfer is warranted

19  under 28 U.S.C. § 1404(a).[2]

20  **IV.    CONCLUSION**

21      For the reasons stated above, the Motion is DENIED.

22      IT IS SO ORDERED.

23

24  Dated: February 4, 2008

25                                    JOSEPH C. SPERO
                                      United States Magistrate Judge

26

27

28  ───────────────────
    [2] Because the Court finds that Defendants are not entitled to a convenience transfer under
    § 1404(a), it does not reach the question of whether the first-to-file doctrine should be applied here.

United States District Court
For the Northern District of California

10