**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GREYSTONE CDE, LLC,<br>　　　　　*Plaintiff-Counterclaim*<br>　　　　　*Defendant,*<br>　- against –<br><br>SANTE FE POINTE, L.P.,<br>SANTE FE POINTE MANAGEMENT, LLC<br>RANT LLC, and<br>THEOTIS F. OLIPHANT,<br><br>　　　　　*Defendants-*<br>　　　　　*Counterclaimants*<br>　- against -<br><br>GREYSTONE SERVICING CORPORATION,<br>INC.,<br><br>　　　　　*Additional   Counterclaim*<br>　　　　　*Defendant.* | Civil Case No:  07-CV.8377 (RPP) |

**DEFENDANTS-COUNTERCLAIMANTS'**
**MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER VENUE**

AKERMAN SENTERFITT LLP
335 Madison Avenue, Suite 2600
New York, New York 10017
Telephone:  212.880.3800
Facsimile:  212.880.8965

*Counsel:*
Donald N. David (DD 5222)
Brian A. Bloom  (BB 5722)
Jeremy A. Shure (JS 0490)

## TABLE OF CONTENTS

**Page**

**BRIEF PROCEDURAL BACKGROUND**............................................     2

The California Action and the Motion to Transfer Venue to the
Southern District of New York.............................................     2

The New York Action and the Oliphant Parties' Motion to Stay...................     4

The Oliphant Parties' Answer and Counterclaim......................................     5

**ARGUMENT**...................................................................     6

A.   The Interests of Justice Compel This Honorable Court to Transfer
     Venue of this Case to the Northern District of California...........................     6

B.   The Permissive Forum Selection Clauses in the Guaranties Are
     Trumped by the Interests of Justice Concerns......................................     11

C.   That Greystone Has Not Yet Asserted a Claim on the Guaranties in
     California Does Not Change the Result.............................................     13

D.   Greystone Has Demonstrated that It Is Using the New York Forum to
     Inconvenience the Oliphant Parties and Drive Up Their Costs....................     13

**CONCLUSION**...................................................................     15

i

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page**

*APA Excelsior III L.P. v. Premiere Technologies*, 49 F. Supp. 2d 664
(S.D.N.Y. 1999)...............................................................................    10

*Cf. John Botari & Sons, Wines & Spirits, S.A. v. Attiki Imps. & Distribs., Inc.*,
22 F.3d 51 (2d Cir. 1994).................................................................    11

*Cf. M/S Bremen v. Zapata Off-Shore Co.*,
407 U.S. 1 (1972).............................................................................    11

*Continental Grain Co. v. Barge FBL-585*,
364 U.S. 19 (1974)............................................................................    10

*Levitt v. Maryland Deposit Ins. Fund Corp.*,
643 F. Supp. 1485 (E.D.N.Y. 1986).....................................................    10, 13

*National Union Fire Ins. v. Turtur*,
743 F. Supp. 260 (S.D.N.Y. 1990).......................................................    9, 12

*Nieves v. American Airlines*,
700 F. Supp 769 (S.D.N.Y. 1988).......................................................    10

*Pall Corp. v. PTI Technologies*,
992 F. Supp. 196 (E.D.N.Y. 1998).......................................................    10

*Phillips v. Audio Active, Ltd.*,
494 F.3d 385 (2d Cir. 2007)...............................................................    10

*Reinhard v. Dow Chemical Co.*, No. 07 Civ. 3641(RPP) 2007 WL 2324351
(S.D.N.Y. Aug. 13, 2007)...................................................................    7

*Sante Fe Pointe LP, et al. v. Greystone Servicing Corporation, Inc, et al.*,
Index Number 3:07-cv-05454 JCS.......................................................    1

*Schneider v. Sears*,
265 F. Supp. 257 (S.D.N.Y. 1967).......................................................    7

*Stewart Organization, Inc. v. Ricoh Corp.*,
487 U.S. 22 (1988)............................................................................    7

*U.S. Banknote Corp. v. E. Bickel & Co. GmbH*,
No. 92 CIV 6431 (RPP) 1993 WL 8165 (S.D.N.Y. Jan. 5, 1993)....................    8

**Rules & Statutes**

28 U.S.C. § 1404                                                                        1

28 U.S.C. § 1404(a)                                                              2, 3, 7

Defendant Cross-Claimant's Santa Fe Pointe, L.P., Santa Fe Pointe Management, LLC, Rant LLC, and Theotis F. Oliphant (collectively "the Oliphant Parties") submit this Memorandum in support of their motion to transfer venue of this case to the United States District Court, Northern District of California where litigation is pending involving substantially the *same parties* and related *issues* to those presented before this Court in the instant case.[1]

This motion is made under 28 U.S.C. § 1404 on the ground that the interest of justice mandates against the parties litigating identical issues in two fora.

In this Court's February 20, 2008 Order denying Defendants' alternative motion to stay this proceeding pending the disposition of the California Action, the Court recognized that the California Action raised tort issues against Greystone Servicing Corporation, Inc. ("Greystone Servicing"), an entity that was not, at that time, a party to the New York litigation. Greystone Servicing's absence in the New York action meant there was not a strict confluence of issues between the New York Action and the California Action. This is no longer the case.

Concurrently filed with this Motion is the Oliphant Parties' Answer as well as a Counterclaim against Plaintiff Greystone CDE *and* Greystone Servicing. The positions, arguments and factual assertions, not to mention the claims, set forth in the Answer and Counterclaims here are identical to the issues presented in the California Action. This is not a matter of choice. The Oliphant Parties as required to raise these defenses and Counterclaims in the New York action at the risk of rendering their claims in the California Action moot. Hence, the identical parties and identical claims are at issue in both actions on separate coasts in two courtrooms.

Thus, the situation has markedly changed from the last time the parties appeared before this Court and raised the same concerns. At that time all the Court had before it was Plaintiff's

---

[1]    *Sante Fe Pointe LP, et al. v. Greystone Servicing Corporation, Inc, et al.*, Index Number 3:07-cv-05454-JCS (hereinafter referred to as the "California Action.")

action based on its guarantee. Although the original New York Action was related to the claims in the California Action, there were many differences. Although Defendants advised the Court of their intent to file an Answer and Counterclaims that would bring the two action in virtual alignment, the simple fact is that such answer had not yet been filed. The underlying situation has now changed.

The concern before this Honorable Court now is at the essence of Judicial Economy. Two Courts are now asked to preside over virtually identical issues in a dispute between identical parties. This is no longer a matter of assertion or speculation, it is a simple truth. Judicial Economy dictates that the issues raised in these cases be litigated in one forum. The Oliphant Parties therefore request this Honorable Court to order, pursuant to 28 U.S.C. §1404(a), to the transfer this case to the Northern District of California.[2]

## BRIEF PROCEDURAL BACKGROUND

### The California Action and the Motion to Transfer Venue to the Southern District of New York

On September 7, 2007, the Oliphant Parties filed suit against Plaintiff Greystone CDE, LLC ("Greystone CDE") and an affiliated entity, Greystone Servicing Corporation, Inc. (collectively referred to as "the Greystone Entities") in California state court. Their Complaint alleged claims for torts and breaches of contract arising out of Oliphant's project to acquire, rehabilitate, and transform an apartment building in Oklahoma City into a low income housing project with special funding insured by the FHA's Office of Housing and Urban Development ("HUD"). The Complaint in the California Action (the "California Complaint") alleges that Greystone Servicing

---

[2]    Although the Court hardly need be reminded, the fact is that the California court has already ruled that the California Action will *not* be transferred to New York. Hence, if the two cases are to be consolidated, which is the result mandated by both law and common sense, they can only be consolidated in California.

("Servicing")(a HUD-approved underwriter) was a fiduciary to Oliphant and that, among other things, Servicing negligently mishandled the Oliphant Parties' HUD application, unilaterally and wrongfully withdrew it from HUD consideration, and sabotaged the project for Service's own financial benefit.

Moreover, the California Complaint alleges that through a "bait and switch", Servicing compelled the Oliphant Parties to accept a bridge loan from Greystone CDE ("CDE") that required the personal guaranties of Mr. Oliphant and his wife. The California Complaint additionally seeks a declaration of the parties' rights and obligations under all of the agreements, including but not limited to those guaranties.

On October 25, 2007, the Greystone Entities answered the Complaint and removed the action to the Northern District of California,[3] and filed a motion in that court to transfer venue to the Southern District of New York under 28 U.S.C. §1404(a) based on the alleged convenience of parties and witnesses.

