Harnik Wilker & Finkelstein LLP
Attorneys for Plaintiff
Greystone CDE, LLC
Olympic Tower
645 Fifth Avenue, 7th Floor
New York, NY 10022-5937
Tel. No. (212) 599-7575
Facsimile (212) 867-8120
Email: stephen@harnik.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
Greystone CDE, LLC,                              Docket No. 07 civ. 8377 (RPP)

                        Plaintiff,

      - against -

Santa Fe Pointe, L.P.,
Santa Fe Pointe Management, LLC,
Rant LLC, and
Theotis F. Oliphant,

                        Defendants.
----------------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO THE MOTION TO TRANSFER VENUE
AND IN SUPPORT OF THE CROSS-MOTION TO DISMISS
DEFENDANTS' COUNTERCLAIMS; IN THE ALTERNATIVE
FOR A MORE DEFINITE STATEMENT;
AND FOR SUMMARY JUDGMENT**

March 17, 2008

TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................i

INTRODUCTION...............................................................................................1

SUMMARY OF ARGUMENT............................................................................1

ARGUMENT

POINT I
DEFENDANTS' TRANSFER MOTION MUST BE DENIED..........................3

A.   The motion has been waived under Rule 12............................................3

B.   The basis for the motion is defendants' counterclaim,
     but the counterclaim fails to state a claim...............................................5

C.   Greystone Servicing has not been properly served, thus there is no
     counterclaim against that entity and there is no change in
     circumstance justifying transfer of venue...............................................7

D.   The motion to transfer must be denied because the defendants do not
     have leave to file the counterclaim against Servicing. And, as against
     plaintiff, the counterclaim fails to state a claim.....................................8

POINT II
PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT.............................9

A.   Standard for Summary Judgment...........................................................9

B.   Pertinent undisputed facts.....................................................................10

C.   The Guarantees must be enforced.........................................................11

CONCLUSION..................................................................................................15

# TABLE OF AUTHORITIES

**Cases**                                                                                                                **Page**

*A.L. Williams & Assoc., Inc. v. D.R. Richardson & Assoc., Inc.* 98 F.R.D. 748
(N.D. GA. 1983) ............................................................................................................... 8

*Altman v. Liberty Equities Corp.* 322 F.Supp. 377, 379 (S.D.N.Y. 1971).....................4

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).......................................................9

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)................................................9

*Boardman Petroleum Inc. v. Federated Mut. Ins. Co.* 135 F. 3d 750, 752 (11 Cir. 1998)..9

*Bonanni v. Straight Arrow Publishers*, 133 A.D.2d 585, 520 N.Y.S.2d 7, 9 (1st Dep't
1987) ................................................................................................................................. 6

*Camofi Master LDC v. College Partnership, Inc.* 452 F. Supp. 2d 462
(SDNY 2006)............................................................................................................13, 15

*Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) ............................................................ 9

*Citicorp Leasing, Inc. v. United American Funding, Inc.* Not Reported in F.Supp.2d,
2005 WL 1847300 (S.D.N.Y.,2005 ............................................................................. 11

*Cusumano v. Iota Indus., Inc.*, 100 A.D.2d 892, 474 N.Y.S.2d 579, 580
(2d Dep't 1984)...............................................................................................................6

*Futures Corp. v. Irvine*, No. 00 Civ. 2322(RMB), 2003 WL 1907877, at *4 (S.D.N.Y.
Apr. 16, 2003) ................................................................................................................ 12

*Hawthorne v. Citicorp Data Sys., Inc.*, 219 F.R.D. 47, 49 (E.D.N.Y.2003) ....................... 7

*Howard v. Klynveld Peat Marwick Goerdeler*, 977 F.Supp. 654, 658 (S.D.N.Y.1997) ..... 7

*J.L.B. Equities, Inc. v. Mind Over Money, Ltd.*, 261 A.D.2d 510, 691 N.Y.S.2d 65,
66 (2d Dep't 1999) ........................................................................................................ 13

