# EXHIBIT "C"

```
                              82E5GREA
                                                                        1
        82E5GREA                argument
   1    UNITED STATES DISTRICT COURT
   1    SOUTHERN DISTRICT OF NEW YORK
   2    ------------------------------x
   2
   3    GREYSTONE CDE, L.L.C.,
   3
   4                 Plaintiff,
   4
   5           v.                               07 Civ. 8377 (RPP)
   5
   6    SANTE FE POINTE, L.P., SANTA
   6    FE POINTE MANAGEMENT, L.L.C.,
   7    RANT, L.L.C. and THEOTIS F.
   7    OLIPHANT,
   8
   8                 Defendants.
   9
   9    ------------------------------x
  10
  10                                            February 14, 2008
  11                                            11:00 a.m.
  11    Before:
  12
  12                 HON. ROBERT P. PATTERSON, JR.,
  13
  13                                            District Judge
  14
  14                          APPEARANCES
  15
  15    HARNIK, WILKER & FINKELSTEIN, L.L.P.
  16          Attorneys for Plaintiff
  16    BY:   STEPHEN M. HARNIK
  17          CHRISTIAN VOTAVA
  17
  18    AKERMAN SENTERFITT, L.L.P.
  18          Attorneys for Defendants
  19    BY:   DONALD DAVID
  19          BRIAN BLOOM
  20          JEREMY SHURE
  21
  22
  23
  24
  25
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
                                                                        2
        82E5GREA                argument
   1          (Case called)
   2          THE DEPUTY CLERK:  Is the plaintiff ready?
   3          MR. HARNIK:  Yes, your Honor.
   4          THE DEPUTY CLERK:  And defendant ready?
   5          MR. DAVID:  Yes, your Honor.
   6          THE COURT:  I better have identification, please.  Who
   7    is going to argue for Greystone?
   8          MR. HARNIK:  Good morning, your Honor.  Stephen Harnik
   9    for the plaintiff Greystone.  This is Christian Votava who is
  10    newly admitted in New York State waiting for admission in the
  11    Southern District.
  12          THE COURT:  Who is going to argue for the defense?
  13          MR. DAVID:  Donald David.  With me is Brian Bloom and
```

Page 1

82E5GREA

14  Jeremy Shure.
15            THE COURT:  I guess it is your motion.
16            MR. DAVID:  Your Honor, if I may?  Obviously one of
17  the motions is mine, the other is the plaintiff's.  If the
18  Court would prefer, I can address both at the same time.  I
19  don't know the Court's preference on that.
20            THE COURT:  Well, you filed the motion.  I don't mind
21  if you want to argue them at the same time.
22            MR. DAVID:  Then, if I may, I will do so.  To some
23  extent I do believe that they are related.
24            THE COURT:  As long as you don't mix the arguments up
25  so that I am not sure which motion you are addressing.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

3

82E5GREA                    argument
 1            MR. DAVID:  Well, perhaps then your Honor --
 2            THE COURT:  You better do them seriatim.
 3            MR. DAVID:  Your Honor, I will be glad to do that.
 4            Let me start first with the motion that we made which
 5  is a motion for a stay pending the determination in California
 6  on the motion for a change of venue that the plaintiff here,
 7  defendant there, made; or, in the alternative, for a stay
 8  pending the resolution of the California action in the instance
 9  that the California Court declined to transfer.
10            As the Court now knows, the California Court made its
11  determination on the plaintiff's motion out there and
12  determined that it was not going to transfer the case here.
13  And in its reply brief the plaintiff argues that the Court, in
14  California, determined that the guarantee was not in fact
15  covered by what was pending in California.
16            Respectfully, your Honor, that simply is untrue.  If
17  one looks at the very, very first paragraph of the decision in
18  the California Court it says the following:
19            This action was initially filed in Alameda County
20  Superior Court, and subsequently removed by the defense --
21  defendants in that case being the plaintiff in this case, in
22  part -- to this court on the basis of the diversity
23  jurisdiction.  Defendants now bring a motion to transfer venue
24  asking that the Court transfer the action pursuant to 28 U.S.C.
25  1404(A) to the Southern District of New York, where a

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

4

82E5GREA                    argument
 1  later-filed action involving related claims is pending.
 2            Now, the fact of the matter is that it is absolutely
 3  incontrovertible that this action is related to the action
 4  which is currently pending in California which was first filed.
 5            THE COURT:  Well, I don't read that sentence that you
 6  are citing as a finding by the Court.  I read that sentence as
 7  what the defendants in the California action were arguing.
 8            MR. DAVID:  Well, your Honor, with all due deference,
 9  if you would take a look --
10            THE COURT:  They argue that it was a related claim,
11  didn't they?
12            MR. DAVID:  Your Honor, the defendants there,
13  plaintiffs here, did argue that it was a related claim.  So,
14  they in fact were arguing in California that the California
15  claims were related to this action.  And they were right.  We
16  didn't in fact disagree with them.
17            If you look at the first amended complaint which was
18  filed in California, you will find that we -- and this appears,

