EXHIBIT "A"

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANTA FE POINTE, LP, ET AL., | Case No. C-07-5454 JCS |
| Plaintiffs, | |
| v. | **ORDER DENYING DEFENDANTS'** |
| GREYSTONE SERVICING CORP., INC., | **MOTION TO TRANSFER VENUE [Docket** |
| ET AL., | **No. 10]** |
| Defendants. | |

## I.    INTRODUCTION

This action was initially filed in Alameda County Superior Court and subsequently removed by Defendants to this Court on the basis of diversity jurisdiction. Defendants now bring a Motion to Transfer Venue (the "Motion"), asking that the Court transfer the action pursuant to 28 U.S.C. § 1404(a) to the Southern District of New York, where a later-filed action involving related claims is pending. The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). The Court determines that the Motion is suitable for determination without oral argument, pursuant to Civil Local Rule 7-1(b). Accordingly, the hearing scheduled for **February 8, 2008 is VACATED.** For the reasons stated below, the Motion is DENIED.

## II.    BACKGROUND

### A.    The First Amended Complaint

Plaintiff Theotis Oliphant is an individual whose principal residence is in Alameda County, California. First Amended Complaint ("FAC") ¶ 4. Oliphant is general partner of Plaintiff Santa Fe Pointe, LP ("SFP"), which is an Oklahoma limited partnership with its principal place of business in Oklahoma City. FAC ¶¶ 2, 5. Oliphant is managing partner of Plaintiff Santa Fe Management LLC, which is an Oklahoma limited liability company with its principal place of business in

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    Oklahoma. FAC ¶¶ 3, 5. Oliphant is also managing partner of Plaintiff Rant, LLC, which is a

2    Delaware limited liability company with its principal place of business in Alameda County,

3    California. Complaint ¶¶ 4-5.

4         Defendant Greystone Servicing Corporation ("Greystone Servicing") is a Georgia

5    Corporation with its principal place of business in New York City. FAC ¶ 6. Defendant Greystone

6    CDE, LLC ("Greystone CDE") is a Delaware Corporation with its principal place of business in

7    New York City. FAC ¶ 7.

8         Plaintiffs' claims are based on the alleged conduct of Defendants in connection with efforts

9    by Plaintiffs to acquire and rehabilitate an apartment building in Oklahoma City (the "Project") as a

10   tax-credit developer of a Low Income Housing Tax Credit project offered through the Federal

11   Housing Administration's Office of Housing and Urban Development ("HUD"). FAC ¶ 1.

12   Defendants are originators of Federal Housing Administration ("FHA") multifamily loans and are

13   HUD-approved underwriters for the FHA's Multifamily Accelerated Processing Program.

14   Complaint ¶¶ 1, 14. As such, Defendants serve as an intermediary between developer clients and

15   FHA offices to facilitate HUD approval of applications and to obtain financing for their clients.

16   FAC ¶ 14.

17        On September 7, 2006, Plaintiffs and Greystone Servicing entered into a written agreement

18   (the "Engagement Agreement") whereby Plaintiffs appointed Greystone Servicing to serve as their

19   exclusive agent to process the HUD application for financing the acquisition and rehabilitation on

20   the Project. FAC ¶ 15. Under the Engagement Agreement, Plaintiffs and Greystone Servicing were

21   to jointly prepare the application, while Defendants were to underwrite the financing for the Project

22   and submit the application to HUD on Plaintiffs' behalf. FAC ¶ 16. Also in September 2006,

23   Plaintiffs arranged for bond-financing of the Project whereby over $7 million in tax-exempt bonds

24   were to be sold. FAC ¶ 17. Because the bond issue was to expire December 20, 2006, the bond

25   financing had to close by that date. FAC ¶ 17. Therefore, Plaintiffs impressed on Defendants that

26   the HUD application had to be filed by November 2006. FAC ¶ 17.

