UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GREYSTONE CDE, LLC,<br>  *Plaintiff-Counterclaim*<br>  *Defendant,*<br><br>  - against –<br><br>SANTE FE POINTE, L.P.,<br>SANTE FE POINTE MANAGEMENT, LLC<br>RANT LLC, and<br>THEOTIS F. OLIPHANT,<br><br>  *Defendants-*<br>  *Counterclaimants*<br>  - against -<br><br>GREYSTONE SERVICING CORPORATION,<br>INC.,<br><br>  *Additional Counterclaim*<br>  *Defendant.* | <u>Civil Case No</u>:  07-CV.8377 (RPP) |

## DEFENDANTS-COUNTERCLAIMANTS' MEMORANDUM OF LAW
## IN OPPOSITION TO GREYSTONE'S MOTION FOR SUMMARY JUDGMENT
## AND TO DISMISS COUNTERCLAIMS

**AKERMAN SENTERFITT LLP**
335 Madison Avenue, Suite 2600
New York, New York 10017
<u>Telephone</u>:  212.880.3800
<u>Facsimile</u>:  212.880.8965

*Attorneys for Defendants-Counterclaimants*

*Of Counsel:*

Donald N. David (DD 5222)
Brian A. Bloom  (BB  5722)
Jeremy Shure     (JS 0490)

{NY030363;1}

## TABLE OF CONTENTS

Table of Contents ............................................................................................. i

Table of Authorities ................................................................................... ii-iii

POINT I:  Introduction ...................................................................................... 1

POINT II: The Motion To Dismiss Should Be Denied .......................................... 2

    A.  Greystone's Argument that the Counterclaim Fails to Properly Allege Alter Ego Misses the Point .................................................................................. 2

    B.  Greystone Servicing Has Been Served With a Properly Issued Summons ................. 5

        1.  A Summons Was Properly Issued by the Clerk of Court ............................ 5

        2.  Mr. Harnik Refused to Accept Service of the Summons On Behalf of Greystone Servicing .......................................................................... 6

        3.  The Summons was Properly Served on an Individual Who Represented Herself as Authorized by Greystone Servicing to Accept Service .......................... 6

        4.  The Summons has Also Been Served on the New York State Secretary of State, who has Been Designated as Greystone Servicing's Registered Agent .............. 7

    C.  The Oliphant Parties Were Not Required To Seek Leave To File The Counterclaim Against Greystone Servicing ................................................. 8

POINT III:  Plaintiff's Summary Judgment Motion is Wholly Unsupported by Evidence And Is Frivolous ........................................................... 9

    A.  Greystone Has No Evidence To Support Its Motion .................................... 9

    B.  A Triable Issue Exists as to Whether the Underlying Loan Was in Default ........... 11

    C.  Greystone's Statement that All Defenses Have Been Waived Is Unsupported ...... 12

POINT IV:  Conclusion ................................................................................... 13

# Table of Authorities

**Cases**

*Adickes v. S.H. Kress & Co.*,
   398 U.S. 144 (1970) ..................................................................................... 12

*Afl Fresh & Frozen Fruits & Veg. v. De-Mar Food Serv.*,
   2007 WL 4302514 (S.D.N.Y. Dec. 7, 2007) ....................................................... 10-11

*A.L. Williams & Assoc., Inc. v D.R. Richardson & Assoc.*,
   98 F.R.D. 748 (N.D. Ga. 1983) ...................................................................... 9

*Fashion Page v. Zurich Ins.*,
   50 N.Y.2d 265 (N.Y. 1980) .......................................................................... 7

*Fed. Trade Comm'n v. Med. Billers Network*,
   2008 WL 857663 (S.D.N.Y. March 31, 2008) ..................................................... 10

*Garcia v. Maersk, Inc.*,
   2005 WL 1492380 (E.D.N.Y. 2005) ................................................................. 7

*Giannullo v. City of New York*,
   322 F.3d 139 (2d Cir. 2003) ......................................................................... 11

*Holtz v. Rockefeller & Co., Inc.*,
   258 F.3d 62 (2nd Cir. 2001) ......................................................................... 10

*Liles v. New York City Dep't Of Educ.*,
   516 F.Supp.2d 297 (S.D.N.Y. 2007) ............................................................... 10

