# COMPENDIUM OF UNREPORTED CASES

AS CITED IN DEFENDANT/COUNTERCLAIMANT'S
MEMORANDUM OF LAW IN OPPOSITION TO GREYSTONE'S MTION FOR
SUMMARY JUDGMENT AND TO DISMISS COUNTERCLAIMS

PART 1 OF 4

Westlaw.

Slip Copy                                                                                                    Page 1
Slip Copy, 2007 WL 4302514 (S.D.N.Y.), 2007-2 Trade Cases P 75,974
**(Cite as: Slip Copy, 2007 WL 4302514)**

C
AFL Fresh & Frozen Fruits & Vegetables, Inc. v.
De-Mar Food Services Inc.
S.D.N.Y.,2007.

United States District Court,S.D. New York.
AFL FRESH & FROZEN FRUITS & VEGET-
ABLES, INC., Plaintiff,
v.
DE-MAR FOOD SERVICES INC., a/k/a De-Mar
Food Service Inc., a/k/a Demar Food Service and
Spero Mentonis, Defendants.
No. 06 Civ. 2142(GEL).

Dec. 7, 2007.

Stephen Starr and Vildan Starr, Starr & Starr,
PLLC, New York, NY, for plaintiff.
Sam Della Fera, Jr., Trenk, DiPasquale, Webster,
Della Fera & Sodono, P.C., West Orange, NJ, for
defendant.

**OPINION AND ORDER**

GERARD E. LYNCH, District Judge.
*1 AFL Fresh & Frozen Fruits & Vegetables, Inc.
("AFL"), is engaged in the business of buying and
selling wholesale quantities of perishable agricul-
tural commodities. De-Mar Food Services Inc.
("De-Mar"), is a former customer of AFL, against
whom AFL has brought suit for nonpayment of pro-
duce allegedly bought from AFL. AFL has moved
for summary judgment against De-Mar and Spero
Mentonis, an officer and director of De-Mar, con-
tending that, under the Perishable Agricultural
Commodities Act, 7 U.S.C. §§ 499a-499q
("PACA"), both are liable for nonpayment of the
goods delivered by AFL to De-Mar. AFL contends
that De-Mar is also liable for breach of contract and
an account stated, and seeks prejudgment interest
and attorney's fees against both defendants.

For the following reasons, summary judgment will
be denied as to AFL's PACA claims against defend-
ants, and granted as to its breach of contract, ac-

count stated, attorneys' fees, and prejudgment in-
terest claims against De-Mar.

**BACKGROUND**

From October 2002 to January 2003, AFL alleges
that De-Mar purchased fruits and vegetables from it
totaling $62,827, for which it was never paid. (P.
Memo 2.) In support, AFL submits 35 invoices de-
tailing the contents of deliveries allegedly from
AFL to De-Mar. (Declaration of Ronald A. Mac-
Donald in Support of Motion for Summary Judg-
ment, dated September 20, 2007 ("MacDonald De-
claration"), ¶ 9, Ex. 2.) Each delivery, AFL alleges,
was signed by an authorized agent of De-Mar on
the date of the delivery. (Rule 56.1 Statement, ¶ 4,
citing MacDonald Declaration, ¶ 10, Ex. 2.) In
early 2003, AFL alleges that it issued, and De-Mar
received, an account statement summarizing the in-
voices reflecting the past deliveries to De-Mar
totaling $62,827. (MacDonald Declaration, ¶¶ 11,
12, 14, Ex. B.) AFL further alleges that Spero
Mentonis is and was an officer and director of De-
Mar Food, and was in a position of control of the
alleged trust assets. (Rule 56.1 Statement, ¶¶ 12, 13.)

**DISCUSSION**

1. *Legal Standards*

A. *Summary Judgment*

Summary judgment is appropriate where the
"pleadings, the discovery and disclosure materials
on file, and any affidavits show that there is no
genuine issue as to any material fact and that the
moving party is entitled to a judgment as a matter
of law."Fed.R.Civ.P. 56(c).Rule 56"mandates the
entry of summary judgment, after adequate time for
discovery and upon motion, against a party who

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 4302514 (S.D.N.Y.), 2007-2 Trade Cases P 75,974
(Cite as: Slip Copy, 2007 WL 4302514)

fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."*Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). The party moving for summary judgment bears the initial burden of explaining the basis for its motion and identifying those portions of the record which it believes "demonstrate the absence of a genuine issue of material fact."*Id.* at 323.The burden then shifts to the nonmovant to produce evidence sufficient to create a genuine issue of material fact for trial. Fed.R.Civ.P. 56(e)(2) (When a summary judgment motion is "properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must-by affidavits or as otherwise provided in [Rule 56]-set out specific facts showing a genuine issue for trial."); *Matsushita v . Zenith R adio Corp.,* 4 75 U.S. 574, 586 (1986) ("When the moving party has carried its burden under [Rule 56], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."). The Court's responsibility is to determine if there is a genuine issue to be tried, and not to resolve disputed issues of fact. *See Anderson v.. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). The Court must draw all reasonable inferences and resolve all ambiguities in the nonmovant's favor, and construe the facts in the light most favorable to the nonmovant. *Id.* at 255 ("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."). However, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient" to withstand a motion for summary judgment. *Id.* at 252.

### B. *Supplemental Jurisdiction*

***2** Federal courts have original jurisdiction over questions of federal law. 28 U.S.C. § 1331. District courts also have supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."28 U.S.C. § 1367(a)."A state law claim forms part of the same controversy if it and the federal claim 'derive from a common nucleus of operative fact.' " *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.,* 373 F.3d 296, 308 (2d Cir.2004), quoting *Cicio v. Does,* 321 F.3d 83, 97 (2d Cir.2003), quoting *City of Chicago v. Int'l Coll. of Surgeons,* 522 U.S. 156, 165 (1997), quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 725 (1966).[FN1]

> FN1. Federal courts also have original jurisdiction over questions of state law when the dispute is between citizens of different states where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). The complaint seeks damages in excess of $75,000 and the states that AFL is a New York corporation and De-Mar is a New Jersey corporation. (Compl.¶¶ 4, 5, 6, 30.) However, the complaint does not establish Mentonis's citizenship or De-Mar's principal place of business. A corporation is a citizen both of the state where it is incorporated and the state where it has its principle place of business. 28 U.S.C. § 1332(c)(1). AFL therefore has not met its burden of demonstrating complete diversity between itself and the defendants. *Willis v. Westin Hotel Co.,* 651 F.Supp. 598, 601 (S.D.N.Y.1986) (The party "seeking to invoke this court's subject matter jurisdiction under 28 U.S.C. Section 1332" has the "burden of proving that complete diversity of citizenship exists between the parties" which is "a state of affairs where all plaintiffs are citizens of different states from all defendants.") (citations omitted). Therefore, for purposes of this motion, jurisdiction over AFL's state-law claims must be predicated on supplemental jurisdiction.

### C. *PACA*

PACA was enacted in 1930 to regulate the inter-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 4302514 (S.D.N.Y.), 2007-2 Trade Cases P 75,974
**(Cite as: Slip Copy, 2007 WL 4302514)**

Page 3

state sale and marketing of perishable agricultural commodities. *Coosemans Specialties, Inc. v. Gargiulo,* 485 F.3d 701, 705 (2d Cir.2007). The statute "provides growers and sellers of agricultural products with 'a self-help tool enabling them to protect themselves against the abnormal risk of losses resulting from slow-pay and no-pay practices by buyers or receivers of fruits and vegetables.' " *Id* ., quoting *D.M. Rothman & Co. v. Korea Commercial Bank of N.Y.,* 411 F.3d 90, 93 (2d Cir.2005). Under PACA, "perishable commodities or proceeds from the sale of those commodities are held in trust by the buyer for the benefit of the unpaid seller until full payment is made." *Coosemans Specialties,* 485 F.3d at 705. The statute provides, inter alia, that

Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents.

