Harnik Wilker & Finkelstein LLP
Attorneys for Plaintiff
Greystone CDE, LLC
And Greystone Servicing Corp. Inc.
Olympic Tower
645 Fifth Avenue, 7th Floor
New York, NY 10022-5937
Tel. No. (212) 599-7575
Facsimile (212) 867-8120
Email: stephen@harnik.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
Greystone CDE, LLC,                                            Docket No. 07 civ. 8377 (RPP)

                    Plaintiff,
        - against -
Santa Fe Pointe, L.P.,
Santa Fe Pointe Management, LLC,
Rant LLC, and
Theotis F. Oliphant,

                    Defendants.
------------------------------------------------------------X

**PLAINTIFF'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF THE CROSS-MOTION TO
DISMISS DEFENDANTS' COUNTERCLAIMS; IN THE
ALTERNATIVE FOR A MORE DEFINITE STATEMENT;
AND FOR SUMMARY JUDGMENT**

APRIL 29, 2008

TABLE OF CONTENTS

TABLE OF AUTHORITIES………………………………………………………...…….i

INTRODUCTION……………………………………………………………..……………...1

SUMMARY OF ARGUMENT…………………………………………………………..…….1

PROCEDURAL UP-DATE……………………………………………………..……………...3

ARGUMENT

POINT I
DEFENDANTS HAVE FAILED TO RAISE ANY TRIABLE
ISSUES OF FACT AND, THEREFORE, PLAINTIFF
SHOULD HAVE SUMMARY JUDGMENT……………………………………………..4

POINT II
DISCOVERY IS PRECLUDED BY DEFENDANTS' "ABSOLUTE",
"UNCONDITIONAL" AND "IRREVOCABLE" WAIVERS…………………….…...…7

POINT III
DEFENDANT'S ARGUMENT THAT THE GREYSTONE
PARTIES ARE NOT ALTER EGOS, BUT, INSTEAD,
ACTED "JOINTLY" HAS NOT BEEN PROPERLY PLED;
IN ANY EVENT, DEFENDANTS ADMIT THAT THE
GREYSTONE ENTITIES MUST BE TREATED AS DISTINCT ENTITIES……..8

POINT IV
SERVICE ON GREYSTONE SERVICING IS DEFECTIVE………………….……...9

CONCLUSION………………………………………………………………………….9

# TABLE OF AUTHORITIES

**Cases**                                                                                                           **Page**

*Citibank, N.A. v. Plapinger*, 66 N.Y.2d 90, 93, 485 N.E.2d 974, 975 (1985) .................... 2

*Dunkin' Donuts, Inc. v. Barr Donut, LLC*, 242 F.Supp.2d 296, 298 (S.D.N.Y.2003) ........ 5

*European Am. Bank v. Lofrese*, 182 A.D.2d 67, 73, 586 N.Y.S.2d 816, 819 (2d Dep't 1992) ................................................................................................................................ 6

*Gadsden v. Jones Lang Lasalle Americas, Inc.*, 210 F.Supp.2d 430, 438 (S.D.N.Y.2002) ................................................................................................... 5

*Gannett Co. v. Tesler*, 11 A.D.2d 353, 354, 577 N.Y.S.2d 248, 249 (1st Dep't 1991) ....... 7

*Gen. Trading Co. v. A & D Food Corp.*, 292 A.D.2d 266, 267, 738 N.Y.S.2d 845, 846 (1st Dep't 2002) ............................................................................................................ 7

*Manufacturers Hanover Trust Co. v. Yanakas*, 7 F.3d 310, 316 (2d Cir. 1993) ................ 6

*Millus v. D'Angelo*, 224 F.3d 137, 138 (2d Cir.2000) ....................................................... 5

*Plapinger*, 66 N.Y.2d at 95, 485 N.E.2d at 977 ................................................................. 6

*Raven Elevator Corp. v. Finkelstein*, 223 A.D.2d 378, 378, 636 N.Y.S.2d 292, 293 (1st Dep't 1996) ............................................................................................................. 6

*Red Tulip, LLC v. Neiva*, 44 A.D.3d 204, 209, 842 N.Y.S.2d 1, 5 (1st Dep't 2007) .......... 6

*Sterbenz v. Attina*, 205 F.Supp.2d 65, 67 (E.D.N.Y.2002) ................................................ 4

