# EXHIBIT "K"

1 | Mark D. Kemple (State Bar No. 145219)
  | Erik K. Swanholt (State Bar No. 198042)
2 | JONES DAY
  | 555 South Flower Street
3 | Fiftieth Floor
  | Los Angeles, CA 90071-2300
4 | Telephone:  (213) 489-3939
  | Facsimile:  (213) 243-2539
5 | Email: mkemple@jonesday.com
  | Email: ekswanholt@jonesday.com
6 |
  | Attorneys for Defendants
7 | Greystone Servicing Corporation, Inc., and
  | Greystone CDE, LLC
8 |

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## (SAN FRANCISCO DIVISION)

| | |
|---|---|
| SANTA FE POINTE, LP, an Oklahoma limited partnership; SANTA FE MANAGEMENT, LLC, an Oklahoma limited liability company; RANT, LLC, a Delaware limited liability company; and THEOTIS F. OLIPHANT, an individual, | CASE NO. C 07-05454 JCS<br><br>DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION OF FEBRUARY 4, 2008 ORDER DENYING DEFENDANTS' MOTION TO TRANSFER VENUE |
| Plaintiffs, | Ctrm:   A (15th Floor)<br>Before: Hon. Joseph C. Spero |
| v. | |
| GREYSTONE SERVICING CORPORATION, INC., a Georgia corporation; GREYSTONE CDE, LLC, a Delaware limited liability company, and DOES 1 through 100, inclusive, | Date:   July 25, 2008<br>Time:   9:30 a.m. |
| Defendants. | |

LAI-2944919v3

Defs.' Reply in Support of Mot. for Recons.
C 07-05454 JCS

## I. SUMMARY OF REPLY

Three key (and new) facts are not contested and are dispositive:

(1) **All parties agree that this matter must be litigated in only one venue – not concurrently in two venues on opposite coasts.[1]**

(2) **Of the two venues, only New York has before it all claims by all parties. The California action is but a subset of the New York action.[2]**

(3) **The Oliphant Parties *"unconditionally and irrevocably"* consented in writing that New York was a proper venue, *and that they would not challenge New York as a proper venue*.[3] There is nothing "permissive" about their agreement.**

These three key points end all reasonable debate; New York is the only proper venue. Were more needed, and though the Oliphant Parties feign otherwise, it is also indisputable that:

(4) **The New York action – with a current trial date of May 2008 and motions for partial adjudication pending – is far more advanced than this action.[4]**

With this, and even putting reason aside, only the *most* intractable and irrational advocate could continue to argue that the larger New York action should be sent to the smaller California action, based on a motion brought in express breach of the parties' written, express "unconditional and irrevocable" consent to New York venue. Patently, the smaller

---

[1] As the Oliphant Parties concede, "the interest of justice mandates against the parties litigating identical issues in two fora." *See* Declaration of Erik Swanholt (doc. # 50) ("Swanholt Decl."), Ex. 1 at 1.

[2] Unlike New York, the claims of Greystone CDE, LLC are not asserted in California.

[3] "Pledgors hereby irrevocably and unconditionally: … (ii) consent that any such action or proceeding may be brought in such [New York] courts, and waives <u>any objection that it may now or hereafter have to the venue of any such action or proceeding in any such court</u> or that such action or proceeding was brought in an inconvenient court and agree not to plead or claim the same." Swanholt Decl., Ex. 2 at 1, 15-16 (emph. added).

[4] In contrast, the California Defendants are not obliged even to *answer* the California pleading until July 2008, at the earliest.