On February 4, 2008, Judge Spero denied the motion to transfer the California Action to the Southern District of New York. *See* Declaration of Donald N. David ["David Decl."], Exhibit A. On February 12, 2008, a Second Amended Complaint was filed in the California Action and the parties have exchanged initial discovery. Further, Judge Spero has ordered the Parties to mediation before the Alternative Dispute Resolution panel of the Northern District of California and has ordered mediator Peter W. Sherwood to complete mediation by the end of May. *See* David Decl., Exh. B.

---

[3]    Civil Case No. C07-05454 JCS.

**The New York Action and the Oliphant Parties' Motion To Stay**

On September 26, 2007 (the same day the Greystone Entities were served with the California Action), CDE filed this action against the Oliphant Parties alleging a default on the bridge loan, seeking to collect thereon, and seeking to enforce the guaranties. On October 5, 2007, CDE amended its Complaint.

On January 7, 2008, while the California transfer venue motion was pending, the Oliphant Parties filed a motion with this Court seeking to stay this action pending Judge Spero's decision or in the alternative an order staying the New York action pending final resolution in California.

On February 14, 2008 oral argument on the Motion to Stay took place before this Court. As the California Court had already ruled and denied the transfer motion, this Court only considered the *full* stay pending final resolution of the California case. On February 20, 2008, by written order this Court denied the motion to stay the action and ordered the Oliphant Parties to answer the complaint. *See* David Decl., Exh. C.

The Court's first stated reason for denying the motion was that the issues raised in the California and New Actions were different. *Id.* In the California Action, the primary claim was for alleged torts of Servicing concerning the manner it processed the Oliphant Parties' application for a HUD-insured loan for the Project[4]; in New York, on the other hand, CDE's action was then presented as mainly a collection action, a suit to collect on the guaranties on the bridge loan.

---

[4]      Respectfully, the California Action is not limited to claims pertaining to Servicing's malfeasance. The California Action also asserts a cause of action that directly addresses the CDE loan guarantees, seeks a declaration of the parties' rights and liabilities with respect to those guaranties, and seeks a further declaration concerning any rights to set-off the Oliphant Parties might possess.

The Court also expressed concern that staying this case would likely not lead to a more expeditious resolution "but rather would enable Defendants to utilize the bridge loan to finance the California action." *Id.* at 5. In this regard the Court assumed the Oliphant Parties had unfettered access to bridge loan funds, an assumption which is wholly incorrect. The bridge loan, by its very terms, only allows Oliphant to draw on the funds to finance pre-development expenses as they arose, *subject to Greystone's approval*.[5] The bridge loan was not a outright payment of monies to Oliphant; it was a development credit line where Greystone pre-approved any disbursements to ensure that they were earmarked strictly for Project expenses.

This Honorable Court's denial of the Motion to Stay was based on the lack of confluence of the New York and California actions as they then stood. Now, however, circumstances have changed with the filing of the Answer with Counterclaims and there can be no issue but that the two cases are virtually identical.

## The Oliphant Parties' Answer and Counterclaim

The Oliphant Parties have now answered CDE's Complaint and have filed Counterclaims against both CDE and Servicing. *See* David Decl., Exh. D.

The Counterclaims arise out of the same transaction or occurrence as CDE's Complaint, raise the identical issues, state the same causes of action, and seek relief identical to that sought through the action currently pending in the Northern District of California. *Id.*. A comparison of

---

[5]    The procedure called for Oliphant to present Greystone with a disbursement request with evidence reasonably satisfactory to Greystone that "the Project development expenses for which the Disbursement is sought are solely related to the Project and have been incurred by Borrower or are reasonably to be incurred by Borrower within the next thirty (30) days." *See* Exh. A to First Amended Complaint As Of Right ("Bridge Loan Agreement By and Between Greystone CDE, LLC and Santa Fe Pointe, L.P.") at Section 6.2(a).

the California Action and the New York Action demonstrates the virtually identical nature of the proceedings:

|  | Claims Against Greystone in the California Action | Counterclaims Against Greystone in the New York Action |
|---|---|---|
| **First Cause of Action** | Negligence, Including Professional Negligence | Negligence |
| **Second Cause of Action** | Breach of Fiduciary Duty / Constructive Fraud | Breach of Fiduciary Duty / Constructive Fraud |
| **Third Cause of Action** | Intentional Interference with Prospective Economic Advantage | Intentional Interference with Prospective Economic Advantage |
| **Fourth Cause of Action** | Negligent Interference with Prospective Economic Advantage | Negligent Interference with Prospective Economic Advantage |
| **Fifth Cause of Action** | Anticipatory Breach | Anticipatory Breach |
| **Sixth Cause of Action** | Breach of Implied Covenant of Good Faith and Fair Dealing | Breach of Implied Covenant of Good Faith and Fair Dealing |
| **Seventh Cause of Action** | Declaratory Relief | Declaratory Relief |
| **Prayers For Relief** | Identical ||

## ARGUMENT

**A.     The Interests of Justice Compel This Honorable Court to Transfer Venue of this Case to the Northern District of California**

Unlike the previous Motion to Stay, the Oliphant Parties are not asking the Court to put this matter on "hold" pending resolution of what happens in California. The Oliphant Parties request this Court now transfer this case, outright, to the Northern District of California so that all issues can be litigated in one place.

28 U.S.C. § 1404(a), the statute upon which this request is governed, reads, "[f]or the convenience of parties and witnesses, in the *interest of justice*, a district court may transfer any civil action to any other district or division where it might have been brought." (emphasis supplied).

The traditional factors used in a section 1404(a) analysis are well-known: (1) the plaintiff's choice of forum; (2) the convenience of witnesses; (3) the location of relevant documents and relative ease of access to sources of proof; (4) the convenience of parties; (5) the locus of operative facts; (6) the ability to compel the attendance of unwilling witnesses; and (7) the relative means of the parties." *Reinhard v. Dow Chemical Co.*, No. 07 Civ. 3641(RPP) 2007 WL 2324351 (S.D.N.Y. Aug. 13, 2007) (Patterson, J.).    The majority of district courts in this circuit also include two additional factors: (8) a forum's familiarity with governing law and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. *Id.* at *3 (where a separate action was pending in another district, this Court analyzed the ninth factor (trial efficiency and the interest of justice) and granted motion to transfer action to the Eastern District of Michigan because it is "logistically practical to have all trial and discovery scheduling issued from one court given that so many of the witnesses and document production will coincide in all three cases."). *Id.* at *7.

The Oliphant Parties are not suggesting that the Court engage in a full analysis of these factors, as that has been done already in California and in the Motion to Stay.  It is more appropriate for our purposes to focus on the "interests of justice" portion of section 1404(a), a term "broad enough to cover the particular circumstances of each case." *Schneider v. Sears*, 265 F. Supp. 257, 263 (S.D.N.Y. 1967). *See also Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S.

22, 29 (1988) (Section 1404(a) determinations are made on an "individualized, case-by-case consideration of fairness and convenience").

This case presents a clear situation where the interests of justice, even without a full analysis of the traditional factors, dictate transfer. In short, all parties, all causes of action, all facts, all witnesses, all damages and all documents will be identical in both actions and if this action is not transferred a complete duplication of the California Action will occur.

*U.S. Banknote Corp. v. E. Bickel & Co. GmbH*, No. 92 CIV 6431 (RPP) 1993 WL 8165 (S.D.N.Y. Jan. 5, 1993) (Patterson, J.), a case with strikingly similar facts and issues decided by this Court, offers some guidance on these issues. In *U.S. Banknote,* the defendants in New York had filed a similar action in Massachusetts four (4) days prior to the filing of the New York action. The New York defendants moved this court for a stay pending determination of the Massachusetts action, or in the alternative, an order transferring the action from the Southern District of New York to Western District of Massachusetts, based upon the allegation that the two cases were almost identical.

Noting that the "'first-filed' rule merits little weight" because the suits were filed within days of one another,[6] this Court instead conducted a review balancing the 1404(a) facts, and recognized that the interest of justice required the transfer of a case from this District to Massachusetts where a parallel action was pending. *Id.* (finding that "[c]onsiderations of trial efficiency tip the balance towards transfer to Massachusetts. A parallel action, arising out of the same transaction or series of transactions, is currently pending in the Western District of Massachusetts. . . .Transfer of this action to Massachusetts would permit consolidation of the two actions and thereby promote the efficient use of judicial resources."). *Id.* at *4. Thus, in *U.S.*

---

[6]     In the instant case this Court has similar choosen to ignore the first-filed issue.