*Kensington House Co. v. Oram*, 293 A.D.2d 304, 305, 739 N.Y.S.2d 572, 572
(1st Dep't 2002)............................................................................................................. 11

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1950) ....................... 4

*Key Bank of Long Island v. Burns*, 162 A.D.2d 501, 502, 556 N.Y.S.2d 829, 830 (2d
Dep't 1990)..................................................................................................................... 12

| Cases | Page |
|---|---|
| *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) | 9 |
| *Mountain States Sports, Inc. v. Sharman* 353 F. Supp. 613, 618 (D. UT 1972) | 8 |
| *Nationwide Life Ins. Co. v. Hearst/ABC-Viacom Entertainment Services* 1996 WL 263008, 5 (S.D.N.Y.,1996) (Patterson, J.) | 9 |
| *Newcourt Small Bus. Lending Corp. v. Grillers Casual Dining Group Inc.*, 284 A.D.2d 681, 727 N.Y.S.2d 699, 701 (3d Dep't 2001) | 13 |
| *Northfield Ins. Co. v. Bender Shipbuilding & Repair Co., Inc.* 122 F.R.D. 30 (S.D. AL 1988) | 8 |
| *Sado v. Ellis* 882 F.Supp. 1401, 1405 (S.D.N.Y.1995) | 14 |
| *Silver v. Countrywide Realty, Inc.*, 39 F.R.D. 596, 599, (S.D.N.Y., 1966) | 4 |
| *Status International S.A., as Owner of the M/V/ Esperanza C v. M&D Maritime Ltd., Global Maritime, Inc.*, 994 F.Supp. 182, 186 (S.D.N.Y. 1998) | 6 |
| *Strojmaterialintorg v. Russian American Commercial Corp.* 815 F.Supp. 103, 105, (E.D.N.Y. 1993) | 6 |
| *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) | 9 |
| *Von Hoffmann v. Prudential Ins. Co. of Am.*, 202 F.Supp.2d 252, 259 (S.D.N.Y.2002) | 13 |

**Statutes**

| | |
|---|---|
| 28 USC §1404(a) | 1, 4 |
| Fed.R.Civ.P. 4(c)(2)(C)(i) | 7 |
| Fed. R. Civ. P. 12(b)(5), 12(b)(6), 13(h) 19 & 20 | 1, 4 |
| Fed. R. Civ. P. 13(h), 19 and 20 | 8 |
| Fed.R.Civ.P. 56(c) | 10 |
| New York's CPLR § 308 | 7 |

**Authority**

| | |
|---|---|
| 27 *Fed. Proc. L. Ed.* §62:254 | 8 |

## INTRODUCTION

This Memorandum of Law is submitted on behalf of plaintiff Greystone CDE, LLC (hereinafter "plaintiff") in opposition to defendants' Santa Fe Pointe L.P., Santa Fe Pointe Management, LLC, Rant LLC, and Theotis F. Oliphant (hereinafter "defendants" or alternatively "the Oliphant parties") motion to transfer venue of this case to the United States District Court, Northern District of California; and i) pursuant to Fed. R. Civ. P. 12(b)(6), 13(h) 19 & 20 to dismiss defendants' counterclaims; ii) pursuant for summary judgment on Counts II and III of the First Amended Complaint; and iii) on behalf of Greystone Servicing Corporation, Inc. ("Greystone Servicing", collectively "the Greystone parties") to dismiss the purported counterclaim asserted against it pursuant to Fed. R. Civ. P. 12(b)(5), in the alternative pursuant to Rule 12(e) for a more definite statement; and for such other and further relief as the Court deems just and proper under the circumstances.