Page 2

```
                          82E5GREA
19      if I might --
20               THE COURT:  Well, the pleading out there is, would not
21      be appropriate here.  They don't differentiate between the
22      parties, they just collectively call everyone -- Greystone is
23      Greystone defendants and they don't separate those, the
24      corporations in any way out there.  It would be a defective
25      pleading here.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                                                       5
        82E5GREA              argument
 1               MR. DAVID:  Your Honor, I didn't mean to interrupt,
 2      that's why I stopped.
 3               If I could, the important fact is this:  The contest
 4      in California challenges the underlying predicates for the
 5      claim on the guarantee.  It says that in fact the fraud was
 6      committed, that there was undue duress, and that the guarantee
 7      itself is invalid.  Therefore, if we proceed here the answer
 8      which is going to ultimately be filed, assuming an answer is
 9      necessary it is going to allege all of the same factual
10      predicates as are alleged in the California action and what we
11      are going to end up having happen, absent a suggestion which
12      I'm going to respectfully make in a moment, what we are going
13      to end up having happen, absent a stay of these proceedings, is
14      we will have competing cases going on arguing exactly the same
15      factual predicates --
16               THE COURT:  Well, let me warn you.  I haven't granted
17      a stay in any proceeding in the entire time I have been on the
18      bench.
19               MR. DAVID:  Well, your Honor, I presume from what I
20      have seen that doesn't necessarily mean that presented with the
21      appropriate facts you wouldn't do so.  I have an alternative --
22               THE COURT:  Well, I know.  But it is a pretty hard
23      road to hoe to get a stay of action.
24               MR. DAVID:  I have an alternative suggestion, your
25      Honor, which is that I believe sua sponte or if the Court would
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                                                       6
        82E5GREA              argument
 1      prefer on our own motion under 1404(A) you should transfer this
 2      action to California.
 3               THE COURT:  That's a different matter.
 4               MR. DAVID:  All right.
 5               THE COURT:  That's a motion that I have granted,
 6      but...
 7               MR. DAVID:  Your Honor, if I may, under 1404(A) you
 8      have the power to do that sua sponte.  I believe that if the
 9      Court chooses not to do it sua sponte that the Court should
10      permit us to file the appropriate papers to seek a transfer.
11               THE COURT:  Well, I think you have to take your
12      present papers because your present papers do say something
13      about moving under 1404(A) and I would have to take these
14      motion papers as that motion.  I'm not going to allow further
15      motions in this case.  You have got to file an answer.  If I
16      keep it here you are going to have to file an answer promptly
17      and this case is going to go and be tried promptly.  There is
18      no delay in this part.  You go right to trial.  And if I keep
19      it, that's what I will do.
20               Now, let me suggest something to you.  I looked at the
21      papers.  I have read the papers and this case ought to be
22      settled.  You are going to spend more money on this case in
23      attorney's fees than it is worth, both sides.  A number of the
                                   Page 3
```

```
                              82E5GREA
24      actions probably ought to be brought in California probably
25      ought to be dismissed.  Period.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```
                                                                  7
```
        82E5GREA               argument
 1              And, somebody ought to talk turkey to the clients
 2      because you are going to spend much more money on litigation of
 3      these actions than it is worth and you really ought to get into
 4      mediation right away.  Or, if you have a relationship with
 5      opposing counsel that is professional rather than no holds
 6      barred, then you ought to be able to do it yourselves if you
 7      can control your clients.  And we all know that's difficult, on
 8      occasion.
 9              MR. DAVID:  Your Honor, if I may.
10              There was in fact some discussion concerning
11      mediation.  The discussion broke down over, of all things, the
12      issue of whether the mediation was going to be held in New York
13      or in California.  That should hardly surprise the Court given
14      the reason we are here.
15              THE COURT:  What about Oklahoma?
16              MR. DAVID:  Well, that certainly would be a
17      possibility, I would suggest.
18              I guess the problem we are faced with is I don't
19      disagree with anything the Court has just said but that's not
20      where we are at this point in time.
21              THE COURT:  And I have to bring it up because I have
22      to -- look.  I have two clients here.  That's the way I look at
23      any litigation, plaintiff and the defendant.  They're just as
24      if you had you had clients in your office and had to give
25      advice to either one of them.  That's why I bring up the
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```
                                                                  8
```
        82E5GREA               argument
 1      possibility of settlement.
 2              Mediation, if you have attorneys that know the case
 3      and are not bent on burning all bridges but rather can discuss
 4      the case in a reasonable manner, or even you can delegate
 5      attorneys who can discuss the case in a reasonable manner, the
 6      case should be settled.
 7              MR. DAVID:  Your Honor.
 8              THE COURT:  And that would be the best way to do it
 9      because if you get a mediator you are at the mercy of the
10      mediator's schedule and it takes time.  But, this case should
11      be settled now.
12              MR. DAVID:  Your Honor, if I may?
13              The real players in terms of the attorneys are located
14      out in California.  We are sort of surrogates, I suspect.  That
15      having been said, I don't disagree with anything the Court has
16      said and I don't believe we have a bad relationship with
17      opposing counsel.  And I certainly would have no problem
18      talking to them.
19              THE COURT:  Who is representing the parties out in
20      California?
21              MR. DAVID:  In our case it is Eric Farber's office.
22              THE COURT:  I don't know who that is.
23              MR. DAVID:  He represents our parties out in
24      California.  He's the attorney who asked us to represent them
25      here.  Jones Day represents Greystone out in California.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```
                                                                  9

```
                              82E5GREA
        82E5GREA              argument
 1              THE COURT:  Of course probably the California branch
 2    and it is hard to know.
 3              MR. DAVID:  Well, I don't have the answer to that.
 4    The only questions which I can address at this point --
 5              THE COURT:  What about the people who negotiated, who?
 6    Who was representing the parties at the time all of this
 7    developed?
 8              MR. DAVID:  I can tell you Mr. Oliphant is an
 9    attorney.  He may have been representing himself.  I don't
10    know, categorically.
11              THE COURT:  And I gather Greenberg Traurig, as I see
12    in the papers, they've got the same problem you have with Jones
13    Day.  You don't know the parties when they're big law firms.
14    You just don't know the counsel --
15              MR. DAVID:  I just don't know who the players are.  I
16    haven't dealt with them.
17              THE COURT:  -- senior or junior, what have you.
18              MR. DAVID:  My suspicion is that the Jones Day people
19    are real people, they're not just minor players; they know what
20    they're doing.
21              THE COURT:  Would it help if I asked for a conference?
22              MR. DAVID:  I don't see --
23              THE COURT:  A settlement conference?
24              MR. DAVID:  Your Honor, I just don't see that that's
25    the solution among these parties because, as I said, the real
                        SOUTHERN DISTRICT REPORTERS, P.C.
                                  (212) 805-0300
                                                                         10
        82E5GREA              argument
 1    players are out in California.
 2              THE COURT:  Well, I was going to say, I ask that the
 3    real players attend the conference.
 4              MR. DAVID:  I have no opposition with it, your Honor.
 5              THE COURT:  All right.  Well, I didn't mean to
 6    interrupt your argument.
 7              MR. DAVID:  It is constructive.  I truly do think
 8    that.
 9              That being said -- I think it is constructive -- I
10    think what you are faced with is the fact that California has
11    decided to retain jurisdiction.  The issues that would be
12    resolved in this case will be resolved in the California case
13    and we run the risk that we what we are going to have is two
14    Courts going at the same thing.  And, respectfully, this is the
15    second filed case, that was the first filed case.  The
16    plaintiffs here decided to make the motion there to transfer.
17    They lost that motion.
18              This thing should be done in one place.  Whether it is
19    settled or whether it is tried, it should be done in one place.
20    And there is no question that what is going on in California is
21    related to what's happening here.  The whole argument in
22    California is that there was a fraud that was perpetrated, that
23    there was undue influence.  Whether there is merit to the
24    argument will ultimately be determined by a Court, not by me.
25    I'm a partisan, all right?  But it will be determined by a
                        SOUTHERN DISTRICT REPORTERS, P.C.
                                  (212) 805-0300
                                                                         11
        82E5GREA              argument
 1    Court one way or another -- a motion to dismiss, at trial,
 2    whatever it may be.
 3              But, that's what's pending and that's what's going to
 4    be resolved, so it is really a waste of this Court's time and
                                  Page 5
```