27        In late October 2006, Greystone Servicing informed Plaintiffs that it was behind schedule,

28   and in November 2006, Greystone Servicing informed Plaintiffs that the HUD application would not

United States District Court

For the Northern District of California

1   be filed in 2006. FAC ¶¶ 23, 25. To address Plaintiffs' concerns regarding the bond financing,

2   Defendants promised to fund a non-recourse bridge-loan to cover the purchase of the Project and the

3   cost of the issuing the tax-exempt bonds. FAC ¶ 25. On November 16, 2006, Defendant Greystone

4   CDE sent Plaintiff Oliphant a bridge loan term sheet that provided for a non-recourse bridge loan to

5   Oliphant in the amount of $4,348,400, the full amount of the purchase price of the Project. FAC

6   ¶ 26. However, when Oliphant received the final bridge loan documents, on December 17, 2006, the

7   amount of the loan was only $500,000, which would cover the cost of the bond issuance but not

8   acquisition of the Project. FAC ¶ 29. In addition, the loan was not non-recourse, as promised, but

9   instead included a personal guaranty by Oliphant and a spousal guaranty. FAC ¶ 29. At this point,

10  however, the bonds had already been sold – on December 13 and 14 – and the cost of their issuance

11  had already been incurred, in the amount of $251,000. FAC ¶ 28. Because Plaintiffs would lose the

12  bond funding if the acquisition of the Project was not closed by December 20, 2006, Oliphant signed

13  the bridge-loan documents as presented. FAC ¶ 30.

14        Greystone Servicing submitted the final HUD application on March 14, 2007. FAC ¶ 31.

15  On April 17, 2007, the tax credit purchaser/syndicator that had been lined up for the Project backed

16  out. FAC ¶ 32. In June 2007, Plaintiffs found a new syndicator and co-developer, David Henry,

17  who agreed to serve as general contractor, property manager and co-developer. On July 5, 2007,

18  Oliphant met with HUD personnel in Oklahoma City and was told that the HUD application had

19  been rejected. FAC ¶ 34. The HUD representative told Oliphant that Greystone's representative

20  had gone out of her way to make disparaging remarks about the Project to the HUD Oklahoma City

21  representative. FAC ¶ 34.

22        Subsequently, Greystone's Betsy Vartanian contacted HUD personnel in Oklahoma City,

23  who agreed to reconsider the application without starting over from the beginning if Greystone

24  would provide additional materials addressing HUD's concerns. FAC ¶ 36. In the meantime,

25  Plaintiffs continued to work with David Henry and the seller of the Project to proceed with the

26  closing of the acquisition of the project. FAC ¶ 37. Plaintiffs and Henry were unable to reach an

27  agreement that addressed Henry's concerns about the deal and in August 2007, Greystone and Henry

28  began negotiating on ways to get the deal done without Oliphant and Plaintiffs. FAC ¶¶ 38-40.

1    On August 9, 2007, Graystone unilaterally withdrew the HUD loan application without prior

2    notice or warning to Plaintiffs. FAC ¶ 42. On August 21, 2007, Greystone CDE declared the bridge

3    loan in default and threatened legal enforcement. FAC ¶ 45. On August 22 and in the weeks

4    followed, Greystone pressured Plaintiffs to allow David Henry to take over the Project, telling

5    Plaintiffs that they would initiate a collection action against Plaintiffs if they did not agree to the

6    deal. FAC ¶ 46. In a telephone conference between Greystone and Oliphant on September 14,

7    2007, Greystone told Opliphant that it was "out" of the deal if Oliphant could not prove that the

8    Project was not a viable deal. FAC ¶ 50.

9    On September 21, 2007, Greystone CDE notified Plaintiffs that it was accelerating the bridge

10   loan and declaring all amounts under the bridge loan immediately due and payable. FAC ¶ 52.

11   Based on these allegations, Plaintiffs asserted the following claims against Defendants:

12   Claim One: Professional Negligence, based on the allegation that the Greystone Defendants

13   "breached their respective duties of due care owed to Plaintiffs . . . with respect to the Project

14   and the HUD financing."

15   Claim Two: Breach of Fiduciary Duty/ Constructive Fraud based on the alleged breach of the

16   "trust and confidence Plaintiffs . . . reposed in . . . defendants by virtue of the Engagement

17   Agreement, the business relationship, and the Greystone Defendants' position as a HUD-

18   approved underwriter for the FHA's Multifamily Accelerated Processing . . . Program."

19   Claim Three: Intentional Interference with Prospective Economic Advantage based on

20   Defendants' alleged interference with Plaintiffs' "existing business relationship with the

21   Seller of the Project and with the HUD office in Oklahoma City."

22   Claim Four: Negligent Interference with Prospective Economic advantage.

23   Claim Five: Anticipatory Breach based on Greystone's repudiation of the written agreements

24   to accomplish the financing for the acquisition of the Project.