*M'baye v. World Boxing Ass'n*,
   429 F. Supp. 2d 652 (S.D.N.Y. 2006) ............................................................. 7

*Mountain States Sports Inc. v. Sharman*,
   353 F. Supp. 613 (D. Utah 1972) ................................................................... 9

*Nationwide Life Ins. Co. v. Hearst/ABC-Viacom Entm't Serv.*,
   1996 WL 263008 (S.D.N.Y. 1996) ................................................................. 12

*Northfield Ins. Co. v. Bender Shipbuilding & Repair Co.*,
   122 F.R.D. 30 (S.D. Ala. 1988) ..................................................................... 9

*Old Republic Ins. v. Pacific Financial Services*,
   301 F.3d 54 (2d Cir. 2002) ........................................................................... 7

*Tadco Constr. Corp. v. Peri Framework Sys., Inc.*,
  460 F. Supp. 2d 408 (E.D.N.Y. 2006) ........................................................................ 7

*Texwood Ltd. v. Gerber*,
  1985 WL 196 (S.D.N.Y. 1985) .................................................................................... 8

**Statutes**

28 U.S.C. § 1404(a) ............................................................................................................. 1

Fed. R. Civ. P. Rule 4 (a) .................................................................................................... 5

Fed. R. Civ. P. Rule 4(m) .................................................................................................... 7

Fed.R.Civ. P. Rule 13(h) ..................................................................................................... 8

Fed. R. Civ. P. Rule 19 ................................................................................................... 8, 9

Fed. R. Civ. P. Rule 20 ................................................................................................... 8, 9

Fed. R. Civ. P. Rule 56(e) .............................................................................................. 10

Loc. R. 56.1(d) ............................................................................................................... 10

**Other Authorities**

3 Moore's Federal Practice ¶13.39, at 13-239 n.27 (2d ed. 1984) ................................ 8, 9

# I.
## INTRODUCTION

The Oliphant Parties have moved the Court to transfer this action to the Northern District of California for consolidation with the California Action that raises the same issues being litigated here. Greystone's opposition to that transfer-venue motion wholly failed to discuss the "interest of justice" concept supporting the motion. See 28 U.S.C. §1404(a). Rather, it raised a variety of collateral issues, most of which have been addressed by the Oliphant Parties in their reply brief in support of the transfer venue motion ("Reply Brief"). As part of that opposition to the transfer-venue motion, Greystone also purported to make cross motions (a) to dismiss the Oliphant Parties' Counterclaim and (b) for summary judgment on two causes of action in the Greystone CDE Complaint. This brief addresses those motions to the extent they have not already been addressed in the Reply Brief.

Greystone's motion to dismiss is based on a misreading of the Counterclaim and an assumption that the Oliphant Parties are alleging that Counterclaim Defendants Greystone Servicing Corp., Inc. and Greystone CDE, LLC are jointly liable because they are alter egos of each other. The Oliphant Parties are alleging joint activity by these Counterclaim Defendants as the basis of liability, not alter ego. That joint activity is properly alleged in the Counterclaim.

Greystone CDE's motion for summary judgment on the Complaint is meritless. Greystone offers no evidence to support the motion, and its statement of "undisputed facts" simply regurgitates the allegations of the Complaint, which **are** disputed. Summary judgment requires proof; Greystone has offered none.

## II.
## THE MOTION TO DISMISS SHOULD BE DENIED

**A.    Greystone's Argument that the Counterclaim Fails To Properly Allege Alter
Ego Misses the Point**

Greystone argues that the Counterclaim fails to state a claim because "no effort
has been made to differentiate the Greystone counterclaim defendants" and the
Counterclaim does not allege the specific facts to support the theory that the Greystone
entities are the alter egos of one another.

Greystone has improperly assumed, however, that the Counterclaim attempts to
assert an "alter ego" theory at all. The crux of the Counterclaim is that the activities of
**both** Greystone Defendants, acting jointly, contributed to Plaintiffs' inability to complete
the Project.