7 U.S.C. § 499e(c)(2). PACA "affords produce sellers a 'highly unusual trust beneficiary status that permits them, in the case of defaults, to trump the buyers' other creditors, including secured ones.' " *Coosemans Specialties,* 485 F.3d at 705, quoting *Am. Banana Co. v. Republic Nat'l Bank of N.Y.,* 362 F.3d 33, 38 (2d Cir.2004).

Perishable agricultural commodities governed by PACA include "[f]resh fruits and fresh vegetables of every kind and character."7 U.S.C. § 499a(b)(4)(A). Generally speaking, a PACA dealer is a person "engaged in the business of buying or selling [covered agricultural commodities] in wholesale or jobbing quantities ... in interstate or foreign commerce."7 U.S.C. § 499a(b)(6). Whole-

sale or jobbing quantities are "aggregate quantities of all types of produce totaling one ton (2,000 pounds) or more in weight in any day shipped, received, or contracted to be shipped or received."7 C.F.R. § 46.2. There are three exceptions to the general rule that a person who engages in wholesale or jobbing quantities in interstate commerce is a PACA dealer. *See*7 U.S.C. §§ 499a(b)(6)(A)-(C). The exception potentially relevant here provides that a person who deals in wholesale or jobbing quantities "solely for sale at retail" shall not be considered a dealer until "the cost of his purchases of perishable agricultural commodities in any calendar year are in excess of § 230,000,"7 U.S.C. § 499a(b)(6)(B), or unless he "elect[s] to secure a license under the provisions of section 499c of this title, and in such case and while the license is in effect such person shall be considered as a 'dealer.' " 7 U.S.C. § 499a(b)(6).[FN2]

> FN2. PACA requires that a person must have a "valid and effective [license]" when they "carry on the business of a ... dealer."7 U.S.C. § 499c(a). Any person who operates as a dealer without a licence is subject to a civil penalty of up to $1,000. *Id.* Therefore, any person who is defined as a dealer and does not meet one of the exceptions as provided by clauses (A), (B), and (C) of 7 U.S.C. § 499(b)(6) *must* have a PACA license, and any person who meets the general definition of a PACA dealer but who also meets one of the exceptions as provided by clauses (A), (B), and (C) of 7 U.S.C. § 499(b)(6) *may* have a PACA license.

**\*3** Dealers for PACA purposes may be corporate entities, and where individual officers and shareholders of such entities are "in a position to control the assets of the PACA trust and fail[ ] to preserve them, [such officers and shareholders] may be held personally liable to the trust beneficiaries for breach of fiduciary duty."*Coosemans Specialties,* 485 F.3d at 705 (citations omitted).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2007 WL 4302514 (S.D.N.Y.), 2007-2 Trade Cases P 75,974

**(Cite as: Slip Copy, 2007 WL 4302514)**

Page 4

## D. *Breach of Contract*

Under New York law, " 'an action for breach of contract requires proof of (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages.' " *First Investors Corp. v. Liberty Mut. Ins. Co.,* 152 F.3d 162, 168 (2d Cir.1998), quoting *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525 (2d Cir.1994); *see also Startech, Inc. v. VSA Arts,* 126 F.Supp.2d 234, 236 (S.D.N.Y.2000).

Normally, a contract for the sale of $500 or more of goods "is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker."N.Y. UCC § 2-201(1). However, if the contract is "between merchants," an oral contract will be enforceable against a party who receives "within a reasonable time a writing in confirmation of the contract and sufficient against the sender ... [where] the party receiving it has reason to know its contents," unless that party provides "written notice of objection [to the sender] ... within ten days after [the writing] is received."N.Y. UCC § 2-201(2).

For purposes of New York's Commercial Code, a merchant is a person "who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction."N.Y. UCC § 2-104(1). A transaction "between merchants" is "any transaction with respect to which both parties are chargeable with the knowledge or skill of merchants."N.Y. UCC § 2-104(3).

## E. *Liability for an Account Stated*

An account stated is " 'an agreement between parties to an account based upon prior transactions between them with respect to the correctness of the account items and balance due.' " *Ryan Graphics,*

*Inc. v. Bailin,* 833 N.Y.S.2d 448, 449 (1st Dept.2007), quoting *Jim-Mar Corp. v. Aquatic Const.,* 600 N.Y.S.2d 790, 791 (3d Dept.1993). Under New York and federal law "an agreement to pay an indebtedness may be implied if a party receiving a statement of account keeps it without objecting to it within a reasonable amount of time unless fraud, mistake or other equitable considerations are shown." *Lankler Siffert & Wohl, LLP v. Rossi,* 287 F.Supp.2d 398, 407 (S.D.N.Y.2003), quoting *Kramer, Levin, Nessen, Kamin & Frankel v. Aronoff,* 638 F.Supp. 714, 719 (S.D.N.Y.1986).[FN3]

> FN3.*See also Federal Exp. Corp. v. Federal Jeans, Inc.,* 788 N.Y . S.2d 113, 113 (1st Dept.2005) ("Defendant received plaintiff's invoices for services rendered, and retained them without properly objecting in a reasonable amount of time. Failure to pay those invoices entitled plaintiff to judgment on an account stated."); *Morrison Cohen Singer & Weinstein, LLP v. Waters,* 786 N.Y.S.2d 155, 156 (1st Dept.2004) ("[P]laintiff's invoices were retained without any objection for a sufficient length of time as a matter of law to establish defendant's liability on the account stated cause of action."); *Werner v. Nelkin,* 614 N.Y.S.2d 66, 66 (2d Dept.1994) ("The defendant's receipt and retention of the plaintiff's invoices without objection within a reasonable period of time, gave rise to an actionable account stated entitling the plaintiff to summary judgment in his favor" and defendant's "bald conclusory allegations in opposition were insufficient to defeat a motion for summary judgment.") (citations omitted); *Jim-Mar Corp.,* 600 N.Y .S.2d at 792 (Defendant "impliedly agreed to pay the amount due as reflected in plaintiff's invoice when defendant received and retained it without rejecting it or objecting to it within a reasonable period of time" and defendant's "[s]ilence is deemed acquies-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy    Page 5
Slip Copy, 2007 WL 4302514 (S.D.N.Y.), 2007-2 Trade Cases P 75,974
**(Cite as: Slip Copy, 2007 WL 4302514)**

cence and warrants enforcement of the implied agreement to pay.") (citations and internal quotation marks omitted); *Rosenman Colin Freund Lewis & Cohen v. Neuman,* 461 N.Y.S.2d 297, 298-99 (1st Dept.1983) ("Even if defendant had received plaintiff's accounts and did not expressly assent, but failed to object to them within a reasonable time, he would be bound by them as accounts stated unless fraud, mistake or other equitable considerations were shown.") (citations omitted); *Lockwood v. Thorne,* 18 N.Y. 285 (1858).

To establish a claim for an account stated, the plaintiff must put forth proof that defendant received the bill. *Morrison Cohen Singer & Weinstein, LLP v. Brophy,* 798 N.Y.S.2d 379, 380 (1st Dept.2005).

## II. *Legal Standards Applied*

### A. *Jurisdiction*

**\*4** This Court has original jurisdiction over AFL's PACA claim, because it is a claim arising under federal law. The Court also has supplemental jurisdiction over the state law breach of contract and account stated claims, because they share with the federal claim the same common nucleus of operative fact. Central to all of AFL's claims against De-Mar and Mentonis are the circumstances that gave rise to the alleged delivery of produce by AFL to De-Mar and nonpayment for that produce.