*Sterling Nat'l v. Biaggi*, 47 A.D. 3d 436 (1st Dep't 2008) ........................................ 1, 2,6,7

*Wells Fargo Northwest N.A. v. Taca Int'l Airlines*, 247 F. Supp. 2d 352, 360 (S.D.N.Y. 2002) ............................................................................................................................. 8

**Statutes**

Fed. R. Civ. P 12(e) ............................................................................................................ 9

## INTRODUCTION

This Memorandum of Law is submitted on behalf of plaintiff Greystone CDE LLC, (hereinafter "plaintiff") in reply to defendants' Santa Fe Pointe L.P., Santa Fe Pointe Management, LLC, Rant LLC, and Theotis F. Oliphant (hereinafter "defendants" or alternatively "the Oliphant parties") opposition to plaintiff's motion to dismiss defendants' counterclaims, as well as in reply to defendants' opposition to plaintiff's motion for summary judgment; it is also submitted on behalf of Greystone Servicing Corporation, Inc. ("Greystone Servicing," collectively with the plaintiff "the Greystone parties") in opposition to defendants' opposition to Greystone Servicing's motion to dismiss the purported counterclaim asserted against it.

## SUMMARY OF ARGUMENT

Plaintiff has moved this court to enforce the Oliphant parties' "unconditional", "absolute" and "irrevocable" Guarantees of debt. An "absolute and unconditional" guarantee constitutes "a valid waiver of the right to plead defenses." *Sterling Nat'l v. Biaggi,* 47 A.D. 3d 436 (1st Dep't 2008). Defendants' only answer to this is that plaintiff "...cites to no document, no evidence, and no authority for such an absurd proposition." (Def. Mem. p. 12; Dkt. # 65). End of argument.

To the contrary, the *documents* are the Guarantees which Oliphant signed personally and as sole principal of the defendant partnerships, *including* his own law firm's Opinion Letter wherein he specifically, and without reservation, opined that the three Guarantees were "valid and binding obligations," and "[t]he execution, delivery and performance of the Loan Documents have been duly authorized by all requisite action…"

(Harnik Suppl. Decl. dated Jan. 22, 2008 ex. "G"; Dkt. # 31) The *evidence* is comprised of the Guarantees which defendants admit are authentic (*see*, defendants' L.C.R. 56.1 Statement ¶ 22) and the *authority*, as shown in our prior memoranda and below, is plentiful. Defendants claim that a triable issue is whether the loan was in default: they state that it was not in default because the closing date for purchase and sale of the Apartment Building was extended. But the extension *required plaintiff's consent* which concededly was never obtained. Defendants "deny" this requirement without any offer of admissible proof. Instead, they simply claim that this requirement was "vague and ambiguous" which clearly it was not. (*See*, plaintiff's L.C.R. Statement ¶'s 17 & 18; Dkt #57). They continue to allege that the loan was not in "financial" default (Def. Mem. p. 11; Dkt #65) without pointing to any authority for such a distinction. Nor, do they counter their own admission of default contained in Oliphant's email of September 1, 2007, wherein he demanded that plaintiff "rescind" the default notice (Answer ¶ 103; Dkt. # 45). None of this is addressed in defendants' answering papers.

  As previously discussed in our brief in opposition to defendants' motion for a stay, under New York's *Plapinger* rule, guarantors may not assert virtually *any* defense when asked to honor an "absolute and unconditional" guarantee. *See, Citibank, N.A. v. Plapinger*, 66 N.Y.2d 90, 93, 485 N.E.2d 974, 975 (1985). Defendants' only defense argued in their brief, that the loan was not in default and that the acceleration of the loan was premature and "pretextual" which -- besides being wholly unsubstantiated and belied -- by the record and by their own admissions -- is barred by *Plapinger*, and its progeny. As *Plapinger* makes clear, defendants are precluded from raising such defenses because they have waived them. *See, also, Sterling Nat'l v. Biaggi, supra*.