1  California claims – already subsumed in the New York action – should be resolved once,
2  and in New York where they will be resolved in all events.
3        Indeed, independent of the 4 undisputable truths set further above, the Oliphant
4  Parties' change of position and admission that their California tort claims arise out of the
5  same transaction or occurrence as Defendants' New York claims on the bridge loan
6  guaranties – and therefore are compulsory counterclaims in New York – further reinforces
7  that which is already inescapable. Because the Oliphant Parties' freely concede that their
8  California claims are compulsory counterclaims to the guarantee claims made Defendants
9  in New York,[5] the Oliphant Parties now openly concede that even the permissive venue
10 provisions pertaining to actions commenced outside New York (consent to actions filed
11 inside New York is "unconditional and irrevocable") are directly in play, and further point
12 in the direction of New York. And again, the consent that claims initiated in New York
13 will stay there, is "unconditional and irrevocable."
14       All agree that the interest of justice mandates proceeding in a single forum.
15 Inescapably, that forum is New York.
16       The Oliphant Parties' opposition does nothing to undermine, or even address, these
17 controlling truths. In fact, it ignores them. Rather than dispute or even address these key
18 points, the Oliphant Parties seek to (i) mislead this Court as to the procedural posture of the
19 New York matter, (ii) mischaracterize the bases of this Court's prior denial of Defendants'
20 transfer motion and (iii) convince this Court to forebear ruling on this motion until after the
21 New York court has acted on Plaintiffs' motion to transfer that case to California (largely
22 because the Oliphant Parties' entire argument in that motion is based upon this Court's
23 prior rejection of Defendants' motion to transfer this matter to New York). The Oliphant
24 Parties' arguments do not contradict or even challenge the clear and indisputable facts set

---

[5] *See* Fed. R. Civ. P. 13(a); *see also* Swanholt Decl., Ex. 1 at 1 (admitting in their motion to transfer filed in the New York action that "[t]he Oliphant parties [are] required to raise these defenses and Counterclaims in the New York action at the risk of rendering their claims in the California Action moot.") (emph. added).

forth above. Accordingly, Defendants respectfully request that this Court grant their motion for reconsideration and order the transfer of this matter to New York.

## II. ARGUMENT

### A. The Undisputed New Facts Make Clear That New York Is The <u>Only</u> Permissible Venue For All Of These Claims.

Plaintiffs argued vehemently in opposition to Defendants' original motion to transfer that the New York and California matters were unrelated and thus transfer and consolidation inappropriate. Now, after asserting *all* of their affirmative claims in the California action as compulsory counterclaims in the New York action, Plaintiffs agree that the two matters are "identical."[6] Indeed, because of this new development, as Defendants argued many months ago, Plaintiffs now agree that "the interest of justice mandates against the parties litigating identical issues in two fora." *See* Swanholt Decl., Ex. 1 at 1. Thus, the parties agree that it makes no sense, practically, legally or otherwise, for this matter to proceed concurrently with the New York matter, but instead that the two should be consolidated into one venue for efficient administration.

The only question is where. The answer is New York. This is true because the New York matter will not be transferred to California because it cannot be transferred to California. The New York court has already concluded that (a) the venue provisions in the guaranties are binding and enforceable, (b) Plaintiffs' consent to venue in New York is irrevocable and unconditional and (c) the first-to-file rule carries little weight under the circumstances of this case and thus does not overcome (a) and (b):

> **More importantly, Plaintiff [Greystone] selected this forum based on the forum selection clauses of the loan guaranties, which each Defendant [Oliphant Parties] executed in favor of Greystone .... Having previously agreed to litigate this case in New York should Plaintiff institute an action here, Defendants**

---

[6] Actually, the New York matter includes all of the claims made by and against all of the parties, while the California action includes only a subset of those claims and parties.

**cannot now claim that their burden in doing so outweighs the interest of Plaintiff in proceeding with this action.**

Swanholt Decl., Ex. 4 (Order of Feb. 20, 2008 in the New York action) at 4 (emph. added).[7] The Court added:

> Although it is true that Defendants filed an action in California state court prior to Plaintiffs filing this action, they did not serve process until the day before Plaintiff filed its action here in New York, nor did they disclose the filing of their action while they negotiated with Plaintiff. Moreover, as Plaintiff points out, the California action was filed well after Defendants received a notice of default and of Greystone CDE's intent to pursue collection remedies. This sequence weighs against an application of the first to file rule.

Swanholt, Ex. 4 (Order of Feb. 20, 2008 in the New York action) at 5.

Thus, given the parties' concurrence that these matters should proceed in only one venue and the undisputable fact that the New York court has already ruled that Defendants' affirmative claims will remain there, New York is the only venue where the parties can achieve their goal of eliminating the possibility of litigating two nearly "identical" matters on opposite coasts.