*Banknote Corp.*, this Court granted the motion to transfer to Massachusetts, even after acknowl-

edging that the Massachusetts action was related, but not *identical*, in terms of the parties or cer-

tain claims. *Id.* at * 2.

*National Union Fire Ins. v. Turtur*, 743 F. Supp. 260 (S.D.N.Y. 1990) also shares a num-

ber of factual and procedural similarities to the case at hand. In *National* the Plaintiff, an issuer

of financial guarantee bonds, filed multiple actions against Defendants in New York ("the New

York action"). *Id.* at 261. The New York action was filed in New York pursuant to a permissive

forum selection clause contained in governing documents. *Id.* at 262-263. After a motion for

summary judgment, an appeal from the ruling and remand on the summary judgment issue, the

Defendants then filed an action in a Texas state court (which was subsequently removed to the

federal court in Texas) against the Plaintiff (as well as other parties) claiming tortuous conduct

with regard to the underlying investment transactions. Defendants then moved to transfer venue

from New York to the District Court in Texas.

Even though the New York action was the first-filed and had been through very substan-

tial procedural maneuvering, the New York Court ordered the New York Action transferred to

Texas under 28 U.S.C. § 1404(a). The Court stated:

> The presence of related litigation in the transferee forum weighs heavily
> in favor of transfer, since litigation of related claims in the same tribunal
> results in 'more efficient conduct of pretrial discovery, saves witnesses
> time and money in both trial and pretrial proceedings, and avoids dupli-
> cative litigation and inconsistent results, thereby eliminating unnecessary
> expense to the parties while at the same time serving the public interest.'
> . . . *Accordingly, 'as a general proposition, cases should be transferred*
> *to the district where related actions are pending.' Id.* (emphasis sup-
> plied) (internal citations omitted).

Other cases similarly stress that judicial economy is the *primary* concern when ruling on

a transfer venue motion where two cases are pending in different courts with the same or similar

issues to be litigated. *See APA Excelsior III L.P. v. Premiere Technologies*, 49 F. Supp. 2d 664 (S.D.N.Y. 1999) (even if there is a valid exclusive forum selection clause, the court still retains discretion to transfer in favor of judicial economy); *Nieves v. American Airlines*, 700 F. Supp 769 (S.D.N.Y. 1988) (action transferred from Southern District of New York to District of Puerto Rico even though New York was the first filed action.); *Pall Corp. v. PTI Technologies*, 992 F. Supp. 196 (E.D.N.Y. 1998) ("To permit a situation in which two cases involving the same issues are simultaneously pending in different District Courts lead to the wastefulness of time energy and money that §1404 was designed to prevent." *citing Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1974)).

The transfer of an action to a district where a related case is pending "enables more efficient conduct of pretrial discovery, saves witnesses time and money in both trial and pretrial proceedings ... thereby eliminating unnecessary expense to the parties while at the same time serving the public interest."[7] *Levitt v. Maryland Deposit Ins. Fund Corp.*, 643 F. Supp. 1485, 1493 (E.D.N.Y. 1986). Those factors all mandate transfer of this case to the Northern District of California.

Here, like the cases cited above, the interests of justice and the interests of judicial economy weigh more heavily than any other factor the court should consider. The Oliphant Parties would have been unable to properly defend the action in New York without bringing the Counterclaims that arise from the same set of facts. Instituting the Counterclaims create virtually identical litigation in both forums. Of course, this should hardly come as a surprise since there was the already pending California Action and, at oral argument of the Stay Motion, counsel

---

[7]    The issue of duplicative discovery is of particular concern in the instant case since, as found in the California Action, the potential witnesses are proximate neither to California nor New York and therefore it is very possible that the parties will be conducting competing discovery in the two different cases in distant locales.

made it clear that the Answer would include Counterclaims virtually identical to those advanced in California.

Since, as this Court is aware, the California Action will proceed in California because Judge Spero denied Greystone's Motion to Transfer Venue to New York, this Court, in the interests of justice and judicial economy, should transfer the New York action to the Northern District of California.

**B.    The Permissive Forum Selection Clauses in the Guaranties Are Trumped by the Interests of Justice Concerns**

The forum selection clauses in the CDE guaranties do not change this result. As the California Court has already recognized, those forum selection clauses are *permissive, not mandatory*.[8] As the Second Circuit has recognized in *Phillips v. Audio Active, Ltd.*, 494 F.3d 385 (2d Cir. 2007), forum selection clauses can be either permissive or mandatory and each serve two distinct purposes. *Id.* at 385. A permissive forum clause confers jurisdiction on the designated forum, assuring plaintiff at least one guaranteed forum. *Id.* A mandatory forum clause establishes an obligatory forum where disputes *must* be litigated. *Id. Cf. M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972) (such clauses presumptively valid unless a sufficiently strong showing that "enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching").

---

[8]    The venue provision of the CDE guaranties states, "Lender **may** bring suit, action or other legal proceedings arising out of this guaranty in the courts of the State of New York or the courts of the United States located in New York" (emphasis added). Thus, the clause is clearly a permissive one, and there is no preference for enforcement. *Cf. John Botari & Sons, Wines & Spirits, S.A. v. Attiki Imps. & Distribs., Inc.*, 22 F.3d 51, 52-53 (2d Cir. 1994) (clause reading "[a]ny dispute arising between the parties hereunder shall come within the jurisdiction of the competent Greek Courts" deemed permissive, not mandatory).

Although a district court undertaking a section 1404(a) analysis may take into account a permissive forum selection clause, it should be no more important a factor than CDE's choice to sue in this district rather than sue in any other permissible forum.

Again, in *National*, Plaintiffs argued against the transfer of venue because of the permissive New York forum selection clause within the agreements (as well as several other factors favoring New York venue), but the Court held that the interests of justice in avoiding litigation in two different jurisdictions far outweighed those factors:

> Separate litigations in different fora would result in duplicative discovery, pre-trial and trial proceedings, witnesses testifying twice about the same issues, and a waste of the parties' and the courts' resources. Moreover, they may lead to inconsistent results. [743 F. Supp. at 263.]

These factors, it is submitted, far outweigh any interest Greystone CDE might have in the permissive forum selection clauses of its guaranties.

As stated above, the parties to the California action have already begun the heavy lifting of the litigation. They have exchanged discovery and are already preparing for the first mediation before Mediator Sherwood of the Northern District of California ADR panel. While this Court recognized the need for mediation in this matter and admirably attempted to cause the parties to enter into settlement negotiations, in the California Action a mediator has already been chosen and the parties are proceeding to mediation after the discovery, ordered by Judge Spero, is completed.[9]

Because the claims in the New York Action are now virtually identical to the claims in the California action, the discovery and preparation for trial, mediation, motions, etc. will also be

---

[9]     Just as a single example of the duplicative work that would be required by duplicative proceedings, the Court might consider the Rule 26 disclosure that will undoubtedly be virtually identical, as the causes of action are the same in the New York action as in the California action.

virtually identical. This is an extreme waste of not only valuable judicial resources but the re-
sources of the parties.

**C.     That Greystone Has Not Yet Asserted a Claim on the Guaranties in California Does Not Change the Result**

The Oliphant Parties anticipate that Greystone may argue that the California and New
York actions still do not raise the same issues because CDE has not affirmatively sought repay-
ment under the guaranties in the California case. This is not a valid justification for allowing the
waste that would result from litigating the cases in separate fora. A similar argument was raised
and rightfully rejected in *Levitt*, 643 F. Supp. at 1493, where the Court stated:

> Allowing this lawsuit to remain in New York would be wasteful and unnecessar-
> ily duplicative. Any hardship to the New York plaintiff incurred by being forced
> to prosecute his lawsuit in Maryland is outweighed by the consolidation of all
> proceedings in one forum. Levitt may amend his answer in the Maryland Action
> to assert as counterclaims the causes of action pressed in this action.

Likewise here, CDE could easily assert the same claims it makes in its present Complaint
as a Counterclaim in its Answer. The only part of the California litigation that is not identical to
the New York litigation is the claim by Plaintiffs here for the breach of the Bridge Loan agree-
ments. The Greystone Parties do not even have to amend their Answer to bring this issue. The
Second Amended Complaint was filed on February 12, 2008, the Greystone Entities have not
filed an Answer to that Complaint and could easily bring this claim within their response.