## SUMMARY OF ARGUMENT

On February 20, 2008, this court (Patterson, J.) denied defendants' motion to stay this action. Thereupon, defendants asserted a purported counterclaim against Greystone CDE, LLC (plaintiff in this action and a defendant in the California action) and against "additional counterclaim defendant" Greystone Servicing Corporation, Inc. Then, because their counterclaim was "identical to the claims" they filed as plaintiffs in the California action, defendants moved herein, for the second time, to have the venue of this case transferred to California, pursuant to 28 USC §1404(a) because, in their words,

1

"...the situation has markedly changed from the last time the parties appeared before the Court and raised the same concerns." (Defendants' Br. p. 1).

However, the service of the purported counterclaim is procedurally defective and it fails to state a claim. Thus, *nothing* has changed in the New York action since the last time the parties were before the court, and the motion to transfer must be denied. Moreover, as explained below, defendants' transfer motion has been procedurally waived.

On the other hand, defendants' assertion that under no circumstances can venue of the California action be transferred to New York is not well founded. Based upon defendants' assertion of its purported counterclaims in New York, which, in defendants' words "bring the two actions in virtual alignment" (Defendants' br. p. 2) the Greystone parties intend to move -- prior to the return date of this motion -- for reconsideration of the California court's order (Spero, J.) dated February 4, 2008 (attached to the Donald Declaration dated March 3, 2008 as ex. "A") which denied transfer of venue from California to New York. Now that the Oliphant parties have attempted to consolidate all of their claims in New York, the situation in the California action *has changed* and it will be more efficient if all claims are addressed by this court in New York.

Moreover, the court should be aware that on March 4, 2008, the Greystone parties moved to dismiss the Oliphant parties' Second Amended Complaint in the California Action (which according to their latest motion is "identical" to the purported counterclaim asserted herein) without leave to amend. That motion is premised upon the Oliphant parties' lack of capacity to sue and the fact that their pleading wholly or in part fails to state a claim. A copy of the said motion is annexed to the Harnik Decl. as ex.

"A"). Thus, the California action may not survive to be transferred. However, if and to the extent it does, it should be transferred to New York pursuant to the Greystone parties' reconsideration motion.

At all events, the purported counterclaims filed in the New York action most assuredly fail to state a claim against plaintiff, since they are all based upon an alleged duty owed under Greystone Servicing's Engagement Letter (Harnik Decl. ex. "B") to which plaintiff is not a party.

Second, the counterclaims brought against Greystone Servicing must be dismissed because the summons was improperly served.

Third, even if service of the summons were not bad -- which it is -- the counterclaims must be dismissed because defendants did not obtain leave of court to file them.

Finally, Santa Fe Point L.P.'s obligations as Borrower under the Bridge Loan (Amended Complaint ex. "A") were guaranteed by the remaining Oliphant parties absolutely, unconditionally, and irrevocably, and the Guarantors waived any rights and defenses they have, had, or will have, in respect of their obligations. Thus, plaintiff moves herein for summary judgment.

## ARGUMENT

## POINT I

### DEFENDANTS' TRANSFER MOTION MUST BE DENIED

**A.    The motion has been waived under Rule 12**

On January 7, 2008, defendants moved to stay this action, which motion was denied by this court's order (Patterson, J.) dated February 20, 2008. Although styled a

3

motion "to stay," the defendants' motion, in fact, argued at length the first-to-file rule under 28 USC §1404(a). (*See.* Defendants' Br. dd. January 7, 2007 pp. 11- 15). And, one of the grounds for this court's order denying the stay was its rejection of the first-to-file argument :

> Defendants urge the Court to decide the motion to stay on the first-to-file rule. Embracing the advice of the U.S. Supreme Court that wise judicial administration "does not counsel rigid mechanical solution of such problems," *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1950), the court declines to grant a stay based on Defendants' technical first filing." (Opinion and Order, p. 5).