```
                              82E5GREA
 5      it is a waste of the party parties' money to be litigating this
 6      thing in two different places.
 7              THE COURT:  If you were to transfer it anywhere, just
 8      from my looking at the papers, it would appear to me that
 9      probably the best place, if you both would agree on it, would
10      be to litigate this in Oklahoma.
11              MR. DAVID:  But that's not what --
12              THE COURT:  Because the key witnesses are going to be,
13      probably, if there is any merit to Mr. Oliphant's position, are
14      going to be the HUD employees and they're located, as I
15      understand it, in Oklahoma.
16              MR. DAVID:  There are two problems with that though,
17      respectfully, your Honor.  Number one, the California Court has
18      already decided that in fact the services of the witnesses,
19      etc., are not inconvenienced by proceeding in California; and
20      secondly, plaintiff had that option.  They could have said to
21      the Court, go to Oklahoma, it will make sense.  All right?
22      They didn't choose to do that.
23              THE COURT:  I know.
24              MR. DAVID:  They played a game of strip poker and they
25      lost.
                      SOUTHERN DISTRICT REPORTERS, P.C.
                               (212) 805-0300
                                                                     12
        82E5GREA             argument
 1              THE COURT:  And you are not in a position to make such
 2      a stipulation because you are not --
 3              MR. DAVID:  Absolutely not.
 4              THE COURT:  -- because you are not the real party.
 5              MR. DAVID:  Absolutely not.
 6              And turning to the motion to dismiss, your Honor,
 7      respectfully that motion is almost frivolous.  Under the
 8      Barney's case, clearly the motion for a stay -- and remember at
 9      the time there was a pending motion which would have
10      transferred everything to New York which would have
11      necessitated a totally different answer than would be filed in
12      response solely to this complaint.
13              THE COURT:  Well, are you prejudiced in any way if I
14      treat this as a motion to transfer?
15              MR. DAVID:  No, your Honor.
16              THE COURT:  Is the plaintiff here prejudiced in any
17      way if I treat it as a motion to transfer?  As I see it your
18      papers really address the issue of the motion to transfer.
19              MR. HARNIK:  Yes, your Honor.  I would like to address
20      that.
21              THE COURT:  Fine.  But your papers already have
22      somewhat.
23              MR. HARNIK:  Well, the point we want to make is that
24      we believe that that motion has been waived.
25              THE COURT:  What?
                      SOUTHERN DISTRICT REPORTERS, P.C.
                               (212) 805-0300
                                                                     13
        82E5GREA             argument
 1              MR. HARNIK:  We believe that that motion has been
 2      waived.  They did not ask for a transfer specifically so they
 3      distinguish the ultimate case by saying --
 4              THE COURT:  I didn't see that.
 5              MR. HARNIK:  -- by not saying it is a transfer motion.
 6              THE COURT:  I didn't see the argument on that, that
 7      they waived that in your papers, but I have been pretty heavily
 8      engaged.
 9              MR. HARNIK:  Your Honor, what we address in our papers
```

```
                            82E5GREA
10      mostly is the fact that the defendants here, plaintiffs
11      California, waived any objection to --
12              THE COURT:  You say they've waived any objection to
13      personal jurisdiction.
14              MR. DAVID:  We --
15              THE COURT:  I understand that argument.
16              MR. HARNIK:  We also take the position that -- they've
17      moved for a stay and not for a transfer.  And if your Honor
18      will have a look at, there is a case --
19              THE COURT:  But where in your papers have you said
20      that they have waived the motion to transfer?
21              MR. HARNIK:  It is a case that I would like to bring
22      to the Court's attention right now and it is a Second Circuit
23      case and it is called Concession Consultants v. Irving Mirisch,
24      it is 355 F.2d 369, and in this case --
25              THE COURT:  What is the name of the case again?
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

14

```
        82E5GREA                    argument
1               MR. HARNIK:  It is called Concession Consultants v.
2       Irving Mirisch.
3               THE COURT:  We don't have that here.
4               MR. HARNIK:  Because in Mr. David's oral presentation
5       this morning he said that the Court sua sponte could transfer
6       the motion of this case to California or they could make a
7       second successive motion.
8               THE COURT:  You both argue the balance of convenience
9       and all of that in your papers which is really the test in the
10      1404(B).
11              MR. HARNIK:  That's really a fallback argument.  The
12      point is that the defendants signed a specific waiver where
13      they said they will not even plead that this is an inconvenient
14      forum.  They said if -- and the Ramada case, which is cited in
15      our brief at page 6 and the AGR cases, they both say, Judge
16      Cedarbaum and Judge Scheindlin, they both say if you have such
17      a clause if the plaintiff brings the action in this Court, then
18      it becomes binding, it is here forever, even if it is a
19      non-exclusive provision.
20              But, your Honor, if I can go to the point --
21              THE COURT:  I'm not suggesting that you waive that
22      argument.  All I'm suggesting is that that argument would be
23      your argument in opposition to the 1404(B).  But it is as
24      something I should take into account, but what I am saying is
25      shouldn't I consider this as a 1404(B) motion, not as a motion
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

15

```
        82E5GREA                    argument
1       for stay, and based on the plaintiff's papers and the
2       defendant's papers, aren't the issues for 1404(B) articulated
3       in those papers?
4               MR. HARNIK:  No, your Honor.  We take the position
5       that they have waived that motion --
6               THE COURT:  Where do you get the waiver?
7               MR. HARNIK:  -- and that the Court cannot even sua
8       sponte transfer the case now to California.  And I'm citing
9       this case of Concession.
10              THE COURT:  Isn't that an argument that you make in
11      opposition to the 1404(B) transfer?
12              MR. HARNIK:  It is an argument that we addressed in
13      our papers, that's correct, your Honor; but the motion should
14      never have been -- should not be treated as one for transfer.
```

Page 7

```
                                82E5GREA
15              MR. DAVID:  Your Honor, may I respond to that
16    argument?
17              THE COURT:  Yes.
18              MR. HARNIK:  Your Honor, can I just --
19              THE COURT:  I hear you so you have answered my
20    question.  I hear your position.
21              MR. DAVID:  Your Honor, if I may.
22              The case which they're talking about, I believe,
23    unless I am incorrect, is in a situation in which an action was
24    brought pursuant to a permissive venue provision and an attempt
25    then was made, on the ground of forum non conveniens, to
                        SOUTHERN DISTRICT REPORTERS, P.C.
                                 (212) 805-0300
```