25   **B.    Procedural Background of this Action**

26   Plaintiffs filed this action in Alameda County Superior Court on September 7, 2007. They

27   filed a First Amended Complaint on September 25, 2007, which included additional alleged

28   misconduct that occurred after the original complaint was filed. The First Amended Complaint was

4

1    served on Greystone Servicing on September 25, 2007 and on Greystone CDE on September 26,

2    2007. *See* Declaration of Ann McFarland Draper in Opposition to Defendants' Motion to Transfer

3    Case to Southern District of New York ("Draper Decl."), Exs B & C (proof of service). On

4    October 25, 2007, Defendants moved the action to this Court on the basis of diversity jurisdiction.

5    On November 7, 2007, they filed the instant motion to transfer.

    **C.    Procedural Background of the New York Action**

7        On September 26, 2007 Greystone CDE filed an action in the Federal District Court for the

8    Southern District of New York (the "New York Action") seeking damages based on the alleged

9    breach of the bridge loan agreement between Greystone CDE and the Plaintiffs in this action.

10   Draper Decl., ¶ 4. Greystone CDE served the complaint on Plaintiffs by Federal Express on

11   September 27, 2007. Draper Decl., Ex. D (December 2, 2007 Opinion and Order in New York

12   Action) at 2-3. Plaintiffs did not respond and, upon the request of Greystone CDE, the clerk's office

13   entered default. *Id.* at 3. Greystone CDE then sought entry of default judgment in the New York

14   Action. *Id.* Plaintiffs opposed the motion, making a limited appearance in the New York Action to

15   argue that service by FedEx was not proper. *Id.* at 5. The court in the New York Action concluded

16   that service by Federal Express was not proper under the various contractual agreements between the

17   parties and vacated the default in an order filed December 2, 2007. *Id.* at 9-10.

18   **D.    The Motion**

19       Defendants assert that this action should be transferred under 28 U.S.C. § 1404(a) to the

20   Southern District of New York, where it can be heard with the action that is already pending there.

21   In support of this contention, they point primarily to provisions contained in the bridge loan

22   guaranties that state as follows:

23           **Section 15. Governing Law. THIS AGREEMENT SHALL BE
              GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH
24           THE LAWS OF THE STATE OF NEW YORK WITHOUT
              GIVING EFFECT TO ITS CONFLICTS OF LAWS
25           PRINCIPLES . . .**

26           . . .

27           **Section 26. Submission to Jurisdiction; Waivers.**

28

5

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1           **(a) PLEDGORS HEREBY IRREVOCABLY AND UNCONDITIONALLY:**

2

3               **(i) SUBMIT THEMSELVES AND THEIR RESPECTIVE PROPERTY IN ANY LEGAL ACTION OR PROCEEDING RELATING TO**

4               **THIS AGREEMENT, OR ANY OTHER DOCUMENT EXECUTED IN CONNECTION**

5               **WITH THE TRANSACTIONS CONTEMPLATED BY THE LOAN AGREEMENT, OR FOR**

6               **RECOGNITION AND ENFORCEMENT OF ANY JUDGMENT IN RESPECT HEREOF OR**

7               **THEREOF, TO THE NONEXCLUSIVE GENERAL JURISDICTION OF THE COURTS**

8               **OF THE STATE OF NEW YORK, THE COURTS OF THE UNITED STATES OF AMERICA FOR**

9               **THE STATE OF NEW YORK AND THE APPELLATE COURTS FROM ANY THEREOF;**

10

11              **(ii) CONSENT THAT ANY SUCH ACTION OR PROCEEDING MAY BE BROUGHT IN SUCH COURTS, AND WAIVES ANY OBJECTION**

12              **THAT IT MAY NOW OR HEREAFTER HAVE TO THE VENUE OF ANY SUCH ACTION OR**

13              **PROCEEDING IN ANY SUCH COURT OR THAT SUCH ACTION OR PROCEEDING WAS**

14              **BROUGHT IN AN INCONVENIENT COURT AND AGREE NOT TO PLEAD OR CLAIM THE**

15              **SAME;**

16              **(iii) AGREE THAT SERVICE OF PROCESS IN ANY SUCH ACTION OR PROCEEDING MAY BE**

17              **EFFECTED BY MAILING A COPY THEREOF BY REGISTERED OR CERTIFIED MAIL(OR**

18              **ANY SUBSTANTIALLY SIMILAR FORM OF MAIL), POSTAGE PREPAID BY PLEDGORS AT**

19              **THE ADDRESSES REFERRED TO ON PAGE 1 OF THIS AGREEMENT; AND**

20

21              **(iv) AGREE THAT NOTHING HEREIN SHALL AFFECT THE RIGHT TO EFFECT SERVICE OF PROCESS IN ANY OTHER MANNER**

22              **PERMITTED BY LAW OR SHALL LIMIT PLEDGEE'S RIGHT TO SUE IN ANY OTHER**

23              **JURISDICTION.**

24            . . .