The Counterclaim alleges that Greystone Servicing entered into an agreement in
September 2006 to underwrite and be the HUD interface for the Oliphant Parties in
obtaining a HUD-insured loan. Answer and Counterclaim ¶¶77-78. Because of
Greystone Servicing's negligence in timely performing that task, the Oliphant Parties
faced the prospect of losing the Project and its tax-exempt bonds near the end of 2006.
Id. at 84-85. Greystone Servicing therefore offered a non-recourse bridge loan of over $4
million that would be funded through an affiliate, Greystone CDE, LLC, to allow the
Oliphant Parties to (a) purchase the property, and (b) pay for the issuance of the bond. Id.
at ¶¶83, 85-88.A

At the eleventh hour, however, when it was impossible for the Oliphant Parties to
find other funding, the terms of the bridge loan were changed. The loan would be for
only $500,000, and therefore would cover only the cost of the bonds, not the purchase
price for the property. Id. at ¶90. In addition, instead of the promised non-recourse
financing, the loan documents required Mr. Oliphant to personally guarantee the loan, an
entirely new and different condition. Id.

The Counterclaim asserts that after this bridge loan was extended, the actions of Greystone Servicing in dealing with the HUD application were influenced and possibly dictated by the financial interests of the affiliated Greystone CDE in assuring repayment on the bridge loan. Id. at ¶92. The Counterclaim alleges that the activities of *both* Greystone entities, acting as one, during the months of August and September 2007 caused the Oliphant Parties to lose the project.

Specifically, the Greystone entities—to assure the underlying bridge loan was secure—in early August started looking at ways to oust the Oliphant Parties from the Project and surreptitiously began negotiating with David Henry, an Arkansas developer. Id. at ¶¶95, 98. To this end, Greystone Servicing unilaterally withdrew the Oliphant Parties' HUD application on August 9 (id. at ¶98), an event which caused the seller of the apartment building to temporarily terminate negotiations with Oliphant for further extensions of the close date for the purchase of the property. Id. at ¶99.

Two weeks later, on August 21, 2007, Greystone CDE sent Oliphant a letter declaring the bridge loan to be in default, citing as the event of default the expiration of the close date for the purchase and sale of the apartment building, without that date having been extended.[1] Id. at ¶¶100-101. The loan was not in financial default at the time (id. at ¶101), and the maturity date for repayment was not until December 2007. Greystone CDE's First Amended Complaint at ¶11, Exh. H.

One need go no further than the bridge loan default letter to see the problem of attempting to separate the actions of Greystone Servicing and its affiliate Greystone CDE during this period. That letter (Exh. I to Greystone CDE's First Amended Complaint), dated August 21, 2007, purports to declare a default on the Greystone CDE bridge loan. Yet it bears the letterhead of Greystone Servicing, the supposed fiduciary who was

---

[1]    Of course, it was Greystone's unilateral act of withdrawing the HUD application that had caused the difficulty in negotiating with the seller in the first place.

contractually obligated to assist the Oliphant Parties in obtaining HUD-insured financing for the Project.

Although Greystone Servicing's unilateral withdrawal of the HUD application had made negotiations with the seller of the apartment building difficult, Oliphant nonetheless was able to obtain another agreement to extend the close date. Answer and Counterclaim ¶103. Oliphant notified both Greystone entities of this development, and requested that the default notice be rescinded (id.), which Greystone CDE refused to do (id. at ¶104), instead sending notice of acceleration of the loan. Id at ¶105.

A month later Greystone Servicing circulated to financial institutions and to Oklahoma public entities a letter that wrongfully claimed Oliphant defaulted on the bridge loans, enclosing a copy of the New York lawsuit Greystone CDE had filed. Id at ¶¶106-108. Any hopes Oliphant had in moving forward with the Project had effectively been scuttled by this irresponsible behavior. Id. at ¶¶109-110.

The above allegations are not designed to allege an "alter ego" theory, as Greystone's moving papers assert. Rather, the claim is that the activities of **both** Greystone Defendants contributed to Plaintiffs' inability to complete the Project. It was not only the negligence of Greystone Servicing in the HUD application process that is at issue. Also at issue is the damage caused by (a) changing the terms of the bridge loan financing so the Oliphant Parties were unable to purchase the underlying property; (b) negotiating with a different developer with the intent of freezing the Oliphant Parties out of the Project; (c) wrongfully calling default on the bridge loan; and (d) wrongfully maligning Oliphant to others.