### B. *Summary Judgment Preliminaries and Rule 56.1 Statement*

In support of its motion and as required by Local Rule 56.1, AFL submitted a statement of the material facts as to which there is no genuine issue to be tried, along with "citation to evidence which would be admissible, set forth as required by Federal Rule of Civil Procedure 56(e)." SDNY Local Rule 56.1(a), (d). In contrast, defendants's Rule 56.1

counterstatement does not include citation to any evidence in the record, let alone evidence that would be admissible, as required by Local Rule 56.1(d). Many of defendants' counterstatements follow one of these variations: (i) "Denied. There is no evidence in the record" regarding plaintiff's corresponding statement of fact (*see, e.g.,* Counterstatement, ¶ 6), (ii) "Denied. There is insufficient evidence in the record to support this legal conclusion" (*see, e.g.,* Counterstatement, ¶ 13), or (iii) "Defendants are without sufficient knowledge or information to admit or deny the statement in this paragraph, and therefore leave Plaintiff to its proofs" (*see, e.g.,* Counterstatement, ¶ 10).

Defendants' unsupported denials, without more, cannot create disputes of material fact. *See* Fed.R.Civ.P. 56(e) (When a summary judgment motion is "made and supported by this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading" but must "by affidavits or as otherwise provided ... set forth specific facts showing that there is a genuine issue for trial."); *U.S. Info. Sys., Inc. v. Int'l Broth. of Elec. Workers Local Union No. 3,* No. 00 Civ. 4763, 2006 WL 2136249, at \*4 (S.D.N.Y. Aug. 1, 2006) ("To the extent the [nonmovant] proclaim[s] factual assertions to be in dispute without identifying evidence in the record, the [nonmovant] thwart[s] the basic purpose of [Local Rule 56.1]."); *id.* (A tactic where the nonmovant "dispute[s] the factual assertions in the [moving party's] corresponding paragraphs with objections alone" and fails to cite evidence "directly violates" Rule 56.1.). A nonmovant cannot "raise a material issue of fact by denying statements which the moving party contends are undisputed for lack of 'knowledge and information' " in part because "discovery allows the party opposing summary judgment to obtain the facts necessary to determine whether it must admit or deny them." *Stepheny v. Brooklyn Hebrew School for Special Children,* 356 F.Supp.2d 248, 255 n.4 (E.D.N.Y.2005) (applying EDNY Local Rule 56.1, which is identical to SDNY Local Rule 56.1). Discovery closed more than a year ago in this

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 4302514 (S.D.N.Y.), 2007-2 Trade Cases P 75,974
**(Cite as: Slip Copy, 2007 WL 4302514)**

Page 6

case. Moreover, most of defendants' statements that they are "without sufficient knowledge or information to admit or deny" AFL's statements are patently incredible, as they have to do with issues precisely within defendants' knowledge, such as whether De-Mar received AFL's statement of accounts due (Counterstatement, ¶ 15), whether De-Mar objected or protested the statement of accounts due (Counterstatement, ¶ 16), and whether De-Mar purchased perishable agricultural commodities in excess of $230,000 in calendar year 2002 or 2003 (Counterstatement, ¶ 10).

*5 The movant's statement of material facts "will be deemed to be admitted for the purposes of the motion *unless specifically controverted* by a correspondingly numbered paragraph" in the opposing party's Rule 56.1 statement and "followed by citation to evidence." Rule 56.1(c), (d) (italics modified); *see also JSC Foreign Economic Ass'n Technostroyexport v. Int'l Dev. & Trade Servs ., Inc.,* 386 F.Supp.2d 461, 467 n.3 (S.D.N.Y.2005) (Where the nonmovant "cannot take a position on whether to dispute" a statement of the movant, that statement "will be deemed admitted ... unless specifically controverted.").

Of course, AFL's statements of material fact cannot be accepted unless they too are supported by admissible evidence. *See*Fed.R.Civ.P. 56(e) (A summary judgment motion must be "made and supported" before the opposing party "must-by affidavits or as otherwise provided ...-set out specific facts showing a genuine issue for trial."); *Giannullo v. City of New York,* 322 F.3d 139, 142 (2d Cir.2003) (unsupported facts in moving party's Local Rule 56.1 statement disregarded); *Holtz v. Rockefeller & Co., Inc.,* 258 F.3d 62, 74 (2d Cir.2001) (Local Rule 56.1 "does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law, and a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record."); *accord Wojcik v. 42nd Street Development Project,* 386 F.Supp.2d 442, 448

(S.D.N.Y.2005).

However, if AFL's allegations are supported by sufficient evidence in the record, because none were specifically contradicted by De-Mar, they will be deemed admitted for the purposes of this motion. *See Wojcik,* 386 F.Supp.2d at 448 ("[A]ny fact alleged in defendants' Rule 56.1 statement, supported in fact by the record, and not specifically and expressly contradicted by properly supported allegations in [an affidavit submitted by nonmovant], will be deemed admitted by plaintiff."); *Folkes v. N.Y. Coll. of Osteopathic Med. of N.Y. Inst. of Tech.,* 214 F.Supp.2d 273, 281 (E.D.N.Y.2002) (Movant's statements of material facts are deemed admitted where nonmovant failed to controvert material facts set forth therein.); *U.S. Info. Sys.,* 2006 WL 2136249, at *3 ("A non-moving party cannot create a factual dispute merely by denying a movant party's factual statement; rather, the non-moving party must identify controverting evidence for the court."), citing *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas,* No. 04 Civ. 10014, 2006 WL 1493132, at *5 (S.D.N.Y. May 31, 2006), *Blackmon v. Unite!,* No. 03 Civ. 9214, 2005 WL 2038482, at *2 (S.D.N.Y. Aug. 25, 2005); and *Chimarev v. TD Waterhouse Investor Servs., Inc.,* 280 F.Supp.2d 208, 223 (S.D.N.Y.2003).

*C. Breach of Contract*

Under penalty of perjury, the president of AFL attests that De-Mar placed telephone orders for the purchase of certain produce. (MacDonald Declaration, ¶ 13.) On at least thirty-five separate occasions, AFL delivered produce to De-Mar, and has submitted delivery tickets purportedly signed by agents of De-Mar food acknowledging those deliveries. (*Id.* at ¶ 7, Ex. 1.) AFL has produced substantial documentary evidence of their business records detailing their delivery tickets, invoices, and account statements. (*Id.* at ¶ 8, Ex. 1.).

*6 AFL submits uncontradicted evidence sufficient to demonstrate the formation of a contract (or series

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                      Page 7
Slip Copy, 2007 WL 4302514 (S.D.N.Y.), 2007-2 Trade Cases P 75,974
**(Cite as: Slip Copy, 2007 WL 4302514)**

of contracts) for the sale of produce to De-Mar, and that pursuant to that contract AFL delivered produce to De-Mar and authorized agents of De-Mar signed or otherwise verified the delivery tickets on the days the produce was delivered. AFL issued invoices to De-Mar following delivery of the produce. (MacDonald Declaration, ¶ 9.) Moreover, the record of deliveries to De-Mar demonstrates that De-Mar, like AFL, is a merchant for the purposes of New York's Uniform Commercial Code. Therefore, an oral contract for the delivery and purchase of produce is binding against De-Mar where De-Mar received invoices from AFL, another merchant, following the delivery of tens of thousands of dollars worth of produce and failed to object to the deliveries or invoices, such as was the case here.

To contest AFL's substantial documentary evidence, De-Mar could easily have submitted an affidavit by Spero Mentosis, or another employee of De-Mar, affirming under penalty of perjury that De-Mar never received the produce, that delivery of the produce was refused, that when De-Mar received the invoices it protested the amount stated on the invoice, or that some other factual circumstance prevented the formation of a contract between the parties. However, De-Mar has done none of these things, and it has not provided any evidence to rebut AFL's overwhelming evidence that De-Mar ordered and received produce from AFL and never paid for it.

Not only did De-Mar not provide evidence to contradict AFL's evidence, but also it did not even address AFL's breach of contract argument in its filings opposing summary judgment. AFL has provided substantial evidence, uncontradicted by De-Mar, that a contract was (or series of contracts were) formed between the parties, that AFL performed by delivering almost $63,000 of produce, that De-Mar has not paid for any of the produce since it was delivered in late 2002 to early 2003, and that AFL has been damaged as a result of this nonpayment.