Turning to the counterclaim, defendants claim that they are *not* alleging that the Greystone parties are alter egos (in which case the pleading is clearly improper for the reasons stated in our moving Memorandum; Dkt. # 54)) but, rather, that "...the relationship between the Greystone entities is a matter of proof that will be subject to discovery." (Def. Mem. p. 4; Dkt. # 65). However, in respect of plaintiff, discovery is precluded by defendants' "absolute," "unconditional" and "irrevocable" Guarantees as shown below; and as to Greystone Servicing, this court has already found that the pleading is "...defective" because it does not differentiate between the two defendants, (Transcript of Oral Argument, Harnik Suppl. Decl. ex. "C" p. 3 lines 20-25; Dkt. # 52).

Lastly, with respect to the court's jurisdiction over Greystone Servicing, defendants improperly cite to evidence not in the record. Thus, they allege that their process server swore in his affidavit of service that Ms. Farina "...represented that she was authorized to accept service," (Def. Mem. p. 6; Dkt. # 65) when, in fact, Mr. Thomson averred was that she was "Managing Agent," a claim not even defendants' counsel are so bold as to allege. (In fact, Ms. Farina works in Greystone & Co., Inc.'s mailroom; Ms. Farina is not employed by Greystone Servicing Corporation, Inc.). No proof whatsoever, is offered that Ms. Farina is or was authorized to accept process on behalf of Greystone Servicing (which Ms. Farina has specifically denied).

## PROCEDURAL UP-DATE

In our moving Memorandum of Law in support of the Cross Motions dated March 17, 2008 at p. 2, (Dkt #55) we advised the court that the Greystone parties intended to move for leave to file a motion for reconsideration of the California court's order of February 4, 2008 which denied transfer of venue of the California action to New York.

Leave for such relief was, indeed, filed on March 26, 2008, which was opposed by the Oliphant parties by letter dated March 27, 2008. (Harnik Suppl. Decl. ex. "F"). On the same day, the Greystone parties' counsel replied by letter to the court (Harnik Suppl. Decl. ex "G"). The Oliphant parties then filed opposition papers to the Greystone parties' motion to dismiss their Second Amended Complaint. (Harnik Suppl. Decl. ex. "H"). On April 3, 2008, Judge Spero granted the Greystone parties' motion for leave (Harnik Suppl. Decl. ex. "I"). On April 4, 2008 we asked this court to take judicial notice of that Order, together with the underlying motion and briefs. Thereafter, the Oliphant parties filed their opposition to the motion for reconsideration (Harnik Suppl. Decl. ex. "J") to which the Greystone parties duly replied (Harnik Suppl. Decl. "K"). At the same time, the Greystone parties filed a letter requesting clarification that all matters in California be stayed pending determination of their motion (Harnik Suppl. Decl. ex. "L") which the Oliphant parties have opposed. (Harnik Suppl. Decl. ex."M").

## ARGUMENT

### POINT I

### DEFENDANTS HAVE FAILED TO RAISE ANY TRIABLE ISSUES OF FACT AND, THEREFORE, PLAINTIFF SHOULD HAVE SUMMARY JUDGMENT

Plaintiff supported its motion for summary judgment with citations to the Loan Documents all of which defendants admit were duly signed by them (Def. L.C.R. §56.1 Stmt ¶22: Dkt. # 66). Nonetheless, in their opposition to the motion, defendants have claimed that such evidence is "inadmissible" and that even if it were admissible it is "disputed" or alternatively "denied." However, under L.C.R. 56. 1(b), the non-moving

party "...may not rest upon the mere allegations or denials of [his] pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Dunkin' Donuts, Inc. v. Barr Donut, LLC*, 242 F.Supp.2d 296, 298 (S.D.N.Y.2003) (quoting *Sterbenz v. Attina*, 205 F.Supp.2d 65, 67 (E.D.N.Y.2002)). A non-moving party's failure to adhere to Local Rule 56.1(b) can prove fatal because "[c]ourts in this circuit have not hesitated to deem admitted the facts in a movant's Local Rule 56.1 Statement that have not been controverted by a Local Rule 56.1 statement from the non-moving party." *Gadsden v. Jones Lang Lasalle Americas, Inc.*, 210 F.Supp.2d 430, 438 (S.D.N.Y.2002) (collecting cases); *see also Millus v. D'Angelo*, 224 F.3d 137, 138 (2d Cir.2000) (summary judgment "appropriate" in light of non-moving party's failure to comply with Local Rule 56.1(b)); *Dunkin' Donuts Inc.*, 242 F.Supp.2d at 298 (facts deemed admitted because non-moving party did not submit a proper counter-statement of facts and did not include citations to evidence in the statement it did submit). Thus, defendant's have not raised any triable issues in respect of plaintiff's §56.1 L.C.R. Statement (Dkt. # 57).