B.  **Plaintiffs' Opposition Raises Arguments That Are Inapposite And Insufficient To Overcome The Undisputed Facts Set Forth Above.**

Plaintiffs do not dispute any of the changed circumstances that make reconsideration appropriate here, nor can they. Instead, Plaintiffs attempt to mischaracterize the claims and contracts in this matter to avoid having to perform their promise to litigate in New York.

---

[7] The venue provision interpreted by the New York court reads, in pertinent part: "Pledgors hereby **irrevocably and unconditionally**: (ii) consent that any such action or proceeding may be brought in such [New York] courts, and waives <u>any objection that it may now or hereafter have to the venue of any such action or proceeding in any such court</u> or that such action or proceeding was brought in an inconvenient court and agree not to plead or claim the same." Swanholt Decl., Ex. 2 at 1, 15-16 (emph. added).

1  **Procedural Posture of the New York Action:** The Plaintiffs claim that
2  Defendants' argument that the New York matter is proceeding faster than the California
3  action is inaccurate because in California discovery has commenced and a mediation is
4  scheduled for late May. *See* Opp'n (doc. # 56) at 4:20-27. While accurate, the point is
5  trivial when compared with the fact that the New York matter is scheduled to commence
6  trial on May 12, 2008 – one year earlier than the May 11, 2009 trial date in this action.
7  Indeed, Defendants' answer in the California action is not due, if at all, before July.
8  Regardless of whether the New York trial date sticks, the New York matter will proceed to
9  trial sooner than this matter. That the parties in that action have chosen not to engage in
10 discovery to date, or that the New York court has not ordered the parties to mediation, does
11 not have any bearing on where that matter is relative to trial and resolution.
12 **Basis of the Court's Earlier Ruling:** In their opposition, the Plaintiffs suggest that
13 the Greystone Defendants have mischaracterized the Court's February 4, 2008 Order, and
14 claim that "the existence of the New York action had little, if any, bearing on the Court's
15 Order." Opp'n (doc. #56) at 3:1-2. The reality, however, is that in opposing Defendants'
16 motion to transfer, Plaintiffs argued that Defendants' claims in the New York action were
17 unrelated to their tort claims in the California action in an effort (1) to evade the forum-
18 selection clauses to which they had agreed and also (2) to suggest that judicial efficiency
19 would not be advanced by the transfer and consolidation of the two actions in a single
20 forum. The Court accepted Plaintiffs' characterization of their claims and the two pending
21 actions, the venue provisions in the guaranties were not applied to Plaintiffs' affirmative
22 California claims and Defendants' motion was denied.
23 Since then, the Oliphant Parties have asserted all their claims in this action in New
24 York as "identical" counterclaims raising "identical issues." *See* Swanholt Decl., Ex. 1 at
25 1. As Plaintiffs now admit, they were "required to raise these defenses and Counterclaims
26 in the New York action at the risk of rendering their claims in the California Action moot."
27 Plaintiffs recognize that the claims in this action are compulsory counterclaims in the New
28 York action because, contrary to their previous representations to this Court, their claims do

1  "arise[] out of the same transaction or occurrence that is the subject matter of" Greystone
2  CDE, LLC's claims in the New York action, *i.e.*, the bridge loan transaction, *see* Fed. R.
3  Civ. P. 13(a). As they now explain:
4     [T]he California Action is not limited to claims pertaining to
5     [Greystone] Servicing's malfeasance. The California Action also
6     asserts a cause of action that directly addresses the [Greystone]
7     CDE loan guarantees, seeks a declaration the parties' rights and
8     liabilities with respect to those guaranties, and seeks a declaration
9     concerning any rights to set-off the Oliphant Parties might possess.
10 Swanholt Decl., Ex. 1 at 4 n.4.
11     In their opposition to Defendants' motion to reconsider, Plaintiffs do not contend
12 otherwise. Instead, they seek to avert the issue by characterizing their claims in New York
13 as "protective counterclaim[s] . . . required to place the issues there in proper perspective
14 should that litigation proceed." This nonsensical explanation has no basis in the Federal
15 Rules and, more importantly, does nothing to alter the inexorable conclusion that their
16 claims in this action arise out of the transaction or occurrence at issue in the New York
17 action; namely, Plaintiffs' breach of their obligations under the bridge loan guaranties. And
18 as the parties' choice of venue provision states:
19     Pledgors hereby irrevocably and unconditionally: (i) submit
20     themselves and their respective property in any legal action or
21     proceeding **relating** to this agreement, **or any other document**
22     **executed in connection with the transactions contemplated by**
23     **the loan agreement** ... to the non-exclusive general jurisdiction of
24     the courts of the State of New York . . . .
25 Swanholt Decl., Ex. 2 at 1, 15-16 (emph. added).
26     Accordingly, regardless of Plaintiffs' prior representations to the Court, there can be
27 no dispute now that the New York and California matters *are* related, that they are all based
28 upon the same "transaction or occurrence" and that therefore the venue provisions applying