**D.     Greystone Has Demonstrated that It Is Using the New York Forum To Inconvenience the Oliphant Parties and Drive Up Their Costs**

As part of the Court's February 20, 2008 Order denying the motion to stay, the Court or-
dered that "[t]he Parties and their principal attorneys are to appear in court on Thursday, Febru-
ary 28, 2008 at 9:30 a.m. to discuss settlement." *See* Exh. C to the David Decl. Then, in an En-
dorsed Memo issued by the Court on February 22, 2008, the Court stated that "[t]he Court's Or-

der contemplated that counsel for Greystone Servicing and Greystone CDE LLC in the California Action be present at the Conference scheduled for February 28, 2008 at 9:30 a.m." *See* Exh. E to the David Decl.

On February 25, 2008, counsel for the Oliphant Parties sent a letter to the Court, stating that "Mr. Oliphant and his counsel in the California Action, Eric Farber, have made arrangements to travel from California to appear before this Court for the Settlement Conference on February 28, 2008." *See* February 25, 2008 Letter from Jeremy A. Shure, attached to the David Decl. at Exh. F.

In the face of this directive, and the Oliphant Parties' arrangements to have Mr. Oliphant and his counsel in California appear at the settlement conference, counsel for Greystone in the New York Action wrote to "advise" the Court that Greystone's counsel in the California Action would *not* be appearing at the settlement conference, as ordered by the Court. *See* February 25, 2008 Letter from Stephen Harnik, attached to the David Decl. at Exh. G.

Plaintiffs refused to participate in the conference in good faith. Recognizing this, the Court withdrew the settlement conference from its calendar.

This duplication of resources and efforts is exactly the type of activity the Oliphant Parties request this Court to end by this Motion.

*(remainder of page intentionally left blank)*

## **CONCLUSION**

Currently, there are two, virtually identical lawsuits pending in two different District Courts on both coasts of the country.  The identical nature of the suits, the need to duplicate the discovery, the resources and the potential for conflicting rulings in each case is wholly contrary to both law and common sense.  For these reasons, the Oliphant Parties respectfully request this Honorable Court to transfer this matter to the Northern District of California.

Dated:   New York, New York
        March 3, 2008

                    Respectfully submitted,

                    AKERMAN SENTERFITT LLP

                    By: _____
                        Donald N. David (DD 5222)
                        Brian A. Bloom (BB 5722)
                        Jeremy Shure (JS 0490)

                    335 Madison Avenue, 26th Floor
                    New York, New York 10017-4636
                    Telephone:  (212) 880-3800

                    Attorneys for *Defendants-Counterclaimants*

# APPENDIX "A":

# UNREPORTED DECISIONS CITED IN DEFENDANTS / COUNTERCLAIMANTS' MEMORANDUM OF LAW

Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1993 WL 8165 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

Page 1

**C**U.S. Banknote Corp. v. E. Bickel & Co. GmbH
S.D.N.Y.,1993.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
UNITED STATES BANKNOTE CORPORATION
and American Bank Note Company, Plaintiffs,
v.
E. BICKEL & CO. GMBH and Bickel USA,
Defendants.
**No. 92 CIV 6431 (RPP).**

Jan. 5, 1993.

Law Office of Charles B. Manuel, Jr. by Charles B.
Manuel, Jr., New York City, for plaintiffs.
Cournoyer & Cournoyer, P.C. by Donald Cournoyer,
Jr., Southbridge, Mass., Albert A. Natoli, New York
City, for defendant Bickel USA.

OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.
  *1 Plaintiffs bring this action for compensatory
and punitive damages based upon allegations of
breach of contract, breach of warranty, and breach of
implied covenant of good faith and fair dealing
arising out of Plaintiffs' agreement to purchase
machinery from Defendants. Defendant Bickel USA
moves for (1) reinstatement of this Court's previous
order of dismissal, or, alternatively, (2) an order
transferring this action to the United States District
Court for the Western District of Massachusetts, or,
alternatively, (3) a stay of this action pending
determination of a parallel action currently pending
in the Western District of Massachusetts. For the
reasons set forth below, Defendant's motion to
transfer this action to the Western District of
Massachusetts is granted.

BACKGROUND

  Plaintiff United States Banknote Corporation
("USBN") is a New York corporation having its
principal place of business in New York. Compl. at ¶
2. Plaintiff American Bank Note Company ("ABN"),
a subsidiary of USBN, is a New York corporation

with a principal place of business in Pennsylvania
and offices in New York and California. Id. at ¶ 3.

  Defendant E. Bickel & Co. GmbH ("Bickel
Germany") is a German company allegedly doing
business in the United States through its sales agent,
Defendant Bickel USA. Id. at ¶ 4. Bickel USA is an
organization having a principal place of business in
Wilbraham, Massachusetts, and a mailing address in
East Longmeadow, Massachusetts. Defendant's
Notice of Motion, dated Nov. 17, 1992, ("Notice of
Motion"), Exh. B.

  In December 1990, Mr. John M. Shank,
President of Bickel USA, offered ABN an option to
purchase a set of machines manufactured by Bickel
Germany. Affidavit of John A. Murphy, dated Oct.
19, 1992, ("Murphy Aff.") at ¶ 2. In January of 1991,
ABN paid the defendants $15,000 to secure the
option to purchase this first set of machines. Id. at ¶
4. ABN soon exercised its option by ordering the first
set of machines, then ordered a second set of
machines. Id. ABN intended to use these machines to
punch perforations in the postage stamps that it
manufactures. Id. at ¶ 3.

  Plaintiffs allege that Defendants failed to deliver
the machines in a timely manner and made repeated
false assurances that delays would be short term.
Affidavit of Harvey J. Kesner, dated Oct. 19, 1992,
("Kesner Aff.") at ¶ 5. They also allege that the
machines, when eventually delivered, did not
perform as promised. Id. at ¶ 6. Defendant Bickel
USA maintains that it has completely performed its
contract with the plaintiffs and is therefore entitled to
the balance of $425,598 owed to it by the plaintiffs
under the contract. Notice of Motion, Exh. B.

  ABN and Bickel USA attempted to negotiate a
settlement to this dispute before taking court action.
The plaintiffs assert that during the course of the
settlement discussions, "ABN informed Bickel that if
some agreement could not be reached, ABN was
prepared to file in New York an already drafted
complaint seeking relief for injuries suffered by ABN
as a result of the delays, defects and subsequent
malfunctions." Kesner Aff. at ¶ 11.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-08377-RPP    Document 48    Filed 03/03/2008    Page 22 of 31

Not Reported in F.Supp.                                                                                                          Page 2
Not Reported in F.Supp., 1993 WL 8165 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

**\*2** On August 19, 1992, Bickel USA filed an action arising out of this contract dispute against ABN and USBN in the Western District of Massachusetts. The Complaint in that action alleges breach of contract and unjust enrichment and seeks judgment in the amount of the balance remaining under the contract plus interest. Notice of Motion, Exh. B. The Complaint also states Bickel USA's intent to request an injunction prohibiting the defendants from using the machines during the pendency of the suit, but indicates that "said injunction request [is] to be made formally by separate Motion." *Id.* The summons in the Massachusetts action was issued on September 9, 1992, and ABN was served on September 23, 1992. Kesner Aff. at ¶ 15.

On August 23, 1992, USBN and ABN filed this action in the Southern District of New York. *Id.* at ¶ 12. The summons was issued on the same day, and summons and complaint were served "immediately" upon Bickel USA in Massachusetts. *Id.* at ¶ 13. Bickel Germany was served "through service upon its agent Bickel USA." *Id.* Bickel Germany has not appeared in this action or challenged the Court's jurisdiction or venue.

In a previous motion, dated September 24, 1992, Bickel USA asked this Court to dismiss this action on the ground that "this case had previously been filed in the United States District Court in the Western District of Massachusetts." Affidavit of Charles B. Manuel, Jr., dated November 25, 1992, ("Manuel Aff."), Exh. A. This Court granted Defendant's motion to dismiss, but subsequently vacated its order of dismissal after receiving a letter, dated October 22, 1992, from Charles B. Manuel, attorney to the plaintiffs, stating:

Contrary to Bickel-USA's unsworn assertions, the same action is not pending in another court. A related but not identical action brought by Bickel-USA against USBN and ABN is pending in the United States District Court for the District of Massachusetts. The action does not include E. Bickel GmbH, a defendant here, nor does it address USBN and ABN's claims in this action.

*Id.,* Exh. B at 3.