It has been held that a transfer of venue motion under 28 USC §1404(a) falls under the bar of Rule 12(g)(2) which limits successive motions under Rule 12(b)(2)-(5). *Silver v. Countrywide Realty, Inc.*, 39 F.R.D. 596, 599, (S.D.N.Y., 1966) ("The assertion of this new ground is not timely, and defendants by moving to dismiss on the ground of *forum non conveniens* waived their right to challenge jurisdiction of the court over Canadianwide. Rule 12(g) of the Federal Rules of Civil Procedure requires that certain defenses, including venue and jurisdiction over the person, if raised by motion, must be joined together in the motion; Rule 12(h) provides that such defenses as are not joined are waived."). *Altman v. Liberty Equities Corp.* 322 F.Supp. 377, 379 (S.D.N.Y. 1971) ("It is rather the logical inseparability of a section 1404 motion for change of venue and a Rule 12(b) dismissal motion for improper venue that mandates that they be litigated contemporaneously.")

Moreover, at oral argument, Judge Patterson emphatically stated to defendants' counsel (treating the motion as a transfer motion and not one to stay):

> I'm not going to allow further motions in this case. You have got to file an answer. If I keep [this case] here you are going to have

4

to file an answer promptly and this case is going to go and tried promptly. There is no delay in this part. You go right to trial. And if I keep it, that's what I will do. (Transcript p. 3 lines 14-19; Harnik Decl. ex. "C").

Thus, defendants are, or should be, precluded from making their motion to transfer venue of this action and their motion must be denied.

### B. The basis for the motion is defendants' counterclaim, but the counterclaim fails to state a claim.

A third and independent reason why defendants' motion to transfer venue of this case to California must be denied is that the very basis for the motion is defective. Defendants have alleged that "…the situation has markedly changed from the last time the parties appeared before the Court and raised the same concerns." (Defendants' Br. p. 1). The change in situation is defendants' purported counterclaim which is "identical" to its claims in California. However, this court has already held that the California pleading

> "…would not be appropriate [in New York]. [Plaintiffs] don't differentiate between the parties, they just collectively call everyone – Greystone is Greystone defendants and they don't separate those, the corporations in any way [in California]. It would be defective pleading here. (Transcript, p. 3 lines 20-25).

As may be seen, no effort is made to differentiate between the Greystone counterclaim defendants. The Oliphant parties blithely treat the two entities as one based upon this allegation:

> Greystone Servicing and Greystone CDE are sometimes referred to either singularly or jointly as "Greystone" in this pleading because in fact the numerous Greystone affiliated corporations often refer to themselves in such a manner. It is often difficult to distinguish one from the other, although they formally claim to be distinct legal entities. The ironic significance of this looseness of formal corporate separation will become apparent below." (Counterclaim ¶72).

5

Nowhere in the balance of the pleading do the Oliphant parties differentiate which Greystone defendant supposedly did what. In fact, they allege to the contrary that "Greystone wore two hats" (Counterclaim ¶92) which is another way of alleging that plaintiff and Greystone Servicing are alter egos of each other. However, their proof in that regard does not even come close to what must, at a minimum, be alleged to state a valid claim to "pierce the corporate veil." *E.g.*, *Status International S.A., as Owner of the M/V/ Esperanza C v. M&D Maritime Ltd., Global Maritime, Inc.*, 994 F.Supp. 182, 186 (S.D.N.Y. 1998). ("Plaintiff alleges only that Dalry is "wholly owned" by Cory…This allegation alone is insufficient to overcome the presumption of corporate separateness. *See McAllister Bros.*, 534 F.2d at 21. The complaint is devoid of any other facts supporting Plaintiff's assertion that Cory is the alter ego of Dalry. Therefore, Plaintiff fails to allege sufficient facts to support its claim that M & D/Global owes subfreights to Cory and Status."); *Strojmaterialintorg v. Russian American Commercial Corp.* 815 F.Supp. 103, 105, (E.D.N.Y. 1993) citing, *Bonanni v. Straight Arrow Publishers*, 133 A.D.2d 585, 520 N.Y.S.2d 7, 9 (1st Dep't 1987) ("the amended complaint contains only a legal conclusion with no factual allegations supporting the alter ego claim, which is 'so purely conclusory as to be meaningless.' ") (citation omitted); *Cusumano v. Iota Indus., Inc.*, 100 A.D.2d 892, 474 N.Y.S.2d 579, 580 (2d Dep't 1984) (complaint dismissed where "it merely contained conclusory statements that [the individual] was the 'alter ego' of the corporation with whom plaintiff had allegedly contracted").