```
      82E5GREA                     argument
1     transfer to a different jurisdiction where there was no pending
2     action.  Here we have got a completely different situation.  We
3     have got a situation in which there is not only a pending
4     action but there is a pending action that is totally related to
5     this action.  And, not only that, but where they made the
6     motion to transfer previously, the Court has now denied it and
7     the Court will be faced with two proceedings involving the same
8     factual and the same legal issues being tried by two different
9     courts.
10              Now, there is no way in the world in which -- forget
11    forum non conveniens.  The interest of judicial economy doesn't
12    quarrel for those two cases to be put together.  And that's
13    what you are facing, not the situation that they're citing.
14              And, by the way, their claim that we're waiving, just
15    so we are clear, is not in any papers that we filed but they're
16    arguing somehow that we waived it by signing a permissive
17    action provision in the guarantee.  All right?
18              So, they're not saying in their papers they raised the
19    argument that somehow in these proceedings we have waived it.
20    All right?  So, I don't know.  I'm not a Judge.  I will never
21    be a Judge.  I couldn't afford to be a Judge.  All right?
22              THE COURT:  You must have more children than I have.
23              MR. DAVID:  I have two and I have to tell you, one of
24    them is going to law school.  It is tough.
25              But, the important thing is why in the world would we
                        SOUTHERN DISTRICT REPORTERS, P.C.
                                 (212) 805-0300
```

```
      82E5GREA                     argument
1     want to try this case in two different places?  Why would the
2     Courts want us to try it in two different places?  It doesn't
3     make sense.
4               THE COURT:  Well, I hear you.  Go ahead, Mr. Harnik.
5               MR. HARNIK:  Good morning, your Honor.
6               Let me just address your Honor's point about trying to
7     settle this case.  We would not have an objection to a
8     mediation with the defendant, but we specifically bargained for
9     this case being handled in New York and every single document
10    that was signed by Mr. Oliphant addressed that issue and he
11    agreed, in no uncertain terms, irrevocably, that New York is
12    the proper venue for this action whether it is tort, whether it
13    is contract.
14              Our main witness is in New York.  Our office is in New
15    York.  We brought suit in New York.
16              The case belongs here and that's why Jones Day moved
17    to have the case transferred from California to New York,
18    because that's what was agreed to.
19              THE COURT:  It lost.
                                  Page 8
```

```
                            82E5GREA
20          MR. HARNIK:  It lost.  We respectfully don't agree
21   with Judge Spiro's decision, but sobeit.
22          In any event, our case on the guarantees is here and
23   respectfully, as we have pointed out, we believe it is a
24   summary judgment case and we have plenty of cases, we have
25   cited them in our briefs that all of their defenses which they
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```
                                                                    18
```
     82E5GREA                argument
1    haven't even raised here about this adhesion and duress, don't
2    fly; that regardless of what they say --
3           THE COURT:  They haven't filed an answer yet.
4           MR. HARNIK:  Well, even without an answer they've made
5    these suggestions in the California Court that they didn't have
6    any choice but to sign these documents.
7           And what was the effect of these documents?  What
8    happened here is that Mr. Oliphant took $500,000 from our
9    client, so we just want our money back.  The whole California
10   complaint, as your Honor suggested, doesn't even state a cause
11   of action in tort but it makes no sense.  Why would our client
12   enter into this contract and at the time it enters into it have
13   in mind that it is going to fraudulently induce this gentleman
14   to enter into all of these contracts and then give him $500,000
15   in furtherance of this fraud?  They wouldn't even have known at
16   the time that they signed the engagement letter that he would
17   need money from them.
18          The whole case makes absolutely no sense that he has
19   brought in California and the fact is --
20          THE COURT:  There are allegations in the California
21   action that cite as follows:  That Greystone servicing, I guess
22   it is, entered into a contract to service the HUD application
23   and that they claim they didn't file it on time.
24          They claim that there came a time in December,
25   December 17th or so, documents actually signed on the 20th, for
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```
                                                                    19
```
     82E5GREA                argument
1    a bridge loan, but prior to that they claim that Greystone had
2    offered them also a loan to purchase the property from the
3    seller, provide the financing for it, and that they were
4    relying on that.  At least that's the gist of the claim.  And,
5    they claim that these papers came in on the verge of the seller
6    of the property not giving them an extension and that they also
7    had to issue the tax free bonds.  They had an obligation with
8    respect to, I guess with respect to the underwriters of the
9    bond.  But, in any event, it cost about $250,000 is my
10   recollection.
11          They claim that those circumstances amount to duress.
12   I find that that's an issue of fact.  I may find that other
13   rather thick for an attorney in Mr. Oliphant's circumstances to
14   really feel that that was duress and go ahead and sign the
15   papers under those circumstances.
16          But, it is an issue of fact that's been raised by the
17   defendants here so they claim that the bridge loan was
18   obtained -- or when they obtained the bridge loan they were
19   under duress.  The bridge loan itself has a condition on it
20   that says that Greystone can't be held liable for any claim of
21   this sort in contract or a sort and that seems to me is
22   something that Oliphant and all should think about in
23   connection with this lawsuit.
24          But, the claim is there and it is an issue of fact.
                                Page 9
```

```
                                82E5GREA
    25    It may be one that can be disposed of, as you say, but it is an
                       SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
```

                                                                        20

```
          82E5GREA                 argument
    1     issue of fact. And all of these claims that come out later are
    2     having to do with whether or not a representative of Greystone
    3     Financing downgraded the project or said something downgrading
    4     the project and whether or not Greystone tried to obtain
    5     economic benefits from the project later are issues of fact and
    6     they do appear to be somewhat, if you buy the original argument
    7     that they were under duress, they could be related to this loan
    8     agreement.
    9              MR. HARNIK:  Your Honor, I don't agree with your Honor
    10    that the pertinent date is when they were discussing purchasing
    11    this project.  The pertinent date is August 29th, 2006.  That's
    12    when the engagement letter was signed.  And if you read Judge
    13    Chin's decision in the --
    14             THE COURT:  Are you talking about the service
    15    agreement?
    16             MR. HARNIK:  The engagement letter.  That's what the
    17    whole California case is based on.  All of the issues of fact
    18    they raise are based upon this August 29th letter which they
    19    say they signed at a time when -- in order for them to prove
    20    any of their claims they would have to show that when they
    21    signed this agreement in August of 2006 we had the present
    22    intent --
    23             THE COURT:  What time?
    24             MR. HARNIK:  August 29th, 2006, that it was our intent
    25    never to fulfill.
                       SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
```

                                                                        21