25

26

27

28

1  Declaration of Erik K. Swanholt ("Swanholt Decl."), Exs. 3D & 3E (Santa Fe Management and Rant

2  guaranties for bridge loan).[1]

3          Based on the provisions designating New York law as the governing law for the bridge loan

4  guaranties, Defendants argue that this action should be heard by a New York court. Further, in light

5  of the forum-selection clauses, Plaintiffs' choice of forum should not be afforded deference,

6  Defendants assert. Rather, the Court should transfer the action to the Southern District of New

7  York, as contemplated by the parties in the bridge loan documents. Defendants further assert that

8  the action should be transferred because doing so will promote judicial efficiency, most parties and

9  third-party witnesses live closer to New York than they do to this district, and California has little or

10 no interest in resolving this controversy, which relates to an out-of-state development. Finally,

11 Defendants argue that the doctrine of federal comity under which a district court may decline to

12 exercise jurisdiction where a related action is already pending in another district court – the so-called

13 first-to-file rule – should not apply here because Plaintiffs' action was filed in anticipation of

14 Defendants' action and amounts to forum-shopping.

15         In their Opposition, Plaintiffs object to the transfer of this action to New York for several

16 reasons. First, they argue that the threshold requirement for a § 1404(a) transfer – that the transferee

17 court could exercise personal jurisdiction over Plaintiffs with respect to all relevant claims and that

18 venue there would be proper – has not been met. In particular, Plaintiffs argue that New York

19 cannot exercise personal jurisdiction over the Plaintiffs in this action because they do not have

20 minimum contacts with New York and there is not forum selection clause in the Engagement

21 Agreement with Greystone Servicing, the bridge loan agreement, the bridge loan promissory note or

22

23          [1] The Oliphant guaranty contains somewhat different language:

24          **Section 3.08 Jurisdiction; Etc.** The Guarantor irrevocably (a) agrees
            that the Lender may bring suit, action or other legal proceedings arising

25          out of this Guaranty in the courts of the State of New York or the courts
            of the United States located in New York; (b) consents to the jurisdiction

26          of each such court in any such suit, action or preceding; (c) waives any
            objection which the Guarantor may have to the laying of the venue of any

27          such suit, action, or proceeding in any of such courts . . .

28 Swanholt Decl., Ex. 3C.

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1   the assignments made to repay the note. The only documents that include forum selection clause

2   are the guaranties and these provisions are limited to claims arising out of those agreements,

3   Plaintiffs argue. Therefore, they assert, these provisions do not support a finding of personal

4   jurisdiction as to Plaintiffs' claims in this action, which are not based on the guaranties with

5   Greystone CDE. Plaintiffs argue further that the documents signed in support of the bridge loan,

6   including the guaranties, are unconscionable and unenforceable in light of the circumstances under

7   which they were signed. Therefore, they argue, the forum selection clauses in the guaranties are

8   invalid and cannot give rise to personal jurisdiction

9        Second, Plaintiffs argue that even if New York could exercise personal jurisdiction over

10   Plaintiffs, the factors that are considered in determining whether a convenience transfer is

11   appropriate do not weigh strongly in favor of transfer, as Defendants are required to establish. In

12   particular, Plaintiffs assert: 1) Plaintiffs' choice of forum is entitled to deference; 2) the contracts

13   were not negotiated or executed in New York; 3) the choice of law provision in the guaranty

14   agreements likely do not apply to Plaintiffs claims and California law, rather than New York law,

15   may well apply to those claims; 4) Plaintiffs have little or no contact with New York, while

16   Defendants do much of their business in California; 5) New York is no more convenient for parties

17   and witnesses than California; and 6) it will be more expensive to litigate in New York than

18   California.

19        Third, Plaintiffs argue that the significance of the forum selection clause has been overstated

20   by Defendants. In particular, while Defendants have stated that a party opposing transfer bears a

21   heavy burden where there is a forum selection clause, Plaintiffs argue that this rule does not apply

22   where the forum selection clause is permissive, as this one is.