Trying to segregate the responsibility of the two Greystone entities for these activities is at this point premature. The relationship between the Greystone entities, their entangled financial interests, and their responsibility for the above activities is a matter of proof that will be subject to discovery.

**B.    Greystone Servicing Has Been Served With a Properly Issued Summons**

The second basis for Greystone's motion to dismiss is the assertion that Greystone Servicing has not been properly served with summons. This spurious claim is dealt with at length in the Oliphant Parties' Reply Brief in support of the transfer venue motion. Reply Br., at 7-9. For the Court's convenience, the argument is restated below.[2]

Demonstrative of Greystone's gamesmanship is its argument that service of the Summons and Counterclaim on Greystone Servicing was procedurally defective. The Counterclaim was served on an individual at Greystone's office who held herself out as agent of Greystone Servicing, and the Summons was served on the Secretary of State within the requisite time frame. As such, this court has jurisdiction over Greystone Servicing and over the counterclaims asserted against it; Greystone's argument is moot and must fail as such.

**1.    A Summons Was Properly Issued by the Clerk of Court**

Fed. R. Civ. P. Rule 4 (a) provides that "[t]he summons shall be signed by the clerk, bear the seal of the court, identify the court and the parties, be directed to the defendant, and state the name and address of the plaintiff's attorney or, if unrepresented, of the plaintiff." In this case, the Clerk of the Court properly issued a Summons to Greystone Servicing on March 5, 2008; (i) the Summons identified the Court and the parties, (ii) was directed to Greystone Servicing Corporation, Inc. at its place of business within the judicial district, (iii) identified Defendants-Counterclaimants' attorney, and (iv) stated the time for answering the Counterclaim.

---

[2]    All references to Exhibits are to the exhibits attached to the Declaration of Donald David submitted with the transfer-venue reply brief.

**2. Mr. Harnik Refused to Accept Service of the Summons On Behalf of Greystone Servicing**

On multiple occasions, by telephone call, email, and letter, counsel for the Oliphant Parties asked Mr. Harnik if he was authorized to accept service on behalf of Greystone Servicing. This request seems more than reasonable in light of Mr. Harnik's representations to this Court on February 25, 2008 that this Court should allow him to attend the proposed settlement conference *on behalf of both* Greystone CDE and Greystone Servicing. *See* Exh. "B" to David Decl. Mr. Harnik instead refused to accept multiple overtures from the Oliphant Parties' counsel to accept service. *See* David Decl., Exhs. "C" (March 3, 2008 email request from Jeremy A. Shure, Esq. to Stephen Harnik, to which there was no response); and "D" (March 6, 2008 Letter from Brian A. Bloom, Esq. to Stephen Harnik, to which there was no response).

**3. The Summons was Properly Served on an Individual Who Represented Herself as Authorized by Greystone Servicing to Accept Service**

Due to Mr. Harnik's outright refusal to accept service on behalf of Greystone Servicing, the Oliphant Parties secured a licensed process server to serve the Summons and Counterclaim on Greystone Servicing.[3] As is attested to in the sworn statement of service (under penalty of perjury) of Julius Thompson,[4] a licensed process server, Mr. Thompson traveled to 152 West 57th Street, New York, New York to the offices of Greystone Servicing with the intention of serving that entity with the Summons and Counterclaim. Upon his arrival to the building, Mr. Thompson was not allowed to proceed past lobby security. Ms. Christina Farina, an individual who represented that she was authorized to accept service on behalf of Greystone Servicing, came down to the

---

[3] The Summons was served on Greystone Servicing at Greystone's New York Office. According to Mr. Harnik's letter to this Court on February 25, 2008, "[T]his action, as well as the California action, is being supervised and directed by Greystone's New York office to which its CA counsel and I regularly report."