### D. *Account Stated*

If for some reason the initial contract or set of contracts were not valid, any reasonable factfinder would be compelled to conclude that an account stated was created. An account stated is an "agreement, based on prior transactions between the parties, that the items of the account are true and that the balance previously arrived at is due and owing by the debtor to the creditor. When the account has thus been assented to, it becomes a new contract."29 Williston on Contracts, § 73:55 (4th ed.2003).

AFL submits sufficient evidence to demonstrate that around January 2003, and after delivering $63,000 of produce, it provided De-Mar with an account statement of the total outstanding amount due, and that De-Mar never protested or objected to the account statement. (MacDonald Declaration, ¶¶ 14-15.) Again, De-Mar produces no argument in its papers about AFL's account stated argument, and provides no admissible evidence, such as an affidavit, that calls into question AFL's evidence that De-Mar received the account statement and never objected to the amount stated. Any reasonable factfinder must conclude, based on this record, that an account stated was created for the full amount of the January 2003 statement.

### E. *PACA*

*7 AFL submits ample evidence that it delivered perishable fruits and vegetables to De-Mar, and defendants' bald assertions to the contrary do not create a triable issue of fact. However, the applicability of PACA as against a particular purchaser depends not only on whether the goods purchased were fruits and vegetables, but whether the purchaser was a "dealer" for the purposes of PACA.FN4To be considered a PACA dealer De-Mar must have met the statutory requirements outlined in § 499a(b)(6). As a threshold matter, De-Mar cannot be considered a PACA dealer unless it deals (or dealt) in "wholesale or jobbing quantities"

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 4302514 (S.D.N.Y.), 2007-2 Trade Cases P 75,974
**(Cite as: Slip Copy, 2007 WL 4302514)**

of produce, *id.,* defined by regulations to be produce totaling one ton or more in weight in any day shipped, received, or contracted to be shipped or received, 7 C.F.R. § 4 6.2. Even if De-Mar dealt in wholesale or jobbing quantities, if it did so "solely for sale at retail," than it cannot be considered a dealer "until the cost of [its] purchases of perishable agricultural commodities in any calendar year are in excess of $230,000,"7 U.S.C. § 499a(b)(6)(B), or until it secured a license pursuant to § 499c. 7 U.S.C. § 499a(b)(6).

> FN4. PACA also applies against commission merchants and brokers, *see, e.g.,*7 U.S.C. § 499e(c)(2), but AFL only alleges that De-Mar is a dealer.

AFL fails to produce sufficient evidence such that any reasonable factfinder would be required to conclude that De-Mar dealt in wholesale or jobbing quantities. AFL's Rule 56.1 statement contains nothing about whether De-Mar engaged in "wholesale or jobbing quantities," and there is no clear evidence that the deliveries by AFL (or anyone else) or shipments to De-Mar exceeded one ton in any one day.FN5AFL also fails to provide any evidence demonstrating that De-Mar held a PACA license, as all dealers must. Therefore, the Court need not address whether De-Mar purchased the produce "solely for sale at retail," 7 U.S.C. § 499a(b)(6)(B), whether De-Mar purchased perishable agricultural commodities in any calendar year in excess of $230,000," *id.,* or whether De-Mar elected to secure a license to be a PACA dealer notwithstanding strictly retail sales and calendar year purchases of less than $230,000, 7 U.S.C. § 499a.FN6

> FN5. Perhaps an expert in the industry or a factfinder could, on the basis of the invoices that AFL provides, determine the wholesale price per pound of the various products sold, and then extrapolate, based on the cost of the invoice, the total poundage any particular delivery. On the basis of the record, a reasonable factfinder might

conclude that De-Mar dealt in "wholesale or jobbing quantities." However, even though it may be highly likely that De-Mar dealt in wholesale or jobbing quantities, the record is not so clear as to support a finding of summary judgment on this point.

FN6. AFL submits evidence that "De-Mar Food purchased Produce with an invoice value in excess of $230,000 in calendar year 2002 and/or 2003."(MacDonald Declaration, ¶ 12.) The dollar value of De-Mar's purchases is only indirectly relevant to whether it is a PACA "dealer": to be a PACA dealer one must engage in purchasing or selling wholesale quantities of produce as defined in the statute. The $230,000 threshold is relevant only to defeat applicability of an *exception* under which one who deals in wholesale quantities but engages solely in retail sales is not a dealer unless the invoice cost of his purchases reaches $230,000 in a calendar year. Since AFL has not established that De-Mar dealt in wholesale quantities in the first place, and since there is no evidence in the record that De-Mar purchased the produce "solely for sale at retail," the exception to the exception is not relevant. It is therefore unnecessary to decide whether the declaration (which defendants offer no evidence to rebut) is intended to mean that De-Mar purchased produce worth more than $230,000 in 2002, in 2003, in each of those years, or in both together, or whether, assuming all other relevant requirements were met, PACA would apply to De-Mar's 2002 purchases if De-Mar never purchased produce in excess of $230,000 until calendar year 2003, or would apply to De-Mar's 2003 purchases if De-Mar only purchased produce in excess of $230,000 in calendar year 2002 and not in 2003.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Page 9

Slip Copy, 2007 WL 4302514 (S.D.N.Y.), 2007-2 Trade Cases P 75,974

**(Cite as: Slip Copy, 2007 WL 4302514)**

Because the record does not preclude a genuine issue of fact as to whether De-Mar is a PACA dealer, AFL's motion for summary judgment regarding its PACA claims against De-Mar and Mentonis must be denied.[FN7]

> FN7. It should be a simple matter to determine whether De-Mar was a PACA dealer during the relevant periods of time, and may be as simple as determining whether De-Mar had the appropriate PACA license. If AFL's failure to provide in connection with this motion the necessary evidence to establish that De-Mar was a PACA dealer was simply an oversight (or, conversely, if it is clear that De-Mar simply *wasn't* a PACA dealer), then the parties, as well as the Court and the public, would be well served if the parties could resolve this issue with the guidance of this Opinion and without need for a trial.

## E. *Prejudgment Interest and Attorneys' Fees*

The delivery invoices that AFL sent to De-Mar stated: "Past due accounts are subject to interest charge of 1-1/2% per month, maximum 18% per annum. Buyer agrees to pay collection costs, including collection agency fees, reasonable attorney fees, and court costs if this account is placed for collection."(*passim* MacDonald Declaration, Ex. A.) AFL accordingly claims prejudgment interest and attorneys fees. Since there is no evidence that these terms in the AFL invoices were discussed by the parties at the time the goods were ordered, they will be considered additional terms to the contract, which are "to be construed as proposals for addition to the contract."*Coosemans Specialties,* 485 F.3d at 708, quoting N.Y. U.C.C. § 2-207(2) (internal quotation marks omitted). When the parties are both merchants, additional terms become part of the contract:

**\*8** unless the party opposing those terms can establish one of three exceptions: '(a) the offer expressly limits acceptance to the terms of the offer; (b) they materially alter it; or (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.'

*Coosemans Specialties,* 485 F.3d at 708, quoting N.Y. U.C.C. § 2-207(2). The exception at issue here, as was at issue in *Coosemans Specialties,* is whether the provisions materially altered the oral contracts for the delivery of produce. The party opposing the inclusion of the additional terms "bears the burden of proving that the [additional] provision[s] in plaintiffs' invoices was a material alteration" to the contract. *Coosemans Specialties,* 485 F.3d at 708, citing *Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G.,* 215 F.3d 219, 223 (2d Cir.2000). Under New York law, a material alteration is one that would "result in *surprise* or *hardship* if incorporated without the express awareness by the other party."*Coosemans Specialties,* 485 F.3d at 708, quoting *Bayway Ref. Co.,* 215 F.3d at 224, quoting N.Y. U .C.C. § 2-207 cmt. 4 (internal quotation marks omitted). Surprise includes "both the subjective element of what a party actually knew and the objective element of what a party should have known," and to carry the burden of showing surprise "a party must establish that, under the circumstances, it cannot be presumed that a reasonable merchant would have consented to the additional term."*Coosemans Specialties,* 485 F.3d at 708, quoting *Bayway Ref. Co.,* 215 F.3d at 224 (internal quotation marks omitted).