Moreover, even if defendants had properly raised defenses and counterclaims, they all have been irrevocably waived. Defendants have not bothered to respond to any of the numerous cases cited in our moving Memorandum (Dkt. # 54) which stand for this proposition. As this court has previously observed, in his Opinion Letter, Oliphant rendered a legal opinion as the validity and enforceability of the Bridge Loan Agreement and the partners' guarantees thereof, (Opinion and Order dated February 20, 2008; Dkt. # 42). Indeed, for the Oliphant parties now to claim that their Guarantees are unenforceable "...would in effect condone defendants' own fraud in deliberately misrepresenting [their] true intention, when putting their signatures to their 'absolute and

5

unconditional' guarantee." *Plapinger*, 66 N.Y.2d at 95, 485 N.E.2d at 977 (internal quotations omitted).

Defendants' absolute and unconditional waiver of all defenses and counterclaims to the Guarantees' enforceability presents an "insurmountable obstacle" to their attempt to avoid them. *Red Tulip, LLC v. Neiva*, 44 A.D.3d 204, 209, 842 N.Y.S.2d 1, 5 (1st Dep't 2007). As the First Department recently reaffirmed, such an absolute and unconditional guarantee "…constitute [s] a valid waiver of the right to plead defenses." *Biaggi, supra.*; see also, e.g., *Red Tulip*, 44 A.D.3d at 209, 842 N.Y.S.2d at 5 (guarantee "waived all defenses and counterclaims" except champerty); *Raven Elevator Corp. v. Finkelstein*, 223 A.D.2d 378, 378, 636 N.Y.S.2d 292, 293 (1st Dep't 1996) (guarantees may "specifically preclude[] the guarantor from raising any defenses or counterclaims"); *European Am. Bank v. Lofrese*, 182 A.D.2d 67, 73, 586 N.Y.S.2d 816, 819 (2d Dep't 1992) ("Having undertaken such a broad guarantee 'absolutely and unconditionally,' [guarantor] waived any defenses and/or counterclaims he might have had.").

Because "the touchstone is specificity" when deciding whether a guarantee bars contractual defenses, *Manufacturers Hanover Trust Co. v. Yanakas*, 7 F.3d 310, 316 (2d Cir. 1993), defendants' "unconditional" "absolute" and "irrevocable" guarantees, specifically waiving all defenses relating to the "the genuineness, validity or enforceability of the Loan Documents" (*see* Complaint ex. "C" §1.02(f)) or the "invalidity, irregularity, lack of priority or unenforceability in whole or in part of any or all of the Loan Documents" (*see* Complaint Dkt #3, ex.'s "D" and "E" § 2(a)) defeats defendants' "shadowy and conclusory" (*Plapinger, supra.* 66 NY 2d at 94) opposition to summary judgment.

6

Accordingly, plaintiff should have summary judgment on Counts II and III of the Complaint.

## POINT II

### DISCOVERY IS PRECLUDED BY DEFENDANTS' "ABSOLUTE," "UNCONDITIONAL" AND "IRREVOCABLE" WAIVERS

The Oliphant parties oppose dismissal of the counterclaims (and, charitably read, summary judgment) on the ground that discovery is needed. However, discovery in respect of plaintiff's Counts II and III is precluded by defendants' absolute, unconditional and irrevocable waiver. Thus, the Oliphant Guarantors agreed that "[n]o set-off, claim, reduction or diminution of any obligation, or any defense of any kind or nature (other than payment and performance in full of the Guaranteed Obligations) which the Borrower or any Guarantor now has or hereafter may have against the Lender shall be available hereunder to any Guarantor against the Lender" (*see* Complaint Dkt. # 3, ex. "C" §1.02), respectively that the guaranty "may be enforced against the General Partner irrespective of ... (iii) any counter-claim, recoupment, setoff, reduction or defense based on any claim the Partnership or any other Obligor may now or hereafter have against Pledgee (other than the defense that payment in full of all amounts claimed to be due by Pledgee actually has been made) ...(*see* Complaint Dkt. # 3, ex.'s "D" and "E" § 2(a)).