1 to "any other document" in connection with those transactions, including the Engagement
2 Agreement forming the basis of Plaintiffs' California claims, should be enforced.
3     **Consideration of this Motion Is Not Premature**: In a last ditch effort to avoid
4 transfer of this matter, Plaintiffs suggest that the Court should delay its reconsideration of
5 Defendants' motion to transfer until the New York court has had an opportunity to resolve
6 the Plaintiffs' motion to transfer in the New York action. *See* Opp'n (doc. # 56) at 5-6.
7 However, in that motion, Plaintiffs conveniently jettison all of the previous arguments by
8 which they had persuaded this Court to deny Defendants' motion, and, instead, rely on
9 Defendants' argument of judicial efficiency (which they had previously opposed) in their
10 bid to have the New York Court transfer Defendants' affirmative New York action to
11 California.[8] *See* Swanholt Decl., Ex. 1 at 6-11.
12     Tellingly, Plaintiffs' New York motion relies heavily on this Court's denial of
13 Defendants' transfer motion.[9] Clearly, Plaintiffs hope that the New York court will change
14 its previously stated conclusions and order transfer of the New York matter to California,
15 relying solely upon this Court's order denying Defendants' motion to transfer the California
16 matter to New York. Based upon the foregoing, however, it makes much more sense for
17 this Court to reconsider its prior order <u>before</u> the New York court relies on that order.

18 Dated: April 25, 2008                          JONES DAY

20                                          By: /s/ Mark D. Kemple
21                                          Attorneys for Defendants Greystone
22                                          Servicing Corporation, Inc. and Greystone CDE, LLC

---

[8] Against the backdrop of their double-tongued filings in the two actions, the Oliphant Parties have the audacity to insinuate that the Greystone Defendants are "making this litigation as costly as possible," *see* Opp'n (doc. # 56) at 1:22-25, when, in reality, it is only Mr. Oliphant who benefits from delaying the inevitable, driving up costs, and frustrating Greystone's efforts to collect a sizable debt that Mr. Oliphant does not dispute he owes.

[9] *See* Decl. of W. Schofield (doc. # 56) ("Schofield Decl."), Ex. C at 1 n.4 ("Greystone has already made that motion [to transfer] in California – and they lost. The California court decided to retain jurisdiction; and the California Action proceeds on its course.")

# EXHIBIT "L"

# JONES DAY

555 SOUTH FLOWER STREET · FIFTIETH FLOOR · LOS ANGELES, CALIFORNIA 90071-2300
TELEPHONE 213-489-3939 · FACSIMILE 213-243-2539

Direct Number: (213) 243-2195
mkemple@jonesday.com

JP002175
585449-605001

April 25, 2008

Magistrate Judge Joseph C. Spero
United States District Court for the Northern District of California
450 Golden Gate Ave., Courtroom A, 15th Floor
San Francisco, CA 94102

      Re:    Santa Fe Pointe, L.P. v. Greystone Servicing Corp., Inc., C07-05454 JCS

Dear Judge Spero:

      We are in receipt of the Court's April 24, 2008 Order continuing the hearing on Defendants' motion for reconsideration to July 25, 2008. We note that this was issued in response to Plaintiffs' ("Oliphant Parties") opposition, but prior to Defendants' Reply. The Oliphant Plaintiffs requested in opposition, and this Court appears to have determined, that this Court's resolution of whether California is a proper forum should await the New York Court's decision on a like request there. Though we disagree with that ordering, and would have so stated in Reply, we write to gain clarification that **all proceedings in this matter are stayed** until this Court rules upon Defendants' motion. Though we believe that this is implicit in the Court's Order, it is not express. Indeed, the one thing that all parties agree on (and have voiced in their competing motions to transfer) is that duplicative litigation and discovery must be avoided. Simply, three points support the stand-still instruction implicit in this Court's order:

(1)    The parties now agree that duplicative and costly litigation of nearly identical actions on opposite coasts is wasteful and unnecessary. Yet that is exactly what will occur in this matter if a stay of these proceedings is not ordered;

(2)    Judge Patterson has already rejected the arguments made by the Oliphant parties' in support of their pending motion to transfer the New York matter to California;

(3)    The Oliphant Parties' "**irrevocable and unconditional**" consent to the New York venue – the only venue in which all claims by all parties is pending – renders New York alone the venue that all parties agree all claims by and between all parties **can** and **will** be heard. There is nothing permissive about the Oliphant's waiver of any ability to transfer an action in New York once brought there.

      First, staying all proceedings in this matter until the Court rules on Defendants' motion for reconsideration is appropriate because it is consistent with both parties' wishes and this Court's implicit ruling that duplicative litigation in these matters must be avoided. If a stay is not put in place, witnesses, including third parties, may be subject to duplicative and unnecessary discovery, all before this Court rules on Defendants' motion in July, thus defeating one of the primary purposes of consolidation of these cases – avoiding duplicative and wasteful efforts in

LAI-2945765v1

JONES DAY

Magistrate Judge Joseph C. Spero
April 25, 2008
Page 2

matters pending on opposite coasts. Of course, the parties remain free to engage in discovery in New York – the venue to which the Oliphant Parties have given their "irrevocable and unconditional" consent.

Moreover, the Oliphant Parties have claimed that the Greystone Defendants, by their motion, seek nothing more than to make "this litigation as costly as possible for Mr. Oliphant and the entity Plaintiffs." Opp'n, 1:22-23. Defendants dispute the Oliphant Parties' charge and indeed have sought, on multiple occasions, to avoid the unnecessary expenditure of resources in this matter when it was appropriate to do so. Here, Defendants again make a similar request and provide an opportunity for Plaintiffs to avoid the unnecessary expenditure of resources by staying all proceedings in this matter, including discovery and mediation, until the Court rules on Defendants' motion to transfer. If the Oliphant Parties are truly interested in keeping costs down, they will gladly support Defendants' request.

Second, and more specifically, the Oliphant Parties' pending Motion to Transfer in the New York case notwithstanding, Judge Patterson in New York already *has* ruled on the merit of the Oliphant Parties' argument that New York is not the proper forum for this dispute – indeed *rejected* that very argument, in writing:

> More importantly, Plaintiff [Greystone] selected this forum based on the forum selection clauses of the loan guaranties, which each Defendant [Oliphant Parties] executed in favor of Greystone CDE.... Subsequent to signing the loan and guaranty agreements, Defendant Oliphant's law office rendered a legal opinion as to the validity and enforceability of the bridge loan agreement and the partners' guaranties thereof. **Having previously agreed to litigate this case in New York should Plaintiff institute an action here, Defendants cannot now claim that their burden in doing so outweighs the interest of Plaintiff in proceeding with this action.**

Swanholt Decl. to Motion for Reconsideration ("Swanholt"), Ex. 4, at 4. No claim realistically can be made that New York is not the appropriate forum. The Oliphant Parties' New York motion does not become "realistic" by their decision to ignore this prior Order.

Third, it is simply beyond reasonable debate, given the new facts that have led to this Court's reconsideration, that Judge Patterson's ruling is correct. Three key (and new) facts are not contested and are dispositive:

(1) All parties agree that this matter must be litigated in only one venue – not concurrently in two venues on opposite coasts.[1]

---
[1] As the Oliphant Parties concede, "the interest of justice mandates against the parties litigating identical issues in two fora." *See* Swanholt, Ex. 1 at 1.

LAI-2945765v1

JONES DAY

Magistrate Judge Joseph C. Spero
April 25, 2008
Page 3

(2) Of the two venues, only New York has before it all claims by all parties. The California action is but a subset of the New York action.[2]

(3) The Oliphant Parties "unconditionally and irrevocably" consented in writing that New York was a proper venue, and that they would not challenge New York as a proper venue.[3] There is nothing "permissive" about their agreement.