Defendant Bickel USA now moves this Court to

take one of the following courses of action: (1) reinstate its previously vacated order of dismissal and sanction Plaintiffs' counsel for alleged misrepresentations in its October 22, 1992, letter, (2) transfer this action to the Western District of Massachusetts, or (3) stay this action pending a determination of the parallel action in the Western District of Massachusetts.

## DISCUSSION

### I. REINSTATEMENT AND SANCTIONS

Defendant Bickel USA seeks reinstatement of this Court's prior order of dismissal and Rule 11 sanctions against Plaintiffs' attorney on the ground that the attorney, Charles B. Manuel, intentionally misrepresented to the Court in his letter of October 22, 1992, that "the same action is not pending in another court." The Court finds that this statement by Mr. Manuel, when taken in the context of his entire letter, as quoted above, does not misrepresent the relationship between this action and the one pending in Massachusetts. Accordingly, Defendant's motion for reinstatement of this Court's prior order of dismissal and Rule 11 sanctions is denied.

### II. TRANSFER

**\*3** Defendant Bickel USA asks this Court to transfer this action to the Western District of Massachusetts, where a parallel action is currently pending. Defendant's argument for transfer rests primarily upon the "first filed rule." This "well-settled" rule provides that "where there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience in favor of the second action, or unless there are special circumstances which justify giving priority to the second." *Motion Picture Lab. Technicians Local 780 v. McGregor & Werner, Inc.,* 804 F.2d 16, 19 (2d Cir.1986) (quoting *Fort Howard Paper Co. v. William D. Witter, Inc.,* 787 F.2d 784, 790 (2d Cir.1986)).

"The first filed rule is not to be applied in a mechanical way." *Cooperative Centrale Raiffeisen-Boerenleen Bank v. Northwestern Nat'l Ins. Co.,* 778 F.Supp. 1274, 1278 (S.D.N.Y.1991); *accord Gibbs & Hill, Inc. v. Harbert Int'l, Inc.,* 745 F.Supp. 993, 996 (S.D.N.Y.1990). "[W]here each side, after a

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1993 WL 8165 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

breakdown in settlement negotiations, engages in a race to the courthouse to achieve 'first filed' status, the courts should be concerned with what the interests of justice require and not with who won the race." *National Patent Dev. Corp. v. American Hosp. Supply Corp.*, 616 F.Supp. 114, 118 (S.D.N.Y.1984).

Bickel USA filed its action in Massachusetts four days before the plaintiffs filed this action here. However, ABN was not served in the Massachusetts action until approximately one month after ABN and USBN had served Bickel USA in this action. The courts in this Circuit have not definitively decided "whether the 'first filed' action is determined by the date of filing of the complaint or by the date of actual service of process." *Id.* at 118 & n. 7. "Courts also pay little regard to the date of filing when the competing suits were commenced within days of each other." *Gibbs & Hill, Inc.*, 745 F.Supp. at 996. Given that Bickel USA commenced the Massachusetts action following a breakdown in settlement negotiations during which it had learned that the plaintiffs intended to commence this action in New York, and that Bickel USA filed the Massachusetts action only four days before the plaintiffs filed this action and served the plaintiffs one month after receiving service of the plaintiffs' complaint, the "first filed" rule merits little weight in the context of this motion to transfer.

The Court must therefore decide Defendant's motion to transfer under 28 U.S.C. § 1404(a) by balancing the significant factors. Section 1404(a) gives the district court discretion to transfer a civil action to any other district in which it might have been brought "for the convenience of parties and witnesses and in the interest of justice." Factors to consider in deciding a motion to transfer include: "the place wherever the operative facts occurred; the convenience of parties and witnesses; the principal places of business and operations of the parties to the action; the location of documents, the relative ease of access to the sources of proof, and the availability of process to compel attendance of unwilling witnesses; the plaintiff's choice of forum; a forum's familiarity with the governing law; trial efficiency and the interest of justice." *Gibbs & Hill, Inc.*, 745 F.Supp. at 996.

*4 In this case, the balance of the conveniences tips in favor of transfer to the Western District of Massachusetts. The dispute revolves around a contract negotiated mainly by means of telephone and written correspondence between Defendant Bickel USA's office in Massachusetts and Plaintiff ABN's office in Pennsylvania. Murphy Aff. at ¶ 5. Additional negotiations took place via correspondence between Bickel Germany and ABN's facility in California. *Id.* The machines at issue were manufactured in Germany and delivered to California. The contract between the parties had no contact with New York until disputes arose regarding the timeliness of delivery and ABN's counsel in New York became involved in negotiating solutions. *See id.* at ¶ 7.

Although the convenience of the parties and witnesses appears to favor neither forum, consideration of the parties' principal places of business and operations favors Massachusetts. Bickel USA is a one- or two-person organization with only one office, which is in western Massachusetts. ABN has its principal place of business in Pennsylvania and offices in New York and California. ABN, as a larger corporation with offices nationwide, is more likely than a local corporation such as Bickel USA to possess the resources to engage in litigation outside of its home jurisdiction.

Relative ease of access to sources of proof does not appear to weigh in favor either forum. Because none of the parties has given the Court any indication that it intends to call non-party witnesses, the Court does not anticipate any problems with compelling witnesses to attend trial. In addition, the parties have not indicated that documentary evidence relevant to this action is sufficiently voluminous as to present difficulties of production in either forum.

Considerations of trial efficiency tip the balance towards transfer to Massachusetts. A parallel action, arising out of the same transaction or series of transactions, is currently pending in the Western District of Massachusetts. Even while opposing the transfer, the plaintiffs in this action concede that "[t]he two suits are clearly related, and the transfer or stay of one action certainly is warranted." Manuel Aff. at ¶ 8. Transfer of this action to Massachusetts would permit consolidation of the two actions and thereby promote the efficient use of judicial resources.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1993 WL 8165 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

Plaintiffs argue that transfer to Massachusetts would prevent them from obtaining complete relief because Bickel Germany is not a party to the Massachusetts action. Neither Plaintiffs nor Defendants have suggested any reason why Bickel Germany is less likely to be amenable to the jurisdiction of the District Court for the Western District of Massachusetts than to the jurisdiction of this Court. If this action is transferred to that district, all the parties, including Bickel Germany, will go with it.

Although Plaintiffs' choice of forum weighs against transfer, it does not outweigh the other factors indicating that the Western District of Massachusetts is the more convenient forum. Accordingly, Defendant Bickel USA's motion to transfer this action to the Western District of Massachusetts is granted.

### III. STAY

*5 This Court's decision to grant Defendant Bickel USA's motion to transfer moots that defendant's motion for a stay of proceedings.

### CONCLUSION

For the reasons set forth above, Defendant Bickel USA's motion to transfer this action to the United States District Court for the Western District of Massachusetts is granted. Its motion to reinstate this Court's prior order of dismissal and order Rule 11 sanctions is denied.

IT IS SO ORDERED.

S.D.N.Y.,1993.
U.S. Banknote Corp. v. E. Bickel & Co. GmbH
Not Reported in F.Supp., 1993 WL 8165 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Westlaw.**

Slip Copy                                                                    Page 1
Slip Copy, 2007 WL 2324351 (S.D.N.Y.)
**(Cite as: Slip Copy)**

**C**Reinhard v. Dow Chemical Co.
S.D.N.Y.,2007.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
J. Pedro REINHARD, Plaintiff,
v.
The DOW CHEMICAL CO., and Andrew N. Liveris,
Defendants.
**No. 07 Civ. 3641(RPP).**

Aug. 13, 2007.

Kramer, Levin, Naftalis & Frankel LLP, Attn: Gary
P. Naftalis, New York, NY, for Plaintiff, J. Pedro
Reinhard.
Kirkland & Ellis LLP, Attn: David M. Bernick, New
York, NY, for Defendants, Dow Chemical Co., and
Andrew N. Liveris.

**OPINION and ORDER**

ROBERT P. PATTERSON, JR., U.S.D.J.
    *1 Defendant The Dow Chemical Company
("Dow") moves to transfer pursuant to 28 U.S.C. §
1404(a). Defendant Andrew N. Liveris ("Liveris")
moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(3),
to transfer pursuant to 28 U.S.C. § 1406(a), or in the
alternative, to join Defendant Dow's motion to
transfer under 28 U.S.C. § 1404(a).

    For the reasons that follow, Dow's and Liveris'
motions to transfer under § 1404(a) are granted.
Liveris' motion to dismiss under Fed. R. Civ. P.
12(b)(3) or transfer under § 1406(a) is denied. The
action is transferred to the Eastern District of
Michigan.