Moreover, the fact that the defendants have attempted (albeit defectively) to implead Greystone Servicing as a separate party (*see* below) is, itself, an admission that plaintiff and Greystone Servicing are not one and the same.

Thus, since the counterclaim fails to state a claim the motion to transfer venue based thereon must be denied.

### C. Greystone Servicing has not been properly served, thus there is no counterclaim against that entity and there is no change in circumstance justifying transfer of venue.

A fourth reason defendants' motion transfer must be denied relates to the purported counterclaim asserted against Greystone Servicing. On March 5, 2008, defendants caused to be issued a summons in this action (*see* Harnik Decl. ex. "D") against Greystone Servicing. That summons was delivered by hand on March 7, 2008 upon Cristina Farina who is not an employee of Greystone Servicing. Annexed to the Harnik Decl. as ex. "E" is the affidavit of Cristina Farina, sworn to March 14, 2008 in which she states, under oath, that she is not employed by Greystone Servicing and is not authorized to accept service of process. New York's CPLR § 308, applied through Fed.R.Civ.P. 4(c)(2)(C)(i), governs service of process in this action. As such, defendants' attempted service was plainly deficient. *Howard v. Klynveld Peat Marwick Goerdeler*, 977 F.Supp. 654, 658 (S.D.N.Y.1997) *see also Hawthorne v. Citicorp Data Sys., Inc.*, 219 F.R.D. 47, 49 (E.D.N.Y.2003) ("Without proper service a court has no personal jurisdiction over a defendant.").

Thus, the counterclaim against Greystone Servicing must be dismissed. It follows that the motion to transfer must be denied because the underlying basis for the motion is absent.

D.  **The motion to transfer must be denied because the defendants do not have leave to file the counterclaim against Servicing. And, as against plaintiff, the counterclaim fails to state a claim.**

Defendants have purported to join Greystone Servicing, a nonparty, as a counterclaim defendant. Although there is a conflict of authority, defendants may not join Greystone without leave of court. Fed. R. Civ. P. 13(h), 19 and 20. *Mountain States Sports. Inc. v. Sharman* 353 F. Supp. 613, 618 (D. UT 1972); *A.L. Williams & Assoc., Inc. v. D.R. Richardson & Assoc. , Inc.* 98 F.R.D. 748 (N.D. GA. 1983). But *see*, *Northfield Ins. Co. v. Bender Shipbuilding & Repair Co., Inc.* 122 F.R.D. 30 (S.D. AL 1988). The rationale of the former cases should prevail in this case, because under Rules 19 and 20, Rule 13(h) does not apply under the present circumstances. Thus, 13(h) is not applicable when one not a party to the original lawsuit is joined as a party to the counterclaim where that party is not an indispensable party to the action and where the defendant's claims against that party are independent of plaintiff's claims and involve different questions of law and fact. 27 *Fed. Proc. L. Ed.* §62:254. Here, it is law of the case that plaintiff's claims and the Oliphant parties' counterclaims against Greystone Servicing are different:

> Defendants' claims in the California action arise out of related claims sounding in tort, which principally involve the actions of Greystone Servicing, a separate corporation, to assist Defendants with a HUD application to acquire and rehabilitate a housing development in Oklahoma and do not directly involve the loan agreement in question in this action. The substantial differences between these actions weigh against a stay in this case. (Opinion and Order dated Feb. 20, 2008 at p. 3).[1]