```
          82E5GREA                 argument
    1              THE COURT:  This is based on servicing.
    2              MR. HARNIK:  That's right.
    3              THE COURT:  They're not party to this, to your claim.
    4              MR. HARNIK:  That's another point.  Absolutely.  But
    5     everything that came arose from that -- their tort claims and
    6     contract claims are based on that engagement letter because
    7     that's the engagement letter that does not have the forum
    8     selection clause.  Every other agreement in this transaction
    9     has New York as the forum for any disputes and it could even be
    10    read that having signed the later documents which relate to
    11    this document, that even though -- even this one --
    12             THE COURT:  There is no forum selection clause in the
    13    loan agreement itself.
    14             MR. HARNIK:  There is, because the guarantees --
    15             THE COURT:  The guarantees --
    16             MR. HARNIK:  -- incorporate the bridge loan into them.
    17             THE COURT:  No, no.
    18             MR. HARNIK:  It says any related document.  And the
    19    loan document is a defined term which includes the bridge loan.
    20    In fact, your Honor, that's exactly the mistake that Judge
    21    Spiro made.  He read out of the guarantee language and in fact
    22    Oliphant, an attorney, had agreed that all documents are
    23    incorporated by reference when he signed the guarantee and the
    24    note.
    25             And we have plenty of cases that say that you can do
                       SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
```

                                                                        22

```
          82E5GREA                 argument
                                   Page 10
```

```
                              82E5GREA
 1   that.  You can incorporate other agreements that may not have
 2   the forum selection clause in a separate agreement as long as
 3   that they're signed contemporaneously.
 4            THE COURT:  But it is a permissive --
 5            MR. HARNIK:  Regardless of that.  That's exactly what
 6   the Ramada case says and what the AGR case says, that even if
 7   it is permissive once the plaintiff decides he wants to bring
 8   the case in New York, it becomes binding because that's what
 9   the parties agreed to.
10            THE COURT:  Well, I haven't gotten that case.
11            MR. HARNIK:  That's on page 6 of our brief.
12            THE COURT:  I haven't gotten the case itself.
13            MR. HARNIK:  I have it here.
14            THE COURT:  Is that Judge Cedarbaum?
15            MR. HARNIK:  Judge Cedarbaum and Judge Scheindlin.
16            THE COURT:  Mr. David makes the point that there
17   wasn't any pending action in another jurisdiction and we have
18   this problem of two actions involving interpretation of the
19   same contract.
20            MR. DAVID:  Your Honor, may I be heard for a moment?
21            MR. HARNIK:  But, just before I finish --
22            THE COURT:  Let Mr. Harnik finish.
23            MR. HARNIK:  Just to finally address the case of
24   Concession, Mr. David is incorrect.  This is not a forum -- he
25   was referring to the, I believe, to the Altman case.
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

                                                                      23
```
     82E5GREA                     argument
 1            The case I am citing, which is Confession Consultant
 2   v. Mirisch it says:  An objection to improper venue must be
 3   made by motion or, if no motion is made, by the answer or
 4   reply.  If it is not so raised, any objection to venue is
 5   waived.  Unlike the matter of jurisdiction, then venue was and
 6   remains a privilege personal to each defendant which can be
 7   waived and is waived by him unless timely objection is
 8   interposed.  Since the right to attack venue is personal to the
 9   parties and waivable at will, a District Judge should not, in
10   the absence of extraordinary circumstances, impose his choice
11   of forum upon the parties by deciding on his own motion that
12   there was a lack of proper venue.
13            It is clear that the facts in this case furnish no
14   justification whatever for such action by the Court.
15            This is the Second Circuit in this Concession case.
16            THE COURT:  You gave me that, 355 F.2d.
17            MR. HARNIK:  355 F.2d 369.  And what is the other one
18   we cited?  We also there is also Tri-state Employment v. Mount
19   Batten Surety Company, Second Circuit, 295 F.3d 256.
20            THE COURT:  That's a little more recent.
21            MR. HARNIK:  It says:  Defendant failing to raise
22   venue challenge in a pre-answer motion or responsive pleading
23   defendant is deemed to have waived any objection to venue;
24   citing the Concession case.
25            And, your Honor, they make that very point in their
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

                                                                      24
```
     82E5GREA                     argument
 1   stay motion that this is not a transfer motion.  So,
 2   procedurally, this case cannot be moved to California.
 3            THE COURT:  Where do they say that?
 4            MR. HARNIK:  That is here on page -- that's when they
 5   distinguish Altman.  I will give it to you.
```

```
                            82E5GREA
 6           THE COURT:  Give it to me.
 7           MR. HARNIK:  It is the brief defendant's opposition to
 8   plaintiff's cross-motion, page 10, and they say:  Plaintiff
 9   also cites Altman v. Liberty Equities for the proposition that
10   a section 1404 motion for change of venue and a Rule 12G
11   dismissal knowing improper venue must be litigated
12   contemporaneously -- with the cite.  However, there is no
13   motion to dismiss based on forum non conveniens or to transfer
14   venue before this Court and Altman is inapplicable.
15           That's their brief.  Page 10.
16           MR. DAVID:  Your Honor, may I be heard now?
17           THE COURT:  Yes, sir.
18           MR. DAVID:  Let me address three points.
19           Number one, I'm not going to argue the merits of this
20   case at this point in time.  Think it is sort of meaningless to
21   do so.  But, Mr. Harnik has made exactly the point which I
22   think this Court needs to consider and I will get to why it can
23   do so in a moment.
24           Mr. Harnik says the judge in California made a mistake
25   in coming to the conclusion that he did, that he should have
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                                                     25
     82E5GREA                    argument
 1   integrated the documents and he didn't do so and you should
 2   find differently than the Judge in California and you should
 3   correct that mistake.
 4           That's exactly the reason why there shouldn't be two
 5   cases pending, because you shouldn't be in the position of
 6   taking a judge of coordinate jurisdiction and saying, in
 7   exactly the same case, Hey, you made a mistake on your
 8   interpretation of the documents.
 9           Now, I'm not suggesting this Court might not have a
10   better view on the issue, but the fact of the matter is that
11   the California Court has ruled and unfortunately, your Honor,
12   with all due respect, I think it is inappropriate for
13   Mr. Harnik to ask you to now overrule the California Court and
14   tell it that it was wrong.
15           Number two.  I believe Mr. Harnik is misreading his
16   cases in terms of your ability to transfer this case.  Even his
17   case said if there are extraordinary circumstances if you
18   didn't make the motion and you didn't put it in your responsive
19   pleading, then the Court can still do it.  But, those
20   extraordinary circumstances aren't present in this case.
21           Well, the reason those extraordinary circumstances
22   weren't present and they are present here is because you are
23   now faced with a situation in which two judges on the two
24   coasts of this country are going to be trying the same case
25   with the same parties involved, and that makes absolutely no
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                                                     26
     82E5GREA                    argument
 1   sense from any possible perspective.
 2           Number three.  Even Mr. Harnik's cases suggest that if
 3   we didn't make a pre-answer motion we can raise it in our
 4   papers when we file our answer.  What's the point to that?  The
 5   fact of the matter is you are now here in a situation and the
 6   situation calls for us to go forward in California and, yes, we
 7   did say in our papers that there was no then pending motion to
 8   transfer and the reason is very, very simple -- because there
 9   was already a motion pending in California to transfer the case
10   here and it made absolutely no sense for there to be competing
```