23   **IV.   ANALYSIS**

24        Pursuant to 28 U.S.C. § 1404(a), a case may be transferred "for the convenience of the

25   parties of the parties and witnesses, in the interest of justice" to "any other district or division where

26   the action might have been brought." A party seeking transfer must make "a strong showing . . . to

27   warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*,

28   805 F.2d 834, 843 (9th Cir. 1986). In determining whether to transfer an action pursuant to

United States District Court
For the Northern District of California

1   § 1404(a), the court must balance a number of case-specific factors, including "(1) the location

2   where the relevant agreements were negotiated and executed, (2) the state that is most familiar with

3   the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the

4   forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the

5   differences in the costs of litigation in the two forums, (7) the availability of compulsory process to

6   compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof."

7   *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). In addition, the presence of a

8   forum selection clause is a "significant factor" in the § 1404(a) analysis. *Id.* at 499.

9        The Ninth Circuit has held that the enforceability of a forum selection provision where

10  jurisdiction is based on diversity is a question of federal law. *Manatti-Farrow, Inc. v. Gucci*

11  *America, Inc.*, 858 F.2d 509, 513 (9th Cir. 1988). Under federal law, a mandatory forum selection

12  clause is presumed valid and must be specifically enforced. *The Bremen v. Zapata Off-Shore Co.*,

13  407 U.S. 1, 15 (1972). On the other hand, "[a] permissive forum selection clause . . . simply means

14  that the parties consent to the jurisdiction of the designated forum." *Hsu v. OZ Optics Ltd.*, 211

15  F.R.D. 615, 618 (N.D. Cal. 2002) (holding that where forum selection clause was permissive, party

16  seeking convenience transfer was required to overcome the deference that is normally afforded the

17  plaintiff's choice of forum and denying request to transfer action).

18       Here, the language of the forum selection clauses in the guaranties is clearly permissive. The

19  provisions do not purport to make New York the *exclusive* jurisdiction in which claims arising from

20  the guaranties can be litigated. Further, the Court notes that the forum selection clauses are limited

21  to claims that arise from the agreements in which they are contained. The claims that Plaintiffs

22  assert in their First Amended Complaint do not arise from the duties and obligations contained in the

23  guaranties that were signed in support of the bridge loan. Therefore, the forum selection clauses

24  contained in the guaranties do not apply to this action and Plaintiffs are entitled to the deference that

25  is generally afforded a plaintiff's choice of forum.

26       Defendants' reliance on *Unisys v. Access Co., Ltd.*, 2005 WL 3157457 (N.D. Cal. November

27  23, 2005) is misplaced. In that case, the court gave a permissive forum selection "substantial

28  consideration" in its determination that a § 1404(a) transfer was warranted. *Id.* at *5. The court

1  noted that at oral argument, when asked why the court should not enforce the forum selection clause,

2  the plaintiff could not offer a "salient reason" in response. *Id.* In that case, however, in contrast to

3  the facts here, there was no dispute that the claims at issue arose out of the contract containing the

4  forum selection clause. Nor was there any argument that the agreement containing the forum

5  selection clause was itself unconscionable and unenforceable. Therefore, *Unisys* is not on point.

6      Looking to the remaining factors listed above, the Court concludes that Defendants have not

7  made the strong showing that is necessary to overcome Plaintiff's choice of forum. First, the

8  relevant agreements were negotiated in both California and New York, while the place of

9  performance was in Oklahoma. Thus, this factor is neutral. Second, although New York law may

10  govern some of the claims, it is far from clear that it will apply to all of the claims in this case. In

11  any event, courts routinely apply the law of other states and, therefore, the fact that the Court may be

12  required to apply New York law does not strongly support transfer. Third, the parties contacts with

13  the relevant fora do not strongly support transfer: Plaintiffs have strong ties with California, while

14  Defendants have strong ties with New York. Fourth, the cost of litigation is likely to be comparable

15  in either California or New York and, therefore, does not support transfer. Fifth, either venue is

16  likely to require witnesses to travel. Because the witnesses are not predominantly located in or near

17  New York, this factor does not favor transfer.

18      The Court concludes that Defendants have not demonstrated that a transfer is warranted

19  under 28 U.S.C. § 1404(a).[2]

20  **IV.    CONCLUSION**

21      For the reasons stated above, the Motion is DENIED.

22      IT IS SO ORDERED.

23

24  Dated: February 4, 2008

25                                         JOSEPH C. SPERO
                                           United States Magistrate Judge

26

27

28  ─────────
    [2] Because the Court finds that Defendants are not entitled to a convenience transfer under
    § 1404(a), it does not reach the question of whether the first-to-file doctrine should be applied here.

United States District Court
For the Northern District of California