[4] *See* Exh. "E" to the David Decl. (Returned Summons In A Civil Case, dated March 5, 2008, returned to the Clerk of Court and filed on March 12, 2008.)

lobby and accepted the papers. Mr. Thompson's belief that Ms. Farina was authorized pursuant to her representation was reasonable. <u>Fashion Page v. Zurich Ins.</u>, 50 N.Y.2d 265 (N.Y. 1980).[5, 6]

### 4. The Summons has Also Been Served on the New York State Secretary of State, who has Been Designated as Greystone Servicing's Registered Agent

An additional Summons and Counterclaim was served on the New York Secretary of State to insure that service was completed within the timeframe permitted by Fed. R. Civ. P. Rule 4(m). Service on the New York Secretary of State was completed on March 20, 2008. <u>See</u>, Affidavit of Service of Daniel Miller dated March 21, 2008, annexed as Exh. "F" to the David Decl. Fed. R. Civ. P. Rule 4(m) provides for one hundred and twenty (120) days for a plaintiff/claimant to serve a summons on a defendant/counterclaim defendant. Here, the Oliphant Parties have served Greystone Servicing with the Summons and Counterclaim within the requisite time period. As such, this court has jurisdiction over Greystone Servicing and over the counterclaims asserted against Greystone (including Greystone Servicing).

---

[5]     "[W]hen the corporation is regularly doing business in the state, it generally cannot be heard to complain that the summons was delivered to the wrong person when the process server has gone to its offices, made proper inquiry of the defendant's own employees, and delivered the summons according to their directions." <u>Fashion</u>, 50 N.Y.2d at 273.

[6]     <u>Old Republic Ins. v. Pacific Financial Serv.</u>, 301 F.3d 54, 57 (2d Cir. 2002) ("As long as the process server's reliance on corporate personnel is reasonable, the defendant may not later complain that it lacked notice even if the complaint was mistakenly delivered to a person who was not authorized to accept service."); <u>Tadco Constr. Corp. v. Peri Framework Sys., Inc.</u>, 460 F. Supp. 2d 408, 412 (E.D.N.Y. 2006) ("Courts within the Second Circuit have adopted this broadening approach."); <u>M'baye v. World Boxing Ass'n</u>, 429 F. Supp. 2d 652, 659 (S.D.N.Y. 2006) (citing <u>Fashion</u> with approval); <u>Garcia v. Maersk, Inc.</u>, 2005 WL 1492380, *2 (E.D.N.Y. 2005) (citing <u>Fashion</u> with approval and stating, "In tendering service, a process server may rely upon a corporation's employees to identify individuals authorized to accept service.").

**C.    The Oliphant Parties Were Not Required To Seek Leave To File The
        Counterclaim Against Greystone Servicing**

Greystone's final basis for the motion to dismiss is the argument that the Oliphant

Parties did not obtain leave of court to file the Counterclaim against Greystone Servicing.

This claim is also dealt with in the Oliphant Parties' Reply Brief (Reply Br., at 9-10), and

that argument is restated below.

Greystone cites no authority to support its proposition that leave of court is

required for the addition of defendants on a counterclaim, and we know of none. There is

no rule, either Federal or Local, *requiring* that a party seek leave of the court to join a

previous non-party as a counterclaim defendant.  Further, Greystone cannot cite to a

single case in this District to support its proposition a defendant *must* seek leave of the

court to join a previous non-party as a counterclaim defendant. See Texwood Ltd. v.

Gerber, 1985 WL 196, *2 (S.D.N.Y. 1985) (stating that "the additional counterclaim

defendants cite no authority supporting the proposition that leave of court is required for

the addition of defendants on a counterclaim, ***and we know of none***.") (emphasis

supplied).

Greystone's assertion that Rule 13(h) does not apply in the current circumstances

under Rules 19 and 20 cannot be anything further than the truth.  See Opposition at 8.

Fed. R. Civ. P. Rule 13(h) provides that "[p]ersons other than those made parties to the

original action may be made parties to a counterclaim or cross-claim in accordance with

the provisions of Rules 19 and 20." *Neither Rule 19 nor Rule 20 requires advance leave

of Court for joinder of parties.*  Moore correctly states that because "a plaintiff in his

original complaint does not require leave of court to name additional parties, it may be

implied that the committee intended that leave of court is not necessary [to do so by

counterclaim]." 3 Moore's Federal Practice ¶13.39, at 13-239 n.27 (2d ed. 1984).[7]