As with many other issues raised by AFL, defendants do not even address attorneys' fees or prejudgment interest in their briefing, and have not offered any objective or subjective evidence to demonstrate that these additional terms resulted in any surprise or hardship to them. There is thus no evidence in the record to suggest anything but that AFL's invoices created an enforceable contract providing for attorneys' fees and prejudgment interest, and any reasonable factfinder would have to conclude on the basis of this record that the provisions regarding attorneys' fees and prejudgment interest are part of a contract enforceable against De-Mar.[FN8]

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 4302514 (S.D.N.Y.), 2007-2 Trade Cases P 75,974
**(Cite as: Slip Copy, 2007 WL 4302514)**

> FN8. In *Coosemans Specialties,* the Second Circuit held that the officer of the PACA dealer at issue was also personally liable to the PACA plaintiffs because the attorneys' fees were "sums owing in connection with" perishable commodities transactions under PACA and because the officer "was in a position of control over the PACA trust assets."*Coosemans Specialties,* 485 F.3d at 709. Here, since the Court has denied summary judgment against De-Mar and Mentonis on the PACA trust issue, it cannot hold at this point that Mentonis is personally liable to AFL for attorneys fees and prejudgment interest on the basis that the funds are "sums owing in connection with" a PACA debt.

### CONCLUSION

For the foregoing reasons, AFL's motion for summary judgment is granted with respect to its claims of breach of contract, account stated, pre-judgment interest and attorneys' fees against De-Mar, and denied with respect to its PACA claims against De-Mar and Mentonis.

AFL is directed to submit a spreadsheet regarding its calculation of interest, and detailed billing statements of its counsel regarding fees and costs incurred, supported by detailed attorney time and expense records, on or before December 21, 2007. Defendants may submit any opposition on or before January 7, 2008.

SO ORDERED.

S.D.N.Y.,2007.
AFL Fresh & Frozen Fruits & Vegetables, Inc. v. De-Mar Food Services Inc.
Slip Copy, 2007 WL 4302514 (S.D.N.Y.), 2007-2 Trade Cases P 75,974

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

98 F.R.D. 748                                                                                    Page 1
98 F.R.D. 748
**(Cite as: 98 F.R.D. 748)**

▷
A.L. Williams & Associates, Inc. v. D.R. Richardson & Associates, Inc.
D.C.Ga.,1983.

United States District Court,N.D. Georgia,Atlanta Division.
A.L. WILLIAMS & ASSOCIATES, INC., A.L. Williams and Massachusetts Indemnity & Life Insurance Company, Plaintiffs,
v.
D.R. RICHARDSON & ASSOCIATES, INC., Dennis R. Richardson, William F. Robert, Carl Baker, Jerry Huston and Billie Bundage, Defendants.
**Civ. A. No. C82-138A.**

Aug. 18, 1983.

Various pretrial motions were filed in actions arising out of termination of employment contracts between insurer and salesmen. The District Court, Robert H. Hall, J., held that: (1) Court could exercise long-arm jurisdiction over certain defendants; (2) entities which were not parties to the suit could not be made subject of counterclaims; and (3) insurer which had assigned its claims against former employees was not an indispensable party.

Order accordingly.

West Headnotes

**[1] Federal Civil Procedure 170A ⟨⟩217**

170A Federal Civil Procedure
    170AII Parties
        170AII(E) Necessary Joinder
            170AII(E)2 Particular, Necessary or Indispensable Parties
                170Ak217 k. Employers, Employees and Labor Unions. Most Cited Cases
Evidence demonstrated that insurer had required regional manager to recover from discharged employee amounts which employee owed because of prior draws and was debiting the regional manager's ac-

count with the insurer to cover the insurer's losses and had effectively assigned its claims against the former employee to the regional manager, so that the insurer was not an indispensable party to action seeking to recover amounts owed by the former employee.

**[2] Federal Civil Procedure 170A ⟨⟩1748**

170A Federal Civil Procedure
    170AXI Dismissal
        170AXI(B) Involuntary Dismissal
            170AXI(B)2 Grounds in General
                170Ak1744 Parties, Defects as to
                    170Ak1748 k. Nonjoinder in Particular Actions. Most Cited Cases
Entities which were not parties to the action could not be subject to counterclaim absent appropriate motion to join. Fed.Rules Civ.Proc.Rules 13(h), 19-21, 28 U.S.C.A.

**[3] Federal Civil Procedure 170A ⟨⟩211**

170A Federal Civil Procedure
    170AII Parties
        170AII(E) Necessary Joinder
            170AII(E)2 Particular, Necessary or Indispensable Parties
                170Ak211 k. In General. Most Cited Cases
Entity which had given up its right to proceed against four defendants was not an indispensable party to action brought against the defendants.

**[4] Federal Civil Procedure 170A ⟨⟩211**

170A Federal Civil Procedure
    170AII Parties
        170AII(E) Necessary Joinder
            170AII(E)2 Particular, Necessary or Indispensable Parties
                170Ak211 k. In General. Most Cited Cases
Person who had no cause of action against defendants and no interest requiring protection was not an

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

98 F.R.D. 748
98 F.R.D. 748
**(Cite as: 98 F.R.D. 748)**

Page 2

indispensable party, even though he was the defendant in a related suit.

**[5] Federal Civil Procedure 170A ⟨⟩1835**

170A Federal Civil Procedure
    170AXI Dismissal
        170AXI(B) Involuntary Dismissal
            170AXI(B)5 Proceedings
                170Ak1827 Determination
                    170Ak1835 k. Matters Deemed Admitted. Most Cited Cases
For purposes of motion to dismiss for failure to state a claim, court would assume validity of plaintiff's contention that it had been assigned a valid claim.

**[6] Federal Courts 170B ⟨⟩76.30**

170B Federal Courts
    170BII Venue
        170BII(A) In General
            170Bk76 Actions Against Non-Residents; "Long-Arm" Jurisdiction in General
                170Bk76.30 k. Contract Cases. Most Cited Cases
    (Formerly 106k12(2))
Where contracts were negotiated in Texas but formally executed in Georgia, where defendants attended meetings in Georgia and communicated regularly with officers in Georgia, where any application for life insurance submitted by any of the defendants was sent to Georgia where the application was either accepted or denied, and where calculation, processing, distribution, and accrual of the right to receive commissions occurred in Georgia, defendants had sufficient minimum contacts with Georgia to be subject to long-arm jurisdiction in that state.

**[7] Federal Civil Procedure 170A ⟨⟩293.1**

170A Federal Civil Procedure
    170AII Parties
        170AII(G) Bringing in New Parties; Third-Party Proceedings

170Ak293 Proceedings
        170Ak293.1 k. In General. Most Cited Cases
    (Formerly 170Ak293)
Even though entities named in counterclaims were involved in suits which had been consolidated with suit in question, they were not parties to the suit in question and thus could not be subjected to counterclaims in the suit in question.

**[8] Federal Courts 170B ⟨⟩105**

170B Federal Courts
    170BII Venue
        170BII(B) Change of Venue
            170BII(B)1 In General; Venue Laid in Proper Forum
                170Bk105 k. Plaintiff's Choice of Forum; Forum Shopping. Most Cited Cases
Plaintiff has the right to choose the forum for his lawsuit and his choice should not be disturbed unless the movant demonstrates that the balance of convenience and justice weighs heavily in favor of transfer.