Courts regularly enforce "absolute and unconditional" guarantees without discovery. If a guarantee "waive[s] all defenses to the underlying transaction ..., disclosure can produce no relevant information." *Gannett Co. v. Tesler*, 11 A.D.2d 353, 354, 577 N.Y.S.2d 248, 249 (1st Dep't 1991); *see also, e.g., Biaggi, supra.*, 47 A.D. 2d at 437(affirming summary judgment as to liability on guarantee); *Gen. Trading Co. v. A &*

7

*D Food Corp.*, 292 A.D.2d 266, 267, 738 N.Y.S.2d 845, 846 (1st Dep't 2002) (same).

Because "[w]hat is in dispute ... are the legal inferences to be drawn from undisputed terms" of a contract, "the absence of discovery does not present an obstacle to the granting of... summary judgment." *Wells Fargo Northwest N.A. v. Taca Int'l Airlines*, 247 F. Supp. 2d 352, 360 (S.D.N.Y. 2002).

Accordingly, defendants may not have discovery and plaintiff should be granted summary judgment.

### POINT III

### DEFENDANT'S ARGUMENT THAT THE GREYSTONE PARTIES ARE NOT ALTER EGOS, BUT, INSTEAD, ACTED "JOINTLY" HAS NOT BEEN PROPERLY PLED; IN ANY EVENT, DEFENDANTS ADMIT THAT THE GREYSTONE ENTITIES MUST BE TREATED AS DISTINCT ENTITIES

In order to avoid a dismissal based upon their plainly defective pleading, in their opposition papers defendants claim that they have never meant to suggest that the Greystone parties are alter-egos. That, despite their allegations that "Greystone wore two hats" (Counterclaim ¶92; Dkt. # 45) and that "[i]t is often difficult to distinguish one [Greystone entity] from the other, although they formally claim to be distinct legal entities." (Counterclaim ¶72). To confuse the matter more, defendants now state that "...the activities of *both* (emphasis theirs) Greystone entities, *acting as one*, (emphasis supplied)... caused the Oliphant Parties to lose the project." (Def. Mem. p. 3). How do two entities "act as one"? Defendants do not say. Alternatively, if one was the agent for the other, then arguably only one can be liable. None of this is discernible from the pleading. However, defendants' backpedaling only serves to make more evident that plaintiff is entitled to summary judgment on the Guarantees because they admit that plaintiff is distinct from Greystone Servicing. Thus, in their counterclaim they allege

that Greystone Servicing (not plaintiff) "...unilaterally withdrew the HUD loan application." This is "undisputed" (*see* Def. L.C.R. §56.1 Statement ¶25).

At the same time, if defendants' counterclaim against Greystone Servicing is not dismissed for lack of jurisdiction (for failure to make proper service) then it must be repled since, as mentioned above, this court has already found that it is "defective." It is in that light that Greystone Servicing has moved pursuant to Fed. R. Civ. P 12(e) for a more definite statement. In their response, defendants have entirely ignored that branch of the Cross-Motion.

## POINT IV

## SERVICE ON GREYSTONE SERVICING IS DEFECTIVE

Defendants, as pointed out above, have improperly cited to evidence not in the record. Thus, their own process server does not support their argument that Ms. Farina alleged that she was authorized to accept service. In fact, as shown by Ms. Farina's affidavit (Dkt. # 56), she was not even employed by Greystone Servicing but by Greystone & Co., Inc.

Accordingly, the court lacks jurisdiction over Greystone Servicing and the counterclaims against it should be dismissed.

## CONCLUSION

By reason of the foregoing, it is submitted that plaintiff's motion for summary judgment on Counts I and II should be granted; and the counterclaims against both of the Greystone parties should be dismissed; alternatively, defendants should be ordered to replead their counterclaims against Greystone Servicing pursuant to Rule 12(e) to add sufficient detail to meet Greystone Servicing's objections.

Dated: April 29, 2008
       New York, New York

                              HARNIK WILKER & FINKELSTEIN LLP

                              by: Stephen M. Harnik (SH 9889)

                              Attorneys for Greystone CDE LLC
                              And Greystone Servicing Corp. Inc.
                              645 Fifth Avenue, 7th Floor
                              New York, NY 10022-5937
                              (212) 599-7575