These three key points end all reasonable debate; New York is the only proper venue. Were more needed, and though the Oliphant Parties feign otherwise, it is also undisputable that:

(4) the New York action – with a current trial date of May 2008 and motions for partial adjudication pending – is far more advanced than this action.[4]

With this, and even putting reason aside, only the *most* intractable advocate could continue to argue that the larger New York action should be sent to the smaller California action, based on a motion brought in express breach of the parties' written, express "unconditional and irrevocable" consent to New York venue. Patently, the more narrow California claims – already subsumed in the New York action – should be resolved in New York where they will be resolved in all events.

Based upon the foregoing, staying all proceedings in this matter until this Court has ruled upon Defendants' motion for reconsideration saves the resources of the parties and the Court, and the witnesses who might otherwise be deposed twice. Given the recent substantive changes in the posture of the two matters at issue and the likelihood that this Court will grant Defendants' motion to transfer this matter to New York, allowing the parties to proceed with written discovery, document production, depositions, etc. in California makes little sense. Defendants, request this Court to stay all proceedings until the Court rules on the transfer motion.

Respectfully submitted,

*[signature]*

Mark D. Kemple
Counsel for Defendants

cc: William Schofield, Esq.

---

[2] Unlike New York, the claims of Greystone CDE, LLC are not asserted in California.

[3] "Pledgors hereby **irrevocably and unconditionally**:... (ii) consent that any such action or proceeding may be brought in such [New York] courts, and waives any objection that it may now or hereafter have to the venue of any such action or proceeding in any such court or that such action or proceeding was brought in an inconvenient court and agree not to plead or claim the same." Swanholt, Ex. 2 at 1, 15-16.

[4] In contrast, Defendants are not obliged even to *answer* the California pleading until August 2008.

LAI-2945765v1

# EXHIBIT "M"



# PINNACLE LAW GROUP LLP

April 28, 2008

Magistrate Judge Joseph C. Spero
United States District Court for the Northern District of California
450 Golden Gate Ave.
Courtroom A, 15th Floor
San Francisco, CA 94102

    Re: Santa Fe Pointe, LP, et al. v. Greystone Servicing Corp., Inc., et al.
        Action No. C07-05454 JCS

Dear Judge Spero:

    We have received Greystone's April 25, 2008 letter to the Court, which purports to seek "clarification" of the Court's April 24, 2008 Order. Greystone's letter is simply an *Ex Parte* motion to stay proceedings.

    Plaintiffs strongly object to any stay and disagree that such a stay is "implicit in the Court's Order."

    To the contrary, at the Case Management Conference on February 8, 2008, the Court ordered the parties to conduct enough discovery to enable the parties to engage in a meaningful mediation session. The Court further ordered the parties to conclude that mediation by the end of May 2008 and to report to the Court at a follow-up Case Management Conference in early June 2008. Plaintiffs have proceeded with that timeline in mind and there is presently scheduled a full day mediation on May 22, 2008 before Peter Sherwood (as well as a conference call with Mr. Sherwood on May 12, 2008).

    Plaintiffs advised the Court of these dates in their opposition to Greystone's motion for reconsideration. That the Court did not stay proceedings or alter this agreed-upon schedule makes clear that the Court wishes the parties to proceed with it, and Plaintiffs intend to do so. The pending motion to transfer venue in New York has no bearing on this schedule.

    Plaintiffs suspect that Greystone's request to stay the proceedings is purely tactical, designed to enable Greystone to notify Judge Patterson in New York that this case has been stayed in order to bolster their opposition to Plaintiffs' motion to transfer venue pending in New York.

    As stated above, the matter before this Court is scheduled for mediation and discovery continues. The Greystone defendants were once successful in New York in sabotaging settlement conference before the Court there. This Court hopefully sees the

425 California Street
Suite 1800
San Francisco
California 94104
Telephone
415.394.5700
Facsimile
415.394.5003

www.pinnaclelawgroup.com

Santa Fe Pointe, LP, et al. v. Greystone Servicing Corp., Inc., et al.
Magistrate Judge Joseph C. Spero
April 28, 2008
Page 2 of 2

continued and endless game playing by Greystone and denies the request for stay to allow the mediation before Mr. Sherwood to move forward.

Very truly yours,

*[signature]*

William W. Schofield