**BACKGROUND**

**A. Factual Background**

**1. The Parties**

    Plaintiff, J. Pedro Reinhard ("Reinhard"), was an
employee of Dow for thirty-seven years. Reinhard
became Chief Financial Officer ("CFO") and a
member of the Board of Directors ("the Board") in
1995. Although he retired as CFO and Executive
Vice President in 2005, he remained an employee
director on the Board until his termination in April,
2007. (Compl., dated May 8, 2007, ¶ 14.) Reinhard
is a citizen of Brazil, a lawful permanent resident of the
United States, and is domiciled in Florida. (Id. ¶ 9.)

    Defendant, The Dow Chemical Company, is a
Delaware corporation that has its principal place of
business in Michigan and engages in continuous
activities in New York. (Id. ¶ 10.)Defendant, Liveris,
is the Chairman, CEO, and President of Dow; he is a
citizen of Australia, a lawful permanent resident of
the United States, and is domiciled in Michigan. (Id.
¶ 11.)

**2. Rumors about a Dow Acquisition and
Reinhard's Termination**

    According to Defendants, rumors about a Dow
acquisition began with a report in the *Financial
Times* on January 18, 2007, which stated that a group
of private equity firms were "working on a break-up
bid for Dow."(Dow Countercl., dated May 29, 2007,
¶ 10 .) On February 25, 2007, the *Sunday Express,* a
United Kingdom newspaper, reported that a group of
"global investors and American private equity giants
were close to making a bid for Dow."(Compl.¶ 22.)
Reports relating to such a bid were also published in
the *Evening Standard* on March 12, 2007. (Dow
Countercl. ¶ 15.) On April 8, 2007, the *Sunday
Express* reported that a group of Middle East
investors and a group of private equity firms were
potentially "days away" from a bid. (Id. ¶ 20.)

    Dow's response to these early reports rumors was
to make "inquiries with the investment banking and
financial community, to determine whether: (i) there
was a basis for these rumors; and (ii) the source of
these rumors."(Id. ¶ 11.)[FN1]Additionally, Dow had
board meetings to discuss the reports, which were
attended by Reinhard, at its headquarters in Midland,
Michigan on February 14 and March 16, 2007. (Id. at
¶¶ 12, 17.)After the second meeting, the company
issued a press release stating that Dow had not had
any discussions about a possible leveraged buyout.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*(See id. ¶ 23.)*

> FN1. Dow "retained [the law firm] Wachtell, Lipton ... to advise the company concerning potential reactions to a takeover bid."(Transcript of Oral Argument, dated August 2, 2007 ("8/2 Tr .") at 13.)

**\*2** On April 9, 2007, James Dimon ("Dimon") the Chief Executive Officer of J.P. Morgan Chase ("Morgan"),[FN2] is alleged to have told Liveris at a dinner meeting in Michigan that a London affiliate was working on an acquisition of Dow on behalf of Middle East investors. (*Id.* ¶ 24.)Dow contends that on April 10, 2007, Dimon called Liveris and stated that Reinhard and Romeo Kreinberg ("Kreinberg"), another Dow executive, were engaged in discussions about a Dow acquisition. (*Id.* ¶ 25.)[FN3]On the same day, Dow's outside counsel, James Saverese, spoke with Dimon and Liveris on a conference call to confirm the statements Dimon had made to Liveris. (*See* 8/2 Tr. at 14.)

> FN2. Dow refers to its source as the "Bank's CEO," never naming James Dimon. (*See generally* Dow Countercl.) Reinhard states, however, that it is "alleged by Mr. Kreinberg in his complaint, and as is undisputed by Dow, the CEO was James Dimon, of Morgan Chase."(Pl.'s Opp'n., dated July 6, 2007 at 4; *see* Affidavit of Duncan Stuart, dated May 29, 2007 ("Stuart Aff.") Ex. C (Kreinberg Compl.) ¶ 2.)

> FN3. Reinhard denies participation in any meetings with respect to takeovers or acquisitions of Dow. (Compl.¶ 35.) He alleges that on July 27, 2006, Dow lowered its earnings estimate for the year, its shares fell more than ten percent, and "thereafter, rumors began to circulate that Dow might be a target for a buyout or other effort ...." (*Id.* ¶ 21.)

On April 11, 2007, the first day of a previously scheduled board meeting, [FN4] Liveris addressed the allegations about Reinhard's and Kreinberg's alleged third party discussions regarding a bid for Dow. The Board discussed the extent of the Dow employees' involvement, the credibility of the witness, and what steps to take. (Dow Countercl. ¶ 27.) The Board

unanimously decided that the information was credible and that Reinhard and Kreinberg should be terminated. (*Id.* ¶¶ 27-28.)

> FN4. Reinhard was absent from this meeting, having previously informed Liveris that he would not be able to attend for unrelated reasons. (*See* Dow Countercl. ¶ 29.)

At 7:00 AM, on April 12, 2007, prior to the Board meeting scheduled for that day, Liveris met with Reinhard in his office in Midland, Michigan. (Compl.¶ 25.) Also present at this meeting were Charles Kalil (General Counsel to Dow), Paul Stern, Arnold Allemang (a Board member), and Martin Lipton of Wachtell, Lipton. (*See* Dow Countercl. ¶ 28.) At the meeting, Liveris told Reinhard that he had "received information" about Reinhard's participation in discussions about an acquisition of Dow. Liveris informed Reinhard that, based on this information, the company had concluded that Reinhard had engaged in grave misconduct and breaches of his fiduciary duty. (Compl.¶ 25.) Reinhard alleges, and Dow denies, that Liveris offered Reinhard his financial benefits if he resigned immediately. (*Id.* ¶ 25; Dow Ans. ¶ 25.) Reinhard denied breaching his fiduciary duties and refused to resign; Dow terminated Reinhard that day. (Compl.¶ 26.)

### 3. Reinhard's Termination Becomes Public

That same day, Dow issued a press release, in Michigan, which stated that Reinhard and Kreinberg had been terminated because they "engaged in business activity that was highly inappropriate and a clear violation of Dow's Code of Business Conduct."[FN5](*Id.* ¶ 29.)Dow also published on its website "An Open Letter to Our Valued Customers" and mailed a "Supplement to Notice of the Annual Meeting and Proxy Statement,"[FN6] addressing both the alleged actions of Reinhard and his termination. (*Id.* ¶¶ 32, 36.)Reinhard released a statement on April 16, 2007 denying any involvement in a Dow acquisition.(*Id.* ¶ 35.)

> FN5. The press release was also published on Dow's website. (Compl.¶ 31.)

> FN6. The "Supplement to Notice of the Annual Meeting and Proxy Statement" had

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the following return address: The Dow Chemical Company, c/o The Bank of New York, PO Box 11002, New York, N.Y. 10286-1002. (Compl.¶ 36.)

Reports of Reinhard's and Kreinberg's termination were published in various news sources, including: *Saginaw News*, *The Wall Street Journal*, *The New York Times*, and *The Financial Times.(Id.* ¶¶ 31, 33.)An article in *The Wall Street Journal* quoted Dow spokesperson, Christopher Huntley, stating that Reinhard's alleged third party discussions were conducted during "multiple meetings in multiple months in multiple locations [and] with a number of different parties."(*Id.* ¶ 33.)

**4. Events Preceding the Instant Action**

*3 Dow and Reinhard engaged in ineffective settlement talks for three weeks after Reinhard's termination. (Declaration of Gary P. Naftalis, dated July 5, 2007 ("Naftalis Decl.") ¶¶ 2-3.) After receiving a settlement proposal from Dow on May 7, 2007, Dow and Reinhard agreed to a conference call on May 8, 2007 at 11 a.m. to further discuss the proposal. (*Id.* ¶ 3.) On May 8, 2007, Dow cancelled the conference call and filed suit. (*Id.* ¶ 4.)

On May 8, 2007, at 8:30 a.m., Dow filed an action for breach of contract, breach of fiduciary duty, and declaratory judgment against Reinhard and Kreinberg in the Eastern District of Michigan. Later that day, Reinhard filed this complaint against Dow and Liveris.[FN7](*Id.* ¶ 3.) On the same day, Kreinberg filed his own action in New York State Supreme Court.[FN8]

> FN7. Reinhard alleges that Dow was aware of his preparation for litigation in early May. He also claims that he did not discover that Dow had filed suit against him in Michigan until he had filed the instant action. (Naftalis Decl. ¶¶ 3-4.)