---

[1] As noted above, the Greystone parties intend to move for reconsideration of the California court's order (Spero, J.) dated February 4, 2008 (attached to the Donald Declaration dated March 3, 2008 as ex. "A") which denied transfer of venue from California to New York. If that motion is granted, the California action will be transferred to New York. The instant motion to dismiss notwithstanding, judicial efficiency will be served if the California action is transferred (assuming it survives the Greystone parties' pending motion in California to dismiss) because it cannot be ruled out that the Oliphant parties may be advised to re-serve the summons and replead their counterclaims against Greystone Servicing in New York. If the

8

Not having obtained leave from this court to file the summons against Greystone Servicing, the counterclaim must be dismissed against that party. The counterclaim against plaintiff must be dismissed because it fails to state a claim for the reasons stated in Points IA and IB above.

**Point II**

**PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT**

**A.     Standard for Summary Judgment**

As stated in *Nationwide Life Ins. Co. v. Hearst/ABC-Viacom Entertainment Services* 1996 WL 263008, 5 (S.D.N.Y.,1996) (Patterson, J.):

> Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment cannot issue if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The initial burden rests on the moving party to demonstrate that there exists no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The moving party may satisfy its burden by showing the absence of evidence which would support the claims made by the non-moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The Court must view the facts in the light most favorable to the non-moving party. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). If, however, the evidence presented by the non-moving party "is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, 477 U.S. at 249-250 (internal citations omitted); *See also Matsushita Elec. Indus. Co. v. Zenith Radio*

---

California action is, in fact, transferred to New York it should be docketed as a companion case. Under Fed. R. Civ. P. 42, the court has broad discretion to allow consolidated actions to retain their separate identity. *Boardman Petroleum Inc. v. Federated Mut. Ins. Co.* 135 F. 3d 750, 752 (11 Cir. 1998).

*Corp.*, 475 U.S. 574 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' ... It follows from these settled principles that if the factual context renders respondents' claim implausible ... respondents must come forward with more persuasive evidence to support their claim than would otherwise be necessary." Id. at 587 (internal citations omitted)).

### B.   Pertinent undisputed facts

The court is respectfully referred to plaintiff's L.C.R. Statement of Material Facts which are not in dispute. Specifically, as relevant to this motion:

- On or about September 10, 2007, defendants Rant and Santa Fe Pointe, L.P. executed Addendum #3 to the Purchase Contract which purported to extend the Purchase Contract through October 15, 2007 and provided for Buyer extension options with additional earnest money following October 15, 2007.

- Section 4, headed "Negative Covenants," of the Assignment of Purchase Agreement by Santa Fe Pointe L.P. in favor of plaintiff dated as of December 20, 2006, (annexed to the Amended Complaint as exhibit "B") provides in pertinent part that "Borrower shall not ...(b) amend or modify any of the terms of the Purchase Agreement, except with the prior written consent of the Lender; (c) terminate or give or join in any material waiver, consent or approval with respect to the Purchase Agreement, except with the prior written consent of the Lender; ...(f) take any other action in connection with the Purchase Agreement which would materially impair the value of the rights or interests of the Borrower or

the Lender whereunder or therein without the prior written consent of the Lender (to be granted or withheld in the Lender's sole discretion);..."

- Defendants Rant and Santa Fe Pointe L.P. neither requested, nor were granted, plaintiff's consents as provided above.

- In their Answer dated March 3, 2008, ("Answer") defendants do not deny – and therefore admit – that they never received plaintiff's prior written consent to amend the Purchase Agreement on September 10, 2007.

- On or about August 21, 2007, defendants were notified that they were in default.

- Upon an Event of Default (as defined in the Loan Agreement) the indebtedness evidenced by the Note became due and payable.

- On September 18, 2007, plaintiff gave defendants Notice of Acceleration of the Note.