```
                          82E5GREA
11    cases.
12              Can you picture the result? The Court in California
13    says, okay, we are going to send it to New York. The Court in
14    New York, because it has got a motion pending in front of it,
15    says we are going to send it to California. Whoops.
16              It is a very, very simple situation we are faced with
17    now, your Honor, and it is one that respectfully calls for only
18    one answer. Unless you are going to be in the position of
19    being faced with Mr. Harnik's argument that the Judge in
20    California was wrong in his interpretation and you should
21    overrule the judge in California, let's send the case to
22    California, he can make his argument there that the judge was
23    wrong and we will have a common decision without the risk of
24    dispute between the two coasts. We have enough things to fight
25    with with the west coast, we don't need to fight with them on
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```
                                                                      27
```
      82E5GREA                    argument
 1    this one. Let them have it.
 2              MR. HARNIK: Judge, I think Mr. David, respectfully,
 3    is at best twisting words. He is twisting statements.
 4              I never suggested that this Court overrule what
 5    California did. My only point is that we have brought a case
 6    here on the guarantees which is separate from what is being
 7    litigated in California, and that's always been separate. And
 8    we want to get that matter litigated here and promptly either
 9    by way of summary judgment or by trial which is scheduled for
10    May 12th. We want to go forward with the guarantees and the
11    note. This is a garden variety default on a guarantee and a
12    note. All these other allegations that Mr. Oliphant is making
13    really are irrelevant to that case.
14              And, your Honor, you don't need to deal with the
15    California order. You only have to deal with the guarantee and
16    the note which are Counts Two and Three of the complaint that's
17    in this Court. And it is not correct that it would have been a
18    waste of time for the defendants here to have answered because
19    the point is they suggest that they could have made the motion
20    to transfer here and there was a pending motion in California
21    that was to transfer from California to New York and then, 'lo
22    and behold, you have two different judges transfer each case to
23    the other one without knowing what the other one is doing.
24    That is not at all what happened here.
25              We had a motion to transfer in California, and what
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```
                                                                      28
```
      82E5GREA                    argument
 1    the defendants here should have done is they should have
 2    answered, as your Honor had stated, on the scheduling order.
 3    And then, if the case had been transferred from California to
 4    here, well, they could amend. And if it wasn't transferred, we
 5    go forward.
 6              There was no reason for them to make a motion. It was
 7    simply dilatory. They had no basis to make that motion
 8    because, under no circumstances could this case, can this case
 9    be transferred to California. That is our point, straight and
10    simple, and they waived it six different ways in all of the
11    agreements that they signed and this is a sophisticated
12    attorney who was with a major law firm who knew what he was
13    signing. And, we even have an opinion from his own law firm
14    saying that all the documents that he signed were proper and
15    enforceable and he now comes in -- and he agreed that he
```

```
                            82E5GREA
16      wouldn't even plead that this was an inconvenient forum -- and
17      what does he do?  He comes in and he says it is an inconvenient
18      forum and the whole matter should be litigated in California.
19              It is just not right.  We have Judge Greenfield's
20      decision, it is cited on page 4 of our brief.
21              THE COURT:  Judge Greenfield.
22              MR. HARNIK:  Former New York Judge, Eddie Greenfield,
23      that the defendants should be estopped from even having made
24      their motion.  They had no basis to even have made their motion
25      in this Court to have this case stayed.  And that's all they
                        SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
                                                                      29
        82E5GREA                argument
 1      asked for, was a stay.  They never asked for a transfer.
 2              MR. DAVID:  Your Honor, if I might make one final
 3      point?  Respectfully?
 4              Your Honor, I understand what we are dealing with is
 5      what we are dealing not with, as they say, a negotiated forum
 6      clause where New York was the sole place where this case could
 7      be brought.  It was a permissive provision that let them bring
 8      it here.  It didn't stop us from bringing a case in California
 9      which was the first-filed case.
10              If you listen to what they're saying -- if they had
11      negotiated to get exclusive jurisdiction in New York, that
12      would be one thing.  But, if you listen to what they are
13      saying, having first brought a case in New York -- sorry --
14      having first brought a case in California, all right, then as a
15      matter of mandatory judicial rulings, according to them, we
16      could have two pending cases because no matter what, even
17      though we brought it if they waited a month, if they waited a
18      week, if they waited whatever period of time, as long as they
19      brought it in New York, all right, there is no way to get it
20      out of New York.
21              Now, does that make sense?  Is that what the law is
22      supposed to be?
23              First filed case in California, on that alone -- all
24      right -- on that alone they shouldn't have brought it here.
25      They could have litigated the case in California.  They chose
                        SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
                                                                      30
        82E5GREA                argument
 1      not to.  All right?  I don't know why.
 2              But, this much I can tell you.  Logically what they're
 3      saying makes no sense and the cases that they're relying upon
 4      don't deal with the situation we have got here:  A permissive
 5      clause, a first-filed case in California, a ruling in
 6      California that they brought not to transfer.
 7              This just makes no sense to go on two coasts.
 8              THE COURT:  Well, I will have to read the cases that
 9      Mr. Harnik is relying on.  I haven't read them.  What is the
10      cite on Judge Greenfield's case?
11              MR. HARNIK:  That's cited at page, that's page 3 of
12      our reply brief, it is Credit Francaise International S.A.
13              THE COURT:  I see it.
14              MR. HARNIK:  Just to come back, your Honor, to my
15      point about the August 29th, 2006 engagement letter.  In order
16      for their case to have any validity, they would have to prove
17      that at the time that that was signed we had no intention of
18      fulfilling our obligations and these specific allegations,
19      almost -- I mean, it is a remarkably similar case, the one with
20      Judge Chin which is cited at, it is the Cafomi case at page 4,
```