---

[7]    In his treatise, Professor Moore makes the following observation and argument: "[u]nder
the 1966 revision of Rule 13(h), it is not clear whether leave of the court must be obtained before a
defendant can bring in new parties as additional defendants to a counterclaim. Former Rule 13(h) inferred

This Court is respectfully referred to <u>Northfield Ins.e Co. v. Bender Shipbuilding</u> <u>& Repair Co.</u>, 122 F.R.D. 30 (S.D. Ala. 1988), a case on all-which held that leave of court is not required to join a previous nonparty as a counterclaim defendant. The two cases cited by Greystone, both of which pre-date and are distinguished by <u>Northfield</u>, do not stand for a different proposition. The <u>Mountain States Sports Inc. v. Sharman</u> court did not hold that the Federal Rules of Civil Procedure *require* a motion for leave to join; rather, the court merely noted that "the *general practice* apparently continues to contemplate an order. 353 F. Supp. 613, 618 (D. Utah 1972). The question for the Court is not to determine the *general practice*, but rather whether the rules *require* such a motion. See <u>Northfield</u>, 122 F.R.D. at 32. Similarly, in <u>A.L. Williams & Assoc., Inc. v</u> <u>D.R. Richardson & Assoc.</u>, the court simply cited <u>Mountain States Sports</u> and the cases cited by <u>Mountain States Sports</u>, and without discussion dismissed two would-be counterclaim defendants. 98 F.R.D. 748 (N.D. Ga. 1983); <u>see also Northfield</u>, 122 F.R.D. at 32-33. Greystone's attempt to hold the Oliphant Parties to a non-existent rule or precedent is simply to no avail.

### III.
### PLAINTIFF'S SUMMARY JUDGMENT MOTION IS WHOLLY UNSUPPORTED BY EVIDENCE AND IS FRIVOLOUS

#### A.    Greystone Has No Evidence To Support Its Motion

Greystone CDE purports to make a motion for summary judgment on Counts II and III of the First Amended Complaint. The sole evidentiary basis for the motion, however, is a document entitled "L.C.R. 56.1 "Statement of Material Facts as to Which There Are No Genuine Issues To Be Tried." That document cites to no evidence whatsoever, instead simply reciting verbatim two dozen paragraphs of Greystone CDE's

---

that such leave was necessary since it stated 'the court shall order them to be brought in...' However, this language was omitted in favor of the present provision that 'persons . . . may be made parties . . . in accordance with provisions of Rules 19 and 20.' Good arguments can, therefore, be advanced that leave of court is no longer necessary if the new parties are being brought in on a counterclaim which is raised in the original answer." 3 J. Moore, Moore's Federal Practice, 13.39 (2d ed. 1987).

Complaint.  See Oliphant Parties' Objection to Plaintiff's L.C.R. Statement of Material

Facts.  It is not a substitute for proof, and it must be disregarded in its entirety

The Local Rules for the Southern District of New York require "[e]ach statement

by the movant . . . must be followed by citation to evidence which would be admissible,

set forth as required by Federal Rule of Civil Procedure 56(e)."  Loc. R. 56.1(d).  As

stated by the Local Rule, the party seeking summary judgment must not only state those

facts which it asserts are undisputed, it also must support the validity of such facts by

reference to admissible evidence.  In Holtz v. Rockefeller & Co., Inc., 258 F.3d 62 (2nd

Cir. 2001), the Second Circuit reiterates that the 56.1 statement must be supported by and

point to admissible evidence.  The Court states:

> Allowing a Local Rule 56.1 statement to substitute for the
> admissibility requirement set forth in Fed.R.Civ.P. 56(e)
> "would be tantamount to the tail wagging the dog." . . .
> The local rule does not absolve the party seeking summary
> judgment of the burden of showing that it is entitled to
> judgment as a matter of law, and a Local Rule 56.1
> statement is not itself a vehicle for making factual
> assertions that are otherwise unsupported in the record.
> Where, as here, the record does not support the assertions
> in a Local Rule 56.1 statement, those assertions should be
> disregarded and the record reviewed independently.

Id. at 74 (internal citations omitted).