**[9] Federal Courts 170B ⟨⟩106.5**

170B Federal Courts
    170BII Venue
        170BII(B) Change of Venue
            170BII(B)1 In General; Venue Laid in Proper Forum
                170Bk106 Determination in Particular Transferable Actions
                170Bk106.5 k. In General. Most Cited Cases
    (Formerly 170Bk106)
Where suit had been brought in Georgia and all of the voluminous records and significant witnesses were in Georgia, case would not be transferred to Texas.

**\*749** Stanton J. Shapiro and Ira H. Parker, Trauner, King & Cohen, Atlanta, Ga., for A.L. Williams & Associates.

Rutan & Tucker, Marshall M. Pearlman, Costa

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

98 F.R.D. 748
98 F.R.D. 748
**(Cite as: 98 F.R.D. 748)**

Page 3

Mesa, Cal., for Richardson & Richardson & Associates, Inc.
Louis R. Miller, Wyman, Bauter, Rothman, Kuchel & Silbert, Los Angeles, Cal., for Mass. Ind. & Life Ins. Co.
Gambrell & Russell, David M. Brown, William W. Gardner, Atlanta, Ga., for Roberts, Bundage, Baker & Huston, D.R. Richardson & Richardson Assoc.

### ORDER

ROBERT H. HALL, District Judge.
On March 29, 1983, this court agreed to reconsider its December 20, 1982 Order dismissing Civil Action No. C82-138A (*A.L. Williams & Associates, Inc. v. Dennis R. Richardson and D.R. Richardson & Associates, Inc.*) for lack of subject matter jurisdiction. For reasons herein stated, the court VACATES its dismissal. In this order the court will also dispose of the following: (1) defendant Richardson's [FN1] motion to dismiss C82-138A for failure to state a claim upon which relief may be granted or, alternatively, for transfer; (2) the court's own motion to dismiss Civil Action No. C82-634A (*D.R. Richardson & Associates, Inc. and Dennis R. Richardson v. Massachusetts Indemnity and Life Insurance Company, A.L. Williams and Associates, Inc. and A.L. Williams* ) for lack of subject matter jurisdiction [FN2]; (3) defendants Robert, Baker, Huston and Bundage's motion to dismiss Civil Action Numbers C82-519A (*A.L. Williams & Associates, Inc. v. William Robert* ), C82-520A (*A.L. Williams & Associates, Inc. v. Carl Baker* ), C82-521A (*A.L. Williams & Associates, Inc. v. Jerry Huston* ) and C82-522A (*A.L. Williams & Associates, Inc. v. Billie G. Bundage* ) for lack of subject matter jurisdiction, for lack of personal jurisdiction, for failure to state a claim upon which relief may be granted or, alternatively, for transfer [FN3]; and (4) plaintiffs' motion to dismiss the counterclaims of defendants Robert, Baker, Huston and Bundage in the Civil Actions mentioned above.

> FN1. D.R. Richardson & Associates, Inc. and Dennis R. Richardson will sometimes be referred to collectively as "Richardson."

The corporation will occasionally be referred to as "Richardson, Inc."

> FN2. This case was transferred from the United States District Court, Central District of California, on March 19, 1982, and was consolidated with C82-138A, for pretrial matters.

> FN3. These four cases were consolidated for pre-trial purposes with C82-138A and C82-634A.

*Facts and Issues*

A. *Williams, Inc.* [FN4] *v. Richardson* (C82-138A)

> FN4. A.L. Williams & Associates, Inc. will be referred to as "Williams, Inc."

Plaintiff brought this action to recover debts owed by defendants to Massachusetts Indemnity and Life Insurance Company ("MILICO") and National Home Life Insurance Company ("NHL") (Counts I and III) and to recover for an alleged breach of a covenant not to compete (Count II). This court found in its December 20, 1982 Order that MILICO was an indispensable party to Count I, whose addition destroyed the court's diversity jurisdiction over the case, and accordingly dismissed the complaint for lack of subject matter jurisdiction.

A review of the basic facts is necessary before reaching the court's decision upon reconsideration. Williams, Inc., a Georgia corporation, is a general life insurance agency which sells life insurance policies through such organizations and individuals as defendants Richardson, Inc. and Dennis R. Richardson. Richardson, Inc. is a Texas corporation, while Dennis R. Richardson is a citizen of California. Under the terms of various agreements with Williams, Inc., these defendants were authorized to sell life insurance policies on behalf of MILICO and NHL. Dennis R. Richardson was initially appointed a Regional Vice-President (RVP) *750 of Williams, Inc. and was given the right to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

98 F.R.D. 748
98 F.R.D. 748
**(Cite as: 98 F.R.D. 748)**

Page 4

establish his own sales force. Later he became a Senior Vice-President.

Dennis R. Richardson was also appointed to be a Regional Manager of MILICO. Pursuant to his Regional Manager Agreement, he received "advance commission" (also called a "draw against future commission") from MILICO which created a "debit balance" in the nature of a loan account with MILICO. This balance was reduced as premiums were received by MILICO from policyholders and commission was earned. However, a balance of $210,013.58 remained when the agreements between Richardson, Williams, Inc. and MILICO terminated because of Richardson's alleged violation of a covenant not to compete. It is this balance which plaintiff seeks to recover under Count I; the alleged breach of the covenant not to compete is the basis of Count II.

Count III involves a debit balance of $58,196.00 owed to NHL under a similar advance commission arrangement.

Plaintiff contends it has the right to collect the MILICO and NHL debit balances from defendants pursuant to two assignments. With respect to the MILICO balance, plaintiff was assigned the right to proceed against Richardson by Jack Schulman, a MILICO Regional Manager who ostensibly was and is being "posted" with Richardson's debt in his capacity as supervisor of Richardson.[FN5] MILICO has signed an "Acknowledgment of Assignment" which states that this "posting" gave Schulman the right to all claims and causes of action which MILICO had against Richardson for the debit balance indebtedness.[FN6] As for the NHL balance, plaintiff was assigned the right to recover it by NHL itself.[FN7]

> FN5. MILICO is allegedly reducing Schulman's own commission account until the amount of Richardson's debit balance is recovered pursuant to the Regional Manager Agreement between Schulman and MILICO. Article 4(D) of that Agreement

provides in part:

> If any Manager, Agent or other member of the sales hierarchy under the direction and supervision of the Regional Manager [i.e., Schulman] is terminated by or terminates his representation of the Company [MILICO] with any debit balance owing to the company (the "Agent's Debit Balance") Regional Manager shall have 90 days from the date of such termination to collect the Agent's Debit Balance at which time the Regional Manager will remit to the company all money so received. The net remaining Agent's Debit Balance may be recovered from the Regional Manager by the company only by (i) deducting said net remaining Agent's Debit Balance from the Regional Manager's renewal Commissions as said renewal commissions become earned; however, if at any time the net remaining Agent's Debit Balance is less than the actuarial estimate of the value of renewal commissions then due or to become due the Regional Manager ... then by (ii) deducting said remaining Agent's Debit Balance from Deferred First Year Commissions due or to become due to the Regional Manager. Any subsequent collection from, or earned commission otherwise payable to such terminated Agent or manager will be credited to the Regional Manager.... (brackets added)

> As of March, 1983, a total of $121,228.85 had been debited to Schulman, according to plaintiff.

> FN6. The Acknowledgment of Assignment was appended to plaintiff's Motion for Reconsideration and is authenticated in the Affidavit of a MILICO Vice-President, executed January 14, 1983. The language of the document is clear:

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

98 F.R.D. 748
98 F.R.D. 748
**(Cite as: 98 F.R.D. 748)**

Page 5

For good and valuable consideration, Massachusetts Indemnity and Life Insurance Company ("MILICO") hereby acknowledges and recognizes the assignment to Jack Schulman ("Schulman") as contained in that certain Regional Manager Agreement by and between Schulman and MILICO dated March 1, 1980 which Agreement assigns any and all claims and causes of action which MILICO may have against Dennis R. Richardson or D.R. Richardson & Associates, Inc. ("Richardson") for any and all debit balance indebtedness owed by Richardson arising out of Paragraph 4 of Richardson's Regional Manager Agreement, dated January 30, 1980.