> FN8. Kreinberg's action was subsequently removed to federal court in this district and then transferred to Michigan by Judge Marrero. *See Kreinberg v. Dow Chemical Co., 2007 WL 2141391 (S.D.N.Y. July 23, 2007).*

**B. Procedural Background**

The May 8, 2007, complaint filed by Reinhard in this district against Defendants Dow and Liveris alleged claims for (1) libel and (2) breach of contract. On May 29, 2007, Dow filed their Answer and Counterclaim, as well as this Motion to Transfer Pursuant to 28 U.S.C. § 1404(a). On June 19, 2007, Liveris filed a Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(3), to Transfer Pursuant to 28 U.S.C. § 1406(a), or in the Alternative to Join Dow's Motion to Transfer under 1404(a). On July 6, 2007, Reinhard filed a Memorandum in Opposition to Dow's Motion to Transfer and Liveris' Motion to Dismiss or Transfer. Defendants submitted a reply memorandum on July 16, 2007 in further support of their motions. Oral arguments were held on August 2, 2007.

**DISCUSSION**

**A. Legal Standard**

Section 1404(a) states that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."28 U.S.C. § 1404(a) (1996). District courts have broad discretion to determine convenience and justice on a case-by-case basis. *D.H. Blair & Co., Inc. v. Gottdiener,* 462 F.3d 95, 106 (2d Cir.2006) (citations omitted). Courts should consider factors of private and public interest. *See Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508-509 (1947). The following factors are considered in determining convenience and justice: "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the ability to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties."*D.H. Blair & Co.,* 462 F.3d at 106-107. The majority of district courts in this circuit also include two additional factors: "[ (8) ] a forum's familiarity with governing law ... [and (9) ] trial efficiency and the interests of justice, based on the totality of the circumstances."*Strougo v. Brantley Capital Corp.,* 2007 WL 1683348, at *5 (S.D.N.Y. June 3, 2007) (citations omitted). The party making the motion to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 2324351 (S.D.N.Y.)
(Cite as: Slip Copy)

Page 4

transfer has the burden to show that the transfer is warranted. *D.H. Blair & Co., 462 F.3d at 106.*

*\*4* After a consideration of all nine factors, the Court finds that Defendants have met their burden of showing by a preponderance of the evidence that this case should be transferred to the Eastern District of Michigan.

**1. Plaintiff's Choice of Forum**

Normally, a court should "give due deference to the plaintiff's choice of forum which should not be disturbed unless the balance of convenience and justice weigh heavily in favor of defendant's forum ...." *Citigroup Inc. v. City Holding Co., 97 F.Supp.2d. 549, 561 (S.D.N.Y.2000)* (internal quotations omitted). However, a plaintiff's choice of forum is given less deference when the forum is "neither the [plaintiff's] home nor the place where the operative facts of the action occurred." *Hall v. South Orange, 89 F.Supp.2d 488, 494 (S.D.N.Y.2000)* (internal quotations omitted).

Although Reinhard chose to bring suit in the Southern District of New York, he is domiciled in Florida, and most of the operative facts took place in Michigan.[FN9]Reinhard's assertion that he "travels to New York at least once a month to attend board meetings ... and to transact other business," (Pl.'s Opp'n at 17), is not persuasive. *See Herbert Ltd. Pushup. v. Elec. Arts, Inc., 325 F.Supp.2d 282, 291 (S.D.N.Y.2004)* (holding that plaintiff's forum will receive relatively little weight because even though plaintiff alleges that it "conducts all of its business operations" in its chosen forum, it is not plaintiff's home district and the majority of operative facts took place elsewhere).

> FN9.*See infra* § A(5), discussing locus of operative facts.

**2. The Convenience of Witnesses**

The convenience of witnesses weighs in favor of a transfer to Michigan. The convenience of party and non-party witnesses is an important factor: "indeed, certain courts in this district have called it 'probably the single-most important factor in the analysis of whether transfer should be granted.' " *Strougo, 2007*

WL 1683348, at *5* (internal citations omitted). The defendant has the burden of "clearly specify[ing] the key witnesses to be called and must make a general statement of what their testimony will cover." *Peterman v. U.S., 2006 WL 2806417, at *2 (N.D.N.Y. Sept. 28, 2006)* (citing *Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 218 (2d Cir.1978)*).

Dow's Assistant General Counsel, Duncan Stuart, listed the following possible witnesses all located in Michigan both defendants, Dow and Liveris; Dow spokesperson, Chris Huntley, the other employee named in the complaint; Dow's public affairs personnel who were involved in releasing statements about Reinhard's termination; Dow's human resources personnel who were involved in Reinhard's compensation plans and the finance and mergers and acquisitions personnel; and Reinhard's assistant who made his international travel plans. (Stuart Aff. ¶¶ 6-12.)

Despite Dow's long list of Michigan witnesses, Reinhard believes that this factor should weigh in favor of maintaining the action in this district because Dimon, "arguably the most important non-party witness [for the libel claim]," and other possible Morgan witnesses reside either in New York or London. (Pl. Opp'n at 13.)[FN10]

> FN10. While Plaintiff's opposition papers refer to "other Morgan witnesses," at oral argument Dow's counsel made the uncontradicted statement that Plaintiff's Rule 26(f) statement listed only Mr. Reinhard, Mr. Kreinberg, Mr. Dimon, and three Dow Employees in Michigan, as the persons known to them to have knowledge of the claims in the Complaint. (*See* 8/2 Tr. at 20.) Furthermore, counsel for Plaintiff, stated at oral argument that the allegedly false statements were "based solely and exclusively on a conversation ... with Mr. Dimon ...." (*Id.* at 39.)

*\*5* At oral argument, however, Dow's counsel, David Bernick, pointed out that although Mr. Dimon had provided information to Dow about the proposed leveraged buyout planned by groups of investors in the United Kingdom and Oman at meetings in the United Kingdom, Dimon was not in attendance at these meetings, nor were the other "Morgan sources,"

Slip Copy
Slip Copy, 2007 WL 2324351 (S.D.N.Y.)
(Cite as: Slip Copy)

nor was outside counsel, Saverese, who participated in the discussions with Dimon and Liveris. (See 8/2 Tr. at 11-17.) Thus, the potential witnesses residing in New York will not be able to testify as to the truth or falsity of the allegedly defamatory statements made by Dow. The witnesses who might have personal knowledge about the statements are located in the U.K. and Oman.

The most the New York witnesses could testify about would be whether the allegedly libelous statements made by Dow and Liveris about Plaintiff were fair and reasonable in light of the information they had provided to Defendants. Thus, their testimony at trial would only be relevant in so far as it might bear on any bad intent or reckless negligence on the part of Defendants, and, even then, only if the statements of Defendants about Plaintiff contradicted the information supplied by Mr. Dimon and the other alleged Morgan witnesses. On the other hand, Plaintiff is also alleging malice on the part of Defendant Liveris based on prior interactions with Plaintiff. (See Compl. ¶ 49.) The witnesses to such prior statements of Defendant Liveris are most likely all employees of Dow residing in Michigan, or members of Dow's board, a number of whom live in Michigan, while only one lives in New York. (See 8/2 Tr. at 65.)

Furthermore, the witnesses to Plaintiff's breach of contract claim, other than Plaintiff, would appear to be based solely in Michigan, since the contract was formed and all the acts alleged in the Complaint bearing on its breach occurred in Michigan. (See Compl. ¶¶ 53-57.) On balance, the convenience of the witnesses will best be served by a transfer to Michigan.

**3. Location of documents and relative ease of access to sources of proof**

The location of relevant documents and relative ease of access to sources of proof weigh in favor of a transfer to Michigan. Dow's relevant documents are minutes from the Board's meetings involving Reinhard's termination, press release drafts, Reinhard's documents and emails, and the documents and emails of other Dow employees. (Stuart.Aff.¶ 13.) These documents are all located in Michigan. (Id.) Because of technological advancements and the ability to electronically send documents to the site of

the litigation, the location of hard copies is given little weight. See Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. LaFarge N. Am. Inc., 474 F.Supp.2d 474 (S.D.N.Y.2007). However, because email discovery is likely and hard drive discovery may be required, this factor favors a transfer to Michigan.