Thus, there can be no dispute that defendants are in default of the Note.

C.   **The Guarantees must be enforced**

The Guarantees fix defendants' obligations with respect to the Loan Documents, including the Note, "unconditionally, absolutely and irrevocably." Moreover, each Guarantor irrevocably waived any and all defenses he or it had, has or may have. On point is *Citicorp Leasing, Inc. v. United American Funding, Inc.* Not Reported in F.Supp.2d, 2005 WL 1847300 (S.D.N.Y.,2005):

> Under New York law, a creditor seeking to enforce a written unconditional guaranty satisfies its prima facie case by establishing: (1) an

11

absolute and unconditional guarantee; (2) the underlying debt; and (3) the guarantor's failure to satisfy the unpaid debt. *Kensington House Co. v. Oram*, 293 A.D.2d 304, 305, 739 N.Y.S.2d 572, 572 (1st Dep't 2002); *Key Bank of Long Island v. Burns*, 162 A.D.2d 501, 502, 556 N.Y.S.2d 829, 830 (2d Dep't 1990); *accord U.S. Sec. & Futures Corp. v. Irvine*, No. 00 Civ. 2322(RMB), 2003 WL 1907877, at *4 (S.D.N.Y. Apr. 16, 2003).

Defendants are estopped from even claiming that the Guarantees which they signed are not absolute, unconditional and irrevocable because they have agreed not to assert any such defense.

It may be anticipated that defendants will claim that the allegations made in their Answer raise issues of fact. However, defendants cannot contest that their obligations under the Guarantees are absolute, unconditional and that they have *waived any defenses*. Moreover, even if they had not waived every single defense that they may have, by their own admission, it was *Greystone Servicing* -- not plaintiff – which allegedly prevented them from completing the project. (Answer ¶'s 106, 110).

In order to overcome their unconditional waiver of all defenses, the Oliphant parties would need to show that *plaintiff* misrepresented *a material existing fact* at the time the Guarantees were executed in December, 2006. However, as noted above in plaintiff's motion to dismiss the counterclaims, all of defendants' claims are based upon an alleged duty owed under Greystone Servicing's Engagement Letter, signed in August, 2006 (Harnik Decl. ex. "B") to which plaintiff is not a party.

Moreover, and assuming *arguendo* that defendants were able to file a proper alter ego complaint (alleging that plaintiff and Greystone Servicing were alter egos of each other), defendants would still not be able to overcome summary judgment because by their own admissions the Oliphant parties were fully aware of all material and relevant facts when they signed the Guarantees.

Directly on point is *Camofi Master LDC v. College Partnership, Inc.* 452 F. Supp. 2d 462 (SDNY 2006). In that case, the facts were remarkably similar to those at bar. There, the lender, Camofi Master LDC, sued the borrower, College Partnership, Inc. for default on two $250,000 bridge loans secured by promissory notes. College Partnerships counterclaimed that it had been fraudulently induced into signing the notes and further claimed that Camofi was the alter ego of Duncan Capital LLC which had agreed to act as an investment advisor for the transactions to be effected by the bridge loans. Camofi moved for summary judgment on the notes and this court held:

> College Partnership's fraud defense also fails because it is not based on a misrepresentation of existing fact. College Partnership asserts that it was fraudulently induced into executing the Notes by oral and written representations (in the Banking Agreement) concerning future financing and other financial services Duncan would perform. *Cf. Newcourt Small Bus. Lending Corp. v. Grillers Casual Dining Group Inc.*, 284 A.D.2d 681, 727 N.Y.S.2d 699, 701 (3d Dep't 2001) (upholding grant of summary judgment on payment of promissory note and rejecting fraud defense based on conclusory allegations that note holder had falsely promised to secure future loans for defendant). But College Partnership has failed to present evidence from which a reasonable jury could find that at the time Duncan entered into the Banking Agreement, it bore no intention to honor the terms. *See id.; J.L.B. Equities, Inc. v. Mind Over Money, Ltd.*, 261 A.D.2d 510, 691 N.Y.S.2d 65, 66 (2d Dep't 1999). Indeed, Duncan's partial performance under the Banking Agreement by arranging for the $500,000 bridge financing undermines a finding that it had any "preconceived and undisclosed intention" not to perform. *Von Hoffmann v. Prudential Ins. Co. of Am.*, 202 F.Supp.2d 252, 259 (S.D.N.Y.2002).
>
> ***
>
> While College Partnership's fraud defense is invalid for the reasons described above, it is worth noting that it also fails because the plaintiff specifically waived his right to protest payment of the Notes. By the terms of the Notes, College Partnership pledged that "[e]ach payment of principal and of interest shall be paid ... without setoff or counterclaim." (Jones Decl. Exs. D § 1(d) & E § 1(d)). "Under New York law, such a waiver among sophisticated parties is effective to overcome virtually any defense to enforcement." *Internet Law Library*, 2005 WL 3370542, at *7 (examining nearly identical waiver).

13

>No jury could reasonably find that CAMOFI and Bridges fraudulently induced College Partnership to execute the Notes. Accordingly, their motions for summary judgment are granted.

In New York, the elements of a claim for fraudulent inducement are misrepresentation of a material fact, falsity, scienter, reliance and injury. *See Sado v. Ellis* 882 F.Supp. 1401, 1405 (S.D.N.Y.1995). Here, no jury could reasonably find that Plaintiff fraudulently induced the Guarantors to sign the Guarantees. As this court has already observed (Opinion and Order dated February 20, 2008, at p. 4), Oliphant's own law firm gave plaintiff its Opinion Letter dated December 26, 2006 (Harnik Decl. dated January 22, 2008 ex. "G" heretofore filed) wherein it specifically and without reservation opined that the three Guarantees (which are included in the "Loan Documents" – a defined term in the Bridge Loan Agreement which included the Guarantees) were "valid and binding obligations," and "[t]he execution, delivery and performance of the Loan Documents have been duly authorized by all requisite action..." In their Answer, the Oliphant parties allege that they had "no choice" but to sign the Guarantees. Thus, they knew every material existing fact before they signed the Guarantees and cannot -- especially in light of Oliphant's Opinion Letter -- possibly allege fraudulent inducement.

Defendants' "qualification" that Borrower was not in "financial" default (Counterclaim ¶ 101) is itself a second admission that borrower *was* in fact in default, since there is no distinction between "financial" or other default under the terms of the Guarantees. A third admission of default is Oliphant's email of September 1, 2007, demanding that plaintiff "rescind" the default notice (Answer ¶ 103). Obviously, if there had not been a default there would have been nothing to rescind. Plaintiff never rescinded and the default remains.

...

Actions for recovery on promissory notes are appropriately decided by motion for summary judgment. *Camofi*, 462 F. Supp. at 470. Counts II and II of the Amended Complaint seek recovery on the Note which Santa Fe Pointe. L.P signed and which the remaining Oliphant parties unconditionally guaranteed. Accordingly, plaintiff should have judgment on Counts II and III of the Amended Complaint.

## CONCLUSION

By reason of the foregoing, it is submitted that defendants' motion to transfer venue should be denied in all respects, and the counterclaims dismissed; alternatively, defendants should be granted leave to replead their counterclaims pursuant to Rule 12(e); and plaintiff should have summary judgment on Counts II and III of the Amended Complaint.

Dated: March 17, 2008
      New York, New York

                    Respectfully,

                    HARNIK WILKER & FINKELSTEIN LLP

                    by: Stephen M. Harnik (SH 9889)

                    Attorneys for Greystone CDE LLC
                    645 Fifth Avenue, 7th Floor
                    New York, NY  10022-5937
                    (212) 599-7575