```
                              82E5GREA
  21   Cafomi v. College Partnership. This is age page 4 of our reply
  22   brief. Also, it had the same type of waiver provisions in the
  23   guarantees and the notes. And he says: In sum, College
  24   Partnership's fraudulent inducement defense amounts to nothing
  25   more than a breach of contract claim against Duncan for alleged
                       SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
```
                                                                         31
```
         82E5GREA                  argument
   1   failures to fully perform the banking agreement. It is well
   2   established under New York Law that a fraud claim arising
   3   directly from the contractual relationship of the parties
   4   cannot be asserted simply by the inclusion of the allegation
   5   that the defendants falsely promised to comply with its
   6   obligations.
   7           THE COURT: Well, that's a little different. This is
   8   a duress claim.
   9           MR. HARNIK: Well, the duress is treated very
  10   succinctly in the CIT case which is on the next page of our
  11   brief where the Illinois Court said defendants also maintained
  12   that we should set aside the forum selection clause because it
  13   was, "forced upon them." The basis for this assertion is
  14   dubious. Having rejected Fidelcore's financing, defendants
  15   lost their alternative funding at the last minute ostensibly
  16   leaving Fidelcore as their sole resource. It is common place
  17   that parties accept unfavorable terms in exchange for desirable
  18   outcomes. Defendants do not argue that Fidelcore manipulated
  19   the circumstances which resulted in this agreement, nor can
  20   they contend that the forum selection clause itself is
  21   unreasonable or unjust. What we have here is the unremarkable
  22   story of a borrower in a weak bargaining position agreeing to a
  23   common albeit displeasing term. Other than defendants
  24   conclusory allegations, there is no evidence of duress, fraud,
  25   or even unfairness.
                       SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
```
                                                                         32
```
         82E5GREA                  argument
   1           It is not enough. And incidentally, your Honor, they
   2   haven't even made the allegation of adhesion or duress in this
   3   case -- in the New York action.
   4           THE COURT: Well, they haven't answered.
   5           MR. HARNIK: No, but that's the basis for their claim,
   6   that they shouldn't be bound by the waivers that they signed
   7   that New York is the proper case for this case to proceed. The
   8   only way that your Honor could find that it is not proper --
   9           THE COURT: I don't think that that's the way the
  10   waiver of jurisdiction reads. I don't think it says that New
  11   York is the only place it can proceed. I think it is a
  12   non-exclusory waiver saying that they consent to the
  13   jurisdiction in New York.
  14           MR. HARNIK: Correct. And what Judge Scheindlin and
  15   Judge Cedarbaum say is that once plaintiff chooses New York --
  16           THE COURT: That's why I have got to read those cases.
  17           MR. HARNIK: They're bound by it, irrevocably.
  18           THE COURT: I have got to see that they, those cases
  19   involve similar circumstances to the case here where you have
  20   two cases in different jurisdictions.
  21           MR. HARNIK: They do.
  22           THE COURT: All right. Well, we will take a look.
  23           MR. DAVID: Your Honor, you have already made the
  24   point that I was going to make, which is this is not the place
  25   nor the time to be arguing the merits what our merits are or
```

```
                          82E5GREA
                 SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300
```
                                                                    33
```
      82E5GREA                argument
 1    aren't.
 2           There is simply a procedural question before you and
 3    that procedural question is, Do you want to have the same case
 4    going on in two different court houses and with the
 5    nonpermissive provision, all right, with the first commenced
 6    action elsewhere?  And, please, I caution the Court that that's
 7    an important issue now, all right, because it is not a
 8    situation where they commenced an action here and we commenced
 9    an action someplace else, all right, and the Court is going to
10    say, well, you agreed to be here so you can't argue that it is
11    inconvenient for witnesses and it should be someplace else
12    where you started.  It is that everybody had the ability to
13    resolve it in the first commenced action, they chose to do a
14    subsequent action here.
15           That's the procedural question that's before you and
16    I'm not going to argue the merits.  I'm not going to get drawn
17    off into arguing the irrelevancies.  It is simply that issue,
18    respectfully.
19           MR. HARNIK:  One last point.
20           In terms of the first to file -- and this is addressed
21    in our papers -- their filing was, without a doubt, an
22    anticipatory filing.  We had sent them a notice of default in
23    August.  We followed up with a notice of acceleration.  They
24    filed on September 5th, but guess what?  They never served it.
25    The first time that I had an inkling that they had brought a
                 SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300
```
                                                                    34
```
      82E5GREA                argument
 1    case in California was exactly one day before we filed our case
 2    in New York.
 3           THE COURT:  Does anyone know whether they were filed
 4    in the state court in California?
 5           MR. HARNIK:  Correct.
 6           THE COURT:  Now, filing in federal court initiates an
 7    action.  It used to be in New York State that you had to serve
 8    the parties before the action was initiated.  What is the law
 9    in California?
10           MR. DAVID:  Your Honor, respectfully, I don't know
11    that.  I would be glad to look it up and submit something to
12    the Court but I'm not going to make representation as to
13    something I don't know.
14           THE COURT:  But in New York State it always was you
15    had to get service before the action was commenced and only in
16    Federal court is the filing of the --
17           MR. DAVID:  Based upon the materials which appear to
18    have been filed in Federal court in response to their motion I
19    believe the filing is sufficient to commence the action but I
20    don't want to make a representation.
21           THE COURT:  Of course.
22           Well, it is something we can determine.  Anything else
23    to be heard?
24           MR. DAVID:  Your Honor, I just might note one thing.
25    Perhaps it was missed but they conceded that they were served
                 SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300
```
                                                                    35
```
      82E5GREA                argument
 1    before they commenced this action.
```
Page 16