Holtz has been cited with approval more than five-hundred times.  See Fed. Trade

Comm'n v. Med. Billers Network, 2008 WL 857663, *11 (S.D.N.Y. March 31, 2008)

("allegations are not 'deemed true simply by virtue of their assertion in [the] Local Rule

56.1 statement.' . . . If the FTC's allegations are not accompanied by citation to

admissible evidence or if the cited evidence does not support the allegation, the Court is

free to disregard them.")(internal citations omitted); Liles v. New York City Dep't Of

Educ., 516 F.Supp.2d 297, 308 (S.D.N.Y. 2007) (same); Afl Fresh & Frozen Fruits &

Veg. v. De-Mar Food Serv., 2007 WL 4302514, *5 (S.D.N.Y. Dec. 7, 2007) ("Of course,

[movants]'s statements of material fact cannot be accepted unless they too are supported by admissible evidence."); <u>Giannullo v. City of New York</u>, 322 F.3d 139, 140 (2d Cir. 2003) (same).

Greystone has failed to cite to **any** evidence, much less *admissible* evidence.

**B.**    <u>A Triable Issue Exists as to Whether the Underlying Loan Was in Default</u>

To prevail on a loan guarantee, the moving party must establish that the underlying loan that was guaranteed was in fact in default. But that is at issue here.

Greystone CDE extended Santa Fe Pointe, LLC a $500,000 bridge loan in December 2006. That loan, however, did not mature until December 2007. Complaint ¶19. The loan was never in financial default, yet Greystone nevertheless called a loan default in August 2007 (Complaint ¶20), filed this lawsuit in September 2007, and shortly thereafter notified all interested financial institutions of both the alleged default and of the lawsuit, rendering it impossible for the Oliphant Parties to move forward with the Project. Answer and Counterclaim ¶¶ 106-110. All of this occurred *before the underlying loan was even to come due.*

Simply making the bald allegation that "the loan was in default and not cured," is not proof. Greystone presents no evidence to support this allegation, and indeed does not state what the supposed event of default was. The Oliphant Parties contend that the default asserted by Greystone in August 2007 was that the close date for the purchase and sale of the Apartment Building had passed, without that date having been extended. Answer and Counterclaim at ¶101. But the Oliphant Parties were able to obtain such an extension (<u>id</u>. at ¶103); thus the bridge loan was not in default, and the acceleration of the loan was premature and pretextual—driven by the Greystone entities' desire to eliminate the Oliphant Parties from the Project and to deal with another developer. <u>Id</u>. at ¶¶98-105.

"The initial burden rests on the moving party to demonstrate that there exists no genuine issue of material fact and that it is entitled to judgment as a matter of law."

Nationwide Life Ins. Co. v. Hearst/ABC-Viacom Entm't Serv., 1996 WL 263008, 5 (S.D.N.Y. 1996) (Patterson, J.), citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).   Greystone has not only failed to offer any evidence to support any of the elements of its claims, it does nothing to address the contested issues raised by the Oliphant Parties.

### C.    Greystone's Statement that All Defenses Have Been Waived Is Unsupported

Greystone baldly states "each Guarantor irrevocably waived any and all defenses he or it had, has or may have." Greystone Br. at 11, 12. Greystone cites to no document, no evidence, and no authority for such an absurd proposition.  It, like the rest of Greystone's summary judgment motion, is wholly unsupported and must be ignored.

## IV.
## <u>CONCLUSION</u>

Greystone's motions should be denied.  The motion to dismiss the Counterclaim mistakenly assumes the Oliphant Parties are proceeding on an alter ego theory.  They are not, and they have adequately pleaded joint action by the Greystone entities.  The motion for summary judgment motion on the Complaint is wholly unsupported by any evidence and is frivolous.

Dated:    New York, New York
          April 22, 2008

                                   Respectfully submitted,

                                   **AKERMAN SENTERFITT LLP**

                                   By: _____
                                       Donald N. David (DD 5222)
                                       Brian A. Bloom (BB  5722)
                                       Jeremy Shure (JS 0490)

                                       335 Madison Avenue, Suite 2600
                                       New York, New York 10017
                                       <u>Telephone</u>: (212) 880-3800
                                       <u>Facsimile</u>:  (212) 880-8965

                                   *Attorneys for Defendants-Counterclaimants*

{NY030360;2}                            13