Further, to the extent necessary to assign this claim to Schulman, as is the intention of said Paragraph 4(d), MILICO does hereby transfer any and all interest it has by virtue of said Paragraph 4(d), to Schulman.

Plaintiff insists that it is the "operation of the Regional Manager Agreement," not the posting, which transfers the monetary claim from MILICO to Schulman. Because the posting was supposed to be a *result* of the operation of the Agreement, the court finds the objection a matter of semantics.

FN7. The language of that assignment is as follows:

FOR VALUE RECEIVED, National Home Life Assurance Company ("Assignor") assigns, transfers and conveys unto A.L. Williams & Associates, Inc. ("Assignee") all of Assignor's claim against [Dennis R. Richardson], said claim arising from advanced but unearned commissions. The Assignee is hereby subrogated to all of the rights of

the Assignor in, to and under Assignor's claim for repayment of unearned commission advances against [Richardson] as evidenced by an Agent's Agreement, General Agent's Agreement, and/or Guaranty of Payment which may have been executed by and between the Assignor and [Richardson]....

**\*751** Before the court are the following issues: (1) whether the MILICO-Schulman-Williams, Inc. assignment effectively divested MILICO of its interest in the litigation and, if so, whether such divestiture was merely a device to manufacture diversity jurisdiction; (2) whether the assignment transferred an enforceable claim to Williams, Inc.; and (3) whether the court should transfer the case to a Texas federal court.

B. *Richardson v. MILICO, Williams, Inc. and Williams* (C82-634A and Counterclaim to C82-138A)

This action arose out of the same set of facts set forth above. However, a few more background facts are necessary to understand its status.

Richardson filed this suit in the United States District Court for the Central District of California, alleging breach of contract, fraud, negligent misrepresentation, and interference with contract and business advantage.[FN8] All parties subsequently entered into a "Stipulation Re Transfer of Action to Northern District of Georgia." Based upon this Stipulation, the California District Court entered an Order, dated March 19, 1982, to transfer the action to this court.

FN8. The gist of the claim is that Williams, Inc., Williams and MILICO were the cause of the advanced commission becoming "unearned," depriving Richardson of substantial profits and forcing Richardson out of the business of selling MILICO's insurance policies.

Prior to the entry of this Order, the *Williams, Inc. v.*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

98 F.R.D. 748
98 F.R.D. 748
**(Cite as: 98 F.R.D. 748)**

Page 6

*Richardson* case had been initiated on January 26, 1982. On April 6, 1982, Richardson filed a counterclaim identical to his California action, attempting to add MILICO and Williams as "additional Defendants on Counterclaim." The two cases were consolidated for pretrial matters on June 14, 1982. In its December 20, 1982 Order, this court dismissed the Richardson counterclaim along with the main action.

The issues presented by this case are: (1) whether the court lacks subject matter jurisdiction over the case transferred from California; and (2) whether the Richardson counterclaim is viable.

C. *Williams, Inc. v. Robert* (C82-519A), *Williams, Inc. v. Baker* (C82-520A), *Williams, Inc. v. Huston* (C82-521A), *Williams, Inc. v. Bundage* (C82-522A)

Defendants Robert, Baker, Huston and Bundage were Regional Vice-Presidents (RVPs) of Williams, Inc. and Regional Managers of MILICO under agreements similar to those which Richardson had with Williams and MILICO. They were subagents of Richardson, Inc. and thus under the direction of Dennis R. Richardson. Williams, Inc. is suing them to recover debts owed to MILICO which were incurred under the advance commission arrangement described previously (Count I). Williams, Inc. is also suing for breach of a covenant not to compete (Count II). Plaintiff bases its cause of action for the recovery of the debts on a series of assignments almost identical to the one alleged in the *Williams Inc. v. Richardson* suit. All four defendants filed counterclaims against Williams, Inc., Williams and MILICO.

Although the facts are similar, the issues for the court are different. They are: (1) whether Richardson is an indispensable party to Count I; if he is, the court must then add him to the litigation and consider whether the assignment to plaintiff was done to create diversity jurisdiction (Richardson is a citizen of California and MILICO has its principal place of business in California);[FN9] (2) whether

Williams has stated*752 claims upon which relief may be granted; (3) whether defendants Robert, Baker, Huston and Bundage's contacts with the State of Georgia suffice to create the court's personal jurisdiction over them; (4) whether the defendants' counterclaims must be dismissed; and (5) whether the court should transfer the cases to a Texas federal court.

> FN9. If Richardson is *not* an indispensable party, there would be no reason to question the assignment because diversity would exist even without it. Plaintiff is a Georgia corporation, the four defendants are citizens of Texas, and MILICO has its principal place of business in California.

*Discussion*

A. *Williams, Inc. v. Richardson* (C82-138A)

[1] After this court entered its dismissal order, plaintiff introduced an affidavit by Jack Schulman and the "Acknowledgement of Assignment" signed by a MILICO Vice-President to support its contention that MILICO has no intention of pursuing Richardson with respect to the debit balance and that Schulman had a legally enforceable claim against Richardson to assign to Williams, Inc. This new evidence convinces the court that MILICO did effectively transfer its claim against Richardson to Schulman and that the right assigned to Williams was indeed valid. As a result, the court no longer deems MILICO an indispensable party to Count I, nor does it find plaintiff's Count I void of a claim upon which relief may be granted.

Although the court finds plaintiff's introduction of evidence and supporting arguments suspiciously tardy and haphazard, it cannot conclude with confidence that the assignment was merely a method of creating diversity jurisdiction. For these reasons, the court VACATES its dismissal of Count I, finding that it has subject matter jurisdiction over it and that plaintiff has not failed to state a claim upon which relief may be granted.[FN10]

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

98 F.R.D. 748
98 F.R.D. 748
(Cite as: 98 F.R.D. 748)

FN10. Defendants also argue that plaintiff omitted MILICO as a party plaintiff on the assumption that defendants would bring it in by way of a compulsory counterclaim, suggesting that such a tactic is an abuse of the court's ancillary jurisdiction. The court does not find sufficient evidence of this alleged abuse. Williams, Inc. has convinced the court that it alone has the claim against Richardson and that MILICO is not needed for litigation of that claim. Accordingly, Williams, Inc. would have no reason to act on the assumption described.

For clarity, the court notes that it retains jurisdiction over Counts II and III [FN11] and that these Counts do not fail to state a claim upon which relief can be granted.[FN12] The court further notes that it does not find NHL to be an indispensable party to Count III, nor MILICO an indispensable party to Count II [FN13], and that the action on those counts will proceed as originally filed.

FN11. Defendants correctly state that plaintiff failed to assert in its pleading required jurisdictional information regarding NHL, specifically including its place of incorporation and its principal place of business. However, the court finds that even though plaintiff's introduction of such information was unjustifiably late, it is nevertheless sufficient to establish diversity jurisdiction. (Plaintiff has stated that NHL is incorporated in Missouri and has its principal place of business in Pennsylvania).

FN12. Defendants suggest that Count II fails to state a claim upon which relief can be granted; however, the court finds nothing to support this theory. Count II is a breach of contract claim based on the Williams, Inc.-Richardson Regional Vice-President Agreement.

FN13. Defen dants contend that they would be subject to double liability on the count for breach of covenant not to compete (Count II) in that it seeks damages for the alleged inducement of termination of MILICO insurance policies. The court finds the potential liability to Williams, Inc. and MILICO completely different and independent. The covenant not to compete claim belongs solely to Williams, Inc., while MILICO may have its own action for interference with contractual relations. (This analysis applies to the suits against Robert, Baker, Huston and Bundage as well.)