**4. The Convenience of Parties**

The convenience of the parties weighs in favor of Dow's motion to transfer: "[w]here neither party resides in the chosen forum, 'it is only logical that a transfer to the residence of one of them would be more convenient.'" Dealtime.com v. McNulty, 123 F.Supp.2d 750, 756 (S.D.N.Y.2000) (quoting ZPC 2000, Inc. v. SCA Group, Inc., 86 F.Supp.2d 274, 279 (S.D.N.Y.2000)). Both defendants, Dow and Liveris, reside in Michigan and Reinhard himself is domiciled in Florida. (Compl.¶¶ 9-11.) Though Reinhard claims that it will be more convenient for him to travel to New York than to Michigan (Pl.'s Opp'n. 17), he must travel regardless of where the case is tried.[FN11]Moreover, though a trip from Florida or New York to Bay City, Michigan, may indeed be inconvenient for parties residing on the East Coast, a trip to New York will be equally inconvenient for those parties residing in Michigan.

> FN11. Plaintiff's counsel, whose offices are located in New York, and who would not have to travel if the action were kept in this district, noted that it took them "14 hours to get home from [a] conference [in Bay City]." (8/2 Tr. at 47.) While the Court empathizes with this inconvenience, it also notes that convenience of counsel is not a factor to be weighed in a motion to transfer.

**5. Locus of operative facts**

*6 The locus of operative facts weighs in favor of Dow's motion to transfer. The claims of libel and breach of contract are based largely on Reinhard's employment and compensation agreements, Dow's board meetings, Reinhard's termination, and the allegedly defamatory press releases and letters to shareholders issued by Dow. These events all took place in Michigan. (See Compl. ¶¶ 24-26, 28-32, 40-42.) The locus of operative facts in a breach of contract case looks at "where the contract was negotiated or executed, where it was to be performed,

and where the alleged breach occurred."*Prudential Sec. v. Norcom Dev., Inc.,* 1998 WL 397889, at *4 (S.D.N.Y. July 16, 1998). Reinhard's breach of contract claim is based on multiple contracts and compensation plans, at least one of which was signed by executives in Midland, Michigan. (Compl. ¶ 54; Naftalis Decl. Ex. J.) The Board of Directors and the Dow personnel who interpret and administer the compensation plans, meets in Midland, Michigan. (Dow Countercl. ¶ 35.)

As for the libel claim, Reinhard alleges that he has suffered the greatest harm in New York, since most of the defamatory statements were circulated in New York and because New York is the center of the financial press. (Compl. ¶ 37; Pl.'s Opp'n at 15.) The harm to Reinhard based on the publication of Dow's press release in New York does weigh in favor of a trial in this district, however, it is not a determinative factor when all of the operative facts are considered together. *See Curtis Publ'g Co. v. Birdsong,* 360 F.2d 344, 347 (5th Cir.1966) (holding that in a multi-state publication of libel, it is not enough that the Post was sold in Alabama, as this would create a forum in all other states as well)); *see also Barge v. Daily Journal Corp.,* 1996 WL 434561, at * 4-5 (S.D.N.Y. Aug. 2, 1996) (holding that although allegedly defamatory claims were published in Seattle and the plaintiff was harmed in Seattle, the litigation should be situated in California because that was the location where more operative facts took place). Here, even if the circulation of the allegedly defamatory statement did the most harm to Reinhard in New York, the majority of operative facts still took place in Michigan.

**6. Availability of process to compel the attendance of unwilling witnesses**

The availability of process to compel the attendance of unwilling witnesses is a neutral factor. Important elements for this factor are the inability to compel process over a witness, the availability of alternate forms of testimony, and a showing that the witness would be unwilling to testify. *See Citigroup Inc.,* 97 F.Supp.2d at 561-562 (holding that although it may be preferable to have live testimony in the issue at hand, this factor had little weight because defendants failed to show or suggest an unwillingness of the non-party witness to testify).

As Plaintiff notes, Dimon may be beyond

Michigan's subpoena power. (Pl.'s Opp'n at 16.) However, there has been no suggestion that Mr. Dimon or any other witness would be unwilling to travel to testify.[FN12]Furthermore, "in light of the option of videotaping testimony of witnesses unwilling to travel,"*Dealtime.com,* 123 F.Supp.2d at 757 (citations omitted), the witnesses' possible unwillingness to appear in Michigan would not be a determinative factor in this case.

> FN12. At oral argument, neither party indicated knowledge about Mr. Dimon's willingness to travel to Michigan (*See* 8/2 Tr. at 44, 54 .)

**7. Relative means of the parties**

*7 The relative means of the parties weighs against a transfer. If a "disparity exists between the parties, such as an individual suing a large corporation, the relative means of the parties may be considered."*Berman v. Informix Corp.,* 30 F.Supp.2d 653, 659 (S.D.N.Y.1998). However, where "no showing has been made that [a change of forum] would impose an undue hardship on the plaintiff ... this factor weighs neutrally in the overall analysis."*Id.* Reinhard states that litigating in Michigan would "further strain [his] financial resources," (Affidavit of J. Pedro Reinhard, dated July 6, 2007, ¶ 8), but, given the depth of his financial resources, he has not shown that traveling to Michigan for this litigation will be an undue hardship.[FN13]

> FN13. According to a 2006 SEC filing by Dow, Reinhard's annual compensation in 2005, less long term incentives, was over $2 million. (Declaration of Frank Holozubiec, Ex. B (Dow Form 14A) at 4.)

**8. Forum's familiarity with the governing law**

The forum's familiarity with the governing law is a neutral factor in the analysis. It is likely that Delaware law will govern the breach of contract action and breach of fiduciary duty counterclaim because Dow is incorporated in Delaware.

For the libel claim, it is not certain which state's laws will govern.[FN14] Regardless, as noted by

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 7
Slip Copy, 2007 WL 2324351 (S.D.N.Y.)
**(Cite as: Slip Copy)**

Plaintiff's counsel at oral argument, libel laws are similar enough that a judge will be familiar with the governing law no matter which state's statute ends up applying to the claim in this case.[FN15] Therefore, because the breach of contract and breach of fiduciary duty claim is governed by Delaware law, which is foreign to both jurisdictions, and because a judge in either forum should be familiar with the principles of libel law, this factor is neutral.

> FN14. The following are factors to consider in multi-state libel cases: "(1) the state of the plaintiff's domicile; (2) the state of plaintiff's principal activity to which the alleged defamation relates; (3) the state where the plaintiff in fact suffered greatest harm; (4) the state of the publisher's domicile or incorporation; (5) the state where the defendant's main publishing office is located; (6) the state of principal circulation; (8) the state where the libel was first seen; and (9) the law of the forum." *Weinstein v. Friedman,* 1996 WL 137313, *8-9 (S.D.N.Y. Mar. 26, 1996). It is not immediately clear whether Michigan or New York has more connections to the libel claim.

> FN15. (*See* 8/2 Tr. at 42 ("I don't have any reason to believe that the general principles of libel law are any different in Michigan than they are in New York.").)

**9. Trial efficiency and the interests of justice**

Now that both Dow's action and Kreinberg's action are located in the Eastern District of Michigan, efficiency and the interests of justice weigh in favor of transferring this lawsuit to that district. It is logistically practical to have all trial and discovery scheduling issued from one court given that so many of the witnesses and document production will coincide in all three cases.

**B. Liveris' motion to dismiss pursuant to Rule 12(b)(3) or transfer pursuant to § 1406(a) is denied; his motion to transfer pursuant to § 1404(a) is granted.**

Liveris' motion to dismiss for lack of venue under Rule 12(b)(3), and his motion to transfer under

§ 1406(a) are denied.[FN16]Liveris is a citizen of Australia and a lawful permanent resident of the United States.[FN17] (Compl. ¶; Dow Ans. ¶ 11.) Under § 1391(d), "an alien may be sued in any district."Accordingly, venue is proper in this district or in the Eastern District of Michigan.

> FN16. A motion to dismiss for improper venue is made under Fed.R.Civ.P. 12(b)(3). Section 1406(a) states that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."28 U.S.C. § 1406(a) (1996).

> FN17. Section 1391(d) applies to all aliens, resident or non-resident. *See Haaretz Daily Newspapers, Ltd. v. Maariv Modiin Pub. Co., Ltd.,* 1999 WL 796163, at *1 (S.D.N.Y. Oct. 6, 1999).

Liveris' Motion to Transfer under § 1404(a) is granted on the same grounds as Dow's motion.

**CONCLUSION**

For the aforementioned reasons, it is hereby ordered that the Clerk of Court is directed to transfer this action to the Eastern District of Michigan.

IT IS SO ORDERED.

S.D.N.Y.,2007.
Reinhard v. Dow Chemical Co.
Slip Copy, 2007 WL 2324351 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.