```
                          82E5GREA
 2          THE COURT:  I think the day before.
 3          MR. DAVID:  Right.  And, respectfully, I don't think
 4  the anticipatory filing doctrine is applicable.  What happened
 5  was quite clearly they served, in essence, the equivalent of a
 6  notice of default, not knowing they were filing his own action
 7  filing their action to contest the notice of default.  That's
 8  not anticipatory filing.
 9          THE COURT:  Well, it depends.  I mean, if you have
10  that New York rule, if that same rule applied, there were cases
11  where people would file a complaint and then negotiate, sort of
12  being held and not served while they negotiated and then to
13  serve it.
14          MR. DAVID:  That's not what happened here, as the
15  facts are conceded.
16          THE COURT:  Well, it wasn't mentioned according to the
17  papers I read.  It was not mentioned by Mr. Draper's -- was
18  that her name -- during the telephone conference or during the
19  conference that was held with the principals of Greystone.
20          MR. DAVID:  Your Honor, may I suggest what both sides
21  should do is we may want to provide you with a copy of the
22  motion papers that were filed in California.  That might give
23  you better perspective on what occurred.
24          THE COURT:  Well, that might be.
25          MR. HARNIK:  But, your Honor --
                  SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
```

                                                                    36
```
    82E5GREA                argument
 1          THE COURT:  I thought I had most of them but maybe I
 2  don't.  You are entitled to supplement that then, if you want.
 3          MR. DAVID:  Thank you, your Honor.
 4          MR. HARNIK:  Your Honor, you are correct and Mr. David
 5  has not even suggested an answer for why, having filed the
 6  action in California on September 7th, they didn't serve it.
 7  And they only gave us notice of it on the 25th and there is
 8  nothing in the record, as far as I know --
 9          THE COURT:  Well, the negotiations were going on.
10          MR. HARNIK:  There were negotiations.  Exactly.  It
11  was the opposite.  They didn't want to us know that they had
12  filed.
13          MR. DAVID:  Your Honor, I'm not questioning that the
14  reason why was we were trying to make a deal.  And you can
15  imagine, as you were suggesting before, that we tried to sit
16  down and discuss this, that there might be a chilling effect
17  from knowing that we had started a lawsuit on negotiations.
18          THE COURT:  Yes.
19          MR. DAVID:  But, that's not the doctrine.  The
20  doctrine isn't, oh, tell them that you started a lawsuit.  The
21  doctrine is you started a lawsuit because you knew the other
22  side was starting a lawsuit and you wanted to race to the court
23  house.  There is no evidence here that that's what happened.
24          There is evidence that we got a default notice, we
25  started an action.  Yeah, we didn't say to them, Hey, guys.  By
                  SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
```

                                                                    37
```
    82E5GREA                argument
 1  the way, we are going to sue you.  All right?  We said let's
 2  talk.  And we didn't try to use the action we started as a
 3  lever to talk.
 4          THE COURT:  But then, on the other hand Mr. David,
 5  Mrs. Draper did not consent to service and her client did not
 6  consent to service when the papers were served by Federal
```

```
                                82E5GREA
 7      Express or something like that; which indicates to some extent
 8      that there were games being played at the time of service.
 9               MR. DAVID:  Your Honor, respectfully, by that point
10      the action in California had already been filed.
11               THE COURT:  I didn't say it hadn't been.  But, for
12      some reason she felt that it would be best not to consent to
13      service.
14               MR. DAVID:  But we are not even arguing that issue at
15      this point, your Honor.  That issue is resolved by you.
16               THE COURT:  I did resolve it, in your favor.
17               MR. DAVID:  Always saying it is a very, very simple
18      proposition:  First to file, there is an action that will be
19      continuing.  All right.  This clause is permissive so you can't
20      read the clause as precluding us from coming to you and saying,
21      hey, Judge --
22               THE COURT:  I will have to read those cases.
23               MR. DAVID:  I don't think those cases -- those cases
24      are not similar in any way.  They don't deal with a first-filed
25      case.  That's all I'm saying to you.
                     SOUTHERN DISTRICT REPORTERS, P.C.
                               (212) 805-0300
                                                                     38
        82E5GREA                     argument
 1               THE COURT:  I gather that.
 2               MR. HARNIK:  Judge, you know, it is actually ironic
 3      because here Mr. David says that we could have filed in
 4      California.  We didn't even know that there was an action in
 5      California.  Why would we have filed in California?
 6               MR. DAVID:  You were served the day before, sir.  You
 7      acknowledge that.
 8               MR. HARNIK:  I can put on the record, your Honor, that
 9      when we filed this complaint I did not know that there was an
10      action in California.
11               MR. DAVID:  But your client did.
12               MR. HARNIK:  There may have been.
13               MR. DAVID:  You just acknowledged it.  You just
14      acknowledged before.
15               MR. HARNIK:  I was told by Jones Day that on the day
16      before they got notice of an action but, you know, there was no
17      communication.
18               MR. DAVID:  Well, that's -- that's my fault.
19               MR. HARNIK:  So, we had prepared our papers a week or
20      more before that and there was no reason for to us know that we
21      were engaged in any kind of litigation in California.
22               THE COURT:  Well, as I said earlier --
23               MR. HARNIK:  And Mrs. Draper certainly could have
24      mentioned it.
25               THE COURT:  It should be settled.  That's what should
                     SOUTHERN DISTRICT REPORTERS, P.C.
                               (212) 805-0300
                                                                     39
        82E5GREA                     argument
 1      happen to the case.
 2               MR. DAVID:  I will convey to my client the Court's
 3      perspective, your Honor.
 4               MR. HARNIK:  May I address then the scheduling order?
 5      Because we have a May 12th date and we should --
 6               THE COURT:  I have got that in mind.
 7               MR. HARNIK:  We should be in discovery right now.
 8               THE COURT:  I have got that in mind.
 9               MR. HARNIK:  The defendants defaulted on the Rule 26
10      and we have no discovery.
11               MR. DAVID:  Your Honor, we didn't default on the Rule
                                 Page 18
```

```
                          82E5GREA
12   26. All right? I mean, let's not make allegations that in
13   fact are not true. We did not default on the Rule 26. We
14   hadn't even been served. And the Court did make that
15   determination.
16        MR. HARNIK:  So.
17        THE COURT:  All right.
18        MR. HARNIK:  I think, your Honor, we can, we should
19   have some guidance on -- as I mentioned, we certainly are
20   amenable to mediation in New York and would be glad to go ahead
21   with that immediately but, at the same time, we have to move
22   this case along.
23        MR. DAVID:  Your Honor, I believe the case should move
24   too. We agree on that. I just think it should be moved to
25   California.
                  SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300
                                                              40
     82E5GREA                  argument
1         THE COURT:  Well, we will have to see and keep in mind
2    that I may order that the clients appear. And if they appear,
3    I think their main counsel will appear to see if this case
4    can't be settled. That's it.
5         MR. DAVID:  Thank you, Your Honor.
6         MR. HARNIK:  Thank you, your Honor.
7                             oOo
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
                  SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300
```