As for defendants' motion to transfer, this court declines to find Texas a more convenient forum, especially in light of its retention of the cases consolidated with this case. *See* discussion *infra.* The motion to transfer is DENIED.

B. *Richardson v. MILICO, Williams, Inc. and Williams* (C82-634A and counterclaim to C82-138A)

With regard to the case transferred from California, the court concludes that it lacks *753 subject matter jurisdiction over this action as did the transferring court. Because Dennis R. Richardson is a citizen of California and MILICO has its principal place of business in California, complete diversity was and is lacking. The court, therefore, DISMISSES C82-634A for lack of subject matter jurisdiction.

[2] With regard to the counterclaim filed to C82-138A, the court finds that it must be DISMISSED to the extent it asserts claims against MILICO and Williams. MILICO and Williams are not parties to the action and thus cannot be subject to a counterclaim absent an appropriate motion to join them.[FN14] Fed.R.Civ.P. 13(h), 19-21; *Mountain States Sports, Inc. v. Sharman,* 353 F.Supp. 613 (D.Utah 1973); *Ulichny v. General Electric Company,* 309 F.Supp. 437 (N.D.N.Y.1970); *Timely P roducts Corp. v. A rron,* 3 03 F.Supp. 713 (D.Conn.1969); *United States v. Techno Fund, Inc.,*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

98 F.R.D. 748
98 F.R.D. 748
**(Cite as: 98 F.R.D. 748)**

270 F.Supp. 83 (S.D.Ohio 1963).

FN14. The court is open to such a motion to join MILICO and Williams.

The counterclaim against Williams, Inc. remains pending.[FN15]

FN15. Plaintiff has urged that the counterclaim against Williams, Inc. should be dismissed as well because it fails to differentiate between it and Williams or MILICO in its allegations. The court finds this contention severely underdeveloped and declines to dismiss the counterclaim entirely without further briefing by the plaintiff.

C. *Williams, Inc. v. Robert, Baker, Huston, and Bundage* (C82-519A, C82-520A, C82-521A, C82-522A)

1. *Indispensable Parties and Diversity Jurisdiction*

A "necessary party" under Rule 19(b) of the Federal Rules of Civil Procedure is one who:

(1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring doubt, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

*Haas v. Jefferson National Bank of Miami Beach,* 442 F.2d 394 (5th Cir.1971).

[3] In light of the express assignments by MILICO to Schulman and by Schulman to Williams, the court does not find MILICO an indispensable party to Count I. Plaintiffs have shown that MILICO has given up its right to proceed against the four defendants and that the defendants will not be threatened with double liability. Further, the court does not find MILICO to be indispensable to Count II, *see* footnote 13, *supra,* or Count III.

[4] Dennis R. Richardson is also not an indispensable party. He has no cause of action against the four defendants and no interest that requires protection.

With these findings, the court's diversity jurisdiction remains intact, all defendants being citizens of Texas and plaintiffs having its principal place of business in Georgia.

2. *Failure to State a Claim*

[5] The court declines to dismiss the cases for failure to state a claim upon which relief can be granted. The court must assume the validity of plaintiff's contention that the assignment to Williams, Inc. transferred a valid claim to it.

3. *Personal Jurisdiction*

Defendants urge that they have insufficient contacts with Georgia to warrant a finding of personal jurisdiction over them. The court disagrees.

The Georgia Long-Arm statute provides that a court "may exercise personal jurisdiction over any non-resident ..., if in person or through an agent, he: (a) Transacts any business within this state ...." O.C.G.A. § 9-10-91. The Georgia Supreme *754 Court has construed this provision to mean that:

The only requirement is that the act or acts of the nonresident, giving rise to the cause of action, must have some relationship to the State of Georgia. There must be minimum contacts with this state.

*Davis Metals, Inc. v. Allen,* 230 Ga. 623, 625, 198 S.E.2d 285 (1973).

[6] In these cases, each defendant "transacted business" in Georgia. The contracts at issue, although negotiated in Texas, were formally executed in Georgia when Williams, Inc. and MILICO accepted

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

98 F.R.D. 748
98 F.R.D. 748
(Cite as: 98 F.R.D. 748)

them there. Defendant Huston attended meetings of Williams, Inc. in Atlanta, Georgia, in March, June and October of 1980. Likewise, defendants Robert, Baker and Bundage attended an October, 1980, meeting in Atlanta. Furthermore, each of these defendants communicated regularly with officers and other members of Williams, Inc. in Atlanta, both by telephone and writing. Also, any application for life insurance submitted through any of these defendants was sent by them to Atlanta, where the application was either accepted or denied. Finally, calculation, processing, distribution and accrual of the right to receive commission occurred in Atlanta and the defendants had control over personnel in Atlanta for the purpose of insuring that all processing was properly effectuated. These factors provide more than the minimum contacts necessary for this court to have jurisdiction over these defendants. The motion to dismiss for lack of personal jurisdiction is DENIED.

### 4. Defendants' Counterclaims

[7] All four defendants filed counterclaims against Williams, Inc., Williams and MILICO. Neither Williams nor MILICO was named in plaintiff's complaint or joined into this action by the defendants. Because Williams and MILICO are not parties to these actions, they cannot be subject to defendants' counterclaims absent a court ordered joinder.FN16 As a result, the counterclaims must be DISMISSED to the extent they assert claims against these two non-parties.

> FN16. See cases cited supra, p. 12. Again, the court is open to a motion to join MILICO and Williams.

The defendants apparently rely on the July 14, 1982, Pre-Trial Consolidation Order of this court as the basis for the assertion of their counterclaims against Williams and MILICO. In doing this, defendants overlook that a consolidation does not effect a merger of suits into a single action or cause the parties of one action to be parties of another.

See, generally, Wright & Miller, Federal Practice and Procedure: Civil § 2 382. See also Johnson v. Manhattan Ry. Co., 289 U.S. 479, 496, 53 S.Ct. 721, 727, 77 L.Ed. 1331 (1933); Empire Aluminum Corp. v. S.S. Korendijk, 391 F.Supp. 402, 410 (S.D.Ga.1973).

The counterclaims against Williams, Inc. remain pending.

### 5. Venue

[8][9] Defendants have moved to transfer these four cases to the District Court of Texas. The law pertaining to a change of venue clearly establishes that a plaintiff has the right to choose the forum for his lawsuit and his choice should not be disturbed unless the movant demonstrates that the balance of convenience and justice weighs heavily in favor of the transfer. 28 U.S.C. § 1404(a); Security National Bank v. Republic National Life Insurance Co., 364 F.Supp. 585 (S.D.N.Y.1973). The defendants have failed to carry their burden of demonstrating factually how justice would be served by a transfer of these cases to Texas since all the voluminous records and significant witnesses are in Georgia. Accordingly, the court DENIES defendants' motion to transfer.

### CONCLUSION

In summary, the court:

*755 (1) VACATES its dismissal of Count I in C82-138A for lack of subject matter jurisdiction;

(2) DENIES the motion to dismiss C82-138A for failure to state a claim upon which relief may be granted;

(3) DENIES the motion to transfer C82-138A;

(4) DISMISSES the counterclaim in C82-138A to the extent it implicates MILICO and Williams; the counterclaim against Williams, Inc. remains pending;

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

98 F.R.D. 748
98 F.R.D. 748
**(Cite as: 98 F.R.D. 748)**

(5) DISMISSES C82-634A for lack of subject mat-
ter jurisdiction;

(6) DENIES all motions to dismiss or transfer
C82-519A, C82-520A, C82-521A and C82-522A;

(7) GRANTS the motion to dismiss the counter-
claims in C82-519A, C82-520A, C82-521A, and
C82-522A to the extent they assert claims against
MILICO and Williams; the counterclaims against
Williams, Inc. remain pending.

D.C.Ga.,1983.
A.L. Williams & Associates, Inc. v. D.R. Richard-
son & Associates, Inc.
98 F.R.D. 748

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.